1  JAMIE LYNN GALLIAN
2  16222 Monterey Lane Unit 376
   Huntington Beach, Ca 92649
3  (714)321-3449
4  jamiegallian@gmail.com

5
6  Defendant, IN PRO PER

7

8          **UNITED STATES BANKRUPTCY COURT**
9   **CENTRAL DISTRICT OF CALIFORIA – SANTA ANA DIVISION**

10 | In re | ) | Case No.  8:21-bk-11710-SC |
11 |       | ) | |
12 | JAMIE LYNN GALLIAN | ) | Chapter 7 |
13 |       | ) | |
   | Debtor | ) | Adv. No. 8:21-ap-01097-SC |
14 | _____ | ) | |
15 | HOUSER BROS CO. dba RANCHO | ) | |
   | DEL REY MOBILEHOME ESTATES | ) | DEFENDANT JAMIE L GALLIAN'S |
16 |       | ) | Lodgment of Exhibits in Support of |
17 |       Plaintiff, | ) | Opposition to Houser Bros Co Motion |
   |       | ) | For Relief From the Automatic Stay. |
18 | v.    | ) | Dkt. 278.  Memorandum Points & |
19 | JAMIE LYNN GALLIAN, | ) | Authorities ISO Opposition filed under |
   |       | ) | separate cover. |
20 |       Defendant | ) | |
21 | _____ | ) | Date:  February 1, 2023 |
22 |       |   | Time:  9:30 A.M. |
23 |       |   | Department:  5C |
   |       |   | 411 West Fourth Street |
24 |       |   |       Santa Ana, CA 92701 |
25

26

27

28

{00574074.DOCX; 1}                    -1-





2





CUP78-23 & TT10542

HUNTINGTON BEACH PLANNING DEPT.









Units 1, 2, 3 and 4 of Lot 2 of the following:

All that certain land situated in the State of California, County of Orange, City of Huntington Beach, described as follows:

Proposed Tract No. 10542, being a subdivision of the following:

A portion of the northeast one quarter (1/4) of the northwest one quarter (1/4) of Section 20, Township 5 south, Range 11 west, in the Rancho Las Bolsa Chica, as shown on a map recorded in book 51, page 13 of Miscellaneous Maps, records of said Orange County, being described as follows:

Parcel 1 of a map filed in book 108, page 48 of Parcel Maps.

NOTICE OF COMPLIANCE WITH CONDITIONS ON TRACT

AUTHORIZATION FOR RELEASE FOR RECORDING

TO:        City Clerk                     Date _____

FROM:      PLANNING DEPARTMENT
           James W. Palin

TRACT NO. _____

RECREATION & PARKS FEES PAID _____

Other: _____

_____
(Signature)

8



10/19/2020                                    IMG_1618.jpg





# *Tracts*

Tract Number:      10542

Tract Type:        Maps

Date Recorded:        08/17/1979

Entitlement Number:

456 49

SHEET 1 OF 2 SHEETS
2 LOTS
8.278 ACRES
ALL OF TENTATIVE
TRACT NO. 10542

DUPLICATE

25824

# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A SUBDIVISION OF PARCEL 1 AS SHOWN ON A MAP RECORDED

IN BOOK 108, PAGES 47 & 48 OF PARCEL MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

ACCEPTED AND FILED
AUG 17 1979 AT 12:45 PM—
AT REQUEST OF
FIRST AMERICAN TITLE INS. CO.
ORANGE COUNTY, CALIFORNIA
J.E. A. WANCH, County Recorder
$17.00

MADOLE & ASSOCIATES, INC.
J.M. MADOLE R.C.E. 14814

NOVEMBER, 1978

WE, THE UNDERSIGNED, BEING ALL PARTIES HAVING ANY RECORD TITLE INTEREST IN THE LAND COVERED BY THIS MAP, DO HEREBY CONSENT TO THE PREPARATION AND RECORDATION OF SAID MAP, AS SHOWN WITHIN THE COLORED BORDER LINE.
WE HEREBY DEDICATE TO THE PUBLIC FOR STREET PURPOSES: EDINGER AVENUE
WE ALSO HEREBY DEDICATE TO THE CITY OF HUNTINGTON BEACH:

1. SUBSURFACE WATER RIGHTS BUT WITHOUT THE RIGHT OF SURFACE ENTRY TO THE SURFACE OR TO THE SUBSURFACE ABOVE THE DEPTH OF 500 FEET.

2. THE DOMESTIC WATER SYSTEM AND APPURTENANCES AS SHOWN ON THE IMPROVEMENT PLANS FOR THIS TRACT.

3. ACCESS RIGHTS IN, OVER, ACROSS, UPON AND THROUGH THE PRIVATE STREETS WITHIN SAID TRACT FOR THE PURPOSE OF MAINTAINING, SERVICING, CLEANING, REPAIRING THE WATER SYSTEM WITHIN SAID TRACT.

WE ALSO HEREBY RELEASE AND RELINQUISH TO THE CITY OF HUNTINGTON BEACH:

1. ALL VEHICULAR ACCESS RIGHTS TO EDINGER AVENUE, EXCEPT AT STREET INTERSECTION.

HOUSER BROS. CO., A LIMITED PARTNERSHIP

VERNON F. HOUSER
GENERAL PARTNER

CLIFFORD C. HOUSER
GENERAL PARTNER

STATE OF CALIFORNIA )
COUNTY OF ORANGE ) SS
ON THIS __ DAY OF __ , 19__, BEFORE ME, __ A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED VERNON F. HOUSER AND CLIFFORD C. HOUSER, KNOWN TO ME TO BE THE PARTNERS OF HOUSER BROS. CO., A LIMITED PARTNERSHIP, THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP EXCUTED THE SAME.

MY COMMISSION EXPIRES __ WITNESS MY HAND AND
OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID STATE.

ROBERT P. WARMINGTON, OPTIONEE UNDER AN OPTION AGREEMENT RECORDED IN BOOK 12512, PAGE 1053 OF OFFICIAL RECORDS.

ROBERT P. WARMINGTON
OPTIONEE

STATE OF CALIFORNIA )
COUNTY OF ORANGE ) SS
ON THIS __ DAY OF __ , 19__, BEFORE ME __ A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED __ KNOWN TO ME TO BE THE PERSON DESCRIBED IN, AND WHOSE NAME IS SUBSCRIBED TO THE WITHIN INSTRUMENT AND HE EXECUTED TO ME THAT HE EXECUTED THE SAME

MY COMMISSION EXPIRES __ WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID STATE

PURSUANT TO THE PROVISIONS OF SECTION 66436 (c) OF THE SUBDIVISION MAP ACT THE FOLLOWING SIGNATURES HAVE BEEN OMITTED:
1. GENERAL TELEPHONE COMPANY OF CALIFORNIA, HOLDER OF AN EASEMENT RECORDED IN BOOK 7329, PAGE 892 OF OFFICIAL RECORDS.
2. SOUTHERN CALIFORNIA EDISON CO., HOLDER OF AN EASEMENT RECORDED IN BOOK 9004, PAGE 722 OF OFFICIAL RECORDS.

PURSUANT TO THE PROVISIONS OF SECTION 66484 (4) OF THE SUBDIVISION MAP ACT, A SOILS REPORT BY BRUCE A PACKARD R.C.E NO. 13601 DATED FEBRUARY 19, 1979 HAS BEEN PREPARED FOR THIS SUBDIVISION. THIS REPORT AND ANY SUPPLEMENTS THERETO ARE ON FILE WITH THE CITY OF HUNTINGTON BEACH, BUILDING DEPARTMENT.

ENGINEER'S CERTIFICATE

I, J.M. MADOLE , DO HEREBY CERTIFY THAT I AM REGISTERED CIVIL ENGINEER NO. 14814 OF THE STATE OF CALIFORNIA; THAT THIS MAP CONSISTING OF 2 SHEETS IN WHICH IT CORRECTLY REPRESENTS WERE BOTH MADE BY ME OR UNDER MY DIRECTION; THAT THE MONUMENTS ARE OF THE CHARACTER OCCUPY THE POSITIONS INDICATED, OR WILL BE SET IN SUCH POSITIONS WITHIN NINETY DAYS AFTER THE ACCEPTANCE OF IMPROVEMENTS; AND THAT SAID MONUMENTS ARE SUFFICIENT TO ENABLE THE SURVEY TO BE RETRACED.

R.C.E. NO. 14814

CITY ENGINEER'S CERTIFICATE

I HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND HAVE FOUND IT TO BE SUBSTANTIALLY IN CONFORMANCE WITH THE TENTATIVE MAP AS FILED WITH, AMENDED AND APPROVED BY THE CITY PLANNING COMMISSION; THAT ALL PROVISIONS OF THE SUBDIVISION MAP ACT AND CITY SUBDIVISION REGULATIONS HAVE BEEN COMPLIED WITH AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT.

DATED THIS 26th DAY OF July , 1979 .

RONALD L. LACHER
ACTING CITY ENGINEER
OF HUNTINGTON BEACH.

BY Ronald L. Lacher

CITY CLERK'S CERTIFICATE

STATE OF CALIFORNIA )
COUNTY OF ORANGE ) SS
I HEREBY CERTIFY THAT THIS MAP WAS PRESENTED FOR APPROVAL TO THE CITY COUNCIL OF THE CITY OF HUNTINGTON BEACH AT A REGULAR MEETING THEREOF HELD ON THE 6th DAY OF August 1979 , AND THAT THEREUPON SAID COUNCIL DID, BY AN ORDER DULY PASSED AND ENTERED, APPROVE SAID MAP AND DID ACCEPT ON BEHALF OF THE PUBLIC THE DEDICATION FOR STREET PURPOSES OF THE EDINGER AVENUE.
AND DID ALSO ACCEPT ON BEHALF OF THE CITY OF HUNTINGTON BEACH:
1. VEHICULAR ACCESS RIGHTS TO EDINGER AVENUE AS RELEASED AND RELINQUISHED.
2. THE DOMESTIC WATER SYSTEM AND APPURTENANCES AS DEDICATED.
3. THE SUBSURFACE WATER RIGHTS AS DEDICATED.
4. ACCESS OVER PRIVATE STREETS AS DEDICATED FOR WATER SYSTEM MAINTENANCE.
AND DID ALSO APPROVE SUBJECT MAP PURSUANT TO THE PROVISIONS OF SECTION 66436(C)(1) OF THE SUBDIVISION MAP ACT.

DATED THIS 7th DAY OF August , 1979 .

ALICIA M. WENTWORTH
CITY CLERK OF HUNTINGTON BEACH

BY Billy J. Gate

PLANNING DIRECTOR CERTIFICATE

I, JAMES W. PALIN, ACTING SECRETARY TO THE PLANNING COMMISSION OF THE CITY OF HUNTINGTON BEACH, ORANGE COUNTY, CALIFORNIA DO HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND FOUND IT TO BE SUBSTANTIALLY THE SAME AS THE TENTATIVE MAP FILED WITH, AMENDED AND APPROVED BY THE CITY PLANNING COMMISSION.

DATED THIS 6th DAY OF Aug , 1979 .

SECRETARY TO THE PLANNING COMMISSION

COUNTY TAX COLLECTOR'S CERTIFICATE

I HEREBY CERTIFY THAT ACCORDING TO THE RECORDS OF MY OFFICE THERE ARE NO LIENS AGAINST THE LAND COVERED BY THIS MAP OR ANY PART THEREOF FOR UNPAID STATE, COUNTY, MUNICIPAL OR LOCAL TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES, EXCEPT TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES NOT YET PAYABLE.

DATED THIS 9th DAY OF August 1979 .

ROBERT L. CITRON
COUNTY TAX COLLECTOR-
TREASURER

BY
DEPUTY TAX
COLLECTOR

COUNTY SURVEYOR'S CERTIFICATE

I HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND HAVE FOUND THAT ALL MAPPING PROVISIONS OF THE SUBDIVISION MAP ACT HAVE BEEN COMPLIED WITH AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT RELATIVE TO THE TRACT MAP BOUNDARY.

DATED THIS 17th DAY OF Aug , 1979 .

C. R. NELSON
COUNTY SURVEYOR

BY Robert Wise
DEPUTY

COUNTY CLERK'S TAX CERTIFICATE

STATE OF CALIFORNIA )
COUNTY OF ORANGE ) SS
I HEREBY CERTIFY TO THE RECORDER OF ORANGE COUNTY THAT THE PROVISIONS OF THE SUBDIVISION MAP ACT HAVE BEEN COMPLIED WITH REGARDING DEPOSITS TO SECURE THE PAYMENT OF TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES ON THE LAND COVERED BY THIS MAP.

DATED THIS 14th DAY OF August 1979 .

JUNE ALEXANDER
CLERK OF THE BOARD

BY June Alexander

456 49

14





### GROUND LEASE

THIS GROUND LEASE (herein termed the "Lease"), is made as of this 19th day of ___October___, 19__, by and between HOUSER BROS. CO., a limited partnership organized and existing under the laws of the State of California in which Clifford C. Houser and Vernon F. Houser constitute the sole general partners (herein termed the "Landlord"), whose address is Suite 204, 610 East Seventeenth Street, Santa Ana, California 92701 and ROBERT P. WARMINGTON, a married man (herein termed the "Tenant"), whose address is 16592 Hale Avenue, Irvine, California 92714 upon the following terms and conditions:

### ARTICLE I
### THE LEASED LAND

For and in consideration of the payment of the rentals, taxes and other charges covenanted to be paid by Tenant and of the performance of all the covenants and conditions hereinafter covenanted and provided to be observed and performed by Tenant, the Landlord hereby leases to Tenant and Tenant hereby hires from Landlord that certain parcel of real property (herein termed the "leased land"; the term "leased land" and "leased premises" may be used interchangeably), situated in the County of Orange, State of California, described on Exhibit A attached hereto and by this reference made a part hereof for the term, at the rental, for the uses and purposes, and upon and subject to the covenants, conditions and restrictions hereinafter set forth. The demise of the leased land is made subject to taxes and assessments for the current fiscal year, not yet delinquent and subject to covenants, conditions, reservations, restrictions, easements, rights and rights-of-way of record.

### ARTICLE II
### TERM

The term of this Lease shall be for a period of eighty (80) years commencing on the date first above written and continuing until the anniversary of the eightieth (80th) year thereafter, unless sooner terminated, as hereinafter provided. Tenant shall have no option to extend the term of this Lease. This Lease shall terminate as to any portion of the leased land which is Sold and Conveyed as hereinafter provided. As hereinafter provided, this Lease shall terminate as to any portion of the leased land which is Sold and Conveyed unless Tenant elects to enter into an Affiliate Sublease or a Consumer Sublease.

### ARTICLE III
### USE AND DEVELOPMENT

3.01  Use.

At all times during the term of this Lease, Tenant shall be entitled to use the leased land, buildings and

HOU 000746

4

other improvements constructed thereon for single family residential use and for other purposes incidental thereto, including, without limitation, recreational facilities and sales offices, and Tenant may subdivide the leased land in connection with such single family residental use and development. Tenant covenants and agrees that it will not use or suffer or permit the leased land, buildings and other improvements constructed thereon to be used in a manner which would constitute waste or which would constitute a public or private nuisance. It is expressly understood and agreed that Tenant's construction activities upon the leased land shall not be deemed to constitute waste. As used in the foregoing, "single family residential use" includes condominiums, planned unit developments and other multiple unit developments of a similar nature.

3.02  Compliance with Laws.

Tenant covenants that during the lease term, Tenant will comply, at no cost or expense to Landlord, with all laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments and appropriate departments, commissions, boards and officers thereof, which may be applicable to the leased land, buildings and other improvements constructed thereon, or the use or manner of use of the leased land. Tenant accepts the leased land in the actual condition of the same as of the date of this Lease.

3.03  Contest.

Tenant shall have the right, after notice to Landlord, to contest by appropriate legal proceedings, without cost or expense to Landlord, the validity of any law, ordinance, order, rule, regulation or requirement of the nature herein referred to and to postpone compliance with the same, provided such contest shall be promptly and diligently prosecuted by and at the expense of Tenant and so long as Landlord shall not thereby suffer any civil, or be subject to any criminal penalties or sanctions, and Tenant shall properly protect and save harmless Landlord against any liability and claims for any such noncompliance or postponement of compliance.

3.04  Development of the Leased Land; Dedications.

3.04.01  Lessor's Cooperation: Power of Attorney.

(a)  Landlord and Tenant (at no expense to Landlord other than Landlord's time) shall take such actions and shall execute such instruments, documents, applications and/or certificates as Tenant may deem reasonably necessary or desirable to obtain requisite governmental approvals for the proposed development of the leased land or any portion thereof and/or to facilitate use and development of all or any portion of the leased land for the use permitted in Section 3.01 above, including, but not limited to, execution and delivery of the following:

-2-

HOU 000747

(i)  Instruments of dedication conforming with the provisions of this Section 3.04;

(ii)  Public utility conveyances;

(iii)  Applications to federal, state and local governmental agencies, together with all other instruments and documents reasonably necessary in order to obtain permits, reports, public reports, zoning, conditional use permits, variances and similar type items necessary for the proposed use and development; and

(iv)  Certificates to be affixed to subdivision maps, parcel maps, condominium plans and plans pertaining to the residential development.

(b)  Without limiting the foregoing, Landlord agrees to cooperate with Tenant in the development of the leased land in the manner of development set forth in Section 3.01 above, including, without limitation, attending a reasonable number of meetings with Tenant and/or jurisdictional government agencies.

(c)  In furtherance of paragraph (a) above, Landlord will, within three (3) days of a request from Tenant, execute, by one of its general partners who are named as signatories to this Lease, all of the documents or instruments described in paragraph (a).  If one of said named individuals has not executed such documents on behalf of Landlord within said period of time because of their unavailability or otherwise, Landlord, as provided in the Ground Lease (Short Form - Memorandum) executed by the parties concurrently herewith, hereby appoints Tenant as Landlord's attorney-in-fact to sign any and all of such documents.  Notwithstanding the execution of any of such documents by Tenant as Landlord's attorney-in-fact, Landlord agrees to execute any and all of such documents upon request therefor by Tenant.  In any event, Tenant shall promptly supply Landlord with copies of any document signed by Tenant as Landlord's attorney-in-fact.

3.04.02  Dedications.  In connection with the subdivision and development of the leased land, Tenant may cause subdivision tract maps to be filed of record which will show streets within the subdivision intended for use of the "Buyers of Lots", as such terms are defined herein, and their licensees, invitees, tenants, and servants; and, with respect to such streets, and all utility easements and rights-of-way, Tenant may, at its option, offer for dedication for public use thereof only its respective leasehold interest therein, in which event Landlord shall be required to offer for dedication for public use its respective leasehold interest therein; provided, however, that the reversionary interest of Landlord in the fee simple estate of the real property comprising the leased land therein will not be offered for dedication for public use upon the recording of any such subdivision tract maps or public

-3-

HOU 000748

utility conveyances unless required by the utility or the
City of Huntington Beach; or, provided further, Landlord
shall complete the dedications of the property of Landlord
pursuant to proceedings for Tentative Parcel Map No. 77-7
dated June 8, 1977 (subject to the undertakings of Tenant,
at no cost to Landlord to improve such areas within Edinger
Avenue required pursuant to the proceedings for Tentative
Parcel Map 77-7).

3.05  Construction.

    Except as to offsite improvements which Tenant shall
construct pursuant to the proceedings under Tentative Parcel
Map No. 77-7, during the term of this Lease Tenant shall
have the right, but not the duty, to construct buildings and
improvements upon the leased land.  All buildings and
improvements now or hereafter constructed or located on the
leased premises by Tenant shall be the property of Tenant.

    Landlord shall have the right to approve, for architec-
tural treatment, color and external appearance of materials
and the elevation design of the improvements which Tenant
intends to construct on the leased land prior to the com-
mencement of the construction of such improvements.  Land-
lord shall not unreasonably withhold such approval and
Landlord's sole consideration for granting or withholding
such approval shall be the preservation of the esthetics of
the leased land in reasonable harmony with the improvements
to Landlord's adjoining mobile home park.  Within thirty
(30) days of delivery to Landlord of plans showing the
foregoing, Landlord shall either approve such plans in
writing or give written notice to Tenant of Landlord's
disapproval, specifying the reasons therefor.  Failure to so
disapprove such plans within such time period shall be
deemed approval thereof.  In the event of such disapproval,
Tenant shall submit revised plans for Landlord's approval as
aforesaid, except that Landlord's time for approving or
disapproving said plans shall be shortened to ten (10)
days.  If Landlord disapproves the revised plans, all rental
payments hereunder shall abate until the revised plans are
either approved or deemed approved pursuant to the aforesaid
procedure for revised plans.  If such plans are not approved
or deemed approved within ninety (90) days of their original
submission to Landlord, Tenant may, at its option, terminate
this Lease by written notice to Landlord.  After such plans
are approved or deemed approved as aforesaid, Tenant shall
have the right, without the necessity of obtaining Land-
lord's consent, to make minor changes to such plans which
do not substantially affect the esthetic harmony of the
improvements to be built on the leased land with Landlord's
adjacent mobile home park.  However, Tenant shall promptly
deliver to Landlord copies of all such changes as they are
made.

    Construction of improvements to the leased premises
shall be made in all cases subject to the following condi-
tions which Tenant covenants and agrees to observe and
perform:  (a) no construction shall be undertaken until
Tenant shall have procured and paid for, so far as the same

-4-

HOU 000749

may be required from time to time, all municipal and other
governmental permits and any authorizations of the various
municipal departments and government subdivisions having
jurisdiction, and the Landlord agrees to join, at the
expense of the Tenant, in the application for any such
permits or authorizations whenever such action is necessary;
and (b) all work done in connection with such construction
shall be done promptly using quality materials and in a
good and workmanlike manner at no cost or expense to Land-
lord and in compliance with the applicable municipal build-
ing and zoning laws and with all other laws, ordinances,
orders, rules, regulations and requirements of federal,
state and municipal governments and appropriate departments,
commissions, boards and officers thereof; the cost of all
construction shall be paid in cash or its equivalent, so
that the leased land shall at all times be free of liens for
labor and materials supplied to the leased land.

Tenant agrees to (i) indemnify Landlord against and
to hold Landlord harmless from any and all damages of any
nature suffered by owners of adjacent property (including
Landlord) by reason of the acts or negligence of Tenant
on the leased land; and (ii) protect the land and improve-
ments of adjoining owners (including Landlord) against
damage caused by said construction and improvements of the
leased land as required by law.

Landlord shall have the right at any time and from time
to time to post and maintain on the leased land such
notices as may be necessary to protect the leased land
and Landlord from mechanic's liens, materialmen's liens or
liens of a similar nature.  On or before ten (10) days
prior to the commencement of any work of improvement by
Tenant on the leased land, Tenant shall give notice thereof
to Landlord and with the date expected by Tenant for the
commencement of such construction.

Tenant may at any time alter, improve or remodel any
building, structure or other improvement constructed or
placed by Tenant on the leased land.

3.06  Residential Leases.

3.06.01  Definitions.

(a)  The term "Placed under Development" for
purposes of this Lease shall mean all those portions of the
leased land which shall, subsequent to the date hereof, be
made the subject of a recorded subdivision map or parcel map
(including all streets, easements and rights-of-way within
the areas covered by any such subdivision map or parcel
map), together with those portions of the leased land
hereafter conveyed or dedicated by Tenant for public utility
purposes.

(b)  The term "Lot" shall mean any lot into
which the leased land or any portion thereof has been
subdivided, and as used herein, shall include, without
limitation, any condominium into which the leased land or

-5-

HOU 000750

any portion thereof has been divided pursuant to the pro-
visions of Section 1350, et seq., of the California Civil
Code.

(c)    The term "Buyer" is defined to mean any
person, firm or corporation who is a purchaser of any
structure located or to be located upon any Lot and who
executes a Residential Lease or a Consumer Sublease as
lessee.

(d)    The term "Sold and Conveyed", as used
herein, is defined to mean the execution and delivery of a
Residential Lease or a Consumer Sublease, the term of which
shall (i) commence concurrently with delivery; (ii) in the
case of a Residential Lease be equivalent with the then
remaining term of this Lease; and (iii) in the case of a
Consumer Sublease be equivalent to the then remaining term
of this Lease less one (1) day.

(e)    The term "Residential Lease", as used
herein, shall mean a lease between Landlord and any Buyer
(and the homeowners association in the case of common
facilities with appropriate modifications) in the form
attached hereto as Exhibit "B", and by this reference
incorporated herein and made a part hereof as if set forth
in full herein, with appropriate modification if the im-
provements are sold as condominiums.

(f)    The term "Consumer Sublease" shall be
defined in Section 3.08(b) below.

3.06.02    Execution of Residential Leases.

(a)    After Tenant shall have first obtained
the appropriate governmental approvals, Tenant may offer the
Lots be Sold and Conveyed to the general public together
with, at the election of Tenant, an appurtenant membership
in any homeowners association organized and incorporated
to be the lessee of a Residential Lease of the common
facilities, hereafter provided and/or to administer subdivi-
sion servitudes.    It is the intention of the parties that
Tenant shall sell the building and other improvements it
constructs on the Lots to Buyers.    All amounts received by
Tenant upon the sale of improvements shall be the sole
property of Tenant, and the Landlord shall not be entitled
to any portion thereof.

(b)    When each Lot is Sold and Conveyed
Landlord will execute, within fifteen (15) days following
the request of Tenant, individual Residential Leases with
the Buyers.    Each Residential Lease shall be subject to no
monetary encumbrances other than current taxes; however each
Lot shall, at the election of Tenant, be subject to sub-
division servitudes (if such be the case, such servitudes
shall be mutually approved in writing by Landlord, who
agrees not to unreasonably withhold its consent, and by
Tenant) and each Buyer's estate shall be subject to appro-
priate assessments for upkeep and replacement of common

-6-

HOU 000751

facilities. This Lease shall, upon the commencement of the lease term of each Residential Lease, terminate as to the real property covered by the Residential Lease. The improvements on any Lot shall remain the sole property of the Buyer. This Lease shall also terminate upon the conveyance or dedication of any portion of the leased land to a public entity or public utility.

(c)  At all times the total of the basic rental remaining payable under this Lease and the basic rental payable under the aggregate of the Residential Leases shall be equal to the rental payable under Article IV of this Lease as if no Lots had been Sold and Conveyed. For the purposes of the foregoing, each Residential Lease, which may be terminated by Landlord, as lessor, by reason of an event of default by the Buyer under a Residential Lease, shall nevertheless for the purposes of this provision be deemed to still be in effect and the rental which would have been paid thereunder shall be accounted for with respect to the foregoing determinations. It is anticipated by the parties that the basic rental as provided for herein shall be uniformly divided among the Lots. Tenant shall be discharged and exonerated under this Lease as to each Lot Sold and Conveyed; however, Tenant shall nevertheless remain obligated with respect to all covenants made by Tenant with Buyers and for all warranties and representations, express or implied, in favor of the Buyers; Tenant shall indemnify and hold Landlord free and harmless from all liability with respect to such covenants, warranties and representations in favor of Buyer whether or not disclosed to Landlord.

3.07  Common Facilities.

Tenant may choose to construct within portions of the leased land Placed under Development recreational or other common facilities (which shall include streets) for the use and enjoyment of Buyers and convey such facilities to an association organized and incorporated to acquire the same. Upon such conveyance and upon request of Tenant, Landlord shall execute a Residential Lease or Consumer Sublease, as lessor, with such association, as lessee, for a term equivalent to the unexpired period of this Lease, at basic rental of ONE ($1) DOLLAR per year. The land area of such recreational or common facilities (exclusive of streets) shall not exceed twenty-six thousand eight hundred (26,800) square feet without Landlord's prior written approval if a multi-phase development is elected. No Lot or Lots of the common facilities shall be Sold and Conveyed unless and until the following conditions shall have occurred:

(a)  Tenant shall have first obtained the governmental approvals necessary to permit all Lots (or in the case of a multi-phase development, the Lots within the initial phase) benefited by such common facilities to be Sold and Conveyed to Buyers.

(b)  No less than forty (40%) percent of all buildings and other improvements to the Lots (or in the case

-7-

HOU 000752

of a multi-phase development, no less than forty (40%) percent of the lots within the initial phase) benefited by such common facilities shall have been substantially completed, or, in the event a condominium development is elected, completion assured by surety arrangements approved by the California Department of Real Estate).

(c)  The mortgagee, as that term is hereafter defined, shall have executed and delivered a reconveyance of any lien on the Lot or Lots of the common facilities so conveyed to such association.

(d)  The construction of the common facilities shall have been fully completed or completion assured by surety arrangements approved by the California Department of Real Estate.

### 3.08  Tenant's Right to New Leases; Consumer Subleases.

(a)  Tenant, at any time and from time to time may at its election designate certain parcels of the leased land to be subject to separate leases between Tenant and Landlord.  Without limiting the generality of the foregoing, Tenant may obtain hereunder separate leases for some or all of the Lots into which the leased land is divided.  These parcels shall comply with all requirements of the Subdivision Map Act and all other applicable laws.  Upon written request by Tenant, Landlord shall execute new leases to parcels of the leased land as designated by Tenant and shall amend this Lease to reflect that such parcels are no longer subject to this Lease.  The terms and conditions of the new leases and this Lease, as amended, shall be the same as the terms and conditions of this Lease with the exception that the annual rent shall be divided among the leases based on the proportion which the square footage of the parcel governed by any such lease bears to the total square footage of the leased land.  Notwithstanding the foregoing, in the event that Tenant designates a Lot for a separate lease hereunder, the annual rent payable under the lease for such Lot shall be equal to the annual rent payable under this Lease multiplied by a fraction, the numerator of which is one and the denominator of which is the total number of Lots into which the leased land is divided.

(b)  As to such Lots for which Tenant has obtained separate leases, and notwithstanding any other provision of this Article III, Tenant may elect to enter into a sublease with the Buyer of any such Lot in the form attached hereto as Exhibit D with appropriate amendments if the Lots are Sold and Conveyed as condominiums (referred to in this Lease as a "Consumer Sublease") instead of causing such Lot to be Sold and Conveyed pursuant to a Residential Lease.  This Lease shall not terminate when any such Lot is Sold and Conveyed pursuant to a Consumer Sublease.  Tenant, or its permitted development sublessee, as provided in Section 6.01.03 below, may offer Lots to be Sold and Conveyed to the public as provided in Section 1.06.02(a), but reading "Consumer Sublease" for "Residential Lease" therein.  Tenant may sublease common facilities Lots to a homeowners associa-

-8-

HOU 000753

24

tion formed from among Buyers under Consumer Subleases as appropriately modified, but subject to the restrictions of Section 3.07 above. The use of Consumer Subleases shall not affect, among other things, Landlord's obligation under Section 3.04.02 or Tenant's ability to impose subdivision servitudes providing for assessments against Buyers as provided in Section 3.06.02(b).

(c)  Tenant shall be solely liable with respect to all covenants made by Tenant with Buyers and for all warranties and representations, express or implied, in favor of the Buyers under the Consumer Subleases. Tenant shall indemnify and hold Landlord free and harmless from all liability with respect to such covenants, warranties and representations in favor of Buyer whether or not disclosed to Landlord.

(d)  Landlord hereby agrees with Tenant for the benefit of all Buyers under Consumer Subleases that:

(i)  So long as such Buyer is not in default in the payment of rental or other charges due under the Consumer Sublease or in the performance of any of the other terms, covenants or conditions of the Consumer Sublease on such Buyer's part to be performed, such Buyer's possession of the Lot subject to such Consumer Sublease and such Buyer's other rights and privileges under the Consumer Sublease shall not be interfered with by the Landlord, its successors or assigns.

(ii)  Should this Lease be terminated prior to the expiration of the term hereof or any extensions of said term for any reason whatsoever, including without limitation, as a result of Tenant's breach thereof or default thereunder, the Consumer Sublease shall continue in full force and effect as a direct lease between Landlord and the Buyer under the Consumer Sublease, upon and subject to all of the terms, covenants and conditions of the Consumer Sublease for the balance of the term thereof remaining, provided that such Buyer attorns to Landlord in writing. Notwithstanding the foregoing, Landlord shall not be bound by any act or omission of Tenant as the prior sublessor under the Consumer Sublease. Landlord shall not be bound by any prepayment of rent (other than through the Payment Agreement referred to in subparagraph 3.08(d)(iv)) or other charges which such Buyer might have paid for more than three (3) months in advance to Tenant as the prior sublessor, and Landlord shall not be bound by any amendment to or modification of any Consumer Sublease or by any waiver or forbearance on the part of Tenant as the prior sublessor thereunder made or given without the written consent of Landlord.

(iii)  If, the provisions of the foregoing notwithstanding, a Consumer Sublease is terminated by reason of any termination of this Lease, it is hereby agreed that the Buyer under such Consumer Sublease and

-9-

HOU 000754

May-01-02  04:18pm  From-RUTAN & TUCKER LLP,                714-546-9035             T-234  P.11/28  F-670

Landlord shall enter into a new lease upon the terms and conditions of the Consumer Sublease for the then remaining balance of the term of the Consumer Sublease.

(iv)  In the event that such Consumer Subleases shall call for the payment of rent less frequently than quarter annually, the provisions of subparagraph 3.08(d)(ii) shall only be applicable if Landlord and Tenant enter into a Payment Agreement under the terms of which all rental to be paid by Buyers under the terms of the Consumer Sublease will be paid to a neutral depository, such as a bank, savings and loan, trust company or escrow company.  Such neutral depository shall be instructed to remit to lessor from such sum collected the amount due under this Lease attributable to the Lot subject to the Consumer Sublease and to remit the balance to the Tenant.

## ARTICLE IV
### RENTAL

### 4.01   Basic Rental.

Tenant agrees to pay to Landlord as basic rental for the use and occupancy of the leased land, an annual sum of SEVENTY-TWO THOUSAND TWO HUNDRED TWENTY ($72,220.00) DOLLARS calculated at TEN THOUSAND ($10,000.00) DOLLARS per acre, multiplied by 7.222 acres, being the number of acres within Parcel 1 of Parcel Map recorded in Book 108, pages 47 and 48, inclusive, Official Records of Orange County, California, subject to adjustment as provided in Section 4.03 below.  Basic rental shall be payable in twelve (12) equal monthly installments of SIX THOUSAND EIGHTEEN DOLLARS AND THIRTY-THREE CENTS ($6,018.33) each, due and payable in advance on the first day of each calendar month during the term hereof, without deduction or offset, in lawful money of the United States of America at such place as Landlord from time to time shall direct in writing to Tenant.

### 4.02   Commencement of Rentals.

Rental payments shall commence on the first day of the calendar month next following the date first above written if such date be a date other than the first day of a calendar month.  In addition to the first full month's rent, Tenant shall pay at such time an additional pro rata rent representing the period between the term commencement date and the first day of the next succeeding calendar month, based on a thirty (30) day month and a three hundred sixty (360) day year.

### 4.03   Adjusted Rental.

(a)  When a Residential Lease, but not a Consumer Sublease, is Sold and Conveyed, the basic rental payable by Tenant shall be reduced by the amount of rental payable to Landlord under such Residential Lease.

-10-

HOU 000755

May-01-02  04:18pm  From-ROIAN & TUCKER LLP,                114-540-8035            T-234  P.12/28  F-670

(b)   Upon the expiration of the twentieth (20th),
fortieth (40th) and sixtieth (60th) year of the term of this
Lease, the rental payable hereunder shall be adjusted to a
sum equal to eight (8%) percent of the unimproved fair
market value of the leased land, or any portion then re-
maining subject to this Lease, at the end of said twentieth
(20th), fortieth (40th) or sixtieth (60th) year, as the case
may be.   After any such adjustment of rental, Tenant shall
pay to Landlord such rental as so adjusted during the period
applicable thereto at the times and in the manner provided
in Section 4.01 above; provided, however, in no event shall
the rental as so adjusted be less than an annual rental at
least equal to TEN THOUSAND ($10,000.00) DOLLARS per acre
for the portion of the leased land then subject to this
Lease (calculated to exclude the area of the reserved
easement described in Exhibit A).   If, upon the expiration
of the twentieth (20th), fortieth (40th) or sixtieth (60th)
year, as the case may be, the parties hereto shall have
failed to agree upon such adjusted rental, the fair market
value of the leased land (or portion thereof then subject to
this Lease), as unimproved, and the adjusted rental, shall
be determined by arbitration pursuant to subparagraph (c) of
this Section.

(c)   Within ten (10) days of the expiration of the
twentieth (20th), fortieth (40th) or sixtieth (60th) year of
the term of this Lease, as the case may be, each of the
parties hereto shall appoint in writing an arbitrator and
give written notice thereof to the other party; or, in case
of the failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California, to
appoint an arbitrator to represent the defaulting party in
the manner prescribed in the then existing statutes of the
State of California, applicable to arbitration, the pro-
visions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.   Within ten (10) days after the
appointment of said two (2) arbitrators (in either manner),
they shall appoint, in writing, a third arbitrator and give
written notice thereto to Landlord and Tenant and, if they
shall fail to do so, then either party hereto may make
application to said Superior Court to appoint such third
arbitrator in the manner prescribed in said arbitration
statutes.

The three (3) arbitrators so appointed (in either
manner) shall promptly fix a convenient time and place in
the County of Orange for hearing the matter to be arbitrated
and shall give reasonable written notice thereof to each of
the parties hereto and with reasonable diligence shall hear
and determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto,
and the award of a majority of said arbitrators shall
determine the question arbitrated, and a judgment may be
rendered by said Superior Court confirming said award, or
the same may be vacated, modified or corrected by said Court

-11-

HOU 000756

27

May-01-02  04:19pm  From-RUTAN & TUCKER LLP,               714-546-9035        T-234  P.13/28  F-870

at the instance of either of the parties hereto, in accor-
dance with said arbitration statutes, and said judgment
shall have the force and effect as provided in said
statutes.

Each of the parties hereto shall pay for the services
of its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration. Pending the final
decision of such adjusted rental, Tenant shall pay to
Landlord the amount of rent previously payable under Section
4.01 above as adjusted pursuant to Section 4.03(a) above.
If such adjusted rental, as finally determined, shall exceed
the amount of the previous rental, the excess amount ac-
cruing during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final determina-
tion of said adjusted rental.  If such adjusted rental, as
finally determined, shall be less than such previous rental,
the amount of any excess paid by Tenant during said interim
period shall be credited against the first rentals there-
after payable hereunder.

ARTICLE V
TAXES AND ASSESSMENTS

5.01   Tenant to Pay Taxes and Assessments.

In addition to the basic rental, Tenant shall
pay and discharge all taxes and general and special assess-
ments which may be levied upon or assessed against the
leased land (or the portion thereof being subject to this
Lease at the time such taxes become payable), and all
interest therein and all improvements and other property
thereon, and upon all rentals payable on this Lease (in the
event that county secured real property taxes be assessed in
whole or in part either on an ad valorem basis upon the
leased land or upon rentals payable under the terms of the
Lease thereof) as such taxes and assessments become due and
payable during the term of this Lease.  Taxes and assess-
ments for the current fiscal year shall be prorated between
Landlord and Tenant to the term commencement date.  Tenant
shall pay each installment of said taxes and assessments not
later than the delinquency date thereof.  Notwithstanding
the foregoing, if Tenant shall, in good faith, contest the
validity of said taxes and assessments, then Tenant, upon
furnishing a sufficient surety bond to Landlord, may with-
hold payment pending settlement of its claim or may pay the
same under protest and, in either case and at Tenant's
expense, shall defend itself and Landlord against the same
and shall pay and satisfy any adverse judgment that may be
rendered thereon before the enforcement thereof against
Landlord or the leased land.  Landlord shall remain re-
sponsible for its income tax payable on revenue derived from
this Lease and all estate, inheritance, gift taxes and taxes
of a similar nature.

5.02   Tenant's Indemnity Re Taxes and Assessments.

Tenant agrees to protect and hold harmless Landlord
and the leased land and all improvements in, on and about

-12-

HOU 000757

the leased land from all liability for any taxes and as-
sessments for which Tenant is obligated pursuant to Section
5.01 above, together with any interest, penalties or other
charges imposed and from any sale or other proceeding to
enforce payment thereof.

### 5.03  Lack of Separate Assessment.

Tenant's obligations pursuant to Section 5.01 presume
that the county tax assessor will separately assess the
leased land and will send the tax bill therefor directly to
Tenant.   If the assessor sends the tax bill to Landlord,
Tenant agrees to make the payments required under Section
5.01 within ten (10) days after Tenant's receipt from
Landlord of a copy of any tax bill received by Landlord.

### 5.04  Tenant Entitled to Refund.

It is agreed that any refund made in any taxes or as-
sessments paid by Tenant pursuant to this Article shall be
the sole property of Tenant, and if any such refund is mis-
takenly paid to Landlord, Landlord agrees to immediately,
and in no event later than three (3) days, pay the same
over to Tenant.

### 5.05  Installment Election for Assessments.

Notwithstanding any other provision of this Article,
Tenant may elect, as to any assessment levied against the
leased land during the term of this Lease, to take advan-
tage of the ability to cause such assessments to be payable
in installments instead of in a lump sum.  In such event,
Tenant shall only be responsible to pay the installments
which come due and payable during the term hereof.


### ARTICLE VI
### ASSIGNMENT AND ENCUMBRANCE

### 6.01  When Landlord's Consent Required.

6.01.01  Landlord's Consent Required.  Except as
provided in Article III and in this Article VI, Tenant shall
not encumber, assign or otherwise transfer this Lease, or
sublet the whole or any part of the leased land without the
prior written consent and approval of Landlord, which
consent shall not be unreasonably withheld.  Except as
otherwise so permitted in this Lease, no assignment or other
transfer, whether voluntary or involuntary, by operation of
law, under legal process, by receivership, in bankruptcy, or
otherwise, shall be valid or effective without the express
prior written consent and approval of Landlord.

6.01.02  Assignments For Which Landlord's Consent
Not Required.

(a)(1)  If the Tenant be Robert P. Warming-
ton, Tenant shall have the right, without obtaining Land-

-13-

HOU 000758

lord's consent, to assign its interest under this Lease
to The Robert P. Warmington Co., a California corporation
(as used herein The Robert P. Warmington Co. includes any
corporation which succeeds to the assets of such corporation
by merger, consolidation or purchase), to any other corpora-
tion in which Tenant (or The Robert P. Warmington Co.) has
greater than a fifty (50%) percent proprietary interest, to
any partnership or joint venture in which Tenant (or The
Robert P. Warmington Co.) or any such other corporation or
entity is the managing partner and to the heirs, devisees
and personal representatives of Optionee.

(a)(2)   If the Tenant be The Robert P.
Warmington Co., a California corporation (or successor as
provided in subsection (a)(1) above), Tenant shall have the
right, without obtaining Landlord's consent, to assign its
interest under this Lease to Robert P. Warmington, an
individual, to any corporation in which Tenant or said
individual has greater than a fifty (50%) percent proprie-
tary interest, to any partnership or joint venture in which
Tenant or said individual or any such corporation or
entity is the managing partner, and to any corporation
or other entity which succeeds to Tenant's interest by
merger, consolidation or by sale of all or substantially all
of Tenant's assets.

(b)   Tenant shall further have the right to
assign its interest under this Lease to any individual,
corporation or entity which, at the time of the assignment,
has a net worth of not less than THREE MILLION ($3,000,000)
DOLLARS and has experience substantially equal to that of
Tenant in building and marketing single-family residences of
the type to be built on the leased land.  Robert P. Warming-
ton and The Robert P. Warmington Co. shall each be consider-
ed as having identical experience.

(c)   In the event of any assignment which
complies with the foregoing, the assignor shall be released
of any and all liability arising under this Lease from and
after the effective date of the assignment.

(d)   Notwithstanding the foregoing, within ten
(10) days of a request therefor, Landlord shall execute an
instrument in recordable form consenting to any assignment
or other transfer made without its consent pursuant hereto.

6.02  Hypothecation.

Landlord agrees and consents that Tenant may, without
Landlord's prior consent, at any time and from time to time,
mortgage, encumber, assign and hypothecate by mortgage
or deed of trust (either of which is herein termed a "mort-
gage") all right, title and interest of Tenant in the
leasehold estate created by this Lease to a lender (herein
called "mortgagee").  Notwithstanding the foregoing, within
ten (10) days of a request therefor from Tenant, Landlord
agrees to execute an instrument in recordable form consent-
ing to any such mortgage, encumbrance, assignment or hypo-

-14-

HOU 000759

May-01-02  04:20pm   From-RUTAN & TUCKER LLP,                714-546-9035        T-234  P.16/28  F-670

thecation.  If, notwithstanding the foregoing, Tenant's leasehold interest hereunder terminates under such fore-closure, assignment in lieu of foreclosure, the mortgagee shall be entitled to a new lease upon the same terms as this Lease and subject only to those things caused, created or consented to by Landlord to which Tenant's leasehold estate hereunder is subject as of the date of the recordation of the mortgage.

Except as hereinafter otherwise provided, the mortgage and all rights thereunder shall be subject to each and every of the covenants, conditions and restrictions of this Lease, and the same shall be subject to all rights and interest of Landlord, none of which shall be deemed waived by the foregoing consent.  Tenant agrees to furnish to Landlord copies of all instruments, indentures or agreements executed by Tenant, and to be recorded, to perfect the hypothecation of the leasehold estate to a mortgagee.

Any mortgagee shall have the right at any time during the term hereof while this Lease is in full force and effect:

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person, firm or corporation without the consent of Landlord as to the such initial transfer.

Landlord shall give written notice to mort-gagee of any default by Tenant.  Landlord shall not termi-nate this Lease by reason of such default of Tenant if the mortgagee shall:

(1)  Cure such default within sixty (60) days after service on mortgagee of written notice from Landlord of Landlord's intention to terminate this Lease, except, however, (if the same cannot be cured by payment of rent, taxes, assessments and insurance premiums and other cash charges payable by Tenant hereunder within sixty (60) days) mortgagee shall have a reasonable time after sixty (60) days within which to cure such default so long as mortgagee is proceeding to cure such default with reasonable diligence, or

(ii)  Undertake on or before the expiration of said sixty (60) days or said reasonable time, in writing to perform all covenants of this Lease capable

-15-

HOU 000760

May-01-02  04:20pm  From-RUTAN & TUCKER LLP,                714-546-9035            T-234  P.17/28  F-670

of performance by mortgagee.  In the event of such undertaking, or in the event such default is not susceptible of being cured by mortgagee, such default shall be deemed cured if mortgagee shall proceed in a timely and diligent manner to accomplish the foreclosure of Tenant's interest; provided, however, that if said foreclosure proceedings shall be subject to leave of any court (as in the case of a bankruptcy proceeding) and such leave shall have been applied for but not obtained by mortgagee, such default shall be deemed cured nevertheless, if mortgagee shall have attempted to obtain such leave in a timely and diligent manner. The obligation of mortgagee for the performance of the terms of this Lease shall terminate upon the sale, transfer or assignment of the right, title and interest of mortgagee in the leasehold estate to any other person, firm or corporation.

Any provisions contained in this Lease to the contrary notwithstanding, any mortgagee or its assignee may enforce such mortgage and acquire title to the leasehold estate in any lawful manner and, pending foreclosure of any such mortgage, may take possession of and rent the leased land and upon foreclosure of such mortgage may, without further consent of Landlord, sell, transfer or assign the leasehold estate or sublet the leased land.  Any purchase money, mortgage or deed of trust delivered in connection with any such assignment or transfer shall be entitled to the benefit of all of the provisions of this Lease regarding the rights of a mortgagee.  Any person acquiring the leasehold estate from mortgagee shall, as a condition precedent to the enjoyment of the leasehold estate, assume in writing the liability for the performance of the obligations imposed upon Tenant by the terms of this Lease.  Mortgagee shall furnish Landlord with an executed copy of the instrument of assignment or transfer and a copy of the undertaking made in accordance with the foregoing provisions.  Upon said assumption the assignor shall be released from all obligations for performance of the terms of this Lease.

The foregoing provisions do not give any person the right to mortgage, hypothecate or otherwise encumber or to cause any liens to be placed upon the freehold estate of Landlord, nor shall the foregoing provisions in any event be construed as resulting in a subordination in whole or in part of the freehold estate of Landlord to any indebtedness of Tenant.

Notwithstanding the foregoing provisions, until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this Lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein; provided, however, at the time a Lot is Sold and Conveyed by a Residential Lease, there shall be recorded a reconveyance of the lien of the mortgagee covering such Lot Sold and Conveyed by a Residential Lease.

-16-

HOU 000761

**6.03  Subleases For Which Landlord's Consent Not Required.**

(a)  Landlord's consent shall not be required for any Consumer Subleases or for any subsequent transfer of the subleasehold estate thereunder.

(b)  Tenant shall have the right, without Landlord's prior consent, to sublease its leasehold estate hereunder to any person or entity described in Section 6.01.02(a)(1).  Said sublease is herein referred to as an "Affiliate Sublease".

## ARTICLE VII
### LIENS

Tenant shall not suffer or permit to be enforced against the leased land, or any part thereof, any mechanics', laborers', materialmen's, contractors', subcontractors', or any other liens arising from or any claim for damages growing out of any work of construction or improvement, or any other claim or demand howsoever the same may arise, but Tenant shall pay or cause to be paid all of said liens, claims and demands before any action is brought to enforce the same against the leased land, and Tenant hereby indemnifies and agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims and demands, together with all costs and expenses, including, but not limited to, attorneys' fees and court costs incurred by Landlord in connection therewith, and Landlord shall have the right, at any time and from time to time, to post and maintain on the leased land, or any part thereof, such notices of nonresponsibility as desired by Landlord or as may be provided by law.  Notwithstanding anything to the contrary contained in this paragraph, if Tenant shall, in good faith, contest the validity of any such lien, claim or demand, then Tenant shall, at its expense, defend itself and Landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land, and if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien, claim or demand indemnifying Landlord against liability for same; or, if Landlord shall request, Tenant shall procure and record the bond provided for in the Civil Code of the State of California, or any comparable statute hereafter enacted providing for a bond freeing the leased land from the effect of such lien or claim or action thereon.

## ARTICLE VIII
### INDEMNIFICATION AND INSURANCE

**8.01  Indemnity.**

Landlord shall not be liable for any loss, damage, injury or claim of any kind or character to any person (including a Buyer) or property arising from or caused by

-17-

HOU 000762

the use or development of the leased land and the construction of improvements thereon, including, without limitation, any such loss, damage, injury or claim arising from or caused by (i) any use of the leased land, or any part thereof; (ii) any defect in the design, construction of or material in any structure or other improvement upon the leased land or in any other facility therein; (iii) any defect in soils or in the preparation of soils or in the design and accomplishment of grading; (iv) any act or omission of Tenant or any of its agents, employees, licensees, invitees or contractors; (v) any accident on the leased land or other casualty thereon; (vi) any representations by Tenant or any of its agents or employees; (vii) a violation or alleged violation by Tenant, its employees or agents, of any law now or hereafter enacted; (viii) any other cause whatsoever in connection with Tenant's use of the leased land; or (ix) the application of the principles of strict liability with respect to any act or omission during the term of this Lease of Tenant or its agents, employees, licensees, invitees or contractors in connection with the leased land, and Tenant, as a material part of the consideration of this Lease, except to the extent occasioned by the sole act or negligence or willful misconduct of Landlord or its employees, hereby waives on its behalf all claims and demands against Landlord for any such loss, damage or injury of Tenant, and hereby indemnifies and agrees to hold Landlord entirely free and harmless from all liability for any such loss, damage, injury or claim with respect to any person or property made by other persons, and with respect to any such violations or charges arising therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord in connection therewith.

8.02  Insurance.

Tenant shall maintain at all times during the term of the Lease, at its expense and in companies acceptable to Landlord:

(a)  Workmen's compensation insurance and employer's liability insurance.

(b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord as an additional insured.  Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of

-18-          HOU 000763

34

each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord prior to cancellation or reduction in coverage or amount.

8.03  Landlord's Indemnity.

The parties agree that Tenant shall have no liability by reason of the fact that a portion of Monterey Lane lies within an easement on the leased land as described on Exhibit A.  Landlord hereby agrees to indemnify and hold Tenant and any community association formed by Tenant to service the residents of the leased land absolutely free and harmless from any loss, damage, injury, claim or cause of action of any kind arising out of the use, improvement or maintenance of said Monterey Lane, including, without limitation, attorneys' fees and court costs.

ARTICLE IX
REMOVAL

Upon the expiration of the term of this Lease, Tenant shall quit and surrender possession of the leased land to Landlord.  Upon the expiration of the term of this Lease, Tenant shall have the right to remove from the leased land any improvements erected on the leased land by Tenant and which, at the time of such expiration, remain the property of Tenant.  Tenant shall promptly repair any damage to the leased land caused by such removal.  If Tenant has not completed such removal within sixty (60) days of the expiration of the term hereof, all of such improvements shall automatically become the property of Landlord without the payment of any consideration therefor.  In addition, before surrendering possession of the leased land as aforesaid, Tenant shall, without expense to Landlord, remove or cause to be removed from said leased land all movable signs, furnishings, equipment, trade fixtures, merchandise and other movable personal property installed or placed therein, and all debris and rubbish, and Tenant shall repair all damage to the leased land resulting from such removal.  Upon such expiration, and if requested by Landlord, Tenant shall, within five (5) days of a request therefor, execute, acknowledge and deliver to Landlord an instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to said leased land by reason of this Lease or otherwise.  If Tenant fails to remove any of its signs, furnishings, equipment, trade fixtures, merchandise or other personal property within thirty (30) days after the expiration or earlier termination of this Lease, then Landlord may, at its sole option, (i) deem any or all of such items abandoned as the sole property of Landlord; or (ii) remove any or all of such items and dispose of same in any manner or store same for Tenant, in which event the expense of such disposition or storage shall be borne by Tenant and shall be immediately due and payable.

-19-

HOU 000764

35

ARTICLE X
CONDEMNATION

The words "condemnation" or "condemned", as used
in this paragraph, shall mean the exercise of, or intent to
exercise, the power of eminent domain expressed in writing,
as well as the filing of any action or proceeding for such
purpose, by any person, entity, body, agency or authority
having the right or power of eminent domain (the "condemning
authority" herein), and shall include a voluntary sale to
any such condemning authority, either under the threat of
condemnation or while condemnation proceedings are pending,
and the condemnation shall be deemed to occur in point of
time upon the actual physical taking of possession pursuant
to the exercise of said power of eminent domain.  All award
or compensation paid upon condemnation shall be allocated as
follows:  (1)  Prior to the time the leased land or any
portion is Placed under Development, the entire award shall
be allocated, paid to and be the sole property of Landlord,
except for Tenant's hard costs which shall be paid out of
said award to Tenant, and (2) after the time the leased land
or any portion thereof has been Placed under Development the
entire award shall be allocated as follows:  (a) to Tenant,
a sum equal to the total of (i) the then fair market value
of the buildings and other improvements constructed or
installed by Tenant on the leased land; and (ii) the then
fair market value of Tenant's leasehold interest in the
leased land representing the present value of the aggre-
gate of the difference, if any, between (a) the economic
rental and (b) the basic rental, for the unexpired period
prior to a basic rental adjustment as provided in Article
IV; and (b) to Landlord, the remainder.   Landlord may,
with Tenant's written consent, agree to sell and/or convey
the leased land or portion thereof to the condemning author-
ity without first requiring that action or proceeding shall
be instituted or, if any such action or proceeding shall be
instituted, without requiring any trial or hearing thereof.
All amounts paid by the condemning authority upon such
voluntary sale or conveyance shall be allocated as provided
above.

In determining the portion of a condemnation award
or a payment for voluntary sale or conveyance under threat
of condemnation, any appraisal performed by the condemning
authority in connection with such award or conveyance shall
be controlling.  In the absence of such appraisal or agree-
ment between Landlord and Tenant as to such amounts, each
shall appoint an appraiser and the two shall select a third
appraiser, and all three shall appraise the property for the
purpose of such allocation of compensation for a condem-
nation with the average of the two appraisals which are the
closest controlling.

If only a portion of the leased land is condemned, this
Lease shall terminate if the mortgagee shall consent thereto
in writing and if Tenant shall notify Landlord, within sixty
(60) days of the condemnation, that the portion of the
leased land remaining after the condemnation cannot be
developed in the manner chosen by Tenant.  If Tenant fails

-20-

HOU 000765

to timely give such notice, this Lease shall remain in full
force and effect as to the remaining portion of the leased
land, except that (a) the basic rental payable by Tenant
shall be reduced in the proportion that the area of the
portion taken bears to the area of the entire leased land,
and (b) Tenant shall be entitled to use the award payable on
such partial condemnation to repair any damage to the
remaining portion of the leased land and improvements
thereon.

As used in the foregoing, "Tenant's hard costs" shall
mean all of Tenant's direct out-of-pocket expenses incurred
with regard to the development or intended development of
the leased land and shall include, without limitation, the
following but shall not include any charge for overhead or
other administrative expenses: engineering, architectural,
environmental, legal, accounting and other consultants, de-
velopment fees paid to governmental authorities, the cost of
preparing and/or reproducing plans and specifications for
such development, and the contract cost of improving the
leased land (or Tenant's direct costs if such improvement is
done by Tenant's employees).

### ARTICLE XI
### DEFAULT AND REMEDIES IN EVENT OF DEFAULT

11.01  Events of Default.

Tenant shall be deemed in default under the terms of
this Lease should Tenant:

(a)  Use the leased land or suffer the same to
be used for any purpose other than as authorized in this
Lease for more than thirty (30) days after notice from
Landlord specifying the unauthorized use; provided, however,
if such unauthorized use is not capable of being cured
within said thirty (30) day period, Tenant shall not be
deemed in default hereunder so long as it commences to cure
such unauthorized use within said period and thereafter
diligently and continuously prosecutes the same to comple-
tion; or

(b)  Default in the payment of any basic rental
payment and such default shall continue for ten (10) days
after notice thereof is given to Tenant; or

(c)  Fail to pay or cause to be paid any tax,
assessment, insurance premium, lien, claim, demand, judgment
or other charge provided in this Lease to be paid or caused
to be paid by Tenant at the times and in the manner herein-
above provided and such breach or default shall continue for
thirty (30) days after notice thereof is given to Tenant;
provided, however, the foregoing shall not prejudice Ten-
ant's right to contest any claim or lien pursuant to Article
VII above; or

(d)  File a voluntary petition in bankruptcy
or be adjudicated a bankrupt or insolvent or shall file

-21-                        HOU 000766

any petition or answer seeking or acquiescing in any reorganization, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or shall seek or consent to or acquiesce on the appointment of any trustee, receiver or liquidator or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

(e)  A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Tenant seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the first day of entry thereof; or any trustee, receiver, or liquidator of Tenant shall be appointed without the consent or acquiescence of Tenant and if such appointment shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive); or

(f)  Default in the performance of or breach of any other covenant, undertaking, duty, condition or restriction provided in this Lease to be kept and performed by Tenant thirty (30) days after written notice from Landlord specifying the nature of such default or breach; provided, however, if the nature of such default or breach is such that it is incapable of being cured within said thirty (30) day period, then Tenant shall not be deemed in default under this Lease if Tenant commences to cure the same within said thirty (30) day period and thereafter diligently and continuously (taking into account the nature of the default or breach) prosecutes such cure to completion.

11.02  Remedies.

In the event of Tenant's default, Landlord may, at Landlord's option:

(a)  Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article IV above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten (10%) percent per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

-22-

HOU 000767

(b)  By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession thereof therefrom and repossess said leased land, in which event, Landlord shall have the right to recover from Tenant:

(i)  The worth at the time of award of the unpaid rent which has been earned at the time of termination;

(ii)  The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided;

(iii)  The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss for the same period that the Tenant proves could be reasonably avoided;

(iv)  All other amounts necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations hereunder or which in the ordinary course of things are likely to result therefrom; and

(v)  In computing "worth at the time of award" Landlord shall be allowed interest at the rate of ten (10%) percent per annum.

The remedies of Landlord, as hereinabove provided, are cumulative and in addition to and not exclusive of any other remedy of Landlord herein given or which may be permitted by law.  The remedies of Landlord are subject to the provisions of Section 6.02.

## 11.03  Termination on Default.

Upon such termination, Tenant, if required by Landlord so to do by written notice to Tenant, shall within sixty (60) days, cause all improvements, structures and appurtenances thereto belonging to Tenant or those claiming under Tenant, to be removed from the leased land (or the portion of the leased land being then the subject of this Lease) and Tenant shall cause any excavations to be filled and all foundations, debris and other parts to be removed and the premises thereof surrendered in a clean and orderly condition.  In the event any such improvements shall not be removed within the time period as provided in this Section 11.03, the same shall, at the option of the Landlord, become the property of Landlord, without any requirement for the payment of consideration therefor; provided, however, that any such termination of this Lease shall not relieve the Tenant or its successors and assigns, if any, from liability for damages which Landlord may incur by reason of Tenant's

-23-

HOU 000763

default in failing to remove all structures, improvements
and appurtenances (excluding the aforementioned type of
improvements and installations) and to remove all debris
within said time period.

### 11.04  Quitclaim.

Upon such termination of this Lease, Tenant, following
Landlord's request, shall execute, acknowledge and deliver
to Landlord a quitclaim deed quitclaiming all right, title
and interest of Tenant in and to the leased land.

### ARTICLE XII
### MISCELLANEOUS

### 12.01   Short Form.

This Lease shall not be recorded, but the Ground
Lease (Short Form-Memorandum), in the form attached hereto
as Exhibit C and by this reference made a part hereof, shall
be executed and recorded by the parties hereto upon the
execution of this Lease.

### 12.02   Landlord's Cooperation.

Landlord agrees to cooperate with Tenant in de-
veloping the leased land in the manner chosen by Tenant,
including, without limitation, attending a reasonable number
of meetings with Tenant and/or jurisdictional government
agencies.

### 12.03  Construction of Lease.

The language in all parts of this Lease shall, in all
cases, be construed as a whole and in accordance with its
fair meaning and not restricted for or against either
Landlord or Tenant.   The captions of the paragraphs and
subparagraphs of this Lease are for convenience only and
shall not be considered or referred to in resolving ques-
tions or construction.

### 12.04   Severability.

If any provision of this Lease shall be adjudged to be
invalid, void or illegal, it shall in no way affect, impair
or invalidate any other provision hereof, the parties hereby
agreeing that they would have entered into the remaining
portion of this Lease notwithstanding the omission of the
portion or portions adjudged invalid, void or illegal.

### 12.05  Relationship of the Parties.

The relationship of the parties hereto is that of
Landlord and Tenant, and it is expressly understood and
agreed that Landlord does not in any way nor for any purpose
become a partner of Tenant or a joint venturer with Tenant
in the conduct of Tenant's business or otherwise, and that

-24-

HOU 000769

the provisions of any agreement between Landlord and Tenant
relating to rent are made solely for the purpose of pro-
viding a method whereby rental and purchase payments
are to be measured and ascertained.

### 12.06  Notices.

Any notice to be given or other document to be deliver-
ed by either party, or all payments of rental, may be
delivered in person to either party or may be deposited in
the United States mail in the State of California, duly
certified, return receipt requested, with postage prepaid,
and addressed to the party for whom intended at the address
appearing at the head of this Lease.  In the event that
Landlord has received notice of the hypothecation by Tenant
of his leasehold estate with a mortgage, all notices to be
sent by Landlord to Tenant hereunder shall be effective only
if a copy thereof is sent to the Mortgagee at the address
supplied to Landlord by Tenant or such Mortgagee.

Either party hereto may from time to time by written
notice to the other party designate a different address
which shall be substituted for the one above specified.  If
any notice or other document is sent by registered or
certified mail, as aforesaid, the same shall be deemed
served or delivered forty-eight (48) hours after the mailing
in the County of Orange, as above provided.

### 12.07  Attorneys' Fees.

In the event of any dispute between the parties hereto
involving the covenants or conditions contained in this
Lease or arising out of the subject matter of this Lease,
the prevailing party shall be entitled to recover reasonable
expenses, attorneys' fees and costs.

In the event Landlord is made a party to litigation
arising out of acts or negligence by Tenant regarding
the subject matter of this Lease, Landlord shall be entitled
to recover from Tenant its reasonable expenses, attorneys'
fees and costs incurred in such litigation.  Tenant hereby
indemnifies and agrees to hold Landlord harmless of and
from all liabilities, costs and expenses arising from any
such litigation.

### 12.08  Waiver.

No delay or omission by either party hereto in exercis-
ing any right or power accruing upon the noncompliance or
failure to perform by the other party hereto under the
provisions of this Lease shall impair any such right or
power or be construed to be a waiver thereof.  A waiver by
either party hereto of any of the covenants, conditions or
agreements hereof to be performed by the other party shall
not be construed as a waiver of any succeeding breach of
the same or other covenants, agreements, restrictions and
conditions hereof.

-25-

HOU 000770

### 12.09  Inspection.

Landlord reserves the right for Landlord and Landlord's agents and representatives to enter upon the leased land at any reasonable time following reasonable notice for the purpose of attending to Landlord's interest hereunder, and to inspect the leased premises.

### 12.10  Covenants and Conditions.

Each of the covenants in this Lease shall be deemed and construed as conditions and each and every covenant shall be deemed covenants running with the land.

### 12.11  Entire Agreement.

This Lease contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other previous agreement, statement or promise made by any party hereto which is not contained herein shall be binding or valid.

### 12.12  Non-disturbance.

No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reason of any such foreclosure or other action, but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

### 12.13  Estoppel Certificates.

Landlord and Tenant shall at any time and from time to time, upon not less than ten (10) days prior written request by the other party or parties to this Lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance.  It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates

HOU 000771

of Tenant, or any prospective purchaser of the estate of
Landlord, or any lender or prospective assignee of any
lender on the security of the leased land or the fee estate
or any part thereof, or upon the leasehold estate of Tenant
or any part thereof, and any third person.

### 12.14 Signs.

Tenant shall be entitled to place on the leased land
such advertising signs as it deems necessary or proper for
the development and marketing of the leased land.

### 12.15 Merger.

There shall be no merger of this Lease or the lease-
hold estate hereunder with the fee estate in the leased land
by reason of the fact that the Lease or any interest here-
under may be held for the account of a person or entity who
is the owner of the fee estate in the leased land or any
portion thereof, unless a written instrument effectuating
such merger is recorded.

IN WITNESS WHEREOF, each of the parties hereto has
caused this Lease to be executed as of the day and year
first above written.

HOUSER BROS. CO.
A California Limited Partnership

By _____
CLIFFORD C. HOUSER,
General Partner

By _____
VERNON F. HOUSER,
General Partner

"Landlord"

_____
ROBERT P. WARMINGTON

"Tenant"

-27-              HOU 000772

# Title Chain & Lien Report

**16222 Monterey Ln, Huntington Beach, CA 92649-6214**
APN: 178-011-16

Orange County Data as of: 08/03/2020

| | | | |
|---|---|---|---|
| Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
| Search End Date: | 08/19/2020 | End Date: | 08/19/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc. Ref. |
|---|---|---|---|---|---|
| 10/22/1979 | Lease | Warmington Robert | Robert P Warmington | 13362.317 | |
| 10/22/1979 | Lease | Houser Bros | Warmington Robert | 13362.320 | |
| 11/06/1979 | Cancellation | Houser Bros | | 13383.1868 | |
| 12/06/1979 | Lease | Houser Bros | Warmington Robert | 13424.499 | |
| 12/06/1979 | Lease | Warmington Robert | Robert P Warmington | 13424.504 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1096 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1130 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1166 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1202 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1232 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1268 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1304 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1340 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1099 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1133 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1169 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1205 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1235 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1271 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1307 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1343 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.192 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.272 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.195 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

44

| Date | Type | | | Document # | Doc Ref. |
|---|---|---|---|---|---|
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.275 | |
| 09/26/1980 | Plat, County Miscellaneous Plat | | | 13760.957 | |
| 10/03/1980 | Release | | | 13773.4 | |
| 10/03/1980 | Release | | | 13773.7 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1726 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1779 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1729 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1782 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1775 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1828 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1778 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1831 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.949 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.952 | |
| 07/06/1990 | Deed | Houser Bros | Houser Bros | 1990.357100 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | Union Bank | 1990.357101 | 342851 |
| ^ 07/21/1997 | Amendment | Houser Bros | | 1997.342851 | |
| 10/06/1993 | Deed | Malmborg Jack N & | Malmborg Jack N & | 1993.678726 | |
| 10/08/1993 | Declaration Of Homestead | Sullivan John L | | 1993.686386 | |
| 01/27/1994 | Declaration Of Homestead | Gibbons Robert L | | 1994.66495 | |
| 07/13/1994 | Declaration Of Homestead | Hunn Nancy C | | 1994.451177 | |
| 01/28/1997 | Declaration Of Homestead | Rounds Royal E | | 1997.40615 | |
| 07/31/1998 | Reconveyance | | | 1998.499256 | |
| 06/19/2000 | Declaration Of Homestead | Newton Carol A | | 2000.321481 | |
| 08/23/2007 | Declaration Of Homestead | Moomau Linda Charl | | 2007.523219 | |
| 09/15/2014 | Declaration Of Homestead | Radzinski Linda M | | 2014.372099 | |
| 05/22/2017 | Declaration Of Homestead | Vanzyl Yvonne H | | 2017.208348 | |

## Liens, Filings & Judgments
16222 Monterey Ln, Huntington Beach, CA 92649-6214

| Search Start Date: | 01/01/1967 | Name(s) Searched: | Houser Bros Co, Houser Bros Co Trust |
|---|---|---|---|
| Search End Date: | 08/19/2020 | Match: | Exact |

| Date | Type | Subject Name | Document # | Doc Ref. |
|---|---|---|---|---|



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.        PAGE 2 OF 3

| 06/10/1971 | Certificate Of Partnership | Houser | 9672.175 | |
| 07/31/1972 | Certificate Of Partnership | Houser Bros | 10251.992 | |
| 08/17/1976 | Amendment | Houser | 11854.900 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.281 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.291 | |
| 11/04/1983 | Lien | Houser Bros | 1983.499211 | 282543 |
| ∧ 07/31/1985 | Release | Houser Bros | 1985.282543 | |
| 05/02/1989 | Amendment | Houser | 1989.232116 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | 1990.357101 | 342851 |
| ∧ 07/21/1997 | Amendment | | 1997.342851 | |
| 07/09/1990 | Certificate Of Partnership | Houser Bros | 1990.361236 | |
| 07/31/1998 | Reconveyance | | 1998.499256 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008431 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008432 | |
| 04/03/2006 | State Tax Lien | Houser Brothers | 2006.219506 | 409646 |
| ∧ 07/30/2009 | Release | Houser Brothers | 2009.409646 | |
| 12/03/2008 | State Tax Lien | Houser Brothers | 2008.557266 | 409647 |
| ∧ 07/30/2009 | Release | Houser Brothers | 2009.409647 | |
| 07/01/2009 | Release | Houser Brothers | 2009.347624 | |
| 12/03/2010 | State Tax Lien | Houser Brothers | 2010.652383 | 157636 |
| ∧ 03/28/2011 | Release | Houser Brothers | 2011.157636 | |
| 06/14/2011 | Release | Houser | 2011.290442 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636007 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636008 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469087 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469088 | |
| 11/08/2016 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2016.564698 | |
| 11/19/2019 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2019.480966 | 8699 |
| ∧ 01/08/2020 | Release | Houser Bros Co | 2020.8699 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

BK 13362 PG 317

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:                    32442

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California  92714                    $5.00

> RECORDED AT REQUEST OF
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
> 8:01 A.M.  OCT 22 1979
> LEE A. BRANCH, County Recorder

———————— Space Above This Line for Recorder's Use Only ————————

GROUND SUBLEASE
(SHORT FORM-MEMORANDUM)

THIS GROUND SUBLEASE (SHORT FORM-MEMORANDUM) is made this
19th  day of    October         , 1979, by and between ROBERT P.
WARMINGTON (hereinafter "Landlord") and THE ROBERT P. WARMINGTON CO.,
a California Corporation (hereinafter "Tenant"), upon the following
terms and conditions:

W I T N E S S E T H:

1.  Landlord leases to Tenant that certain real property
(the "leased land") located in the City of Huntington Beach, County of
Orange, State of California, which leased land is described on
Exhibit "A" attached hereto and made a part hereof, at the rental and
upon all of the terms and conditions set forth in that certain unrecorded
Ground Sublease of even date between Landlord and Tenant which is
incorporated herein by this reference.

2.  The Property is leased for a term of eighty (80) years,
commencing as of     October 19          19 79 and ending
October 18 , 2059 .  The aforementioned incorporated Ground Sublease
provides, among other things, that it shall terminate as to the real
property covered by a Consumer Sublease (as defined in said incorporated
Ground Sublease) upon the commencement of the term of such Consumer
Sublease.

3.  The aforementioned incorporated Ground Sublease provides,
among other things, that the Tenant shall pay all taxes, general and
special assessments and other charges which, during the term of this
lease, may be levied upon or assessed against the leased land and all
interests therein.

4.  The aforementioned incorporated Ground Sublease also
provides, among other things, that Tenant shall not encumber, assign or
otherwise transfer said Sublease, or sublet the whole or any part of
the leased land without the prior written consent and approval of
Landlord, except as otherwise expressly permitted in said incorporated
Ground Sublease.

5.  Landlord hereby irrevocably makes, constitutes and
appoints Tenant as Landlord's true and lawful attorney for him and
in his name, place and stead and for his use and benefit to exercise
any or all of the following powers as to the leased land, any interest
therein and/or any building or other improvement thereon: To undertake
any and all construction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has not executed
the same, as provided and within the time period set forth in said
incorporated Ground Sublease, any map, permit, application, survey,
report, approval, easement deed or other documents as are necessary or
convenient to obtain the required approvals, permits or other action of
the City of Huntington Beach, the County of Orange, California, and

BK 13362 PG 318

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6. Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form-Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

_Robert P. Warmington_

TENANT:

The Robert P. Warmington Co.,
a California Corporation

By _Roger D. Darnell_
Roger D. Darnell
Vice President

STATE OF CALIFORNIA)
COUNTY OF ORANGE ) ss:
On October 19 , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Pearl L. Hunt

STATE OF CALIFORNIA)
COUNTY OF ORANGE ) ss:
On October 19 , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROGER D. DARNELL known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Pearl L. Hunt

-2-



BK 13362 PG 319

EXHIBIT "A"

PARCEL A:    Parcel 1 as per Parcel Map recorded in
Book 108, Pages 47 and 48, inclusive,
Official Records of Orange County,
California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

EXHIBIT "A"

RECORDED D



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

BK 13362 PG. 320

The Robert P. Warmington Co.   32443
1659 Hale Avenue
Irvine, California  92714
Attention: Roger D. Darnell    $6.00

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8.01 A.M. OCT 22 1979
LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

GROUND LEASE

(SHORT FORM – MEMORANDUM)

THIS GROUND LEASE (SHORT FORM — MEMORANDUM) is made this 19th day of October, 1979, by and between HOUSER BROS. CO., a limited partnership, organized and existing under the laws of the State of California (hereinafter "Landlord"), and ROBERT P. WARMINGTON, a married man (hereinafter "Tenant"), upon the following terms and conditions:

W I T N E S S E T H:

1.   Landlord leases to Tenant that certain real property (the "leased land") located in the City of Huntington Beach, County of Orange, State of California, which leased land is described in Exhibit A attached hereto and made a part hereof, at the rental and upon all the terms and conditions set forth in that certain unrecorded ground lease of even date between Landlord and Tenant which is incorporated herein by this reference.

2.   The property is leased for a term of eighty (80) years, commencing as of the date first above written and continuing until the anniversary of the eightieth (80th) year thereafter.  The aforementioned incorporated ground lease provides, among other things, that it shall terminate as to the real property covered by a Residential Lease (as defined in said incorporated ground lease) upon the commencement of the term of such Residential Lease, but not as to the real property covered by a Consumer Sublease or Affiliate Sublease (as defined in said incorporated ground lease).

3.   The aforementioned incorporated ground lease provides, among other things, that the Tenant shall pay all taxes, general and special assessments and other charges which, during the term of this lease, may be levied upon or assessed against the leased land and all interests therein.

4.   The aforementioned incorporated ground lease also provides, among other things, that Tenant shall not encumber, assign or otherwise transfer said lease, or sublet the whole or any part of the leased land without the prior written consent and approval of Landlord, except as otherwise expressly permitted in said incorporated ground lease.

-1-

BK 13362 PG 321

5.    Landlord hereby irrevocably makes, constitutes and appoints Tenant as Landlord's true and lawful attorney for it and in its name, place and stead and for its use and benefit to exercise any/or all of the following powers as to the leased land, any interest therein and/or any building or other improvement thereon: To undertake any and all construction activities on or in connection with the leased land and to execute on behalf of Landlord it Landlord has not executed the same, as provided and within the time period set forth in said incorporated ground lease, any map, permit, application, survey, report, approval, easement deed or other documents as are necessary or convenient to obtain the required approvals, permits or other action of the City of Huntington Beach, the County of Orange, California, and other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated ground lease, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as it might or could do if personally present, hereby ratifying all that its said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.    Should there be any inconsistency between the terms of this instrument and the ground lease incorporated herein, the terms of said incorporated ground lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form - Memorandum of Lease to be duly executed as of the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
Clifford C. Houser,
General Partner

By _____
Vernon P. Houser,
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

-2-

51



BK 13362 PG 322

EXHIBIT "A"

PARCEL A:    Parcel 1 as per Parcel Map recorded in
Book 108, Pages 47 and 48, inclusive,
Official Records of Orange County,
California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

EXHIBIT "A"

52



BK 13362 PG 323

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF ORANGE )

On this 19th day of OCTOBER , 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon P. Houser, known to be to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal:

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

Christine Anne Belmonte
Notary Public in and for said
County and State

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF  ORANGE )

On this 19th day of   October   , 1979, before me, the
undersigned, a Notary Public in and for said State, person-
ally appeared Robert P. Warmington, known to me to be the
person whose name is subscribed to the within instrument,
and acknowledged to me that he executed the same.

WITNESS my hand and official seal:

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

Pearl L. Hunt
Notary Public in and for said
County and State

-3-

RECORDED IN

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

BK 13383PG1868

ROBERT P. WARMINGTON
16592 Hale Avenue
Irvine, California 92714

RECORDED AT REQUEST OF
FIRST AMER TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

$5.00

8:01 A.M. NOV. 6 1979

LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

## COVENANT RUNNING WITH THE LAND

THIS INSTRUMENT is made this 19th day of October, 1979, by HOUSER BROS. CO., a California limited partnership ("Houser") whose sole general partners are Clifford C. Houser and Vernon F. Houser.

## RECITALS

A.    Houser is the owner of certain real property in the City of Huntington Beach, County of Orange, State of California, described as Parcels 1 and 2 as shown on a Parcel Map recorded in Book 108, Pages 47 and 48, inclusive, of Parcel Maps in the Office of the County Recorder of said County (hereinafter "Parcel 1" and "Parcel 2" respectively).

B.    Concurrently herewith, Houser is leasing Parcel 1 to ROBERT P. WARMINGTON, a married man ("Warmington") by a Ground Lease of even date herewith (the "Ground Lease"), a memorandum of which is being recorded concurrently or substantially concurrently with this instrument.

C.    Pursuant to the Ground Lease, Warmington may use Parcel 1 to develop thereon single-family residences or condominiums.   The Ground Lease further provides that access to Parcel 1 from Edinger Avenue (the abutting public street) is to be had over a portion of Monterey Lane, a private street located on right-of-way easements on either side of the southerly boundary of Parcel 1 with Parcel 2.   The maintenance of the portion of Monterey Lane as to which Warmington (and the residents of homes or condominiums to be built by Warmington on Parcel 1) has easement rights is the responsibility of Houser as Landlord under the Ground Lease as provided therein.

D.    It is the intention of Houser and Warmington that Houser's obligations under the Ground Lease also run with and bind a portion of Parcel 2 and the successive owners thereof as described in this instrument.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledged, including without limitation, Warmington's execution of the Ground Lease, Houser hereby covenants, declares and agrees that Houser's obligations as

-1-

54

BK 13383 PG 1869

Landlord concerning Monterey Lane as set forth in Section
7.9 of the unrecorded Option Agreement between Landlord and
Tenant, as optionor and optionee respectively, which pre-
ceded the execution of the Ground Lease, hereby incorporated
herein by reference, are also covenants running with the
portion of Parcel 2 described by extending the southerly
boundary of Parcel 1 parallel to Edinger Avenue to the
westerly boundary of Parcel 2, and every portion of the area
so described (the "Covenant Area"), and shall bind the
Covenant Area, Houser and Houser's heirs, assigns, repre-
sentatives and successors in interest for the benefit of
Warmington and the leasehold estate in Parcel 1 under the
Ground Lease and any portions into which it may be divided,
by Residential Leases (as defined in the Ground Lease) or
otherwise. In the event of a breach of the foregoing
covenants, or any of them, Warmington may seek any remedy
available at law or in equity, including without limitation
an action seeking damages, to seek specific enforcement
thereof, or to enjoin the breach or continued breach there-
of. It is specifically understood that any of the foregoing
remedies may be employed at the option of Warmington, and
the failure to do so upon any one or more of any such breach
shall not be a waiver of the right to employ any of such
remedies upon the continuance of such breach or any sub-
sequent breach. As used in the foregoing, "Warmington"
shall include any of Warmington's heirs, successors or
representatives as well as any assignee or sublessee of
Warmington's leasehold estate under the Ground Lease in
Parcel 1 or any portion into which it may be divided and any
leasee under a Residential Lease, Consumer Sublease or
Affiliate Sublease (as defined in the Ground Lease); pro-
vided, however, lessees under such Residential Leases and
sublessees under such Consumer Subleases shall not have the
right to enforce such covenant except on the majority vote
of the association of such lessees or sublessees formed by
Warmington to manage Parcel 1. If Warmington or such
lessees under such Residential Leases acquire the fee
interest in all or a portion of Parcel 1, the benefit of the
covenant described above shall run in favor of such fee
interests and their successors therein, but subject to the
same restriction concerning enforceability by residents of
Parcel 1 set forth above. Nothing herein shall relieve
Warmington or lessees under such Residential Leases or
sublessees under such Consumer Subleases from their obliga-
tions to pay for a share in the maintenance of the portion
of Monterey Lane used to gain access to Parcel 1.

    IN WITNESS WHEREOF, Houser has executed this instru-
ment on the day and year first above written.

                        HOUSER BROS. CO., a California
                        limited partnership by its
                        general partners

                        By _____
                        Clifford C. Houser

                        By _____
                        Vernon F. Houser

-2-

55

BK 13383 PG 1870

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On this _194_ day of _October_ , 1979.
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon F. Houser, known to me to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

_Christine A. Belmonte_
Notary Public in and for said
County and State

RECORDED DOC

56

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

8346          BK 13362 PG 320

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California 92714
Attention: Roger D. Darnell

32443
$6.00          BK 13424 PG 499

$7.00
C1

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M. OCT 22 1979
LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

GROUND LEASE

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY CALIFORNIA

(SHORT FORM – MEMORANDUM)   -3 22 PM DEC  6 1979

LEE A. BRANCH, County Recorder

THIS GROUND LEASE (SHORT FORM – MEMORANDUM) is made
this 19th day of   October   , 1979, by and between
HOUSER BROS. CO., a limited partnership, organized and
existing under the laws the State of California (herein-
after, "Landlord"), and ROBERT P. WARMINGTON, a married man
(hereinafter "Tenant"), upon the following terms and con-
ditions:

W I T N E S S E T H:

1.   Landlord leases to Tenant that certain real prop-
erty (the "leased land") located in the City of Huntington
Beach, County of Orange, State of California, which leased
land is described in Exhibit A attached hereto and made a
part hereof, at the rental and upon all the terms and condi-
tions set forth in that certain unrecorded ground lease of
even date between Landlord and Tenant which is incorporated
herein by this reference.

2.   The property is leased for a term of eighty (80)
years, commencing as of the date first above written and
continuing until the anniversary of the eightieth (80th)
year thereafter.  The aforementioned incorporated ground
lease provides, among other things, that it shall terminate
as to the real property covered by a Residential Lease (as
defined in said incorporated ground lease) upon the com-
mencement of the term of such Residential Lease, but not as
to the real property covered by a Consumer Sublease or
Affiliate Sublease (as defined in said incorporated ground
lease).

3.   The aforementioned incorporated ground lease pro-
vides, among other things, that the Tenant shall pay all
taxes, general and special assessments and other charges
which, during the term of this lease, may be levied upon or
assessed against the leased land and all interests therein.

4.   The aforementioned incorporated ground lease al-
so provides, among other things, that Tenant shall not en-
cumber, assign or otherwise transfer said lease, or sublet
the whole or any part of the leased land without the prior
written consent and approval of Landlord, except as other-
wise expressly permitted in said incorporated ground lease.

-1-



BK 13362 PG 321
BK 13424 PG 500

5.   Landlord hereby irrevocably makes, constitutes and appoints Tenant as Landlord's true and lawful attorney for it and in its name, place and stead and for its use and benefit to exercise any/or all of the following powers as to the leased land, any interest therein and/or any building or other improvement thereon. To undertake any and all construction activities on or in connection with the leased land and to execute on behalf of Landlord if Landlord has not executed the same, as provided and within the time period set forth in said incorporated ground lease, any map, permit, application, survey, report, approval, easement deed or other documents as are necessary or convenient to obtain the required approvals, permits or other action of the City of Huntington Beach, the County of Orange, California, and other governmental and quasi governmental authorities, including public utilities for the development of the leased land in the manner contemplated by said incorporated ground lease, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as it might or could do if personally present, hereby ratifying all that its said attorney shall lawfully do or cause to be done by virtue of these presents.   It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.   Should there be any inconsistency between the terms of this instrument and the ground lease incorporated herein, the terms of said incorporated ground lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form - Memorandum of Lease to be duly executed as of the day and year first above written.

HOUSER BROS. CO., a California limited partnership by its general partners

By _____
Clifford E. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

                                                "Landlord"

_____
Robert P. Warmington

                                                "Tenant"

-2-



BK 13362 PG 322
BK 13424 PG 501

EXHIBIT "A"

PARCEL A: Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B: A non-exclusive easement for ingress
and egress within and upon an areas 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

ORANGE,CA
Document: LS 13424.499

Page 3 of 5

59



BK 13362 PG 323
BK 13424 PG 502

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF *ORANGE*     )

On this *19th* day of *OCTOBER* , 1979, before me, a Notary Public, personally appeared Clifford C. Houser and Vernon P. Houser, known to be to be the general partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

*Christina Anne Belmonte*
Notary Public in and for said
County and State

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On this 19th day of October , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

*Pearl L. Hunt*
Notary Public in and for said
County and State

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 29, 1983

-3-



STATE OF CALIFORNIA

COUNTY OF Orange

BK 13424 PG 503

On before me, the undersigned, a Notary Public in and for
said State, personally appeared

Clifford C. Houser and Vernon F. Houser,

known to me to be all of the partners of the partnership
that executed the within instrument and acknowledged to me that
such partnership executed the same.

WITNESS my hand and official seal.

Signature Kerry K. Hoffman
Kerry K. Hoffman
Name (Typed or Printed)

OFFICIAL SEAL
KERRY K. HOFFMAN
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Exp Oct 25, 1983

(This area for official notarial seal)

STATE OF CALIFORNIA

COUNTY OF Orange

On December 6, 1979 before me, the undersigned, a Notary Public in and for
said State, personally appeared

Robert P. Warmington

known to me to be the person whose name is
subscribed to the within instrument, and acknowledged to me
that he executed the same.

WITNESS my hand and official seal.

Signature Pearl L. Hunt
PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)





BK 13362 PG 318
BK 13424 PG 505

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.  Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

_____
Robert P. Warmington

TENANT:

The Robert P. Warmington Co.,
a California Corporation

By _____
Roger D. Darnell
Vice President

STATE OF CALIFORNIA)
COUNTY OF ORANGE  ) ss:

On   October 19     , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

_____
Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25,1983

STATE OF CALIFORNIA)
COUNTY OF ORANGE  ) ss:

On   October 19     , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared   ROGER D. DARNELL   known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

_____
Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

-2-

STATE OF CALIFORNIA
COUNTY OF    Orange    }ss.    BK 13424 PG  506

On    December 6, 1979    before me, the undersigned, a Notary Public in and for
said State, personally appeared    Robert P. Warmington

known to me to be the person    whose name    is
subscribed to the within instrument and acknowledged to me
that    he    executed the same.

WITNESS my hand and official seal.

Signature    Pearl L. Hunt

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

(This area for official notarial seal)

---

STATE OF CALIFORNIA
COUNTY OF    Orange    }ss.

On    December 6, 1979    before me, the undersigned, a Notary Public in and for
said State, personally appeared    Roger D. Darnell
known to me to be the    Vice    President, XX

and known to me to be the persons who executed the within instrument,
and known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and ac-
knowledged to me that such corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of
directors.

WITNESS my hand and official seal.

Signature    Pearl L. Hunt

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

(This area for official notarial seal)

---

ORANGE,CA
Document: LS 13424.504

Page 3 of 4

64



BK 13424 PG 507

BK 13362 PG 319

EXHIBIT "A"

PARCEL A:   Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:   A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

RECEIVED

JUL 1 1 1980

Dept. of Real Estate
Los Angeles Subdivisions

RECEIVED
Headquarters
Subdivisions
JUL 1 6 1980
Department of Real Estate

DEPARTMENT OF REAL ESTATE
OF THE
STATE OF CALIFORNIA

(213) 620-2700

CONDOMINIUMS

In the matter of the application of

ROBERT P. WARMINGTON COMPANY,
A California Corporation

for a Final Subdivision Public Report on

TRACT NUMBER 10542
THE GABLES-HUNTINGTON BEACH

ORANGE COUNTY, CALIFORNIA

FINAL SUBDIVISION
PUBLIC REPORT

| | |
|---|---|
| FILE NO. | 46,370 LA |
| ISSUED | JUNE 19, 1980 |
| EXPIRES | JUNE 18, 1985 |

**This Report Is Not a Recommendation or Endorsement of the Subdivision
But Is Informative Only.**

---

**Buyer or Lessee Must Sign That He Has Received and Read This Report.**

---

This Report Expires on Date Shown Above. If There Has Been a Material Change in the Offering, an
Amended Public Report Must Be Obtained and Used in Lieu of This Report.

Section 35700 of the California Health and Safety Code provides that the practice of discrimination
because of race, color, religion, sex, marital status, national origin or ancestry in housing accommodations is
against public policy.

Under Section 125.6 of the California Business and Professions Code, California real estate licensees are
subject to disciplinary action by the Real Estate Commissioner if they make any discrimination, distinction
or restriction in negotiating a sale or lease of real property because of the race, color, sex, religion, ancestry
or national origin of the prospective buyer. If any prospective buyer or lessee believes that a licensee is
guilty of such conduct, he or she should contact the Department of Real Estate.

Information Regarding Schools can be found on Page      8 and 9 of this report.

READ THE ENTIRE REPORT on the following pages before contracting to purchase a lot in this
SUBDIVISION.

<u>SPECIAL NOTES</u>

1. THE UNIFORM BUILDING CODE, CHAPTER 70, PROVIDES FOR LOCAL BUILD-
ING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO
ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LAND-
SLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR
SUBSIDENCE.   THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME
OF THESE HAZARDS MAY EXIST.   SOME CALIFORNIA COUNTIES AND CITIES
HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN
THE CONTROL OF GRADING AND SITE PREPARATION.

   PURCHASERS MAY DISCUSS WITH THE DEVELOPER, THE DEVELOPER'S ENGI-
NEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS
TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED
AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN
EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CON-
STRUCTION OF THIS SUBDIVISION.

2. NO ESCROWS FOR THE SALE OF UNITS WILL CLOSE UNTIL ALL SOILS AND
FILL WORK HAS BEEN PERFORMED IN ACCORDANCE WITH THE RECOMMENDA-
TIONS OF THE SOILS ENGINEER AND A NOTICE OF COMPLETION COVERING
THE COMMON AREA IMPROVEMENTS HAS BEEN FILED OF RECORD.

3. THIS PROJECT IS A COMMON-INTEREST SUBDIVISION OF THE TYPE RE-
FERRED TO AS A "CONDOMINIUM".  IT WILL BE OPERATED BY AN INCOR-
PORATED OWNERS ASSOCIATION.

4. SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY
AN ASSOCIATION OF HOMEOWNERS, AND IT'S ESSENTIAL THAT THIS ASSO-
CIATION BE FORMED EARLY AND PROPERLY, THE DEVELOPER MUST:

   a. COMPLETE ALL COMMON FACILITIES BY APPROXIMATELY JUNE, 1980.
   (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.); AND

   b. PAY ALL THE MONTHLY ASSESSMENTS WHICH HE OWES TO THE HOME-
   OWNERS ASSOCIATION FOR UNSOLD UNITS.  THE PAYMENTS MUST COM-
   MENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CLOSES
   <u>FIRST</u> SALE.  (REGULATIONS 2792.9 AND 2792.16).

THE HOMEOWNER ASSOCIATION MUST:

   c. CAUSE THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY
   TO BE HELD WITHIN 45 DAYS AFTER 51% SELL-OUT, OR IN ANY
   EVENT, NO LATER THAN SIX MONTHS AFTER CLOSING THE FIRST
   SALE.  (REGULATIONS 2792.17 AND 2792.19); AND

   d. PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND
   INCOME STATEMENT.  (REGULATION 2792.22).

# COMMON INTEREST SUBDIVISION GENERAL INFORMATION

The project described in the attached Subdivision Public Report is known as a common-interest subdivision. Read the Public Report carefully for more information about the type of subdivision. The subdivision includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot/unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot/unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this subdivision. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest subdivision should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the

board. In short, "they" in a common-interest subdivision is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

Until there is a sufficient number of purchasers of lots or units in a common-interest subdivision to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

When contemplating the purchase of a dwelling in a common-interest subdivision, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common-interest subdivision is very much like governing a small community . . . the management can serve you well, but you will have to work for its success.



68

SPECIAL NOTES   (Continued)

5.  THE SUBDIVIDER HAS STATED THAT HE WILL PROVIDE YOU WITH A COPY
    OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, ONLY
    BY POSTING THEM IN A PROMINENT LOCATION IN THE SALES OFFICE.
    THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUB-
    STANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OB-
    LIGATIONS AND COSTS OF MAINTENANCE AND OPERATION.   YOU SHOULD
    READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF
    TO PURCHASE A UNIT.

6.  THE SUBDIVIDER STATED HE WILL NOT FURNISH THE CURRENT BOARD OF
    OFFICERS OF THE HOMEOWNERS ASSOCIATION THE BUILDING PLANS TO IN-
    CLUDE DIAGRAMS OF LOCATION OF MAJOR COMPONENTS, UTILITIES, AND
    RELATED DATA.

    THESE ITEMS WILL BE IMPORTANT TO THE BOARD OF OFFICERS OR THOSE
    WHO WILL MANAGE OR REPAIR COMMON FACILITIES IN THIS SUBDIVISION.

7.  SINCE THE SUBDIVIDER STATES HE WILL NOT FURNISH THE SAID PLANS
    AND DIAGRAMS, THE BOARD OF OFFICERS OF THE HOMEOWNER ASSOCIATION
    SHOULD TRY TO OBTAIN THEM FROM THE CONTRACTORS WHO WORKED ON THE
    PROJECT OR FROM THE COUNTY/CITY BUILDING DEPARTMENT.

8.  THE SUBDIVIDER HAS AN INTEREST IN THE ESCROW COMPANY WHICH IS TO
    BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS
    SUBDIVISION.   THE NATURE OF THE SUBDIVIDER'S INTEREST IS SET
    FORTH IN THE ESCROW INSTRUCTIONS WHICH ARE TO BE USED.

9.  IF YOU ACQUIRE TWO OR MORE UNITS YOU MAY BE REQUIRED TO OBTAIN
    AN AMENDED PUBLIC REPORT BEFORE OFFERING TWO OR MORE OF THE
    UNITS FOR SALE TO OTHERS.   IF YOU INTEND TO SELL TWO OR MORE
    UNITS OR LEASE THEM FOR MORE THAN ONE YEAR, YOU ARE REQUIRED TO
    OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER
    THE UNITS FOR SALE OR LEASE.

10. WARNING:  WHEN YOU SELL YOUR LEASEHOLD INTEREST IN A CONDOMINIUM
    UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE
    DECLARATION OF RESTRICTIONS, THE ARTICLES OF INCORPORATION AND
    OF THE BYLAWS.   IF YOU FORGET TO DO THIS, IT MAY COST YOU A PEN-
    ALTY OF $500.00 -- PLUS ATTORNEY'S FEES PLUS DAMAGES.   (SEE
    CIVIL CODE SECTION 1360.)

INTERESTS TO BE CONVEYED:   You will receive a lease to a specified
unit, together with an undivided fractional leasehold interest as a
tenant in common in the common area together with a membership in
"The Gables-Huntington Beach Homeowners Association" and rights to
use the common area.

LOCATION AND SIZE:   This subdivision is located at Edinger Avenue
and Monterey Street within the city limits of Huntington Beach and
is serviced by the usual city amenities.

This is a single phase project which consists of approximately 7.605
acres on which twenty buildings containing 80 units and 100 garage
spaces, 100 driveway spaces, 59 on-street guest spaces and 53 off-
street guest space will be constructed, together with common facili-
ties consisting of a swimming pool, jacuzzi, cabana, volley ball
court, landscaped areas and private drives which will be constructed

MANAGEMENT AND OPERATION:   The Gables-Huntington Beach Homeowners
Association, which you must join, manages and operates the common
areas in accordance with the Restrictions, Articles of Incorporation
and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES:   The subdivider has submitted
a budget for the maintenance and operation of the common areas and
for long-term reserves.   This budget was reviewed by the Department
of Real Estate.   You should obtain a copy of this budget from the
subdivider.   Under this budget, the monthly assessment against each
subdivision unit is $65.74 of which $13.84 is a monthly contribution
to long-term reserves and is not to be used to pay for current oper-
ating expenses.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER
> SHOWS A MONTHLY ASSESSMENT FIGURE WHICH VARIES
> 10% OF MORE FROM THE ASSESSMENT AMOUNT SHOWN IN
> THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DE-
> PARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN
> AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in
accordance with the procedure prescribed in the CC&R's or Bylaws.
In considering the advisability of a decrease (or a smaller in-
crease) in assessments, care should be taken not to eliminate
amounts attributable to reserves for replacement or major mainte-
nance.

> EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT
> ACCURATELY AND EVEN IF ACCURATELY ESTIMATED
> INITIALLY, MOST EXPENSES INCREASE WITH THE AGE
> OF FACILITIES AND WITH INCREASES IN THE COST OF
> LIVING.

Monthly assessments will commence on all units during the month fol-
lowing the closing of the first sale of a unit.   From that time, the
subdivider is required to pay the association a monthly assessment
for each unit which he owns, which has not been leased.

The remedies available to the association against owners who are de-
linquent in the payment of assessments are set forth in the CC&R's.
These remedies are available against the subdivider as well as
against other owners.

<u>MAINTENANCE AND OPERATIONAL EXPENSES</u>:    (Continued)

The subdivider has posted a bond as partial security for his obliga-
tion to pay these assessments.  The governing body of the associa-
tion should assure itself that the subdivider has satisfied his ob-
ligations to the association with respect to the payment of assess-
ments before agreeing to a release or exoneration of the security.

<u>EASEMENTS</u>:    Easements for utilities and other purposes are shown on
the Title Report and Subdivision Map recorded in the Office of the
Orange County Recorder, Book 456 of Miscellaneous Maps, Pages 48
thru 49 and Condominium Plan recorded in Book 13358, Page 1193.

<u>TITLE</u>:    Title is vested in Houser Bros. Co., a limited partnership,
subject to:

A Ground Lease dated October 19, 1979, executed by Houser Bros. Co.,
a limited partnership, as Lessor, and Robert P. Warmington, a
married man, as Lessee, a memorandum of which was recorded October
22, 1979 in Book 13362, Page 320 of Official Records and re-recorded
December 6, 1979 in Book 13424, Page 499 of Official Records.
Robert P. Warmington in turn has sublet the Ground Lease to Robert
P. Warmington Co., a California corporation, the applicant.

<u>RESTRICTIONS</u>:    This subdivision is subject to Restrictions recorded
in the Office of the Orange County Recorder, Book 13618, Page 982.

> FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS,
> YOU SHOULD READ THE RESTRICTIONS.  THE SUBDIVIDER
> SHOULD MAKE THEM AVAILABLE TO YOU.

<u>WATER RIGHTS</u>:    You will not own the water rights under your land be-
low a depth of 500 feet.  These have been dedicated to the City of
Huntington Beach.  The right to surface entry has been waived.

<u>USES AND ZONING</u>:    Property to the south is zoned MH (Mobilehome).

<u>TAXES</u>:    The maximum amount of any tax on real property that can be
collected annually by counties is 1% of the full cash value of the
property.  With the addition of interest and redemption charges on
any indebtedness, approved by voters prior to July 1, 1978, the to-
tal property tax rate in most counties is approximately 1.25% of the
full cash value.

For the purchaser of a lot or unit in this subdivision, the "full
cash value" of the lot or unit will be the valuation, as reflected
on the tax roll, determined by the county assessor as of the date of
purchase of the lot or unit or as of the date of completion of an
improvement on the lot if that occurs after the date of purchase.

71

CONDITIONS OF SALE: If your purchase involves financing, a form of deed of trust and note will be used. These documents may contain the following provisions:

An Acceleration Clause. This means that if you sell the property or default in your payment, the lender may declare the entire unpaid loan balance immediately due and payable.

A Late Charge. This means that if you are late in making your monthly payment you may have to pay an additional amount as a penalty.

A Prepayment Penalty. This means that if you wish to pay off your loan in whole or in part before it is due, you may be required to pay an additional amount as a penalty in accordance with the terms of the loan.

Transfer of the interest to the purchaser may be by a lease. Your rights and responsibilities are governed by the specific terms of such lease. You should read the entire lease.

The lease includes the following provision:

If you do not pay your installment on time, you may lose your property and all money you have paid in.

BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY
UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING: The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you. (Refer to Sections 11013 and 11013.2(a) of the Business and Professions Code.)

If the escrow has not closed on your unit within one (1) year of the date of your deposit receipt, you may request return of your deposit.

FILLED GROUND: The common area contains filled ground varying to a maximum depth of 3.6 feet. These soils are to be properly compacted for the intended use under the supervision of a State licensed engineer.

FLOOD AND DRAINAGE: Orange County advises as follows:

The land lies within the historic floodplain of the Santa Ana River where the risk of floodng has been substantially reduced since the completion of Prado Dam and Reservoir by the U. S. Corps of Engineers in 1941. The largest flood-producing storm since completion of the dam occurred in 1969, an event which to the best information now available can be expected to recur on an average of 25 to 30 years over a long period of time. Peak discharges in 1969 seriously damaged the Santa Ana River levees within Orange County, but no outbreak occurred and the levees have now been repaired.

72

FLOOD AND DRAINAGE: (Continued)

In a report entitled "Flood Insurance Study Huntington Beach, California" prepared by the U. S. Army Corps of Engineers for the Federal Insurance Administration, the Corps of Engineers indicates that the occurrence of a storm with a recurrence interval approximating 50 years or greater will generate flows exceeding the present capacity of the Santa Ana River Channel. Such flows will cause breaching of the river levee at indeterminable locations followed by widespread flooding of the Talbert Valley. It is believed impossible to predict in advance where such break-out might occur or what particular area would subsequently be inundated.

The Corps of Engineers recently completed a study proposing modification to the Santa Ana River in the County of Orange, to Prado Dam, and the construction of an additional dam in the Mentone area of San Bernardino County. However, it is impossible to predict when project authorization will be made by Congress, the appropriation approved, and the actual construction accomplished.

It is the opinion of this office that upon completion of the construction in accordance with the proposed grading, storm drain and street plans, the improvements on the building pads will be protected from flooding from storms occurring on an average of once every 50 years or less.

PUBLIC TRANSPORTATION: Bus service is available adjacent to the site on Edinger Avenue.

SCHOOLS: The Ocean View School District provides the following information:

| School | Distance |
|---|---|
| Haven View School 16081 Waikiki Lane Huntington Beach, California | 1/4 mile |

The projected enrollment from the proposed tract is twenty K-8 grade students. The capacity of Haven View School is 510 and enrollment is 447.

The District shall provide free transportation to and from school for pupils who live beyond the minimum distances, as measured by the shortest route. Where hazardous conditions exist, transportation may be provided for students who live less than the minimum distances. Handicapped children will be provided transportation as needed.

The Huntington Beach Union High School District provides the following information:

| School | Distance |
|---|---|
| Marina High School 15871 Springdale | 1.7 miles |

73

<u>SCHOOLS</u>:  (Continued)

Transportation is furnished at District expense to students living a
distance fo more than three miles from their schools.

Huntington Beach Union High School District has six comprehensive
high schools with a total capacity of 16,367 and a current enroll-
ment of 21,346.  This student overload is being accommodated by tem-
porary structures and extended day schedule.  The impact of con-
tinued enrollment growth will accelerate the extension of the school
day and the continued implementation of other housing alternatives
until a new high school is constructed.  Any new housing must be
considered carefully based on the availability of schools in
Huntington Beach Union High School District.

    <u>NOTE</u>:  This school information was correct as of the
            date of this report.  Purchasers may contact
            the local school district for current infor-
            mation on school assignments, facilities and
            bus service.

For further information in regard to this subdivision, you may call
(213) 620-2700 or examine the documents at the Department of Real
Estate, 107 South Broadway, Suite 7001, Los Angeles, CA 90012.

74

8691

BK 13824 PG 1253

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

Houser Bros. Co.
17610 Beach Boulevard
Suite 32
Huntington Beach, California

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7, 1980
LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF MASTER LEASE

HOUSER BROS. CO., a limited partnership, as Landlord,
and ROBERT P. WARMINGTON, as Tenant, hereby carcel, effective
when this instrument is recorded in the Office of the County
Recorder of Orange County, California, that certain Ground
Lease dated October 19, 1979, a Short Form-Memorandum of
which was recorded in Book 13424, Page 499, Official Records
of Orange County, California, with respect to those portions
of Lots 1 and 2 of Tract 10542 in the City of Huntington
Beach, County of Orange, State of California, as shown on a
Map recorded in Book 456, Pages 43 and 50 of Miscellaneous
Maps, in the Office of the County Recorder of Orange County,
California, described on Exhibit A attached hereto.

IN WITNESS WHEREOF, HOUSER BROS. CO. and ROBERT P.
WARMINGTON have executed this instrument as of August 1,
1980.

HOUSER BROS. CO.

By _____

By _____

_____
ROBERT P. WARMINGTON

Branch :A14,User :2004                              Comment:                              Station Id :M3Y7

BX 13824 PG 1254

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _____ Aug 12 _____, 1980, before me, the undersigned,

a Notary Public in and for said County and State, personally

appeared    VERNON F. HOUSER _____ and

CLIFFORD C. HOUSER _____, known to me to be

_____ two _____ of the partners of the limited

partnership that executed the within instrument, and

acknowledged to me that such limited partnership executed

the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

*Pearl L. Hunt*
Notary Public in and for
said County

[SEAL]


STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On  August 1 ____, 1980, before me, the undersigned, a

Notary Public in and for said County and State, personally

appeared ROBERT P. WARMINGTON, known to me to be the person

whose name is subscribed to the within instrument and

acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

*Pearl L. Hunt*
Notary Public in and for
said County

[SEAL]

2



Branch :A14,User :2004                          Comment:                                    Station Id :M3Y7

BK 13824 PG 1255

## EXHIBIT A

**Parcel 1**

Unit *13*, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

**Parcel 3**

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

**Parcel 4**

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED D

77

8692

BK 13824 PG 1256

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California 92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF SUBLEASE

ROBERT P. WARMINGTON, as Landlord, and THE ROBERT P.
WARMINGTON CO., a California corporation, as Tenant, hereby
cancel, effective when this instrument is recorded in the
Office of the County Recorder of Orange County, California,
that certain Sublease dated October 19, 1979, a Short Form-
Memorandum of which was recorded in Book 13424, Page 504,
Official Records of Orange County, California, with respect
to those portions of Lots 1 and 2 of Tract 10542, in the City
of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of
Miscellaneous Maps, in the Office of the County Recorder of
Orange County, California, described on Exhibit A attached
hereto.

IN WITNESS WHEREOF, ROBERT P. WARMINGTON and THE
ROBERT P. WARMINGTON CO. have executed this instrument as
of August 1, 1980.

Robert P. Warmington

THE ROBERT P. WARMINGTON CO.

By

By

BK 13824 PG 1257

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On August 1 , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.



Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On August 1 , 1960, before me, the undersigned, a
Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____ , known to me to be
the __Vice President__ , and __WILLIAM J. PITTMAN__ ,
known to me to be the __Secretary__ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



Notary Public in and for said
County

[SEAL]

2

79

BK 13824 PG 1258

## EXHIBIT A

### Parcel 1

Unit *53*, as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange County,
California, excepting that portion consisting of build-
ings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

### Parcel 4

A non-exclusive easement and right to use the
Common Area as defined on said Condominium Plan,
except the Restricted Common Area, excepting that
portion consisting of buildings and other improve-
ments.

RECORDED I

80

8693

BK 13824 PG 1259

$ 17.00

Recorded at the Request of and
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:40 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

No Consideration
Lease Is For a Definite Term

178-011-01

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ara,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

## W I T N E S S E T H:

1. **PROPERTY LEASED.** For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
Californ   , as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

Parcel 1

Unit 53, as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN:4077A

BK 13824 PG 1260

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion, consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

### SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  TERM OF LEASE.  The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount.  Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment".  All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.  USE OF LEASED LAND.  Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto.  Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                    2



Branch :A14,User :2004                    Comment:                    Station Id :M3Y7

BK 13824 PG 1261

6. **IMPROVEMENTS.** When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7. **MAINTENANCE OF LEASED LAND.** Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8. **RESTORATION OF IMPROVEMENTS.** If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9. **LIENS AND CLAIMS.** Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land. Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith. Landlord shall have the right at

WPN: 4077A                        3




BK 13824 PG 1262

any time to post and maintain on the leased land such
notices as may be necessary to protect landlord against
liability for all such liens or otherwise.
Notwithstanding anything to the contrary contained in this
Article, if Tenant shall, in good faith, contest the
validity of any such lien, claim or demand, the Tenant
shall, at its expense, defend itself and landlord against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord or the leased land, and if
Landlord shall require, Tenant shall furnish to Landlord a
surety bond satisfactory to Landlord in an amount equal to
such contested lien, claim or demand, indemnifying
Landlord against liability for same, or if Landlord shall
request, Tenant shall procure and record the bond provided
for in Section 3143 of the California Code of Civil
Procedure, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the
effect of such lien or claim or action thereon.

10.  LIABILITIES.  Landlord shall not be liable for any
loss, damage or injury of any kind whatsoever to the
person or property of Tenant, or any of Tenant's
employees, guests or invitees or of any other person
whomsoever, caused by any use of the leased land or by any
defect in any building, structure or other improvement
constructed thereon, or arising from any accident on the
leased land or any fire or other casualty thereon, or
occasioned by the failure on the part of Tenant to
maintain said premises in safe condition, or by any
nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  LANDLORD PAYING CLAIMS.  Should Tenant fail or refuse
to pay any tax, assessment or other charge upon the leased
land when due and payable as provided herein, or any lien
or claim arising out of the construction, repair,
restoration, maintenance and use of the leased land and
the buildings and improvements thereon, or any other
claim, charge or demand which Tenant has agreed to pay
under the covenants of this Lease, and if after thirty
(30) days written notice from landlord to Tenant and to
its authorized encumbrancer, if any, Tenant or its said
encumbrancer shall fail or refuse to pay and discharge the
same, then Landlord may, at its option, pay such tax,
assessment, lien, claim, charge or demand, or settle or
discharge any action therefor or judgment thereon, and all
costs, expenses and other sums incurred or paid by
Landlord in connection therewith shall be repaid to
Landlord by Tenant upon written demand, together with
interest thereon at the rate of ten (10%) percent per
annum from the date of payment until repaid, and any

WPN: 4077A                4



Branch :A14,User :2004                    Comment:                         Station Id :M3Y7

BK 13824 PG 1263

default in such repayment shall constitute a breach of the
covenants and conditions of this Lease. Notwithstanding
the forgoing, if Tenant shall in good faith contest the
validity of any tax or assessment levied against the
leased land, then Tenant may withhold payment thereof
pending settlement of its claim or pay the same under
protest; and, in either case, at Tenant's expense, shall
defend itself and landlord against the same and shall pay
and satisfy any adverse judgment that may be rendered
thereon before the enforcement thereof against Landlord or
the leased land.

12. **ASSIGNMENT.** Tenant shall have the right to assign,
sublet or otherwise transfer its interest under this Lease
without the prior written consent of Landlord.
Notwithstanding the foregoing, this Lease or any right
hereunder shall in no case be assigned separate and apart
from the Tenants interest in the improvements located on
the leased land. Also notwithstanding the foregoing,
Landlord shall accept Tenant's assignee in writing
following a request therefor.

13. **ENCUMBRANCES.** Tenant shall have the right to assign
Tenant's interest in this Lease and the leased land to a
trustee under a deed of trust (herein called "trust
deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions. Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A. Said trust deed and said assignment and all rights
acquired thereunder shall be subject to each and all of
the covenants, conditions and restrictions set forth in
this Lease and to all rights and interests of the Landlord
hereunder; and, in the event of any conflict between the
provisions of this Lease and the provisions of any such
trust deed or assignment, the provisions of this Lease
shall control.

B. Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C. Upon and immediately after the recording of the
trust deed covering the leased land, Tenant, at Tenant's
expense, shall cause to be recorded in the office of the
Recorder of Orange County, California, a written request
for a copy, to the Landlord, of any notice of default and
of any notice of sale under the trust deed as provided by
the statutes of the State of California relating thereto.
Tenant shall furnish to landlord a complete copy of the
trus. deed and note secured thereby, together with the
name and address of the holder thereof.

D. Landlord agrees that it will not terminate this
Lease because of any default or breach hereunder on the
part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within ninety (90) days after
service of written notice on the encumbrancer by Landlord

WPN: 4077A              5

Branch :A14,User :2004                    Comment:                              Station Id :M3Y7

BK 13824 PG 1264

of its intention to terminate this Lease for such default
or breach, shall:

    (a)  Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

    (b)  Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this
Article may be given concurrently with or after Landlord's
notice of default to Tenant as herein provided for in the
Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any
installment of rent or any other sum provided in this
Lease to be paid by Tenant at the times herein specified
and should such default continue uncured for a period of
thirty (30) days after written notice from Landlord, or
should Tenant default in the performance of or breach any
other covenant, condition or restriction of this Lease
herein provided to be kept or performed by Tenant, and
should such default or breach continue uncured for a
period of sixty (60) days from and after written notice
thereof by Landlord to Tenant, then and in any such event,
Landlord may declare this Lease to be in default and
Landlord shall have all of the remedies available at law
or stated in the Article entitled "Remedies" or elsewhere
provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this
Lease, and on condition that Tenant shall not then be in
default under any of the covenants and conditions hereof,
and not otherwise, Tenant shall have the right during the
last ninety (90) days of said term, at its sole expense,
to remove from the leased land all buildings and other
improvements thereon, and Tenant shall fill all
excavations and remove all parts of said buildings
remaining after the same are removed and surrender
possession of the leased land to Landlord in a clean and
orderly condition.  In the event any of said buildings and
other improvements shall not be removed from the leased

WPN: 4077A                          6



Branch :A14,User :2004                Comment:                                        Station Id :M3Y7

BK 1′ ′ ᴓ 1265

land within the time hereinabove provided, the same shall
become and thereafter remain a part of the leased land and
shall belong to Landlord without the payment of any
consideration therefor.  Upon the expiration of the term
hereof, or any sooner termination of this Lease, Tenant
shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.  PLACE OF PAYMENTS AND NOTICES.  All rents and other
sums payable by Tenant to Landlord hereunder shall be paid
to the Landlord at the address set forth after Landlord's
name above.  Whenever either party hereto desires to give
written notice to the other respecting this Lease, such
notice, if not personally delivered to Landlord or to
Tenant, shall be sent by certified or registered mail,
with postage prepaid, and directed to either party at the
address hereinabove specified, or at such other address as
either party may hereafter designate in writing.  The
service of any such written notice shall be deemed
complete at the time of such personal delivery or within
two (2) days after the mailing thereof in Orange County,
California, as herein provided.  Should Landlord or Tenant
consist of more than one person, the personal delivery or
mailing of such notice to any one of such persons shall
constitute complete service upon all such persons.  Any
notice provided in the Article hereof entitled
"Encumbrances" to be given by Landlord to any encumbrancer
of Tenant shall be given in the same manner as herein
provided in this Article and shall be delivered to the
encumbrancer or directed to its address as last shown on
the records of Landlord.

17.  REMEDIES.  Should Tenant at any time be in default
hereunder pursuant to the provisions of the Article hereof
entitled "Termination", then notwithstanding Tenant's
breach of this Lease and abandonment of the leased land,
this Lease shall continue in effect so long as Landlord
does not terminate Tenant's right to possession and
Landlord may enforce all of its rights and remedies
hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and
with process of law to reenter the leased land and take
possession thereof and remove all persons therefrom, and
Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the
same may from time to time become due and to bring actions
for such collections without terminating this Lease, and
to thereafter at any time elect to terminate this Lease
and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord
shall be entitled to recover the worth at the time of the
award of the amount by which the unpaid rent for the
balance of the term, after the time of the award, exceeds
the amount of the rental loss for the same period that
Tenant proves could be reasonably avoided, together with

WP# : 4077A                    7

87

Branch :A14,User :2004                                     Comment :                                     Station Id :M3Y7

BK 13824 PG 1266

the rent then unpaid, if any, together with any other remedy permitted under Califonia Civil Code Section 1951.2 or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under the provisions of A or B above, Landlord shall not be liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease, Landlord agrees that if the default complained of, other than for the payment of monies, is of such nature that the same cannot be cured within the period specified above, then such default shall be deemed to be cured if Tenant, within such period, shall have commenced the curing thereof and shall continue thereafter with all due diligence to cause such curing and does so complete the same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of Tenant under this Lease is a material consideration for this Lease, the breach of which shall be deemed a default hereunder. All rights, options and remedies of Landlord contained in this Lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy or relief which may be provided by law, whether or not stated in this Lease. No waiver by Landlord of a breach of any of the terms, covenants or conditions of this Lease by Tenant shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect default other than as specified in said waiver. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

In the event any action shall be instituted between Landlord and Tenant in connection with this Lease, the party prevailing in such action shall be entitled to recover from the other party all of its costs, including reasonable attorneys' fees, as fixed by the court therein.

18.  REPRESENTATIONS.  Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19.  HOLDING OVER.  This Lease shall terminate and become null and void without further notice upon the expiration of said term. Any holding over shall not constitute a

WPN: 4077A                    8



BK 13824 PG 1267

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

20. **EMINENT DOMAIN.**

A. **Definition of Terms.** The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes herein above provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B. **Effect of Taking.** If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land. If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C. **Allocation of Award - Total Taking.** All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a) Tenant shall be entitled to an amount equal
to the sum of the following:

(i) The then fair market value of all of
the improvements located on the leased land; and

(ii) The then fair market value of the
Tenant's leasehold interest in the leased land.

(b) Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                9

BK 13824 PG 1268

D.  Allocation of Award - Partial Taking.  All
compensation and damages awarded for the taking of a
portion of the leased land shall be allocated and divided
as follows:

    (a)  Tenant shall be entitled to an amount equal
to the sum of the following:

        (i)  The proportionate reduction of the fair
market value of the improvements located on the
leased land; and

        (ii)  The proportionate reduction of the fair
market value of Tenant's leasehold interest in
the leased land.

    (b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event
of a partial taking, the rent payable by Tenant hereunder
shall be adjusted from the date of taking to the next
rental adjustment date or to the date of the expiration of
the term of this Lease, whichever date is sooner.  Such
rental adjustment will be made by reducing the basic
rental payable by the Tenant in the ratio that the fair
market value of the leased land at the date of taking
bears to the fair market value of the leased and
immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair
market value must be determined  for the purposes of this
Article, and the parties fail to agree in writing on such
fair market value within ten (10) days of a request for
such agreement from either party, then fair market value
shall be determined by the arbitration procedure set forth
in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000,
January 1, 2020 and January 1, 2040, the annual rental
payer hereunder shall be adjusted to a sum equal to 8% of
the unimproved fair market value of the Leased Land.
After any such adjustment of rent, Tenant shall pay to
Landlord such rental as so adjusted during the period
applicable thereto at the times and in the manner herein
provided for in the Article entitled "Rental"; provided,
however, in no event shall the rental, as so adjusted, be
less than the initial rental in the Article of this Lease
entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040
(as the case may be), the parties hereto shall have failed
to agree upon such adjusted rental, then and thereupon the
fair market value of the leased land and the amount of
rental to be adjusted in relation thereto, as hereinafter
provided, shall be determined by arbitration as follows:
within ten (10) days after the date set for determining
fair market value, each of the parties hereto shall
appoint in writing an arbitrator and give written

WPN: 4077A                          10



Branch :A14,User :2004                          Comment :                          Station Id :M3Y7

BK 13824 PG 1269

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.  Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes.  The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental".  If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental.  If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A          11



91

BK 13824 PG 1270

height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots fo. the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so erected. Such rights of use shall be as not to interfere with the use and enjoyment of the lessees of adjoining lots; and, in the event that any such party wall or fence is damaged or injured from any cause other than the act or negligence of one of the lessees, the same shall be repaired or rebuilt at their joint expense.

24. CONSTRUCTION AND EFFECT. Time is of the essence of this Lease. The article headings herein are used only for the purpose of convenience and shall not be deemed to limit the subject to the articles hereof or to be considered in the construction thereof. Each and all of the obligations, covenants, conditions and restrictions of this Lease shall be deemed as running with the land and shall inure to the benefit of and be binding upon and enforceable against, as the case may require, the successors and assigns of Landlord and the heirs, executors, legal representatives, encumbrancers, assignees, successors and subtenants of Tenant. If Tenant consists of more than one person, the covenants and obligations of Tenant hereunder shall be the joint and several covenants and obligations of such persons. In this Lease, the masculine gender includes the feminine and the neuter, and the singular number includes the plural, whenever the context so requires.

25. NON-DISTURBANCE. No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reaso. of any such foreclosure or other action but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

BK 13824PG 1271

**26. ESTOPPEL CERTIFICATES.** Landlord and Tenant shall at any time and from time to time, upon not less than ten (10) days prior written request by the other party or parties to this Lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Tenant, or any prospective purchaser of the estate of Landlord, or any lender or prospective assignee of any lender on the security of the leased land or the fee estate or any part thereof, or upon the leasehold estate of Tenant or any part thereof, and any third person.

**27. CONDOMINIUM SUBLEASE.**

(a) Landlord hereby agrees with Tenant for the benefit of the Condominium Owner/Subtenant under any Condominium Subleases that:

(i) So long as such Condominium Owner/Subtenant is not in default in the payment of rental or other charges due under the Condominium Sublease or in the performance of any of the other terms, covenants or conditions of the Condominium Sublease on such Condominium Owner/Subtenant's part to be performed, such Condominium Owner/Subtenant's possession of the lot subject to such Condominium Sublease and Condominium Owner/Subtenant's other rights and privileges under the Condominium Sublease shall not be interfered with by the Landlord, its successors or assigns.

(ii) Should this Lease be terminated prior to the expiration of the term hereof or any extensions of said term for any reason whatsoever, including without limitation, as a result of Tenant's breach thereof or default thereunder, the Condominium Sublease shall continue in full force and effect as a direct lease between Landlord and the Condominium Owner/Subtenant under the Condominium Sublease, upon and subject to all of the terms, covenants and conditions of the Condominium Sublease for the balance of the term thereof remaining, provided that such Condominium Owner/Subtenant attorns to Landlord in writing. Notwithstanding the foregoing, Landlord shall not be bound by any act or omission of Tenant as the prior sublessor under the Condominium Sublease. Landlord shall not be bound by any prepayment of rent (other than through the Payment Agreement referred to in subparagraph 27(c) hereof or other charges which such Condominium Owner/Subtenant might have paid

WPN: 4077A          11

BK 13824 PG 1272

for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall
not be bound by any amendment to or modification
of any Condominium Sublease or by any waiver or
forbearance on the part of Tenant as the prior
sublessor thereunder made or given without the
written consent of Landlord.

(b)    If, the provisions of the foregoing
notwithstanding, a Condominium Sublease is
terminated by reason of any termination of this
Lease, it is hereby agreed that the Condominium
Owner/Subtenant under such Condominium Sublease
and Landlord shall enter into a new lease upon
the terms and conditions of the Condominium
Sublease for the then remaining balance of the
term of the Condominium Sublease.

(c)    In the event that such Condominium Subleases
shall call for the payment of rent less
frequently than quarte   annually, the provisions
of subparagraph 27(a) shall only be applicable if
Landlord and Tenant enter into a Payment
Agreement under the terms of which all rental to
be paid by Condominium Owner/Subtenant under the
terms of the Condominium Sublease will be paid to
a neutral depository, such as a bank, savings and
loan, trust company or escrow company.  Such
neutral depository shall be instructed to remit
to lessor from such sum collected the amount due
under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this
Lease as of the day and year first above written.

HOUSER BROS. CO., a limited
partnership

By _____
    General Partner

By _____
    General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

WPN: 4077A            14

BK 13824 PG 1273

STATE OF ___CALIFORNIA___ )
                                                    ) ss.
COUNTY OF ___ORANGE___ )

On ___Aug. 13___, 19 80 before me the
undersigned, a Notary Public in and for said State,
personally appeared Vernon F. & Clifford C. Houser, known
to me to be     two     of the partners
of the partnership that executed the within instrument,
and acknowledged to me that such partnership executed the
same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983
[Seal]

_Pearl L. Hunt_
Notary Public

STATE OF ___CALIFORNIA___ )
                                                    ) ss.
COUNTY OF ___ORANGE___ )

On ___August 1___, 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared ___ROBERT P. WARMINGTON___,
known to me to be the person whose name is subscribed to
the within instrument, and acknowledged to me that ___HE___
executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public

[Seal]

WPN: 4077A          15

RECORDED L

8694    BK 13824 PG 1274

$ 19.00

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California    92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

AP 178-06-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of ___August___ , 1980, by and between
ROBERT F. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

whose address is
8476 Al. port, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

## W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit 53 on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.  PROPERTY LEASED.  For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

   (i)  Unit 53 , (the "Unit") as shown and
   defined on that certain Condominium Plan
   recorded in Book 13358 Pages 1193 et seq.,
   Official Records of Orange County,
   California (the "Condominium Plan"),
   excepting therefrom all buildings and other
   improvements;

   (ii)  An undivided one-eightieth (1/80)
   interest in the Common Areas (as defined in
   the Condominium Plan, excepting therefrom
   all buildings and other improvements;

   (iii)  An easement for the exclusive use and
   occupancy of those portions of the
   Restricted Common Area (as defined on said
   Condominium Plan) for entry and staircases
   and attic space relating to said Unit,
   excepting therefrom all buildings and other
   improvements;

WPN:2004A



Branch :A14,User :2004                    Comment :                        Station Id :M3Y7

BK 13824 PG 1275

(iv)  A non-exclusive easement and right to
use the Common Area (as defined on said
Condominium Plan), except the Restricted
Common Area, excepting therefrom all
buildings and other improvements.

It is understood that "Houser Bros. Co., a California
limited partnership (hereinafter the "Master Lessor") and
Landlord have entered into a Ground Lease dated as of
August 1, 1980 which is being recorded concurrently
herewith (the "Master Lease") as lessor and lessee,
respectively.  This lease shall be subject and subordinate
to the Master Lease, provided that, pursuant to the Master
Lease, Master Lessor has agreed not to disturb the
subleasehold estate of Tenant in the event of a default
under the Master Lease.  Tenant acknowledges receipt of a
copy of the Master Lease prior to Tenant's execution of
this lease.  The Unit is one unit in a Condominium Project
(the "Project") constructed on the leased land and
governed by a Declaration of Covenants, Conditions and
Restrictions (the "Declaration") recorded in Book 13618,
Page 982, Official Records of Orange County, California as
amended.

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions,
reservations, rights, rights-of-way and easements of
record.

2.  TERM OF LEASE.  The leased land is leased for
a basic term commencing on the date this Condominium Sublease
is recorded in the Office of the County Recorder of Orange County,
California and ending on December 31, 2059, subject, however,
to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord,
as rental for the use and occupancy of said leased land
during the term of this lease, the sum of One Thousand
Five Hundred DOLLARS ($1,500) per year, in quarterly
installments of $375 each in advance, on the first day of
the quarter of each calendar year of said term (Provided,
however, if the term of this lease commences on a date
other than the first day of a calendar quarter, Tenant
shall pay an appropriately pro rated amount of such
quarterly installments upon the commencement of such
term); subject, however, to adjustment at the time and in
the manner as herein provided for in Article 21 entitled
"Rental Adjustment".  All rentals hereunder and charges
with respect thereto shall be paid in lawful money of the
United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the
rents above provided, Tenant shall pay and discharge all
taxes and general and special assessments of every
description which may be levied upon or assessed against
the leased land and all interest therein and improvements
and other property thereon, (including its Unit) and upon
all rentals payable with respect to the leased land,
whether belonging to Landlord, Tenant or the Master

WPN:2004A                    2





BK 13824 PG 1276

Lessor, as such taxes and assessments become due and
payable during the term of this lease.  Tenant agrees to
protect and hold harmless the Landlord, the Master Lessor
and the leased land and all interest therein and
improvements thereon from any and all such taxes and
assessments, including any interest, penalties and other
charges which may be thereby imposed and from any lien
therefor or sale or other proceedings to enforce payment
thereof.

5.  USE OF LEASED LAND.  Tenant shall use the
leased land and its Unit for single family residential use
and purpos s incidental thereto.  Tenant shall not use or
permit any person to so use the leased land and the
improvements thereon, or any portion thereof, or its Unit
as to disturb the neighborhood or occupants of adjoining
property, or to constitute a nuisance, or to violate any
public law, ordinance or regulation from time to time
applicable thereto.

6.  IMPROVEMENTS.  When any construction is
commenced on the leased land, the same shall be prosecuted
with reasonable diligence until completed and shall
conform to all public laws, ordinances and regulations
applicable thereto and shall be constructed and completed
at the sole cost and expense of Tenant and without any
cost, expense or liability of Landlord whatsoever.
Further, Tenant shall comply with all of the terms,
covenants and conditions of the Master Lease pertaining to
such construction, including, without limitation, the
obligation to obtain the approval of the Master Lessor
when, and to the extent required by the Master Lease.

7.  MAINTENANCE.  Landlord shall not be
obligated to make any repairs, alterations, additions or
improvements in, to, upon, or adjoining the leased land or
any improvements that may be constructed or installed on
the leased land.  As part of the consideration for
Landlord entering this Lease, Tenant shall, at all times
during the full term of this lease and at his sole cost
and expense, keep, repair and maintain its Unit and those
other portions of the leased land and buildings and
improvements therein which are the responsibility of
Tenant to maintain and repair under the provisions of the
Declaration, in clean and sanitary condition and in good
order and repair.  Tenant shall pay for all water, gas,
heat, light, power, telephone and all other utilities and
services furnished to its Unit.  Tenant shall make payment
directly to the utility involved for all separately
metered services and shall pay to the management body for
the Project the proportionate share of all centrally
metered utilities, such proportion to be determined by
said management body.

Tenant shall at all times fully comply with and
abide by the terms, covenants, restrictions, provisions
and conditions of the Declaration and any amendments
thereof, and any rules, regulations, agreements, decisions
and determinations duly made by the management body for
the Project established pursuant to the Declaration
respecting the maintenance, use and occupation of its Unit

WPN:2004A                3

BK 13824 PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

    8.    RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
improvements, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and improvements; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

    9.    LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A                   4

Branch :A14,User :2004                          Comment:                          Station Id :M3Y7

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10.  **LIABILITIES.**  Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  **LANDLORD PAYING CLAIMS.**  Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use or
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure or improvement upon the leased land
or in any other _____ therein; (iii) any defect in
soils or in the _____ of soils or in the design and
accompli_____ _____ ; (iv) any act or omission of
Tenant _____ _____ , employees, licensees,
invitee _____ contr _____ s; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                    5



BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord and the Master Lessor in connection therewith.

Tenant either individually, or in conjunction with the Tenants of the remaining undivided interests in the leased land or through the management body for Project shall maintain at all times during the term of the Lease, at its expense and in companies acceptable to Landlord:

    (a)  Worker's compensation insurance and employer's liability insurance.

    (b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and the Master Lessor and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord and the Master Lessor as an additional insured.  Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord and the Master Lessor prior to cancellation or reduction in coverage or amount.

    12.  ASSIGNMENT.  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this lease without the prior written consent of Landlord. Notwithstanding the foregoing, this lease or any right hereunder shall in no case be assigned separate and apart from Tenant's Unit located on the leased land.  Also notwithstanding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

    13.  ENCUMBRANCES.  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

    A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of

WPN:2004A



BK 13824 PG 1280

any such trust deed or assignment, the provisions of this Lease shall control.

B.    Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C.    Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto.  Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.    Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within sixty (60) days after service of written notice on the encumbrancer by Landlord of its intention to terminate this Lease for such default or breach, shall:

(a)    Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust    to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

(b)    Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Default."

Any mortgagee shall have the right at any time during the term hereof while this lease is in full force and effect:

WPN:2004A                7



BK 13824 PG 1281

(a) To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b) To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                          8





Branch :A14,User :2004    Comment:    Station Id :M3Y7

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.  **PLACE OF PAYMENTS AND NOTICES.**  All rents
and other sums payable by Tenant to Landlord hereunder
shall be paid to the Landlord at the address set forth
after Landlord's name above.  Whenever either party hereto
desires to give written notice to the other respecting
this Lease, such notice, if not personally delivered to
Landlord or to Tenant, shall be sent by certified or
registered mail, with postage prepaid, and directed to
either party at the address hereinabove specified, or at
such other address as either party may hereafter designate
in writing.  The service of any such written notice shall
be deemed complete at the time of such personal delivery
or within two (2) days after the mailing thereof in Orange
County, California, as herein provided.  Should Landlord
or Tenant consist of more than one person, the personal
delivery or mailing of such notice to any one of such
persons shall constitute complete service upon all such
persons.  Any notice provided in the Article hereof
entitled "Encumbrances" to be given by Landlord to any
encumbrancer of Tenant shall be served in the same manner
as herein provided in this Article and shall be delivered
to the encumbrancer or directed to its address as last
shown on the records of Landlord.

17.  **REMEDIES.**  Should Tenant at any time be in
default hereunder pursuant to the provisions of the
Article hereof entitled "Default", then notwithstanding
Tenant's breach of this lease and abandonment of the
leased land, this lease shall continue in effect so long
as Landlord does not terminate Tenant's right to
possession and Landlord may enforce all of its rights and
remedies hereunder, including, at the option of Landlord:

A.  Continue this Lease in effect without
terminating Tenant's right to possession, even though
Tenant has breached this Lease and abandoned the leased
land; and to enforce all of Landlord's rights and remedies
under this Lease, including the right to recover, by suit
or otherwise, all sums and installments required to be
paid in accordance with the provisions of Article 3 above,
or other monetary performance as it becomes due hereunder,
or to enforce, by suit or otherwise, any other term or
provision hereof on the part of Tenant required to be
performed, it being specifically agreed that the aggregate
unpaid installment indebtedness shall bear simple interest
at the rate of ten percent (10%) per annum from the date
thereof until paid, provided, however, that Landlord may,
at any time thereafter, elect to terminate this Lease for
such previous breach by notifying Tenant in writing that
Tenant's right to possession of the leased land has been
terminated; or

B.  By written notice to Tenant, Landlord may
declare this Lease at an end, re-enter the leased land by
process of the law, eject all parties in possession

WPN:2004A                              9



BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

(i)   The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)   The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii)  The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

(iv)  All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

(v)   In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder.  All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease.  No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained.  No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver.  The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                10



105

BK 13824 PG 1284

18.  **REPRESENTATIONS.**  Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19.  **HOLDING OVER.**  This lease shall terminate and become null and void without further notice upon the expiration of said term.  Any holding over shall not constitute a renewal hereof, but the tenancy shall thereafter be on a month-to-month basis and otherwise on the same terms and conditions as herein set forth.

20.  **EMINENT DOMAIN.**

A.    **Definition of Terms.**  The term "total taking", as used in this Article, means the taking of the entire leased land under the power of eminent domain or the taking of so much of said land as to prevent or substantially impair the use thereof by Tenant for the uses and purposes hereinabove provided.

The term "partial taking" means the taking of a portion only of the leased land which does not constitute a total taking as defined above.

The term "taking" shall include a voluntary conveyance by Landlord to an agency, authority or public utility under threat of a taking under the power of eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon which title to the leased land or portion thereof passes to and vests in the condemnor.

The term "leased land" means the real property belonging to Landlord, together with any and all improvements placed thereon by Landlord or to which Landlord has gained title.

B.    **Effect of Taking.**  If, during the term hereof, there shall be a total taking or partial taking under the power of eminent domain, then the leasehold estate of Tenant in and to the leased land or the portion thereof taken shall cease and terminate as of the date of taking of the said land.  If this lease is so terminated, in whole or in part, all rentals and other charges payable by Tenant to Landlord hereunder and attributable to the leased land or portion thereof taken shall be paid by Tenant up to the date of taking by the condemnor and the parties shall thereupon be released from all further liability in relation thereto.

C.    **Allocation of Award - Total Taking.**  All compensation and damages awarded for the total taking of

WPN:2004A                11



BK 13824 PG 1285

the leased land allocated to Landlord under the terms of
the Master Lease shall be allocated as follows:

(a) Tenant shall be entitled to an amount equal
to the sum of the following:

(i) The fair market value of all of the
improvements located on the leased land; and

(ii) The then fair market value of the
Tenant's leasehold interest in the leased land.

(b) Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

D. **Allocation of Award – Partial Taking.** All
compensation and damages awarded for the taking of a
portion of the leased land allocated to Landlord under the
terms of the Master Lease shall be allocated and divided
as follows:

(a) Tenant shall be entitled to an amount equal
to the sum of the following:

(i) The proportionate reduction of the
fair market value of the improvements located on
the leased land; and

(ii) The proportionate reduction of the
fair market value of Tenant's leasehold interest
in the leased land.

(b) Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E. **Reduction of Rent on Partial Taking.** In the
event of a partial taking, the rent payable by Tenant
hereunder shall be adjusted from the date of taking to the
next rental adjustment date or to the date of the
expiration of the term of this lease, whichever date is
sooner. Such rental adjustment will be made by reducing
the basic rental payable by the Tenant in the ratio that
the fair market value of the leased land at the date of
taking bears to the fair market value of the leased land
immediately thereafter.

F. **Determination of Fair Market Value.**
Whenever fair market value must be determined for the
purposes of this Article, and the parties fail to agree in
writing on such fair market value within ten (10) days of
a request for such agreement from either party, then fair
market value shall be determined by appraisers appointed
pursuant to the Article in the Master Lease entitled
"Condemnation" or if no such appraiser have been or are to
be appointed, by agreement of Landlord and Tenant or, in
the absence of such an agreement by appraisers appointed
by Landlord and Tenant in the same manner as set forth in
such Article.

WPN:2004A                    12



BK 13824 PG 1286

21.  RENTAL ADJUSTMENT.

A.  Effective January 1, 2000, January 1, 2020, and January 1, 2040, the annual rental payable hereunder shall be adjusted to a sum equal to ten percent (10%) of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, as of such dates.  The said "unimproved fair market value" of the leased land shall be such value as determined by the Master Lessor and the Landlord in accordance with the terms and provisions of Article 21 of the Master Lease. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the annual rental, as so adjusted, be less than the annual rental in the immediately preceding period.

Pending the final determination of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this lease entitled "Rental".  If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental.

B.  Effective January 1, 1990, January 1, 2010, January 1, 2030, and January 1, 2050, the annual rental shall be adjusted upwards as follows:  As promptly as practical after such dates, Landlord shall compute the increase, if any, in the cost of living during the period just ended, based upon the Consumers Price Index - Los Angeles/Long Beach/Anaheim Metropolitan Area (1967=100), "All items of goods and services purchased by urban wage and clerical worker families" (hereinafter called the "Index"), published by the Bureau of Labor Statistics of the United States Department of Labor.  The Index Number for the latest month prior to commencement of the term of this Lease, with respect to which such a Number is published, shall be the "Base Index Number" and the corresponding Index Number for the month which immediately preceeds the effective date of the Adjustment shall be the "Current Index Number".

The annual rent shall be adjusted by multiplying the rental payable during the immediately preceding year of the term of this lease by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number; provided, however, that the annual rent shall never be reduced below the rental payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent installments in effect for the expiring rental period until notified by Landlord of the new rent.  Such notification shall include a memorandum showing the calculations used by Landlord in determining the new rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                13



108

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision. Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed. If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22. DRAINAGE AND FILL. Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land to prevent any erosion thereof upon such streets or adjoining property.

23. ENCROACHMENTS. If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                    14



109

BK 13824 PG 1288

erected. Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24. **COMPLIANCE WITH LAWS.** Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit. Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25. **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26. **CONSTRUCTION AND EFFECT.** Time is of the
essence of this lease. The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof. Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant. If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons. In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27. **NON-DISTURBANCE.** No mortgage or deed of
trust placed on the leased land . Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28. **ESTOPPEL CERTIFICATES.** Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A                    15

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and
deliver to such party or parties a statement in writing
certifying that this lease is unmodified and in full force
and effect (or if there has been any modification thereof
that the same is in full force and effect as modified and
stating the modification or modifications) and that there
are no defaults existing (or if there is any claimed
default stating the nature and extent thereof); and
stating the dates to which the rent and other charges have
been paid in advance.  It is expressly understood and
agreed that any such statement delivered pursuant to this
section may be relied upon by any prospective assignee or
sublessee of the leasehold estate, or estates of Tenant,
or any prospective purchaser of the estate of Landlord, or
any lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

     IN WITNESS WHEREOF, the parties hereto have
executed this Sublease as of the day and year first above
written.

                              By _____
                                 Robert P. Warmington
                                 "Landlord"

                              By _____
                                 "Tenant"

                              By _____
                                 "Tenant"

WPN:2004A                        16

111

BK 13824 PG 1290

STATE OF __CALIFORNIA__            )
                                   ) ss.
COUNTY OF __ORANGE__               )

On __August 1__ , 19 80, before me the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

[Seal]                                    _____
                                          Notary Public

OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov 5 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF ____Orange____      )

On __November 5, 1980__ , before me, the undersigned, a Notary Public in and for said State, personally appeared ____John F. Turner and Virginia H. Turner____

known to me to be the person S. whose name __are__ subscribed to the within instrument and acknowledged to me that ____they____ executed the same

WITNESS my hand and official seal.

Signature ____Bonnie Quenneville____

Bonnie Quenneville
Name (Typed or Printed)

OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

(This area for official notarial seal)

WPN:2004A            17

RECORDED

112

8695          BK 13824 PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California   92714

```
RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1990
LEE A. BRANCH, County Recorder
```

Conveyance connected with leaseholder
interest not to exceed 99 years.

A P 178-011-01

## CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaneous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

_____ John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

BK 13824 PG 1292

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On ____August 1____, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____, known to me to be the
____Vice President____, and _____WILLIAM J. PITTMAN_____,
known to me to be the ____Secretary____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.



Notary Public in and for
said County

[SEAL]

2



BK 13824 PG 1293

### EXHIBIT I

**Parcel 1**

Those portions of Unit _53_, as shown and defined on a Condominium Plan ("the Condominium Plan"), recorded in Book 13358, Page 1193, et seq., consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

**Parcel 4**

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)  general and special taxes and assessments for the current fiscal year;

(b)  the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

(c)  all other covenants, conditions, restrictions, rights, reservation of rights of way and easements whether or not of record.

RECORDED

8696                    BK 13824 PG 1294

RECORDING AT THE REQUEST OF:

$10.00
C3

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Aldersport
Huntington Beach, Ca. 92647

PAID
DOC TRANSFER TAX
LEE A BRANCH
ORANGE CO. RECORDER

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

CONDOMINIUM SUBLEASE
(SHORT FORM-MEMORANDUM)
AND GRANT DEED

For the purpose of establishing and vesting in
JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____

_____

(the "Condominium Owner"), a Condominium as defined in the

Condominium Plan (the "Condominium Plan"), recorded in Book

13358, Pages 1193, et seq., Official Records of Orange County,

California, located on Lots 1 and 2 of Tract 10542 in the

City of Huntington Beach, County of Orange, State of

California, as shown on a Map recorded in Book 456, Pages 49

and 50 of Miscellaneous Maps, in the Office of the County

Recorded or Orange County, California:

I.   DEMISING CLAUSE:

     ROBERT P. WARMINGTON, an individual, ("Sublessor"), who

is the lessee under that certain Ground Lease dated as of

August 1, 1980, from HOUSER BROS. CO., a limited partnership,

as lessor, which Ground Lease is being recorded concurrently

herewith, hereby subleases to Condominium Owner, the follow-

ing real property:

     Parcel 1

     Unit  53  , as shown and defined on the

Condominium Plan, excepting that portion con-

sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE



BK 13824 PG 1295

**Parcel 2**

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

**Parcel 3**

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

**Parcel 4**

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

for a term commencing on the date this instrument is recorded in the Office of the County Recorder of Orange County, California, and ending December 31, 2059, and for the rental and upon all the terms and conditions contained in that certain Condominium Sublease (the "Sublease") of even date herewith and recorded concurrently herewith, between Robert P. Warmington and the Condominium Owner.

II.  **GRANTING CLAUSE:**

THE ROBERT P. WARMINGTON CO., a California corporation ("Grantor"), hereby grants to the Condominium Owner for a term expiring upon expiration or an earlier termination of the Sublease the following real property:

2

117

BK 13824 PG 1296

**Parcel 1**

Those portions of Unit _53_ , as shown
and defined on the Condominium Plan, con-
sisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest
in and to those portions of the Common Area
as shown and defined on the Condominium Plan,
consisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and
occupancy of those portions of Restricted
Common Area as defined on the Condominium
Plan for entry and staircases and attic space
relating to said Unit, consisting of buildings
and other improvements.

**Parcel 4**

Non-exclusive easement and right to use
those portions of the Common Area as defined
on the Condominium Plan, except Restricted
Common Area, consisting of buildings and other
improvements.

SUBJECT TO:

(a)    general and special taxes and assessments
for the current fiscal year;

(b)    the Declaration of Restrictions recorded
in Book 13618, Page 982, Official Records
of Orange County, California, as amended,
(the "Declaration");

3



BK 13824 PG 1237

(c)  all other covenants, conditions, restric-
     tions, rights, reservation of rights of way
     and easements whether or not of record.

     The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration.  The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

     Dated: ____August 1,____ , 1980.

                         SUBLESSOR:

                         _____
                         Robert P. Warmington

                         GRANTOR:

                         THE ROBERT P. WARMINGTON CO.

                         By _____

                         By _____

4

BK 13824 PG 1298

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.



[SEAL]                          Notary Public in and for
                                said County


STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
___OLIVER N. CRARY___, known to me to be
the ___Vice President___, and ___WILLIAM J. PITTMAN___,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



[SEAL]                          Notary Public in and for said
                                County

5

RECORDED D

5002

BK 13680 PG 1091

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-3 00 P.M.   AUG 5 '80

LEE A. BRANCH, County Recorder

WHEN RECORDED RETURN TO:

KESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

Attn:  Frank D. Stiefel

$6.00
C1

---

**FIRST AMENDMENT TO
DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES**

Tract 10542
City of Huntington Beach
Orange County, California

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this 30 day of JULY, 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

BK 13890PG 1092

NOW THEREFORE, Warmington, Houser and RPW Co., do hereby
declare as follows:

1. That collectively they are the sole owners of the
Property as their interests may appear.

2. That they retain the exclusive and sole right to
amend the Declaration.

3. That, in furtherance of the foregoing, the following
amendments are hereby made to the Declaration:

(a) Section 1.13 of the Declaration is hereby
amended to read as follows:

"Section 1.13. Owner/Ownership: "Owner" shall mean and
refer to the record assignee of the rights of Declarant
and/or a lessee or sublessee to a Unit, but excluding
those having such interest merely as security for the
performance of an obligation. Such term shall also mean
and refer to the Lessee or Lessor if either succeeds to
the rights of said assignee through termination of any
lease or sublease or by any other means. All references
herein to "ownership" shall mean and refer to the
ownership of a leasehold or subleasehold interest."

(b) Section 2.2 of the Declaration is hereby
amended to read as follows:

"Section 2.2. Elements of Condominium: Each Condominium
shall be comprised of the following elements:

(a) A leasehold or sub-leasehold estate in a Unit
as shown and defined on the Condominium Plan,
excepting that portion of a Unit consisting of
buildings and other improvements;

(b) An undivided one-eightieth (1/80) interest in a
leasehold or subleasehold interest in the Common
Area as shown and defined on the Condominium Plan,
excepting that portion of the Common Area consisting
of building and other improvements;

(c) An exclusive easement on the leasehold or sub-
leasehold estate referred to in item (b) above,
which easement is defined as Restricted Common Area
as described on the Condominium Plan for entry,
staircases and attic space relating to each Unit,
excepting that portion consisting of buildings and
other improvements;

2

122

BK 13690 PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.  All other terms and conditions of the Declaration shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

THE ROBERT P. WARMINGTON CO., a California corporation

By _____

HOUSER BROS., CO., a California Limited Partnership

By _____
By _____

_____
Robert P. Warmington

123

BK 1369PG 1094

**(Corporation)**

**STATE OF CALIFORNIA**

**COUNTY OF** _Orange_ } ss.

On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Roger D. Burrell_ known to me to be the _Vice_ President, and known to me to be the _____ Secretary of the corporation that executed the within instrument, known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

> OFFICIAL SEAL
> PEARL L. HUNT
> NOTARY PUBLIC - CALIFORNIA
> ORANGE COUNTY
> My Commission Expires Mar 23, 1983

(This area for official notarial seal)

---

**(Partnership)**

**STATE OF CALIFORNIA**

**COUNTY OF** _ORANGE_ } ss.

On _AUGUST 4, 1980_ before me, the undersigned, a Notary Public in and for said State, personally appeared _CLIFFORD C. HOUSER AND VERNON F. HOUSER_ known to me to be _BOTH_ of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

Signature _G. McDonald_

> OFFICIAL SEAL
> G. McDONALD
> NOTARY PUBLIC CALIFORNIA
> PRINCIPAL OFFICE IN
> ORANGE COUNTY
> My Commission Expires June 15, 1984

(This area for official notarial seal)

---

**(Individual)**

**STATE OF CALIFORNIA**

**COUNTY OF** _Orange_ } ss.

On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Robert P. Wassington_ known to me to be the person ___ whose name _is_ subscribed to the within instrument and acknowledged that _he_ executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

> OFFICIAL SEAL
> PEARL L. HUNT
> NOTARY PUBLIC - CALIFORNIA
> ORANGE COUNTY
> My Commission Expires Mar 23, 1983

(This area for official notarial seal)



**86-456266**

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

IRELL & MANELLA
840 Newport Center Drive, Suite 500
Newport Beach, California 92660
Attention:  Petrick J. Fvans, Esq.

MAIL TAX STATEMENTS TO:

G/HB INVESTORS,
c/o AP Development Company
17911 Mitchell Avenue
Irvine, California 92714
Attn:  Hugh Saddington

*1444086 MT*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

•8:15 PM    SEP 30 '86

*Lee A. Branch* COUNTY
RECORDER

---

(Space Above for Recorder's Use)

The undersigned grantor declares:
The real property conveyed hereunder
is located in the City of Huntington
Beach, County of Orange.  The
Documentary Transfer Tax is
$ 247.50  based on full value of
the real property conveyed here-
under, but not on the leasehold
conveyed hereunder, which leasehold
is for a term less than ninety-nine
(99) years.

ASSIGNMENT AND ASSUMPTION
OF
GROUND LEASES
AND
CONDOMINIUM SUBLEASES
AND
GRANT DEED

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASES AND
CONDOMINIUM SUBLEASES AND GRANT DEED ("Assignment") is made
and entered into this 30th day of September, 1986 by and
between Robert P. Warmington, a married man, as assignor and
grantor ("Assignor") and G/HB Investors, a California limited
partnership as assignee and grantee ("Assignee").

-1-

2PE01SL



**86-456266**

R E C I T A L S

A.    Houser Bros. Co., a limited partnership ("Houser")
is the fee owner of that certain real property (the "Houser
Property") located in the City of Huntington Beach and more
particularly described in Exhibit "A" attached hereto;

B.    Located on the Houser Property is a condominium
project (the "Condominium Project") created by that certain
Condominium Plan (the "Condominium Plan") recorded in Book
13358, Pages 1193, et. seq., official Records of Orange
County, California;

C.    The Condominium Plan shows and defines and there
are eighty (80) condominiums (the "Condominiums") in the
Condominium Project;

D.    Houser leased the Condominiums, except for the
Condominium Project buildings and improvements, to Assignor
under those certain Ground Leases (the "Ground Leases") dated
August 1, 1980 and described in Exhibit "B" attached hereto;

E.    Assignor subleased the Condominiums, except for the
Condominium Project buildings and improvements, to individual
condominium tenants (the "Tenants" or a "Tenant") under those
certain Condominium Subleases, (the "Subleases") dated August

-2-

2PE01SL



1, 1980 more particularly described in Exhibit "B" attached
hereto;

    F.    The property leased under the Ground Leases and the
Subleases is more particularly described as Parcels 1, 2, 5
and 6 of Exhibit "B" attached hereto;

    G.    The Robert P. Warmington Company ("Company") owned
the Condominium Project buildings and improvements and
conveyed the Condominium Project buildings and improvements
to the Tenants, for a term, with respect to each Tenant,
ending on the expiration or earlier termination of the
Tenant's Sublease, thereby retaining a remainder interest in
a determinable fee estate with respect to the Condominium
Project buildings and improvements (the "Remainder
Interest"), which Remainder Interest is more particularly
described as parcels 3 and 4 of Exhibit "B" attached hereto;

    H.    Company conveyed the Remainder Interest to
Assignor; and

    I.    Assignor now desires to assign, transfer and convey
all of his right, title and interest in and to the Ground
Leases and Subleases (collectively the "Leases") and the
Remainder Interest to Assignee and Assignee desires to assume
all of Assignor's obligations under the Leases.

-3-

2PE01SL



86=456266

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, Assignor and Assignee agree as follows:

## A G R E E M E N T

1. **Assignment.** Assignor hereby assigns, transfers, conveys and sets over to Assignee all of his right, title and interest in and to the Leases.

2. **Grant of Remainder Interest.** Assignor hereby grants, assigns, transfers and sets over to Assignee all of its right, title and interest in and to the Remainder Interest.

3. **Quitclaim Grant.** Assignor hereby remises, releases and forever quitclaims to Assignee all of his right, title and interest in and to the Houser Property, the Condominium Project, and any property or other rights defined in the Condominium Plan.

4. **Assumption.** Assignee hereby assumes and agrees to keep and perform all of Assignor's obligations under the Leases.

-4-

2PEO1SL

86-456266

5. **Indemnification**. Assignor agrees to indemnify and hold Assignee harmless from all claims, damages, lawsuits, and liabilities which arise out of or relate to Assignor's obligations under the Leases.

6. **Effective Date**. This Assignment shall be effective on the date it is recorded.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment on the date first written above.

"ASSIGNOR"

_____
Robert P. Warmington

I am the spouse of Robert P. Warmington. I hereby consent and agree to the terms of the foregoing Assignment.

_____
Loring P. Warmington

"ASSIGNEE"

G/HB Investors,
  a California limited partnership

By: AP Development Company,
    a California corporation,
    general partner

By: _____
    John E. Wertin, Chairman

-5-



EXHIBIT "A"

The Houser Property

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach,
County of Orange, State of California, as shown on a map
recorded in Book 456, Pages 49 to 50 of Maps, in the office of
the County Recorder of Said County.



86-456266

E X H I B I T   "B", Page 1

The Leases, the property leased pursuant to the Leases, and the property comprising the Remainder Interest are described as follows:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES  AS TO PARCELS 1  AND 2, SAID  ESTATES  BEING  MORE  PARTICULARLY  DESCRIBED  AS  THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET  FORTH IN SUB-PARAGRAPH (A)  HEREIN BELOW,  AND SUBLESSORS'  INTERESTS UNDER THOSE CERTAIN  SUBLEASES SET FORTH  IN SUB-PARAGRAPH  (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)   THOSE  CERTAIN  GROUND  LEASES,  DATED  AUGUST  1,  1980, EXECUTED BY HOUSER BROS.  CO., A LIMITED PARTNERSHIP  ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL

(continued)



B6-456266

EXHIBIT "B" Page 2

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 179 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |
| 27 | 13789 | 1600 | |
| 28 | 13787 | 1834 | |
| 29 | 13778 | 173 | |
| 30 | 13896 | 1090 | |
| 31 | 14091 | 1139 | |
| 32 | 13726 | 1346 | |
| 33 | 14005 | 1903 | |
| 34 | 14048 | 1460 | |
| 35 | 13861 | 723 | |
| 36 | 13814 | 666 | |
| 37 | 13768 | 1032 | |
| 38 | 13793 | 1179 | |
| 39 | 13810 | 1665 | |
| 40 | 13783 | 875 | |

PAGE 3





EXHIBIT "B" Page 3

B6-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444084
AMENDMENT NO. 1

| | | |
|---|---|---|
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14074 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)  THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY
ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS
SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE
TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT | ORIGINAL |
|---|---|---|---|---|

PAGE 4



EXHIBIT "B" Page 4

B6-456266



ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

SUBLESSEE

| | | | |
|---|---|---|---|
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |
| 34 | 14048 | 1475 | |
| 35 | 13861 | 738 | |
| 36 | 13814 | 681 | |
| 37 | 13766 | 1047 | |
| 38 | 13793 | 1194 | |
| 39 | 13818 | 1680 | |
| 40 | 13783 | 1800 | |
| 41 | 13824 | 1327 | |
| 42 | 13867 | 813 | |

PAGE 5

1





EXHIBIT "B" Page 5          86=456266

ALTA PLAIN
LANGUAGE COMMITMENT                      OR-1444086
                                         AMENDMENT NO. 1

| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 864 |
| 80 | 13780 | 614 |

4.   THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS
FOLLOWS:

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY
OF ORANGE, CITY OF HUNTINGTON BEACH, DESCRIBED AS FOLLOWS:

PARCEL 1:

PAGE 6



EXHIBIT "B" Page 6          86-456266

ALTA PLAIN                                    OR-1444086
LANGUAGE COMMITMENT                    AMENDMENT NO. 1

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM
PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND
FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND
DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE
PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM
PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS
OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM
PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID
UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS
DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON
AREA.

PAGE 7

86-456266

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )

    On this _24th_ day of September, in the year 1986, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, personally known to me or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed it.

WITNESS my hand and official seal.



OFFICIAL SEAL
**PEARL L. HUNT**
NOTARY PUBLIC — CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires March 30, 1987

_Pearl L. Hunt_

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )

    On this _24d_ day of September, in the year 1986, before me, the undersigned, a Notary Public in and for said State, personally appeared Loring P. Warmington, personally known to me or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed it.

WITNESS my hand and official seal.



OFFICIAL SEAL
**PEARL L. HUNT**
NOTARY PUBLIC — CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires March 30, 1987

_Pearl L. Hunt_

2PE01SL

13

86-456266

STATE OF CALIFORNIA     )
                           ) ss.
COUNTY OF ORANGE      )

On September *23*, 1986, before me, the undersigned, a
Notary Public in and for said State, personally appeared John
E. Wertin, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person who executed the
within instrument as the Chairman on behalf of AP Development
Company, the corporation therein named, and acknowledged to me
that said corporation executed the within instrument pursuant
to its bylaws or a resolution of its board of directors, said
corporation being known to me to be the general partner of G/HB
Investors, the limited partnership that executed the within
instrument, and acknowledged to me that such corporation
executed the same as such partner and that such partnership
executed the same.

WITNESS my hand and official seal.



OFFICIAL SEAL
SHIRLEY A. GERBASI
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Exp. Apr. 23, 1990

2PE01SL

RECORDING REQUESTED BY
LAWYERS TITLE CO.

Recording Requested by, and
when recorded return to:

Jo Pedrojetti
Fullerton Community Bank
200 W. Commonwealth Ave.
Fullerton, California 92832

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

**33.00**

**19990542305  3:57pm 07/23/99**
005 16020670 16 21
C34 10 6.00 27.00 0.00 0.00 0.00 0.00

_Space above line for recorder's use only_

## CONSENT TO HYPOTHECATION OF GROUND LEASES AND AGREEMENT

This CONSENT TO HYPOTHECATION OF GROUND LEASES AND AGREEMENT ("Agreement") is made this _15 7th_ day of July, 1999, between Houser Bros. Co., a California Limited Partnership ("Lessor") and Fullerton Community Bank, F.S.B. ("Lender") with regard to the following:

### RECITALS

A.      Lessor is the owner of that certain real property located in the City of Huntington Beach, County of Orange, State of California, more particularly described as follows:

> Lots 1 and 2 of Tract 10542, as shown on a Map recorded on August 17, 1979 in Book 456, Pages 49 and 50, of Miscellaneous Maps, in the Office of the County Recorder for the County of Orange (the "Property");

B.      The Property was subdivided into eighty (80) individual condominium estates (the "Condominiums"), pursuant to that certain Condominium Plan recorded on October 18, 1979, in Book 13358, Pages 1193 et. seq., of Official Records, in the Office of the County Recorder for the County of Orange;

C.      Lessor is the ground lessor of the Property under eighty (80) individual ground leases (the "Ground Leases"), each dated August 1, 1980, between Lessor, as lessor, and Robert P. Warmington, as the original lessee (the "Original Ground Lessee"), which were recorded in the Office of the County Recorder for the County of Orange on the date and at the Book, Page and Instrument references set forth on the attached Exhibit "A";

D.      G/HB Investors, a California Limited Partnership obtained from a successor to the Original Ground Lessee all of the ground lessee's right, title and interest in and to the Property under the Ground Leases;

E.      G/HB intends to transfer and assign its interest in the Ground Leases to BS Investors, a California limited liability company ("Lessee"), in which G/HB is a member, and has requested Lessor's consent to such transfer and assignment;

F.      In conjunction with Lessee's acquisition of the ground lessee's right, title and interest in and to the Property under the Ground Leases, Lender desires to enter into certain financing agreements with Lessee, to be partially secured by a Deed of Trust ("Leasehold Mortgage") encumbering Lessee's interests in the Ground Leases; and

G.      It is a condition precedent to the financing agreement between Lender and Lessee that Lender and Lessor enter into and execute this Agreement.

1

In accordance with the foregoing Recitals and for valuable consideration, receipt of which is hereby acknowledged, Lessor and Lender do hereby covenant and agree as follows:

1.    **CONSENT TO HYPOTHECATION**

1.1    <u>Lessor's Consent to Hypothecation</u>.  Lessor hereby consents to the pledge, mortgage and hypothecation of Lessee's right, title and interest under the Ground Leases by the Leasehold Mortgage.

2.    **REPRESENTATIONS REGARDING GROUND LEASES**

2.1    <u>Representations by Lessor</u>.  Lessor hereby warrants and represents to Lender that to the best of Lessor's actual knowledge, the Ground Leases are unmodified, in full force and effect, ~~the rental payable under the Ground Leases is as set forth on Exhibit "B" attached hereto, that all rents and other sums payable by the ground lessee(s) under the Ground Leases have been paid through the date(s) indicated on Exhibit "B"~~, that the term of each of the Ground Leases expires on December 31, 2059, and that neither the ground lessee(s) nor Lessor are in default under any of the terms, covenants or conditions contained in the Ground Leases nor has any event occurred which would, with the passage of time, or giving of notice, or both, constitute a default under any of the terms, covenants or conditions of any of the Ground Leases.

3.    **AGREEMENT BY LESSOR**

Lessor hereby agrees as follows, until such time, if any, as Lessor shall receive from Lender written confirmation that the Leasehold Mortgage has been fully satisfied:

3.1    <u>Cancellation of Ground Leases</u>.  No cancellation, surrender, acceptance of surrender, or modification of any of the Ground Leases shall be binding upon Lender or effect the lien of the Leasehold Mortgage, without the express prior written consent of Lender.

3.2    <u>Notices.</u>  No notice or demand to be given to Lessee under any of the Ground Leases ("Notices") shall be binding upon or effect Lender, unless a copy of the Notice shall be given to Lender within the time when such Notice shall be required or permitted to be given to Lessee. In the case of an assignment of the Leasehold Mortgage or change in address of Lender, the assignee thereof or Lender, by notice to Lessor, may change the address to which copies of Notices are to be sent as herein provided.  All Notices and copies of Notices to be given to Lender as provided in this Section shall be given in the same manner as is provided in the Ground Leases with respect to Notices to be given by Lessor or Lessee.  Until notice of a different address is given by Lender, Lender's address is as follows:

Ms. Jo Pedrojetti, Vice President
Fullerton Community Bank
200 W. Commonwealth Ave.
Fullerton, California 92832

3.3    <u>Lender's Rights of Performance</u>.  Lender shall have the absolute right, but not the obligation, to perform any term, covenant, condition or agreement and to remedy any default by Lessee under any of the Ground Leases, and subject to compliance with all terms and conditions herein, Lessor shall accept such performance by Lender with the same force and effect as if furnished by Lessee.

2

3.4    **Lender's Additional Notice and Cure Periods Upon Notice of Default**. In the event Lessor shall give a notice of default to Lessee pursuant to any of the Ground Leases, and if such default shall not be remedied within the applicable grace period provided for in the Ground Leases, and Lessor shall thereby, or otherwise, be entitled to give a notice of election to terminate the Lease, then before giving such notice of election to terminate the Lease, Lessor shall give to Lender the opportunity to cure said default, as provided in Section 13D of the Ground Leases.

3.5    **Delegation of Rights by Lessee to Lender**. Lessee may delegate irrevocably to Lender the authority to exercise any or all of Lessee's rights under the Ground Leases. Any provision of the Ground Leases which gives to Lender the privilege of exercising a particular right of Lessee thereunder on condition that Lessee shall have failed to exercise such right shall not be deemed to diminish any privilege which Lender may have, by virtue of a delegation of authority from Lessee, to exercise such right without regard to whether or not Lessee shall have failed to exercise such right.

3.6    **Lender's Right to Cure Non-Monetary Defaults**. In the event of a default by Lessee in the performance or observance of any term, covenant, condition or agreement on Lessee's part to be performed under any of the Ground Leases, other than a term, covenant, condition or agreement requiring the payment of a sum of money, if such default is of such a nature that the default cannot reasonably be cured by Lender without taking possession of the Property or any portion thereof, then Lessor shall not serve a notice of election to terminate the Ground Leases(s) or otherwise terminate the leasehold estate(s) of Lessee under the Ground Lease(s) by reason of such default if and so long as Lessor shall continue to cause all of Lessee's obligations which can be performed by the payment of money to be performed, and:

3.6.1    In the case of a default which cannot reasonably be cured by Lender without taking possession of the Property or any portion thereof, Lender shall deliver to Lessor, within thirty (30) days after notice from Lessor, a written instrument wherein Lender unconditionally agrees that Lender will cure all such defaults.

3.6.2    In the case of a default which cannot reasonably be cured by Lender without taking possession of the Property or any portion thereof, Lender shall diligently proceed to obtain possession of the Property or any portion thereof as mortgagee (through the appointment of a receiver or otherwise), and, upon taking possession, shall promptly commence and duly prosecute to completion such action as may be necessary to cure all such defaults.

3.6.3    In the event of a default which cannot be cured by Lender, Lender shall institute and diligently prosecute to completion, subject to the provisions of law and the order of any court, judicial or non-judicial foreclosure proceedings unless, in the meantime, Lender shall acquire Lessee's estate(s) under the Ground Lease(s), either in Lender's own name or through a nominee, by assignment in lieu of foreclosure or unless prohibited by applicable law.

Lender shall not be required to continue to proceed to obtain possession, or to continue in possession as mortgagee, of the Property or any portion thereof pursuant to this Section, or to continue to prosecute foreclosure proceedings pursuant to this Section, if and when such default shall be cured. Nothing in this Agreement shall preclude Lessor from exercising any of its rights or remedies with respect to any other default by Lessee during any period when Lessor shall be

3

141

Branch :A14,User :2004                                      Comment:                                      Station Id :M3Y7

forebearing from term᠁᠁n of the Lease as above provided, bu᠁᠁ ᠁h event Lender shall have all of the rights and protections provided for above. If Lender, or its nominee, or a purchaser at a foreclosure sale (which purchaser shall become Lessee thereunder) shall acquire title to Lessee's leasehold estate(s) under the Ground Lease(s) and such party shall cure all defects of Lessee under the Ground Lease(s) which can be cured, then the defaults of any prior holder of Lessee's leasehold estate(s) under the Ground Lease(s) shall no longer be deemed to be defaults under the Ground Lease(s). Further, if Lender shall acquire title to Lessee's interest(s) in the Ground Lease(s), Lender shall be entitled to assign the Ground Lease(s) to a third party, and upon such assignment Lender shall be relieved of all liability under such Ground Lease(s).

3.7   <u>Lender's Right to New Ground Lease(s)</u>. If any Ground Lease(s) shall terminate pursuant to the terms of the Ground Lease(s), or shall otherwise terminate by a reason of a default of Lessee under the Ground Lease(s), or if the Ground Lease(s) is/are disaffirmed or avoided in a bankruptcy proceeding affecting Lessee, and if within thirty (30) days after such termination, Lender, by written notice to Lessor, shall request Lessor to enter into one (1) or more new Ground Lease(s) of the Property or any portion thereof pursuant to this Section 3.7, then Lessor shall enter into the new Ground Lease(s) with Lender or its nominee within thirty (30) days after the giving of such written notice by Lender. Simultaneously with the giving of a notice pursuant to this Section 3.7, Lender shall deliver to Lessor a written instrument agreeing to cure all defaults of Lessee under the Ground Lease(s), other than defaults which cannot be cured by Lender. The new Ground Lease(s) shall commence, and rent and all obligations of the Lessee under the new Ground Lease(s) shall accrue as of the date of termination of the original Ground Lease(s). The term of the new Ground Lease(s) shall continue for the period which would have constituted the remainder of the term of the Ground Lease(s) had the Ground Lease(s) not been terminated, and shall be upon all of the same terms, covenants, conditions, conditional limitations and agreements contained in the Ground Lease(s) which were in force and effect immediately prior to the termination of the Ground Lease(s).

The new Ground Lease(s), and this covenant, shall be superior to all rights, liens and interests, other than those to which the Ground Lease(s) shall have been subject immediately prior to the termination of the original Ground Lease(s), and subject to those matters to which the Ground Lease(s) may, by the terms of the Ground Lease(s) become subject. The provisions of the immediately preceding sentence shall be self-executing, and Lessor shall have no obligation to do anything, other than to execute the new Ground Lease(s) as herein provided, to assure to Lender or to the Lessee under the new Ground Lease(s) entitled to the leasehold estate(s) granted thereby.

Each sublessee, if any, of space in the Property or any portion thereof whose sublease was in force and effect immediately prior to the delivery of the new Ground Lease(s) shall attorn to the Lessee under the new Ground Lease(s) unless the Lessee shall, at its option, elect to dispossess such sublessee or otherwise terminate the sublease held by the sublessee. Each sublessee who hereafter subleases space within the Property or any portion thereof shall be deemed to have agreed to the provisions of this Section. The foregoing shall not be deemed to obligate Lessor to keep any sublease in force and effect after the termination of the Ground Lease(s), nor shall Lessor have any obligation to terminate any sublease or to dispossess any sublessee. Lender shall, simultaneously with the delivery of the new Ground Lease(s), pay to Lessor (a) all rent and other sums of money due under the Ground Lease(s) on the date of termination of the Ground Lease(s) and remaining unpaid, plus (b) all rent and other sums of money due under the new Ground Lease(s) for the period from the date of commencement

4

of the term of the new Ground Lease(s) to the date of delivery of the new Ground Lease(s). Simultaneously with Lender's curing all such defaults, Lessor shall pay over to Lender any rentals, less costs and expenses of collection, received by Lessor between the date of termination of the Ground Lease(s) and the date of execution of such new Ground Lease(s), from sublessees or other occupants of the Property or any portion thereof which shall not theretofore have been applied by Lessor towards the payment of rent or any other sum of money payable by Lessee thereunder or towards the costs of operating the Property or any portion thereof, or performing the obligations of Lessee under the Ground Lease(s).

If Lender shall exercise its right to obtain the new Ground Lease(s) pursuant to this Section 3.7, but shall fail to execute the new Ground Lease(s) within 15 days of it being tendered by Lessor, or shall fail to comply timely with the other provisions of this Section 3.7, then Lender shall have no further rights to the new Ground Lease(s) or any other rights under this Section 3.7. If Lender shall, however, execute the new Ground Lease(s), then Lender shall be entitled to assign the new Ground Lease(s) to a third party and upon such assignment Lender shall be relieved of all liability under the new Ground Lease(s).

Except as provided in this Section 3.7, no mortgage now or hereafter a lien upon the Ground Lease(s) shall extend to or affect the revisionary interests(s) or estate(s) of Lessor in and to the Property, or in any manner affect the Property or any portion thereof from and after any expiration or termination of the Ground Lease(s). Nothing in this Consent shall be construed as an agreement by Lessor to encumber Lessor's fee interest in the Property for the benefit of Lessee.

IN WITNESS WHEREOF, Lessor and Lender have executed this Agreement on the dates indicated below, effective as of the date set forth in the introductory paragraph of this Agreement.

Date:                           LENDER: Fullerton Community Bank, F.S.B.

                                By: _Jo Pedrojetti_
                                Name: Jo Pedrojetti
                                Title: Vice President


Date:                           LESSOR: Houser Bros. Co., a California Limited Partnership

                                By: _Clifford C. Houser_
                                Name: CLIFFORD C. HOUSER
                                Title: GEN. PARTNER


5

Tax Map - myFirstAm

https://www.myfirstam.com/Polygon/MapSearch



**_myFirstAm®_** **Tax Map**                  **16222 Monterey Ln #376, Huntington Beach, CA 92649**



**Tax Map**                  **16222 Monterey Ln #376, Huntington Beach, CA 92649**

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

144

STATE OF CALIFORNIA - BUSINESS, TRANSPOR... ...ION AND HOUSING AGENCY                 A.  ...D SCHWARZENEGGER, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
Division of Codes and Standards



## Title Search
Date Printed : 02/22/2005

| | | | |
|---|---|---|---|
| Decal #: | LAX9947 | Use Code: | SFD |
| Manufacturer: | SANTA ANITA | Original Price Code: | ADB |
| Tradename: | SANTA ANITA | Rating Year: | 1970 |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | | Last ILT Amount: | |
| Registration Exp: | | Date ILT Fee Paid: | |
| First Sold On: | 00/00/1970 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| S1145 | 425375 | 60' | 12' |
| S1145X | 425376 | 60' | 12' |

Record Conditions:   Voluntary Conversion to LPT

Registered Owner:

THOMAS J RYAN
LAURA P RYAN (Joint Tenants with Right of Survivorship)
16222 MONTEREY LN SP 376
HUNTINGTON BEACH, CA 92649

Last Title Date:          08/25/1998
Last Reg Card:            08/25/1998
Sale/Transfer Info:       Price $19,900.00 Transferred on 08/28/1997

Situs Address:

16222 MONTEREY LN SP 376
HUNTINGTON BEACH, CA 92649
Situs County: ORANGE

Legal Owner:

MURPHY BANK
PO BOX 9725
FRESNO, CA 93794

Lien Perfected On:        09/02/1997 17:14:47

Inactive Decal/DMV:

DMV HP3401, DMV HH8050, DMV SX2636, DECAL AAD5831

**\*\*\* END OF TITLE SEARCH \*\*\***

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## DEPARTMENT OF HEALTH SERVICES
### CERTIFICATE OF DEATH
STATE OF CALIFORNIA

| | | |
|---|---|---|
| 1 NAME OF DECEDENT—FIRST THOMAS | 2 MIDDLE JOSEPH | 3 LAST RYAN |
| 4 DATE OF BIRTH 06/30/1926 | 5 AGE 74 | 6 DATE OF DEATH 09/09/2000 |
| 8 STATE OF BIRTH MISSOURI | 10 SOCIAL SECURITY NO 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 | 11 MILITARY SERVICE [X] YES [ ] NO | 12 MARITAL STATUS MARRIED | 13 EDUCATION 14 |
| 14 RACE CAUCASIAN | 15 HISPANIC [ ] YES [X] NO | TIME SERVICE OF LOS ANGELES |
| 17 OCCUPATION JEWELRY | 18 KIND OF BUSINESS JEWELRY | 19 YEARS IN OCCUPATION 45 |

| 20 RESIDENCE 16222 MONTEREY LANE #376 | | | |
|---|---|---|---|
| HUNTINGTON BEACH | ORANGE | 92649 | CA |
| 26 NAME RELATIONSHIP LAURA RYAN -WIFE | 27 MAILING ADDRESS 16222 MONTEREY LANE #376 HUNTINGTON BEACH, CA 92649 | | |

| 28 NAME OF SURVIVING SPOUSE—FIRST LAURA | 29 MIDDLE | 30 LAST LORIA |
|---|---|---|
| 31 NAME OF FATHER—FIRST VIRGIL | 32 MIDDLE | 33 LAST RYAN | UNK |
| 35 NAME OF MOTHER—FIRST RUTH | 36 MIDDLE | 37 LAST GORDI | UNK |

| 39 DATE 09/13/2000 | 40 PLACE OF FINAL DISPOSITION HOLY CROSS CEMETERY 5835 W. SLAUSON AV. CULVER CITY, CA 90230 | |
|---|---|---|
| 41 TYPE OF DISPOSITIONS BURIAL | ► NOT EMBALMED | 43 LATEST |
| 44 NAME OF FUNERAL DIRECTOR GATES KINGSLEY GATES SMITH SALSBURY | FD 1016 | ► Mark Groom | 09/13/2000 |

| 100 PLACE OF DEATH KAISER FOUNDATION HOSP-SUNSET [X] | 101 HOSPITAL SPECIFY ONE [ ] ER/OP [ ] DOA | 102 FACILITY OTHER | 104 COUNTY LOS ANGELES |
|---|---|---|---|
| 105 STREET ADDRESS 4867 SUNSET BLVD. | | | 106 CITY HOLLYWOOD |

| 107 DEATH WAS CAUSED BY | | |
|---|---|---|
| IMMEDIATE CAUSE (A) CARDIOPULMONARY ARREST | | MINUTES |
| DUE TO (B) MULTISYSTEM ORGAN FAILURE | | DAYS |
| DUE TO (C) VALVULAR HEART DISEASE | | YEARS |
| DUE TO (D) | | |

112 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN 107
MORBID OBESITY

113 WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112 IF YES, LIST TYPE OF OPERATION AND DATE
NO

| | | |
|---|---|---|
| 114 08/04/2000 | 05/09/2000 | 116 LICENSE NO 20A6516 | 117 DATE 09/11/2000 |
| 118 TYPE PHYSICIAN'S NAME GARY BLUESTONE M.D. 1526 N. EDGEMONT ST. L.A., CA. 90027 | | |

| | |
|---|---|
| 4349 | |

840030397

This is a true certified copy of the record filed in the County of Los Angeles
Department of Health Services if it bears the Registrar's signature in purple ink.

SEP 13 2005
DATE ISSUED

Director of Health Services and Registrar

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

DE-160/GC-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
David R. Masci    (State Bar # 183774)
MASCI & MASCI
223 E. Thousand Oaks Blvd., Suite 316, Thousand Oaks, California 91360
TELEPHONE NO.: (805) 496-4529    FAX NO. (Optional): (805) 497-9476
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Lisa T. Ryan

**FILED**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Orange  92868
BRANCH NAME: Lamoreaux Justice Center

ESTATE OF (Name): Laura Palma Ryan

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

**JUN 2 8 2005**

ALAN SLATER, Clerk of the Court
~~m. Taylor~~
BY M. TAYLOR

[X] DECEDENT    [ ] CONSERVATEE    [ ] MINOR

**INVENTORY AND APPRAISAL**

CASE NUMBER:
A 230138

| | | |
|---|---|---|
| [ ] Partial No.: | [ ] Corrected | |
| [X] Final | [ ] Reappraisal for Sale | |
| [ ] Supplemental | [ ] Property Tax Certificate | |

Date of Death of Decedent or of Appointment of Guardian or Conservator:
November 24, 2004

**APPRAISALS**

1. Total appraisal by representative, guardian, or conservator (Attachment 1):    $    0.00
2. Total appraisal by referee (Attachment 2):    $    333,300.00
                                    TOTAL: $    333,300.00

**DECLARATION OF REPRESENTATIVE, GUARDIAN, CONSERVATOR, OR SMALL ESTATE CLAIMANT**

3. Attachments 1 and 2 together with all prior inventories filed contain a true statement of
   [X] all    [ ] a portion    of the estate that has come to my knowledge or possession, including particularly all money and all just claims the estate has against me. I have truly, honestly, and impartially appraised to the best of my ability each item set forth in Attachment 1.
4. [ ] No probate referee is required    [X] by order of the court dated (specify): 4/11/2005
5. **Property tax certificate.** I certify that the requirements of Revenue and Taxation Code section 480
   a. [ ] are not applicable because the decedent owned no real property in California at the time of death.
   b. [X] have been satisfied by the filing of a change of ownership statement with the county recorder or assessor of each county in California in which the decedent owned property at the time of death.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 4/20/05

Lisa T. Ryan
(TYPE OR PRINT NAME; INCLUDE TITLE IF CORPORATE OFFICER)                    (SIGNATURE)

**STATEMENT ABOUT THE BOND**
(Complete in all cases. Must be signed by attorney for fiduciary, or by fiduciary without an attorney.)

6. [X] Bond is waived, or the sole fiduciary is a corporate fiduciary or an exempt government agency.
7. [ ] Bond filed in the amount of: $                [ ] Sufficient    [ ] Insufficient
8. [ ] Receipts for: $                have been filed with the court for deposits in a blocked account at (specify institution and location):

Date: 5/9/05

David R. Masci
(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY OR PARTY WITHOUT ATTORNEY)

JUN 27 2005

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
DE-160/GC-040 [Rev. January 1, 2003]

**INVENTORY AND APPRAISAL**

Probate Code, §§ 2610–2616, 8800–8980;
Cal. Rules of Court, rule 7.501

LexisNexis® Automated California Judicial Council Forms

DE-161, GC-041

| ESTATE OF *(Name):* | CASE NUMBER: |
|---|---|
| Laura Palma Ryan | A 230138 |

### INVENTORY AND APPRAISAL
### ATTACHMENT NO.: 2

*(In decedents' estates, attachments must conform to Probate*
*Code section 8850(c) regarding community and separate property.)*

Page: 1  of: 1  total pages.
*(Add pages as required.)*

| Item No. | Description | Appraised value |
|---|---|---|
| 1 | One third interest in real property located at 1276 S. Sycamore Avenue, Los Angeles CA with the legal description of Lot 306 of tract 5069, County of Los Angeles, State of California, as per map recorded in Book 56, Pages 82 to 85 of maps, in the office of the County Recorder of said county. | 253,000.00 |
| 2 | Santa Anita Mobile Home located at 16222 Monterey Lane Space 376, Huntington Beach, CA 92649. (Lot were Mobile home is parked is leased). | 80,000.00 |
| 3 | Personal furniture and furnishings. Estimated value of $300.00 | 300.00 |

Form Approved by the
Judicial Council of California
DE-161, GC-041 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**INVENTORY AND APPRAISAL ATTACHMENT**

Probate Code, §§ 301,
2610-2613, 8800-8920,
10309

*LexisNexis® Automated California Judicial Council Forms*

DE-161, GC-041

| ESTATE OF *(Name):* | CASE NUMBER: |
|---|---|
| Laura Palma Ryan | A 230138 |

### INVENTORY AND APPRAISAL
### ATTACHMENT NO.: ___1___

*(In decedents' estates, attachments must conform to Probate Code section 8850(c) regarding community and separate property.)*

Page: ___1___ of: ___1___ total pages.
*(Add pages as required.)*

| Item No. | Description | Appraised value |
|---|---|---|
| 1 | None | $ 0.00 |

Form Approved by the
Judicial Council of California
DE-161, GC-041 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**INVENTORY AND APPRAISAL ATTACHMENT**

Probate Code, §§ 301,
2610-2613, 8800-8920,
10309
*LexisNexis® Automated California Judicial Council Forms*

149

| ESTATE OF *(Name):* Laura Palma Ryan | | | | CASE NUMBER: |
|---|---|---|---|---|
| | [X] DECEDENT | [ ] CONSERVATEE | [ ] MINOR | A 230138 |

### DECLARATION OF PROBATE REFEREE

9.  I have truly, honestly, and impartially appraised to the best of my ability each item set forth in Attachment 2.
10. A true account of my commission and expenses actually and necessarily incurred pursuant to my appointment is:

| | | |
|---|---|---|
| Statutory commission: | $ | 333.30 |
| Expenses *(specify):* | $ | 55.00 |
| **TOTAL:** | $ | 388.30 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:      June 21, 2005

Feredoon Nobar
(TYPE OR PRINT NAME)                              (SIGNATURE OF REFEREE)

---

### INSTRUCTIONS

**(See Probate Code sections 2610-2616, 8801, 8804, 8852, 8905, 8960, 8961, and 8963 for additional instructions.)**

1. See Probate Code section 8850 for items to be included in the inventory.

2. If the minor or conservatee is or has been during the guardianship or conservatorship confined in a state hospital under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services, mail a copy to the director of the appropriate department in Sacramento. (Prob. Code, § 2611.)

3. The representative, guardian, conservator, or small estate claimant shall list on Attachment 1 and appraise as of the date of death of the decedent or the date of appointment of the guardian or conservator, at fair market value, moneys, currency, cash items, bank accounts and amounts on deposit with each financial institution (as defined in Probate Code section 40), and the proceeds of life and accident insurance policies and retirement plans payable upon death in lump sum amounts to the estate, except items whose fair market value is, in the opinion of the representative, an amount different from the ostensible value or specified amount.

4. The representative, guardian, conservator, or small estate claimant shall list in Attachment 2 all other assets of the estate which shall be appraised by the referee.

5. If joint tenancy and other assets are listed for appraisal purposes only and not as part of the probate estate, they must be separately listed on additional attachments and their value excluded from the total valuation of Attachments 1 and 2.

6. Each attachment should conform to the format approved by the Judicial Council. (See *Inventory and Appraisal Attachment* (form DE-161/GC-041) and Cal. Rules of Court, rule 201.)

---

DE-160/GC-040 [Rev. January 1, 2005]                    **INVENTORY AND APPRAISAL**                    Page 2 of 2

*LexisNexis® Automated California Judicial Council Forms*

## NOTICE TO HEIR, JOINT TENANT AND PERSONAL REPRESENTATIVE OF THE ESTATE OF

## LAURA P. RYAN

This is to advise you of your rights and responsibilities regarding the mobilehome owned by the above resident in Rancho Del Rey Mobilehome Estates located at:

### 16222 Monterey Ln-Space 376 Huntington Beach, Ca, 92649

Pursuant to the Mobilehome Residency Law (California Civil Code), you have the right to advertise the sale of this mobilehome, which may remain in the Park if it complies with the provisions of the Section 798.73 of the Civil Code and if all of the resident's responsibilities and liabilities to the Park regarding rent, utilities, and reasonable maintenance of the mobilehome and its premises that have arisen since the death of the resident have been satisfied in accordance with the Rental Agreement in effect at the time of the death of the resident up until the date the mobilehome is resold.

Prior to the sale of the mobilehome, or the possible replacement of the mobilehome, you must satisfy the requirements of Section 798.78(c) of the Civil Code. Further, no sale of the mobilehome may take place without the prior approval of the Park by the prospective purchaser of the mobilehome and the execution of the Rental Agreement between the Park and the prospective purchaser. In the event you sell the mobilehome to a prospective purchaser who has not been approved by the Park, that person shall have no rights of tenancy in the Park.

**In the event that an Heir wants to establish tenancy in the Park, it will be necessary for the Heir to comply with all of the requirements of the Mobilehome Residency Law relating to a prospective purchaser of a mobilehome that will remain in the Park. Specifically, the Heir must apply for residency and meet all park requirements for approval.**

Please contact the Park Management ten days from date of mailing at the below address and/or telephone number regarding your intentions relative to this Mobilehome Space 376 and a statement of the responsibilities and liabilities to the Park which must be satisfied.

Dated:

Signed:
Park Management

*Rancho Del Rey Mobilehome Estates*
Address: 16222 Monterey Ln [OFC]
Huntington Beach, CA 92649
Telephone: 714-846-1429

151

1/1/2006

# RANCHO DEL REY MOBILE HOME ESTATES
## 16222 MONTEREY LANE
## HUNTINGTON BEACH, CALIFORNIA

## MOBILEHOME RENTAL AGREEMENT

## EQUAL HOUSING OPPORTUNITY

## WE DO BUSINESS IN ACCORDANCE WITH THE FEDERAL FAIR HOUSING LAW

**IT IS ILLEGAL TO DISCRIMINATE AGAINST ANY PERSON BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN**

152

RANCHO DEL REY MOBILE HOME ESTATES
16222 MONTEREY LANE
HUNTINGTON BEACH, CALIFORNIA

## MOBILEHOME RENTAL AGREEMENT

### TABLE OF CONTENTS

Page

INFORMATION SUMMARY .......................................................................................... -1-

DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS ........................................ -2-

1.    TERM.......................................................................................................... -3-

2.    RENT .......................................................................................................... -3-

3.    UTILITIES.................................................................................................. -3-

4.    RENT AND OTHER CHARGES ................................................................ -3-

5.    SECURITY DEPOSIT................................................................................ -5-

6.    RESOLUTION OF DISPUTES................................................................... -4-

7.    SALE OF MOBILEHOME .......................................................................... -7-

8.    REMOVAL OF MOBILEHOME UPON SALE TO THIRD PARTY........................ -7-

9.    APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS..................... -7-

10.    ASSIGNMENT AND SUBLEASING........................................................ -8-

11.    CONFLICTS ............................................................................................ -8-

12.    SERVICES AND IMPROVEMENTS....................................................... -9-
        12.1    SERVICES AND IMPROVEMENTS PROVIDED ......................... -9-
        12.2    CHANGES IN RULES AND REGULATIONS, STANDARDS OF
                MAINTENANCE, SERVICES, EQUIPMENT, OR PHYSICAL
                IMPROVEMENTS.......................................................................... -10-

13.    TERMINATION OF THIS AGREEMENT BY YOU ................................. -10-

14.    TERMINATION OF THIS AGREEMENT BY THE PARK ...................... -10-

Document10 Rancho Del Rey                                i

© 2006 Alston  All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

15. INDEMNIFICATION.................................................................................................-11-

16. INCORPORATED DOCUMENTS ............................................................................-11-

17. COMPLIANCE WITH LAW AND RULES AND REGULATIONS........................-11-

18. ZONING, USE PERMIT AND OWNER INFORMATION ......................................-11-

19. TRANSFER OF PARK'S INTEREST ......................................................................-11-

20. NOTICES ...................................................................................................................-11-

21. WAIVER.....................................................................................................................-11-

22. ENTIRE AGREEMENT ............................................................................................-12-

23. ATTORNEY'S FEES .................................................................................................-12-

24. HEADINGS AND FORMATTING ...........................................................................-12-

25. PARTIAL INVALIDITY ...........................................................................................-12-

26. ALTERATION OF THIS AGREEMENT ..................................................................-12-

27. DEFINITIONS OF OWNER OF THE PARK, HOMEOWNERS,
RESIDENTS, SALE OF MOBILEHOME AND BUYER..........................................-12-

28. HOLDOVER TENANCY...........................................................................................-12-

29. COUNTERPARTS .....................................................................................................-12-

30. EXHIBITS ..................................................................................................................-13-

31. OWNER'S APPROVAL AND OPTIONS .................................................................-13-

32. STATUTE OF LIMITATION ....................................................................................-13-

33. USE AND OCCUPANCY ..........................................................................................-13-

34. INSPECTION .............................................................................................................-13-

35. ENFORCEMENT OF CONDITIONS OF TENANCY .............................................-13-

36. MAINTENANCE OF IMPROVEMENTS ................................................................-13-

Document10 Rancho Del Rey  ii

© 2006 Alston  All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

37.    CONDEMNATION......................................................................................................-14-

38.    TIME OF ESSENCE ....................................................................................................-14-

39.    MODIFICATION FOR LENDER................................................................................-14-

40.    ESTOPPEL CERTIFICATE.........................................................................................-14-

41.    LIMITATION OF OUR LIABILITY .........................................................................-14-

42.    MEGAN'S LAW............................................................................................................-14-

43.    EXECUTION .................................................................................................................-15-

Document13 Rancho Del Rey                          iii

© 2006 Alston  All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

**RANCHO DEL REY MOBILE HOME ESTATES**
**16222 MONTEREY LANE**
**HUNTINGTON BEACH, CALIFORNIA**

MOBILEHOME RENTAL AGREEMENT

INFORMATION SUMMARY

The following information from the Agreement is summarized for the convenience of both of us. Please see the applicable paragraphs in this Agreement for the complete information which controls if there is a difference between it and the following:

A.    Space Number: _376_

B.    Resident(s): _Laura Ryan, Lisa T. Ryan, Patricia C. Ryan_

C.    Date this Agreement Begins and Length/Term of this Agreement:

    (1)    On a month-to-month basis beginning _____, 20___.

                                                   (Resident's Initials)

    (2)    For a period of _12_ months beginning _1-1-_, 20_06_   _LJR_
          (not to exceed 12 months).   (Resident's Initials)

D.    Monthly Rent: Your beginning monthly rent will be $_696.00_ . The amount of your rent may be increased at any time on ninety (90) days' notice. The increase in rent may be made because of such things as new or increased operating expenses we may incur, increases in what we believe to be a fair market rent for your mobilehome space or any other reason we believe, in our sole discretion, to be appropriate so long as the rent increase is not otherwise specifically prohibited by law.     _LJR_
                                                               (Resident's Initials)

E.    Utilities:

    (1)    Utilities You Pay to Park:

              Electricity, Water and Natural Gas on submetered basis.

              Sewer and Trash at an initial charge of $_10.27_ /month for Sewer and $_12.33_ /month for Trash.

    (2)    Utilities Included in Your Rent: None.

    (3)    Utilities you purchase from Others: Telephone and cable TV.

    Utilities may be increased or changed as allowed by this Agreement.

F.    Other Charges:

   (1)    Late Payment:           $20.00

   (2)    Returned Checks: $20.00

   (3)    Security Deposit: $ _-0-_____

   (4)    RV/Extra Vehicles:      $ _60 00_____    per month per vehicle

   (5)    Government Fees:        As charged to Park

   (6)    Extra Persons Charge:   $ _0_____    per day per person

   (7)    Guest Cottage Charge:   $ _50 00_____    per day.

   (8)    Other:    _____

         _____

   These above charges may be increased or changed as allowed by this Agreement.

G.    Facilities to be provided by the Park for Residents during the term of this Agreement, unless changed: The streets, R.V. storage area (subject to separate agreement and charge), 2 clubhouses, 2 swimming pools and spas, 4 saunas, 3 laundry rooms and 2 guest cottages which are available for residents to rent to house their short-term guests.

H.    Services to be provided by the Park for Residents during the term of this Agreement, unless changed: Park Manager, electricity, natural gas, water, sewer, and trash.

   Facilities and services may be decreased or changed as allowed by this Agreement.  The cost of providing and maintaining facilities and services may increase your rent per the provisions of this Agreement.


### DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS

OUR MOBILEHOME PARK IS AN OLDER PARK; THEREFORE, THE UTILITY SYSTEMS (ELECTRIC, NATURAL GAS, SEWER AND WATER) DO NOT WORK AS WELL AS NEWER SYSTEMS AND DO PERIODICALLY BREAK DOWN OR PROVIDE LESS-THAN-ADEQUATE SERVICE.

YOU ACKNOWLEDGE THAT WE HAVE OFFERED YOU THE OPTION OF HAVING THIS AGREEMENT HAVE A TERM OF 12 MONTHS OR LESS, INCLUDING A MONTH-TO-MONTH TENANCY.  YOU ALSO ACKNOWLEDGE THAT YOU HAVE VOLUNTARILY SELECTED THE TERM LISTED AT PARAGRAPH C ON PAGE 1 OF THIS AGREEMENT.

RESOLUTION OF DISPUTES:  YOU AGREE THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES," WILL BE DETERMINED BY SUBMISSION TO WHAT IS KNOWN AS A REFERENCE AND NOT BY WHAT MOST PEOPLE CONSIDER THE NORMAL LAWSUIT OR BY RESORTING TO NORMAL COURT PROCESSES.  BY SIGNING THIS AGREEMENT, BOTH YOU AND WE ARE GIVING UP OUR CONSTITUTIONAL RIGHT TO HAVE THOSE DISPUTES DECIDED IN A COURT OF LAW BEFORE A JURY AND, INSTEAD, ARE ACCEPTING THE USE OF THE REFERENCE PROCEDURES.

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc        Rancho Del Rey
©2006  Alston & Gieser, LLP  All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

I AGREE I HAVE READ AND UNDERSTOOD THE ABOVE DISCLOSURES AND ACKNOWL-
EDGMENTS.

SIGNATURE: _____    DATE: 1/10/2006

SIGNATURE: _____    DATE: 1/20/2006

SIGNATURE: _____    DATE: _____

1.    **TERM:** You are renting the Space listed at paragraph A on page 1 of this Agreement in Rancho Del Rey Mobile Home Estates located in Huntington Beach, California (the Park). This Agreement is for the term and begins on the date listed at paragraph C on page 1 of this Agreement unless it terminates earlier per the termination paragraphs of this Agreement.

2.    **RENT:** Your rent will be the amount listed at paragraph D on page 1 of this Agreement and it may be increased as permitted by that paragraph.

3.    **UTILITIES:**

3.1    You are responsible for making sure that your mobilehome and all appliances and equipment in your mobilehome are compatible with the electric service and capacity now available, and we shall have no liability or responsibility to you if the available electrical supply is incompatible. You agree not to install electrical appliances which will use energy in excess of the electrical service and capacity available to your Space. You also agree that you will not attempt to increase the electrical service and capacity of your Space by installing any device or doing anything else unless you have received our prior written permission. If your electrical demands exceed the capability of the Park, or are otherwise inconsistent with the capabilities of the Park, you will be deemed to be in default under your rental or lease agreement and you will, in addition to all of the remedies available to us, reimburse us within ten (10) working days for any costs and expense we incur in remedying the situation created by your use of excessive or inconsistent electrical demands. You also agree to indemnify and hold us harmless against any loss, cost, damage, expense (including attorneys' fees and costs) or other liability incurred or imposed by reason of any injury to persons or property which occurs as a result of your electrical demands. As the amount of such electrical service and capacity will affect your ability to have electrical appliances, you must determine in advance from us in writing the amount of electrical service and capacity available to your Space and insure that your mobilehome and all appliances and equipment in it are compatible with that service and capacity.

3.2    We will provide, submeter and separately charge you monthly for gas, water, and electricity. Any increases in the cost of utilities submetered will be immediately passed-through and paid by you. We will initially charge you monthly the amount indicated in paragraph E(1) on page 1 of this Agreement for trash and sewer. Any increase in the cost of utilities separately charged will be immediately passed-through and paid by you, at such prevailing rates regulated and authorized by the utility companies. You will contract with and pay directly for all other utilities you require.

4.    **RENT AND OTHER CHARGES:**

4.1    If you do not maintain your mobilehome or Space as required by this Agreement and the Rules and Regulations, we may give you a notice requiring you to comply in fourteen (14) days. If you do not, we may charge you a reasonable fee for having this work done. In accordance with Civil Code §798.36 Management may after providing you with 14 days notice charge you with the reasonable costs for removal personal property and storage thereof for a period of sixty-day period prior to the ultimate disposal of unclaimed property.

4.2    If you store or park a vehicle, trailer or something else in the recreational vehicle storage lot or other extra vehicle parking area, you will be charged the amount indicated in paragraph F(4) on page 2 of this Agreement. This charge may be increased at any time on sixty (60) days' written notice. This storage or parking will be per the terms

of a separate agreement which you will be required to sign, not by this Agreement. We are not obligated to provide parking for all vehicles, access to this area is on a first-come, first-served basis and it may be eliminated on ninety (90) days' written notice and the area used for another purpose.

4.3    Rent and all other charges except utilities are due in advance on the first day of each month. Utility charges are also due by the first day of each month. Also please refer to our Rules and Regulations for additional requirements regarding your payment of taxes, assessments, license fees, and other charges that are applicable to your personal property and improvements. Rent and all other charges must be paid without any deduction or offset whatsoever and will be late if not paid in full by 5:00 p.m. on the 6th day of each month. You must pay a late charge whenever rent or other charges are paid more than six (6) days after they are due and a handling charge whenever a check is returned for any reason in the amounts indicated in paragraphs F(1) and (2) on page 2 of this Agreement. Outstanding balances over thirty (30) days are subject to compound interest at the rate of 1% per month. Total interest in any calendar year shall not exceed the maximum interest allowed by law. Payment will be made at the Park Office or at such other location we designate. All rents and other charges shall be paid by check or money order. We may, upon ten (10) days' notice, require payment in cash, or its equivalent. All of the charges and other amounts noted in this Agreement may be increased at any time on sixty (60) days' notice without reducing the rent or changing any other term or provision of this Agreement.

4.4    Unless otherwise prohibited by law, all government charges and fees charged the Park may be billed by us to you.

5.    SECURITY DEPOSIT: When you sign this Agreement, you will give us the amount indicated as paragraph F(3) on page 2 of this Agreement as a security deposit for your performance of this Agreement. (If you are already a resident, the amount of any security deposit you previously gave us will be this deposit.) If you default, we can use the security deposit to cure the default or compensate us for any damage because of your default. You will immediately pay us a sum equal to the portion of the security deposit we use to maintain it the sum initially deposited. We can commingle the deposit with our other funds and are not required to pay you interest on it.

6.    RESOLUTION OF DISPUTES:

6.1    EXCEPT AS NOTED IN PARAGRAPH 6.5, YOU AGREE THAT ANY AND ALL DISPUTES YOU HAVE WITH US WILL BE SUBMITTED FIRST TO NON-BINDING MEDIATION AND, IF THE DISPUTE CANNOT BE RESOLVED BY THAT METHOD, SUBMITTED TO WHAT IS CALLED A "GENERAL REFERENCE" WHICH WILL BE CONDUCTED PER THE PROVISIONS OF CODE OF CIVIL PROCEDURE SECTION 638. ALL ISSUES RELATING TO THE DISPUTE WILL BE SUBJECT TO THE REFERENCE AND THE REFEREE WHO IS APPOINTED SHALL HAVE ALL THE NECESSARY POWERS TO DECIDE ALL QUESTIONS OF LAW AND FACT RELATING TO THE DISPUTE.

6.2    THE REFERENCE SHALL BE CONDUCTED AND DECIDED BY A RETIRED JUDGE AND NO JURY WILL BE USED.

6.3    YOU ALSO AGREE THAT, AS IS TRUE OF THE OTHER PROVISIONS OF THIS AGREEMENT, THAT THIS PARAGRAPH 6 IS APPLICABLE TO ALL MEMBERS OF YOUR HOUSEHOLD, INCLUDING ANY PERSON(S) WHO HAS NOT SIGNED THIS AGREEMENT OR WHO MAY BECOME A MEMBER OF YOUR HOUSEHOLD AFTER THE DATE YOU SIGNED THIS AGREEMENT.

6.4    ALTHOUGH THE WORD "MEDIATION" IS OFTEN NOT USED BELOW, UNLESS UNREASONABLE TO DO SO, EVERYTHING IN PARAGRAPH 6

J:\091519\003\RENTAGR\Rental Agreement revised for 2006.doc    Rancho Del Rey                                              Page 4
© 2006 Alston & Gieser, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

REGARDING A REFERENCE ALSO APPLIES TO MEDIATION.

6.5    WE MAY, AT OUR OPTION, ELECT TO HAVE ANY OF THE FOLLOWING DISPUTES SUBMITTED TO A REFERENCE OR TO BE TRIED IN THE COURTS UNDER NORMAL PROCEDURES TO A JUDGE SITTING ALONE WITHOUT A JURY:  (a) TERMINATION OF TENANCY DUE TO A FAILURE TO PAY RENT OR OTHER CHARGES OR FOR ANY OF THE OTHER REASONS TENANCY MAY BE TERMINATED PER CIVIL CODE §798.56(a) THROUGH (e), INCLUSIVE; (b) FORCIBLE DETAINER; (c) INJUNCTIVE RELIEF PER [i] CODE OF CIVIL PROCEDURE §527.6, [ii] CIVIL CODE §798.87(b), OR [iii] CIVIL CODE §798.88; (d) PAYMENT OF THE MAINTENANCE FEE PROVIDED FOR IN CIVIL CODE §798.36; (e) CONDEMNATION OR A CHANGE OF THE USE OF THE PARK AS PROVIDED IN CIVIL CODE §798.56(f) AND (g); AND (f) TO PRESERVE ANY EQUITABLE RIGHTS RELATING TO ANY DISPUTE.   MEDIATION WILL NOT OCCUR FOR THE DISPUTES IN THIS PARAGRAPH 6.5.

6.6    "DISPUTE" INCLUDES NOT ONLY DISPUTES YOU MAY HAVE WITH US BUT ALSO DISPUTES AGAINST ANY OF OUR EMPLOYEES, CONTRACTORS, AGENTS OR ANY OTHER PERSON WHO YOU CONTEND HAS INJURED YOU WHEN YOU ALSO CONTEND THAT WE ARE RESPONSIBLE FOR THAT OTHER PERSON'S ACTS OR FAILURE TO ACT.

6.7    BEFORE THE LAWSUIT REQUIRED TO BEGIN A REFERENCE MAY BE FILED, MEDIATION MUST BE ATTEMPTED.  THIS IS DONE BY YOU SERVING US AND THE JUDICIAL ARBITRATION AND MEDIATION SERVICE, INC. ("JAMS") WITH A WRITTEN DEMAND OR NOTICE OF INTENTION TO REQUIRE A REFERENCE.

6.8    YOU MUST GIVE US THIS NOTICE NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE. IF YOU DO NOT GIVE US NOTICE WITHIN THE ONE (1) YEAR TIME PERIOD, YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY INJURY OR DAMAGE YOU OR OTHERS IN YOUR HOUSEHOLD MAY EXPERIENCE AND, THEREFORE, THAT DISPUTE WILL NOT BE SUBJECT TO A REFERENCE OR ANY PROCEEDING IN THE COURTS.   THIS ONE (1) YEAR TIME LIMITATION APPLIES TO BEING ENTITLED TO BOTH MEDIATION AND A REFERENCE.  FOR EXAMPLE, IF THE DATE WHEN YOU FIRST BECAME AWARE OF THE DISPUTE WAS JANUARY 1, 1995, NOTICE OF THE DISPUTE MUST BE GIVEN BY YOU TO US BY DECEMBER 31, 1995 IN ORDER TO HAVE THE DISPUTE MEDIATED AND HAVE A REFERENCE, AND IF NOTICE WAS GIVEN AFTER DECEMBER 31, 1995, NEITHER MEDIATION OR A REFERENCE WOULD OCCUR.

6.9    THE NOTICE REFERRED TO IN PARAGRAPH 6.8 MUST PROVIDE: (i) A DESCRIPTION OF THE DISPUTE, AND (ii) FACTS FROM WHICH THE DISPUTE ARISES INCLUDING WITNESSES, DATES, TIMES AND CIRCUMSTANCES. IF THE DISPUTE IS NOT RESOLVED IN NINETY (90) DAYS BY MEDIATION, THE DISPUTE

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc        Rancho Del Rey
©2006 Alston & Gitter, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

MUST EITHER BE ABANDONED OR RESOLVED BY A REFERENCE.

6.10    EVEN THOUGH YOU MAY HAVE A REASONABLE CLAIM, THE REFEREE SHALL REFUSE TO GRANT ANY RELIEF TO YOU IF YOU DO NOT COMPLY WITH THE ABOVE ONE (1) YEAR TIME PERIOD.  IF MEDIATION FAILS AND YOU CHOOSE TO FILE THE LAWSUIT REQUIRED TO START A REFERENCE, THE LAWSUIT MUST BE FILED BY YOU WITHIN TEN (10) DAYS OF THE DATE THE MEDIATOR DECLARES AN IMPASSE OR THE MEDIATOR ISSUES HIS OR HER RECOMMENDATIONS OR DECISION.

6.11    IF MEDIATION FAILS AND YOU AND WE CANNOT AGREE IN TEN (10) DAYS FROM THE DATE THE LAWSUIT IS FILED WHO THE REFEREE WILL BE, A COURT OF COMPETENT JURISDICTION WILL PROVIDE BOTH OF US WITH A LIST OF AT LEAST FIVE (5) NEUTRAL REFEREES, FROM WHICH YOU AND WE WILL ATTEMPT TO SELECT A REFEREE FROM.  IF WE CANNOT AGREE, THE COURT WILL MAKE THE SELECTION FROM THAT LIST FOR US.  BOTH YOU AND WE WILL BE GIVEN THE RIGHT OF ONE PEREMPTORY CHALLENGE TO DISQUALIFY A PERSON FROM BEING THE REFEREE.  THE REFERENCE SHALL COMMENCE WITHIN ONE HUNDRED TWENTY (120) DAYS FROM THE DATE THE REFEREE IS APPOINTED, UNLESS CONTINUED ON REQUEST TO THE REFEREE, OR BOTH OF US AGREE.  THE REFEREE WILL BE A DIFFERENT PERSON THAN THE MEDIATOR.

6.12    UNLESS BOTH OF US AGREE, NO DISPUTE WILL BE CONSOLIDATED OR JOINED TOGETHER WITH A DISPUTE OF ANY OTHER PERSON.

6.13    UNLESS OTHERWISE DETERMINED BY THE MEDIATOR OR REFEREE THE FEES AND COSTS FOR THE MEDIATION AND REFERENCE SHALL BE PAID IN ADVANCED AND DIVIDED EQUALLY BETWEEN YOU AND US.  THE FEES ARE DUE AND PAYABLE ON REQUEST OF THE MEDIATOR OR REFEREE. IT IS EXPECTED THAT THE MEDIATOR OR REFEREE WILL MAKE A REASONABLE ESTIMATE OF ANTICIPATED FEES AND COSTS OF THE MEDIATION OR REFERENCE AND SEND A STATEMENT TO EACH OF US, AND EACH OF US WILL DEPOSIT OUR ONE-HALF SHARE WITH THE MEDIATOR OR REFEREE WITHIN TEN (10) DAYS. IF PAYMENT IS NOT MADE AS REQUIRED THE MEDIATOR OR REFEREE SHALL HAVE THE AUTHORITY TO:  (1) DETERMINE THAT THE PERSON WHO FAILED TO PAY HAS FORFEIT AND GIVEN UP ALL RIGHTS TO PROSECUTE OR DEFEND THE CLAIM; (2) PROCEED WITHOUT PAYMENT AND SHALL INCLUDE IN THE AWARD AS TO WHICH PARTY MUST PAY THE OUTSTANDING AMOUNTS; (3) REQUIRE THAT A PARTY THAT HAS PAID HIS/HER SHARE PAY ADDITIONAL AMOUNTS.  HOWEVER, UNLESS THE MEDIATOR OR REFEREE MAKES A DETERMINATION TO THE CONTRARY THE PARTY WHO PAID ADDITIONAL SUMS IS ENTITLED TO REIMBURSEMNT OF THOSE SUMS AND MAY SUBTRACT SUCH PAYMENTS FROM AN AWARD AGAINST SUCH PARTY OR MAY HAVE SUCH SUMS INCLUDED IN A JUDGMENT ENTERED AS A RESULT OF AN AWARD IN HIS/HER FAVOR.  IF EITHER OF US FAILS TO MAKE A DEPOSIT, INCLUDING ANY ADDITIONAL DEPOSIT LATER

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc    Rancho Del Rey

© 2006 Alston & Gieser, LLP  All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

DETERMINED TO BE NECESSARY BY THE MEDIATOR OR REFEREE, THE FAILURE OF ONE OF US TO PAY WILL NOT, HOWEVER, ABATE, STAY, OR SUSPEND THE MEDIATION OR REFERENCE AND THE MEDIATOR OR REFERENCE.

6.14   YOU ACKNOWLEDGE HAVING READ THIS PARAGRAPH 6. YOU ALSO AGREE THAT THESE PROVISIONS WILL APPLY TO YOU AT ALL TIMES IN THE FUTURE (EVEN THOUGH THAT MAY BE BEYOND THE TERM OF THIS AGREEMENT OR AFTER YOUR TENANCY OR THIS AGREEMENT HAS BEEN TERMINATED OR YOU MOVE FROM THE PARK) UNLESS THESE PROVISIONS ARE ELIMINATED AFTER THE TERM OF THIS AGREEMENT ENDS BY A WRITTEN 60-DAY NOTICE FROM US TO YOU.

6.15   NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE YOUR DISPUTES WITH US DECIDED BY A NEUTRAL REFEREE AS PROVIDED BY CALIFORNIA LAW, AND YOU ARE GIVING UP ALL RIGHTS YOU HAVE TO HAVE THE DISPUTES LITIGATED IN A COURT OR BY A JURY TRIAL. IF YOU REFUSE TO SUBMIT TO A REFERENCE AFTER AGREEING TO THESE PROVISIONS, YOU MAY BE COMPELLED TO A REFERENCE UNDER CALIFORNIA LAW. YOUR AGREEMENT TO THESE PROVISIONS IS VOLUNTARY. YOU HAVE READ AND UNDERSTAND THIS PARAGRAPH 6 AND AGREE TO SUBMIT YOUR DISPUTES TO A "REFERENCE" AS PROVIDED IN THIS PARAGRAPH 6.

BY INITIALING BELOW, YOU ACKNOWLEDGE THE PROVISIONS AND AGREEMENTS IN PARAGRAPH 6 ABOVE.

Initials of Homeowner(s): _____

7.      **SALE OF MOBILEHOME:** You may sell/transfer your mobilehome per your and our rights and obligations under this Agreement. You must, however, give us sixty (60) days' written notice of your intent to sell/transfer your mobilehome. You must also give us written notice at least ten (10) days prior to your execution of any escrow, sale, exchange, transfer or other agreement. The requirements of this Agreement and this paragraph will apply even if you sell or transfer only a portion of your interest in your mobilehome.

8.      **REMOVAL OF MOBILEHOMES UPON SALE TO THIRD PARTIES:**

        We may, in order to upgrade the quality of the Park, require the removal of mobilehomes from the Spaces upon their sale or transfer to a third party, in accordance with the provisions of the Mobilehome Residency Law and other applicable law. Any such rights granted us due to amendments, deletions, or modifications of the Mobilehome Residency Law and other applicable law may be enforced by us at our option.

9.      **APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS:**

        9.1     If your prospective buyer/transferee intends for the mobilehome to remain in the Park, or the buyer/transferee intends to reside in the Park, the buyer/transferee must do the following before occupying the mobilehome or Space: complete an application for residency, sign the Park's current rental or lease agreement which may be different than this Agreement and be accepted by us. The rent we are then charging may be increased to any amount we believe appropriate. We may request a financial statement, credit report, references and other reasonable information we need from any prospective buyer/ transferee. If the buyer/transferee is not approved by us or does not

162

sign the Park's current rental or lease agreement, they will have no rights of tenancy in the Park and they may not leave the mobilehome here or occupy the Space. In such event, you will remain fully responsible to us for the full performance of this Agreement. We may also, at our option, pursue such remedies as we may have against the buyer/ transferee/assignee alone, against both you and them or against you alone.

9.2     The requirements of this Agreement will apply before any person other than the ones listed on the signature page of this Agreement, will be permitted to become a resident of the Park. Unless otherwise prohibited by law all persons residing at your space must be approved for residency. If the person is not going to be a signatory to this lease no financial information will be required. Any person that we determine from prior tenancies will not abide by the rules and regulations will not be approved. A guest or other person who has not previously signed this Agreement who remains in the Park after his host has died, moved, or for any other reason does not physically reside in the Park on a regular basis, will be considered to be the equivalent of a buyer/transferee/assignee and will be subject to the requirements of this Agreement. This means that the guest or other person will have to apply for residency and if approved will be offered a rental agreement and that rental agreement may be higher that what you have been paying under this Agreement. This will be true regardless of whether the guest is listed as a "legal" or "registered" owner of the mobilehome. The requirements of this Agreement will also apply if you only sell/transfer a portion of your interest in your mobilehome or assign only a portion of your right to occupy your Space.

9.3     You agree to do such other things and to execute and deliver to us such additional documents as we may reasonably require to protect our interest in conjunction with the sale/ transfer/assignment of this Agreement.

10.     ASSIGNMENT AND SUBLEASING:

10.1     You may not assign this Agreement and any purported assignment will be void. You may not assign the right to occupy your mobilehome or Space and any such assignment will be void. (If the mobilehome is to be removed from the Space and not replaced with another mobilehome, we must also be given at least 60 days' advance written notice and the right to possession and control of the Space will, at our option, revert to us. The only exception is if you replace it with another mobilehome you personally occupy as your residence.) Unless required by law, including, as is presently the case, an ordinance of the City of Huntington Beach, subleasing is prohibited and any attempted subleasing will be void.

10.2.     Subletting, except as permitted under Civil Code Section 798.23.5 and/or The City of Huntington Beach Municipal Ordinance 3277 is prohibited, and all other subletting will be void. "Subletting" means any renting, regardless of the time period or how it is characterized, of the mobilehome or Space. If you have lived in the Park for one or more years, you may sublease your mobile home and space for no less than six months and no more than twelve (12) months pursuant to the provisions of Civil Code Section 798.23.5. You must provide the Park with written notice of your intent to sublease your mobile home along with proof of the medical emergency or treatment requiring your absence from your mobile home. Your prospective sublesee shall be required to complete a residency application and be approved for residency by the Park. The Park may at its sole option elect to charge your prospective sublesee for any appropriate credit screening and personal reference checks the Park elects to make. The Park shall require your prospective sublesee to sign the Rules and Regulations. You shall continue to remain responsible for all rent and other charges pursuant to your Rental Agreement. The Park may, at its sole election, require that you pay an additional security deposit of not more than two (2) month's rent which shall be refunded at the end of the subleasing period. You must keep on file with the Park the current address and telephone number at which you may be contacted during the subleasing period.

10.3     This Agreement may be terminated, at our option, if you assign or sublet in violation of this Agreement. The Park or anyone it designates may rent, lease or sublet any Space or any mobilehome.

10.4     If you sublet in accordance with 798.23.5 and our Rules and Regulations and you or the sublessee fail, in advance of the sublessee taking possession of the mobilehome or Space, to comply with our requirements, execute the documents, or obtain the Park's approval of the sublessee, the sublessee will have no right to live in the Park and may not reside on any basis in the mobilehome or at the Space. Subletting means any renting, regardless of the time period or how it is characterized, of the mobilehome or Space.

in effect after your breach and abandonment and recover rent as it becomes due, if you have the right to sublet or assign, subject only to reasonable limitations).

14.3    You agree that the amount of our damages against you per the terms of this paragraph 13 may, at our sole option, be determined by paragraph 6 of this Agreement and that the mediation portions of such provisions shall not be applicable.

15.    **INDEMNIFICATION:** To the fullest extent the law allows, we have no liability to you or anyone else for anything which is not caused by our active negligence or willful acts and you agree to completely release, discharge, indemnify, and hold us free and harmless from all claims for which we are not liable, including providing a defense and the payment of attorneys' fees and costs of an attorney we choose. You agree to indemnify and hold us harmless from all claims, including providing a defense and the payment of attorneys' fees, and costs of an attorney we choose, which occur because of the negligent or willful conduct of you or others who you invite to be in the Park. You also agree to indemnify and hold us harmless from all claims you may have of economic loss, diminution in market value, or depreciation of your mobilehome, and other improvements.

16.    **INCORPORATED DOCUMENTS:** You agree you have received, read and understood a copy of: This Agreement; the Mobilehome Residency Law which is effective as of January 1st of the year in which you signed this Agreement or signed a document accepting an assignment of this Agreement (which you agree was attached to this Agreement at the time you received it); the Rules and Regulations (including signs posted in the common areas) which you agree are effective immediately; R.V. Storage Agreement; and other: _____.
You understand that by signing this Agreement, you are bound by all of the terms and conditions of these documents and signs as they may be revised per this Agreement.

17.    **COMPLIANCE WITH LAW AND RULES AND REGULATIONS:** You agree to comply with all applicable laws, ordinances, regulations and all terms of this Agreement, the Rules and Regulations, and all terms contained in any document referred to in this Agreement, as they may be changed.

18.    **ZONING, USE PERMIT AND OWNER INFORMATION:** The zoning under which the Park operates is MHP - Mobilehome Park. The permits under which the Park operates are not subject to expiration or renewal. The Park is not located on land which we lease from someone else, but we do have the option to enter into such a lease at any time in the future. If we exercise this option, we will notify you of the expiration date of the lease.

19.    **TRANSFER OF PARK'S INTEREST:** If we sell or transfer our interest in the Park to anyone else, we will be automatically relieved of our obligations under this Agreement which occur after the date of the sale/transfer.

20.    **NOTICES:** All notices required or allowed by this Agreement must be in writing. Except for notices terminating your tenancy, the service of any other notice on you will be valid if it is personally served on you or mailed to you at your address in the Park by First Class United States Mail, postage prepaid.

21.    **WAIVER:**

21.1    If you fail to meet any of your obligations under this Agreement, a delay or omission by us in exercising any right or remedy we have because of your default will not impair any of our rights or remedies against you, nor will it be considered a waiver by us of any right or remedy. No waiver by us of our right to enforce any provision of this Agreement after any default on your part will be effective unless it is made in writing and signed by us, nor will it be considered a waiver of our rights to enforce each and every provision of this Agreement upon any further or other default on your part. Our acceptance of rent will also not be a waiver of any breach by you of any term or provision of this Agreement, including any rule, regulation or other term or provision contained in any document referred to in this Agreement.

21.2    Any delay, omission, or mistake by us in exercising any right to make any of the increases allowed by paragraph 2 of this Agreement or other provisions of this Agreement will not impair any of our rights or be considered to be a waiver by us. Instead, we may, at any time, correct our delay, omission, or mistake and collect from you the full

increase retroactive to the date we could have first collected it from you. This will be true even though we may have accepted payment from you of a lesser amount. Examples include: We make an error and do not send a rent increase notice ninety (90) days in advance of your normal rent increase anniversary date. Although you will still be entitled to a 90-day notice, we may send that notice at a later date and retroactively collect the full amount of the increase to your normal rent increase anniversary date. Or, because of a miscalculation or clerical error, we did not charge you the full amount of an increase we are permitted to make. When we discover that error, we may send you a notice and retroactively collect from you the full amount of the increase.

22.      **ENTIRE AGREEMENT:** Please understand that our Park Manager, other personnel, mobilehome dealers, the selling homeowner or sales person who sold you your mobilehome and other persons are not authorized to make any representations or agreements with you about the Park unless those agreements and representations are contained in this Agreement and the other documents and posted signs referred to in it. Therefore, you agree that this Agreement and the other documents and posted signs referred to in it are the entire agreement between you and us regarding the subjects covered by this Agreement, other documents and signs. This Agreement completely supersedes and replaces any and all prior and contemporaneous agreements, representations and understandings of you, any other person, or us.

23.      **ATTORNEY'S FEES:** Attorney's fees and costs may be awarded to you or us per the provisions of the Mobilehome Residency Law, or other laws, including changes to these laws which may occur in the future. The same is true of any other litigation, disputes covered by the "RESOLUTION OF DISPUTES" provisions of this Agreement, between the two of us that is not covered by the Mobilehome Residency Law or other laws.

24.      **HEADINGS AND FORMATTING:** The titles of the paragraphs and subparagraphs in this Agreement or in other documents or posted signs are only for convenience and under no circumstances are they to be considered as any part of this Agreement. You agree that this Agreement is to be considered a typed, not printed document, so that any legal requirements regarding printed documents are not applicable.

25.      **PARTIAL INVALIDITY:** If any part of this Agreement or any document referred to in it is, in any way, invalid or unenforceable, the remainder of this Agreement or the other document shall not be affected, and will be valid and enforceable to the fullest extent permitted by law. The same is true if the application of any part of this Agreement, or any document referred to in this Agreement, is, in any way, invalid or unenforceable to any person or circumstance. The preceding shall not, however, at our sole option, be applicable if our ability to charge for or increase the amount of rent, utilities, or make other charges provided for by this Agreement is held in any way, in whole or in part, to be invalid or unenforceable. In such circumstances, we may, at our sole option, either keep this Agreement in full force and effect or terminate this Agreement or convert your tenancy under this Agreement to a 12-month or less tenancy.

26.      **ALTERATION OF THIS AGREEMENT:** This Agreement may be changed only as provided for by this Agreement or by a written agreement signed by you and us or by operation of law. This Agreement will be construed and interpreted as though both of us had written it together, not as if it had been written by us alone.

27.      **DEFINITIONS OF OWNER OF THE PARK, HOMEOWNERS, RESIDENTS, SALE OF MOBILE-HOME AND BUYER:** The terms "we," "us," and other similar terms used in this Agreement which refer to the owners and the operators of the Park include all owners of the Park and their partners, shareholders, directors, representatives, officers, employees and agents, and their successors and assigns. The term "Park" means the mobilehome park identified in this Agreement. The term "you," "Homeowners," "residents" or any other similar term used in this Agreement which refer to the person(s) who has signed this Agreement or signed another document accepting an assignment of this Agreement includes not only those persons but all members of their household who resided with them at the time this Agreement, or another document accepting an assignment of this Agreement, was signed who had been approved by us for residency in the Park or who were subsequently approved by us for residency in the Park. Note: To shorten this Agreement, the term "sale" is used to refer to any sale or other transfer of the mobilehome and/or any assignment or other transfer of the right to occupy the Space. The term "buyer" is used to refer to anyone buying or otherwise acquiring the mobilehome and/or acquiring the right to occupy the Space by an assignment or other method permitted by this Agreement. Other similar terms consistent with the preceding have also been used.

28.     **HOLDOVER TENANCY:** If you continue to live in the Park after the term of this Agreement has expired or it has been terminated (including any extension of the initial term we agree to), and you have not signed a new rental or lease agreement with us, you shall be on a month-to-month tenancy. During that month-to-month tenancy, you will pay all rent and other charges required by this Agreement and all the terms and provisions of this Agreement, including the "Resolution of Disputes" provisions will continue to apply to you. We may, however, increase the rent or charges you pay or change any other terms of this Agreement upon ninety (90) days' written notice to you.

29.     **COUNTERPARTS:** This Agreement may be signed in duplicate copies, each of which shall be considered an original, but all of which taken together will be one and the same document.

30.     **EXHIBITS:** Each exhibit or other document referred to in this Agreement is attached or enclosed and incorporated in this Agreement by this reference.

31.     **OWNER'S APPROVAL AND OPTIONS:** All references in this Agreement and documents it refers to that our approval is required or other similar terms indicating our approval must be obtained by you means you must obtain our prior written approval by submitting a written request to us which describes what you want to do. References in this Agreement that we may, at our option, adjust or increase rents up to or by a certain amount or do anything else at our option, means we have the right, if we wish, to do so.

32.     **STATUTE OF LIMITATION:** ANY LAWSUIT OR OTHER ACTION AGAINST US MUST BE FILED BY YOU WITH THE COURT NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE OR CLAIM. IF YOU DO NOT FILE THE LAWSUIT OR OTHER ACTION AGAINST US WITH THE COURTS WITHIN THIS ONE (1) YEAR TIME PERIOD, YOU WILL HAVE NO RIGHT TO PROSECUTE OR PURSUE THE LAWSUIT OR OTHER ACTION AND YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY OF THE CLAIMS, DAMAGES, OR OTHER ALLEGATIONS AND RELIEF ASSERTED IN THE LAWSUIT OR OTHER ACTION. IF THE RESOLUTION OF DISPUTES PROVISIONS OF THIS AGREEMENT ARE APPLICABLE TO YOUR DISPUTE OR CLAIM, THEY, TOO, WILL BE SUBJECT TO THE LIMITATIONS OF THIS PARAGRAPH.

33.     **USE AND OCCUPANCY:** Unless otherwise specifically allowed by this Agreement or other documents it incorporates, at all times one of the persons listed on the last page of this Agreement, or on the document assigning this Agreement, must be the "registered" owner of the mobilehome, and that person must regularly occupy the mobilehome, and it must also be their primary residence. When title to the Mobilehome is held in a trust which has been established for the purposed of estate planning one of the person(s) who established the trust must reside in the home on full time basis. You agree that the information you have provided us regarding you, other members of your household and your mobilehome is true and correct. You also agree to promptly notify us, in writing, of any change in this information. Please refer to the Rules and Regulations for further clarification of your use and occupancy of the mobilehome and Space. We, or someone we designate, may conduct a mobilehome sales or rental business in the Park.

34.     **INSPECTION:** By signing this Agreement, or accepting an assignment of it, you agree you have carefully inspected the Space you are renting and all of our services, improvements and facilities and you have found them to be safe and as represented by us to you, either orally or in writing, and you accept them as they are. To the extent that you have found such services, improvements and facilities not to be safe or not to be as represented by us to you, either orally or in writing, you nonetheless agree to accept them as they are.

35.     **ENFORCEMENT OF CONDITIONS OF TENANCY:** You agree that the enforcement of this Agreement, the Rules and Regulations and the provisions of other documents and conditions of tenancy are a private matter between us and each resident on an individual basis and the enforcement or the lack thereof by us with regard to any resident shall not result in any damage or injury to, or claim by you. You also agree that you are not a third party beneficiary of any agreement between us and any other residents or person(s).

36.     **MAINTENANCE OF IMPROVEMENTS:** You are financially responsible to maintain, repair and replace as reasonably necessary your mobilehome and all equipment, structures and other improvements to your mobilehome

166

and Space in good and safe condition and repair and in an aesthetically pleasing condition at all times. This includes, without limitation, the following: the mobilehome, accessory equipment and structures, fences, driveways (except park installed driveways), trees (except trees which present a specific health and safety violation or hazard), banks, and landscaping. Regardless of whether you are the original homeowner/occupant of the Space or of your mobilehome or purchased your mobilehome from a former homeowner who previously lived at your Space, this paragraph applies to you and you are responsible even for those things which were installed by a former owner or resident of the mobilehome or Space, us, or any prior or future owner of the Park. You are financially responsible for insuring at all times that the mobilehome, Space, and their improvements complies with all local, state and federal laws and regulations. (The only exception is any of the Park's utility systems on your Space which are owned by us or a utility company so we or they are responsible for them and park installed driveways.) The preceding includes without limitation such things as: insuring that the drainage is sufficient to prevent water from accumulating on your Space or under your mobilehome or running off so it adversely affects other Spaces or our property; that all required setbacks and lot line requirements are met and there are no encroachments on other property; that all building code and other similar requirements are met; and that all building and other permits have been obtained.

37.    **CONDEMNATION:** If any portion of the Park is taken under the power of eminent domain, or is sold to any authority having the power of eminent domain, either under threat of condemnation or while condemnation proceedings are pending or the utility systems or other portions of the Park are or will be affected by the condemnation to the point where, in our sole opinion, it is not economically desirable to continue operations, we will have the right to terminate this Agreement as of the date the condemning authority takes possession. The entire amount of any award for taking of all or any part of a space or the Park or for any other reason under the power of eminent domain will be our property whether such award shall be made as compensation for diminution in value of the leasehold or for taking the fee or the taking of any interest you may have because of this Agreement or any other lease or rental agreement you have with us or your tenancy in the Park. Nothing contained in this paragraph, however, will preclude you from obtaining any award from the condemning authority to you for the loss of or damage to your mobilehome or other removable personal property.

38.    **TIME OF ESSENCE:** Time is of the essence in this Agreement and each and every provision thereof.

39.    **MODIFICATION FOR LENDER:** If, in connection with our obtaining financing where we use the Park as security, a lender requests reasonable changes in this Agreement as a condition to such financing, you agree to promptly consent to those changes if they do not increase your obligations under this Agreement or materially adversely affect you.

40.    **ESTOPPEL CERTIFICATE:** You shall, on our request, sign and deliver to us a written statement certifying that (a) this Agreement is unmodified and in full force and effect (or if there have been modifications that they are in full force and effect as modified; (b) the dates to which the rent and other charges have been paid; (c) the term of this Agreement; (d) the amount of any security deposit; (e) we are not in default nor have we been in the past under any provision of this Agreement or any laws or regulations affecting our obligations; and (f) any other matters as may be reasonably requested by us. Any such statement may be relied on by us or any person we give it to. You will be in default of this Agreement if you fail to do the above within 10 days of your receipt of a written request for such statement. We may, at our option, treat your failure to sign and deliver this document to us as your agreement to the information we've requested and that we are not in default nor have we been in the past under any provision of this Agreement or any laws, or regulations affecting our obligations to you.

41.    **LIMITATION OF OUR LIABILITY:** In consideration of this Agreement, you agree that, in the event of any actual or alleged failure, breach or default by us under this Agreement or otherwise, your sole and exclusive remedy shall be against the value of our mobilehome park which is identified in this Agreement as the Park (including any insurance policies of us or the Park), not other property or assets which we may own.

42.    **MEGAN'S LAW:** The California Department of Justice, sheriff's departments, other local law enforcement authorities maintain for public access a database of the locations of persons required to register as an identified sex offender. The database is updated on a quarterly basis and a source of information about the presence of these individuals is any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line

© 2006 Alston & Gieser, LLP  All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

167

**5 STAR HOMES**
11810 Beach Blvd.
Stanton, CA 90680
Phone: (714) 891-6383  Fax: (714) 891-8120

111683

**NOTICE:** THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN

## MANUFACTURED HOME RECEIPT FOR DEPOSIT

### BY SIGNING THIS DOCUMENT, THE PURCHASER & DEALER ACKNOWLEDGE THAT:

(1)  The purchaser shall receive a copy of the purchase contract and receipt for deposit.

(2)  All portions of the purchase documents and receipt for deposit shall be completed prior to purchaser's signing.

(3)  The amounts of the deposit, downpayment, or other category of funds required to be placed in escrow prior to closing, shall be specified to the purchaser and the purchaser is warned that the deposit may be withheld in escrow in case of a dispute between the purchaser and dealer.

(4)  The amounts of the deposit and downpayment shall be agreed upon by the purchaser and dealer and shall have been entered on the purchase documents and receipt for deposit prior to purchaser's signing.

(5)  An entire reprint of Sections 18035, 18035.1, and 18035.3 of the Health and Safety Code and Section 1797.3 of the Civil Code shall be handed to the purchaser as a part of this receipt.

(6)  Any oral promises or commitments that have been made are not binding unless they are in writing on the purchase documents.

(7)  This receipt is a warning notice that a warranty document complying with Section 1797.3 of the Civil Code shall be provided immediately after signing the purchase documents.

(8)  The terms and duration of any other warranty, not required by law, offered by the dealer shall be in writing.

(9)  If the purchaser has any complaints with respect to sales practices, delivery, warranty, or other matters related to the manufactured home or mobilehome, he or she may seek administrative relief from the Department of Housing & Community Development or legal relief in a court of competent jurisdiction.

(10) The sale will not be complete until the escrow for the sale closes.

(b)  For the sale of a manufactured home or mobilehome not subject to registration by the department, the dealer shall provide a statement of fact, in type not less than 6-point type size, containing the information specified in paragraphs (6), (7), (8), (9), and (10) of subdivision (a) as part of the purchase documents.

(c)  Where the sale of a new or used manufactured home or mobilehome subject to registration under this part does not involve a dealer, the department, by regulation may require the seller and buyer to execute a receipt for deposit containing whatever information of the nature described in this section, the department deems appropriate.

This form to be completed after deposits are mutually agreed upon. The blue portion must be handed to the buyer of a new or used home. Yellow page is for 1st deposit, pink page is for 2nd deposit, if any. Any cash equivalent toward a purchase must be deposited into escrow.

**IMPORTANT NOTICE TO PURCHASER(S) - CALIFORNIA NEW MANUFACTURED HOME WARRANTY LAW APPEARS ON THE BLUE PORTION OF THIS CONTRACT - PLEASE READ CAREFULLY.**

### ITEMIZATION OF PAYMENTS INTO ESCROW ACCOUNT

| AGREED UPON AMOUNTS | TYPE OF PAYMENT CHECK, CASH OR OTHER | DATE RECEIVED BY DEALER | BUYER'S INITIALS | DATE TO ESCROW |
|---|---|---|---|---|
| $ _____  1st DEPOSIT TOWARD PURCHASE | | | | |
| $ _____  2nd DEPOSIT TOWARD PURCHASE (IF ANY) | | | | |
| $ 500  AMOUNT OF DESIGNATED DEPOSIT (IF ANY) | CK# 2906 | 11/2/13 | | |
| $ _____  TOTAL DOWN PAYMENT INTO ESCROW | | | | |

### TOTAL PRICE OF MANUFACTURED / MOBILE HOME ▷

ESCROW COMPANY'S NAME ▷  Express Escrow
ADDRESS & PHONE NUMBER ▷

### SPECIFIED OTHER PAYMENTS TO ESCROW INCLUDING ESCROW FEES

| AMOUNT AND SPECIFIC ITEM | TYPE OF PAYMENT CHECK, CASH OR OTHER | DATES RECEIVED, IF BY DEALER | DATES SENT, IF BY DEALER | BUYER'S INITIALS AS NEEDED |
|---|---|---|---|---|
| $ _____  ESCROW FEE | | | | |
| $ _____  SCHOOL IMPACT FEE | | | | |
| $ _____  OTHER FEES | | | | |

| DATE SIGNED | PURCHASE ORDER NO. | - DEALER NAME AND ADDRESS - |
|---|---|---|
| - BUYER'S SIGNATURE & ADDRESS - | | 5-Star |
| (BUYER'S SIGNATURE) | | BY ▶ _____ (SIGNATURE OF DEALER / SALESPERSON) |

Form #110 (05/08)

Published by AMN Publications,
formerly Barry D. Whittesey Publications

**168**
CUSTOMER'S COPY

112437

| NOTICE: THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN |
|---|

## MANUFACTURED HOME RECEIPT FOR DEPOSIT

### BY SIGNING THIS DOCUMENT, THE PURCHASER & DEALER ACKNOWLEDGE THAT:

(1) The purchaser shall receive a copy of the purchase contract and receipt for deposit.

(2) All portions of the purchase documents and receipt for deposit shall be completed prior to purchaser's signing.

(3) The amounts of the deposit, downpayment, or other category of funds required to be placed in escrow prior to closing, shall be specified to the purchaser and the purchaser is warned that the deposit may be withheld in escrow in case of a dispute between the purchaser and dealer.

(4) The amounts of the deposit and downpayment shall be agreed upon by the purchaser and dealer and shall have been entered on the purchase documents and receipt for deposit prior to purchaser's signing.

(5) An entire reprint of Sections 18035, 18035.1, and 18035.3 of the Health and Safety Code and Section 1797.3 of the Civil Code shall be handed to the purchaser as a part of this receipt.

(6) Any oral promises or commitments that have been made are not binding unless they are in writing on the purchase documents.

(7) This receipt is a warning notice that a warranty document complying with Section 1797.3 of the Civil Code shall be provided immediately after signing the purchase documents.

(8) The terms and duration of any other warranty, not required by law, offered by the dealer shall be in writing.

(9) If the purchaser has any complaints with respect to sales practices, delivery, warranty, or other matters related to the manufactured home or mobilehome, he or she may seek administrative relief from the Department of Housing & Community Development or legal relief in a court of competent jurisdiction.

(10) The sale will not be complete until the escrow for the sale closes.

(b) For the sale of a manufactured home or mobilehome not subject to registration by the department, the dealer shall provide a statement of fact, in type not less than 6-point type size, containing the information specified in paragraphs (6), (7), (8), (9), and (10) of subdivision (a) as part of the purchase documents.

(c) Where the sale of a new or used manufactured home or mobilehome subject to registration under this part does not involve a dealer, the department, by regulation may require the seller and buyer to execute a receipt for deposit containing whatever information of the nature described in this section, the department deems appropriate.

This form to be completed after deposits are mutually agreed upon. The blue portion must be handed to the buyer of a new or used home. Yellow page is for 1st deposit, pink page is for 2nd deposit, if any. Any cash equivalent toward a purchase must be deposited into escrow.

**IMPORTANT NOTICE TO PURCHASER(S) - CALIFORNIA NEW MANUFACTURED HOME WARRANTY LAW APPEARS ON THE BLUE PORTION OF THIS CONTRACT - PLEASE READ CAREFULLY.**

### ITEMIZATION OF PAYMENTS INTO ESCROW ACCOUNT

| AGREED UPON AMOUNTS | TYPE OF PAYMENT CHECK, CASH OR OTHER | DATE RECEIVED BY DEALER | BUYER'S INITIALS | DATE TO ESCROW |
|---|---|---|---|---|
| $ _____ <br> 1st DEPOSIT TOWARD PURCHASE | | | | |
| $ _____ <br> 2nd DEPOSIT TOWARD PURCHASE (IF ANY) | | | | |
| $ 25000 <br> AMOUNT OF DESIGNATED DEPOSIT (IF ANY) | CK # 109 | 3/1/14 | (X) NTK | |
| $ _____ <br> TOTAL DOWN PAYMENT INTO ESCROW | | | | |

**TOTAL PRICE OF MANUFACTURED / MOBILE HOME** ▷

ESCROW COMPANY'S NAME ▷ *Exp___ Escrow*
ADDRESS & PHONE NUMBER

### SPECIFIED OTHER PAYMENTS TO ESCROW INCLUDING ESCROW FEES

| AMOUNT AND SPECIFIC ITEM | TYPE OF PAYMENT CHECK, CASH OR OTHER | DATES RECEIVED, IF BY DEALER | DATES SENT, IF BY DEALER | BUYER'S INITIALS AS NEEDED |
|---|---|---|---|---|
| $ _____ <br> ESCROW FEE | | | | |
| $ _____ <br> SCHOOL IMPACT FEE | | | | |
| $ _____ <br> OTHER FEES | | | | |

| DATE SIGNED | PURCHASE ORDER NO. | - DEALER NAME AND ADDRESS - |
|---|---|---|
| - BUYER'S SIGNATURE & ADDRESS - | | |
| (BUYER'S SIGNATURE) | | BY ▶ (SIGNATURE OF DEALER / SALESPERSON) |

Form #110 (05/08)

Published by AMN Publications,
formerly Barry D. Whittlesey Publications

**169**
CUSTOMER'S COPY

1152115

**NOTICE:** THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN.

# MANUFACTURED HOME PURCHASE ORDER AND FEDERAL DISCLOSURE STATEMENT

PURCHASER: Lisa T. Ryan          DATE: 5/1/19
ADDRESS: 16222 Monterey Ln #376
CITY: Huntington Beach    STATE: CA    ZIP: 92649    PHONE: 717-615-7496    SALESPERSON:

**Subject to the terms and conditions stated on both sides of this agreement Seller agrees to sell and Purchaser agrees to purchase the following MFD./MBL. Home:**

| MAKE | MODEL | B. ROOMS | APPROX. (NOT INCL. TOW BAR/EAVES.) | | SITUS |
|---|---|---|---|---|---|
| Skyline | C519 | 2 | L____W____ | ☒ NEW ☐ USED | Rancho Del Rey #376 |

| SERIAL NUMBER | APPROX. DEL. DATE | HUD OR HCD NO. | DT. OF MFG. | |
|---|---|---|---|---|
| To Come | NA To Come | To Come | NEW | |

THE COST OF THE MFD./MBL. HOME EXCLUDES THE LISTED PRICES FOR THESE ITEMS.

| SQ. FT. LIVING AREA |
|---|
| NA |

$ NA TOW BAR, $ NA WHEELS, $ NA WHEEL HUBS, $ NA TIRES, $ NA AXLES    **MFD. HOME PRICE $** 167540

| DATE MFD. ORD. | ESCROW OPEN | STK #/OTHER | USED HOME SALES TAX, IF ANY, (1ST SOLD PRIOR TO 7/1/80) | $ NA |

ITEMIZED ACCESSORIES AND THEIR COSTS: (SEE ADDENDUMS)

Subject To:
To Include: Pink + Mgr Approval
Set up + Delivery
Signed Pink Pack/ge
Factory Options?
Remove old Home
Lot Pad
Dry wall Clean up

DESCRIPTION OF TRADE-IN

| | | |
|---|---|---|
| MAKE | MODEL | BEDROOMS |
| TITLE NO. | SERIAL NO. | COLOR |
| AMOUNT OWING | | ACCOUNT NO. |

TO WHOM:
ADDRESS/PHONE

THE MANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME AS FOLLOWS: (NEW ONLY)

| | TYPE | THICKNESS | 'R' FACTOR |
|---|---|---|---|
| ROOF | | | |
| EXTERIOR WALLS | | | |
| FLOOR | | | |

WARNING – Unless a charge is included in this Agreement for Public Liability or Property Damage Insurance, Payment for such Coverage is not provided by this agreement.

"If the dealer is also licensed as a real estate broker, the sale of a manufactured home or mobilehome being installed on a foundation system pursuant to Section 18551 may be included in the purchase document for the underlying real property, provided that the requirements of HSC SEC. 18035.3 are met."

THE DEALER CERTIFIES THAT THE
INSTALLATION CONTRACTOR IS:

NAME                          LIC. #
BUSINESS ADDRESS
CITY                          CA    ZIP

A Contractor is required by law to be licensed and regulated by the Contractors State License Board, P.O. Box 26000 Sacramento, CA 95827.

| | |
|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ NA |
| TOTAL MFG. HOME & ACCESSORIES | $ 167540 |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ 1500 |
| FOUNDATION SYSTEM / TIE DOWNS | $ NA |
| DELIVERY | $ NA |
| SET UP | $ NA |
| HCD FEES | $ 200 |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ NA |
| ESCROW FEES | $ 500 |
| SCHOOL FEES | $ NA |
| OTHER / PRE PAID TAXES | $ NA |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | $ NA |
| **1. TOTAL CASH PRICE** | $ 169748 |
| ALLOWANCE ON TRADE-IN | $ NA |
| LESS BAL. DUE ABOVE | $ NA |
| NET ALLOWANCE | $ NA |
| PAID HEREWITH | $ 25500 |
| CASH BEFORE DEL. | $ 144248 |
| DESIGNATED DEPOSIT (INC. IN DN. PMT) | $ NA |
| **2. LESS BUYERS DOWN PAYMENT** | $ 25500 |
| **3. UNPAID BAL. ON CASH SALES PRICE** | $ 144248 |
| **4. FINANCE CHARGE** | $ NA |
| **5. ANNUAL PERCENTAGE RATE** | NA % |
| **6. TOTAL PAYMENT AMOUNT** (3+4) | $ NA |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | $ NA |
| **8. TOTAL DEFERRED PAYMENT PRICE** (2+6) | $ NA |

PAYABLE AS FOLLOWS: CASH Sale

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $ NA charges per day until a manufactured home installation acceptance or certificate of occupancy is obtained in addition to all other consideration owing or (2) pay the sum of $ NA in lieu of total consideration.

**NOTICE TO BUYER:** (A) DO NOT SIGN THE PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (B) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THE

170

| | | $ |
|---|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | | $ |
| TOTAL MFG. HOME & ACCESSORIES | | $ 167548 |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | | $ 1500 |
| FOUNDATION SYSTEM / TIE DOWNS | | $ |
| DELIVERY | | $ |
| SET UP | | $ |
| HCD FEES | | $ 200 |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | | $ |
| ESCROW FEES | | $ 500 |
| SCHOOL FEES | | $ |
| OTHER / PRE PAID TAXES | | $ |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | | $ |
| **1. TOTAL CASH PRICE** | | $ 169748 |

## DESCRIPTION OF TRADE-IN

| MAKE | MODEL | BEDROOMS |
|---|---|---|
| TITLE NO. | SERIAL NO. | COLOR |
| AMOUNT OWING | | ACCOUNT NO. |

TO WHOM:
ADDRESS/PHONE

THE MANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME AS FOLLOWS: (NEW ONLY)

| | TYPE | THICKNESS | 'R' FACTOR |
|---|---|---|---|
| ROOF | | | |
| EXTERIOR WALLS | | | |
| FLOOR | | | |

WARNING – Unless a charge is included in this Agreement for Public Liability or Property Damage Insurance, Payment for such Coverage is not provided by this agreement.

"If the dealer is also licensed as a real estate broker, the sale of a manufactured home or mobilehome being installed on a foundation system pursuant to Section 18551 may be included in the purchase document for the underlying real property, provided that the requirements of HSC SEC. 18035.3 are met."

THE DEALER CERTIFIES THAT THE INSTALLATION CONTRACTOR IS:

| NAME | LIC. # |
|---|---|
| BUSINESS ADDRESS | |
| CITY | CA   ZIP |

A Contractor is required by law to be licensed and regulated by the Contractors State License Board, P.O. Box 26000 Sacramento, CA 95827.

| | | |
|---|---|---|
| ALLOWANCE ON TRADE-IN | $ | |
| LESS BAL. DUE ABOVE | $ | |
| NET ALLOWANCE | $ | |
| PAID HEREWITH | $ 25500 | |
| CASH BEFORE DEL. | $ 144248 | |
| DESIGNATED DEPOSIT (INC. IN DN. PMT) | $ | |
| **2. LESS BUYERS DOWN PAYMENT** | | $ 25500 |
| **3. UNPAID BAL. ON CASH SALES PRICE** | | $ 144248 |
| **4. FINANCE CHARGE** | | $ |
| **5. ANNUAL PERCENTAGE RATE** | % | |
| **6. TOTAL PAYMENT AMOUNT** (3+4) | | $ |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | | $ |
| **8. TOTAL DEFERRED PAYMENT PRICE** (2+6) | | $ |

PAYABLE AS FOLLOWS:

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $ _____ charges per day until a manufactured home installation acceptance or certificate of occupancy is obtained in addition to all other consideration owing or (2) pay the sum of $ _____ in lieu of total consideration.

**NOTICE TO BUYER:** **(A) DO NOT SIGN THE PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (B) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THAT AGREEMENT AND, IF PURCHASING A MANUFACTURED/MOBILE HOME COVERED BY A WARRANTY, A COPY OF THE WARRANTY.** Complaints concerning the purchase shall be referred to the dealer and, if the complaint is not resolved, may be referred to the Department of Housing and Community Development, Division of Codes and Standards, Occupational Licensing, Post Office Box 31, Sacramento, California 95812-0031 (telephone (800) 952-5275). A failure to disclose pursuant to this section shall not be the basis for recision of a conditional sale contract.

The Manufactured Home that I am purchasing will be used as a residence. I further certify that I understand that if subject Manufactured Home is used for any purpose other than a residence, I may be liable, to the State Board of Equalization, for the tax measured by the amount excluded pursuant to this certificate.

PURCHASER _____    DATE 3/1/14

**RECEIPT OF A FILLED-IN COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY PURCHASER**
The Purchase Order is subject to credit approval and is not binding unless signed by an authorized representative of seller. Purchaser certifies that he is of legal age, and agrees to sign a Security Agreement according to the terms herein. In the event payoff figures on a trade-in toward the purchase of a Manufactured or Mobile Home are more than quoted by the Purchaser, the Purchaser hereby agrees to pay this excess on demand.

▶ **ALL TERMS AND CONDITIONS SET FORTH ON THE REVERSE OF THIS AGREEMENT ARE INCORPORATED HEREIN AND ARE FULLY APPLICABLE AS THOSE SET FORTH ON THE FRONT SIDE OF THIS AGREEMENT.** ◀

| SELLER: _____ | PURCHASER: _____ |
|---|---|
| SELLER: _____ | PURCHASER: _____ |
| | DATE: 3/1    20 14 |

AUTHORIZED REPRESENTATIVE OF DEALER

Published by AMN Publications,
formerly Barry D. Whittlesey Publications

Form #100 (09/09)

FILE COPY

171



## Informal Title Search

### Unit Search

Identifier LBM1081  [Search]

| Select | Unit Identifiers | Manufacturer | SITUS Address |
|---|---|---|---|
| ⊙ | Decal No.: LBM1081<br>MCO No.: 8802499<br>Serial No.: AC7V710394GB,<br>AC7V710394GA<br>HUD Label: PFS1130281,<br>PFS1130282 | Manufactured Date: 05/29/2014<br>Manufacturer: SKYLINE HOMES INC<br>Trade Name: CUSTOM VILLA<br>Unit Type: Manufactured Home | 16222 MONTEREY LN, SPACE # 376, HUNTINGTON BEACH, CA 92649 (ORANGE COUNTY) |

File No. LBM1081

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

## CERTIFICATE OF TITLE

Manufactured Home

Decal No: **LBM1081**

| Manufacturer ID/Name | | Trade Name | Model | | DOM | | DFS | | RY | Exp. Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | | CUSTOM VILLA | | | 05/29/2014 | | 07/28/2014 | | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | SPC | SCC | Exempt | Use | Type |
|---|---|---|---|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | | 30 | | SFD | LPT |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | | | | |

| Issued | Total Fees Paid |
|---|---|
| Sep 10, 2014 | $91.00 |

**Addressee**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

**Situs Address**
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

## IMPORTANT

**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.
THE CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 8169431

NOV 1 6 2018

09102014 - 244

173

## SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of transfer of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __11/1/2018__ at __Huntington Beach__, __CA__

Signature: _(signature)_

Printed Name: __LISA T RYAN__

## SECTION B - RELEASING SIGNATURES

1a. _(signature)_    Date of Release __11/1/2018__

Releasing Signature of Registered Owner

1b. _(signature)_    Date of Release ____

Releasing Signature of Registered Owner

2. _(signature)_    ☒ Release    ☐ Retain    ☐ Assign Interest

Legal Owner of Record - Sign, date, and check appropriate box    * If A-4ya Interest is checked - Complete New Legal Owner Below

## SECTION C - NEW OWNER INFORMATION

NEW REGISTERED OWNER - Please Print or Type Clearly

3a. __J-Sandcastle Co, LLC__    3c. ____

New Registered Owners Name    New Registered Owners Name

3b. ____    3d. ____

New Registered Owners Name    New Registered Owners Name

If more than one New Owner going onto title, please check the appropriate Co-owner term box.

☐ Joint Tenants with Right of Survivorship    ☐ Tenants in Common OR    *☐ Trust/Trustee(s)
*If this box is checked-Complete HCD 476.6th

☐ Tenants in Common AND    ☐ Community Property    ☐ Community Property with Right of Survivorship

4. __16222 Monterey Ln #376__    __Huntington Beach CA 92649__

Mailing Address of New Registered Owner    City/State    Zip Code

5. __Same as Above__

Actual Location Address of Unit    City/State    Zip Code

6. __$825,000 $175,000__    __11-1-18__

Purchase Price or check box if Gift-☐    Purchase Date or Transfer Date

7a. __J-Sandcastle Co. LLC__    _(signature)_    Signature of New Registered Owners
_By Managing Member_

7b. ____    ____

Signature of New Registered Owners    Signature of New Registered Owners

NEW LEGAL OWNER - Please Print or Type Clearly

8a. ____    8b. ____

New Legal Owners Name    New Legal Owners Name

If more than one New Legal owner going onto title, please check the appropriate Co-owner term box below.

☐ Joint Tenants with Right of Survivorship    ☐ Tenants in Common OR    *☐ Trust/Trustee(s)
*If this box is checked-Complete HCD 476.6th

☐ Tenants in Common AND    ☐ Community Property    ☐ Community Property with Right of Survivorship

9. ____

Mailing Address of New Legal Owner    City/State    Zip Code

NEW JUNIOR LIENHOLDER - Please Print or Type Clearly

10a. ____    10b. ____

New Junior Lienholder Name    New Junior Lienholder Name

11. ____

Mailing Address of New Junior Lienholder    City/State    Zip Code

## SECTION D - RELEASE OF DEALERS

12. ____

Signature of Selling Dealer    Print Dealers Name and Dealer Number

OSP 03 112818

## SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **11/1/2018** at **Huntington Beach**, **CA**
Date     City     State

Signature _____ Printed Name **LISA T RYAN**

## SECTION B - RELEASING SIGNATURES

1a. _____ Date of Release **11/1/2018**
Releasing Signature of Registered Owner

1b. _____ Date of Release _____
Releasing Signature of Registered Owner

2. _____ ☒ Release    ☐ Retain    *☐ Assign Interest
Legal Owner of Record must sign and check appropriate box    (* If Assign Interest is checked - Complete New Legal Owner Below)

## SECTION C - NEW OWNER INFORMATION

**NEW REGISTERED OWNER - Please Print or Type Clearly**

3a. **J-Sandcastle Co, LLC**    3c. _____
New Registered Owners Name    New Registered Owners Name

3b. _____    3d. _____
New Registered Owners Name    New Registered Owners Name
If more than one New Owner going onto title, please check the appropriate Co-owner term box.

☐ Joint Tenants with Right of Survivorship    ☐ Tenants In Common OR    *☐ Trust/Trustee(s) (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND    ☐ Community Property    ☐ Community Property with Right of Survivorship

4. **16222 Monterey Ln # 376**    **Huntington Beach CA 92649**
Mailing Address of New Registered Owner    City/State    Zip Code

5. **Same as Above**
Actual Location Address of Unit    City/State    Zip Code

6. **$225,000 $175,000**    **11-1-18**
Purchase Price or check box if Gift-☐    Purchase Date or Transfer Date

7a. **J-Sandcastle Co, LLC** _____
Signature of New Registered Owners    Signature of New Registered Owners

7b. _____ 7d. _____
Signature of New Registered Owners    Signature of New Registered Owners

**NEW LEGAL OWNER - Please Print or Type Clearly**

8a. _____ 8b. _____
New Legal Owners Name    New Legal Owners Name
If more than one New Lender going onto title, please check the appropriate Co-owner term box below.

☐ Joint Tenants with Right of Survivorship    ☐ Tenants In Common OR    *☐ Trust/Trustee(s) (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND    ☐ Community Property    ☐ Community Property with Right of Survivorship

9. _____
Mailing Address of New Legal Owner    City/State    Zip Code

**NEW JUNIOR LIENHOLDER - Please Print or Type Clearly**

10a. _____ 10b. _____
New Junior Lienholder Name    New Junior Lienholder Name

11. _____
Mailing Address of New Junior Lienholder    City/State    Zip Code

## SECTION D - RELEASE OF DEALERS

12. _____
Signature of Selling Dealer    Print Dealers Name and Dealer Number

OSP 09 112819

175

1/1/2006

# RANCHO DEL REY MOBILE HOME ESTATES
# 16222 MONTEREY LANE
# HUNTINGTON BEACH, CALIFORNIA

## MOBILEHOME RENTAL AGREEMENT

## EQUAL HOUSING OPPORTUNITY

## WE DO BUSINESS IN ACCORDANCE WITH
## THE FEDERAL FAIR HOUSING LAW

IT IS ILLEGAL TO DISCRIMINATE AGAINST ANY
PERSON BECAUSE OF RACE, COLOR, RELIGION,
SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL
ORIGIN

RANCHO DEL REY MOBILE HOME ESTATES
16222 MONTEREY LANE
HUNTINGTON BEACH, CALIFORNIA

MOBILEHOME RENTAL AGREEMENT

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| INFORMATION SUMMARY | | -1- |
| DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS | | -2- |
| 1. | TERM | -3- |
| 2. | RENT | -3- |
| 3. | UTILITIES | -3- |
| 4. | RENT AND OTHER CHARGES | -3- |
| 5. | SECURITY DEPOSIT | -5- |
| 6. | RESOLUTION OF DISPUTES | -4- |
| 7. | SALE OF MOBILEHOME | -7- |
| 8. | REMOVAL OF MOBILEHOME UPON SALE TO THIRD PARTY | -7- |
| 9. | APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS | -7- |
| 10. | ASSIGNMENT AND SUBLEASING | -8- |
| 11. | CONFLICTS | -8- |
| 12. | SERVICES AND IMPROVEMENTS | -9- |
| | 12.1 SERVICES AND IMPROVEMENTS PROVIDED | -9- |
| | 12.2 CHANGES IN RULES AND REGULATIONS, STANDARDS OF MAINTENANCE, SERVICES, EQUIPMENT, OR PHYSICAL IMPROVEMENTS | -10- |
| 13. | TERMINATION OF THIS AGREEMENT BY YOU | -10- |
| 14. | TERMINATION OF THIS AGREEMENT BY THE PARK | -10- |

© 2006 Alston  All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

15.    INDEMNIFICATION...................................................................................................-11-

16.    INCORPORATED DOCUMENTS ...........................................................................-11-

17.    COMPLIANCE WITH LAW AND RULES AND REGULATIONS.....................-11-

18.    ZONING, USE PERMIT AND OWNER INFORMATION .....................................-11-

19.    TRANSFER OF PARK'S INTEREST .......................................................................-11-

20.    NOTICES .......................................................................................................................-11-

21.    WAIVER .........................................................................................................................-11-

22.    ENTIRE AGREEMENT ...............................................................................................-12-

23.    ATTORNEY'S FEES ....................................................................................................-12-

24.    HEADINGS AND FORMATTING .............................................................................-12-

25.    PARTIAL INVALIDITY ..............................................................................................-12-

26.    ALTERATION OF THIS AGREEMENT ..................................................................-12-

27.    DEFINITIONS OF OWNER OF THE PARK, HOMEOWNERS,
       RESIDENTS, SALE OF MOBILEHOME AND BUYER.........................................-12-

28.    HOLDOVER TENANCY..............................................................................................-12-

29.    COUNTERPARTS ........................................................................................................-12-

30.    EXHIBITS ......................................................................................................................-13-

31.    OWNER'S APPROVAL AND OPTIONS ..................................................................-13-

32.    STATUTE OF LIMITATION ......................................................................................-13-

33.    USE AND OCCUPANCY .............................................................................................-13-

34.    INSPECTION .................................................................................................................-13-

35.    ENFORCEMENT OF CONDITIONS OF TENANCY .............................................-13-

36.    MAINTENANCE OF IMPROVEMENTS .................................................................-13-

Document10 Rancho Del Rey                                ii

© 2006  Alston   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

37.  CONDEMNATION.................................................................................-14-

38.  TIME OF ESSENCE ...............................................................................-14-

39.  MODIFICATION FOR LENDER...........................................................-14-

40.  ESTOPPEL CERTIFICATE....................................................................-14-

41.  LIMITATION OF OUR LIABILITY .....................................................-14-

42.  MEGAN'S LAW......................................................................................-14-

43.  EXECUTION ...........................................................................................-15-

© 2006 Alston  All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

179

RANCHO DEL REY MOBILE HOME ESTATES
16222 MONTEREY LANE
HUNTINGTON BEACH, CALIFORNIA

MOBILEHOME RENTAL AGREEMENT

INFORMATION SUMMARY

The following information from the Agreement is summarized for the convenience of both of us.  Please see the applicable paragraphs in this Agreement for the complete information which controls if there is a difference between it and the following:

A.  Space Number: _376_

B.  Resident(s): _Laura Ryan, Lisa T. Ryan, Patricia C. Ryan_

C.  Date this Agreement Begins and Length/Term of this Agreement:

    (1)  On a month-to-month basis beginning _____, 20___.

                                        (Resident's Initials)

    (2)  For a period of _12_ months beginning _1-1-_, 20_06_   _XJR_
        (not to exceed 12 months).                        (Resident's Initials)

D.  Monthly Rent:  Your beginning monthly rent will be $ _696.00_ _____.  The amount of your rent may be increased at any time on ninety (90) days' notice.  The increase in rent may be made because of such things as new or increased operating expenses we may incur, increases in what we believe to be a fair market rent for your mobilehome space or any other reason we believe, in our sole discretion, to be appropriate so long as the rent increase is not otherwise specifically prohibited by law.
                                                      (Resident's Initials)

E.  Utilities:

    (1)  Utilities You Pay to Park:

             Electricity, Water and Natural Gas on submetered basis.

             Sewer and Trash at an initial charge of $ _10.27_ /month for Sewer and $ _12.33_ /month for Trash.

    (2)  Utilities Included in Your Rent:  None.

    (3)  Utilities you purchase from Others:  Telephone and cable TV.

    Utilities may be increased or changed as allowed by this Agreement.

© 2006 Alston & Gieser, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

F.  Other Charges:

    (1)  Late Payment:           $20.00

    (2)  Returned Checks: $20.00

    (3)  Security Deposit: $ _____

    (4)  RV/Extra Vehicles:    $ *60 00* _____ per month per vehicle

    (5)  Government Fees:    As charged to Park

    (6)  Extra Persons Charge:    $ _____ per day per person

    (7)  Guest Cottage Charge:    $ *50 00* _____ per day.

    (8)  Other: _____
                           _____

These above charges may be increased or changed as allowed by this Agreement.

G.  Facilities to be provided by the Park for Residents during the term of this Agreement, unless changed: The streets, R.V. storage area (subject to separate agreement and charge), 2 clubhouses, 2 swimming pools and spas, 4 saunas, 3 laundry rooms and 2 guest cottages which are available for residents to rent to house their short-term guests.

H.  Services to be provided by the Park for Residents during the term of this Agreement, unless changed: Park Manager, electricity, natural gas, water, sewer, and trash.

Facilities and services may be decreased or changed as allowed by this Agreement. The cost of providing and maintaining facilities and services may increase your rent per the provisions of this Agreement.

## DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS

OUR MOBILEHOME PARK IS AN OLDER PARK; THEREFORE, THE UTILITY SYSTEMS (ELECTRIC, NATURAL GAS, SEWER AND WATER) DO NOT WORK AS WELL AS NEWER SYSTEMS AND DO PERIODICALLY BREAK DOWN OR PROVIDE LESS-THAN-ADEQUATE SERVICE.

YOU ACKNOWLEDGE THAT WE HAVE OFFERED YOU THE OPTION OF HAVING THIS AGREEMENT HAVE A TERM OF 12 MONTHS OR LESS, INCLUDING A MONTH-TO-MONTH TENANCY. YOU ALSO ACKNOWLEDGE THAT YOU HAVE VOLUNTARILY SELECTED THE TERM LISTED AT PARAGRAPH C ON PAGE 1 OF THIS AGREEMENT.

RESOLUTION OF DISPUTES: YOU AGREE THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES," WILL BE DETERMINED BY SUBMISSION TO WHAT IS KNOWN AS A REFERENCE AND NOT BY WHAT MOST PEOPLE CONSIDER THE NORMAL LAWSUIT OR BY RESORTING TO NORMAL COURT PROCESSES. BY SIGNING THIS AGREEMENT, BOTH YOU AND WE ARE GIVING UP OUR CONSTITUTIONAL RIGHT TO HAVE THOSE DISPUTES DECIDED IN A COURT OF LAW BEFORE A JURY AND, INSTEAD, ARE ACCEPTING THE USE OF THE REFERENCE PROCEDURES.

© 2006 Alston & Gieser, LLP  All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

I AGREE I HAVE READ AND UNDERSTOOD THE ABOVE DISCLOSURES AND ACKNOWL-
EDGMENTS.

SIGNATURE: _____    DATE: 1/10/2006

SIGNATURE: _____    DATE: 1/20/2006

SIGNATURE: _____    DATE: _____

1.      **TERM:**  You are renting the Space listed at paragraph A on page 1 of this Agreement in Rancho Del Rey Mobile Home Estates located in Huntington Beach, California (the Park).  This Agreement is for the term and begins on the date listed at paragraph C on page 1 of this Agreement unless it terminates earlier per the termination paragraphs of this Agreement.

2.      **RENT:**  Your rent will be the amount listed at paragraph D on page 1 of this Agreement and it may be increased as permitted by that paragraph.

3.      **UTILITIES:**

        3.1      You are responsible for making sure that your mobilehome and all appliances and equipment in your mobilehome are compatible with the electric service and capacity now available, and we shall have no liability or responsibility to you if the available electrical supply is incompatible.  You agree not to install electrical appliances which will use energy in excess of the electrical service and capacity available to your Space.  You also agree that you will not attempt to increase the electrical service and capacity of your Space by installing any device or doing anything else unless you have received our prior written permission.  If your electrical demands exceed the capability of the Park, or are otherwise inconsistent with the capabilities of the Park, you will be deemed to be in default under your rental or lease agreement and you will, in addition to all of the remedies available to us, reimburse us within ten (10) working days for any costs and expense we incur in remedying the situation created by your use of excessive or inconsistent electrical demands.  You also agree to indemnify and hold us harmless against any loss, cost, damage, expense (including attorneys' fees and costs) or other liability incurred or imposed by reason of any injury to persons or property which occurs as a result of your electrical demands.  As the amount of such electrical service and capacity will affect your ability to have electrical appliances, you must determine in advance from us in writing the amount of electrical service and capacity available to your Space and insure that your mobilehome and all appliances and equipment in it are compatible with that service and capacity.

        3.2      We will provide, submeter and separately charge you monthly for gas, water, and electricity.  Any increases in the cost of utilities submetered will be immediately passed-through and paid by you.  We will initially charge you monthly the amount indicated in paragraph E(1) on page 1 of this Agreement for trash and sewer.  Any increase in the cost of utilities separately charged will be immediately passed-through and paid by you, at such prevailing rates regulated and authorized by the utility companies.  You will contract with and pay directly for all other utilities you require.

4.      **RENT AND OTHER CHARGES:**

        4.1      If you do not maintain your mobilehome or Space as required by this Agreement and the Rules and Regulations, we may give you a notice requiring you to comply in fourteen (14) days.  If you do not, we may charge you a reasonable fee for having this work done.  In accordance with Civil Code §798.36 Management may after providing you with 14 days notice charge you with the reasonable costs for removal personal property and storage thereof for a period of sixty-day period prior to the ultimate disposal of unclaimed property.

        4.2      If you store or park a vehicle, trailer or something else in the recreational vehicle storage lot or other extra vehicle parking area, you will be charged the amount indicated in paragraph F(4) on page 2 of this Agreement.  This charge may be increased at any time on sixty (60) days' written notice.  This storage or parking will be per the terms

of a separate agreement which you will be required to sign, not by this Agreement. We are not obligated to provide parking for all vehicles, access to this area is on a first-come, first-served basis and it may be eliminated on ninety (90) days' written notice and the area used for another purpose.

4.3     Rent and all other charges except utilities are due in advance on the first day of each month. Utility charges are also due by the first day of each month. Also please refer to our Rules and Regulations for additional requirements regarding your payment of taxes, assessments, license fees, and other charges that are applicable to your personal property and improvements. Rent and all other charges must be paid without any deduction or offset whatsoever and will be late if not paid in full by 5:00 p.m. on the 6th day of each month. You must pay a late charge whenever rent or other charges are paid more than six (6) days after they are due and a handling charge whenever a check is returned for any reason in the amounts indicated in paragraphs F(1) and (2) on page 2 of this Agreement. Outstanding balances over thirty (30) days are subject to compound interest at the rate of 1% per month. Total interest in any calendar year shall not exceed the maximum interest allowed by law. Payment will be made at the Park Office or at such other location we designate. All rents and other charges shall be paid by check or money order. We may, upon ten (10) days' notice, require payment in cash, or its equivalent. All of the charges and other amounts noted in this Agreement may be increased at any time on sixty (60) days' notice without reducing the rent or changing any other term or provision of this Agreement.

4.4     Unless otherwise prohibited by law, all government charges and fees charged the Park may be billed by us to you.

5.     SECURITY DEPOSIT: When you sign this Agreement, you will give us the amount indicated as paragraph F(3) on page 2 of this Agreement as a security deposit for your performance of this Agreement. (If you are already a resident, the amount of any security deposit you previously gave us will be this deposit.) If you default, we can use the security deposit to cure the default or compensate us for any damage because of your default. You will immediately pay us a sum equal to the portion of the security deposit we use to maintain it the sum initially deposited. We can commingle the deposit with our other funds and are not required to pay you interest on it.

6.     RESOLUTION OF DISPUTES:

6.1     EXCEPT AS NOTED IN PARAGRAPH 6.5, YOU AGREE THAT ANY AND ALL DISPUTES YOU HAVE WITH US WILL BE SUBMITTED FIRST TO NON-BINDING MEDIATION AND, IF THE DISPUTE CANNOT BE RESOLVED BY THAT METHOD, SUBMITTED TO WHAT IS CALLED A "GENERAL REFERENCE" WHICH WILL BE CONDUCTED PER THE PROVISIONS OF CODE OF CIVIL PROCEDURE SECTION 638. ALL ISSUES RELATING TO THE DISPUTE WILL BE SUBJECT TO THE REFERENCE AND THE REFEREE WHO IS APPOINTED SHALL HAVE ALL THE NECESSARY POWERS TO DECIDE ALL QUESTIONS OF LAW AND FACT RELATING TO THE DISPUTE.

6.2     THE REFERENCE SHALL BE CONDUCTED AND DECIDED BY A RETIRED JUDGE AND NO JURY WILL BE USED.

6.3     YOU ALSO AGREE THAT, AS IS TRUE OF THE OTHER PROVISIONS OF THIS AGREEMENT, THAT THIS PARAGRAPH 6 IS APPLICABLE TO ALL MEM-BERS OF YOUR HOUSEHOLD, INCLUDING ANY PERSON(S) WHO HAS NOT SIGNED THIS AGREEMENT OR WHO MAY BECOME A MEMBER OF YOUR HOUSEHOLD AFTER THE DATE YOU SIGNED THIS AGREEMENT.

6.4     ALTHOUGH THE WORD "MEDIATION" IS OFTEN NOT USED BE-LOW, UNLESS UNREASONABLE TO DO SO, EVERYTHING IN PARAGRAPH 6

REGARDING A REFERENCE ALSO APPLIES TO MEDIATION.

6.5    WE MAY, AT OUR OPTION, ELECT TO HAVE ANY OF THE FOLLOWING DISPUTES SUBMITTED TO A REFERENCE OR TO BE TRIED IN THE COURTS UNDER NORMAL PROCEDURES TO A JUDGE SITTING ALONE WITHOUT A JURY:  (a) TERMINATION OF TENANCY DUE TO A FAILURE TO PAY RENT OR OTHER CHARGES OR FOR ANY OF THE OTHER REASONS TENANCY MAY BE TERMINATED PER CIVIL CODE §798.56(a) THROUGH (e), INCLUSIVE; (b) FORCIBLE DETAINER; (c) INJUNCTIVE RELIEF PER [i] CODE OF CIVIL PROCEDURE §527.6, [ii] CIVIL CODE §798.87(b), OR [iii] CIVIL CODE §798.88; (d) PAYMENT OF THE MAINTENANCE FEE PROVIDED FOR IN CIVIL CODE §798.36; (e) CONDEMNATION OR A CHANGE OF THE USE OF THE PARK AS PROVIDED IN CIVIL CODE §798.56(f) AND (g); AND (f) TO PRESERVE ANY EQUITABLE RIGHTS RELATING TO ANY DISPUTE.  MEDIATION WILL NOT OCCUR FOR THE DISPUTES IN THIS PARAGRAPH 6.5.

6.6    "DISPUTE" INCLUDES NOT ONLY DISPUTES YOU MAY HAVE WITH US BUT ALSO DISPUTES AGAINST ANY OF OUR EMPLOYEES, CONTRACTORS, AGENTS OR ANY OTHER PERSON WHO YOU CONTEND HAS INJURED YOU WHEN YOU ALSO CONTEND THAT WE ARE RESPONSIBLE FOR THAT OTHER PERSON'S ACTS OR FAILURE TO ACT.

6.7    BEFORE THE LAWSUIT REQUIRED TO BEGIN A REFERENCE MAY BE FILED, MEDIATION MUST BE ATTEMPTED.  THIS IS DONE BY YOU SERVING US AND THE JUDICIAL ARBITRATION AND MEDIATION SERVICE, INC. ("JAMS") WITH A WRITTEN DEMAND OR NOTICE OF INTENTION TO REQUIRE A REFERENCE.

6.8    YOU MUST GIVE US THIS NOTICE NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE. IF YOU DO NOT GIVE US NOTICE WITHIN THE ONE (1) YEAR TIME PERIOD, YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY INJURY OR DAMAGE YOU OR OTHERS IN YOUR HOUSEHOLD MAY EXPERIENCE AND, THEREFORE, THAT DISPUTE WILL NOT BE SUBJECT TO A REFERENCE OR ANY PROCEEDING IN THE COURTS.  THIS ONE (1) YEAR TIME LIMITATION APPLIES TO BEING ENTITLED TO BOTH MEDIATION AND A REFERENCE.  FOR EXAMPLE, IF THE DATE WHEN YOU FIRST BECAME AWARE OF THE DISPUTE WAS JANUARY 1, 1995, NOTICE OF THE DISPUTE MUST BE GIVEN BY YOU TO US BY DECEMBER 31, 1995 IN ORDER TO HAVE THE DISPUTE MEDIATED AND HAVE A REFERENCE, AND IF NOTICE WAS GIVEN AFTER DECEMBER 31, 1995, NEITHER MEDIATION OR A REFERENCE WOULD OCCUR.

6.9    THE NOTICE REFERRED TO IN PARAGRAPH 6.8 MUST PROVIDE: (i) A DESCRIPTION OF THE DISPUTE, AND (ii) FACTS FROM WHICH THE DISPUTE ARISES INCLUDING WITNESSES, DATES, TIMES AND CIRCUMSTANCES.  IF THE DISPUTE IS NOT RESOLVED IN NINETY (90) DAYS BY MEDIATION, THE DISPUTE

184

MUST EITHER BE ABANDONED OR RESOLVED BY A REFERENCE.

6.10   EVEN THOUGH YOU MAY HAVE A REASONABLE CLAIM, THE REFEREE SHALL REFUSE TO GRANT ANY RELIEF TO YOU IF YOU DO NOT COMPLY WITH THE ABOVE ONE (1) YEAR TIME PERIOD. IF MEDIATION FAILS AND YOU CHOOSE TO FILE THE LAWSUIT REQUIRED TO START A REFERENCE, THE LAWSUIT MUST BE FILED BY YOU WITHIN TEN (10) DAYS OF THE DATE THE MEDIATOR DECLARES AN IMPASSE OR THE MEDIATOR ISSUES HIS OR HER RECOMMENDATIONS OR DECISION.

6.11   IF MEDIATION FAILS AND YOU AND WE CANNOT AGREE IN TEN (10) DAYS FROM THE DATE THE LAWSUIT IS FILED WHO THE REFEREE WILL BE, A COURT OF COMPETENT JURISDICTION WILL PROVIDE BOTH OF US WITH A LIST OF AT LEAST FIVE (5) NEUTRAL REFEREES, FROM WHICH YOU AND WE WILL ATTEMPT TO SELECT A REFEREE FROM. IF WE CANNOT AGREE, THE COURT WILL MAKE THE SELECTION FROM THAT LIST FOR US. BOTH YOU AND WE WILL BE GIVEN THE RIGHT OF ONE PEREMPTORY CHALLENGE TO DISQUALIFY A PERSON FROM BEING THE REFEREE. THE REFERENCE SHALL COMMENCE WITHIN ONE HUNDRED TWENTY (120) DAYS FROM THE DATE THE REFEREE IS APPOINTED, UNLESS CONTINUED ON REQUEST TO THE REFEREE, OR BOTH OF US AGREE. THE REFEREE WILL BE A DIFFERENT PERSON THAN THE MEDIATOR.

6.12   UNLESS BOTH OF US AGREE, NO DISPUTE WILL BE CONSOLIDATED OR JOINED TOGETHER WITH A DISPUTE OF ANY OTHER PERSON.

6.13   UNLESS OTHERWISE DETERMINED BY THE MEDIATOR OR REFEREE THE FEES AND COSTS FOR THE MEDIATION AND REFERENCE SHALL BE PAID IN ADVANCED AND DIVIDED EQUALLY BETWEEN YOU AND US. THE FEES ARE DUE AND PAYABLE ON REQUEST OF THE MEDIATOR OR REFEREE. IT IS EXPECTED THAT THE MEDIATOR OR REFEREE WILL MAKE A REASONABLE ESTIMATE OF ANTICIPATED FEES AND COSTS OF THE MEDIATION OR REFERENCE AND SEND A STATEMENT TO EACH OF US, AND EACH OF US WILL DEPOSIT OUR ONE-HALF SHARE WITH THE MEDIATOR OR REFEREE WITHIN TEN (10) DAYS. IF PAYMENT IS NOT MADE AS REQUIRED THE MEDIATOR OR REFEREE SHALL HAVE THE AUTHORITY TO: (1) DETERMINE THAT THE PERSON WHO FAILED TO PAY HAS FORFEIT AND GIVEN UP ALL RIGHTS TO PROSECUTE OR DEFEND THE CLAIM; (2) PROCEED WITHOUT PAYMENT AND SHALL INCLUDE IN THE AWARD AS TO WHICH PARTY MUST PAY THE OUTSTANDING AMOUNTS; (3) REQUIRE THAT A PARTY THAT HAS PAID HIS/HER SHARE PAY ADDITIONAL AMOUNTS. HOWEVER, UNLESS THE MEDIATOR OR REFEREE MAKES A DETERMINATION TO THE CONTRARY THE PARTY WHO PAID ADDITIONAL SUMS IS ENTITLED TO REIMBURSEMNT OF THOSE SUMS AND MAY SUBTRACT SUCH PAYMENTS FROM AN AWARD AGAINST SUCH PARTY OR MAY HAVE SUCH SUMS INCLUDED IN A JUDGMENT ENTERED AS A RESULT OF AN AWARD IN HIS/HER FAVOR. IF EITHER OF US FAILS TO MAKE A DEPOSIT, INCLUDING ANY ADDITIONAL DEPOSIT LATER

J:\00151\003\RENTAGR\Rental Agreement revised for 2006.doc      Rancho Del Rey

© 2006 Alston & Gieser, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

DETERMINED TO BE NECESSARY BY THE MEDIATOR OR REFEREE, THE FAILURE OF ONE OF US TO PAY WILL NOT, HOWEVER, ABATE, STAY, OR SUSPEND THE MEDIATION OR REFERENCE AND THE MEDIATOR OR REFERENCE.

6.14   YOU ACKNOWLEDGE HAVING READ THIS PARAGRAPH 6.   YOU ALSO AGREE THAT THESE PROVISIONS WILL APPLY TO YOU AT ALL TIMES IN THE FUTURE (EVEN THOUGH THAT MAY BE BEYOND THE TERM OF THIS AGREEMENT OR AFTER YOUR TENANCY OR THIS AGREEMENT HAS BEEN TERMINATED OR YOU MOVE FROM THE PARK) UNLESS THESE PROVISIONS ARE ELIMINATED AFTER THE TERM OF THIS AGREEMENT ENDS BY A WRITTEN 60-DAY NOTICE FROM US TO YOU.

6.15   NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE YOUR DISPUTES WITH US DECIDED BY A NEUTRAL REFEREE AS PROVIDED BY CALIFORNIA LAW, AND YOU ARE GIVING UP ALL RIGHTS YOU HAVE TO HAVE THE DISPUTES LITIGATED IN A COURT OR BY A JURY TRIAL. IF YOU REFUSE TO SUBMIT TO A REFERENCE AFTER AGREEING TO THESE PROVISIONS, YOU MAY BE COMPELLED TO A REFERENCE UNDER CALIFORNIA LAW. YOUR AGREEMENT TO THESE PROVISIONS IS VOLUNTARY. YOU HAVE READ AND UNDERSTAND THIS PARAGRAPH 6 AND AGREE TO SUBMIT YOUR DISPUTES TO A "REFERENCE" AS PROVIDED IN THIS PARAGRAPH 6.

BY INITIALING BELOW, YOU ACKNOWLEDGE THE PROVISIONS AND AGREEMENTS IN PARAGRAPH 6 ABOVE.

Initials of Homeowner(s): _____   _____   _____

7.   SALE OF MOBILEHOME: You may sell/transfer your mobilehome per your and our rights and obligations under this Agreement. You must, however, give us sixty (60) days' written notice of your intent to sell/transfer your mobilehome. You must also give us written notice at least ten (10) days prior to your execution of any escrow, sale, exchange, transfer or other agreement. The requirements of this Agreement and this paragraph will apply even if you sell or transfer only a portion of your interest in your mobilehome.

8.   REMOVAL OF MOBILEHOMES UPON SALE TO THIRD PARTIES:

We may, in order to upgrade the quality of the Park, require the removal of mobilehomes from the Spaces upon their sale or transfer to a third party, in accordance with the provisions of the Mobilehome Residency Law and other applicable law. Any such rights granted us due to amendments, deletions, or modifications of the Mobilehome Residency Law and other applicable law may be enforced by us at our option.

9.   APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS:

9.1   If your prospective buyer/transferee intends for the mobilehome to remain in the Park, or the buyer/transferee intends to reside in the Park, the buyer/transferee must do the following before occupying the mobilehome or Space: complete an application for residency, sign the Park's current rental or lease agreement which may be different than this Agreement and be accepted by us. The rent we are then charging may be increased to any amount we believe appropriate. We may request a financial statement, credit report, references and other reasonable information we need from any prospective buyer/ transferee. If the buyer/transferee is not approved by us or does not

sign the Park's current rental or lease agreement, they will have no rights of tenancy in the Park and they may not leave the mobilehome here or occupy the Space. In such event, you will remain fully responsible to us for the full performance of this Agreement. We may also, at our option, pursue such remedies as we may have against the buyer/ transferee/assignee alone, against both you and them or against you alone.

9.2     The requirements of this Agreement will apply before any person other than the ones listed on the signature page of this Agreement, will be permitted to become a resident of the Park. Unless otherwise prohibited by law all persons residing at your space must be approved for residency. If the person is not going to be a signatory to this lease no financial information will be required. Any person that we determine from prior tenancies will not abide by the rules and regulations will not be approved. A guest or other person who has not previously signed this Agreement who remains in the Park after his host has died, moved, or for any other reason does not physically reside in the Park on a regular basis, will be considered to be the equivalent of a buyer/transferee/assignee and will be subject to the requirements of this Agreement. This means that the guest or other person will have to apply for residency and if approved will be offered a rental agreement and that rental agreement may be higher that what you have been paying under this Agreement. This will be true regardless of whether the guest is listed as a "legal" or "registered" owner of the mobilehome. The requirements of this Agreement will also apply if you only sell/transfer a portion of your interest in your mobilehome or assign only a portion of your right to occupy your Space.

9.3     You agree to do such other things and to execute and deliver to us such additional documents as we may reasonably require to protect our interest in conjunction with the sale/ transfer/assignment of this Agreement.

10.    ASSIGNMENT AND SUBLEASING:

10.1     You may not assign this Agreement and any purported assignment will be void. You may not assign the right to occupy your mobilehome or Space and any such assignment will be void. (If the mobilehome is to be removed from the Space and not replaced with another mobilehome, we must also be given at least 60 days' advance written notice and the right to possession and control of the Space will, at our option, revert to us. The only exception is if you replace it with another mobilehome you personally occupy as your residence.) Unless required by law, including, as is presently the case, an ordinance of the City of Huntington Beach, subleasing is prohibited and any attempted subleasing will be void.

10.2.    Subletting, except as permitted under Civil Code Section 798.23.5 and/or The City of Huntington Beach Municipal Ordinance 3277 is prohibited, and all other subletting will be void. "Subletting" means any renting, regardless of the time period or how it is characterized, of the mobilehome or Space. If you have lived in the Park for one or more years, you may sublease your mobile home and space for no less than six months and no more than twelve (12) months pursuant to the provisions of Civil Code Section 798.23.5. You must provide the Park with written notice of your intent to sublease your mobile home along with proof of the medical emergency or treatment requiring your absence from your mobile home. Your prospective sublease shall be required to complete a residency application and be approved for residency by the Park. The Park may at its sole option elect to charge your prospective sublessee for any appropriate credit screening and personal reference checks the Park elects to make. The Park shall require your prospective sublessee to sign the Rules and Regulations. You shall continue to remain responsible for all rent and other charges pursuant to your Rental Agreement. The Park may, at its sole election, require that you pay an additional security deposit of not more than two (2) month's rent which shall be refunded at the end of the subleasing period. You must keep on file with the Park the current address and telephone number at which you may be contacted during the subleasing period.

10.3     This Agreement may be terminated, at our option, if you assign or sublet in violation of this Agreement. The Park or anyone it designates may rent, lease or sublet any Space or any mobilehome.

10.4     If you sublet in accordance with 798.23.5 and our Rules and Regulations and you or the sublessee fail, in advance of the sublessee taking possession of the mobilehome or Space, to comply with our requirements, execute the documents, or obtain the Park's approval of the sublessee, the sublessee will have no right to live in the Park and may not reside on any basis in the mobilehome or at the Space. Subletting means any renting, regardless of the time period or how it is characterized, of the mobilehome or Space.

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc     Rancho Del Rey     Page 8
© 2006  Alston & Gieser, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

Page 9

Is missing from the complaint filed by

HOUSER BROS Co dba Rancho Del Rey MHE

Unlawful Detainer against Lisa Ryan.

Page 10

Is missing from the complaint filed by

HOUSER BROS Co dba Rancho Del Rey MHE

Unlawful Detainer against Lisa Ryan.

in effect after your breach and abandonment and recover rent as it becomes due, if you have the right to sublet or assign, subject only to reasonable limitations).

14.3   You agree that the amount of our damages against you per the terms of this paragraph 13 may, at our sole option, be determined by paragraph 6 of this Agreement and that the mediation portions of such provisions shall not be applicable.

**15.   INDEMNIFICATION:** To the fullest extent the law allows, we have no liability to you or anyone else for anything which is not caused by our active negligence or willful acts and you agree to completely release, discharge, indemnify, and hold us free and harmless from all claims for which we are not liable, including providing a defense and the payment of attorneys' fees and costs of an attorney we choose. You agree to indemnify and hold us harmless from all claims, including providing a defense and the payment of attorneys' fees, and costs of an attorney we choose, which occur because of the negligent or willful conduct of you or others who you invite to be in the Park. You also agree to indemnify and hold us harmless from all claims you may have of economic loss, diminution in market value, or depreciation of your mobilehome, and other improvements.

**16.   INCORPORATED DOCUMENTS:** You agree you have received, read and understood a copy of: This Agreement; the Mobilehome Residency Law which is effective as of January 1st of the year in which you signed this Agreement or signed a document accepting an assignment of this Agreement (which you agree was attached to this Agreement at the time you received it); the Rules and Regulations (including signs posted in the common areas) which you agree are effective immediately; R.V. Storage Agreement; and other: _____.
You understand that by signing this Agreement, you are bound by all of the terms and conditions of these documents and signs as they may be revised per this Agreement.

**17.   COMPLIANCE WITH LAW AND RULES AND REGULATIONS:** You agree to comply with all applicable laws, ordinances, regulations and all terms of this Agreement, the Rules and Regulations, and all terms contained in any document referred to in this Agreement, as they may be changed.

**18.   ZONING, USE PERMIT AND OWNER INFORMATION:** The zoning under which the Park operates is MHP - Mobilehome Park. The permits under which the Park operates are not subject to expiration or renewal. The Park is not located on land which we lease from someone else, but we do have the option to enter into such a lease at any time in the future. If we exercise this option, we will notify you of the expiration date of the lease.

**19.   TRANSFER OF PARK'S INTEREST:** If we sell or transfer our interest in the Park to anyone else, we will be automatically relieved of our obligations under this Agreement which occur after the date of the sale/transfer.

**20.   NOTICES:** All notices required or allowed by this Agreement must be in writing. Except for notices terminating your tenancy, the service of any other notice on you will be valid if it is personally served on you or mailed to you at your address in the Park by First Class United States Mail, postage prepaid.

**21.   WAIVER:**

21.1   If you fail to meet any of your obligations under this Agreement, a delay or omission by us in exercising any right or remedy we have because of your default will not impair any of our rights or remedies against you, nor will it be considered a waiver by us of any right or remedy. No waiver by us of our right to enforce any provision of this Agreement after any default on your part will be effective unless it is made in writing and signed by us, nor will it be considered a waiver of our rights to enforce each and every provision of this Agreement upon any further or other default on your part. Our acceptance of rent will also not be a waiver of any breach by you of any term or provision of this Agreement, including any rule, regulation or other term or provision contained in any document referred to in this Agreement.

21.2   Any delay, omission, or mistake by us in exercising any right to make any of the increases allowed by paragraph 2 of this Agreement or other provisions of this Agreement will not impair any of our rights or be considered to be a waiver by us. Instead, we may, at any time, correct our delay, omission, or mistake and collect from you the full

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc.   Rancho Del Rey
© 2006 Alston & Gieser, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

increase retroactive to the date we could have first collected it from you. This will be true even though we may have accepted payment from you of a lesser amount. Examples include: We make an error and do not send a rent increase notice ninety (90) days in advance of your normal rent increase anniversary date. Although you will still be entitled to a 90-day notice, we may send that notice at a later date and retroactively collect the full amount of the increase to your normal rent increase anniversary date. Or, because of a miscalculation or clerical error, we did not charge you the full amount of an increase we are permitted to make. When we discover that error, we may send you a notice and retroactively collect from you the full amount of the increase.

22.    **ENTIRE AGREEMENT:** Please understand that our Park Manager, other personnel, mobilehome dealers, the selling homeowner or sales person who sold you your mobilehome and other persons are not authorized to make any representations or agreements with you about the Park unless those agreements and representations are contained in this Agreement and the other documents and posted signs referred to in it. Therefore, you agree that this Agreement and the other documents and posted signs referred to in it are the entire agreement between you and us regarding the subjects covered by this Agreement, other documents and signs. This Agreement completely supersedes and replaces any and all prior and contemporaneous agreements, representations and understandings of you, any other person, or us.

23.    **ATTORNEY'S FEES:** Attorney's fees and costs may be awarded to you or us per the provisions of the Mobilehome Residency Law, or other laws, including changes to these laws which may occur in the future. The same is true of any other litigation, disputes covered by the "RESOLUTION OF DISPUTES" provisions of this Agreement, between the two of us that is not covered by the Mobilehome Residency Law or other laws.

24.    **HEADINGS AND FORMATTING:** The titles of the paragraphs and subparagraphs in this Agreement or in other documents or posted signs are only for convenience and under no circumstances are they to be considered as any part of this Agreement. You agree that this Agreement is to be considered a typed, not printed document, so that any legal requirements regarding printed documents are not applicable.

25.    **PARTIAL INVALIDITY:** If any part of this Agreement or any document referred to in it is, in any way, invalid or unenforceable, the remainder of this Agreement or the other document shall not be affected, and will be valid and enforceable to the fullest extent permitted by law. The same is true if the application of any part of this Agreement, or any document referred to in this Agreement, is, in any way, invalid or unenforceable to any person or circumstance. The preceding shall not, however, at our sole option, be applicable if our ability to charge for or increase the amount of rent, utilities, or make other charges provided for by this Agreement is held in any way, in whole or in part, to be invalid or unenforceable. In such circumstances, we may, at our sole option, either keep this Agreement in full force and effect or terminate this Agreement or convert your tenancy under this Agreement to a 12-month or less tenancy.

26.    **ALTERATION OF THIS AGREEMENT:** This Agreement may be changed only as provided for by this Agreement or by a written agreement signed by you and us or by operation of law. This Agreement will be construed and interpreted as though both of us had written it together, not as if it had been written by us alone.

27.    **DEFINITIONS OF OWNER OF THE PARK, HOMEOWNERS, RESIDENTS, SALE OF MOBILE-HOME AND BUYER:** The terms "we," "us," and other similar terms used in this Agreement which refer to the owners and the operators of the Park include all owners of the Park and their partners, shareholders, directors, representatives, officers, employees and agents, and their successors and assigns. The term "Park" means the mobilehome park identified in this Agreement. The term "you," "Homeowners," "residents" or any other similar term used in this Agreement which refer to the person(s) who has signed this Agreement or signed another document accepting an assignment of this Agreement includes not only those persons but all members of their household who resided with them at the time this Agreement, or another document accepting an assignment of this Agreement, was signed who had been approved for residency in the Park or who were subsequently approved by us for residency in the Park. Note: To shorten this Agreement, the term "sale" is used to refer to any sale or other transfer of the mobilehome and/or any assignment or other transfer of the right to occupy the Space. The term "buyer" is used to refer to anyone buying or otherwise acquiring the mobilehome and/or acquiring the right to occupy the Space by an assignment or other method permitted by this Agreement. Other similar terms consistent with the preceding have also been used.

**28.    HOLDOVER TENANCY:** If you continue to live in the Park after the term of this Agreement has expired or it has been terminated (including any extension of the initial term we agree to), and you have not signed a new rental or lease agreement with us, you shall be on a month-to-month tenancy. During that month-to-month tenancy, you will pay all rent and other charges required by this Agreement and all the terms and provisions of this Agreement, including the "Resolution of Disputes" provisions will continue to apply to you. We may, however, increase the rent or charges you pay or change any other terms of this Agreement upon ninety (90) days' written notice to you.

**29.    COUNTERPARTS:** This Agreement may be signed in duplicate copies, each of which shall be considered an original, but all of which taken together will be one and the same document.

**30.    EXHIBITS:** Each exhibit or other document referred to in this Agreement is attached or enclosed and incorporated in this Agreement by this reference.

**31.    OWNER'S APPROVAL AND OPTIONS:** All references in this Agreement and documents it refers to that our approval is required or other similar terms indicating our approval must be obtained by you means you must obtain our prior written approval by submitting a written request to us which describes what you want to do. References in this Agreement that we may, at our option, adjust or increase rents up to or by a certain amount or do anything else at our option, means we have the right, if we wish, to do so.

**32.    STATUTE OF LIMITATION:** ANY LAWSUIT OR OTHER ACTION AGAINST US MUST BE FILED BY YOU WITH THE COURT NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE OR CLAIM. IF YOU DO NOT FILE THE LAWSUIT OR OTHER ACTION AGAINST US WITH THE COURTS WITHIN THIS ONE (1) YEAR TIME PERIOD, YOU WILL HAVE NO RIGHT TO PROSECUTE OR PURSUE THE LAWSUIT OR OTHER ACTION AND YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY OF THE CLAIMS, DAMAGES, OR OTHER ALLEGATIONS AND RELIEF ASSERTED IN THE LAWSUIT OR OTHER ACTION. IF THE RESOLUTION OF DISPUTES PROVISIONS OF THIS AGREEMENT ARE APPLICABLE TO YOUR DISPUTE OR CLAIM, THEY, TOO, WILL BE SUBJECT TO THE LIMITATIONS OF THIS PARAGRAPH.

**33.    USE AND OCCUPANCY:** Unless otherwise specifically allowed by this Agreement or other documents it incorporates, at all times one of the persons listed on the last page of this Agreement, or on the document assigning this Agreement, must be the "registered" owner of the mobilehome, and that person must regularly occupy the mobilehome, and it must also be their primary residence. When title to the Mobilehome is held in a trust which has been established for the purposed of estate planning one of the person(s) who established the trust must reside in the home on full time basis. You agree that the information you have provided us regarding you, other members of your household and your mobilehome is true and correct. You also agree to promptly notify us, in writing, of any change in this information. Please refer to the Rules and Regulations for further clarification of your use and occupancy of the mobilehome and Space. We, or someone we designate, may conduct a mobilehome sales or rental business in the Park.

**34.    INSPECTION:** By signing this Agreement, or accepting an assignment of it, you agree you have carefully inspected the Space you are renting and all of our services, improvements and facilities and you have found them to be safe and as represented by us to you, either orally or in writing, and you accept them as they are. To the extent that you have found such services, improvements and facilities not to be safe or not to be as represented by us to you, either orally or in writing, you nonetheless agree to accept them as they are.

**35.    ENFORCEMENT OF CONDITIONS OF TENANCY:** You agree that the enforcement of this Agreement, the Rules and Regulations and the provisions of other documents and conditions of tenancy are a private matter between us and each resident on an individual basis and the enforcement or the lack thereof by us with regard to any resident shall not result in any damage or injury to, or claim by you. You also agree that you are not a third party beneficiary of any agreement between us and any other residents or person(s).

**36.    MAINTENANCE OF IMPROVEMENTS:** You are financially responsible to maintain, repair and replace as reasonably necessary your mobilehome and all equipment, structures and other improvements to your mobilehome

192

and Space in good and safe condition and repair and in an aesthetically pleasing condition at all times. This includes, without limitation, the following: the mobilehome, accessory equipment and structures, fences, driveways (except park installed driveways), trees (except trees which present a specific health and safety violation or hazard), banks, and landscaping. Regardless of whether you are the original homeowner/occupant of the Space or of your mobilehome or purchased your mobilehome from a former homeowner who previously lived at your Space, this paragraph applies to you and you are responsible even for those things which were installed by a former owner or resident of the mobilehome or Space, us, or any prior or future owner of the Park. You are financially responsible for insuring at all times that the mobilehome, Space, and their improvements complies with all local, state and federal laws and regulations. (The only exception is any of the Park's utility systems on your Space which are owned by us or a utility company so we or they are responsible for them and park installed driveways.) The preceding includes without limitation such things as: insuring that the drainage is sufficient to prevent water from accumulating on your Space or under your mobilehome or running off so it adversely affects other Spaces or our property; that all required setbacks and lot line requirements are met and there are no encroachments on other property; that all building code and other similar requirements are met; and that all building and other permits have been obtained.

37.    **CONDEMNATION:** If any portion of the Park is taken under the power of eminent domain, or is sold to any authority having the power of eminent domain, either under threat of condemnation or while condemnation proceedings are pending or the utility systems or other portions of the Park are or will be affected by the condemnation to the point where, in our sole opinion, it is not economically desirable to continue operations, we will have the right to terminate this Agreement as of the date the condemning authority takes possession. The entire amount of any award for taking of all or any part of a space or the Park or for any other reason under the power of eminent domain will be our property whether such award shall be made as compensation for diminution in value of the leasehold or for taking the fee or the taking of any interest you may have because of this Agreement or any other lease or rental agreement you have with us or your tenancy in the Park. Nothing contained in this paragraph, however, will preclude you from obtaining any award from the condemning authority to you for the loss of or damage to your mobilehome or other removable personal property.

38.    **TIME OF ESSENCE:** Time is of the essence in this Agreement and each and every provision thereof.

39.    **MODIFICATION FOR LENDER:** If, in connection with our obtaining financing where we use the Park as security, a lender requests reasonable changes in this Agreement as a condition to such financing, you agree to promptly consent to those changes if they do not increase your obligations under this Agreement or materially adversely affect you.

40.    **ESTOPPEL CERTIFICATE:** You shall, on our request, sign and deliver to us a written statement certifying that (a) this Agreement is unmodified and in full force and effect (or if there have been modifications that they are in full force and effect as modified; (b) the dates to which the rent and other charges have been paid; (c) the term of this Agreement; (d) the amount of any security deposit; (e) we are not in default nor have we been in the past under any provision of this Agreement or any laws or regulations affecting our obligations; and (f) any other matters as may be reasonably requested by us. Any such statement may be relied on by us or any person we give it to. You will be in default of this Agreement if you fail to do the above within 10 days of your receipt of a written request for such statement. We may, at our option, treat your failure to sign and deliver this document to us as your agreement to the information we've requested and that we are not in default nor have we been in the past under any provision of this Agreement or any laws, or regulations affecting our obligations to you.

41.    **LIMITATION OF OUR LIABILITY:** In consideration of this Agreement, you agree that, in the event of any actual or alleged failure, breach or default by us under this Agreement or otherwise, your sole and exclusive remedy shall be against the value of our mobilehome park which is identified in this Agreement as the Park (including any insurance policies of us or the Park), not other property or assets which we may own.

42.    **MEGAN'S LAW:** The California Department of Justice, sheriff's departments, other local law enforcement authorities maintain for public access a database of the locations of persons required to register as an identified sex offender. The database is updated on a quarterly basis and a source of information about the presence of these individuals is any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line

193

through which inquires about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. There is a charge for "900" calls information regarding neighborhoods is not available through the "900" telephone service.

**The phone numbers to call for information:** (714) 960-8843

Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.**Meganslaw.ca.gov** . Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. *Executed, Huntington Bch, 1:25 pm, on 11-16-18*

43.     **EXECUTION:** The Agreement is signed by you at *1 : 23* o'clock *P* .m., on *1-16-* 20 *06*
This Agreement is signed by us on _____ *1-16* , 20 *06*

**NOTE TO NEW RESIDENTS: THIS AGREEMENT WILL NOT BE EFFECTIVE UNLESS YOU COMPLETE THE PURCHASE OF THE MOBILEHOME AND IF YOU DO NOT, YOU WILL HAVE NO RIGHTS OF TENANCY IN THE PARK.**

**PLEASE READ CAREFULLY BEFORE SIGNING THIS AGREEMENT AND ALL OF THE OTHER DOCUMENTS REFERRED TO IN THIS AGREEMENT.**

**I/WE AGREE THAT WE HAVE READ, UNDERSTOOD AND VOLUNTARILY AGREED TO ALL OF THE PROVISIONS OF THIS AGREEMENT WHICH CONSIST OF THIS MOBILEHOME RENTAL AGREE-MENT AND THE OTHER DOCUMENTS REFERRED TO IN IT.**

**I/WE HAVE BEEN ADVISED BY REPRESENTATIVES OF THE PARK THAT I/WE HAVE THE RIGHT TO CONSULT A LAWYER AND GET THE LAWYER'S ADVICE BEFORE SIGNING THIS AGREEMENT.**

[ ]     **RESIDENT(S)' INITIALS:** _____ **I/WE HAVE TAKEN THIS AGREEMENT TO A LAWYER BEFORE SIGNING IT. THE LAWYER IS:**

Name:      _____

Address:   _____

Telephone: _____

[ ]     **RESIDENT(S)' INITIALS:** _____ **I/WE HAVE DECLINED TO SEEK LEGAL COUNSEL BEFORE SIGNING THIS AGREEMENT.**

**NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES" WILL BE DECIDED BY A NEUTRAL REFEREE AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE PARAGRAPH 6 OF THIS AGREEMENT.**

HOMEOWNER(s) SIGNATURE(s)            RANCHO DEL REY MOBILE HOME ESTATES

_____               By: _____

C:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc     Rancho Del Rey                      Page 15
© 2006 Alston & Gieser, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

*11/16/2018*

11/18/18

Person(s) in addition to the above who
will reside in the above Space for whom
applications for residency were submitted
and approved.

195

**State of California**
BUSINESS, TRANSPORTATION AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM
PO Box 2111 Sacramento CA 95812-2111
1 800 952-8356
www.hcd.ca.gov



## NOTICE OF SALE OR TRANSFER

**ATTENTION: THIS FORM IS TO BE USED <u>ONLY</u> WHEN YOU SELL OR TRANSFER YOUR MOBILEHOME OR COMMERCIAL COACH. AT THAT TIME COMPLETE, SIGN, AND RETURN TO THE ADDRESS STATED ABOVE TO REPORT THE CHANGE OF OWNERSHIP.**

**SECTION I:**    Enter the following information that describes your unit: Decal/License plate number(s), Serial(s) number, and Trade name of Unit.

**SECTION II:**    Enter the sale price and the date of sale/transfer including the month, day, and year.

**SECTION III:**    Enter the full name and mailing address of the new owner/buyer(s).

**SECTION IV:**    Enter date, city, and state indicating where and when this form is being executed. SELLER(S) MUST SIGN and print their names(s).

**SECTION I.        DESCRIPTION OF UNIT**

| Decal Number(s) | Serial Number(s) | Trade Name |
|---|---|---|
| LBM1081 | ATV71D3946B AC7471D3946A | Custom Villa |

**SECTION II.        SALE OR TRANSFER INFORMATION**

For the sum of $ 225,000 the receipt of which is hereby acknowledged, I/we did sell, transfer and deliver to the purchaser/owner named below, on 11-1-18 , my/our right title and interest in the unit described above.
        _Date of Transfer_

**SECTION III.        NAME OF PURCHASER/NEW OWNER:**

Name: J-Sandcastle Co. LLC
        Its Manager JAMIE L. GALLIAN
Address: 5782 PINON Dr.
City: Huntington Bch    State: CA    Zip Code: 92649

**SECTION IV.    CERTIFICATION AND RELEASE**

I/we certify under penalty of perjury under the laws of the State of California that: 1) I/we are the lawful owner(s) of the unit, and 2) I/We have the right to sell it, and 3) I/We guarantee and will defend the title to the unit against the claims and demands of any and all persons arising prior to this date, and 4) the unit is free of all liens and encumbrances.

I/we certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed On 11/1 2018        at Huntington Beach    CA
        _Date_            _City_        _State_

Signature of Sellers:                                11/15/2018

Printed Name: LISA T RYAN

## SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of transfer of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 11/1/2018 at Huntington Beach, CA

Signature

Printed Name: LISA T RYAN

## SECTION B - RELEASING SIGNATURES

1a. _____  Date of Release 11/1/2018
Releasing Signature of Registered Owner

1b. _____  Date of Release _____
Releasing Signature of Registered Owner

2. _____  ☒ Release   ☐ Retain   ☐ Assign Interest
Legal Owner of Record    check appropriate box    • If Assign Interest is checked - Complete New Legal Owner Below

## SECTION C - NEW OWNER INFORMATION

NEW REGISTERED OWNER - Please Print or Type Clearly

3a. J. Sandcastle Co, LLC                    3c. _____
New Registered Owners Name                        New Registered Owners Name

3b. _____                3d. _____
New Registered Owners Name                        New Registered Owners Name
                          If more than one New Owner going onto title, please check the appropriate Co-owner term box.
☐ Joint Tenants with Right of Survivorship   ☐ Tenants In Common OR   ☐ Trust/Trustee(s)
                                                                    • If this box is checked-Complete HCD 476.6H
☐ Tenants In Common AND   ☐ Community Property   ☐ Community Property with Right of Survivorship

4. 16222 Monterey Ln #376          Huntington Beach CA 92649
Mailing Address of New Registered Owner   City/State          Zip Code

5. Same as Above _____  _____
Actual Location Address of Unit   City/State              Zip Code

6. $125,000 / $175,000    11-1-18
Purchase Price or check box if Gift-☐   Purchase Date or Transfer Date

7a. J. Sandcastle Co. LLC  _____  Signature of New Registered Owners
Signature of New Registered Owner   Jim B. Williams DB Managing Member

7b. _____   Signature of New Registered Owners
Signature of New Registered Owners

NEW LEGAL OWNER - Please Print or Type Clearly

8a. _____   8b. _____
New Legal Owners Name                        New Legal Owners Name
                          If more than one New Lender going onto title, please check the appropriate Co-owner term box below.
☐ Joint Tenants with Right of Survivorship   ☐ Tenants In Common OR   ☐ Trust/Trustee(s)
                                                                    • If this box is checked-Complete HCD 476.6H
☐ Tenants In Common AND   ☐ Community Property   ☐ Community Property with Right of Survivorship

9. _____  _____  _____
Mailing Address of New Legal Owner   City/State              Zip Code

NEW JUNIOR LIENHOLDER - Please Print or Type Clearly

10a. _____   10b. _____
New Junior Lienholder Name                    New Junior Lienholder Name

11. _____  _____  _____
Mailing Address of New Junior Lienholder   City/State        Zip Code

## SECTION D - RELEASE OF DEALERS

12. _____   _____
Signature of Selling Dealer               Print Dealers Name and Dealer Number

OSP 00 112018

**State of California**
BUSINESS, TRANSPORTATION AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM
PO Box 2111 Sacramento  CA  95812-2111
1 800 952-8356
www.hcd.ca.gov



## NOTICE OF SALE OR TRANSFER

**ATTENTION: THIS FORM IS TO BE USED <u>ONLY</u> WHEN YOU SELL OR TRANSFER YOUR MOBILEHOME OR COMMERCIAL COACH.  AT THAT TIME COMPLETE, SIGN, AND RETURN TO THE ADDRESS STATED ABOVE TO REPORT THE CHANGE OF OWNERSHIP.**

**SECTION I:** Enter the following information that describes your unit: Decal/License plate number(s), Serial(s) number, and Trade name of Unit.

**SECTION II:** Enter the sale price and the date of sale/transfer including the month, day, and year.

**SECTION III:** Enter the full name and mailing address of the new owner/buyer(s).

**SECTION IV:** Enter date, city, and state indicating where and when this form is being executed.  SELLER(S) MUST SIGN and print their names(s).

**SECTION I.**          **DESCRIPTION OF UNIT**

| Decal Number(s) | Serial Number(s) | Trade Name |
|---|---|---|
| LBM1081 | ATV71D394GB AC7471D394GA | Custom Villa |

**SECTION II.**          **SALE OR TRANSFER INFORMATION**

For the sum of $ 225,000  the receipt of which is hereby acknowledged, I/we did sell, transfer and deliver to the purchaser/owner named below, on  11-1-18 , my/our right title and interest in the unit described above.
*Date of Transfer*

**SECTION III.**     **NAME OF PURCHASER/NEW OWNER:**

Name: J-Sandcastle Co. LLC  Its Manager Jamie L. Gallian

Address: 5782 PINON Dr.

City: Huntington Bch    State: CA    Zip Code: 92649

**SECTION IV.   CERTIFICATION AND RELEASE**

I/we certify under penalty of perjury under the laws of the State of California that: 1) I/We are the lawful owner(s) of the unit, and 2) I/We have the right to sell it, and 3) I/We guarantee and will defend the title to the unit against the claims and demands of any and all persons arising prior to this date, and 4) the unit is free of all liens and encumbrances.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed On  11/1/2018     at  Huntington Beach     CA
              *Date*                  *City*                      *State*

Signature of Sellers: _____  _____  11/15/2018

Printed Name:  LISA T RYAN

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California          )
County of _Orange_____   )

On _November 15 2018_ before me, ___Brandon Vargas, Notary Public___,
       *Date*                            *Here Insert Name and Title of the Officer*

personally appeared _Lisa Theresa Ryan_____
                             *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**BRANDON VARGAS**
Commission # 2203957
Notary Public - California
Orange County
My Comm. Expires JULY 3, 2021

Signature _Brandon V._____
                 *Signature of Notary Public*

*Place Notary Seal Above*

─────────────── **OPTIONAL** ───────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Department of Housing and community development Certificate of title, section B_
Document Date: _____    Number of Pages: _3_
Signer(s) Other Than Named Above: _____

199



## TAX CLEARANCE CERTIFICATE

☒ Mobile Home          ☐ Floating Home

### COUNTY OF ORANGE

| SERIAL NUMBER/HULL NUMBER | DECAL NUMBER/CF NUMBER |
|---|---|
| AC7V710394GB/ AC7V710394GA | LBM1081 |

| LOCATION OF HOME | ASSESSOR'S PARCEL NUMBER |
|---|---|
| 16222 MONTEREY LN 376 HUNTINGTON BEACH | 891-569-62 |

| CURRENT REGISTERED OWNER | APPLICANT |
|---|---|
| RYAN, LISA T<br>16222 MONTEREY LN<br>SPC 376<br>HUNTINGTON BEACH<br>CA 92649 | J-SANDCASTLE CO, LLC<br>16222 MONTEREY LN #376<br>HUNTINGTON BEACH<br>CA 92649 |

I hereby certify that the following has been paid:

☐ Delinquent license fees

☒ Property taxes applicable to the home identified above through the fiscal year 2018-2019

☒ A security deposit for payment of the property taxes for the fiscal year 2019-2020

☒ No taxes due or payable at this time.

There may be a supplemental assessment not covered by this "Tax Clearance Certificate" which may create an additional bill.

### THIS CERTIFICATE IS VOID ON AND AFTER JANUARY 15, 2019.

Executed on November 16, 2018 at Santa Ana.
Treasurer-Tax Collector for Orange County, State of California.

Issued on November 16, 2018 _____
                                                    (Signature)

§§2189.8, 5832 R & T Code                                    TDL 10-01 (7-87)

98    ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE
ONLINE PER CA GOV CODE §6254.21    PROPERTY LOCATION

16222 MONTEREY LN 376 HUNTINGTON BEACH

ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2018

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| PERSONAL PROPERTY - OTHER | 109,685 | |

OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2018

ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE ONLINE PER CA GOV CODE §6254.21

| | | |
|---|---|---|
| TOTAL VALUES: | 109,685 | 1,199.32 |
| TOTAL NET TAXABLE VALUE: | 109,685 | 1,199.32 |

| PARCEL NO. (APN) | TAX RATE AREA | 1st Installment DUE 11/1/18 | | 2nd Installment DUE 2/1/19 | | TO PAY BOTH INSTALLMENTS BY 12/10/18 |
|---|---|---|---|---|---|---|
| 891-569-62 | 04-902 | $599.66 | + | $599.66 | = | $1,199.32 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the new owner. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS

| SERVICE AGENCY | RATE | VALUE | TAXES |
|---|---|---|---|
| BASIC LEVY RATE | 1.00000 | 109,685 | 1,096.84 |
| COAST COMM COLLEGE DIST | .03052 | 109,685 | 33.47 |
| OCEAN VIEW SD 2016, SR 2017A | .02404 | 109,685 | 26.37 |
| HUNTINGTON BCH UNION HS | .02388 | 109,685 | 26.19 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 109,685 | 16.45 |
| TOTAL CHARGED | 1.09344 | | 1,199.32 |

MH LOCATED IN SPACE 376 ON AP 178-011-16

F074-453 (2018)

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN TOP PORTION FOR YOUR RECORDS – IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

DETACH AND MAIL STUB WITH 2ND INSTALLMENT IN ENVELOPE PROVIDED
WRITE YOUR PARCEL NO. ON YOUR CHECK

**ORANGE COUNTY 2018-19 PROPERTY TAX**
Pay taxes online by eCheck or by credit card
eCheck    No Cost

| PARCEL NUMBER (APN) | DELINQUENT AFTER |
|---|---|
| 891-569-62 | APRIL 10, 2019 |

DISC_VISA - 2.3% Fee Min. $3.9
ocgov.com/octaxbill

ASSESSEE:

ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE ONLINE PER CA GOV CODE §6254.21
Make checks payable to: County of Orange

COUNTY OF ORANGE
ATTN: TREASURER-TAX COLLECTOR
P.O. Box 1438
Santa Ana, CA 92702-1438

Scan the code to view and pay your specific parcel online

Second Installment
DUE FEB 1, 2019    2

$599.66

INTERNET COPY
AMOUNT DUE AFTER 4/10/19 (INCLUDES 10% PENALTY + $23 COST)    $682.62

0189156962000062018020410190000059966070119000006826200000000000000003

DETACH AND MAIL STUB WITH 1ST INSTALLMENT IN ENVELOPE PROVIDED
WRITE YOUR PARCEL NO. ON YOUR CHECK

**ORANGE COUNTY 2018-19 PROPERTY TAX**
Pay taxes online by eCheck or by credit card
eCheck    No Cost

| PARCEL NUMBER (APN) | DELINQUENT AFTER | TO PAY BOTH INSTALLMENTS BY DEC. 10 |
|---|---|---|
| 891-569-62 | DECEMBER 10, 2018 | $1,199.32 |

DISC_VISA - 2.3% Fee Min. $3.9
ocgov.com/octaxbill

ASSESSEE:

ASSESSEE NAME AND ADDRESS ARE NOT AVAILABLE ONLINE

Scan the code to view and pay your specific parcel online

STATE OF CALIFORNIA
BUSINESS, TRANSPORTATION AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM

NOV 6 2018

**NOTICE OF APPLICATION RECEIVED**

Additional information regarding this notice appears
on the reverse side of this form.

J- Sandcastle Co. LLC
16222 Monterey Ln #376
Huntington Beach CA
92649

DECAL
LBM 1081

SERIAL NUMBER(S)
AC7V7103946B/GB

TRADE NAME
CUSTOM VILLA

STICKER NUMBER

HCD 484.8 (REV 11/82)

---

Your transaction for this unit is being processed at this time.  The decal enclosed must be affixed to the
unit according to the instructions which appear on the reverse side of the decal.

The Certificate of Title and/or Registration Card will be mailed to you under a separate cover.

STATE OF CALIFORNIA
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS



CASH RECEIPT

| Customer: J- Sandcastle Co, LLC JAMIE L GALLIAN , It's MANAger 16222 MONTEREY LN , SPACE # 376 HUNTINGTON BEACH, CA 92649 | Date Received | 11/16/2018 |
|---|---|---|
| | Media # | |
| | Amount | $101.00 |

| DATE | DTN | REFERENCE | AMOUNT DUE |
|---|---|---|---|
| 11/16/2018 | 10670236 - R/O Transfer - Private Sale | LBM1081 | $101.00 |
| | | Previously Paid: | $0.00 |
| | | Paid Today: | $101.00 |

OTHER DTNS

Will rec in Mail Comonths
About 6 Mos
from. Sacramento
to address at above

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

## CERTIFICATE OF TITLE
Manufactured Home

Decal No: **LBM1081**

| Manufacturer ID/Name | | Trade Name | Model | | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|---|---|
| 90002  SKYLINE HOMES INC | | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | SPC | SCC | Exempt | Use | Type |
|---|---|---|---|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | | 30 | | SFD | LPT |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | | | | |

| | |
|---|---|
| **Issued** Sep 10, 2014 | **Total Fees Paid** $91.00 |

**Addressee**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

**Situs Address**
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA  92649

## IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.
THE CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 8169431

NOV 16 2018

09102014 - 244

204

State of California
Department of Housing and Community Development
Division of Codes and Standards
Registration and Titling Program
P.O. Box 2111, Sacramento, CA 95812-2111
(916) 323-9224 / (800) 952-8356
www.hcd.ca.gov



## MULTI-PURPOSE TRANSFER FORM

### PLEASE COMPLETE ONLY THE SECTIONS THAT APPLY AND SIGN BOTTOM OF FORM

#### UNIT DESCRIPTION

Decal (License) No.(s): __LBM 1081__    Serial No.(s): __AC7V710394GB/AC7V710394GA__

#### SMOKE DETECTOR AND CARBON MONOXIDE CERTIFICATION

I/We, the undersigned, hereby state that the manufactured home, mobilehome, or multifamily manufactured home described above is equipped with a properly working, operable smoke detector in accordance with California Health and Safety Code Section 18029.6 and a carbon monoxide detector in accordance to California Residential Code Section R315.

☒ YES    ☐ NO

#### PARK PURCHASE FEE EXEMPTION

The registered owner of the above-described manufactured home/mobilehome that is located on private property owned by the registered owner is exempt from payment of the $5 Park Purchase Fund (PPF) fee (Health and Safety Code Section 18114.1). If you feel you qualify for the exemption, complete the following questions:

- Do you (the registered owner) own your manufactured home/mobilehome?  ☒ YES  ☐ NO
- Do you (the registered owner) own the land your manufactured home/mobilehome is located on?  ☐ YES  ☒ NO

#### DESIGNATION OF CO-OWNER TERM

We request the Department of Housing and Community Development to register our ownership interest in the unit described above with the following co-owner term:  **(READ CAREFULLY AND CHECK ONE BOX.)**

☐  **JTRS (Joint Tenants with Right of Survivorship):** Upon the death of a joint tenant, the interest of the deceased party passes to the surviving joint tenant. The signature of each joint tenant is required to transfer or encumber the title.

☐  **TENCOM AND (Tenants in Common with the names joined by the word AND):** Each tenant in common may transfer his or her individual interest without the signature of the other tenant(s) in common. The signature of each tenant in common is required to transfer full interest in the unit to a new registered owner or to encumber the title.

☐  **TENCOM OR (Tenants in Common with the names joined by the word OR):** Any one of the tenants in common may transfer full ownership interest in the unit to a new registered owner without the signature of the other tenant(s) in common. The signature of each tenant in common is required to encumber the title.

☐  **COMPRO (Community Property):** A unit may be registered as community property in the names of a husband and wife. The signature of each spouse is required to transfer full interest in the unit or encumber the title.

☐  **COMPROS (Community Property with Right of Survivorship):** A unit may be registered as community property in the names of a husband and wife. At the death of one spouse, the decedent's community property interest passes to the surviving spouse without administration. The signature of each spouse is required to transfer full interest in the unit or encumber the title.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __November 16, 2018__    __Riverside, CA__
              Date                          City                              State

Signature _~~Jamie H. Gallian~~_    Signature _____

Signature _____    Signature _____

PHONE #: __714-321-3449__    E-MAIL ADDRESS: __jamiegallian@gmail.com__

HCD RT 476.8G Side 1 (Rev. 07/18)

Decal (License) No.(s): LBM 1081 _____    Serial No.(s): AC7V710394GB/AC7V710394GA.

## DECLARATION OF INSTALLATION OF WATER HEATER SEISMIC BRACING

I/We the undersigned hereby state that all fuel gas-burning water heater appliances in the manufactured home, mobilehome, or multifamily manufactured housing described above are seismically braced, anchored, or strapped in accordance with Health and Safety Code Section 18031.7 and Part 5 of Title 24 of the California Code of Regulations.

☒ YES    ☐ NO    ☒ Electric water heater is installed per manufacturer's instructions.

### SIGNATURE ON FRONT SIDE IS CERTIFICATION FOR THIS SECTION

## REASON FOR USE TAX AND/OR MOBILEHOME RECOVERY FUND FEE EXEMPTION

Check appropriate box(es):

☐ The above-described unit was a gift. All rights and interest of ownership were transferred without exchange or money or other valuable consideration.

☐ The above-described unit has been acquired from: _____
   *parents, spouse, grandparent(s), grandchild, child, brother(s)\*, sister(s)\**

☐ The name of a _____ is being ☐ ADDED    ☐ DELETED to the record.
   *show relationship*

☐ The above-described unit was received as the result of an inheritance.

☐ Transfer of the above-described unit is being made pursuant to a court order.

☐ The transfer of the unit is being made to a revocable trust which (1) the seller has an unrestricted power to revoke the trust, (2) the transfer does not result in any change in the beneficial ownership of the property, (3) the trust provides that upon revocation of the trust the property will revert wholly to the seller, and (4) the only consideration for the transfer is the assumption by the trust of an existing loan for which the tangible personal property being transferred is the sole collateral for the assumed loan.

*NOTE: A sale between brother(s) or sister(s) is subject to use tax unless both are minors. If minors, check here: ☐

### SIGNATURE ON FRONT SIDE IS CERTIFICATION FOR THIS SECTION

## DESIGNATION OF TRUST

I/We, the undersigned trustee(s), hereby state that the unit described above has been placed into a trust. This Declaration of Trust is dated _____

In compliance with Section 18080.1(b) of the California Health and Safety Code, I/we as trustee(s) hereby request the unit described above be registered as shown below. I/We acknowledge that the Department's permanent title record and the titling documents for the unit will reflect the information as shown below.

_____
   *Print Name of the Trust. This is how the name of the Trust will appear on title.*

I/We as trustee(s) agree(s) to notify and make application with the Department of Housing and Community Development to appropriately amend the permanent registration and titling record immediately upon any change to the original trust agreement described herein by submitting this form along with all appropriate documents, fees or any other needed items to the Department.

I/We as trustee(s) further agree(s) to indemnify and save harmless the Director of the Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above described unit in California and from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____ at _____
            *Date*                          *City*                          *State*

_____    _____
*Trustee Signature(s):*

_____    _____    _____
*Street Address or P.O. Box*                 *City*                          *State*

HCD RT 476.6G Side 2 (Rev. 07/16)

*RANCHO DEL REY OVER 55 MANUFACTURED HOME PARK*
*Qualifying and Occupancy Requirements 2018*
*16222 Monterey Lane*
*Huntington Beach 92649*
*THANYA*
*5 STAR HOMES SP#1231425*
*714 308-7735*

## General Information:

- **EACH, Prospective Resident** must submit a park application with attached **proof of income prior to opening escrow**

- **Person/s to occupy the home** must verify income of **$3786 per month, renting of property or sub-letting is not allowed**

- **Park may ONLY use income of owner/occupant 55 or over, registered on Title and sign Lease Agreement**

- **Income verification MUST** be in the form of COPIES; direct deposit, bank statements showing SOURCE, social security, retirement, pay stubs, etc. Funds/savings in an account is NOT income

- **Applicants MAY submit Income Tax Statement for alternate verification of income if more convenient**

- **One owner 55 or over, others over 18, residents MUST park cars in driveway, guest parking for guests only. Extra resident's cars may park on Monterey Lane**

- **Park allows two small indoor pets, dogs 22 lbs OR 15 in" at shoulder**

- **Dogs must be on leash at all times, no solid fencing, privacy screens are allowed. May have doggie gate if home has a porch, with owner present. Dogs are not allowed to be left in any enclosed area, not allowed on common area or in the park office. Dogs may be walked thru the park on leash**

- **Monthly space rent $1325 for 2018, plus utilities. Space rent increases each year between 2%-4%. Lease is for one year**

- **Mandatory meeting with manager with ALL occupants for Rules and Regulations for final park approval, week day appointments only**

- **Obtaining a loan or paying cash for a home is separate from qualifying for park income requirement. If obtaining a loan, the amount of the mortgage payment will be added to the park's income requirement * 5 Star Home Lending Richard Herr/714 891-6383 *Request a park and loan application* Thanya 714 308-7735**

# APPLICATION FOR RESIDENCY



Western
Manufactured Housing Communities
Association

(Each person desiring residency must complete a separate application.)

IN _____ Rancho Del Rey Mobile Home Estates _____
(Community Name)

## Personal

Name of Person Making Application: __J-Sandcastle Co., LLC Jamie Gallian, Its Member__

Phone Number: __714-321-3449__

Date (of application): __11-18-18__

Present Address: __5782 Pinon Drive   Huntington Beach, CA 92649__
                                                              City            State         Zip

Social Security Number: __EIN 83-2453659__          Driver's License Number: _____

Email: __jamiegallian@gmail.com__          Date of birth: _____

Name(s) of Other Person(s) Who Will Be Occupying Homesite: __Jamie L Gallian__  DOB 11-16-1962 56yo

_____

Relationship(s): __J-Sandcastle Co., LLC Jamie Gallian, Its Member__

Social Security Number(s): __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__

Driver's License Number(s) __V8040742__

## Previous Residency

Present Landlord or Mortgage Co.: __Henry Newton__          Yrs. __< 1 yr__

Address: __6641 Beachview Dr. Huntington Beach, CA 92649__   Phone: __714-615-3574__
                        (City)          (State)        (Zip)

Monthly Rent or Mortgage Payment: __$ 3400.00 plus utilities__

Prior Landlord or Mortgage Co.: _____   Yrs. _____

Address: _____   Phone: _____
                        (City)       (State)     (Zip)

Monthly Rent or Mortgage Payment: _____

Have you ever been asked to terminate your residency elsewhere or have you ever been evicted? ☐ Yes  ☒ No

If yes, please explain: _____

Have you ever lived in a mobilehome park before? ☐ Yes  ☒ No

If yes, please explain: _____

_____

Address: _____

Dates of Residency: _____

Amount of Last Rent: _____



Copyright © 2017. WMA.

# APPLICATION FOR RESIDENCY
Page 2

## Vehicles

Number of Automobile(s): ___2___    Boat(s): _____    Other _____

We must have complete descriptions of all vehicles:

Make: __CIVIC____    Model: __Honda____    Year: _2001_    License No.: _7UJZ768_    State: _CA_
Financed By: _____    Address: _____    Phone: _____
Make: __Sportage__    Model: __Kia__    Year: _2011_    License No.: _6RMM094_    State: _CA_
Financed By: _____    Address: _____    Phone: _____
Make: _____    Model: _____    Year: _____    License No.: _____    State: _____
Financed By: _____    Address: _____    Phone: _____

## Employment

Employer: __United Airlines_____    Phone: _310-431-2807_
Address: _8 World Way_____    City _Los Angeles_    State/ZIP: _CA 90045_
Position: _Flight Attendant_____    Gross Monthly Salary: $ _4,873.00_
Immediate Supervisor: _Brian Gaughan_____    Length of Employment: Yrs. _19_ Mos. ____

If not employed, please provide source and amount of means of financial support:

_____    _____
_____    _____

## Financial

Name of Bank: __Chase Bank__    City: __Huntington Bch__    Acct. No.: _351897860_
☒ Checking  ☐ Savings  ☐ Loan
Name of Bank: _____    City: _____    Acct. No.: _____
☐ Checking  ☐ Savings  ☐ Loan
Credit Card: _____    Acct. No.: _____    How Long: _____
Credit Card: _____    Acct. No.: _____    How Long: _____
Credit Card: _____    Acct. No.: _____    How Long: _____
Net Worth (from back page): __$ 471,600__

## References

Business:  Name: _QIP Management_____    City: _Newport Beach_    Phone: _949-677-6666_
           Name: _M Ahsan Shahid_____    City: _Orange_    Phone: _714-921-9550_
Personal:  Name: _Ron Pierpont_____    City: _Orange_    Phone: _909-202-3145_
           Name: _Justin Barclay_____    City: _Rialto_    Phone: _909-631-6668_



Copyright © 2017. WMA.

# APPLICATION FOR RESIDENCY
Page 3

## Emergency

Person(s) to notify in case of an emergency (other than co-resident):

Name: Steve Gallian          Relationship: Son
Address: 821 W. 16th Street          City: Costa Mesa
State/ZIP: CA          Phone Number: 949-677-7674

## Approved Animals

If you have dogs and/or cats, please provide the following information:

| Name | Age | Type | Color/Description | Height | Weight |
|------|-----|------|-------------------|--------|--------|
| Ammie | 2 | Terrier | White | 7" | |
| Jetta | 14 | Beagle | Tri-Color | 12" | |

## Home or Recreational Vehicle to Occupy Homesite

Make/Model: _____ Net Size: Length: _____ Width: _____ Height: _____

Year: _____ Breaker Size: _____ amps.    License or Decal No.: _____

Serial No.: _____ Value: _____

Financed by: _____

Current Location: _____

Legal Owner Name/Address: _____

Registered Owner Name/Address: _____

Junior Lienholder Name/Address (if any): _____

The following paragraph should be completed by management and initialed by the prospective resident in the event the park has established minimum age requirements. If there are no age requirements for occupancy, the paragraph should be crossed out.

The undersigned understands and acknowledges that this Park is a "housing for older persons" park with a minimum age requirement of ___55___ years of age or older for at least one resident and a minimum age requirement of ___18___ years of age or older for all other residents. The undersigned hereby represents that the person(s) making application to reside in the park meet the age requirement. JSC, LLC

The undersigned requests the management to check the above credit references and representations. The undersigned acknowledges that in the event a rental agreement is executed by both the management and the undersigned, it is subject to approval by the management of the undersigned's mobilehome or recreational vehicle as provided in the Rental Agreement.

The undersigned represents and warrants that the above information is true and correct and has been made for the purpose of informing the management of the park. The management has permission to verify any and all information offered on this application. In the event of any misrepresentation by applicant, management will have grounds to cancel any agreement entered in reliance upon the misrepresentation.

Copyright © 2017. WMA.

# CONSENT TO OBTAIN CONSUMER CREDIT REPORT



**Western Manufactured Housing Communities Association**

The undersigned hereby authorizes _____Rancho Del Rey Mobile Home Estates_____ to obtain a credit report
<span style="font-size:smaller">(Name of park)</span>
based upon the information provided in the undersigned's *Application for Tenancy*, and to share any necessary personal information from the undersigned's application documents with any credit reporting agency or their affiliates.

SO AGREED:

Dated: _____11/18/18_____

J-Sandcastle Co., LLC
Jamie Gallian, Its Manager          *Jamie L Gallian*
                                    (Applicant)

Dated: _____          _____
                                    (Applicant)

Dated: _____          _____
                                    (Applicant)

Copyright © 2014. WMA.



Printed Using formsRus.com On-Line Forms Software 1/14

211

# PRIVACY STATEMENT FORM



**Western Manufactured Housing Communities Association**

At

_____
Rancho Del Rey Mobile Home Estates
(Name of Community)

we are committed to safeguarding all nonpublic personal information that we may collect during the application process or at any time during your tenancy. We use this information initially for the sole purpose of evaluating your application for residency. Occasionally we use nonpublic personal information in order to collect a debt, for example, when a resident fails to pay the rent.

We collect nonpublic personal information about you from the following sources:

Information we receive directly from you, on forms, and in other communications to or with us, whether in writing, in person, by telephone or any other means.

Information we receive from other sources such as current and former landlords, current employers credit reporting agencies and resident screening services.

The community values your privacy and does not disclose nonpublic personal information to anyone, except as permitted or required by law, or as reasonably necessary in order to establish your identity when communicating with others as discussed above.

We restrict access to nonpublic personal information about you to only those persons who need to know that information in order to perform their job duties. Further, we maintain physical, electronic and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

The undersigned Resident, or prospective Resident, hereby acknowledges receipt of a copy of this notice.

*Jamie L Gallian*

DATED: _____11/18/18_____        J-Sandcastle Co., LLC_____
                                     Jamie L. Gallian, Its MEMEBER

DATED: _____        _____

Copyright © 2014. WMA.




Printed Using formsRus.com On-Line Forms Software 1/14

212

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH  45999-0023

Date of this notice:  11-07-2018

Employer Identification Number:
83-2453659

Form:  SS-4

Number of this notice:  CP 575 G

J SANDCASTLE CO LLC
JAMIE LYNN GALLIAN SOLE MBR
5782 PINON DR
HUNTINGTN BCH, CA  92649

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 83-2453659.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records.  **This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you.**  You
  may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is JSAN.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

213

**United Airlines Inc.**
16th Floor - HSCPZ
609 Main Street
Houston, TX 77002
Ph: 877/825-3729

| Pay Group: | SMF-Semimonthly |
| Flt Attendants | |
| Pay Begin Date: | 10/01/2018 |
| Pay End Date: | 10/30/2018 |

**UNITED**

Thanks for all you do for United !

| Advice #: | 000000030559123 |
| Advice Date: | 11/16/2018 |

| | | |
|---|---|---|
| | | |

Jamie Lynn Gallian

| Employee ID: | 270556 |
| Department: | 7606-INFLT ASSIGNMENT-LAX |
| Location: | Los Angeles, California |
| Job Title: | Flight Attendant - Domestic |

| TAX DATA: | Federal | CA State |
|---|---|---|
| Marital Status: | Single | Married |
| Allowances: | 0 | 0 |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| Description | Rate | Hours WKD | Oth Hours | Earnings | Hours (YTD) | Earnings (YTD) |
|---|---|---|---|---|---|---|
| Flight Advance | | | | -3,205.65 | | 0.01 |
| Regular Pay | | | | 791.70 | | 791.70 |
| Per Diem Pay Taxable | | | | 47.48 | | 182.31 |
| Flight Advance Recovery | | | | 2,366.47 | | 2,366.47 |
| Quarterly Operations Ince | | | | 0.00 | | 450.00 |
| Off-Set | | | | 0.00 | | 0.00 |
| Imputed Income - Life | | | | 0.00 | | 0.40 |
| Per Diem Pay Non Taxable | | | | 0.00 | | 2,279.47 |
| Profit Sharing | | | | 0.00 | | 981.68 |
| Regular Pay | | | | 0.00 | | 32,432.93 |
| Sick Pay | | | | 0.00 | 36.00 | 2,297.60 |
| Vacation | | | | 0.00 | 67.02 | 4,238.34 |
| Future Vacation - FLT BIO | | | | 0.00 | 13.00 | 822.12 |
| **TOTAL:** | | **0.00** | **0.00** | **0.00** | **116.02** | **46,842.63** |

* Denotes Excluded From Earnings Total

### TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholding | 0.00 | 6,255.52 |
| Fed MED/EE | 0.00 | 628.30 |
| Fed OASDI/EE | 0.00 | 2,666.54 |
| CA Withholding | 0.00 | 1,177.27 |
| CA OASDI/EE | 0.00 | 433.31 |
| | | |
| **TOTAL:** | **0.00** | **11,180.94** |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Dental - Pre Tax | 0.00 | 115.80 |
| Medical - Pre Tax | 0.00 | 1,000.93 |
| Vision Care Pre Tax | 0.00 | 120.87 |
| 401(k) Deferral | 0.00 | 314.30 |
| **TOTAL:** | **0.00** | **1,551.90** |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| AFA Dues | 0.00 | 450.00 |
| GUL - Dependent Post Tax | 0.00 | 83.58 |
| GUL - Employee Post Tax | 0.00 | 1,183.25 |
| 401(k) Loan 1 | 0.00 | 7,853.36 |
| 401(k) Loan 2 | 0.00 | 3,232.43 |
| | 0.00 | 3,174.00 |
| | 0.00 | 18.00 |
| | 0.00 | -399.82 |
| **TOTAL:** | **0.00** | **15,594.80** |

### EMPLOYER PAID BENEFITS

| Description | Current | YTD |
|---|---|---|
| | | |
| **TOTAL:** | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| YTD | 46,842.63 | 43,016.95 | 11,180.94 | 17,146.70 | 18,514.99 |

### NET PAY DISTRIBUTION

| Payment Type | Account Type | Account Number | Amount |
|---|---|---|---|
| | | | |
| **TOTAL:** | | | **0.00** |

NON-NEGOTIABLE

214

**United Airlines Inc.**
16th Floor - HSCPZ
609 Main Street
Houston, TX 77002
Ph: 877/825-3729

| Pay Group: | SMF-Semimonthly Flt Attendants |
|---|---|
| Pay Begin Date: | 10/01/2018 |
| Pay End Date: | 10/15/2018 |

**UNITED**

Thanks for all you do for United !

| Advice #: | 000000013858637 |
|---|---|
| Advice Date: | 11/01/2018 |

**Jamie Lynn Gallian**

| Employee ID: | 270556 |
|---|---|
| Department: | 7606-INFLT ASSIGNMENT-LAX |
| Location: | Los Angeles, California |
| Job Title: | Flight Attendant - Domestic |

| TAX DATA: | Federal | CA State |
|---|---|---|
| Marital Status: | Single | Married |
| Allowances: | 0 | 0 |
| Addl. Pct: | 0 | |
| Addl. Amt: | 0 | |

## HOURS AND EARNINGS

| Description | Rate | Hours WKD | Oth Hours | Earnings | Hours (YTD) | Earnings (YTD) |
|---|---|---|---|---|---|---|
| Flight Advance | | | | 3,205.65 | | 3,205.66 |
| Quarterly Operations Ince | | | | 0.00 | | 450.00 |
| Off-Set | | | | 0.00 | | 0.00 |
| Flight Advance Recovery | | | | 0.00 | | 0.40 |
| * Imputed Income - Life | | | | 0.00 | | 2,270.47 |
| Per Diem Pay Non Taxable | | | | 0.00 | | 134.83 |
| Per Diem Pay Taxable | | | | 0.00 | | 981.68 |
| Profit Sharing | | | | 0.00 | | 32,432.93 |
| Regular Pay | | | | 0.00 | 36.00 | 2,297.60 |
| Sick Pay | | | | 0.00 | 67.02 | 4,238.34 |
| Vacation | | | | 0.00 | 13.00 | 822.12 |
| Future Vacation - FLT BID | | | | 0.00 | | |
| **TOTAL:** | | **0.00** | **0.00** | **3,205.65** | **116.02** | **46,842.63** |

* Denotes Excluded From Earnings Total

## TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholding | 491.17 | 6,255.52 |
| Fed MED/EE | 45.76 | 628.30 |
| Fed OASDI/EE | 195.66 | 2,686.54 |
| CA Withholding | 96.94 | 1,177.27 |
| CA OASDI/EE | 31.56 | 433.31 |
| **TOTAL:** | **861.09** | **11,180.94** |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Dental - Pre Tax | 4.64 | 115.80 |
| Medical - Pre Tax | 40.29 | 1,000.93 |
| Vision Care Pre Tax | 4.95 | 120.87 |
| 401(k) Deferral | 0.00 | 314.30 |
| **TOTAL:** | **49.88** | **1,551.90** |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| 401(k) Loan 1 | 489.42 | 7,853.36 |
| 401(k) Loan 2 | 199.14 | 3,232.43 |
| AFA Dues | 0.00 | 450.00 |
| GUL - Dependent Post Tax | 0.00 | 83.58 |
| GUL - Employee Post Tax | 0.00 | 1,183.25 |
| | 0.00 | 3,174.00 |
| | 0.00 | 18.00 |
| | 0.00 | -399.82 |
| **TOTAL:** | **688.56** | **15,594.80** |

## EMPLOYER PAID BENEFITS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | 3,205.65 | 3,155.77 | 861.09 | 738.44 | 1,606.12 |
| YTD | 46,842.63 | 43,016.95 | 11,180.94 | 17,146.70 | 18,514.99 |

## NET PAY DISTRIBUTION

| Payment Type | Account Type | Account Number | Deposit Amount |
|---|---|---|---|
| Advice #000000013858637 | Checking | xxxx6018 | $1,606.12 |
| **TOTAL:** | | | **$1,606.12** |

## NON-NEGOTIABLE

215

**United Airlines Inc.**
16th Floor - HSCPZ
609 Main Street
Houston, TX 77002
Ph: 877/825-3729

| Pay Group: | SMF-Semimonthly Flt |
|---|---|
| | Attendants |
| Pay Begin Date: | 08/31/2018 |
| Pay End Date: | 09/30/2018 |

**UNITED**

Thanks for all you do for United !

| | Advice #: | 000000013660933 |
|---|---|---|
| | Advice Date: | 10/17/2018 |

**Jamie Lynn Gallian**

| Employee ID: | 270556 |
|---|---|
| Department: | 7606-INFLT ASSIGNMENT-LAX |
| Location: | Los Angeles, California |
| Job Title: | Flight Attendant - Domestic |

| TAX DATA: | Federal | CA State |
|---|---|---|
| Marital Status: | Single | Married |
| Allowances: | 0 | 0 |
| Addl. Pct: | 0 | |
| Addl. Amt: | 0 | |

## HOURS AND EARNINGS

| Description | Rate | Hours WKD | Oth Hours | Earnings | Hours (YTD) | Earnings (YTD) |
|---|---|---|---|---|---|---|
| Quarterly Operations Ince | | | | 25.00 | | 450.00 |
| Off-Set | | | | 0.00 | | 0.00 |
| Flight Advance | | | | 0.00 | | 3,205.66 |
| Flight Advance Recovery | | | | 0.00 | | 0.00 |
| * Imputed Income - Life | | | | 0.00 | | 0.40 |
| Per Diem Pay Non Taxable | | | | 0.00 | | 1,939.76 |
| Per Diem Pay Taxable | | | | 0.00 | | 134.83 |
| Profit Sharing | | | | 0.00 | | 981.68 |
| Regular Pay | | | | 0.00 | | 29,230.34 |
| Sick Pay | | | | 0.00 | 32.00 | 2,039.60 |
| Vacation | | | | 0.00 | 67.02 | 4,238.34 |
| Future Vacation - FLT BID | | | | 0.00 | 13.00 | 822.12 |
| **TOTAL:** | | **0.00** | **0.00** | **25.00** | **112.02** | **43,042.33** |

\* Denotes Excluded From Earnings Total

### TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholding | 5.50 | 5,759.26 |
| Fed MED/EE | 0.36 | 579.57 |
| Fed OASDI/EE | 1.55 | 2,478.17 |
| CA Withholding | 2.56 | 1,080.33 |
| CA OASDI/EE | 0.25 | 399.70 |
| **TOTAL:** | **10.22** | **10,297.03** |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Dental - Pre Tax | 0.00 | 106.52 |
| Medical - Pre Tax | 0.00 | 920.35 |
| Vision Care Pre Tax | 0.00 | 110.97 |
| 401(k) Deferral | 0.00 | 314.30 |
| **TOTAL:** | **0.00** | **1,452.14** |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| GUL - Dependent Post Tax | 0.00 | 77.61 |
| GUL - Employee Post Tax | 0.00 | 1,084.83 |
| 401(k) Loan 1 | 0.00 | 6,996.38 |
| 401(k) Loan 2 | 0.00 | 3,033.29 |
| AFA Dues | 0.00 | 400.00 |
| | 0.00 | 3,174.00 |
| | 0.00 | 18.00 |
| | 0.00 | -399.82 |
| **TOTAL:** | **0.00** | **14,384.29** |

### EMPLOYER PAID BENEFITS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | 25.00 | 25.00 | 10.22 | 0.00 | 14.78 |
| YTD | 43,042.33 | 39,656.12 | 10,297.03 | 15,836.43 | 16,908.87 |

### NET PAY DISTRIBUTION

| Payment Type | Account Type | Account Number | Deposit Amount |
|---|---|---|---|
| Advice #000000013660933 | Checking | xxxx6018 | $14.78 |
| **TOTAL:** | | | **$14.78** |

## NON-NEGOTIABLE

CJC 1013582

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701
☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North - 1275 N. Berkeley Ave., Fullerton, CA 92838-0500
☐ West - 8141 13th Street, Westminster, CA 92683

FOR COURT USE ONLY

PLAINTIFF:

DEFENDANT:

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**OCT 1 8 2018**

DAVID H. YAMASAKI, Clerk of the Court

STIPULATION FOR ENTRY OF JUDGMENT - UNLAWFUL DETAINER
Limited Civil

CASE NUMBER:

BY: _____, DEPUTY

IT IS STIPULATED by and between the plaintiff(s):

282111107 NEW 01/08 8810004306

---

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK      **CASHIER'S CHECK**      HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CHASE** ⬡

1085733953    91-2
              1221

Date   11/17/2018    Void after 7 years

**Remitter:** SATISFACTION CJC-1013582/J-SANDCASTLE CO, LLC

**Pay To The Order Of:** RDR MOBILE HOME ESTATES
16222 WARMINGTON SP-376 HUNTINGTON BEACH

**Pay:** EIGHT THOUSAND SEVEN HUNDRED FORTY THREE DOLLARS AND 07 CENT    $** 8,743.07 **

**Drawer: JPMORGAN CHASE BANK, N.A.**

_Sol Gindi_

Sol Gindi, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Do not write outside this box

Memo: _____
Note: For information only. Comment has no effect on bank's payment.

Security
Features
Details on
Back.

⑈1085733953⑈ ⑆122100024⑆ 806002234⑈

---

I/we the defendant(s), understand that I/we have the right to: (1) have an attorney present; (2) notice and/or hearing of any default of terms of the stipulation; (3) I/we give up these rights.

Date:_____
        PLAINTIFF/ATTORNEY                    PLAINTIFF/ATTORNEY

Date:_____
        DEFENDANT/ATTORNEY                    DEFENDANT/ATTORNEY

**JUDGMENT IS HEREBY ORDERED ON ALL TERMS OF THE FOREGOING STIPULATION.**

Date:_____
                                        Judge/Commissioner of the Superior Court*
                                        (*sign only if judgment is to be entered immediately)

STIPULATION FOR ENTRY OF JUDGMENT- UNLAWFUL DETAINER

1081 (R 04/15)

217



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          **Customer Copy**
### CASHIER'S CHECK
1085733953

11/17/2018
Void after 7 years

Remitter:   SATISFACTION CJC-1013582/J-SANDCASTLE CO, LLC

$** 8,743.07 **

Pay To The     RDR MOBILE HOME ESTATES
Order Of:      16222 WARMINGTON SP-376 HUNTINGTON BEACH

Memo:---------------------------------------------------------          Drawer:  **JPMORGAN CHASE BANK, N.A.**
Note: For information only. Comment has no effect on bank's payment.    **NON NEGOTIABLE**

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   **CASHIER'S CHECK**   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK



1085733953   91-2
                                                          ----
Date    11/17/2018   Void after 7 years    1221

Remitter:   SATISFACTION CJC-1013582/J-SANDCASTLE CO, LLC

Pay To The   RDR MOBILE HOME ESTATES
Order Of:    16222 WARMINGTON SP-376 HUNTINGTON BEACH

Pay:   EIGHT THOUSAND SEVEN HUNDRED FORTY THREE DOLLARS AND 07 CENT    $** 8,743.07 **

Memo:---------------------------------------------------          Drawer:  **JPMORGAN CHASE BANK, N.A.**

Do not write outside this box                              Sol Gindi

Memo:-------------------------------------------------          Sol Gindi, Chief Administrative Officer
Note: For information only. Comment has no effect on bank's payment.    JPMorgan Chase Bank, N.A.
                                                          Phoenix, AZ

⑈1085733953⑈ ⑆1221000241⑆ 806002234⑈

218



# TAX CLEARANCE CERTIFICATE

☒ **Mobile Home**                    ☐ **Floating Home**

### COUNTY OF ORANGE

| SERIAL NUMBER/HULL NUMBER | DECAL NUMBER/CF NUMBER |
|---|---|
| AC7V710394GB/ AC7V710394GA | LBM1081 |
| **LOCATION OF HOME** | **ASSESSOR'S PARCEL NUMBER** |
| 16222 MONTEREY LN 376 HUNTINGTON BEACH | 891-569-62 |
| **CURRENT REGISTERED OWNER** | **APPLICANT** |
| RYAN, LISA T<br>16222 MONTEREY LN<br>SPC 376<br>HUNTINGTON BEACH<br>CA 92649 | J-SANDCASTLE CO, LLC<br>16222 MONTEREY LN #376<br>HUNTINGTON BEACH<br>CA 92649 |

I hereby certify that the following has been paid:

☐ Delinquent license fees

☒ Property taxes applicable to the home identified above through the fiscal year 2018-2019

☒ A security deposit for payment of the property taxes for the fiscal year 2019-2020

☒ No taxes due or payable at this time.

There may be a supplemental assessment not covered by this "Tax Clearance Certificate" which may create an additional bill.

### THIS CERTIFICATE IS VOID ON AND AFTER JANUARY 15, 2019.

Executed on November 16, 2018 at Santa Ana.
Treasurer-Tax Collector for Orange County, State of California.

Issued on November 16, 2018 _____
                                            (Signature)

§§2189.8, 5832 R & T Code                                TDL 10-01 (7-87)

219

:tor

:nta Ana
iday
:3411

**RTY TAX**

30, 2019

| TAX COLLECTOR (TC) REFERENCE NO. | STATEMENT AS OF | PAGE |
| --- | --- | --- |
| 0813460 | 11/16/2018 | |

## TAX BILL SUMMARY

UNPAID ASSESSMENT SUMMARY

ANY DELINQUENT ASSESSMENTS ARE SUBJECT TO IMMEDIATE
ENFORCEMENT ACTIONS. SEE PARAGRAPH 12 ON THE BACK
FOR MORE INFORMATION.

TOTAL AMOUNT DUE BY 11/30/18:        $1,634.54

---

Reg#9          11/16/2018       Trans #52384
cdascenzo      12:20 PM         Location: 100
               TTC G-58

## RECEIPT

OFFICE OF THE TREASURER-TAX COLLECTOR
SHARI L. FREIDENRICH, CPA
625 N.ROSS STREET, BLDG 11, SANTA ANA
(714) 834-3411  ttcinfo@ttc.ocgov.com

Daily Bank Deposit ID 11-16-18

APN \ TDN \ REF:                    0813460.
Property Address: 16222 MONTEREY 376 HUNTINGTON BEACH
Tax Year:
Roll Type:                          03 - UNS
Installment #:                      1
Unsecured Tax                       $1,634.54
----------------------------------------------
              SUB TOTAL:            $1,634.54
              TOTAL DUE:            $1,634.54
CHECK                               $1,634.54
Account Number XXXXXXXXXXXX6018
Check # 2670
Routing Number 271081528

PAY ONLINE WITH YOUR BANK ACCOUNT
AT NO COST AT ocgov.com/octaxbill
PRINT OR GET YOUR RECEIPT BY EMAIL.
THANK YOU

---

PERTY AFTER JANUARY 1 DOES NOT RELIEVE ASSESSEE FROM PAYING THIS BILL

ERSHIP OR
ED TO THE

14) 834-2930
14) 834-2772
14) 834-2930

n/assessor

**IMPORTANT INFORMATION**

The owner on the Lien Date is responsible for payment of this bill in full. The sale, closure, removal or other disposal of the assessed property after January 1, 2018 does not relieve the assessee of responsibility for the taxes due. The bill will not be prorated for partial ownership.

A Tax Lien will be recorded against the owner, and a recording fee will be charged, if payment is delinquent. A TAX LIEN MAY AFFECT YOUR CREDIT RATING. A 10% penalty and a fee of $75 per assessment, plus additional penalties of 1.5% per month, will be added.

A Tax Lien may be enforced by seizure and/or sale of personal property including bank accounts, income tax refunds or other interests. Registration holds at the DMV will prevent vessel registration until a delinquency is cleared.

| MATION | ASSESSED VALUES (A/V) | TRA/YEAR | TAX TYPE & RATE | AMOUNT |
| --- | --- | --- | --- | --- |

MENTS:

| | BASE TAX AMOUNT | INTEREST & PENALTIES | FEES | AMOUNT PAID | BALANCE DUE |
| --- | --- | --- | --- | --- | --- |
| #: 901018 | 1,300.90 | 250.64 | 83.00 | | 1,634.54 |
| IVE TAX YEAR: 2017 | | | | | |
| HUNTINGTON BEACH | | | | | |
| ER | | | | | |
| : 18-00427461 | | | | | |
| | | | | | |
| TOTALS: | 1,300.90 | 250.64 | 83.00 | | 1,634.54 |

220



**OFFICE OF THE
TREASURER-TAX COLLECTOR**

P.O. BOX 1438
SANTA ANA, CALIFORNIA 92702-1438

(714) 834-3411

ocgov.com/octaxbill
ttcinfo@ttc.ocgov.com



**SHARI L. FREIDENRICH, CPA**
TREASURER-TAX COLLECTOR

# IMPORTANT INFORMATION ABOUT
# MOBILE HOME TAX CLEARANCE CERTIFICATES

- Tax Clearance Certificates are issued to transfer ownership of a mobile home in order to ensure all property taxes are collected. Mobile home title issuance is administered by the California Department of Housing and Community Development (HCD). They cannot transfer title of a used mobile home subject to local property taxes without a Tax Clearance Certificate from the Treasurer-Tax Collector of the County in which the mobile home is located.

- A Tax Clearance Certificate is issued once all property taxes have been collected and may include an estimate of the current year taxes if the current year taxes have not yet been enrolled. <u>All tax liabilities must be paid prior to receiving a Tax Clearance Certificate.</u>

- Tax Clearance Certificates are issued with an expiration date of 60 days from the issue date. There is no charge for the initial Tax Clearance Certificate. However, if a certificate expires prior to completing a transfer of title, a new certificate must be requested at a cost of $10.00.

- The owner of record as of the lien date of January 1 each year is liable for all property taxes on the mobile home. The owner selling the mobile home should always request a Tax Clearance Certificate to ensure the property tax liability is transferred accordingly.

- In order to complete the title change, take the Tax Clearance Certificate to HCD at the following location:

**Housing and Community Development (HCD)
3737 Main Street, Suite 400
Riverside, CA 92501-3337**

**Telephone: (800) 952-8356
Website: <u>hcd.ca.gov</u>**

- If a Tax Clearance Certificate is not issued at the time of transfer, the mobile home will not be transferred to the new owner's name.

*Mission: Ensure safe and timely receipt, deposit, collection and investment of public funds.*

221



TCCAS571 ESTIMATED TAX STUB
2018 AT 12:33:41 BY CHRISTINA DASCENZO

1-569-62.00     TOTAL AMT DUE      $1,224.00

/15/19

Pd Ck #2671

Reg#9         11/16/2018       Trans #52385
cdascenzo     12:21 PM        Location: 100
              TTC 8-58

## RECEIPT

OFFICE OF THE TREASURER-TAX COLLECTOR
SHARI L. FREIDENRICH, CPA
625 N.ROSS STREET, BLDG 11, SANTA ANA
(714) 834-3411  ttcinfo@ttc.ocgov.com

Daily Bank Deposit ID  11-16-18

61519000012240000000000000000000000000000000000009

| | | |
|---|---|---|
| APN \ TDN \ REF: | 89156962.0000 | |
| Property Address: | | |
| Tax Year: | 2019 | |
| Roll Type: | 01 - SEC | |
| Installment #: | 03 | |
| Secured Tax | $1,224.00 | |

TOTAL NET TAXABLE VALUE:      109,685      1,199.32

| Installment DUE 11/1/19 | 2nd Installment DUE 2/1/19 | TO PAY BOTH INSTALLMENTS BY 12/10/18 |
|---|---|---|
| $599.66 | + $599.66 = | $1,199.32 |

| APN \ TDN \ REF: | 89156962.00 |
|---|---|
| Property Address: 16222 MONTEREY LN 376 HUNTINGTON BEACH | |
| Tax Year: | 2018 |
| Roll Type: | 01 - SEC |
| Installment #: | 1 |
| Secured Tax | $599.66 |

VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS

| SERVICE AGENCY | RATE | VALUE | TAXES |
|---|---|---|---|
| BASIC LEVY RATE | 1.00000 | 109,685 | 1,096.84 |
| COAST COMM COLLEGE DIST | .03052 | 109,685 | 33.47 |
| OCEAN VIEW SD 2016, SR 2017A | .02404 | 109,685 | 26.37 |
| HUNTINGTON BCH UNION HS | .02388 | 109,685 | 26.19 |
| HUNTINGTON BEACH EMPLOYEE RETIREMEN | .01500 | 109,685 | 16.45 |
| TOTAL CHARGED | 1.09344 | | 1,199.32 |

| APN \ TDN \ REF: | 89156962.00 |
|---|---|
| Property Address: 16222 MONTEREY LN 376 HUNTINGTON BEACH | |
| Tax Year: | 2018 |
| Roll Type: | 01 - SEC |
| Installment #: | 2 |
| Secured Tax | $599.66 |

------------------------------------------

| SUB TOTAL: | $2,423.32 |
|---|---|
| TOTAL DUE: | $2,423.32 |
| CHECK | $2,423.32 |

Account Number XXXXXXXXXXXX6018
Check # 2671
Routing Number 271081528

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL
FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

PAY ONLINE WITH YOUR BANK ACCOUNT
AT NO COST AT ocgov.com/octaxbill
PRINT OR GET YOUR RECEIPT BY EMAIL.
THANK YOU

222

## Rancho Del Rey

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

11/20/2018

**TO:**
Gallian, Jamie
5782 Pinon Drive
Huntington Beach, CA 92649



223

# PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER



**Western**
**Manufactured Housing Communities**
**Association**

### Rancho Del Rey Mobile Home Estates
(Park Name)

TO: Prospective Homeowner: _____ Jamie Gallian _____
(Prospective Homeowner Name)

On 11/19/2018 _____, management received all of the information necessary to determine if you will be
(Date)

acceptable as a homeowner in the park, located at 16222 Monterey Ln. SPC 376 Huntington Beach, CA 92649 .
(space and address)

This is to advise prospective homeowner that the prospective homeowner is:

_____**APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code and executes a rental agreement with management.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

__X__**DISAPPROVED**, because:

_____You have not demonstrated that you have the financial ability to pay the rent and charges of the park.

_____Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.

_____Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.

__X__This disapproval includes the following reason(s):

__X__Consumer Credit Report (check appropriate box below):

__X__Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

_____A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.

Copyright © 2014. WMA.



Printed Using formsRus.com On-Line Forms Software

__X__ Your credit score from the consumer reporting agency named in the paragraph below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: 523    Date: 11/20/2018_____ Scores range from a low of 500___ to a high of 850___

Key factors that adversely affected your credit score:

1.   Delinquency_____

2.   _____

3.   _____

4.   _____

5. Number of recent inquiries on credit report. (Check if applicable___ ).

If you have any questions regarding your credit score, you should contact the agency named in the paragraph below.

The consumer reporting agency that provided the report and/or credit score (if applicable) that influenced our decision in whole or in part is listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

**OCMHSC/AAOC Consumer Credit Relations**
**525 Cabrillo Park Drive Suite 125**
**Santa Ana, CA 92701-5076**
**Fax 714.245.9505**

You may have additional rights under the credit reporting or consumer protection laws of California. For further information, you can contact the California Department of Consumer Affairs, or the California State Attorney General's office.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, gender, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Dated: 11/20/2018_____          _Wilda maskulinski_____
                                                          (Park Management)
                                                     Wilda Maskulinski



## Notice of Denial To Rent, or Other Adverse Action

On _____10/20/2018_____, Owner/Agent for Owner, of the property located at/known as

_____Rancho Del Rey Mobile Home Estates_____ herein referred to as "We",

received an Application to Rent from <u>Jamie Gallian</u> "Applicant".

We regret to inform you that your application has been:
☑ Denied
☐ Approved with the following conditions:

This letter will serve to inform you of your rights pursuant to the Fair Credit Reporting Act, (FCRA), 15 U.S.C. Section 1861; et sec., as amended by the Consumer Credit Reporting Reform Act of 1996 (Public law 104-208, the Omnibus Consolidated Appropriations Act for the Fiscal Year 1997, Title II, Subtitle D, Chapter 1).

☑ We have made our decision regarding your application based on the following:

<u>Credit Score below minimum</u>

Information provided by data furnishers and prepared by our credit reporting agency, Orange County Multi-Housing Service Corporation a wholly owned subsidiary of the Apartment Association of Orange County (OCMHSC/AAOC).

If you feel that the information reported to us was in error, you may contact OCMHSC/AAOC by mail or by fax.

**OCMHSC/AAOC Consumer Credit Relations**
**525 Cabrillo Park Drive, Suite 125, Santa Ana, CA 92701-5076**
**Fax: 714.245.9505**

You have a right under the FCRA to obtain a copy of your consumer report, dispute its accuracy with the appropriate agency, and provide a consumer statement describing your position. You have a right to obtain a copy of your report within 60 days of your application. You have a right to put into your report a consumer statement of up to 100 words explaining your position on the item under dispute. If your information was obtained more than 220 days from the original date of the report, you will need to indicate that to the operator. They will be able to refer you to TransUnion, the national repository responsible for the information on your report. If your credit score from the consumer reporting agency was a factor that affected our decision, your credit score is indicated below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes. Key factors that may or may not adversely affect your credit score are: late payments, excessive debt, insufficient income, incomplete credit profile.

Applicant Credit Score:     523     (Scores range from 300-850)

OCMHSC's/AAOC's office hours for consumer relations are Monday â€" Friday, 8 am â€" 5 pm Pacific Time. Please be prepared to provide your Social Security Number and to answer personal questions regarding your address, employment and credit information. When you contact OCMHSC/AAOC, know that you may also request a credit score along with a disclosure of your credit or public record file. When responding, include a clear copy of your state issued photo ID. Pursuant to Section 615 of the FCRA, we hereby notify you that OCMHSC/AAOC only provided information regarding your credit, criminal and/or rental history. OCMHSC/AAOC took no part in making the decision to reject your rental application, nor can OCMHSC/AAOC explain why the decision was made. Let OCMHSC/ AAOC know if you feel that you have been a victim of fraud or a related crime, including identity theft. In addition to informing the credit reporting agencies, you may also contact the Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20006 or visit their website at www.consumerfinance.gov/learnmore.



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
     - Please cash/deposit this Cashier's Check as soon as possible to
       prevent this from occurring
     - In most cases, the funds will be considered "abandoned"
       before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
     - Stop Payment can only be placed if the Cashier's Check
       is lost, stolen, or destroyed
     - We may not re-issue or refund the funds after the stop payment has
       been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item


FOR YOUR PROTECTION SAVE THIS COPY    **Customer Copy**
**CASHIER'S CHECK**

1085733991

11/26/2018
Void after 7 years

**Remitter:**   J-SANDCASTLE CO, LLC

$** 2,187.55 **

**Pay To The Order Of:**   RDR MHE 11/16/2018-12/31/2018
16022 MONTEREY LN SP 376

Memo:—————————————————————

Note: For Information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

66

218
227

| TO (Name and Address): | LEVYING OFFICER (Name and Address): |
|---|---|
| Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | **Orange County Sheriff's Office**<br>**Sheriff's Civil Division**<br>Suite 2<br>**909 N. Main Street**<br>**Santa Ana, CA  92701** |

| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY: | **(714) 569-3700**<br>Fax: (714) 569-2368 |
|---|---|
| **Orange County Superior Court**<br>**700 Civic Center Drive West**<br>**Santa Ana, CA  92701**<br>**Central Justice Center** | **California Relay Service Number**<br>(800) 735-2929 TDD or 711 |

| PLAINTIFF:<br>**Houser Bros Co**<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.<br><br>**30 2018 01013582 CLUDCJC** |
|---|---|

| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br><br>**2018517508** |
|---|---|

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | **16222 Monterey Lane Space 376**<br>**Huntington Beach, CA  92649** |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| **Final notice is hereby given that possession of the property must be turned over to the landlord on or before:** | **Monday, December 03, 2018 6:01 AM** |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment.  If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage.  If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office.  No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



**Sandra Hutchens**
**Sheriff-Coroner**

By: _____

Sheriff's Authorized Agent

CPM Form 8.32
11/30/2009 (Revised)

**Original**

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NO. 170746 | FOR COURT USE ONLY |
|---|---|---|
| NAME: VIVIENNE J ALSTON | | |

FIRM NAME ALSTON ALSTON & DIEBOLD
STREET ADDRESS 27201 PUERTA REAL, STE 300
CITY: MISSION VIEJO   STATE: CA   ZIP CODE 92691
TELEPHONE NO. 714 556 9400   FAX NO. 714 556 9500
E-MAIL ADDRESS valston@aadlawyers.com
ATTORNEY FOR (name): HOUSER BROS. CO.
[ X ] ORIGINAL JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

Pursuant to California Government Code § 68150(d), the Clerk of the Court/mm, Countmmn, certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS
CITY AND ZIP CODE SANTA ANA  CA  92701
BRANCH NAME CENTRAL JUSTICE CENTER

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER |
|---|---|
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

| WRIT OF | [ ] EXECUTION (Money Judgment) | [ X ] Limited Civil Case (including Small Claims) |
|---|---|---|
| | [ X ] POSSESSION OF   [ ] Personal Property | |
| | [ ] SALE   [ X ] Real Property | [ ] Unlimited Civil Case (including Family and Probate) |

1. To the Sheriff or Marshal of the County of: ORANGE COUNTY
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. To any registered process server: You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.340.

3. (Name): HOUSER BROS. CO., a California general partnership dba RANCHO DEL REY MOBILE HOME ESTATES
   is the [ X ] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.

4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   LISA RYAN
   16222 Monterey Lane, Space 376
   Huntington Beach, California 92649

   [ ] Additional judgment debtors on next page

5. Judgment entered on (date):
   10-18-2018

6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ
   a. [ X ] has not been requested.
   b. [ ] has been requested (see next page).

8. [ ] Joint debtor information on next page.

[SEAL]

9. [ X ] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.

10. [ ] This writ is issued on a sister-state judgment.
    For items 11–17, see form MC-012 and form MC-013-INFO

11. Total judgment (as entered or renewed)   $
12. Costs after judgment (CCP 685.090)   $
13. Subtotal (add 11 and 12)   $
14. Credits to principal (after credit to interest)   $
15. Principal remaining due (subtract 14 from 13)   $
16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees)   $
17. Fee for issuance of writ   $25.00
18. Total (add 15, 16, and 17)   $25.00
19. Levying officer:
    a. Add daily interest from date of writ (at the legal rate on 16) (not on GC 6103.5 fees) . . . . . . . . . . . . . . .   $
    b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) . . . . . . . . . . . . .   $
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor in Attachment 20.

David H. Yamasaki, Clerk of the Court
Issued on (date): 11/14/2018   Clerk, by _____ , Deputy

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2018]

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code § 6103.5
www.courts.ca.gov

74

229

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 170746 | FOR COURT USE ONLY |
|---|---|

NAME: VIVIENNE J ALSTON
FIRM NAME: ALSTON ALSTON & DIEBOLD
STREET ADDRESS: 27201 PUERTA REAL, STE 300
CITY: MISSION VIEJO    STATE: CA    ZIP CODE: 92691
TELEPHONE NO.: 714 556 9400    FAX NO.: 714 556 9500
E-MAIL ADDRESS: valston@aadlawyers.com
ATTORNEY FOR (name): HOUSER BROS. CO.

[X] ORIGINAL JUDGMENT CREDITOR    [ ] ASSIGNEE OF RECORD

Pursuant to California Government Code § 68150(I), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA  CA  92701
BRANCH NAME: CENTRAL JUSTICE CENTER

Plaintiff: HOUSER BROS. CO.
Defendant: LISA RYAN

CASE NUMBER: 30 2018 01013582 CLUDCJC

| | | |
|---|---|---|
| [ ] EXECUTION (Money Judgment) | | [X] Limited Civil Case (including Small Claims) |
| WRIT OF [X] POSSESSION OF [ ] Personal Property | | [ ] Unlimited Civil Case (including Family and Probate) |
| [ ] SALE [X] Real Property | | |

1. To the Sheriff or Marshal of the County of: ORANGE COUNTY
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. To any registered process server: You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): HOUSER BROS. CO., a California general partnership dba RANCHO DEL REY MOBILE HOME ESTATES
   is the [X] original judgment creditor [ ] assignee of record  whose address is shown on this form above the court's name.

4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   LISA RYAN
   16222 Monterey Lane, Space 376
   Huntington Beach, California 92649

   [ ] Additional judgment debtors on next page

5. Judgment entered on (date):
   10- 18 -2018 AA

6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ.
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).

8. [ ] Joint debtor information on next page.

[SEAL]

9. [X] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
    For items 11–17, see form MC-012 and form MC-013-INFO
11. Total judgment (as entered or renewed) ........... $
12. Costs after judgment (CCP 685.090) ........... $
13. Subtotal (add 11 and 12) ........... $
14. Credits to principal (after credit to interest) ........... $
15. Principal remaining due (subtract 14 from 13) $
16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) ........... $
17. Fee for issuance of writ ........... $25.00
18. Total (add 15, 16, and 17) ........... $25.00
19. Levying officer:
    a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) ........... $
    b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) ........... $
20. [ ] The amounts called for in items 11–17 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

David H. Yamasaki, Clerk of the Court

Issued on (date): 11/14/2018    Clerk, by _____ , Deputy

L. Cuevas

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2016]

WRIT OF EXECUTION

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER: |
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

21. ☐ Additional judgment debtor *(name, type of legal entity if not a natural person, and last known address):*

22. ☐ Notice of sale has been requested by *(name and address):*

23. ☐ Joint debtor was declared bound by the judgment (CCP 989–994)
   a. *on (date):*
   b. name, type of legal entity if not a natural person, and last known address of joint debtor:

   a. *on (date):*
   b. name, type of legal entity if not a natural person, and last known address of joint debtor:

   c. ☐ Additional costs against certain joint debtors are itemized:  ☐ Below ☐ On Attachment 23c

24. ☒ (Writ of Possession or Writ of Sale) **Judgment** was entered for the following:
   a. ☒ Possession of real property: The complaint was filed on *(date):* 8-21-2018
      *(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*

     (1) ☒ The Prejudgment Claim of Right to Possession was served in compliance with CCP 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.

     (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with CCP 415.46.

     (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) *(See CCP 415.46 and 1174.3(a)(2).)*

     (4) If the unlawful detainer resulted from a foreclosure (item 24a(3)), or if the Prejudgment Claim of Right to Possession was not served in compliance with CCP 415.46 (item 24a(2)), answer the following:

       (a)  The daily rental value on the date the complaint was filed was $36.20

       (b)  The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

   b. ☐ Possession of personal property.
      ☐ If delivery cannot be had, then for the value *(itemize in 24e)* specified in the judgment or supplemental order.
   c. ☐ Sale of personal property.
   d. ☐ Sale of real property.
   e. The property is described: ☒ Below ☐ On Attachment 24e

     16222 Monterey Lane, Space 376, Huntington Beach, California 92649

EJ-130 [Rev. January 1, 2016]          **WRIT OF EXECUTION**          Page 2 of 3

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER: |
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

### NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

EJ-130 [Rev. January 1, 2018]                                **WRIT OF EXECUTION**                                Page 3 of 3

CIV-110

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address)*:<br>Gordon G. May (SBN 167112)<br>GRANT, GENOVESE & BARATTA, LLP<br>2030 Main Street, Suite 1600<br>Irvine, CA 92614<br><br>TELEPHONE NO. (949) 660-1600   FAX NO. *(Optional)* (949) 660-6060<br>E-MAIL ADDRESS *(Optional)*: ggm@ggb-law.com<br>ATTORNEY FOR *(Name)*: Plaintiff BS INVESTORS, LP | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**12/03/2018** at 12:09:00 PM<br>Clerk of the Superior Court<br>By Anh Dang, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

PLAINTIFF/PETITIONER: BS INVESTORS, LP, a California limited partnership

DEFENDANT/RESPONDENT: JAMIE L GALLIAN, an individual

| | |
|---|---|
| **REQUEST FOR DISMISSAL** | **CASE NUMBER:**<br>30-2018-01024401-CU-UD-CJC |

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. **TO THE CLERK: Please dismiss this action as follows:**
   a. (1) ☐ With prejudice  (2) ☒ Without prejudice
   b. (1) ☒ Complaint  (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name)*:                on *(date)*:
   (4) ☐ Cross-complaint filed by *(name)*:                on *(date)*:
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☐ Other *(specify)*:*

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and costs for a party in this case  *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: December 3, 2018

Gordon G. May
_____
(TYPE OR PRINT NAME OF  ☒ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

▶ _____
(SIGNATURE)
Attorney or party without attorney for:

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

☒ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK: Consent to the above dismissal is hereby given** **

Date:

_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

▶ _____
(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

☐ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☒ Dismissal entered as requested on *(date)*: 12/03/2018
5. ☐ Dismissal entered on *(date)*:        as to only *(name)*:
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed ☐ means to return conformed copy

Date: 12/03/2018     Clerk, by _____, Deputy
DAVID H. YAMASAKI, Clerk of the Court        A. DANG

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL**  Legal<br>Solutions⁺<br>ⓒ Plus | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c), Cal. Rules of Court, rule 3 1390 |

233

CIV-110

| PLAINTIFF/PETITIONER. BS INVESTORS, LP, a California limited partnership<br>DEFENDANT/RESPONDENT· JAMIE L  GALLIAN, an individual | CASE NUMBER·<br>30-2018-01024401-CU-UD-CJC |
|---|---|

---

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery  The court may refuse to dismiss the case until the lien is satisfied. (Gov  Code, § 68637 )

---

### Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          ▶          _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                                    (SIGNATURE)

---

234

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4

 I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2030 Main Street, Suite 1600, Irvine CA 92614.

5

6

 On December 3, 2018, I served the foregoing document described as **REQUEST FOR DISMISSAL** on the following person(s) in the manner indicated:

7

Jamie L. Gallian, an individual                              Defendant
5782 Pinon Drive

8

Huntington Beach, CA 92649

9

Telephone No. : (714) 321-3449

10

**[ X ]**   (BY MAIL) I am familiar with the practice of Grant, Genovese & Baratta, LLP for

11

collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that

12

same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was

13

placed for collection and mailing at Grant, Genovese & Baratta, LLP, Irvine, California, following

14

ordinary business practices.

15

 I declare under penalty of perjury under the laws of the State of California that the

16

foregoing is true and correct, and that this declaration was executed on December 3, 2018, at Irvine, California.

17

18

_____

19

Helena Coyle

20

21

22

23

24

25

26

27

28

235

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

MINUTE ORDER

DATE: 12/04/2018                TIME: 01:30:00 PM      DEPT: CX103

JUDICIAL OFFICER PRESIDING: Ronald L. Bauer
CLERK:  Larry S Brown
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2018-01035730-CU-PT-CJC**  CASE INIT.DATE: 12/04/2018
CASE TITLE: **Gallian vs. Bros**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Petitions - Other

---

EVENT ID/DOCUMENT ID: 72940663,107089011
**EVENT TYPE:** Ex Parte
MOVING PARTY: Jamie L Gallian
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other For Temporary Restraining Order,
12/04/2018

---

APPEARANCES
Jamie L Gallian, self represented Petitioner, present.
Vivienne J. Alston from Alston, Alston & Diebold present for Deft. Houser Bros.
Kathryn Curtiss of Houser Bros, present

Plaintiff's Ex Parte Application for (1) Temporary Restraining Order to Prevent Civil Harassment and
Order to Show Cause for Permanent Injunction (2) Acknowledgment of Satisfaction of Judgment
(3) to Determine the Rightful Owner and Possession of Personal Property, the Manufactured Home
located at 16222 Monterey Lane, #376, Huntington Beach, CA 92649

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows: the Ex Parte Application is granted

The Court issues a Temporary Restraining Order against eviction of Plaintiff by Defendant, pending a
hearing on Preliminary Injunction to be held on 01/02/2019 at 9:00 a.m. in Department CX103.

Opposition to be filed by 12/21/2018.

The formal order was signed this date.

Parties waive notice.

DATE: 12/04/2018                    MINUTE ORDER                      Page 1
DEPT: CX103                                                        Calendar No.

236



Jaime Gallian
16222 Monterey In. Space 376
Huntington Beach, CA 92649

SANTA ANA CA 926
12 DEC 2016 PM 3 L

92649-225876

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

## ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO:   1510.

December 10, 2018

## FIVE (5) DAY DEMAND
## FOR SURRENDER OF POSSESSION OF SITE

To:   **Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental Agreement ("Occupants"):**

**NOTICE IS HEREBY GIVEN** that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and surrender possession thereof commonly described as:

Space376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or possession.

238

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018                    By:_____
                                            VIVIENNE J. ALSTON
                                            Authorized Agent for Owner

cc:    Client
       Park Manager

239

1  ELAINE B. ALSTON, Bar No. 134139,
   VIVIENNE J. ALSTON, Bar No. 170746
2  Members of
   **ALSTON, ALSTON & DIEBOLD**
3     Attorneys at Law
   27201 Puerta Real, Suite 300
4  Mission Viejo, California 92691
   (714) 556-9400 – FAX (714) 556-9500
5
   Attorney for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/02/2019** at 08:00:00 AM
Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

7

8               SUPERIOR COURT, STATE OF CALIFORNIA

9                        COUNTY OF ORANGE,

10

11  HOUSER BROS. CO., a California limited          Case No.: 30-2019-01041423-CL-UD-CJC
    partnership dba RANCHO DEL REY MOBILE
    HOME ESTATES
12                                                  COMPLAINT FOR FORCIBLE ENTRY/
                    Plaintiff,                      DETAINER (MOBILEHOME PARK)
13
        vs.                                         [CIVIL CODE §798.75 AND CODE OF
14                                                  CIVIL PROCEDURE §§1159, et seq.]
    JAMIE GALLIAN AND ALL OTHER
15  OCCUPANTS AND PERSONS IN POSSESSION            **DOES NOT EXCEED $10,000.00**
    WITHOUT A SIGNED LEASE AGREEMENT,
16  and DOES 1 to 10, inclusive,

17                  Defendant

18

19  COMES NOW, the Plaintiff herein, and alleges as follows:

20        1.      Plaintiff, HOUSER BROS. CO., a California limited partnership doing business in the

21  County of Orange State of California, under the fictitious name of RANCHO DEL REY MOBILE

22  HOME ESTATES. Plaintiff has filed the statements and published the notices required by §§17900, et

23  seq., of the Business and Professions Code.

24        2.      Defendants, JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS

25  IN POSSESSION WITHOUT A SIGNED LEASE AGREEMENT, are individuals residing in the City

26  of Huntington Beach, County of Orange State of California

27        3.      The true names and capacities of Defendants sued herein as DOES 1 through 10,

28  inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who

                                              1
                    **COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

| TO (Name and Address):<br>Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | LEVYING OFFICER (Name and Address):<br>Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
|---|---|
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br>30 2018 01013582 CLUDCJC |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br>2018517508 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | 16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| Final notice is hereby given that possession of the property must be turned over to the landlord on or before: | Sunday, January 20, 2019 6:01 AM |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



Don Barnes
Sheriff-Coroner

By: _Renee #6446_
Sheriff's Authorized Agent

CPM Form 8.32
11/30/2009 (Revised)

**Original**

241

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov 
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com

Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until
the original Title goes out from our Sacramento District Office.

Sylvia

STATE OF CALIFORNIA - BUSINESS. CONSUMER SERVICES. AND HOUSING                    GAVIN NEWSOM. Governor

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING

**GAVIN NEWSOM, Governor**

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



## Title Search

Date Printed: Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Last Title Date:** 09/10/2014

**Last Reg Card:** Pending Reg Card

**Sale/Transfer Info:** Price $175,000.00 Transferred on 11/01/2018

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649
Situs County: ORANGE

***END OF TITLE SEARCH***

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## REGISTRATION CARD

Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Jan 19, 2019 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649



**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**************************************************
**ATTENTION OWNER:**

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

**INSTRUCTIONS FOR RENEWAL:**

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
**************************************************

## IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 10670236

01192019 - 1

STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
CERTIFICATE OF TITLE

Manufactured Home

Decal:  **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| **Serial Number** | **Label/Insignia Number** | Weight | Length | Width | Issued | |
| AC7V710394GB<br>AC7V710394GA | PFS1130281<br>PFS1130282 | 22,383 | 56' | 15' 2" | Jan 19, 2019 | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

RETURN SERVICE REQUESTED

DEPARTMENT OF HOUSING AND
COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION & TITLING SECTION
P.O. BOX 1828
SACRAMENTO, CA 95812-1828

AJLIIMP  92649

IMPORT.
THE OWNER INFORMATION SHOWN ABOVE MAY N(
DEPARTMENT OF HOUSING AND COMMUNITY DEVEI
CURRENT TITLE STATUS OF THE UNIT MAY BE (

DTN: 10670236

245

**SUM-1**

## SUMMONS
### (CITACION JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**ELECTRONICALLY FILED**
Superior Court of California
County of Orange

**01/02/2019** at 08:00:00 AM

Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS IN POSSESSION
WITHOUT A SIGNED LEASE AGREEMENT, and DOES 1 to 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
HOUSER BROS. CO., a California limited partnership
dba RANCHO DEL REY MOBILE HOME ESTATES

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

**CASE NUMBER:** **(Número del Caso):** 30-2019-01041423-CL-UD-CJC

The name and address of the court is:
(El nombre y dirección de la corte es):
SUPERIOR COURT OF CALIFORNIA
700 CIVIC CENTER DR. WEST

SANTA ANA  CA 92701
CENTAL JUSTICE CENTER

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
VIVIENNE J ALSTON   SBN 170746                    714 556 9400
ALSTON ALSTON & DIEBOLD                           714 556 9500
27201 PUERTA REAL   STE 300
MISSION VIEJO, CA 92691

3. (Must be answered in all cases) An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400-6415) [X] did not [ ] did for compensation give advice or assistance with this form. (If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)

**Date:** 01/02/2019   David H. Yamasaki, Clerk of the Court   Clerk, by _____ D.Cuevas , Deputy
**(Fecha)**                                           (Secretario)                        (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**4. NOTICE TO THE PERSON SERVED:** You are served
   a. [X] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of (specify):
   c. [ ] as an occupant
   d. [ ] on behalf of (specify):
       under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
              [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
              [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
              [ ] CCP 415.46 (occupant)            [ ] other (specify):
   5. [X] by personal delivery on (date): 2-5-19

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 (Rev. January 1, 2004)

**SUMMONS—UNLAWFUL DETAINER—EVICTION**
Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 415.456, 1167

246

SUM-130

| PLAINTIFF *(Name):* HOUSER BROS. CO., a California limited partnership dba RANCHO DEL REY MOBILE HOME ESTATES DEFENDANT *(Name):* JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS IN POSSESSION WITHOUT A SIGNED LEASE AGRE | CASE NUMBER: |
|---|---|

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advise for pay from an unlawful detainer assistant):*

  a.  Assistant's name:

  b.  Telephone no.:

  c.  Street address, city, and ZIP:



  d.  County of registration:

  e.  Registration no.:

  f.  Registration expires on *(date):*

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

1  ELAINE B. ALSTON, Bar No. 134139,
   VIVIENNE J. ALSTON, Bar No. 170746
2  Members of
   **ALSTON, ALSTON & DIEBOLD**
3    Attorneys at Law
   27201 Puerta Real, Suite 300
4  Mission Viejo, California 92691
   (714) 556-9400 – FAX (714) 556-9500
5
   Attorney for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/02/2019** at 08:00:00 AM
Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

7

8              SUPERIOR COURT, STATE OF CALIFORNIA

9                     COUNTY OF ORANGE,

10
   HOUSER BROS. CO., a California limited
11 partnership dba RANCHO DEL REY MOBILE
   HOME ESTATES
12          Plaintiff,
13
        vs.
14
   JAMIE GALLIAN AND ALL OTHER
15 OCCUPANTS AND PERSONS IN POSSESSION
   WITHOUT A SIGNED LEASE AGREEMENT,
16 and DOES 1 to 10, inclusive,
17          Defendant
18

Case No.:  30-2019-01041423-CL-UD-CJC

COMPLAINT FOR FORCIBLE ENTRY/
DETAINER (MOBILEHOME PARK)

[CIVIL CODE §798.75 AND CODE OF
CIVIL PROCEDURE §§1159, et seq.]

**DOES NOT EXCEED $10,000.00**

19 COMES NOW, the Plaintiff herein, and alleges as follows:

20      1.    Plaintiff, HOUSER BROS. CO., a California limited partnership doing business in the

21 County of Orange State of California, under the fictitious name of RANCHO DEL REY MOBILE

22 HOME ESTATES.  Plaintiff has filed the statements and published the notices required by §§17900, et

23 seq., of the Business and Professions Code.

24      2.    Defendants, JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS

25 IN POSSESSION WITHOUT A SIGNED LEASE AGREEMENT, are individuals residing in the City

26 of Huntington Beach, County of Orange State of California

27      3.    The true names and capacities of Defendants sued herein as DOES 1 through 10,

28 inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who

                    **COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

1  therefore sues said Defendants by said fictitious names. Plaintiff will amend this Complaint to insert

2  said Defendants' true names and capacities when the same have been ascertained.

3      4.  The premises which are the subject of this action are located in the judicial district in

4  which this action is brought. Said premises are situated at 16222 Monterey Lane, Space 376,

5  Huntington Beach, California 92647 (the "Premises").

6      5.  Plaintiff is the owner of said Premises and has a superior right to possession thereof.

7      6.  Defendants entered into possession of the subject Premises without the consent of

8  Plaintiff. No rental agreement has been entered into between Plaintiff and Defendants. Defendant's

9  application was denied due to her poor financial condition. Defendant also made a material falsehood

10  on her application, and her prior conduct indicates she will not comply with the Rules and Regulations

11  governing the mobilehome park.

12      7.  Due to the failure of Defendants to execute a rental agreement prior to taking possession

13  of the Premises, Defendants have no right of tenancy and are unlawful occupants within the meaning of

14  Civil Code §798.75.

15      8.  On or about December 11, 2018 Plaintiff caused to be served on Defendants a Five (5)

16  Day Notice to Quit Premises. A copy of said Notice is attached hereto as Exhibit "1" and incorporated

17  herein by this reference.

18      9.  Defendants remain in possession of the subject Premises as of this date, and said

19  possession is without Plaintiff's consent.

20      10.  Defendants continue in willful, malicious, obstinate and/or intentional possession of said

21  Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

22      11.  The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty

23  Cents ($36.20) per day, and damages caused by Defendants' forcible detention will accrue at said rate so

24  long as Defendants' mobilehome remains in possession of said Premises.

25      12.  The reasonable value of utilities consumed is the amount evidenced by the meters

26  installed on the Premises, and damages caused by Defendants' forcible detention will accrue at said

27  rates so long as Defendants' mobilehome remains in possession of the said Premises.

28

2

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

13.    The reasonable value for trash removal and sewage charges are the amounts charged by the suppliers for these services, and damages caused by Defendants' forcible detention will accrue at said rate so long as Defendants, or any of them, remain in possession of said premises.

14.    California Civil Code §798.85 states as follows:

> "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorneys' fees and costs."

15.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent and utilities, and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

16.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent, utilities and other charges, and to otherwise enforce Plaintiff's rights under Exhibit "1," and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

(1)    For restitution of said Premises;

(2)    For damages at the rate of Thirty-Six Dollars and Twenty Cents ($36.20) per day as a reasonable rental value of the Premises from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue to occupy said Premises;

(3)    For actual consumption of utilities commencing from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue in possession of said Premises;

(4)    For treble the amount above;

(5)    For attorneys' fees incurred herein;

(6)    For costs of suit incurred herein;

(7)    For interest at the legal rate on judgment; and

3

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

1     (8)    For such other and further relief as the Court may deem just and proper, except that

2     Plaintiff remits all damages in excess of the jurisdiction of this Court.

3

4     DATED: December __18__, 2018          By: _____

5                                               Vivienne J. Alston
                                                Attorney for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        4

                    **COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

**EXHIBIT 1**

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

## ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO:   1510.

December 10, 2018

### FIVE (5) DAY DEMAND
### FOR SURRENDER OF POSSESSION OF SITE

To:   Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental
Agreement ("Occupants"):

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and
surrender possession thereof commonly described as:

Space 376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the
mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the
management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park
who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the
occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without
right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized
to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or
possession.

253

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND
NOTICE TO QUIT AS PER CIVIL CODE SECTION 798.75. SHOULD YOU FAIL TO QUIT AND
SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE
INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL
VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF
THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.

ALSTON, ALSTON & DIEBOLD

Dated: December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:    Client
       Park Manager

254

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>**Vivienne J. Alston SBN 170746**<br>**ALSTON, ALSTON & DIEBOLD**<br>**27201 Puerta Real ste 300**<br>**Mission Viejo, CA 92691**<br>ATTORNEY FOR **Plaintiff** | TELEPHONE NUMBER<br>**(714) 556-9400** | FOR COURT USE ONLY |
|---|---|---|
| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |

| DATE: | TIME: | DEP./DIV. | CASE NUMBER:<br>Not Applicable |
|---|---|---|---|
| **Declaration of Service of Notice to Tenant** | | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **Jamie Gallian**

On: **12/11/2018**     At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. **The fee** for this service was: **129.50**
  e. I am:
  (3) [X] a registered California process server:
        (i) [X] Independent Contractor
        (ii) Registration No.: **2729**
        (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



JANNEY & JANNEY
LEGAL SUPPORT SERVICE

**Cesar Gonzalez**          Date: **12/12/2018**

255

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>Vivienne J. Alston SBN 170746<br>**ALSTON, ALSTON & DIEBOLD**<br>**27201 Puerta Real ste 300**<br>**Mission Viejo, CA 92691**<br>ATTORNEY FOR  **Plaintiff** | TELEPHONE NUMBER<br>**(714) 556-9400** | FOR COURT USE ONLY |
|---|---|---|
| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
| DATE:          TIME:          DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **All Other Occupants**

On: **12/11/2018**        At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: 714-953-9451
  d. **The fee** for this service was: **39.50**
  e. I am:
  (3) [X] a registered California process server:
     (i) [X] Independent Contractor
     (ii) Registration No.: **2729**
     (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



**Cesar Gonzalez**              Date: **12/12/2018**

---

Declaration of Service of Notice to Tenant                              Invoice #: 2305520-02

256

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF** ORANGE

I have read the foregoing COMPLAINT

_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPHS**

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒ I am ☐ an Officer ☒ a partner _____ ☐ a _____ of HOUSER BROS CO. ,

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☒ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on December 19 , 2018 , at HUNTINGTON BEACH , California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Christopher C. Houser*
_____
Type or Print Name                                    Signature

## PROOF OF SERVICE
1013a (3) CCP Revised 5/1/88

**STATE OF CALIFORNIA, COUNTY OF**

I am employed in the county of _____ , State of California.

I am over the age of 18 and not a party to the within action; my business address is: _____

_____

On. _____ I served the foregoing document described as _____

_____

_____ on _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**

☐ *I deposited such envelope in the mail at _____ , California.
The envelope was mailed with postage thereon fully prepaid.

☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on _____ , at _____ , California.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

Executed on _____ , at _____ , California.

☐ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____                    _____
Type or Print Name                                    Signature

*(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)
**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

Legal
Solutions                    Rev. 7/99
Plus

257

**UD-105**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>JAMIE L GALLIAN<br>16222 MONTEREY LN #376<br>HUNTINGTON BEACH<br><br>TELEPHONE NO.: 714-321-3449          FAX NO.:<br>E-MAIL ADDRESS: JAMIEGALLIAN@GMAIL.COM<br>ATTORNEY FOR (Name):  IN PRO PER | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**02/22/2019** at 08:00:00 AM<br>Clerk of the Superior Court<br>By Stacy Secours, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

Plaintiff: HOUSER BROS. CO
Defendant: JAMIE GALLIAN

| **ANSWER—UNLAWFUL DETAINER** | CASE NUMBER:<br>30-2019-01041423 |
|---|---|

1. Defendant *(each defendant for whom this answer is filed must be named and must sign this answer unless his or her attorney signs):*  JAMIE L GALLIAN

   answers the complaint as follows:

2. ***Check ONLY ONE of the next two boxes:***
   a. ☐  Defendant generally denies each statement of the complaint. *(Do not check this box if the complaint demands more than $1,000.)*
   b. ☒  Defendant admits that all of the statements of the complaint are true EXCEPT:
      (1) Defendant claims the following statements of the complaint are false  *state paragraph numbers from the complaint or explain below or on form MC-025):*  ☐  Explanation is on MC-025, titled as Attachment 2b(1).
          5, 6, 7, 10, 11, 12, 13, 15, 16

      (2) Defendant has no information or belief that the following statements of the complaint are true, so defendant denies them *(state paragraph numbers from the complaint or explain below or on form MC-025):*
          ☒  Explanation is on MC-025, titled as Attachment 2b(2).
             1,3

3. **AFFIRMATIVE DEFENSES (*NOTE: For each box checked, you must state brief facts to support it in item 3k (top of page 2).)***
   a. ☐  *(nonpayment of rent only)* Plaintiff has breached the warranty to provide habitable premises.
   b. ☐  *(nonpayment of rent only)* Defendant made needed repairs and properly deducted the cost from the rent, and plaintiff did not give proper credit.
   c. ☐  *(nonpayment of rent only)* On *(date):*                          before the notice to pay or quit expired, defendant offered the rent due but plaintiff would not accept it.
   d. ☐  Plaintiff waived, changed, or canceled the notice to quit.
   e. ☒  Plaintiff served defendant with the notice to quit or filed the complaint to retaliate against defendant.
   f. ☒  By serving defendant with the notice to quit or filing the complaint, plaintiff is arbitrarily discriminating against the defendant in violation of the Constitution or the laws of the United States or California.
   g. ☒  Plaintiff's demand for possession violates the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage):*
         HUNTIGTON BEACH CITY ORDINANCE, TEMPORARY RENTAL OF MOBILEHOME 17,38.020,  1996.
         *(Also, briefly state in item 3k the facts showing violation of the ordinance.)*
   h. ☐  Plaintiff accepted rent from defendant to cover a period of time after the date the notice to quit expired.
   i. ☒  Plaintiff seeks to evict defendant based on acts against defendant or a member of defendant's household that constitute domestic violence, sexual assault, stalking, human trafficking, or abuse of an elder or a dependent adult. *(A temporary restraining order,  protective order, or police report no more than 180 days old is required naming you or your household member as the  protected party or a victim of these crimes.)*
   j. ☒  Other affirmative defenses are stated in item 3k.

| Form Approved for Optional Use<br>Judicial Council of California<br>UD-105 [Rev. January 2, 2014] | **ANSWER—UNLAWFUL DETAINER** | Civil Code, § 1940 et seq.;<br>Code of Civil Procedure, § 425.12, § 1161 et seq.<br>www.courts.ca.gov |
|---|---|---|

258

**UD-105**

CASE NUMBER:
30-2019-01041423

3. AFFIRMATIVE DEFENSES (cont'd)
   k. Facts supporting affirmative defenses checked above *(identify facts for each item by its letter from page 1 below or on form MC-025)*:
       [ **X** ] Description of facts is on MC-025, titled as Attachment 3k.

4. OTHER STATEMENTS
   a. [   ] Defendant vacated the premises on *(date)*:
   b. [ **X** ] The fair rental value of the premises alleged in the complaint is excessive *(explain below or on form MC-025)*:
       [ **X** ] Explanation is on MC-025, titled as Attachment 4b.

   c. [   ] Other *(specify below or on form MC-025 in attachment)*:
       [   ] Other statements are on MC-025, titled as Attachment 4c.

5. DEFENDANT REQUESTS
   a. that plaintiff take nothing requested in the complaint.
   b. costs incurred in this proceeding.
   c. [ **X** ] reasonable attorney fees.
   d. [   ] that plaintiff be ordered to (1) make repairs and correct the conditions that constitute a breach of the warranty to provide habitable premises and (2) reduce the monthly rent to a reasonable rental value until the conditions are corrected.
   e. [ **X** ] Other *(specify below or on form MC-025)*:
       [ **X** ] All other requests are stated on MC-025, titled as Attachment 5e.
         COSTS AND EXPENSES FOR UNNECESSARY AND FRIVILOUS FILINGS BY PLAINTIFF.

6. Number of pages attached: _____

**UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code §§ 6400—6415)**

7. *(Must be completed in all cases.)* An **unlawful detainer assistant** [ **x** ] did not   [   ] did   for compensation give advice or assistance with this form. *(If defendant has received **any** help or advice for pay from an unlawful detainer assistant, state)*:

   a. Assistant's name:            b. Telephone No.:

   c. Street address, city, and zip code:

   d. County of registration:      e. Registration No.:      f. Expires on *(date)*:

*(Each defendant for whom this answer is filed must be named in item 1 and must sign this answer unless his or her attorney signs.)*

JAMIE L GALLIAN
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DEFENDANT OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DEFENDANT OR ATTORNEY)

**VERIFICATION**
*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*
I am the defendant in this proceeding and have read this answer. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Date: 2-11-19

JAMIE L GALLIAN
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DEFENDANT)

UD-105 [Rev. January 2, 2014]      **ANSWER—UNLAWFUL DETAINER**      Page 2 of 2

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| HOUSER BROS CO v JAMIE GALLIAN | 30-2019-01041423 |

**ATTACHMENT** *(Number):* 3k

*(This Attachment may be used with any Judicial Council form.)*

(3.e.) Plaintiff is working with The Huntington Beach Gables Homeowners Association to evict Gallian.
(3.e.) BS Investors dismissed their UD action against Gallian case no. 30-2018-01024401, ironically filed the same day10-18-18, as the Stipulated Judgment Houser Bros Co v Lisa Ryan, case no. 30-2018-01013582, in the same court room, C-66. BS Investors dismissed UD against Gallian December 3, 2018, on the same day Attorney Vivienne Alston and Attorney Gordon May were Noticed to appear ex parte regarding the fraudulent WRIT OF POSSESSION filed in the name of the previous owners/seller of the manufactured home, Lisa Ryan, on 11-14-18, over 2 weeks after J-Sandcastle Co LLC, a bona fide purchaser, bought the manufactured home and notified the Plaintiffs of the same. Titled legal ownership transferred and recorded with the State of California Housing and Development on November 1, 2018.
Proof of transfer provided to Plaintiffs. Gallian satisfied Plaintiffs judgment against (Ryan) in Full, $8,743.07. Plaintiffs allege Gallian was less than truthful in her residency application. Gallian disagrees. Gallian owned her previous home in the Gables 100% and sold the home unencumbered. Gallian has never been evicted or has any tenancy terminated because Gallian has never been the tenant, only the homeowner. Gallian was not the tenant under the Gables Master Ground Lease. The Robert P. Warmington Co was the tenant and subsequently assigned all rights to BS Investors.
Plaintiff is working with BS Investors, the Ground Lease Landlord and owner of the same Parcel of land APN 178-771-03, to evict Gallian. Rancho Del Rey is subject to the Davis Stirling Act, Subdivision Land Act and is a Common Interest Development also known as a Condominium Project.

(3.f.) BS Investors, one the owner(s) of the park tried to evict Gallian based on acts against Gallian that constitute battery, violence and stalking of a senior citizen under a Temporary Restraining Order obtained by Gallian on 8-10-18, against Assoc Board Member's husband who was arrested for battery towards Gallian, case no. 30-2018-01011004. The District Attorney is investigating criminal charges against this person. See Huntington Beach Police Crime Report 2018-011599.
(3.g.) Huntington Beach City Ordinance 17.38.020 (1996) Plaintiff is trying to prevent Gallian from renting the manufactured home.
(3.j.) Plaintiff is manufacturing mis-truths to cover the fact GALLIAN was never offered a Rental Agreement for the Park or its Rules and Regs, per ccp §798.74(a). Gallian and her attorney requested full disclosures in writing. When the park revised the Rental Agreement on January 1, 2019, Gallian reviewed & acknowledged agreement by her signature and date, returning the agreement to the Rental Office.
Gallian received copy from the Seller, Lisa Ryan, of the Ryan Rental Agreement and was given a Residency Application from the Sellers Agent, Realtor Nicki Hoover. Gallian completed appl. and provided proof of legal transfer of title and proof of income satisfying CCP 798.75. Buyer J-Sandcastle Co LLC/Gallian, its Member and tenant, agreed to the terms of the Rental Agreement. Buyer and Seller, date and signature acknowledged disclosure from Seller to Buyer.
(3.j.cont) Plaintiff has filed this UD action in violation of CCP §798.75(c, d) "The occupant of the mobilehome "shall not" be considered an unlawful occupant and shall not be subject to the provisions of subdivision (c) if all of the following conditions are present: (1) Occupant is the registered owner; (2) Management has determined that the occupant has the financial ability to pay the rent and charges of the park and will comply with the rules and regulations of the park and with this article; (3) The management failed or refused to offer the occupant a rental agreement.
If a purchaser of a used manufactured home desires the home to remain in the park, the owner "must" sign agreeing to the terms of the Rental Agreement for the Ground Space the home sits on. Absent the purchaser's signature agreeing, the home in the park has no rights of tenancy to occupy the ground space in the park.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page   1   of   1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

*www.courtinfo.ca.gov*

10. [11:256] **Agreement to Rental Terms Required to Validate Purchaser's Tenancy Rights:** As a condition to the purchaser's rights of tenancy in the park, the escrow, sale or transfer agreement involving a mobilehome located in the park at time of sale (where the mobilehome is to remain in the park) *must* contain a copy of *either* (a) a *fully executed rental agreement* or (b) a *statement signed* by park management and the prospective homeowner (purchaser) that the parties have *agreed to the terms and conditions of a rental agreement*. [

CC § 798.75(a)]

a. [11:257] **Five-day notice to "surrender" for refusal to execute lease:** A purchaser who refuses to execute a rental agreement with management "shall not have any rights of tenancy." [CC § 798.75(b)] Management may serve such a purchaser resident with a *demand to surrender* the mobilehome park site; failure to surrender within five days after the demand makes the purchaser an "unlawful occupant." [CC § 798.75(c)]

b. [11:258] **Unlawful detainer:** Once placed in the status of an "unlawful occupant," the purchaser may be evicted under the statutory *summary repossession* procedures (CCP § 1159 et seq.; *see Chs. 7, 8 & 9*). [CC § 798.75(c)]

c. [11:259] **Exceptions to UD eviction:** A person is not an "unlawful occupant" and thus *not* subject to unlawful detainer eviction under § 798.75(c), above, if *all* of these conditions exist (CC § 798.75(d)):

- (1) The occupant is the registered owner of the mobilehome (CC § 798.75(d)(1));
- (2) Management has determined that the occupant has the financial ability to pay park rent and charges (*see ¶ 11:245*), will comply with the park rules and regulations, based on his or her prior tenancies, and will comply with the MRL (CC § 798.75(d)(2)); *and*
- (3) Management *failed or refused to offer* the occupant a rental agreement (CC § 798.75(d)(3)).

# EXHIBIT "A"

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov 
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com

Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until
the original Title goes out from our Sacramento District Office.

Sylvia

STATE OF CALIFORNIA - BUSINESS. CONSUMER SERVICES. AND HOUSING                    GAVIN NEWSOM. Governor

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING                    **GAVIN NEWSOM, Governor**
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



## Title Search

Date Printed:  Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Last Title Date:**        09/10/2014

**Last Reg Card:**          Pending Reg Card

**Sale/Transfer Info:**     Price $175,000.00 Transferred on 11/01/2018

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

***END OF TITLE SEARCH***

264



# TAX CLEARANCE CERTIFICATE

☒ **Mobile Home**                                    ☐ **Floating Home**

## COUNTY OF ORANGE

| SERIAL NUMBER/HULL NUMBER | DECAL NUMBER/CF NUMBER |
|---|---|
| AC7V710394GB/ AC7V710394GA | LBM1081 |

| LOCATION OF HOME | ASSESSOR'S PARCEL NUMBER |
|---|---|
| 16222 MONTEREY LN 376 HUNTINGTON BEACH | 891-569-62 |

| CURRENT REGISTERED OWNER | APPLICANT |
|---|---|
| RYAN, LISA T<br>16222 MONTEREY LN<br>SPC 376<br>HUNTINGTON BEACH<br>CA 92649 | J-SANDCASTLE CO, LLC<br>16222 MONTEREY LN #376<br>HUNTINGTON BEACH<br>CA 92649 |

I hereby certify that the following has been paid:

☐ Delinquent license fees

☒ Property taxes applicable to the home identified above through the fiscal year 2018-2019

☒ A security deposit for payment of the property taxes for the fiscal year 2019-2020

☒ No taxes due or payable at this time.

There may be a supplemental assessment not covered by this "Tax Clearance Certificate" which may create an additional bill.

### THIS CERTIFICATE IS VOID ON AND AFTER JANUARY 15, 2019.

Executed on November 16, 2018 at Santa Ana.
Treasurer-Tax Collector for Orange County, State of California.

Issued on November 16, 2018 _____
                                                              (Signature)

§§2189.8, 5832 R & T Code                                    TDL 10-01 (7-87)

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | | | | |
| **Serial Number** | **Label/Insignia Number** | **Weight** | **Length** | **Width** | **Issued** Jan 19, 2019 | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**



Manufactured Home | Decal: **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY |
|---|---|---|---|---|---|---|
| 90002 SKYLINE HOMES INC | CUSTOM VILLA | | | | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Jan 19, 2019 |
| AC7V710394GA | PFS1130282 | | | | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

RETURN SERVICE REQUESTED

DEPARTMENT OF HOUSING AND
COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION & TITLING SECTION
P.O. BOX 1828
SACRAMENTO, CA 95812-1828

AJLIIMP 92649

**IMPORT**
THE OWNER INFORMATION SHOWN ABOVE MAY NO
DEPARTMENT OF HOUSING AND COMMUNITY DEVEL
CURRENT TITLE STATUS OF THE UNIT MAY BE C

DTN: 10670236

From: **Steve Fink** sfink@stevefinklaw.com
Subject: Lisa Ryan Writ of Possession
Date: November 29, 2018 at 7:47 PM
To: valston@aadlawyers.com



Dear Ms. Alston

We represent Jamie Gallian in connection with her purchase of Lisa Ryan's mobile Home.
My understanding is that Ms. Gallian purchased the property and paid Ms Ryan's arrearages to your client.
Please have the Writ of Possession recalled ASAP to avoid Ms Gallian's wrongful eviction.
Feel free to contact me if there is a problem.

Sent from my iPhone



## CHASE

### Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY          **Customer Copy**

**CASHIER'S CHECK**                          1085733953

11/17/2018
Void after 7 years

**Remitter:** SATISFACTION CJC-1013582/J-SANDCASTLE CO, LLC

$** 8,743.07 **

**Pay To The Order Of:** RDR MOBILE HOME ESTATES
16222 WARMINGTON SP-376 HUNTINGTON BEACH

Memo:
Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

282111107 NEW 01/08 8810004308

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK    **CASHIER'S CHECK**    HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

## CHASE                                            1085733953   91-2
                                                                 1221
Date   11/17/2018   Void after 7 years

**Remitter:** SATISFACTION CJC-1013582/J-SANDCASTLE CO, LLC

**Pay To The Order Of:** RDR MOBILE HOME ESTATES
16222 WARMINGTON SP-376 HUNTINGTON BEACH

**Pay:** EIGHT THOUSAND SEVEN HUNDRED FORTY THREE DOLLARS AND 07 CENT    $** 8,743.07 **

Do not write outside this box

Drawer: **JPMORGAN CHASE BANK, N.A.**

Sol Gindi, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Memo:
Note: For information only. Comment has no effect on bank's payment.

⑆1085733953⑆ ⑆122100024⑆ 806002234⑆

269

Ryan

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

### MINUTE ORDER

DATE: 10/18/2018                    TIME: 08:30:00 AM       DEPT: C61

COMMISSIONER: Carmen Luege
CLERK: Ryan Castillo
REPORTER/ERM:
BAILIFF/COURT ATTENDANT: C. Gonzalez

CASE NO: **30-2018-01013582-CL-UD-CJC**  CASE INIT.DATE: 08/21/2018
CASE TITLE: **Houser Bros. Co. vs. Ryan**
CASE CATEGORY: Civil - Limited       CASE TYPE: Unlawful Detainer - Residential

---

EVENT ID/DOCUMENT ID: 72899868

**EVENT TYPE:** Court Trial
MOVING PARTY: Houser Bros. Co.
CAUSAL DOCUMENT/DATE FILED: Request/Counter-Request to Set Case for Trial - Unlawful
Detainer, 09/27/2018

---

**APPEARANCES**
Vivienne J. Alston, from Alston, Alston & Diebold Attorneys at Law, present for Plaintiff(s).
Lisa Ryan, self represented Defendant, present.

---

Posted Notice in the Courtroom notifies all litigants that the case is being heard by a Commissioner and that failure to object will be deemed acceptance of the Commissioner as a temporary judge.

This matter came on regularly for hearing at this Court, and by mutual agreement of Plaintiff and Defendant, this matter has been referred to mediation.

Mediation was successful.

Pursuant to the written stipulation filed, all terms and conditions are so ordered.

The Court finds judgment for Houser Bros. Co., DBA RANCHO DEL REY MOBILE HOME ESTATES against Lisa Ryan  in the amount of: $0 past due rent, $6222.33 hold over damages, $347.71 pre judgment costs and $2166.00 attorney fees. All unknown occupants are included in the judgment. Possession of the premises is awarded with lock-out stayed until 11/04/2018 at 5:00 PM.

Rental/lease agreement forfeited.

Possession of the following property:  16222 Monterey Lane Space 376, Huntington Beach CA 92649 is awarded to Plaintiff.

Writ of Possession to issue forthwith.

---

DATE: 10/18/2018                    MINUTE ORDER                        Page 1
DEPT: C61                                                        Calendar No.

*/92*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701
☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North - 1275 N. Berkeley Ave., Fullerton, CA 92838-0500
☐ West - 8141 13th Street, Westminster, CA 92683

**FOR COURT USE ONLY**
FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

OCT 18 2018

DAVID H. YAMASAKI, Clerk of the Court

BY:_____DEPUTY

PLAINTIFF: Houser Bros Co.

DEFENDANT: Lisa Ryan

| STIPULATION FOR ENTRY OF JUDGMENT - UNLAWFUL DETAINER
Limited Civil | CASE NUMBER:
1013582 |

IT IS STIPULATED by and between the plaintiff(s): _Houser Bros Co_ DBA Rancho Del Rey
and defendant(s): _Lisa Ryan_                                      Mobile Home Estates

☑ that plaintiff(s) be awarded possession of the premises located at: ☑ includes forfeiture of the lease
_16222 Monterey Lane Spcu 376 Huntington Beach C9_  92649
☑ and that a money judgment be granted in favor plaintiff(s) as follows: _and the mobilehome on that space._
$ _6222.33_ Rent & Damages, $ _2166.00_ Attorney fees. $ _347.71_ Costs, for a
TOTAL SUM OF $ _8,743.07_ , plus interest after judgment at the legal rate.

☑ A writ of possession is to issue forthwith, but no final lockout prior to: _November 4 2018_

☐ **STIPULATION FOR PAYMENTS**

Defendant agrees to pay installments of $_____ on the _____ day of each month commencing
on _____ until paid in full; if any payment is more than _____ days late, the entire amount will
become due and payable immediately. _Sealed per CCCP1161.2 —_
☑ Judgment is to be entered immediately   ☐ Judgment is only to be entered upon default in payments

☐ PLAINTIFF(S) AND DEFENDANT(S) ~~FURTHER~~ STIPULATE AS FOLLOWS:
_Defendant to vocate property on or November 3, 2018_
_Plaintiff is entitled to writ of possesion with no lockout_
_prior to November 4, 2018 Defendant shall retain_
_the right to sell the mobilehome for 120 day_
_sale to proceed via escrow. If escrow does not close_
_on or before Feb 15, 2019 Plaintiff is entitled_
_to notice and execute a warehouse lien persuant to CC 798.56_

I/we the defendant(s), understand that I/we have the right to: (1) have an attorney present, (2) notice and/or hearing of any
default of terms of the stipulation; (3) I/we give up these rights.

Date: _10/18/18_ _____ PLAINTIFF/ATTORNEY
Date: _10/18/2018_ _____ DEFENDANT/ATTORNEY

JUDGMENT IS HEREBY ORDERED ON ALL TERMS OF THE FOREGOING STIPULATION.

Date: _10/18/2018_ _____
Judge/Commissioner of the Superior Court*
(*sign only if judgment is to be entered immediately)

**STIPULATION FOR ENTRY OF JUDGMENT- UNLAWFUL DETAINER**
1081 (R 04/15)

271

2/2

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701
☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92860-2595
☐ North - 1275 N. Berkeley Ave., Fullerton, CA 92838-0500
☐ West - 8141 13th Street, Westminster, CA 92683

**FILED**
FOR COURT USE ONLY
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**OCT 18 2018**

DAVID H. YAMASAKI, Clerk of the Court

BY:_____,DEPUTY

PLAINTIFF: Hower Bro. Con

DEFENDANT: Liso Ryon

| STIPULATION FOR ENTRY OF JUDGMENT - UNLAWFUL DETAINER<br>Limited Civil | CASE NUMBER:<br>10 13582 |
|---|---|

IT IS **STIPULATED** by and between the plaintiff(s): _____
and defendant(s): _____

☐ that plaintiff(s) be awarded possession of the premises located at:                    ☐ includes forfeiture of the lease
_____

☐ and that a money judgment be granted in favor plaintiff(s) as follows:
$_____ Rent & Damages, $_____ Attorney fees, $_____ Costs, for a
TOTAL SUM OF $_____, plus interest after judgment at the legal rate.

☐ A writ of possession is to issue forthwith, but no final lockout prior to: _____

☐ **STIPULATION FOR PAYMENTS**

Defendant agrees to pay installments of $_____ on the _____ day of each month commencing
on _____ until paid in full; if any payment is more than _____ days late, the entire amount will
become due and payable immediately.

☐ Judgment is to be entered immediately    ☐ Judgment is only to be entered upon default in payments

☐ **PLAINTIFF(S) AND DEFENDANT(S) FURTHER STIPULATE AS FOLLOWS:**

The warehouse lean awile ba for the full amount
of unpaid rent, Utilities and attorney fees ($2166.00)
and cost ($347.71) at the time of the auction
To sale of the motorhoant shall begin.
Plaintiff shall review all applifropeative buyers
in accordance with the MRL (CC 798 et seq)
and shall coopral of realter to pass to facilitate sale.

I/we the defendant(s), understand that I/we have the right to: (1) have an attorney present; (2) notice and/or hearing of any
default of terms of the stipulation; (3) I/we give up these rights.

Date: 10/18/18    _____    _____
PLAINTIFF/ATTORNEY    PLAINTIFF/ATTORNEY

Date: 10/18/2018    _____    _____
DEFENDANT/ATTORNEY    DEFENDANT/ATTORNEY

JUDGMENT IS HEREBY ORDERED ON ALL TERMS OF THE FOREGOING STIPULATION.

Date: 10/18/2018    _____

Judge/Commissioner of the Superior Court*
(*sign only if judgment is to be entered immediately)

**STIPULATION FOR ENTRY OF JUDGMENT- UNLAWFUL DETAINER**

1081 (R 04/15)

| TO (Name and Address):<br><br>Lisa Ryan<br><br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | LEVYING OFFICER (Name and Address):<br><br>Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
|---|---|
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br><br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br><br>30 2018 01013582 CLUDCJC |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br><br>2018517508 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | 16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| **Final notice is hereby given that possession of the property must be turned over to the landlord on or before:** | ① *December 5, 2018*  *2 other*<br>② *JANUARY 17, 2019*  *times*<br>③ **Sunday, January 20, 2019 6:01 AM**  *besides this*<br>④ *February 20, 2019*  *date* |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



**Don Barnes**
**Sheriff-Coroner**

By: _Renee #6446_
Sheriff's Authorized Agent

273

# EXHIBIT "B"

274

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

### ALSTON, ALSTON & DIEBOLD

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

OUR FILE NO: 1510.

December 10, 2018

### FIVE (5) DAY DEMAND
### FOR SURRENDER OF POSSESSION OF SITE

To:   Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental Agreement ("Occupants"):

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and surrender possession thereof commonly described as:

Space376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without right or authority under a rental agreement or otherwise.  Based upon the foregoing facts, management is authorized to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or possession.

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75. SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:    Client
       Park Manager

276

10. [11:256] **Agreement to Rental Terms Required to Validate Purchaser's Tenancy Rights:** As a condition to the purchaser's rights of tenancy in the park, the escrow, sale or transfer agreement involving a mobilehome located in the park at time of sale (where the mobilehome is to remain in the park) *must* contain a copy of *either* (a) a *fully executed rental agreement* or (b) a *statement signed* by park management and the prospective homeowner (purchaser) that the parties have *agreed to the terms and conditions of a rental agreement*. [

CC § 798.75(a)]

a. [11:257] **Five-day notice to "surrender" for refusal to execute lease:** A purchaser who refuses to execute a rental agreement with management "shall not have any rights of tenancy." [CC § 798.75(b)] Management may serve such a purchaser resident with a *demand to surrender* the mobilehome park site; failure to surrender within five days after the demand makes the purchaser an "unlawful occupant." [CC § 798.75(c)]

b. [11:258] **Unlawful detainer:** Once placed in the status of an "unlawful occupant," the purchaser may be evicted under the statutory *summary repossession* procedures (CCP § 1159 et seq.; *see Chs. 7, 8 & 9*). [CC § 798.75(c)]

c. [11:259] **Exceptions to UD eviction:** A person is not an "unlawful occupant" and thus *not* subject to unlawful detainer eviction under § 798.75(c), above, if *all* of these conditions exist (CC § 798.75(d)):

- (1) The occupant is the registered owner of the mobilehome (CC § 798.75(d)(1));
- (2) Management has determined that the occupant has the financial ability to pay park rent and charges (*see ¶ 11:245*), will comply with the park rules and regulations, based on his or her prior tenancies, and will comply with the MRL (CC § 798.75(d)(2)); *and*
- (3) Management *failed or refused to offer* the occupant a rental agreement (CC § 798.75(d)(3)).

# RANCHO DEL REY MOBILEHOME ESTATES
# 16222 MONTEREY LANE
# HUNTINGTON BECH, CALIFORNIA

## MOBILEHOME LOT RENTAL AGREEMENT

## EQUAL HOUSING OPPORTUNITY

## WE DO BUSINESS IN ACCORDANCE WITH THE FEDERAL HOUSING LAW

IT IS ILLEGAL TO DISRIMINATE AGAINST
ANY PERSON BECAUSE OF RACE, COLOR, RELIGION,
SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL
ORIGIN

REVISION 1/1/2019

278

**RANCHO REY MOBILILE HOME ESATES**
**16222 MONTEREY LANE**
**HUNTINGTON BEACH, CA 92649**

**MOBILEHOME LOT RENTAL AGREEMENT**

**INFORMATION SUMMSRY**

The following information from the Agreement summarized for the convenience of the parties.
Please see the applicable paragraphs in this agreement for the complete information which
controls if thee is a difference between it and the following:

A.   Ground Space Number _____ 376 _____

B.   Resident(s)   J-SANDCASTLE CO, LLC
     JAMIE GALLIAN, ITS MEMBER/RESIDENT
     JANET WATERS, FAMILY MEMBER, 75yo, DATE OF BIRTH 12-14-1943

C.   Date this Agreement Begins and Length/Term of this Agreement:

     (1) On month-month basis beginning _____

                                                       JG _____
                                                       (Resident's Initial's

     (2) For a period of __12__ months beginning _____ November 16, 2018

                                                       JG _____
                                                       (Resident's Initials)

D.   Monthly Rent:  Your beginning monthly ground space rent will be $1325.00.  The
     amount of your rent may be increased at any time on ninety (90) days' notice. The
     increase in rent may be made because of such things as new or increased operating
     expenses we may incur, increases in what we believe to be fair market rent for a
     manufactured home space or any reason we believe, in our sole discretion, to be
     appropriate so long as the rent increase is not otherwise specifically prohibited by
     law.

E.   Utilities
     (1)   Utilities You Pay to Park:
           Electricity. Water and Natural Gas on sub metered basis.

           Sewer and Trash at an initial charge of $__23.38__ /month for Sewer and
           $__17.67__ /month for Trash.

     (2)   Utilities Included in your rent:  NONE

     (3)   Utilities you purchase from other vendors:  Telephone and Cable TV.

     Utilities may be increased or changed as allowed by this Agreement.

279

F.    Other Charges:

| | | | |
|---|---|---|---|
| (1) | Late Payment: | $20.00 | |
| (2) | Returned Checks: | $20.00 | |
| (3) | Security Deposit | $ _____ | |
| (4) | RV/Extra Vehicles | $ <u>  varies on RV     space site</u> per month/vehicle | |
| (5) | Government Fees: | As charged to Park | |
| (6) | Extra Persons Charge | $ _____ per day per person. | |
| (7) | Other: _____ | | |

_____

These above charges may be increased or charged as allowed by this Agreement

G.    Facilities to be provided by the Park for Residents during the term of this Agreement, unless changed.  The streets, R.V. storage area (subject to separate agreement and charge), 2 clubhouses, 2 swimming pools and spas, 4 saunas, 3 laundry rooms.

H.    Services to be provided by the Park for Residents during the term of this Agreement, unless changes.  Park Manager, electricity, natural gas, water, sewer, and trash. Facilities and services may be decreased or changed as allowed by this Agreement. The cost of providing and maintaining facilities and services may increase your rent per the provisions of this agreement.

### <u>DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS</u>

**OUR MOBILEHOME PARK IS AN OLDER PARK; THEREFORE, THE UTILITY SYSTEMS (ELECTRIC, NATURAL GAS, SEWER AND WATER) DO NOT WORK AS WELL AS NEWER SYSTEMS AND DO PERIODICALLY BREAK DOWN OR PROVIDED LESS THAN ADEQUATE SERVICE.**

**YOU ACKNOWLEDGE THAT WE HAVE OFFERED YOU THE OPTION OF HAVING THIS AGREEMENT HAVE A TERM OF 12 MONTHS OR LESS, INCLUDING A MONH-TO-MONTH TENANCY.  YOU ALSO ACKNOWLEDGE THAT YOU HAVE VOLUNTARILY SELECTED THE TERM LISTED AT PARAGRAPH C ON PAGE 1 OF THIS AGREEMENT.**

**RESOLUTION OF DISPUTES (Alternative Dispute Resolution/Internal Dispute Resolution:**
**YOU AGREE THAT THOSE RIGHTS WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES," WILL BE DETERMINED BY SUBMISSION TO WHAT IS KNOWN AS A REFERENCE AND NOT BY WHAT MOST PEOPLE CONSIDER THE NORMAL LAWSUIT OR BY RESORTING TO NORMAL COURT PROCESSES.  BY SIGNING THIS AGREEMENT, BOTH YOU AND WE ARE GIVING UP OUR CONSITITUTIONAL RIGHT TO HAVE THOSE DISPUTES DECIDED IN A COURT OF LAW BEFORE A JURY AND, INSTEAD, ARE ACCEPTING THE USE OF THE REFERENCE PROCEDURES.**

## HUNTINGTON BEACH CITY ORDINANCE

**17.38.020 Temporary Rental of Mobile Home**
**D.**      Hereafter, "renter" refers to the person or persons who pay rent to the mobile home owner in exchange for the temporary right to reside within the subject mobile home (and the related right to occupy the space upon which the mobile home is located), but not as a co-occupant with the owner. Any renter of a mobile home must meet all the rules of occupancy of the mobile home park in which the mobile home is located with the exception of any rule, which directly or indirectly prohibits, in conflict with this section, the temporary rental of a mobile home for up to one year

Prior to the mobile home renter's taking occupancy, that renter and the mobile home owner shall provide the park owner with:
1.      A copy of the mobile home rental agreement;
2.      The true names of all intended occupants and their residential phone number;
3.      Business phone numbers for all adult occupants who have such numbers; and
4.      An agreement signed by all adult occupants, which reads as follows:

E.      Such temporary rentals authorized by this chapter may not exceed 12 months in any two-year period subject to renewal because of continued hardship**. (3277-5/95)**

**TO:  Rancho Del Rey Mobile home Estates**
**FROM:  J-Sandcastle Co. LLC**
**RE:  16222 Monterey Lane Space 376, Huntington Beach, CA 92649**

Resident's Name:      Jamie L Gallian
Residents Cell No.    714-321-3449
Residents Work No.  714-321-3449 (Ms Gallian's cell no.)

I agree to the following terms under Huntington Beach City Ordinance 17.38.020.

I have received copies of the lease between the park owner and the homeowner for Space # **376** and current park rules.  Copies attached to this notice.
I have read those documents with care. I believe I understand them. I believe that I qualify for occupancy under those rules and the master lease (except for provisions prohibiting subleasing). I agree to abide by those Park Rules and to meet all obligations of that master lease, which are relevant to an occupant. I understand that the park owner may directly enforce the within agreement against me without giving up any rights against the mobile home owner.

Sincerely,

*J-Sandcastle Co. LLC*

J-Sandcastle Co. LLC
Jamie Gallian, Its Member

*Jamie L Gallian*

281

I AGREE I HAVE READ AND UNDERSTAND THE ABOVE DISCLOSURES AND
ACKNOWLEDGMENTS.

EXECUTED AT Huntington Beach, CA, THIS __1st___ OF JANUARY  2019.

_____

J-SANDCASTLE CO, LLC. Buyer/Tenant


_____

JAMIE L GALLIAN, ITS MEMBER, RESIDENT

282

**SERVICE LIST**

VIVIENNE J. ALSTON
ALSTON, ALSTON & DIEBOLD
27201 PUERTA REAL STE. 300
MISSION VIEJO, CA 92691
VALSTON@aadlawyers.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{00574074.DOCX; 1}                        -10-

**POS-050/EFS-050**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO:<br>NAME: JAMIE GALLIAN<br>FIRM NAME:<br>STREET ADDRESS: 16222 MONTEREY LN #376<br>CITY: HUNTINGTON BEACH        STATE: CA    ZIP CODE: 92649<br>TELEPHONE NO.:            FAX NO. :<br>E-MAIL ADDRESS: JAMIEGALLIAN@GMAIL.COM<br>ATTORNEY FOR (name): IN PRO PER | *FOR COURT USE ONLY* |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS:  700 CIVIC CENTER DRIVE<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:     SANTA ANA, CA 92701<br>BRANCH NAME:  CENTRAL JUSTICE CENTER | |
| PLAINTIFF/PETITIONER: HOUSER BROS CO | CASE NUMBER:<br>30-2019-01041423 |
| DEFENDANT/RESPONDENT: JAMIE GALLIAN | JUDICIAL OFFICER: |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT: |

1.  I am at least 18 years old.

   a.  My residence or business address is *(specify):*
       16222 Monterey Ln. #376  Huntington Beach, CA 92649

   b.  My electronic service address is *(specify):*
       jwaters43@hotmail.com

2.  I electronically served the following documents *(exact titles):*
    UD105-Answer-Unlawful Detainer

    ☐   The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3.  I electronically served the documents listed in 2 as follows:

   a.  Name of person served: Vivienne Alston

       On behalf of *(name or names of parties represented, if person served is an attorney):*
       Houser Bros. Co

   b.  Electronic service address of person served :
       valston@aadlawyers.com

   c.  On *(date):* 2-11-19

       ☐   The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
       *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: 2-11-19

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Janet Waters                                              ▶        *Janet Waters*
_____                              _____
(TYPE OR PRINT NAME OF DECLARANT)                              (SIGNATURE OF DECLARANT)

Page 1 of 1

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-050/EFS-050 [Rev. February 1, 2017] | **PROOF OF ELECTRONIC SERVICE**<br>**(Proof of Service/Electronic Filing and Service)** | Cal. Rules of Court, rule 2.251<br>www.courts.ca.gov |

| TO (Name and Address): | LEVYING OFFICER (Name and Address): |
|---|---|
| Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br><br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br><br>30 2018 01013582 CLUDCJC |
| **Eviction Restoration Notice** | LEVYING OFFICER FILE NO.:<br><br>2018517508 |

To: Evicted Tenants, Property Owners, Their Agents and The Local Police:

By virtue of a Writ of Execution for Possession of Real Property, the following property was restored to the landlord on:

| **Eviction Date:** | 3/04/19     12:30 PM |
|---|---|
| **Eviction Address:** | **16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649** |

Pursuant to Penal Code Sections 419 and 602, and judgment debtor, any persons removed by the Sheriff or Marshal, or any person not authorized by the landlord, who enters the real property after eviction, may be subject to arrest.

Pursuant to California Civil Procedure sections 715.010(b)(3) and 715.030, all personal property left on the premises has been turned over to the landlord. The landlord is responsible for the safe keeping of tenant's property for fifteen (15) days from the date of eviction. The landlord may charge a reasonable fee for removal and storage of the property. However, upon demand of the tenant, the landlord must return the tenant's property if the tenant pays all costs incurred by the property owner for storage and maintenance. If the costs are not paid by the tenant and the tenant does not take possession of the property left behind before the end of the fifteen (15) day period, the landlord may either sell the property at public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), if the property is valued at less than $700.00, the landlord may dispose of the property or retain it for his own use. (1174 CCP)



Date: 3/14/19

**Don Barnes**
**Sheriff-Coroner**

By: _____ 6252
         Sheriff's Authorized Agent

CPM Form 8.33
12/19/2012 (Revised)

543455

285

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 03/06/2019            TIME: 08:30:00 AM         DEPT:  C61

COMMISSIONER: Carmen Luege
CLERK:  Ryan Castillo
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:  C. Gonzalez

CASE NO: **30-2018-01013582-CL-UD-CJC**  CASE INIT.DATE: 08/21/2018
CASE TITLE: **Houser Bros. Co. vs. Ryan**
CASE CATEGORY: Civil - Limited       CASE TYPE: Unlawful Detainer - Residential

---

EVENT ID/DOCUMENT ID: 72999194

**EVENT TYPE**: Ex Parte
MOVING PARTY: Jamie L Gallan
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 03/05/2019

EVENT ID/DOCUMENT ID: 72999195

**EVENT TYPE**: Ex Parte
MOVING PARTY: Jamie L Gallan
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 03/05/2019

---

**APPEARANCES**
Vivienne J. Alston, from Alston, Alston & Diebold Attorneys at Law, present for Plaintiff(s).
Jamie L Gallan, self represented Interested Party, present.

Proceedings recorded electronically.

Ex-Parte application for reconsideration to intervene and TRO to stay writ of possession is requested by
Jaime Gallion.

Ex-parte Application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows:

The motion for reconsideration to intervene and TRO to stay writ of possession is GRANTED .

The Court allows Gallian to intervene as to the writ of possession execution in this case. The Court finds
there was improper execution as the judgment was against Lisa Ryan and all unknown occupants. On
1/2/2019, Plaintiff filed an unlawful detainer for the premises address in this matter against Jamie
Gallian. The Court finds on these facts, Jamie Gallian is NOT an unknown occupant.

The Court orders Plaintiff to place Jamie Gallian back in possession by 5:00 PM today.



DATE: 03/06/2019                    MINUTE ORDER                         Page 1
DEPT: C61                                                            Calendar No.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

DEPARTMENT C61


HOUSER BROS COMPANY            )
                              )
          PLAINTIFF,          )
                              )
     V.                       )      NO. 30-2018-01013582
                              )
LISA RYAN, AN INDIVIDUAL,      )
                              )
          DEFENDANT.          )
_____)


HONORABLE CARMEN R. LUEGE, JUDGE PRESIDING

REPORTER'S TRANSCRIPT

MARCH 6, 2019


APPEARANCES OF COUNSEL:

  FOR PLAINTIFF:            ALSTON, ALSTON & DIEBOLD
                           BY:  VIVIENNE J. ALSTON, ESQ.

  FOR DEFENDANT:           *(NO APPEARANCE.)

  FOR INTERESTED PARTY:    JAMIE LYNN GALLIAN,
                           IN PROPRIA PERSONA


PATRICK R. BREZNA, CSR #5288
CERTIFIED REALTIME REPORTER,
REGISTERED PROFESSIONAL REPORTER

287

1      SANTA ANA, CALIFORNIA - WEDNESDAY, MARCH 6, 2019

2                    (MORNING SESSION)

3          (THE FOLLOWING PROCEEDINGS WERE HAD IN

4      OPEN COURT AND ARE BASED ON AN AUDIO

5      RECORDING:)

6      **THE COURT:**  JAMIE GALLIAN.

7      **MS. ALSTON:**  GOOD MORNING.

8          VIVIENNE ALSTON APPEARING ON BEHALF OF THE

9      PLAINTIFFS, HOUSER BROTHERS.  I HAVE WITH ME KATHERINE

10     CURTISS, A MEMBER OF HOUSER BROTHERS.

11     **THE COURT:**  ALL RIGHT.  THIS CASE IS ELECTRONICALLY

12     RECORDED AND CREATES AN OFFICIAL RECORD OF THE

13     PROCEEDINGS.

14          WHO'S HERE FOR THE PLAINTIFFS?

15     **MS. ALSTON:**  VIVIENNE ALSTON APPEARING ON BEHALF OF

16     THE PLAINTIFFS, HOUSER BROTHERS.

17     **THE COURT:**  GO AHEAD AND STATE YOUR APPEARANCE.

18     **JAMIE LYNN GALLIAN:**  GOOD MORNING, YOUR HONOR.

19          JAMIE GALLIAN.

20     **THE COURT:**  ALL RIGHT.  SO DO WE HAVE A TRIAL DATE ON

21     THIS CASE, THE UNLAWFUL DETAINER THAT IS PENDING AGAINST

22     MS. GALLIAN?

23     **MS. ALSTON:**  NO, YOUR HONOR, WE DON'T HAVE A TRIAL

24     DATE.

25     **JAMIE LYNN GALLIAN:**  NO.

26     **THE COURT:**  EXCUSE ME.

1      **MS. ALSTON:**  NO, YOUR HONOR, WE DO NOT HAVE A TRIAL

2   DATE.

3      **THE COURT:**  WHY NOT?

4      **MS. ALSTON:**  BECAUSE SHE ANSWERED WITHIN THE LAST, I

5   THINK, NINE DAYS.  WE STILL HAVE DISCOVERY TO GO THROUGH

6   BEFORE A TRIAL DATE IS SET.

7      **THE COURT:**  SO HERE'S MY PROBLEM.  I HAVE A TENTATIVE

8   ALREADY IN MIND.  AND MY TENTATIVE IS THAT I'M GOING TO

9   STAY EXECUTION OF ANY WRIT IN THIS CASE, IN THIS CASE

10  WHICH IS AGAINST MS. RYAN, NOT AGAINST MS. GALLIAN, THIS

11  DEFENDANT.  AND I'M GOING TO ALLOW YOU, BECAUSE I KNOW

12  YOU HAVE A PENDING CASE AGAINST MS. GALLIAN FOR UNLAWFUL

13  DETAINER, TO LITIGATE THAT IN C66.

14          AND THE REASON I SAY THAT, THE WRIT IN THIS

15  CASE WAS AGAINST LISA RYAN.  THE WAY THAT -- THAT SHE --

16  THAT MS. GALLIAN GETS INVOLVED IN THIS SITUATION IS THAT,

17  BETWEEN THE PERIOD THAT THE COURT ISSUES JUDGMENT AGAINST

18  RYAN, RYAN SELLS THE PROPERTY TO GALLIAN, OKAY.

19          NOW, ONE OF THE THINGS THAT I THINK IS

20  ENCOURAGED IN CASES INVOLVING MOBILE HOMES IS THAT WHEN

21  THE PERSON WHO OWNS THE MOBILE HOME IS OUSTED FROM THERE,

22  OF THE PARK, IS USUALLY BECAUSE THEY'RE BEHIND IN RENT

23  PAYMENTS ON THE SPACE, OR SOMETIMES FOR OTHER CAUSES

24  BECAUSE YOU HAVE TO HAVE CAUSE FOR A MOBILE HOME REMOVAL.

25  IT'S THE SPACE THAT IS AT ISSUE, NOT THE MOBILE HOME

26  ITSELF.  BUT THE MOBILE HOME OFTENTIMES CANNOT BE MOVED,

1   EITHER BECAUSE OF THE EXPENSE PROHIBITS IT, OR BECAUSE

2   MAYBE THE MOBILE HOME PARK DO NOT ACCEPT OLDER MOBILE

3   HOMES.  I HAVE HAD EXPERTS IN HERE TESTIFY COST CAN BE IN

4   EXCESS OF $10,000.

5           AND SO, UH, THE REALITY BECOMES THAT WHAT

6   HAPPENS WHEN YOU SAY, OKAY, THE PLAINTIFF IS ENTITLED TO

7   THE SPACE IN THERE, THE MOBILE HOME CANNOT BE MOVED.  AND

8   USUALLY WHAT HAPPENS, OFTEN HAPPENS, IS THAT THE MOBILE

9   HOME PARK, THEY MOVE THE PERSON OUT AND THEY SELL THE

10  PROPERTY THEMSELVES.  THAT'S ONE OPTION.  THE OTHER

11  OPTION IS GIVING ENOUGH TIME FOR THE OWNER OF THE MOBILE

12  HOME TO SELL.

13          NOW, IN THIS PARTICULAR INSTANCE, WE HAVE AN

14  INTERESTING SITUATION WHICH, BY THE WAY, I HAVEN'T SEEN

15  IT IN THE EIGHT YEARS I'VE BEEN SITTING HERE, WHERE THE

16  ACTUAL MOBILE HOME IS SOLD, PRESUMABLY, IN THE TIME

17  PERIOD THAT IS BETWEEN THE JUDGMENT AND THE EXECUTION OF

18  THE WRIT, WHICH REALLY IS WHAT THE WHOLE FRAMEWORK OF

19  THIS ENCOURAGES; THAT THE HOMEOWNER, THE PRIOR, MS. RYAN,

20  WILL FIND A BUYER AND SELL IT.  AND THAT'S EXACTLY WHAT

21  HAPPENED.  THAT'S HOW GALLIAN CAME INTO POSSESSION.

22          NOW, I KNOW THAT SHE MADE A MOTION TO INTERVENE

23  BEFORE IT CAME TO THIS DIRE SITUATION WE HAVE NOW.  AND

24  AT THE TIME, I DIDN'T WANT HER TO BE INTERVENING BECAUSE

25  THIS CASE HAS REALLY NOTHING TO DO WITH HER, AS FAR AS I

26  CAN TELL.  MY THOUGHT WAS THAT ONCE SHE BOUGHT THE

1    PROPERTY, THAT THERE WILL BE A PROCESS.  BECAUSE I KNOW

2    THAT PEOPLE ARE ENTITLED TO DUE PROCESS IN THE MOBILE

3    HOME CONTEXT; OTHERWISE, THERE WOULD BE AN ASSESSMENT

4    MADE WHETHER OR NOT SHE'S A GOOD CANDIDATE TO BECOME A

5    MEMBER OF THE PARK.

6          AND THAT'S WHERE MY WHOLE THOUGHT IS AT; THAT

7    AT THE TIME OF THE SITUATION, I DIDN'T THINK -- AND I

8    THINK I MAY HAVE TOLD HER -- I DIDN'T EXPECT THAT THE

9    WRIT THAT I HAD ISSUED IN THIS CASE WOULD BE USED AGAINST

10    ANY OWNER OF THE MOBILE HOME BECAUSE I THOUGHT THAT THERE

11    WOULD BE A PROCESS BY WHICH THE MOBILE HOME PARK WOULD

12    MAKE A DETERMINATION OF WHETHER OR NOT SHE SATISFIES THE

13    REQUIREMENTS THEY HAVE TO BECOME A PARK MEMBER.

14          I GATHERED THAT NOW, FOR WHATEVER REASONS, THE

15    PARK HAS DECIDED THAT SHE'S NOT A GOOD TENANT THERE.

16    THEY DON'T WANT HER AS A TENANT, SO THEY'RE NOT WILLING

17    TO APPROVE.  SO NOW WE HAVE A SITUATION WHERE MS. GALLIAN

18    OWNS THE MOBILE HOME, BUT THE PARK IS NOT GIVING HER

19    AUTHORIZATION TO STAY IN THIS SPACE BECAUSE SHE'S NOT A

20    TENANT THAT THEY WANT TO HAVE THERE.  THAT'S WHAT I THINK

21    IS HAPPENING HERE.

22          AND I'M OKAY WITH THAT, BUT I'M NOT GOING TO

23    LITIGATE THAT ISSUE HERE.  SO I'M STILL ALLOWING HER TO

24    INTERVENE BECAUSE I DON'T THINK IT SHOULD BE LITIGATED

25    HERE.  THE ISSUE OF WHETHER OR NOT GALLIAN HAS THE RIGHT

26    TO POSSESSION NEEDS TO BE DETERMINED IN THE CASE THAT IS

1    PENDING IN C66.

2              AND PERHAPS ONE OF THE ISSUES THAT WILL BE

3    LITIGATED THERE IS THE QUESTION OF, ONE, DID SHE ACTUALLY

4    BUY THE PROPERTY; DID SHE BECOME THE OWNER OF THE MOBILE

5    HOME.  AND THE SECOND ISSUE IS, MY THOUGHT IS, UNDER THE

6    MOBILE HOME LAW, YOU KNOW, YOU HAVE TO HAVE GOOD CAUSE TO

7    REJECT A TENANT.  YOU CANNOT JUST WILLY-NILLY START

8    REJECTING PEOPLE.  SO I THINK THAT THERE ARE REGULATIONS

9    AND RULES THAT COME INTO PLAY.  AND IT COULD BE LITIGATED

10   IN THE OTHER CASE AGAINST MS. GALLIAN WHETHER THE PARK

11   FOLLOWED CORRECT PROCEDURE, WHETHER, YOU KNOW -- I DON'T

12   KNOW.  IT'S OPEN TO LITIGATION, I THINK.

13             SO FOR ALL THOSE REASONS, I THINK IT WOULD BE

14   PREMATURE AT THIS MOMENT TO SAY MS. GALLIAN NEEDS TO BE

15   EVICTED ON THE WRIT ISSUED IN THIS CASE BECAUSE WE

16   ALREADY KNOW THAT, IN SHORT NOTICE, YOU'RE GOING TO HAVE

17   A TRIAL IN HER CASE.  AND I THINK THAT JUDGE HONER WAS

18   RIGHT WHEN SHE SAID THAT SHE COULD STOP EXECUTION OF THE

19   WRIT I ISSUED, BECAUSE I ISSUED IT IN THIS MATTER.

20             BUT I HAVE THE DISCRETION, ON THESE FACTS, I

21   THINK, TO STAY EXECUTION OF THIS WRIT AGAINST MS. GALLIAN

22   AS AN UNKNOWN OCCUPANT, WHICH IS THE ONLY WAY YOU GUYS

23   CAN GET HER OUT BECAUSE SHE IS NOT A NAMED DEFENDANT.

24   BUT EVEN AS AN UNKNOWN OCCUPANT, I HAVE THE DISCRETION TO

25   STOP THAT AND GIVE HER THE OPPORTUNITY TO GIVE HER THE

26   TRIAL THAT SHE'S ENTITLED TO HAVE.

1          THOSE ARE MY THOUGHTS.  THAT'S MY TENTATIVE.

2      **MS. ALSTON:**  YOUR HONOR, FIRST OF ALL, I WANT TO MAKE

3  SURE THE COURT IS AWARE THAT THE WRIT HAS BEEN EXECUTED.

4      **THE COURT:**  NO.  I KNOW.

5      **MS. ALSTON:**  OKAY.

6      **THE COURT:**  I'M AWARE.  BUT I'M GOING TO PUT IT BACK,

7  WHICH IS RARE, BUT...

8      **MS. ALSTON:**  AND I DON'T THINK --

9      **THE COURT:**  IT'S A RARE CASE IN MANY WAYS, BECAUSE I

10  DON'T UNDERSTAND --

11      **MS. ALSTON:**  BUT --

12      **THE COURT:**  CAN I SAY WHAT I DON'T UNDERSTAND?

13          IF YOU HAVE A CASE AGAINST MS. RYAN, AND YOU

14  KNOW THAT RYAN SOLD THE PROPERTY TO GALLIAN, I DON'T

15  UNDERSTAND WHY YOU'RE TRYING TO EXECUTE THIS WRIT THAT'S

16  ISSUED IN THIS CASE.  AND THE PROBLEM IS THAT YOU DON'T

17  THINK THAT GALLIAN QUALIFIES, THEN I THINK IT'S --

18      **MS. ALSTON:**  WE DON'T BELIEVE THAT SHE QUALIFIES,

19  YOUR HONOR --

20      **THE COURT:**  I UNDERSTAND.  BUT --

21      **MS. ALSTON:**  -- AND WE WILL FIGHT THAT OUT AS TO

22  POSSESSION OF THE PROPERTY BY THE OCCUPATION OF

23  THE MOBILE HOME.  HOWEVER, WE EXECUTED THE WRIT AGAINST

24  MS. GALLIAN AS AN UNKNOWN OCCUPANT.  THIS COURT ALLOWED

25  IT.

26      **THE COURT:**  NO, NO.  THIS COURT -- NO, NO, I DID NOT

1   I ALLOW IT.  WHAT IT WAS IS, SHE COULDN'T INTERVENE WHEN

2   I THOUGHT THERE WOULD BE A PROCESS.  I -- I -- I DID NOT

3   EXPECT -- PART OF THE PROBLEM IS THAT EVEN AT THE TIME

4   THAT YOU EXECUTED IT, BECAUSE IT WAS AFTER THE HEARING,

5   SHE'S NOT EVEN AN UNKNOWN OCCUPANT AT THE TIME.  SHE IS A

6   KNOWN OCCUPANT.  IN FACT, YOU WENT AND FILED THE OTHER

7   CASE.

8          SO THAT'S WHY I DON'T THINK THAT THE SHERIFF

9   CAN EXECUTE AN UNKNOWN OCCUPANT WRIT IN THIS CASE AGAINST

10  WHAT NOW IS A KNOWN OCCUPANT.  AND AT THE TIME OF THE

11  EXECUTION OF THE WRIT, SHE IS A KNOWN OCCUPANT, NOT AN

12  UNKNOWN ONE.  AND YOU ALREADY HAVE ACKNOWLEDGED THAT

13  BECAUSE YOU HAVE FILED THE CASE AGAINST HER AS A KNOWN

14  OCCUPANT IN THE U.D. YOU FILED AGAINST MS. GALLIAN.

15    **MS. ALSTON:**  I BELIEVE THAT SHE IS AN OWNER OCCUPANT,

16  YOUR HONOR.  I MEAN, WE HAD -- BUT SHE HAS OBTAINED

17  POSSESSION OF THE PROPERTY THROUGH MS. RYAN, PLACED HER

18  IN POSSESSION OF THE HOME, AND --

19    **THE COURT:**  WHO SOLD THE HOME TO HER?

20    **MS. ALSTON:**  BUT THE SALE OF THE HOME DOES NOT GIVE

21  HER ANY POSSESSORY RIGHTS OF THE LAND.

22    **THE COURT:**  NO, NOT OF THE LAND.  BUT THAT'S WHY I

23  MADE THE PREMISE I MADE, BECAUSE IN THE CONTEXT OF MOBILE

24  HOME LAW, ONCE THE PERSON'S GOING TO BUY THE PROPERTY,

25  THERE'S A PROCESS THAT SHE HAS TO BE AN ACCEPTABLE

26  TENANT.  I UNDERSTAND THAT.  AND I SAID TO THE TENANT, "I

1     UNDERSTAND THAT."  THAT HAS TO BE LITIGATED IN THIS

2     PARTICULAR CASE.

3             BECAUSE, THINK ABOUT IT.  I DON'T KNOW HOW MANY

4     TIMES I DO MOBILE HOME UNLAWFUL DETAINER CASES WHERE WHAT

5     I'M ENCOURAGING THE DEFENDANT TO DO IS TO ACTUALLY DO

6     WHAT THE DEFENDANT DID HERE.  BECAUSE THAT'S THE WHOLE

7     GOAL.  I THINK YOU SELL IT, AND PART OF THE MONEY IS USED

8     TO COVER WHATEVER IS OWED, AND THEN THE OTHER NEW PERSON

9     BECOMES THE NEW TENANT IN THE PARK.  I MEAN, THAT'S THE

10    IDEAL SITUATION.  I DON'T KNOW WHY YOU'RE DOING THAT

11    HERE, BUT I DON'T WANT TO LITIGATE THAT HERE.

12        MS. ALSTON:  WELL, IT DIDN'T WORK HERE BECAUSE --

13    WELL, IT DIDN'T WORK HERE, YOUR HONOR, BECAUSE THEY

14    DIDN'T FOLLOW THE STIPULATED JUDGMENT.  THE STIPULATED

15    JUDGMENT HAD A LIST OF THINGS -- OF TERMS THAT THEY WERE

16    PROVISIONS THEY WERE SUPPOSED TO FOLLOW IN THE SALE, AND

17    THEY COMPLETELY BREACHED THOSE.

18        THE COURT:  "THEY" WHO; MS. RYAN?

19        MS. ALSTON:  MS. RYAN AND MS. GALLIAN.

20        THE COURT:  WELL, MS. GALLIAN IS NOT A PARTY TO THAT

21    AGREEMENT.

22        MS. ALSTON:  BUT SHE WAS BUYING IT FROM MS. RYAN.

23        THE COURT:  I KNOW.  BUT --

24        MS. ALSTON:  AND GOES FOR --

25        THE COURT:  BUT SHE -- NO.  BUT SHE'S NOT AN OWNER

26    OCCUPANT.

1      **MS. ALSTON:**  I THINK THAT SHE IS, YOUR HONOR.  AND I
2   THINK PRACTICALLY -- I MEAN, I'VE NOT BRIEFED IT, AND I
3   DON'T HAVE CASES AND STATUTES THAT I CAN POINT TO IN THIS
4   ISSUE BEFORE THE COURT --
5      **THE COURT:**  WHAT ISSUES?
6      **MS. ALSTON:**  THE ISSUE OF OWNER OCCUPANCY.
7      **THE COURT:**  WELL, IF THE ISSUE OF UNKNOWN OCCUPANT IS
8   NOT BEFORE THE COURT, I DON'T UNDERSTAND, BECAUSE THE
9   ONLY WAY THAT THE PLAINTIFF IN YOUR CASE GETS TO EXECUTE
10  THIS WRIT AGAINST MS. GALLIAN IS BECAUSE OF THE
11  NONOCCUPANT.
12     **MS. ALSTON:**  YES.
13     **THE COURT:**  THE ISSUE WAS AGAINST RYAN.
14     **MS. ALSTON:**  YES, AND ALL UNKNOWN OCCUPANTS.
15     **THE COURT:**  THEN YOU'RE SAYING SHE IS AN UNKNOWN
16  OCCUPANT?
17     **MS. ALSTON:**  WHAT I'M SAYING IS THAT I DON'T HAVE A
18  BRIEF TO PRESENT TO THIS COURT BECAUSE I WASN'T AWARE
19  THAT THIS WAS GOING TO BE THE WAY THE COURT WAS GOING TO
20  MOVE.  AND IT WASN'T IN THE DOCUMENTS, SO IT'S TAKEN ME A
21  LITTLE BIT UNAWARE.
22          HOWEVER, WHAT THE COURT IS CONTEMPLATING IS
23  THAT ANYTIME THIS PERSON WHO IS GIVEN A JUDGMENT -- GETS
24  A JUDGMENT, THAT THEY CAN SIMPLY TRANSFER THE UNIT OVER
25  TO -- WHETHER IT'S AN APARTMENT, MOBILE HOME OR R.V., OR
26  WHATEVER IT IS THAT THEY HAVE THAT IS LOCATED ON THE

1   PROPERTY, AND THEN TAKE THE -- THE PERSON TAKES

2   POSSESSION OF THE UNIT, AND THEN THE WRIT CAN'T BE

3   EXECUTED.

4   **THE COURT:**  YOU MEAN, AS TO THAT PERSON.  NO.  THAT'S

5   MY WHOLE POINT.

6   **MS. ALSTON:**  I DON'T BELIEVE THE LAW WORKS THAT WAY,

7   YOUR HONOR, BECAUSE THIS IS NEVER-ENDING POSSESSION OR

8   OCCUPATION THAT PREVENTS THE PLAINTIFF FROM OBTAINING

9   POSSESSION OF THE PROPERTY.

10   **THE COURT:**  I AM CONCERNED ABOUT IT -- AND I

11   UNDERSTAND YOUR POINT -- BUT I'VE DONE THIS FOR YEARS.

12   SO IT'S UNCOMMON, FIRST, SO I'M TRYING TO ADDRESS ALL

13   FUTURE OCCUPATION PROBLEMS.  I'M ONLY TRYING TO ADDRESS

14   THE PROBLEMS IN THIS PARTICULAR CASE ON THESE PARTICULAR

15   FACTS.

16          WHAT I UNDERSTAND IS THAT GALLIAN BOUGHT THE

17   PROPERTY FROM RYAN.  AND I WANT TO EMPHASIS THAT.  IT'S

18   NOT RYAN BROUGHT SOME OTHER PERSON TO LIVE WITH HER.  MY

19   UNDERSTANDING IS, RYAN MOVED OUT, AND SORT OF ANTICIPATED

20   BY THE STIPULATION, RYAN SOLD THE PROPERTY, ALL RIGHT,

21   THE MOBILE HOME TO GALLIAN.  AND NOW KNOWING THAT, WHAT

22   I'M BEING ASKED TO SAY IS, IT'S OKAY TO USE THE WRIT IN

23   THIS CASE AGAINST GALLIAN AS AN UNKNOWN OCCUPANT.  THAT'S

24   THE PROBLEM I HAD.

25          MY ANALYSIS SIMPLY SAYS TO ME, I AM NOT GOING

26   TO DO THAT BECAUSE GALLIAN DOES -- IF I DID THAT, GALLIAN

1  DOES NOT GET TO LITIGATE THE QUESTION OF WHETHER THE

2  HOME -- MOBILE HOME PARK IS CORRECT IN SAYING THAT SHE

3  DOESN'T QUALIFY.  I DON'T KNOW WHETHER SHE -- I DON'T

4  KNOW WHETHER SHE QUALIFIES.

5        BUT I DO KNOW THIS IN MY HEAD:  I WANT TO BE

6  SURE THAT GALLIAN'S RIGHT TO LITIGATE WHETHER OR NOT,

7  WHETHER OR NOT SHE QUALIFIES TO BE A TENANT AT THE PARK,

8  BECAUSE THERE ARE PROVISIONS IN THE MOBILE HOME PARK THAT

9  HAVE TO BE FOLLOWED TO DENY THAT.  I WANT TO BE SURE

10 THAT'S -- THAT SHE HAS A PLACE TO ARGUE THAT.  NOW, I

11 DON'T KNOW WHETHER MS. GALLIAN'S GOING TO WIN OR NOT, BUT

12 WHAT I WANT IS TO CREATE A PROCESS THAT DOES NOT

13 IMPEDE -- THAT DOES NOT INTERFERE WITH HER ABILITY TO

14 LITIGATE THAT ISSUE.

15        AND IF YOU'RE RIGHT THAT MS. GALLIAN DOESN'T

16 QUALIFY, THEN I'M ASSUMING YOU'RE GOING TO WIN THE CASE

17 ACROSS THE HALL.  AND IF YOU'RE WRONG AND THE JUDGE FINDS

18 THAT SHE DOES QUALIFY, THEN MAYBE SHE GETS TO CONTINUE TO

19 BE IN POSSESSION.

20        AND THIS IS PARTICULARLY IMPORTANT IN MOBILE

21 HOME PARK SITUATIONS BECAUSE OF THE SPECIAL CIRCUMSTANCES

22 THAT I JUST FINISHED EXPLAINING THAT APPLIES TO MOBILE

23 HOMES, WHICH IS THE REASON WHY THE LEGISLATURE IMPOSES SO

24 MANY REGULATIONS ON THE WAY YOU CAN EVICT, ON THE WAY

25 THAT -- YOU KNOW, IT'S SORT OF LIKE A WHOLE DIFFERENT

26 SYSTEM PARALLEL TO THE REGULAR EVICTION STATUTES THAT ARE

1   MUCH MORE ONEROUS AND COMPLICATED.  I THINK THAT THAT'S

2   MOTIVATED BY WANTING TO PROTECT OWNERS IN MOBILE HOME

3   PARKS.

4           SO THAT'S ALL I WANT, TO BE SURE -- I WANT TO

5   BE SURE SHE GETS A SHOT.  AND I DON'T THINK THERE'S ANY

6   HUGE DETRIMENT TO THE PLAINTIFF BECAUSE SHE'S IN THE

7   PARK, YOU ALREADY HAVE FILED THE CASE, SO THAT'S PENDING.

8   I NOTICE THAT THERE IS AN ANSWER.  AND I NOTICE --

9   BRIEFLY I WAS LOOKING TO SEE IF THERE WAS A TRIAL IN THE

10  OTHER CASE.  I THINK THERE'S NO TRIAL, BUT WE KNOW THAT

11  WITHIN 21 DAYS OF YOU'RE MAKING YOUR REQUEST, YOU'RE

12  GOING TO HAVE A TRIAL DATE.  SO I THINK THIS IS ALL GOING

13  TO GET RESOLVED VERY PROMPTLY IN THE OTHER CASE.

14          NOW, I'M LIMITING MY RULING ACCORDING TO THIS.

15  I'M NOT TRYING TO GO ACROSS THE BOARD BECAUSE I COULD

16  IMAGINE THAT SOMEONE COULD DO WHAT YOU JUST DESCRIBED,

17  WHICH IS ABUSE THE PROCESS, RIGHT.  SOMEBODY WHO IS AN

18  ILL-INTENDED TENANT COULD BE GOING FOR POSSESSION, AND

19  THEN YOU SAY THEY'RE NOT OWNER OCCUPANTS.  I GET THAT.

20  SO I AM NOT TRYING TO COME UP HERE WITH A RULING THAT'S

21  GOING TO BE APPLYING ACROSS THE BOARD BECAUSE THAT IS NOT

22  MY INTENT AT ALL.  THIS IS VERY FACT-SPECIFIC IN WHAT I

23  THINK IS A HIGHLY UNUSUAL CASE BECAUSE I HAVEN'T SEEN IT

24  HAPPEN BEFORE.

25      **MS. ALSTON:**  THIS HAS BEEN LITIGATED, YOUR HONOR.

26  MS. GALLIAN BROUGHT A T.R.O., AND IT WAS GRANTED.  THEY

1　　WENT THROUGH A PRELIMINARY INJUNCTION.  AND AT THE

2　　PRELIMINARY INJUNCTION, THE COURT MADE A RULING AS TO HER

3　　RIGHT TO POSSESSION, AND IT DETERMINED THAT SHE DIDN'T

4　　HAVE ANY.

5　　　　**THE COURT:**  I JUST SAID -- I READ THE RULINGS, BY THE

6　　WAY.  THE PROBLEM THAT I WASN'T SATISFIED WITH IS WHETHER

7　　OR NOT SHE GOT TO LITIGATE THE QUESTION OF WHETHER THERE

8　　HAD BEEN COMPLIANCE WITH THE REGULATIONS OF MOBILE HOME

9　　PARKS, AND WHETHER SHE WAS A TENANT THAT MET THE

10　　REQUIREMENTS OF THE PARK SO THAT THEY COULD NOT --

11　　　　**MS. ALSTON:**  SHE DID.

12　　　　**THE COURT:**  THAT'S NOT APPARENT FROM THE

13　　MOVING PAPERS.  THAT'S WHAT I HAVE.  AND IF I DID HAVE

14　　THAT, THEN THE CASE NEXT DOOR IS GOING TO BE EVEN FASTER

15　　BECAUSE IN THE CASE NEXT DOOR, YOU'RE GOING TO HAVE

16　　COLLATERAL ESTOPPEL, AND YOU'RE GOING TO BE ABLE TO SAY,

17　　"OH, THIS AS ALREADY LITIGATED, SO WE DON'T HAVE TO

18　　LITIGATE IT."

19　　　　**MS. ALSTON:**  I THINK THE COURT DID ADDRESS IT.  IT'S

20　　THERE, YOUR HONOR.  BUT I DO BELIEVE IT IS THERE WHEN IT

21　　SAYS THAT MS. GALLIAN'S POSSESSION OF THE SUBJECT MOBILE

22　　HOME WAS NEVER AUTHORIZED BY THE DEFENDANT, AND SHE IS,

23　　IN ESSENCE, A SQUATTER.

24　　　　**THE COURT:**  EXCUSE ME.  I'M GOING TO TAKE ISSUE WITH

25　　THAT.  I DON'T KNOW WHETHER THAT MEANS THAT SHE BECAME

26　　THE OWNER WITHOUT THE PERMISSION.  AND I UNDERSTAND

1   THAT -- HOWEVER, I DON'T KNOW IF SHE GOT TO LITIGATE

2   WHETHER THE PERMISSION WAS RIGHTFULLY OR WRONGFULLY

3   DENIED.  AND IT SEEMS TO ME THAT, IN THE CONTEXT OF

4   ISSUING A TEMPORARY RESTRAINING ORDER OR NOT, THAT

5   PROBABLY WOULDN'T BE THE BEST FORUM TO DO THAT.  SHE

6   PROBABLY NEEDS TO GO TO TRIAL.

7        BUT YOU DON'T HAVE TO CONVINCE ME OF THAT

8   BECAUSE, AGAIN, THIS IS A SHORT DELAY.  IF YOU'RE RIGHT,

9   YOU'RE GOING TO GET A WRIT RIGHT ACROSS THE DOOR FROM

10  HERE IN THAT COURTROOM WHEN YOU LITIGATE IT.  AND IF YOU

11  BELIEVE IT WAS LITIGATED, AND YOU BELIEVE YOU ALREADY

12  HAVE A RULING ON THAT ISSUE, THEN YOU CAN ARGUE THAT WITH

13  JUDGE HONER.  BUT ALL I WANT TO DO IS STOP THIS

14  PROCESS -- IN MY CASE, THAT'S ALL I CARE, IS TO GIVE

15  MS. GALLIAN THE FULL OPPORTUNITY TO ARGUE WHETHER SHE HAS

16  THE RIGHT TO POSSESSION IN THE CASE THAT YOU ALREADY

17  FILED.

18      **MS. ALSTON:**  I WOULD LIKE TO REQUEST THAT THE COURT

19  TAKE JUDICIAL NOTICE OF THE RULINGS MADE IN FRONT OF

20  JUDGE BAUER.  AND THE CASE NUMBER IS -- I THINK I HAVE

21  THE CASE NUMBER ON THE MINUTE ORDER.

22      **THE COURT:**  I TAKE JUDICIAL NOTICE OF THE CASES IN

23  THE ORANGE COUNTY SUPERIOR COURT.

24      **MS. ALSTON:**  BUT SHE DID HAVE --

25      **THE COURT:**  WHAT IS IT THAT YOU'RE LOOKING AT?

26      **MS. ALSTON:**  I'M LOOKING AT MY DOCUMENTS, YOUR HONOR,

1    WHICH IS WHAT I QUOTED.

2        **THE COURT:**  I HAVE SEEN IT.  I JUST WANT TO BE SURE I

3    KNOW WHAT I'M LOOKING AT, OKAY.

4        **MS. ALSTON:**  BUT, YOUR HONOR --

5        **THE COURT:**  WAIT A MINUTE.  I THINK YOU DID HAVE AN

6    ORDER.  SO THE MINUTE ORDER BY JUDGE BAUER ISSUED

7    1/4/2019 -- WHICH, BY THE WAY, THE OTHER WAY I HAVE OF

8    LOOKING AT THIS --

9        **JAMIE LYNN GALLIAN:**  I HAVE A COPY OF IT, YOUR HONOR,

10   IF YOU WANT TO SEE IT.

11       **THE COURT:**  -- WHICH, YOU KNOW, AGAIN, PRIOR TO

12   EXECUTION OF THE WRIT, WHICH MEANS, IF ANYTHING, THAT BY

13   THE EXECUTION OF THE WRIT, IT JUST MEANS, BECAUSE OF HER

14   EFFORTS, SHE IS AN UNKNOWN OCCUPANT.  I'M STILL CONCERNED

15   ABOUT THAT.

16           BUT I DON'T EVEN HAVE TO GO ON THAT POINT.  I'M

17   NOT TRYING TO GO ON THAT POINT, EITHER.  I JUST WANT YOU

18   TO UNDERSTAND, ALL I'M GOING TO DO IS STAY PROCEEDINGS

19   BASED ON MY WRIT TO SEE WHAT HAPPENS IN THE CASE IN FRONT

20   OF JUDGE HONER, AND THEN WE'LL SEE WHERE WE'RE AT.

21       **MS. ALSTON:**  THE POINT I WANTED TO MAKE, SHE DID HAVE

22   AN ATTORNEY PRESENT, AND IT WAS LITIGATED.  THE COURT DID

23   HAVE A NUMBER OF DECLARATIONS REGARDING EXPRESSLY

24   EXPLAINING ALL OF THE REASONS THAT HER APPLICATION WAS

25   DENIED.  SO THAT HAD TO COME BEFORE A JUDGE, THAT HAS

26   BEEN RULED UPON BY A JUDGE.

1      **THE COURT:**  I DON'T UNDERSTAND.

2           WHAT IS THE DETRIMENT OF JUST, LIKE -- THIS IS

3      GOING TO GET RESOLVED WITHIN THE NEXT 30 DAYS.  IF YOU

4      RIGHT NOW GO DOWNSTAIRS AND YOU ASK FOR THAT TRIAL, YOU

5      GET A TRIAL IS WITHIN 30 DAYS.  I DON'T UNDERSTAND.

6           WHAT IS THE DETRIMENT?

7           I'M TRYING TO UNDERSTAND.

8           IF I SAY THAT SHE'S IN POSSESSION OF THIS

9      MOBILE HOME WHILE THE OTHER CASE IS BEING LITIGATED, WHAT

10     IS THE DETRIMENT?

11     **MS. ALSTON:**  THERE ARE A NUMBER OF DETRIMENTS.  FIRST

12     OF ALL, SHE'S HARASSING THE NEXT-DOOR NEIGHBORS, SHE'S

13     ATTACHING FENCING TO THAT PROPERTY, AND THEY'RE HAVING

14     FIGHTS OVER THAT AND SCREAMING MATCHES OVER THAT.  THERE

15     IS A T.R.O. IN PLACE AGAINST MS. GALLIAN WHERE SHE IS NOT

16     SUPPOSED TO COME WITHIN --

17     **THE COURT:**  THERE'S A T.R.O. OF HOW FAR?

18     **MS. ALSTON:**  THREE HUNDRED FEET.

19     **JAMIE LYNN GALLIAN:**  TEN YARDS, MA'AM.  AND IT WAS

20     FROM A PREVIOUS, UH -- THE MOBILE HOME PARK SHARES THE

21     SAME SECURITY GATE WITH ANOTHER COMMUNITY THAT I SOLD MY

22     PROPERTY.  I LIVED THERE FOR OVER TEN YEARS, AND IT WAS

23     TEN YARDS T.R.O. OF A BOARD MEMBER.  TEN YARDS IS 30

24     FEET, SO IT HAS NOTHING TO DO WITH THIS CASE.  IT'S NO

25     VIOLENCE, NO NOTHING, RIGHT?

26     **MS. ALSTON:**  WELL, THE T.R.O. HAS BEEN GRANTED.  THE

18

1  INJUNCTION, IT'S A FIVE-YEAR INJUNCTION TO STAY AWAY OVER

2  THAT ISSUE.

3      **JAMIE LYNN GALLIAN:**  SHE FILED IT ON --

4      **THE COURT:**  WHAT'S THE ISSUE?

5      **MS. ALSTON:**  IT WAS APPROXIMATELY SIX, EIGHT WEEKS

6  AGO, YOUR HONOR.

7      **THE COURT:**  WHAT TYPE OF CASE IS THAT?

8      **JAMIE LYNN GALLIAN:**  IT'S RIGHT ACROSS AT JUDGE

9  HONER'S.

10     **MS. ALSTON:**  IT WAS SHERRI HONER'S COURT, YOUR HONOR.

11     **THE COURT:**  WAS THAT A CIVIL HARASSMENT CASE?

12     **MS. ALSTON:**  YES, IT WAS A CIVIL HARASSMENT CASE.

13 THERE WERE TWO -- EVERY TIME THAT SHE'S IN -- GOES

14 THROUGH THE GATE, SHE VIOLATES THAT T.R.O.

15     **JAMIE LYNN GALLIAN:**  NO, THAT IS NOT TRUE, MA'AM.

16     **MS. ALSTON:**  AND SHE HAS A CRIMINAL CASE PENDING

17 AGAINST HER AS WELL FOR VIOLATIONS OF ANOTHER T.R.O.

18 AGAINST A YOUNG CHILD.

19         SO THESE ARE CONTINUING HARASSMENTS THAT ARE

20 ONGOING.  SO THE DETRIMENT IS THAT SHE'S VIOLATING A

21 T.R.O., SHE'S HARASSING HER NEIGHBORS.  I UNDERSTAND THAT

22 THIS WILL BE HAPPENING QUICKLY, BUT SHE HAS THE COURT'S

23 CONCERN THAT SHE HASN'T HAD AN OPPORTUNITY TO PRESENT HER

24 CASE TO THE COURT AND DETERMINE WHETHER OR NOT HER

25 OCCUPATION IS PROPER BECAUSE SHE WAS NOT APPROVED HAS

26 BEEN LITIGATED AND HAS BEEN ADJUDGED BY THE COURT.

1              THE COURT HAS HAD --

2          **THE COURT:**  WHEN DID YOU FILE THE OTHER CASE?

3          **MS. ALSTON:**  THE OTHER CASE WAS FILED --

4          **THE COURT:**  THE CASE, MA'AM?

5          **JAMIE LYNN GALLIAN:**  JANUARY 2ND.

6          **MS. ALSTON:**  YOUR HONOR, IT WAS JANUARY.

7          **THE COURT:**  JANUARY 2ND?

8          **MS. ALSTON:**  I DON'T KNOW THE DATE.

9          **JAMIE LYNN GALLIAN:**  JANUARY 2ND, YOUR HONOR.  IT WAS

10  SERVED FEBRUARY 5TH ON ME.  I HAVE IT RIGHT HERE, YOUR

11  HONOR, IF YOU'D LIKE TO SEE IT.

12              (PAUSE IN PROCEEDINGS.)

13          **THE COURT:**  THAT'S WHAT I MEAN.  THAT'S MY WHOLE

14  PROBLEM WITH THIS CASE.  SHE'S NOT AN UNKNOWN OCCUPANT.

15  THAT'S THE PROBLEM.  SO I'M STILL BACK TO THIS PROBLEM.

16  ON JANUARY 2ND, YOU FILED THE CASE.  YOU KNOW SHE'S IN

17  POSSESSION.  AND SHE TOOK POSSESSION UNDER COLOR OF SOME

18  RIGHTS BECAUSE SHE BOUGHT THE PROPERTY.  AND YOU KNEW IN

19  ORDER -- IN ORDER -- THE ONLY WAY THE WRIT IN THIS CASE

20  AGAINST RYAN GETS TO BE EXECUTED AGAINST GALLIAN IS IF

21  SHE IS AN UNKNOWN OCCUPANT.

22              AND WHEN THAT WRIT IS EXECUTED, SHE IS NOT AN

23  UNKNOWN OCCUPANT.  YOU HAVE FILED AN UNLAWFUL DETAINER ON

24  JANUARY 2ND, WHICH MEANS TO ME SHE'S NOT AN UNKNOWN

25  OCCUPANT.  I AM NOT -- I -- THE BEST I CAN DO HERE IS,

26  I'M PRETTY SURE I CAN RULE HERE THAT THE WRIT HERE IS NOT

1    EFFECTIVE, WHICH I THINK I'M ABOUT TO DO, OR I CAN JUST

2    SAY IT'S WAITING FOR PROCEEDINGS NEXT DOOR.

3            BUT I WILL NOT HAVE THIS PERSON EVICTED UNDER

4    THE UMBRELLA OF AN UNKNOWN OCCUPANT WHEN YOU FILED AN

5    UNLAWFUL DETAINER ON JANUARY 2ND.  AND BY THEN, SHE'S NO

6    LONGER AN UNKNOWN OCCUPANT.  SO BY THE TIME THIS GETS

7    EXECUTED, SHE'S NOT AN UNKNOWN OCCUPANT.  I THINK THAT'S

8    A LOGICAL ISSUE OF WHAT AN UNKNOWN OCCUPANT IS.  A

9    NONOCCUPANT IS, THEY OPEN THE DOOR AND FIND FIVE PEOPLE

10   LIVING THERE; THEY ONLY HAVE THE NAME OF RYAN.  THEY

11   DON'T HAVE THE FIVE PEOPLE TO GET OUT.  THAT'S NOT WHAT

12   HAPPENED IN THIS CASE.  THAT'S NOT HERE BEFORE ME.

13       MS. ALSTON:  YOUR HONOR, I DO BELIEVE THAT SHE

14   QUALIFIES AS AN OWNER OCCUPANT.  I DO BELIEVE THAT MY

15   CONCERNS -- AND I KNOW THE COURT DOESN'T WANT TO RULE ON

16   THIS MATTER, BUT AGAIN, IT'S A CONCERN IF ONE PERSON

17   SAYS, "I'M GOING TO BE LOCKED OUT.  I'M GOING TO PUT

18   ANOTHER PERSON IN."  AND --

19       THE COURT:  IF YOU WANT TO LITIGATE -- IF YOU'RE

20   ASKING ME TO LITIGATE WHETHER OR NOT SHE'S AN UNKNOWN

21   OCCUPANT, SURE, WE CAN HAVE A BRIEFING SCHEDULE.  I JUST

22   THINK THE SOONER YOU GET OVER THERE, THE SOONER THIS CASE

23   GETS DONE.  I DON'T WANT TO HAVE AN ISSUE THAT STAYS --

24   WHICH SAYS THAT THE STAY IS GOING TO BE BEYOND THE COURT

25   RULES IN THIS UNLAWFUL DETAINER, OR IF YOU WANT TO

26   LITIGATE WHETHER OR NOT YOU CAN EXECUTE A WRIT AGAINST

1    THIS PARTICULAR INDIVIDUAL AS AN UNKNOWN OCCUPANT, YOU

2    CAN GIVE ME -- COME UP WITH A BRIEFING SCHEDULE.  BUT YOU

3    GET TIME, SHE GETS TIME, BECAUSE THIS GOES TO THAT.

4        **JAMIE LYNN GALLIAN:**  YOUR HONOR, I HAVE ONE MORE

5    THING.

6        **MS. ALSTON:**  YOUR HONOR, I AM CONCERNED.  I DON'T

7    WANT TO MAKE PEOPLE -- YOU KNOW, I DON'T WANT TO

8    UNNECESSARILY EXPEND ATTORNEYS' FEES FOR MY CLIENT.  IF

9    THE COURT IS NOT GOING TO EXECUTE THE WRIT AT THIS TIME,

10   I THINK IT WOULD BE BEST FOR US TO PROCEED.  I DO,

11   HOWEVER, HAVE GRAVE CONCERNS THAT THIS COURT IS

12   OVERRULING JUDGE BAUER'S DECISION THAT'S BEEN LITIGATED.

13       **THE COURT:**  IT'S NOT MY INTENT TO OVERRULE ANYBODY.

14   IN FACT, I DON'T HAVE THE POWER TO OVERRULE ANYBODY.  I

15   ONLY HAVE THE POWER TO MAKE AN ASSESSMENT ABOUT THIS

16   PARTICULAR CASE.

17       **MS. ALSTON:**  THAT'S WHAT'S HAPPENING.  AND I JUST

18   WANT TO PRESENT THAT TO THE COURT.

19       **THE COURT:**  I'M NOT OVERRULING JUDGE BAUER.  I THINK

20   HE FOUND THAT THE INJUNCTIVE RELIEF WAS NOT AVAILABLE IN

21   THAT OTHER CASE.  I'M NOT RULING ON THAT HERE.  I DON'T

22   EVEN KNOW THE IN'S AND OUT'S OF THAT.

23       MY RULING IS SIMPLY THAT, IN THIS -- AND I AM

24   GOING TO RULE ON IT.  IN THIS PARTICULAR CASE WHEN THE

25   CASE WAS FILED, JAMIE GALLIAN WAS NOT A DEFENDANT.  ONLY

26   LISA RYAN WAS A DEFENDANT.  LISA RYAN EXECUTED THE

1    STIPULATION.  THE STIPULATION CONTEMPLATED HER TO STAY IN

2    THE MOBILE HOME.  THE MOBILE HOME -- LISA RYAN VACATED

3    THE PROPERTY PURSUANT TO THE STIPULATION; THE MOBILE HOME

4    WAS SOLD TO JAMIE GALLIAN.

5         **MS. ALSTON:**  SHE DID NOT VACATE ON A TIMELY BASIS.

6         **THE COURT:**  I DON'T WANT TO ARGUE THAT, AND THAT'S

7    NOT BEFORE ME.  SO PER THE STIPULATION, JAMIE GALLIAN

8    PURCHASED THE PROPERTY FROM MS. RYAN AND MOVED INTO THE

9    MOBILE HOME THAT MS. RYAN USED TO OCCUPY.  AND ON JANUARY

10   2ND, 2019, THE PLAINTIFF IN THIS CASE, HOUSER BROTHERS,

11   FILED AN UNLAWFUL DETAINER AGAINST MS. GALLIAN,

12   PRESUMABLY BECAUSE THEY BELIEVE THAT SHE DOESN'T QUALIFY

13   TO BE A PARK TENANT.  AND THEY MAY HAVE OTHER REASONS FOR

14   THAT.  THAT'S NOT BEFORE THIS COURT.

15        WHAT IS BEFORE THIS COURT IS THAT AFTER FILING

16   THAT UNLAWFUL DETAINER IN CASE NUMBER 2019-01041423,

17   AFTER FILING THAT UNLAWFUL DETAINER, THE PLAINTIFFS HAVE

18   SOUGHT TO EXECUTE IN THIS CASE A WRIT THAT WAS ISSUED IN

19   THIS CASE -- IN THE CASE THAT I'M PRESIDING OVER -- WHICH

20   IS 3582.

21        AND THE COURT FINDS THAT THAT'S NOT A PROPER

22   EXECUTION OF THE WRIT.  AND IT'S GOING TO ALLOW

23   MS. GALLIAN TO INTERVENE FOR THE PURPOSE OF CHALLENGING

24   THE EXECUTION OF THE WRIT AGAINST HER, WHICH HAD NOT

25   OCCURRED, BACK IN JANUARY WHEN SHE TRIED TO INTERVENE.

26   AT THAT POINT, SHE DIDN'T HAVE ANY INTEREST IN THE CASE.

1    AT THIS POINT, BECAUSE PLAINTIFF CHOSE TO EXECUTE THE

2    WRIT AGAINST MS. GALLIAN, SHE NOW HAS THE RIGHT TO

3    INTERVENE.

4          SO THE COURT HAS CONSIDERED THE MOTION THAT SHE

5    WAS NOT PROPERLY EVICTED IN THIS CASE, BASED ON THIS

6    CASE.  AND THE COURT IS GOING TO RULE THAT THAT WAS

7    IMPROPER EXECUTION OF THE WRIT, THE WRIT THAT WAS ISSUED

8    BY MY COURT.  THE WRIT ISSUED WAS CASE NUMBER 01013852 --

9    THE CASE IN FRONT OF ME -- AGAINST LISA RYAN.

10         AND THE ONLY WAY THAT JAMIE GALLIAN WOULD BE

11   EVICTED WITH THAT WRIT, YOU KNOW, THE COURT FINDS THAT

12   SHE'S NOT AN UNKNOWN OCCUPANT WHEN THE WRIT WAS EXECUTED,

13   BECAUSE PLAINTIFF ALREADY KNEW THAT SHE WAS TRYING TO

14   INTERVENE TO STOP EVICTION ON THIS WRIT.  AND, IN FACT,

15   THEY -- THERE HAD BEEN A PRIOR RULING ON THE INJUNCTIVE

16   RELIEF IN A SEPARATE CASE IN WHICH PLAINTIFFS WERE

17   WELL-AWARE SHE'S NOT A NONOWNER OCCUPANT AND PURCHASED

18   THE PROPERTY -- THE MOBILE HOME -- FROM MS. RYAN.

19         AND THEY FILED THEIR OWN UNLAWFUL DETAINER

20   AGAINST MS. GALLIAN JANUARY 2ND.  AND WHEN THEY EXECUTED

21   THAT WRIT A FEW DAYS AGO -- YESTERDAY, I THINK -- WHEN

22   THEY EXECUTED THE WRIT, MS. GALLIAN WAS NOT AN UNKNOWN

23   OCCUPANT.  AND THAT WRIT DID NOT EXTEND TO HER.  FOR THAT

24   REASON, THE COURT IS GOING TO HOLD THAT THE PARK HAS

25   MS. GALLIAN BACK IN POSSESSION OF THE MOBILE HOME.

26         THE ISSUE OF WHETHER OR NOT SHE'S A TENANT THAT

1   QUALIFIES UNDER PARK RULES TO BECOME A PERMANENT TENANT

2   OF THE PARK, THAT IS GOING TO BE LITIGATED IN THE CASE

3   PENDING UNDER CASE NUMBER 2019-01041423.  SO THE

4   LITIGATION WILL CONTINUE.

5         AND THIS RESULT, TO THE COURT, IS NOT ONLY TO

6   THE EXTENT BECAUSE OF THE RULINGS I MAKE, BUT IT ALSO

7   PROTECTS MS. GALLIAN'S DUE PROCESS RIGHTS TO LITIGATE THE

8   QUESTION OF WHETHER OR NOT THE PARK PROPERLY EXERCISED

9   ITS DISCRETION IN DECIDING THAT SHE WAS NOT A PROPER

10   TENANT.  SHE GETS TO LITIGATE THAT.

11         SO FOR ALL THOSE REASONS, THE COURT ORDERS THE

12   PARK TO RETURN POSSESSION BY --

13         CAN YOU DO IT BY 5:00 P.M. TODAY?

14   **MS. ALSTON**:  YES, YOUR HONOR.

15   **THE COURT**:  SO THE ORDER IS THAT POSSESSION IS

16   RETURNED TO MS. GALLIAN BY 5:00 P.M. TODAY.

17         ALL RIGHT.  THIS IS GOING BACK TO COUNSEL, AND

18   THIS IS GOING BACK TO THE DEFENDANT.  AND I'M DONE WITH

19   THIS CASE.  THANK YOU VERY MUCH.

20         (PROCEEDINGS CONCLUDED.)

21

22

23

24

25

26

## REPORTER'S CERTIFICATE

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF ORANGE    )


         I, PATRICK R. BREZNA, CSR NO. 5288, CERTIFIED

REALTIME REPORTER, REGISTERED PROFESSIONAL REPORTER, DO

HEREBY CERTIFY THAT THE FOREGOING REPORTER'S TRANSCRIPT IS

A FULL, TRUE AND CORRECT TRANSCRIPTION OF MY SHORTHAND

NOTES THEREOF, AND A FULL, TRUE AND CORRECT STATEMENT OF

THE PROCEEDINGS HAD IN SAID CAUSE BASED ON AN ELECTRONIC

RECORDING SUBMITTED TO ME BY JAMIE LYNN GALLIAN.

         DATED AT ORANGE, CALIFORNIA, THIS 7TH DAY OF

SEPTEMBER, 2020.




                    PATRICK R. BREZNA, CSR NO. 5288,
                    CERTIFIED REALTIME REPORTER,
                    REGISTERED PROFESSIONAL REPORTER

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center DRIVE<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | FOR COURT USE ONLY |
| PLAINTIFF: Houser Bros. Co. | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE |
| DEFENDANT: Jamie Gallian | |
| SHORT TITLE: HOUSER BROS. CO. VS. GALLIAN | **Aug 05, 2019**<br>Clerk of the Superior Court<br>By: Debra Lamm, Deputy |
| **NOTICE OF DISMISSAL** | CASE NUMBER:<br>30-2019-01041423-CL-UD-CJC |

Date: 08/05/2019                                    Judicial Officer: Sherri Honer

On the Court's own motion, case dismissed pursuant to the Superior Court of Califomia, County of Orange
local rules.



Clerk of the Court

Dated:  08/05/2019

By  _Debra Lamm_

Deputy Clerk



NOTICE OF DISMISSAL                                    Page: 1

18.516407. 2 of 3

94

146
312

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

SHORT TITLE: HOUSER BROS. CO. VS. GALLIAN

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>30-2019-01041423-CL-UD-CJC |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above NOTICE OF DISMISSAL has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practice and addressed as indicated below. The certification occurred at Santa Ana, California on 08/05/2019. Following standard court practice the mailing will occur at Sacramento, California on 08/06/2019.

Clerk of the Court, by: _Debra Lamm_____, Deputy

JAMIE GALLIAN
16222 MONTEREY LANE # 376
HUNTINGTON BEACH, CA 92647

ALSTON, ALSTON & DIEBOLD ATTORNEYS AT LAW
27201 PUERTA REAL # 300
MISSION VIEJO, CA 92691

LAW OFFICE OF CASELLO & LINCOLN
525 N CABRILLO PARK DRIVE # 104
SANTA ANA, CA 92701

---

CLERK'S CERTIFICATE OF SERVICE BY MAIL

Page: 2

18.516407. 3 of 3

95

147
313



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
  - Please cash/deposit this Cashier's Check as soon as possible to
    prevent this from occurring
  - In most cases, the funds will be considered "abandoned"
    before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
  - Stop Payment can only be placed if the Cashier's Check
    is lost, stolen, or destroyed
  - We may not re-issue or refund the funds after the stop payment has
    been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY     **Customer Copy**

**CASHIER'S CHECK**     1085736261

08/23/2019
Void after 7 years

**Remitter:**   J-SANDCASTLE CO, LLC

$** 10,860.00 **

**Pay To The**   HOUSER BROS. CO.
**Order Of:**    SP. 376 11-1-18-8-30-19

Memo:------------------------------------------------------------
Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**
NON NEGOTIABLE

---

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK     **CASHIER'S CHECK**     HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

1085736261   91-2
                          1221
Date    08/23/2019   Void after 7 years

**Remitter:**   J-SANDCASTLE CO, LLC

**Pay To The**   HOUSER BROS. CO.
**Order Of:**    SP. 376 11-1-18-8-30-19

**Pay:** TEN THOUSAND EIGHT HUNDRED
        SIXTY DOLLARS AND 00 CENTS

$** 10,860.00 **

Do not write outside this box

Memo:------------------------------------------------------------
Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**

Reginald Chambers, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Phoenix, AZ

⑆1085736261⑆ ⑈122100024⑈ 806002234⑆

314

 Gmail

Jamie Gallian <jamiegallian@gmail.com>

## CA COVID-19 Rent Relief Program Approval for Case Number: 328768
2 messages

**CA COVID-19 Rent Relief Program** <approved@ca-rentrelief.com>
Reply-To: CA COVID-19 Rent Relief Program <approved@ca-rentrelief.com>
To: jamiegallian@gmail.com

Wed, Oct 27, 2021 at 5:13 PM

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 08/31/2020
TIME: 01:30:00 PM        DEPT: C62
JUDICIAL OFFICER PRESIDING: Kimberly A. Knill
CLERK: K. Gates
REPORTER/ERM:
BAILIFF/COURT ATTENDANT: None, Ashlee Wilson

CASE NO: **30-2019-01041423-CL-UD-CJC**  CASE INIT.DATE: 01/02/2019
CASE TITLE: **Houser Bros. Co. vs. Gallian**
CASE CATEGORY: Civil - Limited        CASE TYPE: Unlawful Detainer - Residential

EVENT ID/DOCUMENT ID: 73329504
**EVENT TYPE:** Order to Show Cause re: Dismissal
MOVING PARTY: Houser Bros. Co.
CAUSAL DOCUMENT/DATE FILED: Complaint, 01/02/2019

**APPEARANCES**

Vivienne Alston, from Alston, Alston & Diebold Attorneys at Law, present for Plaintiff(s).
James Casello, from Casello & Lincoln, present for Defendant(s).
Remote hearing held.

Plaintiff informs the Court possession is still at issue.

Oral motion by Plaintiff to reclassify case to unlimited is heard.

The Court trails the motion to reclassify case to be heard with Plaintiff's Motion for Terminations of Sanctions set for 09/10/2020 at 1:30 PM in Department C62.

Order to Show Cause re: Dismissal continued to 10/28/2020 at 01:30 PM in this department pursuant to Court's motion.

Please take notice that the scheduled hearing is a Remote Court Hearing.

Parties and witnesses MUST NOT personally appear at the courthouse. Instead, parties and witnesses MUST appear remotely.

Before your hearing date, please visit the Court's website to review the Remote Hearing Instructions.

1. Visit the Court's website at www.occourts.org
2. Click on the COVID-19 button.
3. Scroll down to the blue buttons and click on the Civil button to see the Remote Hearing Instructions.
4. Click the Remote Hearing Instructions button to open the document.
5. If you or your witnesses do not have access to the internet or cannot follow the Remote Hearing Instructions, you MUST call (657) 622-8513 as soon as possible.

Court orders Clerk to give notice.

DATE: 08/31/2020
DEPT: C62                    MINUTE ORDER                    Page 1

Calendar No.

152
316

September 7, 2020

DELIVERED VIA USPS BY FIRST CLASS MAIL

DELIVERED PERSONALLY AND PLACED IN THE
PARK OFFICE MAILBOX
16222 Monterey Lane, [Park Office]
Huntington Beach, CA 92649

HOUSER COMPANY, A GENERAL PARTNERSHIP;
HOUSER BROTHERS CO, A GENERAL PARTERNSHIP;
HOUSER BROS CO. A CA LIMITED PARTNERSHIP dba RANCHO DEL REY
ESTATES

RE: **COVID-19 Tenant Relief Act of 2020**
1. Enclosed please find the signed <u>Declaration of Jamie Gallian</u> dated September 7,
   2020, addressed to the Landlord for Ground Lease Space 376, for rent period March
   4, 2020 through August 31, 2020, pursuant to Tenant protection of eviction for non-
   payment of rent;
2. Tenant Relief Act AB 3088 affects unpaid rent between March 1, 2020 - January 31,
   2021;
3. Pursuant to the terms of AB3088, enclosed Check # 4502 in the amount of 25% of
   $11,946, representing March 4, 2020 through August 31, 2020, tendered on or before
   January 31, 2021; Submitted to Landlord September 7, 2020, under Penalty of
   Perjury with attached Declaration of Financial Hardship.

Dear Mr. Houser,

I have been substantially affected by the COVID 19 pandemic that has led to my
current financial hardship and continues as of the date of this Declaration.

For the past 6 months, beginning approximately March 4, 2020 through August
31, 2020, I have financially suffered hardship due to the effects of COVID 19, and the
burden I have endured continues. My financial hardship continues therefore I
respectfully seek COVID 19 relief from eviction pursuant to the terms set forth in AB
3088 signed into law by the Governor of California on Friday, August 31, 2020.

Please find enclosed Check No. 4502 in the amount of $ 2986.50, which
represents 25% of the amount of rent accrued unpaid March 4, 2020 through August 31,
2020.

After selling my home, transferring the Ground Leasehold Assignment per the
terms of the Original Tenant and Subtenants Ground Leasehold and Sub-condominium

317

Leasehold recorded in the Official Records of the Clerk of the County of Orange within the Condominium Project, to Mr. Randy Nickel on October 31, 2018, thereafter on November 1, 2018, I purchased a home located upon Space 376, and was assigned I believed to be the rights under the same Ground Leasehold and Sub-Condominium Leasehold in a Condominium Project under a Final Subdivision Report issued by the Department of Real Estate for Tract 10542 and the Gables-Huntington Beach under terms of  Master Ground Lease terminating in 2059, upon APN 178-011-01.

On March 6, 2019, Commissioner Carmen Luege, C-61, of the Orange County Superior Court Central Justice Center, entered an Order on the record that determined Jamie Gallian [is not] an unknown occupant; that Houser Co, a General Partnership and/or Houser Bros Co., a CA limited partnership, dba Rancho Del Rey Mobile Home Estates was fully aware of these facts when they ordered a WRIT in the name of Lisa Ryan be unlawfully executed on March 4, 2020, by the OCSD against Jamie Gallian, a known occupant and lawful owner and resident of the home J-Sandcastle Co LLC purchased on November 1, 2018, from the previous owner Ms. Lisa Ryan pursuant to the Courts Order 10-18-2018, executing the assignment of Ground Lease to Space 376, on 1/1/2006, filed into the court record in CJC case no. 30-2018-01013582, Houser Bros Co., a General Partnership vs. Lisa Ryan.

Subsequently, a mandatory shutdown of all non-essential businesses has led to current financial hardship for my-self and many individuals and businesses. The cuts, nearly 7,000 flight attendants and almost 3,000 pilots at United Airlines has affected my job.

The pandemic has drawn us in deeper and lasted longer than almost any expert predicted.

I, declare, under penalty of perjury of the Laws of the State of California that the foregoing statement is true and correct.

Sincerely,


JAMIE LYNN GALLIAN

enclosure

## Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020

- **No COVID-19-Related Evictions Until February 1, 2021**
  - Tenant cannot be evicted for a COVID-19 related hardship that accrued between March 4 – August 31, 2020 if tenant returns declaration of hardship under penalty of perjury.
  - Tenant cannot be evicted for a COVID-19 related hardship that accrues between September 1, 2020 – January 31, 2021 if tenant returns declaration of hardship under penalty of perjury and pays at least 25% of the rent due.
  - Higher income tenants (over $100K household income or over 130% of median household income, whichever is higher) must provide documentation to support their declaration upon a landlord's request.
  - Applies to all residential tenants (including mobile home tenants), regardless of immigration status.

- **Tenants Still Responsible for Paying Unpaid Amounts to Landlords**
  - So long as the tenant with COVID-19 related hardship follows the bill's procedures, any unpaid rent due between March 4, 2020 – January 31, 2021 is not a ground/basis for eviction, but is still owed to the landlord as a form of consumer debt.
  - Small claims court jurisdiction is temporarily expanded to allow landlords to recover these amounts.
  - Landlords may begin to recover this debt on March 1, 2021. This expanded small-claims court provision sunsets on February 1, 2025.

- **Additional Legal and Financial Protections for Tenants**
  - Extends notice period for nonpayment of rent from 3 to 15 days to provide tenant additional time to respond to landlord's notice to pay rent or quit.
  - Requires landlords to provide hardship declaration forms in a different language if rental agreement was negotiated in a different language.
  - Provides tenants a backstop if they have a good reason for failing to return the hardship declaration within 15 days.
  - Requires landlords to provide tenants a notice detailing their rights under the Act.
  - Limits public disclosure ("masking") of eviction cases involving nonpayment of rent between March 4, 2020 – January 31, 2021.
  - Protects tenants against being evicted for "just cause" if the landlord is shown to be evicting the tenant for COVID-19-related nonpayment of rent.

- **Statewide Consistency and a Pause on Local Measures**
  - Existing local ordinances can remain in place until they expire and future local action cannot undermine this Act's framework.
  - Requires ordinances that provide a repayment schedule to begin repayment no later than March 1, 2021.
  - Clarifies that nothing in the Act affects a local jurisdiction's ability to adopt an ordinance that requires just cause, consistent with state law, provided it does not affect rental payments before January 31, 2021.

- **Protections for Small Landlords**
  - Extends the Homeowners' Bill of Rights' anti-foreclosure protections to small landlords, 1-4 units, non-owner occupied.

**Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020**

- o  Provides new accountability and transparency provisions to protect small landlord borrowers who request CARES-compliant forbearance, and provides the borrower who is harmed by a material violation with a cause of action.

- **Significantly Increases Penalties on Landlords Who Do Not Follow Court Evictions Process**
  - o  Increases penalties on landlords who resort to self-help (i.e., locking the tenant out, throwing property out onto the curb, shutting off utilities) to evict a tenant, rather than going through the required court process.



**M Gmail**                                                    Jamie Gallian <jamiegallian@gmail.com>

---

**Task Status Changed for Tenant: Rent & Utility Assistance**

---

Neighborly Software <no-reply@neighborlysoftware.com>                    Sat, Jul 31, 2021 at 8:45 AM
To: jamiegallian@gmail.com

Status changed from *Active* to *Complete*

Case Name: Gallian, Jamie
Case Id: 328768

Task Status: Active
Task Subject: Application is incomplete.
Task Due Date: 8/2/2021
Task Details: Please provide recent signed lease or most recent rent ledger.

Thank you,
Alondra
Task Owner(s): Jamie Gallian - jamiegallian@gmail.com
Task Follower(s): Alondra Diaz - alondra.diaz@ca-rentrelief.com

Click here to login: https://homellp-ca.neighborlysoftware.com/CaliforniaCovid19RentRelief/participant

**N** Neighborly Software

**Jamie Gallian** 
Fwd: agreement re covid relief and unpaid amounts ledger
July 30, 2021 at 11:45 AM
OC Services

Begin forwarded message:

**From:** james casello <jhctlex@yahoo.com>
**Subject: Fw: agreement re covid relief and unpaid amounts ledger**
**Date:** July 30, 2021 at 11:15:17 AM PDT
**To:** Jamie Gallian <jamiegallian@gmail.com>

Please sign and email back to me.  Thanks, Jim

    James H. Casello
Casello & Lincoln, Attorneys at Law
525 N. Cabrillo Park Drive Suite 104
Santa Ana, CA 92701
(714) 541-8700;  Fax. (714) 541-8707


----- Forwarded Message -----
**From:** Vivienne Alston <valston@aadlawyers.com>
**To:** 'jhctlex@yahoo.com' <jhctlex@yahoo.com>
**Sent:** Friday, July 30, 2021, 11:01:32 AM PDT
**Subject:** agreement re covid relief and unpaid amounts ledger


James:

Please find attached to this email the ledger  of the unpaid amounts for Space 376 and the
agreement regarding the application.


Sincerely,

Vivienne J. Alston

Alston, Alston & Diebold

27201 Puerta Real, Suite 300

Mission Viejo, CA 92691

Telephone: (714) 556-9400


**From:** info2@aadlawyers.com <info2@aadlawyers.com>
**Sent:** Friday, July 30, 2021 10:50 AM
**To:** Vivienne Alston <valston@aadlawyers.com>
**Subject:** Scan Data from [XRX9C934E629521]

Rancho Del Rey Mobile Home Estates
16222 Monterey Ln. OFC
Huntington Beach, CA 92649
(714)846-1429

## Unpaid Amounts - Rent & Utilities
**Billing Period: 4/1/2020 - 8/1/2021**

**Name:** Gallian, Jamie
**Space:** SPC 376

|  | Charged Total | Paid | Due | % |
|---|---|---|---|---|
| Rent | $24,460.00 | $0.00 | $24,460.00 | 0.00% |
| Electric | $1,379.42 | $0.00 | $1,379.42 | 0.00% |
| Gas | $718.20 | $0.00 | $718.20 | 0.00% |
| Water | $387.61 | $0.00 | $387.61 | 0.00% |
| Sewer | $338.25 | $0.00 | $338.25 | 0.00% |
| Garbage | $322.50 | $0.00 | $322.50 | 0.00% |
| **Utility Total** | $3,145.98 | $0.00 | $3,145.98 | 0.00% |
| **All Charges** | $27,605.98 | $0.00 | $27,605.98 | 0.00% |

**Monthly Breakdown Amounts Due**

| Date | Rent | Electric | Gas | Water | Sewer | Trash | Total |
|---|---|---|---|---|---|---|---|
| 4/1/2020 | 1,420.00 | 75.01 | 36.89 | 11.30 | 22.55 | 18.64 | 1,584.39 |
| 5/1/2020 | 1,420.00 | 87.12 | 40.34 | 11.60 | 22.55 | 18.64 | 1,600.25 |
| 6/1/2020 | 1,420.00 | 79.67 | 36.61 | 11.30 | 22.55 | 18.64 | 1,588.77 |
| 7/1/2020 | 1,420.00 | 91.66 | 46.06 | 20.63 | 22.55 | 18.64 | 1,619.54 |
| 8/1/2020 | 1,420.00 | 86.44 | 42.92 | 24.17 | 22.55 | 21.99 | 1,618.07 |
| 9/1/2020 | 1,420.00 | 97.45 | 47.43 | 23.86 | 22.55 | 19.27 | 1,630.56 |
| 10/1/2020 | 1,420.00 | 76.20 | 29.99 | 18.42 | 22.55 | 18.65 | 1,585.81 |
| 11/1/2020 | 1,420.00 | 93.83 | 38.25 | 20.73 | 22.55 | 18.65 | 1,614.01 |
| 12/1/2020 | 1,420.00 | 91.67 | 34.57 | 20.27 | 22.55 | 19.33 | 1,608.39 |
| 1/1/2021 | 1,460.00 | 63.07 | 21.95 | 16.50 | 22.55 | 19.33 | 1,603.00 |
| 2/1/2021 | 1,460.00 | 85.57 | 97.27 | 28.09 | 22.55 | 18.23 | 1,711.71 |
| 3/1/2021 | 1,460.00 | 65.65 | 71.17 | 20.73 | 22.55 | 18.23 | 1,658.33 |
| 4/1/2021 | 1,460.00 | 62.95 | 65.01 | 19.80 | 22.55 | 18.89 | 1,649.20 |
| 5/1/2021 | 1,460.00 | 42.71 | 44.82 | 11.09 | 22.55 | 18.32 | 1,599.49 |
| 6/1/2021 | 1,460.00 | 91.64 | 29.53 | 26.76 | 22.55 | 19.55 | 1,650.03 |
| 7/1/2021 | 1,460.00 | 77.49 | 17.85 | 46.88 | 0.00 | 18.05 | 1,620.27 |
| 8/1/2021 | 1,460.00 | 111.29 | 17.54 | 55.88 | 0.00 | 19.45 | 1,664.16 |

**Payment History**

| Date | Reference | Amount |
|---|---|---|

DOCX

agreement re

323

CA COVID-19 Rent Relief Program <approved@ca-rentrelief.com>
Reply-To: CA COVID-19 Rent Relief Program <approved@ca-rentrelief.com>
To: jamiegallian@gmail.com

Wed, Oct 27, 2021 at 5:13 PM

 

Dear Houser Bros. Co.:

A COVID-19 Rent Relief Program Tenant Application for your tenant has been approved.

Gallian, Jamie
16222 Monterey Lane
Space 376
Huntington Beach, CA 92649

A payment request of $24,301.55 has been approved and payment will be disbursed within 10 to 14 business days to you on behalf of your tenant.

You may have received an award email in the past. If so, this email indicates an updated total amount due. This updated amount may reflect payment of 100% of rental debt owed as a result of COVID-19, or it may reflect an adjustment made due to audit findings.

**Payment**
If at time of application you requested direct deposit, an email invitation from the payment processing system Bill.com will be sent to you with instructions on how to set-up an account with Bill.com.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
Central Justice Center
700 W. Civic Center Drive
Santa Ana, CA 92702

**SHORT TITLE:** Houser Bros. Co. vs. Gallian

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER: **30-2019-01041423-CL-UD-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that the following document(s), dated , have been transmitted electronically by Orange County Superior Court at Santa Ana, CA. The transmission originated from Orange County Superior Court email address on November 10, 2021, at 11:32:15 AM PST. The electronically transmitted document(s) is in accordance with rule 2.251 of the California Rules of Court, addressed as shown above. The list of electronically served recipients are listed below:

ALSTON, ALSTON & DIEBOLD ATTORNEYS AT LAW
DDIEBOLD@AADLAWYERS.COM

CASELLO & LINCOLN
JHCTLEX@YAHOO.COM

Clerk of the Court, by: _____ , Deputy

---

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 11/10/2021                     TIME: 11:10:00 AM        DEPT: C66

JUDICIAL OFFICER PRESIDING: Sherri Honer
CLERK: Lia Morales
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: None

CASE NO: **30-2019-01041423-CL-UD-CJC**   CASE INIT.DATE: 01/02/2019
CASE TITLE: **Houser Bros. Co. vs. Gallian**
CASE CATEGORY: Civil - Limited          CASE TYPE: Unlawful Detainer - Residential

EVENT ID/DOCUMENT ID: 73644660
**EVENT TYPE:** Chambers Work

## APPEARANCES

There are no appearances by any party.

The court is in receipt of defendant's Application to Prevent Forfeiture Due to COVID-19 Rental Debt filed on 11/8/21. Given that a bankruptcy stay is currently in effect, this court lacks jurisdiction to set this matter for hearing as required by Code of Civil Procedure § 1179.13 until, or unless, the bankruptcy stay is lifted. If and when the bankruptcy stay is lifted, defendant should file a request to have the matter scheduled for hearing.

Court orders Clerk to give notice.

Minute Order

Houser Bros. Co. v. Gallian
30-2019-01041423

The court is in receipt of defendant's Application to Prevent Forfeiture Due to COVID-19 Rental Debt
filed on 11/8/21. Given that a bankruptcy stay is currently in effect, this court lacks jurisdiction to set
this matter for hearing as required by Code of Civil Procedure § 1179.13 until, or unless, the bankruptcy
stay is lifted. If and when the bankruptcy stay is lifted, defendant should file a request to have the
matter scheduled for hearing.

Clerk to given notice.

Dated: 11/10/21

_____
Hon. Sherri L. Honer
Judge, Superior Court

327

## Assembly Bill No. 3088

### CHAPTER 37

An act to amend Sections 1946.2, 1947.12, and 1947.13 of, to amend, repeal, and add Sections 798.56, 1942.5, 2924.15 of, to add Title 19 (commencing with Section 3273.01) to Part 4 of Division 3 of, and to add and repeal Section 789.4 of, the Civil Code, and to amend, repeal, and add Sections 1161 and 1161.2 of, to add Section 1161.2.5 to, to add and repeal Section 116.223 of, and to add and repeal Chapter 5 (commencing with Section 1179.01) of Title 3 of Part 3 of, the Code of Civil Procedure, relating to COVID-19 relief, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor August 31, 2020. Filed with Secretary
of State August 31, 2020.]

LEGISLATIVE COUNSEL'S DIGEST

AB 3088, Chiu. Tenancy: rental payment default: mortgage forbearance: state of emergency: COVID-19.

Existing law prescribes various requirements to be satisfied before the exercise of a power of sale under a mortgage or deed of trust. Existing law requires that a notice of default and a notice of sale be recorded and that specified periods of time elapse between the recording and the sale. Existing law establishes certain requirements in connection with foreclosures on mortgages and deeds of trust, including restrictions on the actions mortgage servicers may take while a borrower is attempting to secure a loan modification or has submitted a loan modification application. Existing law applies certain of those requirements only to a first lien mortgage or deed of trust that is secured by owner-occupied residential real property containing no more than four dwelling units.

This bill, the Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020, would, among other things, until January 1, 2023, additionally apply those protections to a first lien mortgage or deed of trust that is secured by residential real property that is occupied by a tenant, contains no more than four dwelling units, and meets certain criteria, including that a tenant occupying the property is unable to pay rent due to a reduction in income resulting from the novel coronavirus.

The bill would also enact the COVID-19 Small Landlord and Homeowner Relief Act of 2020 (Homeowner Act), which would require a mortgage servicer, as defined, to provide a specified written notice to a borrower, as defined, if the mortgage servicer denies forbearance during the effective time period, as defined, that states the reasons for that denial if the borrower was both current on payments as of February 1, 2020, and is experiencing a financial hardship that prevents the borrower from making timely payments

94

on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency. The Homeowner Act would also require a mortgage servicer to comply with applicable federal guidance regarding borrower options following a COVID-19 related forbearance.

Existing law provides that a tenant is guilty of unlawful detainer if the tenant continues to possess the property without permission of the landlord after the tenant defaults on rent or fails to perform a condition or covenant of the lease under which the property is held, among other reasons. Existing law requires a tenant be served a 3 days' notice in writing to cure a default or perform a condition of the lease, or return possession of the property to the landlord, as specified. Existing law, the Mobilehome Residency Law, prohibits a tenancy from being terminated unless specified conditions are met, including that the tenant fails to pay rent, utility charges, or reasonable incidental service charges, and 3 days' notice in writing is provided to the tenant, as specified.

This bill would, until February 1, 2025, enact the COVID-19 Tenant Relief Act of 2020 (Tenant Act). The Tenant Act would require that any 3 days' notice that demands payment of COVID-19 rental debt that is served on a tenant during the covered time period meet specified criteria, including that the notice include an unsigned copy of a declaration of COVID-19-related financial distress and that the notice advise the tenant that the tenant will not be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID-19-related financial distress to the landlord, as specified. The Tenant Act would define "covered time period" for purposes of these provisions to mean the time between March 1, 2020, and January 31, 2021. The Tenant Act would deem a 3 days' notice that fails to comply with this criteria void and insufficient to support a judgment for unlawful detainer or to terminate a tenancy under the Mobilehome Residency Law. The Tenant Act would prohibit a tenant that delivers a declaration, under penalty of perjury, of COVID-19-related financial distress pursuant to these provisions from being deemed in default with regard to the COVID-19 rental debt, as specified. By expanding the crime of perjury, this bill would create a state-mandated local program. The Tenant Act would prohibit a court from finding a tenant guilty of an unlawful detainer before February 1, 2021, subject to certain exceptions, including if the tenant was guilty of the unlawful detainer before March 1, 2020. The bill would prohibit, before October 5, 2020, a court from taking specified actions with respect to unlawful detainer actions, including issuing a summons on a complaint for unlawful detainer in any action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

The Tenant Act would also authorize a landlord to require a high-income tenant, as defined, to additionally submit documentation supporting the claim that the tenant has suffered COVID-19-related financial distress if the landlord has proof of income showing the tenant is a high-income tenant.

The Tenant Act would preempt an ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in

94

response to the COVID-19 pandemic to protect tenants from eviction based on nonpayment of rental payments, as specified.

The bill would require the Business, Consumer Services and Housing Agency to, in consultation with the Department of Finance, engage with residential tenants, landlords, property owners, deed-restricted affordable housing providers, and financial sector stakeholders about strategies and approaches to direct potential future federal stimulus funding to most effectively and efficiently provide relief to distressed tenants, landlords, and property owners, as specified.

Existing law prohibits a landlord from taking specified actions with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as the tenant's residence. Existing law makes a violator of those provisions subject to certain damages in a civil action.

This bill would, until February 1, 2021, make a violator of those provisions whose tenant has provided to that violator the declaration of COVID-19-related financial distress described above liable for damages in an amount between $1,000 and $2,500.

Existing law, The Small Claims Act, grants jurisdiction to a small claims court in cases where the amount demanded does not exceed $5,000, as specified, and prohibits a person from filing more than 2 small claims actions in which the amount demanded exceeds $2,500 anywhere in the state in any calendar year.

This bill would instead, until February 1, 2025, provide that a small claims court has jurisdiction in any action for recovery of COVID-19 rental debt, as defined, regardless of the amount demanded and would provide that a claim for recovery of a COVID-19 rental debt is exempt from the prohibition on filing more than 2 small claims actions described above.

Existing law, the Tenant Protection Act of 2019, prohibits, with certain exceptions, an owner of residential real property from increasing the gross rental rate for a dwelling or unit more than 5% plus the "percentage change in the cost of living," as defined, or 10%, whichever is lower, of the lowest gross rental rate charged for the immediately preceding 12 months, subject to specified conditions. The act exempts certain types of residential real properties, including dormitories constructed and maintained in connection with any higher education institution within the state for use and occupancy by students in attendance at the institution and housing that has been issued a certificate of occupancy within the previous 15 years.

This bill would revise and recast those exemptions to exempt dormitories owned and operated by an institution of higher education or a kindergarten and grades 1 to 12, inclusive, school. The bill would also make clarifying changes to the definition of "percentage change in the cost of living."

This bill would also make clarifying and conforming changes.

The bill would include findings that changes proposed by this bill address a matter of statewide concern rather than a municipal affair and, therefore, apply to all cities, including charter cities.

94

330

Ch. 37                    — 4 —

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1.   This act shall be known, and may be cited, as the Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020.

SEC. 2.   The Legislature finds and declares all of the following:

(a)  On March 4, 2020, Governor Gavin Newsom proclaimed a state of emergency in response to the COVID-19 pandemic. Measures necessary to contain the spread of COVID-19 have brought about widespread economic and societal disruption, placing the state in unprecedented circumstances.

(b)  At the end of 2019, California already faced a housing affordability crisis. United States Census data showed that a majority of California tenant households qualified as "rent-burdened," meaning that 30 percent or more of their income was used to pay rent. Over one-quarter of California tenant households were "severely rent-burdened," meaning that they were spending over one-half of their income on rent alone.

(c)  Millions of Californians are unexpectedly, and through no fault of their own, facing new public health requirements and unable to work and cover many basic expenses, creating tremendous uncertainty for California tenants, small landlords, and homeowners. While the Judicial Council's Emergency Rule 1, effective April 6, 2020, temporarily halted evictions and stabilized housing for distressed Californians in furtherance of public health goals, the Judicial Council voted on August 14, 2020, to extend these protections through September 1, 2020, to allow the Legislature time to act before the end of the 2019-20 Legislative Session.

(d)  There are strong indications that large numbers of California tenants will soon face eviction from their homes based on an inability to pay the rent or other financial obligations. Even if tenants are eventually able to pay their rent, small landlords will continue to face challenges covering their expenses, including mortgage payments in the ensuing months, placing them at risk of default and broader destabilization of the economy.

(e)  There are strong indications that many homeowners will also lose their homes to foreclosure. While temporary forbearance is available to homeowners with federally backed mortgages pursuant to the CARES Act, and while some other lenders have voluntarily agreed to provide borrowers with additional time to pay, not all mortgages are covered.

(f)  Stabilizing the housing situation for tenants and landlords is to the mutual benefit of both groups and will help the state address the pandemic, protect public health, and set the stage for recovery. It is, therefore, the

94

intent of the Legislature and the State of California to establish through statute a framework for all impacted parties to negotiate and avoid as many evictions and foreclosures as possible.

(g)  This bill shall not relieve tenants, homeowners, or landlords of their financial and contractual obligations, but rather it seeks to forestall massive social and public health harm by preventing unpaid rental debt from serving as a cause of action for eviction or foreclosure during this historic and unforeseeable period and from unduly burdening the recovery through negative credit reporting. This framework for temporary emergency relief for financially distressed tenants, homeowners, and small landlords seeks to help stabilize Californians through the state of emergency in protection of their health and without the loss of their homes and property.

SEC. 3.   Section 789.4 is added to the Civil Code, to read:

789.4.   (a)  In addition to the damages provided in subdivision (c) of Section 789.3 of the Civil Code, a landlord who violates Section 789.3 of the Civil Code, if the tenant has provided a declaration of COVID-19 financial distress pursuant to Section 1179.03 of the Code of Civil Procedure, shall be liable for damages in an amount that is at least one thousand dollars ($1,000) but not more than two thousand five hundred dollars ($2,500), as determined by the trier of fact.

(b)  This section shall remain in effect until February 1, 2021, and as of that date is repealed.

SEC. 4.   Section 798.56 of the Civil Code is amended to read:

798.56.   A tenancy shall be terminated by the management only for one or more of the following reasons:

(a)  Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency.

(b)  Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.

(c)  (1)  Conviction of the homeowner or resident for prostitution, for a violation of subdivision (d) of Section 243, paragraph (2) of subdivision (a), or subdivision (b), of Section 245, Section 288, or Section 451, of the Penal Code, or a felony controlled substance offense, if the act resulting in the conviction was committed anywhere on the premises of the mobilehome park, including, but not limited to, within the homeowner's mobilehome.

(2)  However, the tenancy may not be terminated for the reason specified in this subdivision if the person convicted of the offense has permanently vacated, and does not subsequently reoccupy, the mobilehome.

(d)  Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto.

No act or omission of the homeowner or resident shall constitute a failure to comply with a reasonable rule or regulation unless and until the management has given the homeowner written notice of the alleged rule or regulation violation and the homeowner or resident has failed to adhere to

94

the rule or regulation within seven days. However, if a homeowner has been given a written notice of an alleged violation of the same rule or regulation on three or more occasions within a 12-month period after the homeowner or resident has violated that rule or regulation, no written notice shall be required for a subsequent violation of the same rule or regulation.

Nothing in this subdivision shall relieve the management from its obligation to demonstrate that a rule or regulation has in fact been violated.

(e) (1) Except as provided for in the COVID-19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section 1179.01) of Title 3 of Part 3 of the Code of Civil Procedure), nonpayment of rent, utility charges, or reasonable incidental service charges; provided that the amount due has been unpaid for a period of at least five days from its due date, and provided that the homeowner shall be given a three-day written notice subsequent to that five-day period to pay the amount due or to vacate the tenancy. For purposes of this subdivision, the five-day period does not include the date the payment is due. The three-day written notice shall be given to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure. A copy of this notice shall be sent to the persons or entities specified in subdivision (b) of Section 798.55 within 10 days after notice is delivered to the homeowner. If the homeowner cures the default, the notice need not be sent. The notice may be given at the same time as the 60 days' notice required for termination of the tenancy. A three-day notice given pursuant to this subdivision shall contain the following provisions printed in at least 12-point boldface type at the top of the notice, with the appropriate number written in the blank:
"Warning: This notice is the (insert number) three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to Civil Code Section 798.56 (e) (5), if you have been given a three-day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12-month period, management is not required to give you a further three-day period to pay rent or vacate the tenancy before your tenancy can be terminated."

(2) Payment by the homeowner prior to the expiration of the three-day notice period shall cure a default under this subdivision. If the homeowner does not pay prior to the expiration of the three-day notice period, the homeowner shall remain liable for all payments due up until the time the tenancy is vacated.

(3) Payment by the legal owner, as defined in Section 18005.8 of the Health and Safety Code, any junior lienholder, as defined in Section 18005.3 of the Health and Safety Code, or the registered owner, as defined in Section 18009.5 of the Health and Safety Code, if other than the homeowner, on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice to the legal owner, each junior lienholder, and the registered owner provided in subdivision (b) of Section 798.55, shall cure a default under this subdivision with respect to that payment.

94

— 7 —                                    Ch. 37

(4) Cure of a default of rent, utility charges, or reasonable incidental service charges by the legal owner, any junior lienholder, or the registered owner, if other than the homeowner, as provided by this subdivision, may not be exercised more than twice during a 12-month period.

(5) If a homeowner has been given a three-day notice to pay the amount due or to vacate the tenancy on three or more occasions within the preceding 12-month period and each notice includes the provisions specified in paragraph (1), no written three-day notice shall be required in the case of a subsequent nonpayment of rent, utility charges, or reasonable incidental service charges.

In that event, the management shall give written notice to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure to remove the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice. A copy of this notice shall be sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, as specified in paragraph (b) of Section 798.55, by certified or registered mail, return receipt requested, within 10 days after notice is sent to the homeowner.

(6) When a copy of the 60 days' notice described in paragraph (5) is sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, the default may be cured by any of them on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice, if all of the following conditions exist:

(A) A copy of a three-day notice sent pursuant to subdivision (b) of Section 798.55 to a homeowner for the nonpayment of rent, utility charges, or reasonable incidental service charges was not sent to the legal owner, junior lienholder, or registered owner, of the mobilehome, if other than the homeowner, during the preceding 12-month period.

(B) The legal owner, junior lienholder, or registered owner of the mobilehome, if other than the homeowner, has not previously cured a default of the homeowner during the preceding 12-month period.

(C) The legal owner, junior lienholder or registered owner, if other than the homeowner, is not a financial institution or mobilehome dealer.

If the default is cured by the legal owner, junior lienholder, or registered owner within the 30-day period, the notice to remove the mobilehome from the park described in paragraph (5) shall be rescinded.

(f) Condemnation of the park.

(g) Change of use of the park or any portion thereof, provided:

(1) The management gives the homeowners at least 15 days' written notice that the management will be appearing before a local governmental board, commission, or body to request permits for a change of use of the mobilehome park.

(2) After all required permits requesting a change of use have been approved by the local governmental board, commission, or body, the management shall give the homeowners six months' or more written notice of termination of tenancy.

94

334

If the change of use requires no local governmental permits, then notice shall be given 12 months or more prior to the management's determination that a change of use will occur. The management in the notice shall disclose and describe in detail the nature of the change of use.

(3)  The management gives each proposed homeowner written notice thereof prior to the inception of the homeowner's tenancy that the management is requesting a change of use before local governmental bodies or that a change of use request has been granted.

(4)  The notice requirements for termination of tenancy set forth in Sections 798.56 and 798.57 shall be followed if the proposed change actually occurs.

(5)  A notice of a proposed change of use given prior to January 1, 1980, that conforms to the requirements in effect at that time shall be valid. The requirements for a notice of a proposed change of use imposed by this subdivision shall be governed by the law in effect at the time the notice was given.

(h)  The report required pursuant to subdivisions (b) and (i) of Section 65863.7 of the Government Code shall be given to the homeowners or residents at the same time that notice is required pursuant to subdivision (g) of this section.

(i)  For purposes of this section, "financial institution" means a state or national bank, state or federal savings and loan association or credit union, or similar organization, and mobilehome dealer as defined in Section 18002.6 of the Health and Safety Code or any other organization that, as part of its usual course of business, originates, owns, or provides loan servicing for loans secured by a mobilehome.

(j)  This section remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 5.  Section 798.56 is added to the Civil Code, to read:

798.56.  A tenancy shall be terminated by the management only for one or more of the following reasons:

(a)  Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency.

(b)  Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.

(c)  (1)  Conviction of the homeowner or resident for prostitution, for a violation of subdivision (d) of Section 243, paragraph (2) of subdivision (a), or subdivision (b), of Section 245, Section 288, or Section 451, of the Penal Code, or a felony controlled substance offense, if the act resulting in the conviction was committed anywhere on the premises of the mobilehome park, including, but not limited to, within the homeowner's mobilehome.

(2)  However, the tenancy may not be terminated for the reason specified in this subdivision if the person convicted of the offense has permanently vacated, and does not subsequently reoccupy, the mobilehome.

94

(d)  Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto.

No act or omission of the homeowner or resident shall constitute a failure to comply with a reasonable rule or regulation unless and until the management has given the homeowner written notice of the alleged rule or regulation violation and the homeowner or resident has failed to adhere to the rule or regulation within seven days. However, if a homeowner has been given a written notice of an alleged violation of the same rule or regulation on three or more occasions within a 12-month period after the homeowner or resident has violated that rule or regulation, no written notice shall be required for a subsequent violation of the same rule or regulation.

Nothing in this subdivision shall relieve the management from its obligation to demonstrate that a rule or regulation has in fact been violated.

(e) (1)  Nonpayment of rent, utility charges, or reasonable incidental service charges; provided that the amount due has been unpaid for a period of at least five days from its due date, and provided that the homeowner shall be given a three-day written notice subsequent to that five-day period to pay the amount due or to vacate the tenancy. For purposes of this subdivision, the five-day period does not include the date the payment is due. The three-day written notice shall be given to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure. A copy of this notice shall be sent to the persons or entities specified in subdivision (b) of Section 798.55 within 10 days after notice is delivered to the homeowner. If the homeowner cures the default, the notice need not be sent. The notice may be given at the same time as the 60 days' notice required for termination of the tenancy. A three-day notice given pursuant to this subdivision shall contain the following provisions printed in at least 12-point boldface type at the top of the notice, with the appropriate number written in the blank:

"Warning: This notice is the (insert number) three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to Civil Code Section 798.56 (e) (5), if you have been given a three-day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12-month period, management is not required to give you a further three-day period to pay rent or vacate the tenancy before your tenancy can be terminated."

(2)  Payment by the homeowner prior to the expiration of the three-day notice period shall cure a default under this subdivision. If the homeowner does not pay prior to the expiration of the three-day notice period, the homeowner shall remain liable for all payments due up until the time the tenancy is vacated.

(3)  Payment by the legal owner, as defined in Section 18005.8 of the Health and Safety Code, any junior lienholder, as defined in Section 18005.3 of the Health and Safety Code, or the registered owner, as defined in Section 18009.5 of the Health and Safety Code, if other than the homeowner, on

behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice to the legal owner, each junior lienholder, and the registered owner provided in subdivision (b) of Section 798.55, shall cure a default under this subdivision with respect to that payment.

(4)  Cure of a default of rent, utility charges, or reasonable incidental service charges by the legal owner, any junior lienholder, or the registered owner, if other than the homeowner, as provided by this subdivision, may not be exercised more than twice during a 12-month period.

(5)  If a homeowner has been given a three-day notice to pay the amount due or to vacate the tenancy on three or more occasions within the preceding 12-month period and each notice includes the provisions specified in paragraph (1), no written three-day notice shall be required in the case of a subsequent nonpayment of rent, utility charges, or reasonable incidental service charges.

In that event, the management shall give written notice to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure to remove the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice. A copy of this notice shall be sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, as specified in paragraph (b) of Section 798.55, by certified or registered mail, return receipt requested, within 10 days after notice is sent to the homeowner.

(6)  When a copy of the 60 days' notice described in paragraph (5) is sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, the default may be cured by any of them on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice, if all of the following conditions exist:

(A)  A copy of a three-day notice sent pursuant to subdivision (b) of Section 798.55 to a homeowner for the nonpayment of rent, utility charges, or reasonable incidental service charges was not sent to the legal owner, junior lienholder, or registered owner, of the mobilehome, if other than the homeowner, during the preceding 12-month period.

(B)  The legal owner, junior lienholder, or registered owner of the mobilehome, if other than the homeowner, has not previously cured a default of the homeowner during the preceding 12-month period.

(C)  The legal owner, junior lienholder or registered owner, if other than the homeowner, is not a financial institution or mobilehome dealer.

If the default is cured by the legal owner, junior lienholder, or registered owner within the 30-day period, the notice to remove the mobilehome from the park described in paragraph (5) shall be rescinded.

(f)  Condemnation of the park.

(g)  Change of use of the park or any portion thereof, provided:

(1)  The management gives the homeowners at least 15 days' written notice that the management will be appearing before a local governmental board, commission, or body to request permits for a change of use of the mobilehome park.

94

337

(2) After all required permits requesting a change of use have been approved by the local governmental board, commission, or body, the management shall give the homeowners six months' or more written notice of termination of tenancy.

If the change of use requires no local governmental permits, then notice shall be given 12 months or more prior to the management's determination that a change of use will occur. The management in the notice shall disclose and describe in detail the nature of the change of use.

(3) The management gives each proposed homeowner written notice thereof prior to the inception of the homeowner's tenancy that the management is requesting a change of use before local governmental bodies or that a change of use request has been granted.

(4) The notice requirements for termination of tenancy set forth in Sections 798.56 and 798.57 shall be followed if the proposed change actually occurs.

(5) A notice of a proposed change of use given prior to January 1, 1980, that conforms to the requirements in effect at that time shall be valid. The requirements for a notice of a proposed change of use imposed by this subdivision shall be governed by the law in effect at the time the notice was given.

(h) The report required pursuant to subdivisions (b) and (i) of Section 65863.7 of the Government Code shall be given to the homeowners or residents at the same time that notice is required pursuant to subdivision (g) of this section.

(i) For purposes of this section, "financial institution" means a state or national bank, state or federal savings and loan association or credit union, or similar organization, and mobilehome dealer as defined in Section 18002.6 of the Health and Safety Code or any other organization that, as part of its usual course of business, originates, owns, or provides loan servicing for loans secured by a mobilehome.

(j) This section shall become operative on February 1, 2025.

SEC. 6.  Section 1942.5 of the Civil Code is amended to read:

1942.5.  (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

94

(3)  After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4)  After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5)  After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b)  A lessee may not invoke subdivision (a) more than once in any 12-month period.

(c)  To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d)  Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. It is also unlawful for a lessor to bring an action for unlawful detainer based on a cause of action other than nonpayment of COVID-19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the purpose of retaliating against the lessee because the lessee has a COVID-19 rental debt. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e)  To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f)  This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g)  Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do

94

any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h)  Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1)  The actual damages sustained by the lessee.

(2)  Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i)  In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j)  The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k)  A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(*l*)  This section shall remain in effect until February 1, 2021, and as of that date is repealed.

SEC. 7.   Section 1942.5 is added to the Civil Code, to read:

1942.5.  (a)  If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1)  After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2)  After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3)  After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4)  After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5)  After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b)  A lessee may not invoke subdivision (a) more than once in any 12-month period.

94

(c)  To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d)  Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e)  To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f)  This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g)  Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h)  Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1)  The actual damages sustained by the lessee.

(2)  Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i)  In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j)  The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k)  A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

94

— 15 —                    Ch. 37

(*l*)  This section shall become operative on February 1, 2021.

SEC. 8.  Section 1946.2 of the Civil Code is amended to read:

1946.2.  (a) Notwithstanding any other law, after a tenant has continuously and lawfully occupied a residential real property for 12 months, the owner of the residential real property shall not terminate the tenancy without just cause, which shall be stated in the written notice to terminate tenancy. If any additional adult tenants are added to the lease before an existing tenant has continuously and lawfully occupied the residential real property for 24 months, then this subdivision shall only apply if either of the following are satisfied:

(1)  All of the tenants have continuously and lawfully occupied the residential real property for 12 months or more.

(2)  One or more tenants have continuously and lawfully occupied the residential real property for 24 months or more.

(b)  For purposes of this section, "just cause" includes either of the following:

(1)  At-fault just cause, which is any of the following:

(A)  Default in the payment of rent.

(B)  A breach of a material term of the lease, as described in paragraph (3) of Section 1161 of the Code of Civil Procedure, including, but not limited to, violation of a provision of the lease after being issued a written notice to correct the violation.

(C)  Maintaining, committing, or permitting the maintenance or commission of a nuisance as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(D)  Committing waste as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(E)  The tenant had a written lease that terminated on or after January 1, 2020, and after a written request or demand from the owner, the tenant has refused to execute a written extension or renewal of the lease for an additional term of similar duration with similar provisions, provided that those terms do not violate this section or any other provision of law.

(F)  Criminal activity by the tenant on the residential real property, including any common areas, or any criminal activity or criminal threat, as defined in subdivision (a) of Section 422 of the Penal Code, on or off the residential real property, that is directed at any owner or agent of the owner of the residential real property.

(G)  Assigning or subletting the premises in violation of the tenant's lease, as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(H)  The tenant's refusal to allow the owner to enter the residential real property as authorized by Sections 1101.5 and 1954 of this code, and Sections 13113.7 and 17926.1 of the Health and Safety Code.

(I)  Using the premises for an unlawful purpose as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(J)  The employee, agent, or licensee's failure to vacate after their termination as an employee, agent, or a licensee as described in paragraph (1) of Section 1161 of the Code of Civil Procedure.

94

342

(K)  When the tenant fails to deliver possession of the residential real property after providing the owner written notice as provided in Section 1946 of the tenant's intention to terminate the hiring of the real property, or makes a written offer to surrender that is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice as described in paragraph (5) of Section 1161 of the Code of Civil Procedure.

(2)  No-fault just cause, which includes any of the following:

(A)  (i)  Intent to occupy the residential real property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents.

(ii)  For leases entered into on or after July 1, 2020, clause (i) shall apply only if the tenant agrees, in writing, to the termination, or if a provision of the lease allows the owner to terminate the lease if the owner, or their spouse, domestic partner, children, grandchildren, parents, or grandparents, unilaterally decides to occupy the residential real property. Addition of a provision allowing the owner to terminate the lease as described in this clause to a new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1).

(B)  Withdrawal of the residential real property from the rental market.

(C)  (i)  The owner complying with any of the following:

(I)  An order issued by a government agency or court relating to habitability that necessitates vacating the residential real property.

(II)  An order issued by a government agency or court to vacate the residential real property.

(III)  A local ordinance that necessitates vacating the residential real property.

(ii)  If it is determined by any government agency or court that the tenant is at fault for the condition or conditions triggering the order or need to vacate under clause (i), the tenant shall not be entitled to relocation assistance as outlined in paragraph (3) of subdivision (d).

(D)  (i)  Intent to demolish or to substantially remodel the residential real property.

(ii)  For purposes of this subparagraph, "substantially remodel" means the replacement or substantial modification of any structural, electrical, plumbing, or mechanical system that requires a permit from a governmental agency, or the abatement of hazardous materials, including lead-based paint, mold, or asbestos, in accordance with applicable federal, state, and local laws, that cannot be reasonably accomplished in a safe manner with the tenant in place and that requires the tenant to vacate the residential real property for at least 30 days. Cosmetic improvements alone, including painting, decorating, and minor repairs, or other work that can be performed safely without having the residential real property vacated, do not qualify as substantial rehabilitation.

(c)  Before an owner of residential real property issues a notice to terminate a tenancy for just cause that is a curable lease violation, the owner shall first give notice of the violation to the tenant with an opportunity to

94

cure the violation pursuant to paragraph (3) of Section 1161 of the Code of Civil Procedure. If the violation is not cured within the time period set forth in the notice, a three-day notice to quit without an opportunity to cure may thereafter be served to terminate the tenancy.

(d) (1) For a tenancy for which just cause is required to terminate the tenancy under subdivision (a), if an owner of residential real property issues a termination notice based on a no-fault just cause described in paragraph (2) of subdivision (b), the owner shall, regardless of the tenant's income, at the owner's option, do one of the following:

(A) Assist the tenant to relocate by providing a direct payment to the tenant as described in paragraph (3).

(B) Waive in writing the payment of rent for the final month of the tenancy, prior to the rent becoming due.

(2) If an owner issues a notice to terminate a tenancy for no-fault just cause, the owner shall notify the tenant of the tenant's right to relocation assistance or rent waiver pursuant to this section. If the owner elects to waive the rent for the final month of the tenancy as provided in subparagraph (B) of paragraph (1), the notice shall state the amount of rent waived and that no rent is due for the final month of the tenancy.

(3) (A) The amount of relocation assistance or rent waiver shall be equal to one month of the tenant's rent that was in effect when the owner issued the notice to terminate the tenancy. Any relocation assistance shall be provided within 15 calendar days of service of the notice.

(B) If a tenant fails to vacate after the expiration of the notice to terminate the tenancy, the actual amount of any relocation assistance or rent waiver provided pursuant to this subdivision shall be recoverable as damages in an action to recover possession.

(C) The relocation assistance or rent waiver required by this subdivision shall be credited against any other relocation assistance required by any other law.

(4) An owner's failure to strictly comply with this subdivision shall render the notice of termination void.

(e) This section shall not apply to the following types of residential real properties or residential circumstances:

(1) Transient and tourist hotel occupancy as defined in subdivision (b) of Section 1940.

(2) Housing accommodations in a nonprofit hospital, religious facility, extended care facility, licensed residential care facility for the elderly, as defined in Section 1569.2 of the Health and Safety Code, or an adult residential facility, as defined in Chapter 6 of Division 6 of Title 22 of the Manual of Policies and Procedures published by the State Department of Social Services.

(3) Dormitories owned and operated by an institution of higher education or a kindergarten and grades 1 to 12, inclusive, school.

(4) Housing accommodations in which the tenant shares bathroom or kitchen facilities with the owner who maintains their principal residence at the residential real property.

94

Ch. 37                    — 18 —

(5)  Single-family owner-occupied residences, including a residence in which the owner-occupant rents or leases no more than two units or bedrooms, including, but not limited to, an accessory dwelling unit or a junior accessory dwelling unit.

(6)  A property containing two separate dwelling units within a single structure in which the owner occupied one of the units as the owner's principal place of residence at the beginning of the tenancy, so long as the owner continues in occupancy, and neither unit is an accessory dwelling unit or a junior accessory dwelling unit.

(7)  Housing that has been issued a certificate of occupancy within the previous 15 years.

(8)  Residential real property that is alienable separate from the title to any other dwelling unit, provided that both of the following apply:

(A)  The owner is not any of the following:

(i)  A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.

(ii)  A corporation.

(iii)  A limited liability company in which at least one member is a corporation.

(B)  (i)  The tenants have been provided written notice that the residential property is exempt from this section using the following statement:

"This property is not subject to the rent limits imposed by Section 1947.12 of the Civil Code and is not subject to the just cause requirements of Section 1946.2 of the Civil Code. This property meets the requirements of Sections 1947.12 (d)(5) and 1946.2 (e)(8) of the Civil Code and the owner is not any of the following: (1) a real estate investment trust, as defined by Section 856 of the Internal Revenue Code; (2) a corporation; or (3) a limited liability company in which at least one member is a corporation."

(ii)  For a tenancy existing before July 1, 2020, the notice required under clause (i) may, but is not required to, be provided in the rental agreement.

(iii)  For any tenancy commenced or renewed on or after July 1, 2020, the notice required under clause (i) must be provided in the rental agreement.

(iv)  Addition of a provision containing the notice required under clause (i) to any new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1) of subdivision (b).

(9)  Housing restricted by deed, regulatory restriction contained in an agreement with a government agency, or other recorded document as affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code, or subject to an agreement that provides housing subsidies for affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code or comparable federal statutes.

94

— 19 —                              Ch. 37

(f)  An owner of residential real property subject to this section shall provide notice to the tenant as follows:

(1)  For any tenancy commenced or renewed on or after July 1, 2020, as an addendum to the lease or rental agreement, or as a written notice signed by the tenant, with a copy provided to the tenant.

(2)  For a tenancy existing prior to July 1, 2020, by written notice to the tenant no later than August 1, 2020, or as an addendum to the lease or rental agreement.

(3)  The notification or lease provision shall be in no less than 12-point type, and shall include the following:

"California law limits the amount your rent can be increased. See Section 1947.12 of the Civil Code for more information. California law also provides that after all of the tenants have continuously and lawfully occupied the property for 12 months or more or at least one of the tenants has continuously and lawfully occupied the property for 24 months or more, a landlord must provide a statement of cause in any notice to terminate a tenancy. See Section 1946.2 of the Civil Code for more information."

The provision of the notice shall be subject to Section 1632.

(g)  (1)  This section does not apply to the following residential real property:

(A)  Residential real property subject to a local ordinance requiring just cause for termination of a residential tenancy adopted on or before September 1, 2019, in which case the local ordinance shall apply.

(B)  Residential real property subject to a local ordinance requiring just cause for termination of a residential tenancy adopted or amended after September 1, 2019, that is more protective than this section, in which case the local ordinance shall apply. For purposes of this subparagraph, an ordinance is "more protective" if it meets all of the following criteria:

(i)  The just cause for termination of a residential tenancy under the local ordinance is consistent with this section.

(ii)  The ordinance further limits the reasons for termination of a residential tenancy, provides for higher relocation assistance amounts, or provides additional tenant protections that are not prohibited by any other provision of law.

(iii)  The local government has made a binding finding within their local ordinance that the ordinance is more protective than the provisions of this section.

(2)  A residential real property shall not be subject to both a local ordinance requiring just cause for termination of a residential tenancy and this section.

(3)  A local ordinance adopted after September 1, 2019, that is less protective than this section shall not be enforced unless this section is repealed.

(h)  Any waiver of the rights under this section shall be void as contrary to public policy.

94

346

(i)  For the purposes of this section, the following definitions shall apply:

(1)  "Owner" and "residential real property" have the same meaning as those terms are defined in Section 1954.51.

(2)  "Tenancy" means the lawful occupation of residential real property and includes a lease or sublease.

(j)  This section shall remain in effect only until January 1, 2030, and as of that date is repealed.

SEC. 9.  Section 1947.12 of the Civil Code is amended to read:

1947.12.  (a) (1)  Subject to subdivision (b), an owner of residential real property shall not, over the course of any 12-month period, increase the gross rental rate for a dwelling or a unit more than 5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower, of the lowest gross rental rate charged for that dwelling or unit at any time during the 12 months prior to the effective date of the increase. In determining the lowest gross rental amount pursuant to this section, any rent discounts, incentives, concessions, or credits offered by the owner of such unit of residential real property and accepted by the tenant shall be excluded. The gross per-month rental rate and any owner-offered discounts, incentives, concessions, or credits shall be separately listed and identified in the lease or rental agreement or any amendments to an existing lease or rental agreement.

(2)  If the same tenant remains in occupancy of a unit of residential real property over any 12-month period, the gross rental rate for the unit of residential real property shall not be increased in more than two increments over that 12-month period, subject to the other restrictions of this subdivision governing gross rental rate increase.

(b)  For a new tenancy in which no tenant from the prior tenancy remains in lawful possession of the residential real property, the owner may establish the initial rental rate not subject to subdivision (a). Subdivision (a) is only applicable to subsequent increases after that initial rental rate has been established.

(c)  A tenant of residential real property subject to this section shall not enter into a sublease that results in a total rent for the premises that exceeds the allowable rental rate authorized by subdivision (a). Nothing in this subdivision authorizes a tenant to sublet or assign the tenant's interest where otherwise prohibited.

(d)  This section shall not apply to the following residential real properties:

(1)  Housing restricted by deed, regulatory restriction contained in an agreement with a government agency, or other recorded document as affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code, or subject to an agreement that provides housing subsidies for affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code or comparable federal statutes.

(2)  Dormitories owned and operated by an institution of higher education or a kindergarten and grades 1 to 12, inclusive, school.

94

(3)  Housing subject to rent or price control through a public entity's valid exercise of its police power consistent with Chapter 2.7 (commencing with Section 1954.50) that restricts annual increases in the rental rate to an amount less than that provided in subdivision (a).

(4)  Housing that has been issued a certificate of occupancy within the previous 15 years.

(5)  Residential real property that is alienable separate from the title to any other dwelling unit, provided that both of the following apply:

(A)  The owner is not any of the following:

(i)  A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.

(ii)  A corporation.

(iii)  A limited liability company in which at least one member is a corporation.

(B)  (i)  The tenants have been provided written notice that the residential real property is exempt from this section using the following statement:

"This property is not subject to the rent limits imposed by Section 1947.12 of the Civil Code and is not subject to the just cause requirements of Section 1946.2 of the Civil Code. This property meets the requirements of Sections 1947.12 (d)(5) and 1946.2 (e)(8) of the Civil Code and the owner is not any of the following: (1) a real estate investment trust, as defined by Section 856 of the Internal Revenue Code; (2) a corporation; or (3) a limited liability company in which at least one member is a corporation."

(ii)  For a tenancy existing before July 1, 2020, the notice required under clause (i) may, but is not required to, be provided in the rental agreement.

(iii)  For a tenancy commenced or renewed on or after July 1, 2020, the notice required under clause (i) must be provided in the rental agreement.

(iv)  Addition of a provision containing the notice required under clause (i) to any new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1) of subdivision (b) of Section 1946.2.

(6)  A property containing two separate dwelling units within a single structure in which the owner occupied one of the units as the owner's principal place of residence at the beginning of the tenancy, so long as the owner continues in occupancy, and neither unit is an accessory dwelling unit or a junior accessory dwelling unit.

(e)  An owner shall provide notice of any increase in the rental rate, pursuant to subdivision (a), to each tenant in accordance with Section 827.

(f)  (1)  On or before January 1, 2030, the Legislative Analyst's Office shall report to the Legislature regarding the effectiveness of this section and Section 1947.13. The report shall include, but not be limited to, the impact of the rental rate cap pursuant to subdivision (a) on the housing market within the state.

(2)  The report required by paragraph (1) shall be submitted in compliance with Section 9795 of the Government Code.

94

(g)  For the purposes of this section, the following definitions shall apply:

(1)  "Consumer Price Index for All Urban Consumers for All Items" means the following:

(A)  The Consumer Price Index for All Urban Consumers for All Items (CPI-U) for the metropolitan area in which the property is located, as published by the United States Bureau of Labor Statistics, which are as follows:

(i)  The CPI-U for the Los Angeles-Long Beach-Anaheim metropolitan area covering the Counties of Los Angeles and Orange.

(ii)  The CPI-U for the Riverside-San Bernardo-Ontario metropolitan area covering the Counties of Riverside and San Bernardino.

(iii)  The CPI-U for the San Diego-Carlsbad metropolitan area covering the County of San Diego.

(iv)  The CPI-U for the San Francisco-Oakland-Hayward metropolitan area covering the Counties of Alameda, Contra Costa, Marin, San Francisco, and San Mateo.

(v)  Any successor metropolitan area index to any of the indexes listed in clauses (i) to (iv), inclusive.

(B)  If the United States Bureau of Labor Statistics does not publish a CPI-U for the metropolitan area in which the property is located, the California Consumer Price Index for All Urban Consumers for All Items as published by the Department of Industrial Relations.

(C)  On or after January 1, 2021, if the United States Bureau of Labor Statistics publishes a CPI-U index for one or more metropolitan areas not listed in subparagraph (A), that CPI-U index shall apply in those areas with respect to rent increases that take effect on or after August 1 of the calendar year in which the 12-month change in that CPI-U, as described in subparagraph (B) of paragraph (3), is first published.

(2)  "Owner" and "residential real property" shall have the same meaning as those terms are defined in Section 1954.51.

(3)  (A)  "Percentage change in the cost of living" means the percentage change, computed pursuant to subparagraph (B), in the applicable, as determined pursuant to paragraph (1), Consumer Price Index for All Urban Consumers for All Items.

(B)  (i)  For rent increases that take effect before August 1 of any calendar year, the following shall apply:

(I)  The percentage change shall be the percentage change in the amount published for April of the immediately preceding calendar year and April of the year before that.

(II)  If there is not an amount published in April for the applicable geographic area, the percentage change shall be the percentage change in the amount published for March of the immediately preceding calendar year and March of the year before that.

(ii)  For rent increases that take effect on or after August 1 of any calendar year, the following shall apply:

94

349

(I)  The percentage change shall be the percentage change in the amount published for April of that calendar year and April of the immediately preceding calendar year.

(II)  If there is not an amount published in April for the applicable geographic area, the percentage change shall be the percentage change in the amount published for March of that calendar year and March of the immediately preceding calendar year.

(iii)  The percentage change shall be rounded to the nearest one-tenth of 1 percent.

(4)  "Tenancy" means the lawful occupation of residential real property and includes a lease or sublease.

(h)  (1)  This section shall apply to all rent increases subject to subdivision (a) occurring on or after March 15, 2019.

(2)  In the event that an owner has increased the rent by more than the amount permissible under subdivision (a) between March 15, 2019, and January 1, 2020, both of the following shall apply:

(A)  The applicable rent on January 1, 2020, shall be the rent as of March 15, 2019, plus the maximum permissible increase under subdivision (a).

(B)  An owner shall not be liable to the tenant for any corresponding rent overpayment.

(3)  An owner of residential real property subject to subdivision (a) who increased the rental rate on that residential real property on or after March 15, 2019, but prior to January 1, 2020, by an amount less than the rental rate increase permitted by subdivision (a) shall be allowed to increase the rental rate twice, as provided in paragraph (2) of subdivision (a), within 12 months of March 15, 2019, but in no event shall that rental rate increase exceed the maximum rental rate increase permitted by subdivision (a).

(i)  Any waiver of the rights under this section shall be void as contrary to public policy.

(j)  This section shall remain in effect until January 1, 2030, and as of that date is repealed.

(k)  (1)  The Legislature finds and declares that the unique circumstances of the current housing crisis require a statewide response to address rent gouging by establishing statewide limitations on gross rental rate increases.

(2)  It is the intent of the Legislature that this section should apply only for the limited time needed to address the current statewide housing crisis, as described in paragraph (1). This section is not intended to expand or limit the authority of local governments to establish local policies regulating rents consistent with Chapter 2.7 (commencing with Section 1954.50), nor is it a statement regarding the appropriate, allowable rental rate increase when a local government adopts a policy regulating rent that is otherwise consistent with Chapter 2.7 (commencing with Section 1954.50).

(3)  Nothing in this section authorizes a local government to establish limitations on any rental rate increases not otherwise permissible under Chapter 2.7 (commencing with Section 1954.50), or affects the existing authority of a local government to adopt or maintain rent controls or price controls consistent with that chapter.

94

SEC. 10.  Section 1947.13 of the Civil Code is amended to read:

1947.13.  (a)  Notwithstanding subdivision (a) of Section 1947.12, upon the expiration of rental restrictions, the following shall apply:

(1)  The owner of an assisted housing development who demonstrates, under penalty of perjury, compliance with all applicable provisions of Sections 65863.10, 65863.11, and 65863.13 of the Government Code and any other applicable federal, state, or local law or regulation may establish the initial unassisted rental rate for units in the applicable housing development. Any subsequent rent increase in the development shall be subject to Section 1947.12.

(2)  The owner of a deed-restricted affordable housing unit or an affordable housing unit subject to a regulatory restriction contained in an agreement with a government agency limiting rental rates that is not within an assisted housing development may, subject to any applicable federal, state, or local law or regulation, establish the initial rental rate for the unit upon the expiration of the restriction. Any subsequent rent increase for the unit shall be subject to Section 1947.12.

(b)  For purposes of this section:

(1)  "Assisted housing development" has the same meaning as defined in paragraph (3) of subdivision (a) of Section 65863.10 of the Government Code.

(2)  "Expiration of rental restrictions" has the same meaning as defined in paragraph (5) of subdivision (a) of Section 65863.10 of the Government Code.

(c)  This section shall remain in effect until January 1, 2030, and as of that date is repealed.

(d)  Any waiver of the rights under this section shall be void as contrary to public policy.

(e)  This section shall not be construed to preempt any local law.

SEC. 11.  Section 2924.15 of the Civil Code is amended to read:

2924.15.  (a)  Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to a first lien mortgage or deed of trust that meets either of the following criteria:

(1)  (A)  The first lien mortgage or deed of trust is secured by owner-occupied residential real property containing no more than four dwelling units.

(B)  For purposes of this paragraph, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(2)  The first lien mortgage or deed of trust is secured by residential real property that is occupied by a tenant, contains no more than four dwelling units, and meets all of the conditions described in subparagraph (B).

(A)  For the purposes of this paragraph:

(i)  "Applicable lease" means a lease entered pursuant to an arm's length transaction before, and in effect on, March 4, 2020.

94

(ii)  "Arm's length transaction" means a lease entered into in good faith and for valuable consideration that reflects the fair market value in the open market between informed and willing parties.

(iii)  "Occupied by a tenant" means that the property is the principal residence of a tenant.

(B)  To meet the conditions of this subdivision, a first lien mortgage or deed of trust shall have all of the following characteristics:

(i)  The property is owned by an individual who owns no more than three residential real properties, or by one or more individuals who together own no more than three residential real properties, each of which contains no more than four dwelling units.

(ii)  The property is occupied by a tenant pursuant to an applicable lease.

(iii)  A tenant occupying the property is unable to pay rent due to a reduction in income resulting from the novel coronavirus.

(C)  Relief shall be available pursuant to subdivision (a) of Section 2924 and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 for so long as the property remains occupied by a tenant pursuant to a lease entered in an arm's length transaction.

(b)  This section shall remain in effect until January 1, 2023, and as of that date is repealed.

SEC. 12.  Section 2924.15 is added to the Civil Code, to read:

2924.15.  (a)  Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924 and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to a first lien mortgage or deed of trust that is secured by owner-occupied residential real property containing no more than four dwelling units.

(b)  As used in this section, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(c)  This section shall become operative on January 1, 2023.

SEC. 13.  Title 19 (commencing with Section 3273.01) is added to Part 4 of Division 3 of the Civil Code, to read:

### TITLE 19.  COVID-19 SMALL LANDLORD AND HOMEOWNER RELIEF ACT

#### Chapter 1.  Title and Definitions

3273.01.  This title is known, and may be cited, as the "COVID-19 Small Landlord and Homeowner Relief Act of 2020."

3273.1.  For purposes of this title:

(a)  (1)  "Borrower" means any of the following:

(A)  A natural person who is a mortgagor or trustor or a confirmed successor in interest, as defined in Section 1024.31 of Title 12 of the Code of Federal Regulations.

94

(B) An entity other than a natural person only if the secured property contains no more than four dwelling units and is currently occupied by one or more residential tenants.

(2) "Borrower" shall not include an individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(3) Unless the property securing the mortgage contains one or more deed-restricted affordable housing units or one or more affordable housing units subject to a regulatory restriction limiting rental rates that is contained in an agreement with a government agency, the following mortgagors shall not be considered a "borrower":

(A) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.

(B) A corporation.

(C) A limited liability company in which at least one member is a corporation.

(4) "Borrower" shall also mean a person who holds a power of attorney for a borrower described in paragraph (1).

(b) "Effective time period" means the time period between the operational date of this title and April 1, 2021.

(c) (1) "Mortgage servicer" or "lienholder" means a person or entity who directly services a loan or who is responsible for interacting with the borrower, managing the loan account on a daily basis, including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent.

(2) "Mortgage servicer" or "lienholder" also means a subservicing agent to a master servicer by contract.

(3) "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

3273.2.  (a) The provisions of this title apply to a mortgage or deed of trust that is secured by residential property containing no more than four dwelling units, including individual units of condominiums or cooperatives, and that was outstanding as of the enactment date of this title.

(b) The provisions of this title shall apply to a depository institution chartered under federal or state law, a person covered by the licensing requirements of Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code.

## Chapter 2. Mortgages

3273.10.  (a) If a mortgage servicer denies a forbearance request made during the effective time period, the mortgage servicer shall provide written

94

notice to the borrower that sets forth the specific reason or reasons that forbearance was not provided, if both of the following conditions are met:

(1)  The borrower was current on payment as of February 1, 2020.

(2)  The borrower is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency.

(b)  If the written notice in subdivision (a) cites any defect in the borrower's request, including an incomplete application or missing information, that is curable, the mortgage servicer shall do all of the following:

(1)  Specifically identify any curable defect in the written notice.

(2)  Provide 21 days from the mailing date of the written notice for the borrower to cure any identified defect.

(3)  Accept receipt of the borrower's revised request for forbearance before the aforementioned 21-day period lapses.

(4)  Respond to the borrower's revised request within five business days of receipt of the revised request.

(c)  If a mortgage servicer denies a forbearance request, the declaration required by subdivision (b) of Section 2923.5 shall include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

(d)  A mortgage servicer, mortgagee, or beneficiary of the deed of trust, or an authorized agent thereof, who, with respect to a borrower of a federally backed mortgage, complies with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, shall be deemed to be in compliance with this section. A mortgage servicer of a nonfederally backed mortgage that provides forbearance that is consistent with the requirements of the CARES Act for federally backed mortgages shall be deemed to be in compliance with this section.

3273.11.  (a)  A mortgage servicer shall comply with applicable federal guidance regarding borrower options following a COVID-19 related forbearance.

(b)  Any mortgage servicer, mortgagee, or beneficiary of the deed of trust, or authorized agent thereof, who, with respect to a borrower of a federally backed loan, complies with the guidance to mortgagees regarding borrower options following a COVID-19-related forbearance provided by the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), the Federal Housing Administration of the United States Department of Housing and Urban Development, the United States Department of Veterans Affairs, or the Rural Development division of the United States Department of Agriculture, including any amendments, updates, or revisions to that guidance, shall be deemed to be in compliance with this section.

(c)  With respect to a nonfederally backed loan, any mortgage servicer, mortgagee, or beneficiary of the deed of trust, or authorized agent thereof,

94

who, regarding borrower options following a COVID-19 related forbearance, reviews a customer for a solution that is consistent with the guidance to servicers, mortgagees, or beneficiaries provided by Fannie Mae, Freddie Mac, the Federal Housing Administration of the Department of Housing and Urban Development, the Department of Veterans Affairs, or the Rural Development division of the Department of Agriculture, including any amendments, updates or revisions to such guidance, shall be deemed to be in compliance with this section.

3273.12.  It is the intent of the Legislature that a mortgage servicer offer a borrower a postforbearance loss mitigation option that is consistent with the mortgage servicer's contractual or other authority.

3273.14.  A mortgage servicer shall communicate about forbearance and postforbearance options described in this article in the borrower's preferred language when the mortgage servicer regularly communicates with any borrower in that language.

3273.15.  (a)  A borrower who is harmed by a material violation of this title may bring an action to obtain injunctive relief, damages, restitution, and any other remedy to redress the violation.

(b)  A court may award a prevailing borrower reasonable attorney's fees and costs in any action based on any violation of this title in which injunctive relief against a sale, including a temporary restraining order, is granted. A court may award a prevailing borrower reasonable attorney's fees and costs in an action for a violation of this article in which relief is granted but injunctive relief against a sale is not granted.

(c)  The rights, remedies, and procedures provided to borrowers by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. This section shall not be construed to alter, limit, or negate any other rights, remedies, or procedures provided to borrowers by law.

3273.16.  Any waiver by a borrower of the provisions of this article is contrary to public policy and shall be void.

SEC. 14.  Section 116.223 is added to the Code of Civil Procedure, to read:

116.223.  (a)  The Legislature hereby finds and declares as follows:

(1)  There is anticipated to be an unprecedented number of claims arising out of nonpayment of residential rent that occurred between March 1, 2020, and January 31, 2021, related to the COVID-19 pandemic.

(2)  These disputes are of special importance to the parties and of significant social and economic consequence collectively as the people of the State of California grapple with the health, economic, and social impacts of the COVID-19 pandemic.

(3)  It is essential that the parties have access to a judicial forum to resolve these disputes expeditiously, inexpensively, and fairly.

(4)  It is the intent of the Legislature that landlords of residential real property and their tenants have the option to litigate disputes regarding rent which is unpaid for the time period between March 1, 2020, and January 31, 2021, in the small claims court. It is the intent of the Legislature that

94

the jurisdictional limits of the small claims court not apply to these disputes over COVID-19 rental debt.

(b) (1)  Notwithstanding paragraph (1) of subdivision (a) Section 116.220, Section 116.221, or any other law, the small claims court has jurisdiction in any action for recovery of COVID-19 rental debt, as defined in Section 1179.02, and any defenses thereto, regardless of the amount demanded.

(2)  In an action described in paragraph (1), the court shall reduce the damages awarded for any amount of COVID-19 rental debt sought by payments made to the landlord to satisfy the COVID-19 rental debt, including payments by the tenant, rental assistance programs, or another third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(3)  An action to recover COVID-19 rental debt, as defined in Section 1179.02, brought pursuant to this subdivision shall not be commenced before March 1, 2021.

(c)  Any claim for recovery of COVID-19 rental debt, as defined in Section 1179.02, shall not be subject to Section 116.231, notwithstanding the fact that a landlord of residential rental property may have brought two or more small claims actions in which the amount demanded exceeded two thousand five hundred dollars ($2,500) in any calendar year.

(d)  This section shall remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 15.  Section 1161 of the Code of Civil Procedure is amended to read:

1161.  A tenant of real property, for a term less than life, or the executor or administrator of the tenant's estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer:

1.  When the tenant continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to the tenant; provided the expiration is of a nondefault nature however brought about without the permission of the landlord, or the successor in estate of the landlord, if applicable; including the case where the person to be removed became the occupant of the premises as a servant, employee, agent, or licensee and the relation of master and servant, or employer and employee, or principal and agent, or licensor and licensee, has been lawfully terminated or the time fixed for occupancy by the agreement between the parties has expired; but nothing in this subdivision shall be construed as preventing the removal of the occupant in any other lawful manner; but in case of a tenancy at will, it shall first be terminated by notice, as prescribed in the Civil Code.

2.  When the tenant continues in possession, in person or by subtenant, without the permission of the landlord, or the successor in estate of the landlord, if applicable, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring its payment, stating the amount that is due, the name, telephone number, and address of the person to whom the rent payment shall be made,

94

and, if payment may be made personally, the usual days and hours that
person will be available to receive the payment (provided that, if the address
does not allow for personal delivery, then it shall be conclusively presumed
that upon the mailing of any rent or notice to the owner by the tenant to the
name and address provided, the notice or rent is deemed received by the
owner on the date posted, if the tenant can show proof of mailing to the
name and address provided by the owner), or the number of an account in
a financial institution into which the rental payment may be made, and the
name and street address of the institution (provided that the institution is
located within five miles of the rental property), or if an electronic funds
transfer procedure has been previously established, that payment may be
made pursuant to that procedure, or possession of the property, shall have
been served upon the tenant and if there is a subtenant in actual occupation
of the premises, also upon the subtenant.

The notice may be served at any time within one year after the rent
becomes due. In all cases of tenancy upon agricultural lands, if the tenant
has held over and retained possession for more than 60 days after the
expiration of the term without any demand of possession or notice to quit
by the landlord or the successor in estate of the landlord, if applicable, the
tenant shall be deemed to be holding by permission of the landlord or
successor in estate of the landlord, if applicable, and shall be entitled to hold
under the terms of the lease for another full year, and shall not be guilty of
an unlawful detainer during that year, and the holding over for that period
shall be taken and construed as a consent on the part of a tenant to hold for
another year.

An unlawful detainer action under this paragraph shall be subject to the
COVID-19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section
1179.01)) if the default in the payment of rent is based upon the COVID-19
rental debt.

3.  When the tenant continues in possession, in person or by subtenant,
after a neglect or failure to perform other conditions or covenants of the
lease or agreement under which the property is held, including any covenant
not to assign or sublet, than the one for the payment of rent, and three days'
notice, excluding Saturdays and Sundays and other judicial holidays, in
writing, requiring the performance of those conditions or covenants, or the
possession of the property, shall have been served upon the tenant, and if
there is a subtenant in actual occupation of the premises, also, upon the
subtenant. Within three days, excluding Saturdays and Sundays and other
judicial holidays, after the service of the notice, the tenant, or any subtenant
in actual occupation of the premises, or any mortgagee of the term, or other
person interested in its continuance, may perform the conditions or covenants
of the lease or pay the stipulated rent, as the case may be, and thereby save
the lease from forfeiture; provided, if the conditions and covenants of the
lease, violated by the lessee, cannot afterward be performed, then no notice,
as last prescribed herein, need be given to the lessee or the subtenant,
demanding the performance of the violated conditions or covenants of the
lease.

94

A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a subtenant or held by a servant, employee, agent, or licensee, in case of that person's unlawful detention of the premises underlet to or held by that person.

An unlawful detainer action under this paragraph shall be subject to the COVID-19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section 1179.01)) if the neglect or failure to perform other conditions or covenants of the lease or agreement is based upon the COVID-19 rental debt.

4.  Any tenant, subtenant, or executor or administrator of that person's estate heretofore qualified and now acting, or hereafter to be qualified and act, assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of the lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using the premises for an unlawful purpose, thereby terminates the lease, and the landlord, or the landlord's successor in estate, shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of the demised premises under this chapter. For purposes of this subdivision, a person who commits or maintains a public nuisance as described in Section 3482.8 of the Civil Code, or who commits an offense described in subdivision (c) of Section 3485 of the Civil Code, or subdivision (c) of Section 3486 of the Civil Code, or uses the premises to further the purpose of that offense shall be deemed to have committed a nuisance upon the premises.

5.  When the tenant gives written notice as provided in Section 1946 of the Civil Code of the tenant's intention to terminate the hiring of the real property, or makes a written offer to surrender which is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice, without the permission of the landlord, or the successor in estate of the landlord, if applicable.

6.  As used in this section:

"COVID-19 rental debt" has the same meaning as defined in Section 1179.02.

"Tenant" includes any person who hires real property except those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

7.  This section shall remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 16.   Section 1161 is added to the Code of Civil Procedure, to read:

1161.   A tenant of real property, for a term less than life, or the executor or administrator of the tenant's estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer:

1.  When the tenant continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to the tenant; provided the expiration is of a nondefault nature however brought about without the permission of the landlord, or the successor in estate of the landlord, if applicable; including the case where the person to be removed became the occupant of the premises as a servant,

94

employee, agent, or licensee and the relation of master and servant, or employer and employee, or principal and agent, or licensor and licensee, has been lawfully terminated or the time fixed for occupancy by the agreement between the parties has expired; but nothing in this subdivision shall be construed as preventing the removal of the occupant in any other lawful manner; but in case of a tenancy at will, it shall first be terminated by notice, as prescribed in the Civil Code.

2. When the tenant continues in possession, in person or by subtenant, without the permission of the landlord, or the successor in estate of the landlord, if applicable, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring its payment, stating the amount that is due, the name, telephone number, and address of the person to whom the rent payment shall be made, and, if payment may be made personally, the usual days and hours that person will be available to receive the payment (provided that, if the address does not allow for personal delivery, then it shall be conclusively presumed that upon the mailing of any rent or notice to the owner by the tenant to the name and address provided, the notice or rent is deemed received by the owner on the date posted, if the tenant can show proof of mailing to the name and address provided by the owner), or the number of an account in a financial institution into which the rental payment may be made, and the name and street address of the institution (provided that the institution is located within five miles of the rental property), or if an electronic funds transfer procedure has been previously established, that payment may be made pursuant to that procedure, or possession of the property, shall have been served upon the tenant and if there is a subtenant in actual occupation of the premises, also upon the subtenant.

The notice may be served at any time within one year after the rent becomes due. In all cases of tenancy upon agricultural lands, if the tenant has held over and retained possession for more than 60 days after the expiration of the term without any demand of possession or notice to quit by the landlord or the successor in estate of the landlord, if applicable, the tenant shall be deemed to be holding by permission of the landlord or successor in estate of the landlord, if applicable, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during that year, and the holding over for that period shall be taken and construed as a consent on the part of a tenant to hold for another year.

3. When the tenant continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring the performance of those conditions or covenants, or the possession of the property, shall have been served upon the tenant, and if there is a subtenant in actual occupation of the premises, also, upon the

94

359

subtenant. Within three days, excluding Saturdays and Sundays and other judicial holidays, after the service of the notice, the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform the conditions or covenants of the lease or pay the stipulated rent, as the case may be, and thereby save the lease from forfeiture; provided, if the conditions and covenants of the lease, violated by the lessee, cannot afterward be performed, then no notice, as last prescribed herein, need be given to the lessee or the subtenant, demanding the performance of the violated conditions or covenants of the lease.

A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a subtenant or held by a servant, employee, agent, or licensee, in case of that person's unlawful detention of the premises underlet to or held by that person.

4. Any tenant, subtenant, or executor or administrator of that person's estate heretofore qualified and now acting, or hereafter to be qualified and act, assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of the lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using the premises for an unlawful purpose, thereby terminates the lease, and the landlord, or the landlord's successor in estate, shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of the demised premises under this chapter. For purposes of this subdivision, a person who commits or maintains a public nuisance as described in Section 3482.8 of the Civil Code, or who commits an offense described in subdivision (c) of Section 3485 of the Civil Code, or subdivision (c) of Section 3486 of the Civil Code, or uses the premises to further the purpose of that offense shall be deemed to have committed a nuisance upon the premises.

5. When the tenant gives written notice as provided in Section 1946 of the Civil Code of the tenant's intention to terminate the hiring of the real property, or makes a written offer to surrender which is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice, without the permission of the landlord, or the successor in estate of the landlord, if applicable.

6. As used in this section, "tenant" includes any person who hires real property except those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

7. This section shall become operative on February 1, 2025.

SEC. 17. Section 1161.2 of the Code of Civil Procedure is amended to read:

1161.2. (a) (1) The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

94

360

(B)  To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

(C)  To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D)  To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E)  Except as provided in subparagraph (G), to any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F)  Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

(G)  (i)  In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

(ii)  Subparagraphs (E) and (F) shall not apply if the plaintiff filed the action between March 4, 2020, and January 31, 2021, and the action is based on an alleged default in the payment of rent.

(2)  This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b)  (1)  For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A)  The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B)  The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2)  It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c)  Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any other person who (1) provides to the clerk the names of at least one plaintiff and one

94

defendant in the action and provides to the clerk the address, including any applicable apartment, unit, or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that the person lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1)  The name and telephone number of the county bar association.

(2)  The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3)  The following statement:

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's internet website at www.calbar.ca.gov or call 1-866-442-2529."

(4)  The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint, excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

(d)  Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e)  This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f)  This section does not alter any provision of the Evidence Code.

(g)  This section shall remain in effect until February 1, 2021, and as of that date is repealed.

SEC. 18.  Section 1161.2 is added to the Code of Civil Procedure, to read:

94

362

1161.2.  (a) (1)  The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A)  To a party to the action, including a party's attorney.

(B)  To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

(C)  To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D)  To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E)  To any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F)  Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

(G)  In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

(2)  This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b) (1)  For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A)  The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B)  The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2)  It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c)  Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any other person who (1) provides to the clerk the names of at least one plaintiff and one defendant in the action and provides to the clerk the address, including any

94

363

applicable apartment, unit, or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that the person lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1) The name and telephone number of the county bar association.

(2) The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3) The following statement:

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's internet website at www.calbar.ca.gov or call 1-866-442-2529."

(4) The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint, excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

(d) Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e) This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f) This section does not alter any provision of the Evidence Code.

(g) This section shall become operative on February 1, 2021.

SEC. 19.  Section 1161.2.5 is added to the Code of Civil Procedure, to read:

1161.2.5.  (a) (1) Except as provided in Section 1161.2, the clerk shall allow access to civil case records for actions seeking recovery of COVID-19 rental debt, as defined in Section 1179.02, including the court file, index, and register of actions, only as follows:

94

(A)  To a party to the action, including a party's attorney.

(B)  To a person who provides the clerk with the names of at least one plaintiff and one defendant.

(C)  To a resident of the premises for which the COVID-19 rental debt is owed who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D)  To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(2)  To give the court notice that access to the records in an action is limited, any complaint or responsive pleading in a case subject to this section shall include on either the first page of the pleading or a cover page, the phrase "ACTION FOR RECOVERY OF COVID-19 RENTAL DEBT AS DEFINED UNDER SECTION 1179.02" in bold, capital letters, in 12 point or larger font.

(b)  (1)  For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A)  The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B)  The gathering of evidence by a party to a civil action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2)  It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c)  This section does not alter any provision of the Evidence Code.

(d)  This section shall remain in effect until February 1, 2021, and as of that date is repealed.

SEC. 20.   Chapter 5 (commencing with Section 1179.01) is added to Title 3 of Part 3 of the Code of Civil Procedure, to read:

### Chapter 5.  COVID-19 Tenant Relief Act of 2020

1179.01.  This chapter is known, and may be cited, as the COVID-19 Tenant Relief Act of 2020.

1179.01.5.  (a)  It is the intent of the Legislature that the Judicial Council and the courts have adequate time to prepare to implement the new procedures resulting from this chapter, including educating and training judicial officers and staff.

(b)  Notwithstanding any other law, before October 5, 2020, a court shall not do any of the following:

(1)  Issue a summons on a complaint for unlawful detainer in any action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

(2)  Enter a default or a default judgment for restitution in an unlawful detainer action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

— 39 —                    Ch. 37

(c) (1)  A plaintiff in an unlawful detainer action shall file a cover sheet in the form specified in paragraph (2) that indicates both of the following:

(A)  Whether the action seeks possession of residential real property.

(B)  If the action seeks possession of residential real property, whether the action is based, in whole or part, on an alleged default in payment of rent or other charges.

(2)  The cover sheet specified in paragraph (1) shall be in the following form:

"UNLAWFUL DETAINER SUPPLEMENTAL COVER SHEET

1. This action seeks possession of real property that is:

a. [ ] Residential

b. [ ] Commercial

2. (Complete only if paragraph 1(a) is checked) This action is based, in whole or in part, on an alleged default in payment of rent or other charges.

a. [ ] Yes

b. [ ] No

Date:_____

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

_____

Type Or Print Name Signature Of Party Or Attorney For Party"

(3)  The cover sheet required by this subdivision shall be in addition to any civil case cover sheet or other form required by law, the California Rules of Court, or a local court rule.

(4)  The Judicial Council may develop a form for mandatory use that includes the information in paragraph (2).

(d)  This section does not prevent a court from issuing a summons or entering default in an unlawful detainer action that seeks possession of residential real property and that is not based, in whole or in part, on nonpayment of rent or other charges.

1179.02.  For purposes of this chapter:

(a)  "Covered time period" means the time period between March 1, 2020, and January 31, 2021.

(b)  "COVID-19-related financial distress" means any of the following:

(1)  Loss of income caused by the COVID-19 pandemic.

(2)  Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

(3)  Increased expenses directly related to the health impact of the COVID-19 pandemic.

(4)  Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit a tenant's ability to earn income.

(5)  Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

(6)  Other circumstances related to the COVID-19 pandemic that have reduced a tenant's income or increased a tenant's expenses.

94

(c) "COVID-19 rental debt" means unpaid rent or any other unpaid financial obligation of a tenant under the tenancy that came due during the covered time period.

(d) "Declaration of COVID-19-related financial distress" means the following written statement:

I am currently unable to pay my rent or other financial obligations under the lease in full because of one or more of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

3. Increased expenses directly related to health impacts of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit my ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced my income or increased my expenses.

Any public assistance, including unemployment insurance, pandemic unemployment assistance, state disability insurance (SDI), or paid family leave, that I have received since the start of the COVID-19 pandemic does not fully make up for my loss of income and/or increased expenses.

Signed under penalty of perjury:

Dated:

(e) "Landlord" includes all of the following or the agent of any of the following:

(1) An owner of residential real property.

(2) An owner of a residential rental unit.

(3) An owner of a mobilehome park.

(4) An owner of a mobilehome park space or lot.

(f) "Protected time period" means the time period between March 1, 2020, and August 31, 2020.

(g) "Rental payment" means rent or any other financial obligation of a tenant under the tenancy.

(h) "Tenant" means any natural person who hires real property except any of the following:

(1) Tenants of commercial property, as defined in subdivision (c) of Section 1162 of the Civil Code.

(2) Those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

(i) "Transition time period" means the time period between September 1, 2020, and January 31, 2021.

1179.02.5.  (a) For purposes of this section:

(1) (A) "High-income tenant" means a tenant with an annual household income of 130 percent of the median income, as published by the Department of Housing and Community Development in the Official State Income

94

367

Limits for 2020, for the county in which the residential rental property is located.

(B)  For purposes of this paragraph, all lawful occupants of the residential rental unit, including minor children, shall be considered in determining household size.

(C)  "High-income tenant" shall not include a tenant with a household income of less than one hundred thousand dollars ($100,000).

(2)  "Proof of income" means any of the following:

(A)  A tax return.

(B)  A W-2.

(C)  A written statement from a tenant's employer that specifies the tenant's income.

(D)  Pay stubs.

(E)  Documentation showing regular distributions from a trust, annuity, 401k, pension, or other financial instrument.

(F)  Documentation of court-ordered payments, including, but not limited to, spousal support or child support.

(G)  Documentation from a government agency showing receipt of public assistance benefits, including, but not limited to, social security, unemployment insurance, disability insurance, or paid family leave.

(H)  A written statement signed by the tenant that states the tenant's income, including, but not limited to, a rental application.

(b)  (1)  This section shall apply only if the landlord has proof of income in the landlord's possession before the service of the notice showing that the tenant is a high-income tenant.

(2)  This section does not do any of the following:

(A)  Authorize a landlord to demand proof of income from the tenant.

(B)  Require the tenant to provide proof of income for the purposes of determining whether the tenant is a high-income tenant.

(C)  (i)  Entitle a landlord to obtain, or authorize a landlord to attempt to obtain, confidential financial records from a tenant's employer, a government agency, financial institution, or any other source.

(ii)  Confidential information described in clause (i) shall not constitute valid proof of income unless it was lawfully obtained by the landlord with the tenant's consent during the tenant screening process.

(3)  Paragraph (2) does not alter a party's rights under Title 4 (commencing with Section 2016.010), Chapter 4 (commencing with Section 708.010) of Title 9, or any other law.

(c)  A landlord may require a high-income tenant that is served a notice pursuant to subdivision (b) or (c) of Section 1179.03 to submit, in addition to and together with a declaration of COVID-19-related financial distress, documentation supporting the claim that the tenant has suffered COVID-19-related financial distress. Any form of objectively verifiable documentation that demonstrates the COVID-19-related financial distress the tenant has experienced is sufficient to satisfy the requirements of this subdivision, including the proof of income, as defined in subparagraphs (A)

94

368

to (G), inclusive, of paragraph (2) of subdivision (a), a letter from an employer, or an unemployment insurance record.

(d)  A high-income tenant is required to comply with the requirements of subdivision (c) only if the landlord has included the following language on the notice served pursuant to subdivision (b) or (c) of Section 1179.03 in at least 12-point font:

"Proof of income on file with your landlord indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020. As a result, if you claim that you are unable to pay the amount demanded by this notice because you have suffered COVID-19-related financial distress, you are required to submit to your landlord documentation supporting your claim together with the completed declaration of COVID-19-related financial distress provided with this notice. If you fail to submit this documentation together with your declaration of COVID-19-related financial distress, and you do not either pay the amount demanded in this notice or deliver possession of the premises back to your landlord as required by this notice, you will not be covered by the eviction protections enacted by the California Legislature as a result of the COVID-19 pandemic, and your landlord can begin eviction proceedings against you as soon as this 15-day notice expires."

(e)  A high-income tenant that fails to comply with subdivision (c) shall not be subject to the protections of subdivision (g) of Section 1179.03.

(f)  (1)  A landlord shall be required to plead compliance with this section in any unlawful detainer action based upon a notice that alleges that the tenant is a high-income tenant. If that allegation is contested, the landlord shall be required to submit to the court the proof of income upon which the landlord relied at the trial or other hearing, and the tenant shall be entitled to submit rebuttal evidence.

(2)  If the court in an unlawful detainer action based upon a notice that alleges that the tenant is a high-income tenant determines that at the time the notice was served the landlord did not have proof of income establishing that the tenant is a high-income tenant, the court shall award attorney's fees to the prevailing tenant.

1179.03.  (a)  (1)  Any notice that demands payment of COVID-19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as required by this section. A notice which does not meet the requirements of this section, regardless of when the notice was issued, shall not be sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2)  Any case based solely on a notice that demands payment of COVID-19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 may be dismissed if the notice does not meet the requirements of this section, regardless of when the notice was issued.

(3)  Notwithstanding paragraphs (1) and (2), this section shall have no effect if the landlord lawfully regained possession of the property or obtained

94

369

a judgment for possession of the property before the operative date of this section.

(b) If the notice demands payment of rent that came due during the protected time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant cannot be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID-19-related financial distress to the landlord on or before the date that the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) The notice shall include the following text in at least 12-point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID-19, your landlord will not be able to evict you for this missed payment if you sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, but you will still owe this money to your landlord. If you do not sign and deliver the declaration within this time period, you may lose the eviction protections available to you. You must return this form to be protected. You should keep a copy or picture of the signed form for your records.

You will still owe this money to your landlord and can be sued for the money, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(c) If the notice demands payment of rent that came due during the transition time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant will not be evicted for failure to comply with the notice, except as allowed by this chapter, if the tenant delivers a signed declaration of COVID-19-related financial distress to the landlord on or before the date the notice to pay rent or quit

or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4)  The notice shall include the following text in at least 12-point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID-19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before January 31, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and January 31, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID-19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and January 31, 2021.

For example, if you provided a declaration form to your landlord regarding your decreased income or increased expenses due to COVID-19 that prevented you from making your rental payment in September and October of 2020, your landlord could not evict you if, on or before January 31, 2021, you made a payment equal to 25 percent of September's and October's rental payment (i.e., half a month's rent). If you were unable to pay any of the rental payments that came due between September 1, 2020, and January 31, 2021, and you provided your landlord with the declarations in response to each 15-day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before January 31, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September through January (i.e., one and a quarter month's rent).

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(d)  An unsigned copy of a declaration of COVID-19-related financial distress shall accompany each notice delivered to a tenant to which subdivision (b) or (c) is applicable. If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the unsigned copy of a declaration of COVID-19-related financial distress to the tenant in the

94

— 45 —                          Ch. 37

language in which the contract or agreement was negotiated. The Department of Real Estate shall make available an official translation of the text required by paragraph (4) of subdivision (b) and paragraph (4) of subdivision (c) in the languages specified in Section 1632 of the Civil Code by no later than September 15, 2020.

(e) If a tenant owes a COVID-19 rental debt to which both subdivisions (b) and (c) apply, the landlord shall serve two separate notices that comply with subdivisions (b) and (c), respectively.

(f) A tenant may deliver the declaration of COVID-19-related financial distress to the landlord by any of the following methods:

(1) In person, if the landlord indicates in the notice an address at which the declaration may be delivered in person.

(2) By electronic transmission, if the landlord indicates an email address in the notice to which the declaration may be delivered.

(3) Through United States mail to the address indicated by the landlord in the notice. If the landlord does not provide an address pursuant to subparagraph (1), then it shall be conclusively presumed that upon the mailing of the declaration by the tenant to the address provided by the landlord, the declaration is deemed received by the landlord on the date posted, if the tenant can show proof of mailing to the address provided by the landlord.

(4) Through any of the same methods that the tenant can use to deliver the payment pursuant to the notice if delivery of the declaration by that method is possible.

(g) Except as provided in Section 1179.02.5, the following shall apply to a tenant who, within 15 days of service of the notice specified in subdivision (b) or (c), excluding Saturdays, Sundays, and other judicial holidays, demanding payment of COVID-19 rental debt delivers a declaration of COVID-19-related financial distress to the landlord by any of the methods provided in subdivision (f):

(1) With respect to a notice served pursuant to subdivision (b), the tenant shall not then or thereafter be deemed to be in default with regard to that COVID-19 rental debt for purposes of subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161.

(2) With respect to a notice served pursuant to subdivision (c), the following shall apply:

(A) Except as provided by subparagraph (B), the landlord may not initiate an unlawful detainer action before February 1, 2021.

(B) A tenant shall not be guilty of unlawful detainer, now or in the future, based upon nonpayment of COVID-19 rental debt that came due during the transition period if, on or before January 31, 2021, the tenant tenders one or more payments that, when taken together, are of an amount equal to or not less than 25 percent of each transition period rental payment demanded in one or more notices served pursuant to subsection (c) and for which the tenant complied with this subdivision by timely delivering a declaration of COVID-19-related financial distress to the landlord.

94

(h) (1) (A) Within the time prescribed in Section 1167, a tenant shall be permitted to file a signed declaration of COVID-19-related financial distress with the court.

(B) If the tenant files a signed declaration of COVID-19-related financial distress with the court pursuant to this subdivision, the court shall dismiss the case, pursuant to paragraph (2), if the court finds, after a noticed hearing on the matter, that the tenant's failure to return a declaration of COVID-19-related financial distress within the time required by subdivision (g) was the result of mistake, inadvertence, surprise, or excusable neglect, as those terms have been interpreted under subdivision (b) of Section 473.

(C) The noticed hearing required by this paragraph shall be held with not less than five days' notice and not more than 10 days' notice, to be given by the court, and may be held separately or in conjunction with any regularly noticed hearing in the case, other than a trial.

(2) If the court dismisses the case pursuant to paragraph (1), that dismissal shall be without prejudice as follows:

(A) If the case was based in whole or in part upon a notice served pursuant to subdivision (b), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (b).

(B) Before February 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (c).

(C) On or after February 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based upon the notice served pursuant to subdivision (c) if the tenant, within five days of the court's order to do so, makes the payment required by subparagraph (B) of paragraph (1) of subdivision (g), provided that if the fifth day falls on a Saturday, Sunday, or judicial holiday the last day to pay shall be extended to the next court day.

(3) If the court dismisses the case pursuant to this subdivision, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

(i) Notwithstanding any other law, a notice which is served pursuant to subdivision (b) or (c) that complies with the requirements of this chapter and subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161, as applicable, need not include specific language required by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county.

1179.03.5. (a) Before February 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies:

(1) The tenant was guilty of the unlawful detainer before March 1, 2020.

(2) In response to service of a notice demanding payment of COVID-19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161, the tenant failed to comply with the requirements of Section 1179.03.

94

(3)  (A)  The unlawful detainer arises because of a termination of tenancy for any of the following:

(i)  An at-fault just cause, as defined in paragraph (1) of subdivision (b) of Section 1946.2 of the Civil Code.

(ii)  (I)  A no-fault just cause, as defined in paragraph (2) of subdivision (b) of Section 1946.2 of the Civil Code, other than intent to demolish or to substantially remodel the residential real property, as defined in subparagraph (D) of paragraph (2) of subdivision (b) of Section 1946.2.

(II)  Notwithstanding subclause (I), termination of a tenancy based on intent to demolish or to substantially remodel the residential real property shall be permitted if necessary to maintain compliance with the requirements of Section 1941.1 of the Civil Code, Section 17920.3 or 17920.10 of the Health and Safety Code, or any other applicable law governing the habitability of residential rental units.

(iii)  The owner of the property has entered into a contract for the sale of that property with a buyer who intends to occupy the property, and all the requirements of paragraph (8) of subdivision (e) of Section 1946.2 of the Civil Code have been satisfied.

(B)  In an action under this paragraph, other than an action to which paragraph (2) also applies, the landlord shall be precluded from recovering COVID-19 rental debt in connection with any award of damages.

(b)  (1)  This section does not require a landlord to assist the tenant to relocate through the payment of relocation costs if the landlord would not otherwise be required to do so pursuant to Section 1946.2 of the Civil Code or any other law.

(2)  A landlord who is required to assist the tenant to relocate pursuant to Section 1946.2 of the Civil Code or any other law, may offset the tenant's COVID-19 rental debt against their obligation to assist the tenant to relocate.

1179.04.  (a)  On or before September 30, 2020, a landlord shall provide, in at least 12-point font, the following notice to tenants who, as of September 1, 2020, have not paid one or more rental payments that came due during the protected time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID-19 Tenant Relief Act of 2020 which protects renters who have experienced COVID-19-related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and January 31, 2021.

"COVID-19-related financial distress" means any of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

3. Increased expenses directly related to the health impact of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit your ability to earn income.

94

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and January 31, 2021, because of decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before January 31, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID-19-related financial distress attesting to the decreased income or increased expenses due to the COVID-19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and January 31, 2021, your landlord will be required to give you a 15-day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID-19 pandemic. Your landlord must tell you in the 15-day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15-day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15-day notice and do not provide the declaration form to your landlord before the 15-day notice expires, you could be evicted. You could also be evicted beginning February 1, 2021, if you owe rental payments due between September 1, 2020, and January 31, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

For information about legal resources that may be available to you, visit lawhelpca.org."

(b) The landlord may provide the notice required by subdivision (a) in the manner prescribed by Section 1162 or by mail.

94

(c) (1)  A landlord may not serve a notice pursuant to subdivision (b) or (c) of Section 1179.03 before the landlord has provided the notice required by subdivision (a).

(2)  The notice required by subdivision (a) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2020.

1179.05.  (a)  Any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction is subject to all of the following:

(1)  Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and January 31, 2021, shall have no effect before February 1, 2021.

(2)  Any provision which allows a tenant a specified period of time in which to repay COVID-19 rental debt shall be subject to all of the following:

(A)  If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date on or before March 1, 2021, any extension of that date made after August 19, 2020, shall have no effect.

(B)  If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date after March 1, 2021, or conditioned commencement of the repayment period on the termination of a proclamation of state of emergency or local emergency, the repayment period is deemed to begin on March 1, 2021.

(C)  The specified period of time during which a tenant is permitted to repay COVID-19 rental debt may not extend beyond the period that was in effect on August 19, 2020. In addition, a provision may not permit a tenant a period of time that extends beyond March 31, 2022, to repay COVID-19 rental debt.

(b)  This section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of Section 1946.2, provided that a provision enacted or amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and January 31, 2021.

(c)  The one-year limitation provided in subdivision (2) of Section 1161 is tolled during any time period that a landlord is or was prohibited by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction based on nonpayment of rental payments from serving a notice that demands payment of COVID-19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) of Section 1161.

(d)  It is the intent of the Legislature that this section be applied retroactively to August 19, 2020.

(e)  The Legislature finds and declares that this section addresses a matter of statewide concern rather than a municipal affair as that term is used in

94

376

Section 5 of Article XI of the California Constitution. Therefore, this section applies to all cities, including charter cities.

(f)  It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID-19 pandemic, and that this section does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction.

1179.06.  Any provision of a stipulation, settlement agreement, or other agreement entered into on or after the effective date of this chapter, including a lease agreement, that purports to waive the provisions of this chapter is prohibited and is void as contrary to public policy.

1179.07.  This chapter shall remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 21.  (a)  The Business, Consumer Services and Housing Agency shall, in consultation with the Department of Finance, engage with residential tenants, landlords, property owners, deed restricted affordable housing providers, and financial sector stakeholders about strategies and approaches to direct potential future federal stimulus funding to most effectively and efficiently provide relief to distressed tenants, landlords, and property owners, including exploring strategies to create access to liquidity in partnership with financial institutions or other financial assistance. Subject to availability of funds and other budget considerations, and only upon appropriation by the Legislature, these strategies should inform implementation of the funds. In creating these strategies, special focus shall be given to low-income tenants, small property owners, and affordable housing providers who have suffered direct financial hardship as a result of the COVID-19 pandemic.

(b)  For the purposes of this section, "future federal stimulus funding" does not include funding identified in the 2020 Budget Act.

SEC. 22.  The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 23.  No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

SEC. 24.  This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

94

To avert economic and social harm by providing a structure for temporary relief to financially distressed tenants, homeowners, and small landlords during the public health emergency, and to ensure that landlords and tenants are able to calculate the maximum allowable rental rate increase within a 12-month period at the earliest possible time, it is necessary that this act take effect immediately.

O

94

378

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 Skylab Road
Huntington Beach, CA 92649

A true and correct copy of the foregoing document entitled: **RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT with BOOKMARKED EXHIBITS**
 will be served or was served **(a)** on the judge in chambers in the form and
manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
   1/18/2023      I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Janine Jasso, Esq.
Email Address: j9_jasso@yahoo.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/18/2023 | Robert McLelland | *Robert McLelland* |
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 4                    **F 4001-1.RFS.RESPONSE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: CONTINUED:

- ATTORNEY FOR DEBTOR JAMIE GALLIAN: **Bert Briones**    bb@redhilllawgroup.com, helpdesk@redhilllawgroup.com;RedHillLawGroup@jubileebk.net
- **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
- **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
- **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
- **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**