JAMIE LYNN GALLIAN
16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649
(714)321-3449
JAMIEGALLIAN@GMAIL.COM

DEFENDANT, IN PRO PER

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.     8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN | Adv No.     8:21-ap-01097-SC |
| Debtor, | Chapter     7 |
| HOUSER BROS CO, A California Limited Partnership, dba RANCHO DE REY MOBILEHOME ESTATES | **DEFENDANTS' TRIAL BRIEF** |
| Plaintiff, | TRIAL DATE:  February 23, 2023 |
| vs. | TIME:     9:30 a.m. |
| JAMIE LYNN GALLIAN | CTRM:     5C – In person |
| Defendant | 411 W. Fourth Street |
| | Santa Ana, A 92701 |

///

///

///

JAMIE LYNN GALLIAN ("Defendant" or "Debtor") hereby submits her trial brief on the following issues:

I.  INTRODUCTION

1.     Does the First Claim for Relief state a valid claim for relief?

No, it does not identify any creditor who was defrauded nor is there any such creditor. It also fails to allege with any specificity any of the elements required by 11 USC 523(a)(2)(A). Debtor's 25th Affirmative Defense is a valid bar to this claim.

2.     Does the Second Claim for relief state a valid claim for conversion?

Under California Law conversion is the wrongful exercise of dominion over personal property of another. Moore v. Regents of Univ. of Calif. (1990) 51 C3d 120,137. Simas v. Powell 635 B.R.366 holds that a trespass can give rise to a claim of conversion of the personal property on the real property of Plaintiff and does not stand for the proposition that a trespass on real property is also a conversion unless plaintiff can prove that it was deprived of that personal property with a superior right to possession.

The Second Claim does not identify any personal property that the debtor has allegedly converted and therefor fails to state a valid claim of conversion or a valid claim for relief and is barred by Debtor's 25th affirmative defense.

3.     Is the Second Claim for relief based on trespass barred by the doctrines of waiver , estoppel and unclean hands as a result of Plaintiff's failure to comply with Civil Code Section 798.74?

Debtor submitted an application for residency on November 19, 2018 on behalf of J.Sandcastle Co. Plaintiff never responded to that application but instead claimed that Debtor's credit score was insufficient although she was not the applicant. California Civil Code 798.74 that was in effect on that date required that Plaintiff respond within 15 business days to the prospective homeowner (J. Sandcastle) with the reason for the acceptance or rejection. Approval cannot be withheld if the purchaser has the ability to pay the rent and charges of the park. unless management reasonably determines the purchaser will not comply with the rules and regulations of the park. Plaintiff did not comply with its mandatory obligations after receiving J. Sandcastle's application but responded only with a classic non sequitur that did not address the issue of financial ability to pay of the purchaser nor did assert any claim that its rules and regulations would not be followed. California Civil Code 3529 provides: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." Plaintiff failed its mandatory, statutory duty to respond and cannot now be heard to say that no tenancy was created. It clearly waived its right to deny tenancy to J.Sandcastle Co. and comes before the court with unclean hands in claiming that J.Sandcastle Co had no right to have debtor occupy the premises. They are also estopped to assert same. Debtor's affirmative defenses numbers 22, 49 and 54 are well taken.

**Note:** Plaintiff had 2 1/2 years to bring the unlawful/forcible detainer case against debtor to trial in state court before the filing of Debtor's Chapter 7 Petition. Clearly Plaintiff expected (rightfully) to lose. Debtor is clearly not a trespasser and this claim for relief fails.  Also note, Plaintiff's counsel represented to the Court 2/1/2023, that no issues raised by this Adversary were the same as the issues raised in the Forcible Entry/Detainer Action filed 1/2/2019 when in fact the issues are identical as to the issue of trespass and the amount of damages claimed.  See Gallian's Declaration in support of Objection to the Proposed Order Granting Relief From Stay.

At a minimum, this adversary proceeding should have been abated if Houser Bros Co wanted to pursue the "unprosecuted state court action filed 1/2/2019. It would appear that Rules of Court for a unlawful detainer Summary Proceedings expired years ago.

**Second Claim for Relief – 523(a)(6) Willful and Malicious Injury.**

6. "A discharge . . . does not discharge an individual debtor from any debt– for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6); see also Hunter v. Martin (In re Martin), 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019).

7. The "willful" and "malicious" requirements are conjunctive and subject to separate analysis. Id.

8. The injury-producing conduct must be tortious to be exempted from discharge under § 523(a)(6). Id. at *27.

9. Conduct is tortious under § 523(a)(6) only if it constitutes a tort under state law. Id. (citing Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. 2008)).

10. Trespass is a tort under California law.

11. Trespass is an unlawful interference with possession of property. The elements of trespass are: (1) the plaintiff's ownership or control of the property;(2) the defendant's intentional, reckless, or negligent entry onto the property; (3)lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm. Ralphs Grocery Co., 17 Cal.App.5th 245, 261-262.

12. It is a well-settled proposition that the proper party plaintiff in an action for trespass to real property is the person in actual possession. No averment of title in plaintiff is necessary. [Citations.]' . . . 'A defendant who is a mere stranger to the title will not be allowed to question the title of a plaintiff in possession of the land. It is only where the trespasser claims title himself, or claims under the real owner, that he is allowed to attack the title of the plaintiff whose peaceable possession he has disturbed.' Veiseh v. Stapp (2019) 35 Cal.App.5th 1099, 1104.

13. The tort of trespass is the type of tort that is covered by Section 523(a)(6). Simas v.Powell, 635 B.R. 366, 375-76 (N.D. Cal. 2021) ["The court found that appellant's continued use of the Property after appellees asked him to leave constituted trespass and conversion and was thus a sufficient basis for nondischargeability under Section 523(a)(6)."].

14. The language of § 523(a)(6) also extends to the tort of conversion. State Farm Mut. Auto Ins. Co. v. Rodriguez (In re Rodriguez), 568 B.R. 328, 342 (Bankr. S.D. Cal. 2017). But, whether a defendant's actions amount to conversion under California law is not dispositive regarding whether the underlying claims are nondischargeable under § 523(a)(6). Id.

15. To prevail on a § 523(a)(6) conversion claim, a plaintiff must "first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious." Id. at 343; see also Zeeb v. Farah (In re Zeeb), 2019 Bankr.LEXIS 2477, at *16 (B.A.P. 9th Cir. Aug. 9, 2019) (noting that a creditor seeking to exempt a debt from discharge under § 523(a)(6) must also prove that the conversion was undertaken willfully and maliciously).

16. Conversion, under California law, is the "wrongful exercise of dominion over the property of another." Mendoza v. Continental Sales Co., 140 Cal.App.4th 1395, 1404-05 (2006). The
elements of a conversion claim are:
1) The plaintiff's ownership or right to possession of the
property;
2) The defendant's conversion by a wrongful act or disposition of property rights; and
3)Damages. Id. at 1405.

17.   An injury is "willful" when a debtor "harbors either subjective intent to harm, or a subjective belief that harm is substantially certain." Hunter v. Martin (In re Martin), 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019).

18. The injury must be "deliberate or intentional, not merely a deliberate or intentional act that leads to injury." Id.

19. A debtor acts "knowingly" if he or she acts "deliberately and consciously." Retz v. Samson (In re Retz), 606 F.3d 1189, 1198 (9th Cir. 2010).

20. An injury is "malicious" if it involves: 1) A wrongful act, 2) Done intentionally, 3) Which necessarily causes injury, and 4) Is done without just cause or excuse. Hunter v. Martin (In re Martin), 2019 Bankr.LEXIS 2073, at *27 (Bankr. C.D. Cal. July 10, 2019); see also Carrillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002) (same).

21. Malice may be inferred based on the nature of the wrongful act. Ormsby v. First Am.

4.        Does the Third Claim for Relief state a valid claim for relief?

1    This claim does not identify the property supposedly transferred or concealed or when it

2    occurred. It therefor fails to state of claim for relief. See debtor's 25th affirmative defense.

3

4    5.    Does the Fourth Claim for Relief state a valid claim for relief?

5

6    Again, this claim does not identify the false oath or account and therefor fails to state a

7    claim for relief. See debtor's 25th affirmative defense.

8

9    6.    Does the Fifth Claim for Relief state a valid claim for relief?

10

11    Again, this claim does not identify the assets supposedly missing and therefor fails to

12    state a claim for relief. See debtor's 25th affirmative defense.

13

14

15

16    DATE:  2/9/2023                          Respectfully submitted,

17                                             *Jamie Lynn Gallian*

18                                             _____

19                                             JAMIE LYNN GALLIAN
                                              Defendant, IN PRO PER

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

      Understanding the history between past and present parties may offer the Court perspective in untangling this saga that has consumed over a half of a decade.

      Ms. Lisa Ryan, was the DAUGHTER, HEIR and ESTATE REPRESENTATIVE of LAURA P. RYAN, the owner of a 1970 SANTA ANITA MOBILEHOME purchased in place in Rancho Del Rey Mobilehome Park by Thomas J. Ryan and Laura P. Ryan, Joint Tenants with Right Of Survivorship, on August 28, 1997, parked on Space #376, within Tract 10542, Unit 4, on Parcel 2 of Parcel Map Book 108, Pg. 47, of Miscellaneous Maps recorded in the Official Records, County of Orange. EX. PAGE 145.

-3-

**1970 SANTA ANITA Mobile-home DECAL# 9947 DFS 1970**

Situs Address:  16222 Monterey Ln. SP. 376
                Huntington Beach, CA 92649
                Tax Type: Local Property Tax
                Transferred on August 28, 1997

Register Owner:
                Thomas J. Ryan,
                Laura P. Ryan, (Joint Tenants with Right of Survivorship)

Date of Death:   09/09/2000  Thomas J. Ryan, Death Certificate
Date of Death:   11/24/2004  Laura P. Ryan,   **Probate Docs listing DOD**.

**NOTICE TO HEIR, JOINT TENANT AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF
<u>LAURA P. RYAN.</u>**

"This is to advise you of your rights and responsibilities regarding the
mobilehome owned by the above resident in Rancho Del Rey Mobilehome
Estates located at:

    16222 Monterey Ln-Space 376 Huntington Beach, Ca 92649

"Pursuant to the Mobilehome Residency Law (California Civil Code), you
have the right to advertise the sale of this mobilehome, which may remain
in the Park of it complies with the provisions of  the Section § 798.73 of
the Civil Code and if all of the resident's responsibilities and liabilities to
the Park regarding rent, utilities, and reasonable maintenance of the
mobilehome and its premises that have arisen since the death of the
resident have been satisfied in accordance with the Rental Agreement in
effect at the time of the death of the resident up until the date the
mobilehome is resold."

Prior to the sale of the mobilehome, or the possible replacement of the
mobilehome, you must satisfy the requirements of Section 798.78(c) of the
Civil Code.  Further, no sale of the mobilehome may take pace without the
prior approval of the Park by the prospective purchaser of the mobilehome
and the execution of the Rental Agreement between the Park and the
prospective purchaser.  In the event you sell the Parcel Map  Book 108, Pg.
47, of Miscellaneous Maps recorded in the Official Records, County of
Orange.  EX. PAGE 145.

-2-

Mr. Thomas J. Ryan pre-deceased his wife on September 9, 2000. Ms. Laura P. Ryan died on November 24, 2004.  On or about December 1, 2004, the Park delivered to Ms. Lisa Ryan ("Lisa") NOTICE OF HEIR, JOINT TENANT AND PERSONAL REPRESENTATIVE OF THE ESTATE.  EX. PAGE 151

On or about 1/1/2006, Lisa Ryan executed with Rancho Del Rey Mobilehome Estates, what appeared to be an Assignment of Space 376 home, a 1970 Santa Anita Mobilehome inherited by Lisa Ryan.  EX. PAGE 152-167.

On March 1, 2013, Lisa Ryan issued Ck. No. 2906 in the amount of $500.00 to 5 STAR HOMES, a Manufactured Home Dealer, to open escrow with Express Escrow.  A receipt for deposit was signed on 11/2/2013 by Ms. Ryan and Richard Herr, FIVE STAR.  EX PAGE 168

On or about March 1, 2014, Chk. No. 109, in the amount of $25,000, was deposited into Express Escrow. Receipt No. 112437 was signed by Lisa Ryan and Richard Herr of 5 STAR HOMES. EX PAGE 169.

On March 1, 2014, Lisa Ryan and FIVE STAR entered into Contract No. 1152115, Manufactured Home Purchase Order And Federal Disclosure Statement for the purchase of a "New" 2014 Skyline Manufactured Home.  The contract indicated the Situs was Rancho Del Rey #376. The home was delivered to space 376, pursuant to Health & Safety Code §18551.  Term of unexpired Ground Leasehold recorded 10/22/1979, Book 13424, 499-507 Official Records Clerk Recorded of Orange County, remaining at least 35 years.

-4-

In July 2018, Lisa Ryan listed FOR SALE, space 376 home, a 2014 Skyline Manufactured Home with First Team Real Estate.

On or about August 18, 2018, Houser Bros Co filed an Unlawful Detainer action OCSC 30-2018-01013582, Houser Bros Co vs Lisa Ryan for past rent. Included in the complaint as an Exhibit is the Space 376 Ground Lease Agreement. On or about 1/1/2006 Space 376 home Assignment of Rental Agreement was executed by Lisa Ryan. However, Houser Bros failed to execute a Ground Leasehold for Lisa Ryan's 2014 Manufactured Home delivered to space 376 after the 1990 home was cleared from the land and Ryan's new 2014 home was affixed under Health & Safety Code §18551.

Park Management [did not] execute a Space 376, Lease Agreement with Lisa Ryan when Ryan's 2014 Skyline Custom Villa Manufactured Home=before or after delivery of the homeand affixed to the land in Rancho Del Rey Mobilehome Estates, and Space 376, in or about September 2014. The Plot Map Lot 376, was approved and signed off by Craig Houser, of Houser Bros Co.

Defendant Gallian has contacted State of California, Department of Housing and Community Development, to obtain a a Copy of the Certificate of Occupancy.

-5-

HCD is unable to locate or determine if Houser Bros Co, the Park Operators and
Managers for Rancho Del Rey Mobilehome Park, applied for a Certificate of
Occupancy for the 2014 Manufactured Single Family Residence, Serial No(s).
7V710394GA/GB delivered and installed in a Subdivision pursuant to a July
1980, California Department of Real Estate (CALDRE) Final Subdivision Report
(White Report) under a Recorded 80 year Ground Lease executed by Master
Landlord Houser Bros Co., against A.P.N. 178-011-16, on December 6, 1979,
Book 13424, Pg. 499-504, Official Records Clerk Recorder, County of Orange,
within a Certificate of Compliance on the face of Tract Map TRACT 10542,
recorded August 17, 1979, in Official Records Clerk Recorder, Miscellaneous
Maps, Book 456, page 49-50, for a subdivision known as Tract 10542, Unit(s) 1,
2, 3, 4, of Lot 2 recorded December 1977, in Parcel Maps Book 108, Pg. 47-48.

On October 18, 2018, Ryan and Houser Bros Co stipulated to a judgment that
included Ryan retaining the right to sell in place until February 19, 2019.

On November 16, 2018, J-Sandcastle Co registered the 2014 Skyline
Manufactured Home by submitting on Application with the Riverside Office
Housing and Community Development ("HCD")
J-Sandcastle Co LLC was the registered owner of the space 376 mobilehome
unit.On November 20, 2018, Houser Bros Co denied tenancy to Defendant Jamie
Gallian, claiming that Jamie Gallian had "no right of tenancy" On January 2,
2019, Houser Bros Co sued Defendant Jamie Gallian in a Forcible Entry/Detainer
Action OCSC 30-2018-01041423.  Defendant Jamie Gallian was personally
served on February 5, 2019.  Defendant Gallian filed an answer on or about
February 22, 2019, asserting the protections of the MRL as a defense.

MEMORANDUM OF POINTS AND AUTHORTIES

"Tenancy" is defined as "the right of a homeowner to the use of a site within a mobilehome park on which to locate, maintain, and occupy a mobilehome, site improvements, and accessory structures for human habitation, including the use of the services and facilities of the park." (Civil Code §798.12)

Proof of financial "worthiness": In determining whether a prospective purchaser has the "financial ability" to pay rent and other charges, management may require the prospective purchaser to "document" the amount and source of their gross monthly income "or means of financial support."
 However, management cannot require the purchaser to submit documentation beyond that disclosed pursuant to Civ.C. § 798.74(b)(2) or personal income tax returns. [Civ.C. § 798.74(d)]

    Houser Bros violated the Mobilehome Residency Law ("MRL") by refusing to approve the Resident Application, submitted November 18, 2018, by the selling agent First Team, on behalf of J-Sandcastle Co LLC, ["JSC Registered Owner"] for a Rental Agreement for space 376 home, a 2014 Skyline Manufactured home sold in place in Houser Bros, Rancho Del Rey Mobilehome Estates.
Jamie Gallian, is the sole Member of J-Sandcastle Co LLC.   Rancho Del Rey Mobilehome Estates failed to offer an applicant a rental agreement, unreasonably withheld its approval of J-Sandcastle Co's Residency Application for tenancy.
"[T]he management has a right to approve the [purchaser] of a mobilehome, but that approval can only be withheld if the [purchaser] lacks the financial ability to

pay the rent or if the [purchaser's] prior mobilehome park tenancies provide reasonable grounds for the management to believe that the purchaser will not comply with the park's rules and regulations. (§ 798.74; see Yee v. City of Escondido (1990) 224 Cal.App.3d 1349, 1352 ['a park owner is compelled to accept as a new tenant a person who purchases a mobilehome from an existing tenant unless the new tenant does not have the financial ability to pay rent or, based on past tenancies, has demonstrated he or she will not comply with the park rules and regulations'], italics added.)" (Mobile Ritz, L.P. v. Tri-American Mobile Homes, Inc., supra, G030815.)

**Limited right to disapprove purchaser:**

A right of approval does not give management open-ended discretion to disapprove a proposed purchaser (for any reason or no reason at all).

Management must approve a prospective purchaser unless (1) management "reasonably determines" that, based on the purchaser's prior tenancies, the purchaser will not comply with park rules and regulations; (2) the purchaser does not have the financial ability to pay rent, estimated utilities, and other park charges; or (3) the purchaser has committed fraud, deceit, or concealment of material facts during the application process. [Civ.C. § 798.74(c); see also Civ.C. § 798.74(h)(1) ("charges" means all charges authorized and imposed by management under Civ.C. § 798.31)]

When a mobilehome is sold to a third party during the term of a rental agreement, and the mobilehome is to remain in the park, the management may require that the mobilehome be removed if it is too old and does not meet certain safety regulations. (§ 798.73.)

The management may also require the homeowner to make repairs. (§ 798.73.5.)  These provisions of the MRL reflect an "overall legislative policy recognizing that while some limits have been placed on a mobilehome park owner's discretion to disapprove the sale of a mobilehome which is to remain within its park, the owner retains the prerogative to establish and enforce the general rules and regulations that will determine the character of its park." (Schmidt v. Superior Court (1989) 48 Cal.3d 370, 381, 256 Cal.Rptr. 750, 769 P.2d 932.)

**STATEMENT OF FACTS**

On November 18, 2018, J-Sandcastle Co LLC, the Registered Owner of space 376 home, 2014 Skyline Custom Villa, A.P.N. 891-569-62, made a timely Resident Application for tenancy on November 18, 2021.  Houser Bros Co failed in its requirement to comply with the MRL regarding approval of that tenancy. The law does not require futile or idle acts. (§ 3532.)

Houser Bros Co through their "Operations Manager" Chris Houser, made clear, that the Park would never approve or enter into a Rental Agreement with J-Sandcastle Co for tenancy.

Houser Bros counsel, Vivienne Alston stated to Jamie Gallian that Houser Bros Co would never enter into a rental agreement with Jamie Gallian for space 376.

1
2
3
4

However, Houser Bros Co cannot avoid compliance with the MRL by advising a prospective homeowner it will not comply with the MRL.  J-Sandcastle Co LLC and Jamie Gallian [are] entitled to any and all protections under the Mobilehome Residency Law.

5

(1) a corporation can be a homeowner under the MRL;

6
7
8
9

(2) evidence of Houser Bros Co's dba Rancho Del Rey Mobilehome Estates violation of a statute governing circumstances under which management can withhold approval of a [purchase] of a mobilehome is admissible to establish a defense to the trespass and ejectment claims; and

10
11
12
13
14
15

(3) J-Sandcastle's Co timely application for tenancy submitted on the first business day after J-Sandcastle Co registered the home on November 16, 2018 with HCD, did not absolve Houser Bros Co Park Manager, from the requirement to comply with the MRL regarding approval of tenancy. (Mobile Ritz, L.P. v. Tri-American Mobile Homes, Inc. (May 13, 2003, G030815) [nonpub. opn.].)

16
17
18
19
20
21
22
23
24

U]nder [section] 798.74, [subdivision (a),] Houser Bros has the right to withhold approval of the tenant, but it has to be done reasonably. Section 798.74 subdivision (a)  indicates there are one o[r] two reasons park managers can withhold that approval, and that is based upon ... their determination of inability to pay rent or 2, a reasonable determination that the prospective tenant would not comply with the rules and regulations of the park. The determination that a homeowner wouldn't comply with the rules and regulations of the park, can be a determination by a Court, "that the approval was ... withheld unreasonably....

25
26
27
28

Trespass being defined as an unlawful interference with possession of the property. Approval of the tenancy withheld by Park Management, unreasonably, violates the

}

-10-

1
2
3
4

MRL Failure to approve a Registered Owners Resident Application with the means to pay the space rent in the park was unreasonable must be upheld if it is supported by substantial evidence. (See Piedra v. Dugan (2004) 123 Cal.App.4th 1483, 1489.)

5

A. Section 798.74, subdivision (a) applied in this case.

6
7

Section 798.74, subdivision (a), must apply in this case because J-Sandcastle Co intended to be a tenant in the park.

8
9
10
11

Failure of Houser Bros, Park Management, compliance with section 798.74, subdivision (a), could be a strong defense to the trespass claim. But if section 798.74, subdivision (a), did not apply, then what is Houser Bros basis for asserting a trespass claim in the first place?

12
13
14
15
16
17
18

J-Sandcastle Co, Member Jamie Gallian, lawfully purchased the space 376 home from its previous owner Lisa Ryan, and attempted to pay Houser Bros for the use of the space.  Houser Bros Co however, refused to accept those payments, claiming J-Sandcastle Co never had a tenancy because Houser Bros had determined under section 798.74, subdivision (a), that Jamie Gallian would not comply with the park's rules and regulations.

19
20
21
22

     Jamie Gallian has lived on the Houser Bros Co property since November 2009.  Ms. Gallian was responsible for timely paying the Ground Lease payments to  Landlord BS Investors and never missed a payment.

23
24
25

Jamie Lynn Gallian contacted the park's management and met with the park manager Kathryn Houser-Curtiss before purchasing the Space 376 home, a 2014 Skyline Manufactured Home.

26
27
28

 Jamie Gallian was represented by Thanya Hansen, Five STAR Homes Resident Agent living in Rancho Del Rey.

-11-

Jamie Gallian had purchased another mobilehome in the park (space 108 home) three or four months prior to the purchase of the space 376 home.

J-Sandcastle Co LLC applied for tenancy on November 18, 2018. At that time, the park manager Kathryn Curtiss told Jamie Gallian, "as long as she was 55 years of age and provided proof of ability to pay the space rent.  Houser Bros accepted several checks from J-Sandcastle Co LLC.  Kathryn Curtiss stated to Jamie Gallian "everything was ass-backwards."

Houser Bros Co began pre-textual false allegations spreading false rumors within the park stating that Jamie Gallian was a "squatter" and "did not pay the rent".  Section 798.75, subdivision (a), provides, "[a]n escrow, sale, or transfer agreement involving a mobilehome located in a park at the time of the sale, where the mobilehome is to remain in the park, shall contain a copy of either a fully executed rental agreement or a statement signed by the park's management and the prospective homeowner that the parties have agreed to the terms and conditions of a rental agreement." However, Houser Bros Co admits it never asked J-Sandcastle Co LLC or Jamie Gallian to sign a rental agreement for tenancy for space 376 manufactured home under any circumstances, and refused to accept J-Sandcastle Co attempts to pay rent. J-Sandcastle Co applied for residency at the park because it intended to occupy the space 376, manufactured home.

Park Manager, Houser Bros Co prevented J-Sandcastle Co and Jamie Gallian from obtaining any agreement because Houser Bros Co refused to counter sign any Lease Agreement J-Sandcastle Co submitted.

J-Sandcastle Co has never received a letter regarding the space 376 home, advising J-Sandcastle Co LLC of any alleged violation of a Park Rule or Regulation.

J-Sandcastle Co has never been requested to address any problems or concerns as a result of never receiving any violation letter.

-12-

Houser Bros Co has no evidence that, before purchasing the space 376 home, J-Sandcastle Co failed to correct a problem identified by Houser Bros Co, the parks manager.

Park Manager, Kathryn Curtiss stated she was aware of the litigation with the Gables HOA over "watering the lawn, planting flowers and gardening" in which Gallian resided since 2009, peacefully and that Gallian always paid the ground rent "on-time." Ms. Curtiss stated she had been to Gallians home in the Gables and stated she did not understand what all the fuss was about. Ms. Curtiss stated she did not believe Gallian had broken any HOA rules. In fact, Ms. Curtiss stated "there was no evidence Gallian had ever broken the rules at the Gables HOA" in which she lived since 2009 or had the owner the unit received any complaints from Gables Management Co, Elite, other than Gallian put her trash cans out a day early if she was going to be out of town for work.

Jamie Gallian defense to Houser Bros Co complaint can be found in section 798.74, subdivision (a), which provides in relevant part, "[i]f the approval of a prospective homeowner is withheld for any reason other than those stated in this article, the management or owner may be held liable for all damages proximately resulting therefrom."

The statute does not say the failure to comply with this provision of the MRL must be asserted as an affirmative claim, rather than in defense to the park owner's lawsuit.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 10, 2018, real party in interest HOUSER COMPANY, a California

General Partnership, dba Rancho Del Rey Mobilehome Estates (hereinafter

"Houser") by Constructive Notice posted on the home of UNIT 376,

using yards of blue painter tape the following notice:


FIVE (5) DAY DEMAND

FOR SURRENDER OF POSSESSION OF SITE


To: Jamie Gallian and All Unlawful Occupants and Persons in Possession Without

a Signed Rental Agreement ("Occupants"):

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly

known as:

 Rancho Del Rey 16222 Monterey Lane Huntington Beach, CA 92649 (referred to

as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the

premises in the Park and surrender possession thereof commonly descried as:

Space 376

(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and

that said surrender of the mobilehome site be made to the park manager(s), who is

authorized to receive the same on behalf of the management.


Civil Code Section 798.75 authorizes forcible detainer proceedings against any

occupant of a mobilehome park who does not have rights of tenancy and is mot

otherwise entitled to occupy the premises upon failure of he occupants to quit the

-14-

premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, <u>inter alia</u> upon said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without right or authority under a rental agreement or otherwise.  Based upon the foregoing facts, management is authorized to pursue its legal remedies to obtain possession of the sire from all such Occupants having no rights of tenancy or possession.

THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE SECTION 798.75.</u> SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEY'S FEES AND COSTS, AND STATUTORY DAMAGES.

Dated: December 10, 2018        ALSTON, ALSTON & DIEBOLD

                                By: _____

                                VIVIENNE J. ALSTON

                                Authorized Agent for Owner

cc: Client

    Park Manager

-15-

On January 1, 2019, Houser Bros Co knowingly and willfully violating the terms of a Temporary Restraining Order issued December 4, 2018, by filing a complaint for forcible detainer (Code Civ. Proa, § 1159) naming Jamie L. Gallian as the sole defendant.

The complaint also alleges Plaintiff is the owner of said Premises and has a superior right to possession thereof.

The complaint alleges that Defendants entered into possession of the subject Premises without the consent of Plaintiff.

The complaint alleges that no rental agreement has been entered into between Plaintiff and Defendants.  The Complaint further alleges Defendants application was denied due to her poor financial condition.

The Complaint alleges Defendant made a material falsehood on her application, and her prior conduct indicates she will not comply with the rules and Regulations governing the mobilehome park.

The Complaint further alleges Due to the failure of Defendants to execute a rental agreement prior to taking possession of the Premises, Defendants have no right of tenancy and are unlawful occupants within the meaning of Civil Code §798.75,

The Complaint further alleges Defendants remain in possession of he subject Premises as of this date, and said possession is without Plaintiff's consent.

The Complaint alleges Defendants continue in willful, malicious, obstinate and/or intentional possession of said Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

The complaint requests rental value of the Premises is at least $36.20 per day and damages caused by Defendants' forcible detention will accrue at said rate for so long as Defendants' mobilehome remains in possession of said Premises.

-16-

DISCUSSION

Defendant Gallian contends Houser Bros misses the mark by interpreting Civil Code section 798.75, subdivision (c) as being applicable to [any] occupant a park owner unilaterally considers an "unlawful occupant," regardless of whether the occupant is an owner of the mobilehome or a subtenant of the mobilehome owner.

Defendant Gallian contends that the summary eviction remedy provided under Civil Code section 798.75, subdivision (c) is limited only to purchasers and transferees (heir who inherits) who occupy a mobilehome without first executing a lease with the mobilehome park.

J-Sandcastle Co, member Jamie Gallian declares that on November 16, 2018, J-Sandcastle Co filed an Application at Department of Housing & Community Development ("HCD") Riverside, CA., Registration & Titling, surrendering the Registration Card and an  Original Certificate Of Title.

J-Sandcastle Co further declares that on the first business day after registering the 2014 Mobilehome with HCD, on November 18, 2018, Seller's Agent First Team, delivered a comprehensive Residency Application dated November 18, 2018, on behalf of the Registered Owner, J-Sandcastle Co LLC, request to enter into a Lease Agreement for Ground Space 376 home, within Rancho Del Rey Mobilehome Estates.   J-Sandcastle Co executed   and acknowledged a copy of 1/1/2006 Mobilehome Rental Agreement, Rancho Del Rey,  Laura Ryan (deceased) and Lisa Ryan, Space 376 Agreement, signed by Lisa Ryan and J-Sandcastle Co LLC on November 16, 2018, paying all property taxes in default to obtain an Original Tax Clearance Certificate from the Orange County Tax Assessors Office.  Included with the submitted Application for Residency, a receipt from Housing and Community Development stamped November 16, 2018, as evidence of J-Sandcastle Co's

-17-

Registration of the 2014 Manufactured Home with HCD Riverside CA; a copy of the J-Sandcastle Co EIN number for a signed Authorization to obtain J-Sandcastle Co Credit Report. Chase Bank cashier check in the amount of $8,743.02, tendered on behalf of Lisa Ryan, seller of space 376 Manufactured home in an unrelated matter to J-Sandcastle Co, indicating on the face of the check satisfaction of OCSC Case 30-201801013582, Houser Bros vs Lisa Ryan.

The listing agreement obtained by J-Sandcastle Co indicated the home installed on space 376, pursuant to Health & Safety Code 18551, under an irrevocable Lease Agreement by Landlord, in Rancho Del Rey and Seller provide the 1/1/2006 Lease Agreement, Space 376 home.

J-Sandcastle Co declares that Houser Bros park manager, Willie Malculnski, accepted monthly rent tendered for the first 2 months of space 376, November 2018 and December 2018, in the amount of $2187.55 and signed a Rental Agreement for the last two months of the calendar year 2018 with J-Sandcastle Co.  The park office manager since 2008, Willie Masculinski stated "she was not sure if space 376 lease amount would change or increase beginning in 2019".  J-Sandcastle Co declare they have never received  a 60 day Notice of Rent Increase served.

On or about December 26, 2018, J-Sandcastle Co obtained a Copy of a circulated Mobilehome Lot Rental Agreement Park Management was delivering "at night" to all resident homeowners within the Rancho Del Rey park.  J-Sandcastle Co LLC obtained a copy, dated and signed the 2019 Mobilehome Lot Rental Agreement and delivered the 2019 Agreement to the Park Office.   J-Sandcastle Co LLC member, Jamie Gallian, was told by at least three separate resident homeowners Houser Bros Co, park managers refused to counter-sign 2019 Agreement signed by the Resident Homeowner and refused to sign the agreement and give a copy of the

signed agreement by both parties, to any resident homeowner claiming "the copy machine is broken."

Jamie Gallian declares that all of the utilities are in her name and she pays for them. Defendant's declaration of evidence establishes that she is, in effect, a sublessee or subtenant of J-Sandcastle Co and that J-Sandcastle Co is the registered owner of the mobilehome located at space 376 of Houser Bros mobilehome park pursuant to a January 1, 2006, lease agreement between Rancho Del Rey,  Laura Ryan (Deceased) and Lisa Ryan Mobilehome Rental Agreement, Space 376 home, within Rancho Del Rey.

Houser Bros Complaint fails to cite  the elements of Defendants forcible entry detainer pursuant to Code of Civil Procedures Section 1159.

Houser Bros Co complaint alleges that subdivision (c) applies to any "unlawful occupant," whether or not he or she is a purchaser or other transferee. This interpretation is wrong.

Houser Bros Co 1/2/2019 complaint against Defendant Jamie Gallian is based upon a 5–Day Notice to Surrender pursuant to Civil Code section 798.75, subdivision (c).

Civil Code section 798.75 states as follows:

(a) An escrow, sale, or transfer agreement involving a mobilehome located in a park at the time of the sale, where the mobilehome is to remain in the park, shall contain a copy of either a fully executed rental agreement or a statement signed by the park's management and the [prospective homeowner] that the parties have agreed to the terms and conditions of a rental agreement.

(b) In the event the [purchaser] fails to execute the rental agreement, the [purchaser] shall not have any rights of tenancy.

(c) In the event that an occupant of a mobilehome has no rights of tenancy and is not otherwise entitled to occupy the mobilehome pursuant to this chapter, the occupant is considered an unlawful occupant if, after a demand is made for the surrender of the mobilehome park site, for a period of five days, the occupant refuses to surrender the site to the mobilehome park management.

In the event the unlawful occupant fails to comply with the demand, the unlawful occupant shall be subject to the proceedings set forth in Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure.

(d) The occupant of the mobilehome shall not be considered an unlawful occupant and [shall not] be subject to the provisions of subdivision (c) if all of the following conditions are present:

(1) The occupant is the registered owner of the mobile home.

(2) The management has determined that the occupant has the financial ability to pay the rent and charges of the park; will comply with the rules and regulations of the park, based on the occupant's prior tenancies; and will comply with this article.

(3) The management failed or refused to offer the occupant a rental agreement.

   Thus, where the mobilehome is to remain in the park, subdivision (a) provides that, as a condition to the [purchaser's] or other [transferee's (an heir who inherits)] rights of tenancy in the park, at the time of sale or transfer, the escrow, sale or transfer agreement must contain a copy of either (a) a fully executed rental agreement or (b)

-20-

a statement signed by park management and the [prospective homeowner] that the parties have agreed to the terms and conditions of a rental agreement.

J-Sandcastle Co declares that they entered into a Rental Agreement with the Office Park Manager Willie Masculinski in support of, and further executed the 2019 Mobilehome Lot Agreement being delivered to all Resident Homeowners during the last week of December 2018. J-Sandcastle declares that they signed the Agreement and delivered to the Park Office for execution by Park Management, but learned that management has not executed any of the Agreements by its signature and refused to returned a copy executed by both parties, management and the resident homeowner.

On February 22, 2019, Jamie Gallian, the sole Defendant sued in the Forcible Entry Detainer Action filed an Answer to the Complaint and included as an Exhibit, a copy of this 2019 Rental Agreement signed and Agreed to by J-Sandcastle Co agreeing to its terms.  Houser Bros refused to offer a J-Sandcastle Co a Rental Agreement, the only Applicant for Residency in Rancho Del Rey and the Register Owner of the 2014 Manufactured Home.

Civil Code § 798.75 Subdivision (b) refers to a "purchaser" and requires a written agreement to be in place between the park and the purchaser.
Subdivision (b) provides that if the [purchaser] fails to execute a rental agreement, he or she has no rights of "tenancy."

Where a [purchaser] fails to execute a lease agreement as provided in subdivisions (a) and (b), he or she becomes an "unlawful occupant."

It follows that subdivision (c)'s reference to "unlawful occupant" is to a [purchaser] (or other transferee such as an heir) who has not executed a lease agreement and who has no rights of tenancy.

-21-

Thus, this "unlawful occupant" (i.e., purchaser without a lease agreement) is an occupant that "is not otherwise entitled to occupy the mobilehome pursuant to this chapter."

As a sublessee and guest of a Registered mobilehome owner, J-Sandcastle Co, Defendant Jamie Gallian, the sole defendant sued upon, does not fall within the definition of an "unlawful occupant,"

Civil Code Section 798.75 is contained within Article 7 (of the Mobilehome Residency Law), which is entitled "Transfer of Mobilehome or Mobilehome Park." The statute's language signifies that it applies only to a [purchaser] or transferee of a mobilehome in the park.

The language, and overall tone of the statute, indicates that the Legislature intended that it apply only in the context of a [purchase] or transfer of a mobilehome. (Patarak v. Williams (2001) 91 Cal.App.4th 826, 829 [goal in interpreting provision of Mobilehome Residency Law is to ascertain and effectuate the intent of the Legislature]; see *Torrey Hills Community Coalition v. City of San Diego* (2010) 186 Cal.App.4th 429, 440 [if there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant that what it said, and the plain meaning of the language governs.]  Although in several places the statute contains the term "unlawful occupant," it is used in the context of a purchaser without a lease agreement who "is not otherwise entitled to occupy the mobilehome pursuant to this chapter."

Support for this interpretation is found in subdivision (c) where it states that "the occupant is considered an unlawful occupant if, after a demand is made for the

-22-

surrender of the mobilehome park site for a period of five days, the occupant refuses to surrender the site to the mobilehome park management." (Civ.Code, § 798.75, subd. (c), emphasis added.)

This language refers to the occupant of a park "site," [not] to the occupant of a mobilehome unit.

An individual who is simply an occupant, and not an owner, of a mobilehome has no legal authority to remove a mobilehome unit from a mobilehome park "site."

Support for this interpretation in the well-known practice guide The Rutter Group Landlord–Tenant, which provides a discussion of Section 798.75:

"A purchaser who refuses to execute a rental agreement with management 'shall not have any rights of tenancy.' [CC § 798.75(b) ] Management may serve a [purchaser] resident with a demand to surrender the mobilehome park site; failure to surrender within five days after the demand makes the [purchaser] an 'unlawful occupant.' [CC § 798.75(c) ]

Once placed in the status of an 'unlawful occupant/ the [purchaser] may be evicted under the statutory summary repossession procedures (CCP § 1159 et seq.; [ ] )." (Friedman, Garcia & Hagarty, Cal. Prac. Guide: Landlord–Tenant (The Rutter Group 2012), ¶¶ 11:257–11:258. Italics in original,)

Houser Bros Co does not allege in its Unlawful Detainer Complaint or the Adversary Complaint 8:21-ap-01097, that Defendant Jamie Gallian, the guest of Registered Owner, J-Sandcastle Co's has violated [any] Rancho Del Rey park rule. Houser Bros Co has not alleged in the Forcible Entry Detainer Complaint or their

Adversary Complaint 8:21-ap-01097, that by Defendant assuming occupancy before she obtained park consent or approval violated any Rancho Del Rey park rule. Defendant Gallian has never received a Notice of Violation from Park Management since November 2018.

A sublessee or guest must comply with all park rules and regulations. Failure to do so may result in termination of the [homeowner's] tenancy in accordance with Civil Code section 798.56.

Houser Bros's if it chooses a remedy under the Mobilehome Residency Law may well be to proceed against any homeowner in accordance with Civil Code section 798.56, subdivision (d) for "failure of the homeowner [or] resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto."   Again, Houser Bros has not alleged Defendant has violation any park rule or regulation.

Houser Bros Co does not allege the Registered homeowner or its resident failed to comply with a reasonable rule or regulation of the park and since Houser Bros alleges J-Sandcastle Co LLC or Jamie Gallian has not entered into a rental agreement, Houser Bros Co is without this remedy.

**Conclusion**

Civil Code section 798.75 statute applies only to a purchaser or transferee (an heir who inherits a home in a park) of a mobilehome unit that occupies the park's space without first executing a written lease agreement with the park.

Therefore, the parks 5–Day Notice to Surrender dated December 10, 2018, [not only violated the Ex Parte temporary retraining order obtained by Jamie Gallian

-24-

on December 4, 2018], is invalid because it is based upon an inapplicable statute. As such, the eviction of the sole Defendant Jamie Gallian, sued upon by Houser Bros Co under Civil Code section 798.75, as stated in the pleadings is not authorized.

I declare under the penalty of perjury the foregoing to be true and correct.

Signed this 9th day of February, 2023 at Huntington Beach, CA.

Respectfully submitted,

*Jamie Lynn Gallian*

JAMIE LYNN GALLIAN

**The Mobilehome Residency Law (MRL)** regulates relations between the owners and the residents of mobilehome parks, and also regulates sales and transfers of mobilehomes in the park, providing specified protections for management, selling homeowners, purchasers, and occupants. Civ. Code, §§ 798 et seq.

In enacting the Mobilehome Residency Law (Civ. Code, §§ 798 et seq.), the Legislature intended to provide a procedure for eviction of mobilehome tenants which is less summary than the unlawful detainer procedure established by Code Civ. Proc., §§ 1161 to 1179.

**The term "mobile home" is somewhat misleading.**

Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself. Manufactured Homes are generally placed permanently in parks; once in place, only about 1 in every 100 mobile homes is ever moved. [Citation.]

-25-

1
2
3
4
5

A mobile homeowner typically rents a plot of land, called a "pad," from the owner of a mobile home park. The park owner provides private roads within the park, common facilities such as a swimming pool, and often utilities. The mobile homeowner often invests in site-specific improvements such as a driveway, steps, walkways, porches, fencing and landscaping.

6
7
8
9
10
11
12
13
14
15

When the mobile homeowner wishes to move, the mobile home is usually sold in place, and the purchaser continues to rent the pad on which the mobile home is located.' [Citation.] "Thus, unlike the usual tenant, the mobilehome owner generally makes a substantial investment in the home and its appurtenances— typically a greater investment in his or her space than the mobilehome park owner. [Citation.] The immobility of the mobilehome, the investment of the mobilehome owner, and restriction on mobilehome spaces, has sometimes led to what has been perceived as an economic imbalance of power in favor of mobilehome park owners [citation].

16
17
18
19
20
21
22
23
24
25
26
27
28

-26-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
5801 Skylab Road
Huntington Beach, CA 92649

A true and correct copy of the foregoing document entitled:
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in t
he manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
2/9/2023 ——  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __2/9/2023__, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.
Janine Jasso, Esq.
Email Address: j9_jasso@yahoo.com

Hon. Scott C. Clarkson 411 W. Fourth Street Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/9/2023 | Robert McLelland | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                          **F 4001-1.RFS.RESPONSE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - ATTORNEY FOR DEBTOR JAMIE GALLIAN: **Bert Briones**    bb@redhilllawgroup.com,
     helpdesk@redhilllawgroup.com;RedHillLawGroup@jubileebk.net
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com,
     danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS
     ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net;
     kadele@wgllp.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com,
     ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com;
     cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS
     ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com,
     danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com,
     lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com,
     mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**