D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Plaintiff,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>     Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>Adv. No. 8:21-ap-01097-SC<br><br>PLAINTIFF'S TRIAL BRIEF |
| HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES,<br><br>     Plaintiff,<br><br>v.<br><br>JAMIE LYNN GALLIAN,<br><br>     Defendant. | Date:   February 23, 2023<br>Time:  9:30 a.m.<br>Ctrm:  5C<br>Location: 411 W. Fourth Street, Santa Ana, CA 92701 |

# TABLE OF CONTENTS

1.    Summary of Argument ................................................................................................2

2.    Factual Background ....................................................................................................3

    A.    Bankruptcy Case .................................................................................................3

    B.    Adversary Proceeding .........................................................................................5

3.    Legal Argument ..........................................................................................................7

    A.    Count 2: Debtor's debt to Houser Bros. should be excepted from discharge
        pursuant to 11 U.S.C. § 523(a)(6). ......................................................................7

        i.    Debtor converted the Property. ....................................................................8

        ii.   Debtor willfully injured Houser Bros. ........................................................10

        iii.  Debtor maliciously injured Houser Bros. ...................................................10

    B.    Count 1: Debtor's debt to Houser Bros. should be excepted from discharge
        pursuant to 11 U.S.C. § 523(a)(2)(A). ...............................................................11

    C.    Count 3: Debtor's discharge should be denied pursuant to 11 U.S.C.
        § 727(a)(2)(A). ..................................................................................................13

        i.    Debtor disposed of or concealed property. ................................................14

        ii.   Debtor had the requisite intent to hinder, delay, or defraud. ....................15

        iii.  The dispositions or concealment occurred within one year before bankruptcy..........19

    D.    Count 4: Debtor's discharge should be denied pursuant to 11 U.S.C.
        § 727(a)(4). .......................................................................................................19

        i.    Debtor made false oaths and omissions. ....................................................20

        ii.   The false oaths and omissions were material...............................................21

        iii.  Debtor knowingly made false oaths and omissions. ..................................22

        iv.   Debtor had the requisite fraudulent intent. ...............................................23

    E.    Count 5: Debtor's discharge should be denied pursuant to 11 U.S.C.
        § 727(a)(5). .......................................................................................................24

4.    Conclusion ................................................................................................................25

i

4886-1591-1427,v.1

# TABLE OF AUTHORITIES

**Cases**

*Cohen v. De La Crus*,

    523 U.S. 213, 217 (1998) ............................................................................... 11, 12

*Compass Bank v. Meyer (In re Meyer)*,

    296 B.R. 849, 862 (Bankr. N.D. Ala. 2003) ................................................... 12

*Davis v. Choy (In re Choy)*,

    569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) ................................................... 25

*Deady v. Hanson (In re Hanson)*,

    432 B.R. 758, 773 (Bankr. N.D. Ill. 2010) .................................................... 12

*Faith v. Miller (In re Miller)*,

    2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015). ........................ 14, 16

*Fetty v. DL Carlson Enters., Inc. (In re Carlson)*,

    426 B.R. 840, 856-57 (Bankr. D. Idaho 2010) .............................................. 12

*Field v. Mans*,

    516 U.S. 59, 74-75 (1995) ............................................................................ 12

*Ghomeshi v. Sabban (In re Sabban)*,

    600 F.3d 1219, 1223 (9th Cir. 2010) ........................................................... 12, 13

*Hamilton v. State Farm Fire & Cas. Co.*,

    270 F.3d 778, 785 (9th Cir. 2001) ............................................................... 2, 21

*Hunter v. Martin (In re Martin)*,

    2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019) .......................... 7, 10

*In re Bailey*,

    197 F.3d. 997, (9th Cir. 1999). .................................................................... 10

*In re Baljian*,

    2014 WL 1287127, at *9 (Bankr. S.D. Cal. Mar. 26, 2014) ................................. 12

PLAINTIFF'S TRIAL BRIEF

1  *In re Biswas*,
2    2009 WL 7809011, at *4 (B.A.P. 9th Cir. Sept. 2, 2009) ........................................................... 12
3  *In re Eashai*,
4    87 F.3d 1082, 1087 (9th Cir. 1996) ........................................................................... 12
5  *In re Jones*,
6    585 B.R. 465, 506 (Bankr. E.D. Tenn. 2018) ........................................................... 12
7  *In re Lawson*,
8    122 F.3d 1237 (9th Cir. 1997) ................................................................................... 19
9  *In re Martin*,
10    698 F.2d 883 (7th Cir. 1983). ................................................................................... 19
11  *In re Sain*,
12    584 B.R. 325 (Bankr. S.D. Cal. 2018). ..................................................................... 22
13  *In re Santos*,
14    304 B.R. 639, 670 (Bankr. D.N.J. 2004) ................................................................. 12
15  *In re Smithson*,
16    372 B.R. 913, 922 (Bankr. E.D. Mo. 2007) ............................................................. 12
17  *In re Stearman*,
18    256 B.R. 788, 793 n.5 (B.A.P. 9th Cir. 2000) ......................................................... 12
19  *JP Morgan Chase Bank, N.A. v. Ellison (In re Ellison)*,
20    2016 Bankr.LEXIS 3475, at *24 (Bankr. C.D. Cal. Sept. 23, 2016) .......................... 16
21  *Kukulka-Stone v. Ekrem (In re Ekrem)*,
22    192 B.R. 982, 992 (Bankr. C.D. Cal. 1996) ............................................................. 12
23  *Lamar, Archer & Cofrin, LLP v. Appling*,
24    138 S.Ct. 1752, 1758 (2018) ....................................................................................... 2
25  *Lockerby v. Sierra*,
26    535 F.3d 1038, 1040 (9th Cir. 2008) .......................................................................... 7
27  *McCrary v. Barrack (In re Barrack)*,
28    217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) ............................................................... 12

iii

*Mendoza v. Continental Sales Co.,*

   140 Cal.App.4th 1395, 1404-05 (2006)............................................................................ 8

*Muegler v. Bening,*

   413 F.3d 980, 983 (9th Cir. 2005) ................................................................................ 13

*Ormsby v. First Am. Title Co. (In re Ormsby),*

   591 F.3d 1199, 1207 (9th Cir. 2010) ............................................................................ 10

*Owen v. Owen,*

   500 U.S. 305 (1991) ...................................................................................................... 22

*Petralia v. Jercich (In re Jercich),*

   238 F.3d 1202, 1203 (9th Cir. 2001) ............................................................................ 10

*Ravasia v. U.S. Tr. (In re Ravasia),*

   2021 Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021) ................................ 23

*Retz v. Samson (In re Retz),*

   606 F.3d 1189, 1200 (9th Cir. 2010) ........................................... 14, 16, 20, 21, 22, 23, 24

*Roberts v. Erhard (In re Roberts),*

   331 B.R. 876, 882 (B.A.P. 9th Cir. 2005) .................................................................... 20

*Roberts v. Erhard (In re Roberts),*

   331 B.R. 876, 883 (B.A.P. 9th Cir. 2005) .................................................................... 21

*Santa Ana Unified Sch. Dist. v. Montgomery (In re Montgomery),*

   489 B.R. 609, 626 (Bankr. N.D. Ga. 2013) ................................................................. 12

*Schoenmann v. Chen (In re Chen),*

   2009 Bankr.LEXIS 3636, at *14 (Bankr. N.D. Cal. Nov. 9, 2009) ................................ 2

*State Farm Mut. Auto Ins. Co. v. Rodriguez (In re Rodriguez),*

   568 B.R. 328, 342 (Bankr. S.D. Cal. 2017)..................................................................... 7

*Stewart Title Guar. Co. v. Roberts-Dude,*

   497 B.R. 143 (S.D. Fla. 2013) ..................................................................................... 12

*United States v. Keefer,*

   799 F.2d 1115, 1126 (6th Cir. 1986) ........................................................................... 12

*Zeeb v. Farah (In re Zeeb)*,

    2019 Bankr.LEXIS 2477, at *16 (B.A.P. 9th Cir. Aug. 9, 2019) ..................................................... 7

**Statutes**

11 U.S.C § 523(a)(6) ........................................................................................................... 7, 10, 13

11 U.S.C § 522(c) ............................................................................................................................. 22

11 U.S.C. § 522 ................................................................................................................................. 22

11 U.S.C. § 523(a)(2)(A) ................................................................................................................. 11

11 U.S.C. § 727(a)(2)(A) ........................................................................................................... 13, 15

11 U.S.C. § 727(a)(4)(A) ........................................................................................................... 19, 20

11 U.S.C. § 727(a)(5) ................................................................................................................. 24, 25

11 U.S.C. §523(a)(6) ......................................................................................................................... 7

Cal. Civ. Code § 798.23.5(b)(2), (5) ................................................................................................. 9

Cal. Civ. Code § 798.74(c) ................................................................................................................ 8

Cal. Civ. Code § 798.75(b) ........................................................................................................... 8, 13

Cal. Civ. Code § 798.75(c) ................................................................................................................ 8

California Civil Code § 798.23.5(b)(2) .............................................................................................. 9

California Civil Code § 798.76 ........................................................................................................... 9

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  DEFENDANT JAMIE LYNN GALLIAN, AND ALL INTERESTED PARTIES:

3        Plaintiff, HOUSER BROS. CO., a California limited partnership dba RANCHO DEL REY

4  MOBILE HOME ESTATES ("Houser Bros." or "Plaintiff"), respectfully submits this trial brief in

5  support of its complaint to except debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and

6  (a)(6), and to deny discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(4), and (a)(5).

7  **1.    Summary of Argument**

8        The privilege of discharge is reserved for the "honest but unfortunate debtor."[1] This case

9  features a debtor who is anything but honest.

10        Jamie Lynn Gallian ("Debtor") is trespassing by occupying space at a mobilehome park

11  owned by Houser Bros. Even though Houser Bros. denied her application to become a resident, she

12  knowingly and willfully refuses to cease her tortious activity. As a result of Debtor's wrongful

13  conduct, Houser Bros. has incurred (and continues to incur) damages from lost rental income and

14  utilities. Houser Bros. respectfully requests that the Court enter judgment excepting these damages

15  from discharge.

16        Houser Bros. further seeks denial of Debtor's discharge. In the underlying bankruptcy case,

17  Debtor has submitted 10 sets of conflicting schedules, obfuscating her financial affairs and defeating

18  the purpose of filing schedules at all.[2] Specifically, Debtor misrepresented crucial information in her

19  schedules, falsely claiming, for instance, that she owned the property at issue on the petition date and

20  omitting that she had been paying rent to her single-member LLC that was on title to the property.

21  Debtor further omitted facts regarding prepetition transfers of liens against the property to her ex-

22  husband, sons, and an LLC in which she held some vague ownership interest. Debtor also claimed a

23  homestead exemption in the property on the grounds that she held some equitable or beneficial

24

25  [1] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1758 (2018) ("One of the main purposes of the federal
    bankruptcy system is to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain
26  character… This exception is in keeping with the basic policy animating the Code of affording relief only to an honest
    but unfortunate debtor.") (cleaned up); *Schoenmann v. Chen (In re Chen)*, 2009 Bankr.LEXIS 3636, at *14 (Bankr. N.D.
27  Cal. Nov. 9, 2009).
    [2] *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (stating that it is "very important that a
28  debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information
    upon which all creditors rely") (citation omitted).

4886-1591-1427,v.1

interest in the Property even though she fraudulently titled the property in an LLC. Her fraudulent transfer in holding title in the LLC and then creating sham liens against it concealed her equitable interest and the equity in the property from creditors. If a debtor conceals an interest in property and that concealment continues into the one-year period prior to bankruptcy, discharge must be denied.

Because Debtor has been less than honest in this bankruptcy case - and in the months and years leading up to it - Houser Bros. respectfully requests that the Court enter judgment excepting its damages from discharge and denying Debtor's discharge.

## 2.    Factual Background

### A.    Bankruptcy Case

On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The filing of the petition commenced *In re Gallian*, 8:21-bk-11710-SC ("Bankruptcy Case").

In the Bankruptcy Case, Debtor has filed ***10 sets of schedules***. Trial Ex. Nos. 28-38. Although the schedules are often inconsistent from one set to another, one thing remains consistent - Debtor alleges an interest in a manufactured home at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 ("Property"). Moreover, Debtor further claims a $600,000 exemption in the Property pursuant to § 704.730 of the California Code of Civil Procedure ("CCP"). Trial Ex. No. 37 at 773. Importantly, Houser Bros. owns the mobilehome park on which the mobilehome sits.

On May 12, 2022, as Docket No. 95, Houser Bros. filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Homestead Motion"). Trial Ex. No. 39. In the Homestead Motion, Houser Bros. sought an order:

1) Sustaining the objection to Debtor's claimed homestead exemption under CCP § 704.730, and disallowing any claim of exemption by Debtor in the Property pursuant to CCP § 704.730; and

2) Alternatively, finding that any allowed exemption be capped at $170,350 pursuant to 11 U.S.C. § 522(p).

Houser Bros. further asserted that as of the Petition Date, Debtor's single-member LLC, J-Sandcastle Co., LLC ("JSC"), held title to the Property. Trial Ex. No. 39.

On July 7, 2022, Houser Bros. filed a "Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption" ("Homestead Reply"). Trial Ex. No. 41. In the Homestead Reply, Houser Bros. argued, *inter alia*, that Debtor's only interest in the Property was that of a month-to-month tenant of JSC which was the owner of the Property. *Id.* at 1477. Unless Trustee sold Debtor's tenancy rights, no exemption should attach to the proceeds of sale if Trustee could otherwise recover and administer the Property. *Id.*

On July 20, 2022, Houser Bros. filed "Notice of Lodgment of Excerpts of Certified Transcript in Support of Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption." Bankruptcy Case, Docket No. 138.

On July 21, 2022, at 10:30 a.m., the Court held a continued hearing on the Homestead Motion. During the hearing, the Court orally granted the Homestead Motion for the reasons stated in its tentative ruling. The Court entered its order granting the Homestead Motion on August 5, 2022. Trial Ex. No. 44.

On July 26, 2022, Debtor filed a "Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates Objection to Debtor's Claimed Homestead Exemption and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" ("Reconsideration Motion"). Bankruptcy Case Docket No. 157. Houser Bros. opposed the motion. Bankruptcy Case, Docket No. 170.

On September 22, 2022, the Court held a hearing on the Reconsideration Motion. At the end of the hearing, the Court took the Reconsideration Motion under advisement.

About a week after the September 22, 2022, hearing, Houser Bros. filed a "Notice of Recent Decision Re: Debtor's Motion for Reconsideration of 7.21.22 Order Sustaining Objection to Debtor's Claimed Homestead Exemption" ("NRD"). Bankruptcy Case Docket No. 242.

Almost three months later, on December 19, 2022, the Court entered: (1) "Memorandum of Decision Regarding Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption" ("MOD"), Docket No. 273; and (2) "Order Granting Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption," Docket No. 274.

PLAINTIFF'S TRIAL BRIEF

4886-1591-1427,v.1

1  On December 29, 2022, Houser Bros. filed a "Notice of Appeal and Statement of Election."

2  Docket No. 280. The appeal is currently pending as Case No. 8:23-cv-00001-DSF ("Appeal").

3  ### B.    Adversary Proceeding

4  On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of

5  Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C.

6  §§ 727(a)(2)(A), (a)(4), and (a)(5)." The filing of the complaint commenced *Houser Bros. Co. v.*

7  *Gallian* (*In re Gallian*), Adversary Proceeding No. 8:21-ap-01097-SC ("AP"). On October 22, 2021,

8  as AP Docket No. 3, Plaintiff filed an amended complaint ("Complaint"). Trial Ex. No. 45.

9  In the Complaint, Houser Bros. alleges as follows:

10  Houser Bros. owns several acres of real property in Huntington Beach, which have been

11  improved with a senior mobilehome park known as Rancho Del Rey Mobile Home Estates ("Park"

12  or "Premises"), and an 80-unit condominium complex known as The Huntington Beach Gables.

13  Complaint ¶ 6.

14  In February 2018, Debtor visited the Park's leasing office to inquire whether there were any

15  mobilehomes for sale. She neither requested an application packet nor any information regarding the

16  Park's requirements for tenancy and its application procedures. Complaint ¶ 7.

17  Separately, on August 21, 2018, Houser Bros. filed a complaint ("Ryan Complaint") against

18  Lisa Ryan ("Ms. Ryan") in Orange County Superior Court ("OCSC") for failure to pay rent

19  stemming from Ms. Ryan's tenancy at the Park – namely Space #376 (the Property). Subsequently,

20  Ms. Ryan and the Park entered into a stipulated judgment ("Stipulated Judgment") resolving the

21  Ryan Complaint and providing for turnover of the Property. The Stipulated Judgment, among other

22  things, gave Ms. Ryan 120 days to market and sell her mobilehome located at the Property, and

23  Houser Bros. was to review any prospective buyers in accordance with Mobilehome Residency Law.

24  Complaint ¶ 8; Trial Ex. Nos. 2-3.

25  On or around November 1, 2018, Ms. Ryan allegedly transferred her interest in her

26  mobilehome to Debtor's single-member LLC, JSC[LM1]. The transfer was not done pursuant to any

27  written purchase agreement. Complaint ¶ 15; Trial Ex. Nos. 4-5.

28  On November 19, 2018, Debtor e-mailed an outdated application ("Application") to Houser

1  Bros. Complaint ¶ 9; Trial Ex. No. 6.

2         Houser Bros. reviewed the Application and found that Debtor (a) did not meet the minimum

3  financial requirements for tenancy; (b) had a credit score of 523, which was lower than the required

4  score of 650 or greater; and (c) had numerous collections and charge offs as bad debts. Complaint

5  ¶¶ 9-10.

6         On November 20, 2018, Houser Bros. (a) mailed a letter informing Debtor of the denial of

7  her Application ("Denial Letter"); and (b) verbally informed Debtor's real estate agent of the Denial

8  Letter. On the same day, Debtor called the Park office to discuss the Denial Letter. Complaint ¶ 11;

9  Trial Ex. No. 7.

10        After denial of the Application, Houser Bros. learned that Debtor made multiple false

11  representations in it. Specifically, when Debtor was asked "[h]ave you been asked to terminate your

12  residency elsewhere or have you ever been evicted?" she answered in the negative. Yet, in October

13  2018 - one month before turning in the Application - Debtor was sued by The BS Investors LP for

14  unlawful detainer ("BS Investors UD Action"). Complaint ¶ 14; Trial Ex. No. 8.

15        In sum, Houser Bros. never approved Debtor to be a tenant for the Property. Complaint ¶ 17.

16        Reasonable daily rental value of the Premises is at least $36.20, or $1,086 monthly, which is

17  the rate Ms. Ryan was charged in 2018. Complaint ¶ 17 n.5. Since then, the amount has increased

18  with move in rates for the Park as follows: (a) 2019 $1372; (b) 2020 $1420; (c) 2021 $1460; and

19  (d) 2022 $1,530. [LM2]*Id.*; *see also* Proof of Claim No. 3-1 (setting forth Houser Bros.'s alleged

20  damages for rental income, utilities, and attorney's fees, among other expenses).

21        In December 2018, Houser Bros. caused to be served on Debtor a Five-Day Notice to Quit

22  Premises. Complaint ¶ 18; Trial Ex. No. 11.

23        On January 2, 2019, Houser Bros. filed a complaint ("Forcible Entry Complaint") against

24  Debtor for forcible entry/detainer (mobilehome park) in the OCSC ("Forcible Entry Action").

25  Complaint ¶ 19; Trial Ex. No. 12.3

26        On February 22, 2019, Debtor filed an answer to the Forcible Entry Complaint. Complaint ¶

27

28  3 This Court recently granted Houser Bros. relief from the automatic stay to proceed with litigation
   in the Forcible Entry Action.

PLAINTIFF'S TRIAL BRIEF

1    24.

2         On September 13, 2022, Houser Bros. filed a "Joint Pretrial Stipulation" ("PTS"). AP Docket

3    No. 37.

4         On October 5, 2022, the Court entered an "Order Approving Joint Pretrial Stipulation, and

5    Scheduling Order" ("PTO"). AP Docket No. 41.

6         On February 1, 2023, Houser Bros. filed a "Motion in Limine to Exclude Debtor's Trial

7    Exhibits" ("Motion in Limine"). AP Docket No. 47. The Motion in Limine is set for hearing on

8    February 14, 2023.

9    **3.    Legal Argument**

10        **A. Count 2: Debtor's debt to Houser Bros. should be excepted from**

11           **discharge pursuant to 11 U.S.C. § 523(a)(6).**

12        Section 523(a)(6) provides: "[a] discharge . . . does not discharge an individual debtor from

13   any debt– for willful and malicious injury by the debtor to another entity or to the property of

14   another entity." 11 U.S.C. §523(a)(6); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702,

15   706 (9th Cir. 2008); *Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D.

16   Cal. July 10, 2019). The "willful" and "malicious" requirements are conjunctive and subject to

17   separate analysis. *Id.* In addition, the injury-producing conduct must be tortious to be exempted from

18   discharge under § 523(a)(6). *Id.* at *27. Conduct is tortious under § 523(a)(6) only if it constitutes a

19   tort under state law. *Id.* (citing *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008)).

20        The language of § 523(a)(6) covers conversion. *State Farm Mut. Auto Ins. Co. v. Rodriguez*

21   *(In re Rodriguez)*, 568 B.R. 328, 342 (Bankr. S.D. Cal. 2017). But, whether a defendant's actions

22   amount to conversion under California law is not dispositive regarding whether the underlying

23   claims are nondischargeable under § 523(a)(6). *Id.* Rather, to prevail on a § 523(a)(6) conversion

24   claim, a plaintiff must "first establish that a conversion has occurred under California law, and

25   second that the conversion is willful and malicious." *Id.* at 343; *see also Zeeb v. Farah (In re Zeeb)*,

26   2019 Bankr.LEXIS 2477, at *16 (B.A.P. 9th Cir. Aug. 9, 2019) (noting that a creditor seeking to

27   exempt a debt from discharge under § 523(a)(6) must also prove that the conversion was undertaken

28   willfully and maliciously).

PLAINTIFF'S TRIAL BRIEF

### i. Debtor converted the Property.

Conversion, under California law, is the "wrongful exercise of dominion over the property of another." *Mendoza v. Continental Sales Co.*, 140 Cal.App.4th 1395, 1404-05 (2006). The elements of a conversion claim are:

1) The plaintiff's ownership or right to possession of the property;

2) The defendant's conversion by a wrongful act or disposition of property rights; and

3) Damages.

   *Id.* at 1405.

Here, Houser Bros. owns the Park, including the Property.

Debtor wrongfully converted the Property by trespassing and taking up occupancy after Houser Bros. denied her Application. She visited in 2018 and then applied later that year. Houser Bros. denied her Application on November 20, 2018, because she (a) did not meet the minimum financial requirements for tenancy; (b) had a credit score of 523, which was lower than the required score of 650 or greater; and (c) had numerous collections and charge offs as bad debts. Trial Ex. No. 7 (Denial Letter); *see also* Cal. Civ. Code § 798.74(c) (providing grounds on which management may withhold approval from a prospective purchase of a mobilehome, including a determination that, based on the purchaser's prior tendencies, they will not comply with the rules and regulations of the park; the purchaser does not have the financial ability to pay the rent, estimated utilities, and other charges of the park; and the purchaser has committed fraud, deceit, or concealment of material facts during the application process); *see also* Cal. Civ. Code § 798.75(b) (providing that in the event the purchaser fails to execute the rental agreement, the purchaser shall not have any rights of tenancy); Cal. Civ. Code § 798.75(c) (stating that in event that an occupant of a mobilehome has no rights of tenancy and is not otherwise entitled to occupy the mobilehome pursuant to this chapter, the occupant is considered an unlawful occupant if, after demand is made for the surrender of the mobilehome park site, for a period of five days, the occupant refuses to surrender the site to the mobilehome park management).[4]

---

[4] In Debtor's trial brief, she claims that she submitted the Application on behalf of JSC, and Houser Bros. wrongfully denied the Application based on her credit score. Docket No. 54 at 3. On January 9, 2019, however, Houser Bros. sent Debtor an "Amendment to Denial Letter," which specified the following additional bases for the denial:

4886-1591-1427,v.1

Yet, Debtor still purchased the mobilehome from Lisa Ryan in November 2018, even though she did not seek approval from Plaintiff first, and she has occupied the Property ever since. And, the filing of the Bankruptcy Case stayed Houser Bros. Forcible Entry Action (although Houser Bros. recently obtained relief from stay).

Damages are shown because Houser Bros. has been unable to rent the Property during Debtor's occupancy. Although Debtor or JSC have attempted to make some rent payments, Houser Bros. returned them because it has no lease agreement for the Property with Debtor. And, Houser Bros. had to file a Forcible Entry Action, for which it has incurred attorney's fees. Specifically, the reasonable daily rental value of the Premises is at least $36.20, or $1,086 monthly, which is the rate Ms. Ryan was charged in 2018. The amount has since increased with move in rates for the Park as follows: (a) 2019 $1,372; (b) 2020 $1,420; (c) 2021 $1,460; and (d) 2022 $1,530. Houser Bros. has further incurred utilities totaling at least $8,007.32. As of October 2022, Houser Bros.'s total charges for the lot and utilities (and $30 of HCD fees) totaled $76,220.16. *See* Proof of Claim No. 3-1. Houser Bros. has incurred at least $69,384.58 of attorney's fees and costs to Vivienne Alston in its Forcible Entry Action against Debtor, and Ms. Alston has assigned a $3,010 sanctions claim to Houser Bros. *Id.* And, Houser Bros. has been forced to incur substantial attorney's fees to Marshack

---

1)  Debtor made a materially false statement on her Application that she had never been asked to terminate her residence elsewhere and had never been evicted, when in fact the BS Investors UD Action had been filed against her.

2)  Debtor's previous conduct in the condominium community known as the Huntington Beach Gables demonstrated that she would not comply with the rules and regulations governing the Park, including the "systemic and continued harassment of a member of the community and her young family" resulting in a criminal action pending against her for violation of a temporary restraining order; punching her neighbor in the face requiring medical attention; and trespassing onto a neighbor's property and willfully and deliberately destroying approximately $800 worth of another resident's property.

3)  The Park is a residential community for seniors, requires that at least one of the qualifying tenants be registered with the HCD as a homeowner, and does not allow subleasing.

Trial Ex. No. 7 at 62-66. California Civil Code § 798.76 allows for rules and regulations limiting residency based on age requirements for housing for older persons. And, California Civil Code § 798.23.5(b)(2) provides that "management may require approval of a prospective renter or sublessee, subject to the process and restrictions provided by subdivision (a) of Section 798.74 for prospective purchasers of mobilehomes." The approval process may include a "personal reference check or consumer credit report," and management may require the homeowner to reside in the mobilehome park for a term of one year before management permits the renting or subletting of a mobilehome or mobilehome space. Cal. Civ. Code § 798.23.5(b)(2), (5).

9

Hays LLP for bankruptcy representation. *Id.* These figures have since increased in an amount to be proven at trial.

### ii.    Debtor willfully injured Houser Bros.

An injury is "willful" when a debtor "harbors either subjective intent to harm, or a subjective belief that harm is substantially certain." *Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019). The injury must be "deliberate or intentional, not merely a deliberate or intentional act that leads to injury." *Id.*

Debtor willfully injured Houser Bros. by trespassing without first obtaining approval, and by failing and refusing to vacate the premises knowing her Application was denied and Houser Bros. has asked her to leave. Debtor knew full well that she was not supposed to move in and remain on the Property after Houser Bros. denied her Application, but she so did anyhow. Debtor must have had a subjective belief that harm was substantially certain because Houser Bros. would be unable to rent the Property to a creditworthy tenant that it approved for occupancy.

### iii.    Debtor maliciously injured Houser Bros.

An injury is "malicious" if it involves:

1) A wrongful act,

2) Done intentionally,

3) Which necessarily causes injury, and

4) Is done without just cause or excuse.

*Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *27 (Bankr. C.D. Cal. July 10, 2019); *see also Carrillo v. Su (In re Su*), 290 F.3d 1140, 1146-47 (9th Cir. 2002) (same). Malice may be inferred based on the nature of the wrongful act. *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1207 (9th Cir. 2010). The intentional conversion of another's property without its knowledge or consent and without justification and excuse constitutes a willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1203 (9th Cir. 2001); *In re Bailey*, 197 F.3d. 997, (9th Cir. 1999).

Here, Debtor committed the wrongful act of moving onto and occupying the Property without the approval of Houser Bros.

PLAINTIFF'S TRIAL BRIEF

4886-1591-1427,v.1

There can be no question that Debtor moved onto and occupied (and continues to occupy) the Property intentionally. She visited the Park, purchased the mobilehome without a written purchase agreement before applying for occupancy, and Houser Bros. denied her Application in November 2018. Debtor further misrepresented facts regarding the BS Investors UD Action on her Application, which only underscores her intent.

Debtor intentionally remaining on the Property after her application was denied and she was asked repeatedly to leave necessarily caused (and continues to cause) injury to Houser Bros. Debtor's occupancy deprives Houser Bros. from leasing the space to another, creditworthy tenant, and from collecting rent and reimbursement for utilities.

Finally, Debtor moved onto and occupies the Property without just cause or excuse. As discussed above, she purported to purchase the Property before obtaining approval from Houser Bros., she misrepresented facts on her Application, and she has continued to occupy the Property despite Houser Bros.'s denial of her Application.

## B. Count 1: Debtor's debt to Houser Bros. should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

Title 11 U.S.C. § 523(a)(2)(A) provides:

A discharge under . . . this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to

the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial condition.

"The Bankruptcy Code has long prohibited debtors from discharging liabilities on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. De La Crus*, 523 U.S. 213, 217 (1998). "Section 523(a)(2)(A) continues the tradition, excepting from discharge 'any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud…'" *Id.* at 218. A plaintiff bears the burden of proving the applicability of § 523(a)(2)(A) by a preponderance of the evidence by demonstrating five elements:

1)  The debtor made representations;[5]

2)  That at the time he or she knew they were false;[6]

3)  That he or she made them with the intention and purpose of deceiving the creditor;[7]

4)  That the creditor relied on such representations;[8] and

5)  That the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.[9]

---

[5] "An actionable representation must be an assertion of fact that is "existing and ascertainable." *Kukulka-Stone v. Ekrem (In re Ekrem)*, 192 B.R. 982, 992 (Bankr. C.D. Cal. 1996). Further, the representation must be "material to the transaction at hand," meaning that a false representation must contain "substantial inaccuracies of the type which would generally affect a [creditor's] decision." *In re Jones*, 585 B.R. 465, 506 (Bankr. E.D. Tenn. 2018) (internal citations omitted); *In re Ekrem*, 192 B.R. at 992. The test for materiality is whether the representation "had a natural tendency to influence, or was capable of influencing, the [creditor's decision]." *United States v. Keefer*, 799 F.2d 1115, 1126 (6th Cir. 1986) (internal quotation marks omitted).

[6] A promise is considered fraudulent when the promisor knew or should have known of his or her inability to perform. *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998). Reckless disregard for the truth of a representation satisfies the knowledge element. *In re Biswas*, 2009 WL 7809011, at *4 (B.A.P. 9th Cir. Sept. 2, 2009).

[7] Courts may infer a debtor's intent to deceive "if the facts and circumstances of a particular case present a picture of deceptive conduct by a debtor." *In re Stearman*, 256 B.R. 788, 793 n.5 (B.A.P. 9th Cir. 2000) (citing *In re Eashai*, 87 F.3d 1082, 1087 (9th Cir. 1996)). Debtors must have had the subjective intent to deceive creditors at the time they obtained the money, property, or services. *In re Baljian*, 2014 WL 1287127, at *9 (Bankr. S.D. Cal. Mar. 26, 2014).

[8] To satisfy § 523(a)(2)(A)'s reliance requirement, the plaintiff must show "justifiable" reliance, not "reasonable" reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995). A bankruptcy court must apply a subjective test to determine whether a creditor justifiably relied on a debtor's misrepresentation. *Santa Ana Unified Sch. Dist. v. Montgomery (In re Montgomery)*, 489 B.R. 609, 626 (Bankr. N.D. Ga. 2013). "Justifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 773 (Bankr. N.D. Ill. 2010) (quoting *Field*, 516 U.S. at 71). The justifiable reliance standard, however, imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* (citing *Field*, 516 U.S. at 70-72). A creditor's reliance will likely be justified if there is nothing on the face of the representation that would lead the creditor to believe that the representation is false, or if the creditor does not have actual knowledge from which he should realize the representation is false. *Compass Bank v. Meyer (In re Meyer)*, 296 B.R. 849, 862 (Bankr. N.D. Ala. 2003). A creditor need not show "that it acted consistent with ordinary prudence and care." *Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143 (S.D. Fla. 2013).

[9]      Section 523(a)(2)(A) requires that damage be proximately caused by the debtor's fraud. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1223 (9th Cir. 2010) (explaining that the debtor will not receive a discharge of debts "resulting from" or "traceable" to fraud); *Fetty v. DL Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 856-57 (Bankr. D. Idaho 2010) (indicating that a plaintiff must prove he or she was damaged as a proximate cause of the fraudulent representation). To satisfy this element, the plaintiff must not only show that the misrepresentation was the but-for cause of the injury, but also that its loss was a foreseeable result of the debtor's misrepresentation. *In re Smithson*, 372 B.R. 913, 922 (Bankr. E.D. Mo. 2007). "Legal causation can be established through evidence showing that the creditor's loss could reasonably have been expected to result from its reliance on the debtor's misrepresentation." *In re Santos*, 304 B.R. 639, 670 (Bankr. D.N.J. 2004). Debtors are liable for losses to creditors resulting from the fraud, even if the losses exceed the value obtained by the debtors. *See, e.g.*, *Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998) (stating that once it is established that specific money or property has been obtained by fraud, any debt arising therefrom is excepted from discharge).

4886-1591-1427,v.1

1  *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

2      Typically, a finding of a debt due to fraud is all that is necessary to satisfy § 523(a)(2)(A) to

3  establish that the debt is nondischargeable in bankruptcy. *Muegler v. Bening*, 413 F.3d 980, 983 (9th

4  Cir. 2005).

5      Here, to the extent Houser Bros. prevails on its § 523(a)(6) claim, the § 523(a)(2)(A) claim

6  will be moot. Even so, Debtor made material misrepresentations or fraudulent omissions or engaged

7  in deceptive conduct as follows:

8    1) Debtor trespassed and took possession of the Premises without Plaintiff's consent or

9       approval, and no rental agreement was entered into between Plaintiff and Defendant. *See* Cal.

10      Civ. Code § 798.75(b) (providing that in the event a mobilehome purchaser fails to execute a

11      rental agreement, the purchaser shall not have any rights of tenancy).

12    2) Debtor remains in possession of the Premises, without Plaintiff's consent.

13    3) Debtor misrepresented facts in her Application regarding the BS Investors UD Action filed

14       against her a month before turning in the Application.

15      Debtor had knowledge of the falsity or deceptiveness of her conduct and intent to deceive

16  based on her taking title to the Property (through JSC) without a written purchase agreement nearly

17  three weeks before applying for tenancy, omitting the BS Investors UD Action from her Application,

18  skirting the Park's right to review her as a prospective buyer pursuant to the Stipulated Judgment,

19  and remaining on the Property despite denial of the Application.

20    **C. Count 3: Debtor's discharge should be denied pursuant to 11 U.S.C.**

21       **§ 727(a)(2)(A).**

22      Section 727(a)(2)(A) provides: The court shall grant the debtor a discharge, unless—the

23  debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with

24  custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or

25  has permitted to be transferred, removed, destroyed, mutilated, or concealed— property of the

26  debtor, within one year before the date of the filing of the petition.

27      A party seeking denial of discharge under § 727(a)(2)(A) must prove:

28    1) A disposition of property, such as a transfer or concealment;

13

4886-1591-1427,v.1

2)  A subjective intent on the debtor's part to "hinder, delay or defraud a creditor through the act
[of] disposing of the property;" and

3)  It must occur within one year before filing bankruptcy.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010); *Faith v. Miller (In re Miller)*, 2015
Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015).

### i.  Debtor disposed of or concealed property.

To purchase the Property, Debtor sold her residence located at 4476 Alderport Drive, Unit
53, Huntington Beach, California 92649 ("4476 Alderport"). To defraud creditors, however, Debtor
did not acquire title to the Property in her own name. Instead, she fraudulently transferred it to JSC.
She subsequently created sham liens against the Property in favor of another LLC and her family
members. Yet, in her bankruptcy, Debtor claims to have a beneficial interest in the Property which
interest was concealed by multiple fraudulent transfers. Although Debtor tried to transfer title to
herself by the petition date, the transfer did not occur until post-petition. In short, her concealed
interest continued into the one-year period prior to bankruptcy.

Moreover, state records evidence multiple transfers regarding the Property leading up to (and
continuing shortly after) the Petition Date. Records of the California Department of Housing and
Community Development ("HCD") show a "R/O [Registered Owner] Transfer – Private Sale" dated
November 16, 2018, regarding the Property ("November 2018 HCD Transaction"). Trial Ex. No. 24.
The November 2018 HCD Transaction includes a document to release title to the Property from Ms.
Ryan to JSC on November 1, 2018, and was executed by Debtor as managing member of JSC. Trial
Ex. No. 24 pgs. 432-443.

HCD records show a legal owner assignment regarding the Property with transaction date of
February 1, 2021 ("February 2021 HCD Transaction"). Trial Ex. No. 25. The February 2021 HCD
Transaction included an HCD certificate of title, which showed JSC as the Property's registered
owner, with title issued January 19, 2019. Trial Ex. No. 25 at 444-465. It also included a "Statement
to Encumber" (i.e., record a lien) dated August 20, 2020, in favor of Debtor's ex-husband, Ron
Pierpont ("Mr. Pierpont"), and J-Pad LLC. *Id.* at 454. A second "Statement to Encumber" dated
August 20, 2020, lists Debtor's sons, Steven D. Gallian and Brian J. Gallian, as legal owners as joint

tenants with right of survivorship. *Id.* at 460.

HCD records further show a registered owner transfer – "No Sale" – with transaction date of July 14, 2021 ("July 2021 HCD Transaction"). Trial Ex. No. 26. Attached to the July 2021 HCD Transaction is an HCD certificate of title, which showed JSC as the Property's registered owner and Ronald Pierpont and J-Pad LLC as the Property's legal owners, with title issued as of February 24, 2021. Trial Ex. No. 26 at 468. Debtor sought to add herself as the "New Registered Owner," and provided a "Releasing Signature" of JSC, with February 25, 2021, as the "Date of Release." *Id.* at 469. Debtor also included a "Lien Satisfied" document dated July 9, 2021 (the Petition Date), in which Mr. Pierpont certified that his and J-Pad LLC's lien had been fully satisfied. *Id.* at 476. And, an attached County of Orange "Tax Clearance Certificate" executed and issued on July 9, 2021—the Petition Date—showed J-Sandcastle LLC as the "Current Registered Owner." *Id.* at 448.

An HCD legal owner addition with a transaction date of August 10, 2021 ("August 2021 HCD Transaction") included a certificate of title showing Debtor as the Property's registered owner, with title issued August 3, 2021. Trial Ex. No. 27. An attached "Statement to Encumber" dated January 14, 2019, sought to add J-Pad LLC as the Property's legal owner. Trial Ex. No. 27 at 498.

In sum, state records noted above show several transfers regarding the Property leading up to (and continuing shortly after) the Petition Date all at a time when Debtor was (1) engaged in litigation[10] with the Huntington Beach Gables ("Gables") concerning real property at 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649 ("4476 Alderport"); and (2) engaged in litigation[11] with Houser Bros. over her unlawful occupancy of the Premises and attempts to remove her from the Premises/Property.

## ii.    Debtor had the requisite intent to hinder, delay, or defraud.

A debtor's intent need not be identical to the fraudulent intent under a common-law tort standard to meet the requirements of § 727(a)(2)(A). *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

---

[10] Litigation commenced on May 24, 2017. *See,* Trial Ex. 1, p. 1 lns. 20-23. In fact, the litigation resulted in a judgment of over $316,583.59 in favor of the Gables which was formally entered on May 6, 2019. *Id*; *see also,* Trial Ex. 8, BS Investors v Gallian commenced on October 17, 2018.

[11] *See,* Trial Ex. 9, *Houser Bros dba Rancho Del Ray Mobile Home Estates v. Gallian,* State Court Complaint filed on January 2, 2019.

PLAINTIFF'S TRIAL BRIEF
4886-1591-1427,v.1

1200 (9th Cir. 2010). It suffices if the debtor's intent is to "hinder or delay a creditor." *Id.*; *see also*

*Faith v. Miller (In re Miller)*, 2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015)

(same). Lack of injury to creditors is irrelevant regarding denying a discharge in bankruptcy. *In re*

*Retz*, 606 F.3d at 1200; *In re Miller*, 2015 Bankr.LEXIS 1929, at *6.

The intent to hinder or delay is a factual question that requires the trier of fact to "delve into

the mind of the debtor" and may be inferred from surrounding circumstances. *JP Morgan Chase*

*Bank, N.A. v. Ellison (In re Ellison)*, 2016 Bankr.LEXIS 3475, at *24 (Bankr. C.D. Cal. Sept. 23,

2016). In examining the circumstances of a transfer under § 727(a)(2)(A), certain "badges of fraud"

may support a finding of fraudulent intent:

> These factors, not all of which need be present, include (1) a close relationship between
> the transferor and the transferee; (2) that the transfer was in anticipation of a pending
> suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the
> time; (4) that all or substantially all of the Debtor's property was transferred; (5) that
> the transfer so completely depleted the Debtor's assets that the creditor has been
> hindered or delayed in recovering any part of the judgment; and (6) that the Debtor
> received inadequate consideration for the transfer.

*In re Retz*, 606 F.3d at 1200. A "course of conduct" may also be "probative" regarding intent. *In re*

*Ellison*, 2016 Bankr.LEXIS 3475, at *25.

First Badge of Fraud: Close Relationship Regarding the first badge of fraud, Debtor took title

to the Property in the name of JSC, her single-member LLC of which she has always been the 100%

owner. PTS ¶ 6. She then granted a confusing series of liens against the Property in favor of her ex-

husband, Mr. Pierpont; her sons, Brian and Steven Gallian; and J-Pad LLC, in which Debtor

scheduled membership interests of varying amounts. Then Mr. Pierpont purported to release the lien

he and J-Pad LLC held on the Petition Date, and a post-petition HCD submission sought to add J-

Pad LLC back as a legal owner.

Second Badge of Fraud: Anticipation of Pending Suit Here, Debtor visited the Park

prepetition to inquire about mobilehomes for sale. She then purchased the Property from Ms. Ryan

on or around November 1, 2018, without a written purchase agreement, and in violation of the

4886-1591-1427,v.1

1  Stipulated Judgment's provision entitling Houser Bros. to review any prospective buyers in

2  accordance with the Mobilehome Residency Law. Trial Ex. Nos. 3-5. Debtor fraudulently took title

3  to the Property in the name of JSC in anticipation of a pending suit because she was involved in

4  litigation with the Gables concerning 4476 Alderport, and, in fact, the litigation resulted in a

5  judgment of over $316,583.59 in favor of the Gables which was formally entered on May 6, 2019.

6  PTS ¶¶ 1, 3.

7        On November 19, 2018, Debtor emailed an outdated Application to the Park's management

8  office, which Houser Bros. denied. Trial Ex. Nos. 6-7. Houser Bros. further refused to accept JSC's

9  attempted rent payments. In December 2018, Houser Bros. caused to be served on Debtor a Five-

10  Day Notice to Quit Premises. Trial Ex. No. 11. And, on January 2, 2019, Houser Bros. filed the

11  Forcible Entry Complaint. Trial Ex. No. 12. Debtor therefore had reason to anticipate a pending

12  lawsuit when she placed title to the Property in the name of JSC.

13        After filing of the Forcible Entry Action, Debtor granted a confusing series of liens in favor

14  of her ex-husband, her sons, and her second LLC, J-Pad LLC, in which she holds some vague

15  ownership interest, all to play keep away. Plainly put, the liens against the Property obscured status

16  of title and would have made both removal and collection against Debtor difficult.

17        On the Petition Date, Mr. Pierpont purportedly executed a "Lien Satisfied" document in

18  which he certified that his and J-Pad LLC's lien had been fully satisfied. This document and

19  Debtor's other submissions to the HCD in which she fraudulently claimed that title had been

20  released from JSC to her on February 25, 2021, were designed to make Debtor the 100% owner of

21  the Property on the Petition Date for purposes of claiming a homestead exemption. *See generally*

22  Trial Ex. Nos. 39, 41, 42 (explaining that JSC was the owner of record of the Property on the

23  Petition Date, and Debtor included fraudulent notary pages in an effort to backdate the transfer to

24  February 25, 2021); *see also* Trial Ex. No. 43 (the Court's August 5, 2022, order sustaining Houser

25  Bros.'s objection to Debtor's claimed homestead exemption, finding that JSC, not Debtor, was the

26  Property's owner of record on the Petition Date, and Greg Buysman did not notarize the documents

27  Debtor submitted to the HCD).

28

PLAINTIFF'S TRIAL BRIEF

4886-1591-1427,v.1

Finally, shortly after the Petition Date, Debtor submitted to the HCD a "Statement to Encumber" dated January 14, 2019, which purported to add J-Pad LLC as the Property's legal owner. By adding a legal owner against the Property, Debtor made the Property appear less valuable to the Estate to prevent the Trustee from administering it.[12]

Third Badge of Fraud: Insolvency or Poor Financial Condition Debtor granted liens to Mr. Pierpont, J-Pad LLC, and her sons within a year before the Petition Date, and it can be presumed that she was in poor financial condition at the time. Further, Debtor's ninth amended schedules, filed March 15, 2022, as Docket No. 75, reflect $770,358.46 of secured claims and $22,106 of unsecured claims (with several unsecured claims of "unknown" amount). Trial Ex. No. 38 at 822-839. Debtor's most recent Schedule A/B, filed on March 11, 2022, as Docket No. 72, lists $260,625 of total assets, consisting mostly of the Property. Trial Ex. No. 37 at 766-772. Debtor was insolvent or in poor financial condition by the time of the February 2021 HCD Transaction.

Fourth Badge of Fraud: Substantially All of Debtor's Property Was Transferred As set forth above, the Property is Debtor's main asset, and she placed title to it in the name of JSC to defraud her creditors. Debtor then encumbered the Property with several liens held by her relatives. Although the exact value of the liens is unclear due to Debtor's conflicting schedules, she has listed liens in favor of J-Pad LLC, Mr. Pierpont, Brian and Steven Gallian, and others, between $175,000, and $225,000, which is substantially all of the scheduled value of the Property (typically $235,000). *See* Trial Ex. No. 39 at 865-875 (table summarizing Debtor's conflicting schedules attached to Houser Bros.'s Homestead Motion).

Fifth Badge of Fraud: Hindered or Delayed in Recovering on Judgment Here, to the extent that Debtor's homestead exemption is disallowed and Trustee wishes to sell the Property, Trustee will need to bring an avoidance action against the purported secured lienholders to permit distribution of the proceeds to the Estate's legitimate creditors. Moreover, the transfers of the equity in the Property delayed and hindered recovery of the Gables judgment. *See*, Trial Ex. 1.

---

[12] As set forth in the table attached to Houser Bros.'s motion objecting to Debtor's claimed homestead exemption, Debtor has scheduled conflicting information regarding the amount of the secured claim against the property, and even the identity of the secured creditor(s). *See* Trial Ex. No. 39 at 865-875.

18

1    <u>Sixth Badge of Fraud: Inadequate Consideration</u> There are no facts to suggest that any

2    consideration was given for the transactions granting liens to Mr. Pierpont, Steven and Brian

3    Gallian, or J-Pad LLC. There are likewise no facts to suggest that any consideration was given for

4    the purported lien satisfaction on the Petition Date. The facts instead suggest that Debtor engaged in

5    self-dealing with her LLCs and family members/ex-husband to obscure her interest in the Property

6    and hinder or delay a levy of the Property by Houser Bros. or a sale of the Property by Trustee.

7                    **iii.      The dispositions or concealment occurred within**

8                          **one year before bankruptcy.**

9            If a transfer occurred more than one year prior to bankruptcy but a debtor's concealed

10   interest in such property extended into the one-year period prior to bankruptcy, then discharge

11   should be denied. *In re Lawson*, 122 F.3d 1237 (9th Cir. 1997) (adopting the "continuing

12   concealment" doctrine and holding that defendant's transfer, made more than a year before her

13   petition, provided evidence of defendant's active concealment of property in which she continued to

14   retain a secret interest). If a debtor's income funds all mortgage, insurance, and maintenance

15   payments on property held in the name of another party, she may be found to have fraudulently

16   concealed her interest in such property. *In re Martin*, 698 F.2d 883 (7th Cir. 1983).

17           Here, within one year before the Petition Date, Debtor concealed her beneficial interest in the

18   Property by the fraudulent transfer of title to JSC and her concealed equity which was masked by the

19   phony liens transferred to Mr. Pierpont, J-Pad LLC, and her sons. *See* Trial Ex. No. 25 at 445-465

20   (February 2021 HCD Transaction). Trial Ex. No. 25. Mr. Pierpont purportedly executed a document

21   on the Petition Date indicating that his and J-Pad LLC's lien had been satisfied. *See* Trial Ex. No. 26

22   at 476. Thus, the facts support Debtor has engaged in continued concealment.

23           **D. Count 4: Debtor's discharge should be denied pursuant to 11 U.S.C.**

24              **§ 727(a)(4).**

25           Section 727(a)(4)(A) provides: "The Court shall grant the debtor a discharge, unless—the

26   debtor knowingly and fraudulently, in or in connection with the case—made a false oath or

27   account." To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a preponderance of the

28   evidence, that:

1)  The debtor made a false oath in connection with the case;

2)  The oath related to a material fact;

3)  The oath was made knowingly; and

4)  The oath was made fraudulently.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005). The "fundamental purpose" of § 727(a)(4)(A) is to insure that the trustee and creditors have "accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d at 1196.

### i.    Debtor made false oaths and omissions.

A "false statement or an omission" in the debtor's petition, schedules, or statement of financial affairs can constitute a "false oath." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

Here, Debtor made several false oaths by filing 10 sets of schedules, signed under penalty of perjury, with conflicting information regarding the Property and Debtor's interests in JSC and J-Pad LLC. *See* Trial Ex. No. 39 at 865-875 (table summarizing Debtor's conflicting schedules attached to Houser Bros.'s Homestead Motion). These contradictory schedules prevent Trustee and Houser Bros. (and other creditors) from having accurate information without having to conduct costly investigations.

Debtor further falsely represented in several sets of schedules that she was the registered owner of the Property with the HCD as of February 25, 2021. *See* Trial Ex. No. 39 at 865-875 (table summarizing Debtor's schedules); *see also* Trial Ex. Nos. 28-38 (Debtor's 10 sets of schedules). As set forth in the Exemption Motion and supporting documents, however, JSC was the registered owner on the Petition Date, and Debtor did not become the registered owner until after the Petition Date. Trial Ex. Nos. 39, 41, 42. Further, the Court, the Hon. Erithe Smith presiding, found in its August 5, 2022, Homestead Order that JSC was the registered owner on the Petition Date. Trial Ex. No. 44 at 1653. In fact, during Houser Bros.'s deposition of Debtor, she testified that she paid rent to JSC, yet her schedules do not reflect any money paid to JSC for rent.

1    In Debtor's Statements of Financial Affairs, she stated that she had not sold, traded, or

2  otherwise transferred any property to anyone outside the ordinary course of business within the two

3  years before bankruptcy. Trial Ex. Nos. 28-38 (Debtor's schedules and statements of financial

4  affairs). In fact, Debtor had given liens against the Property to J-Pad LLC, her ex-husband, and her

5  sons. Trial Ex. No. 25 (February 2021 HCD Transaction).

6    And, Debtor scheduled a ground lease with Houser Bros. for the space on which her

7  mobilehome sits. Trial Ex. No. 28 at 534 (original Schedule G); No. 29 at 572 (first amended

8  Schedule G); No. 30 at 601 (second amended Schedule G); No. 32 at 658 (third amended Schedule

9  G); No. 33 at 676 (fourth amended Schedule G); No. 34 at 702 (fifth amended Schedule G); No. 35

10  at 728 (sixth amended Schedule G); No. 37 at 776 (seventh amended Schedule G). In fact, there is

11  no ground lease between Debtor and Houser Bros., Houser Bros. has filed a state-court action to

12  remove her from the Property, and Houser Bros. has refused to collect rent from Debtor/JSC.

13    ## ii.    The false oaths and omissions were material.

14    "Materiality" is broadly defined. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 883

15  (B.A.P. 9th Cir. 2005). A fact is "material" if it "bears a relationship to the debtor's business

16  transactions or estate, or concerns the discovery of assets, business dealings, or the existence and

17  disposition of the debtor's property." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir.

18  2010). An omission or misstatement that "detrimentally affects administration of the estate" is

19  material. *Id.* A false statement or omission may be material even without "direct financial prejudice

20  to creditors." *In re Roberts*, 331 B.R. at 883.

21    The conflicting information in Debtor's 10 sets of schedules is material because creditors and

22  the Trustee rely on that information. *See generally Hamilton v. State Farm Fire & Cas. Co.*, 270

23  F.3d 778, 785 (9th Cir. 2001) (stating that it is "very important that a debtor's bankruptcy schedules

24  and statement of affairs be as accurate as possible, because that is the initial information upon which

25  all creditors rely") (citation omitted).

26    Debtor specifically indicated in her schedules that she was the owner of the Property as of the

27  Petition Date, and she omitted that she had paid rent to JSC for the Property. As set forth in the

28  briefing Houser Bros. filed in connection with the Homestead Motion, Debtor's interest in the

1  Property was that of a month-to-month tenant paying rent to JSC which owned the Property. Trial

2  Ex. Nos. 39, 41. Of course, ownership of property is not a necessary element to claim an exemption.

3  *In re Sain*, 584 B.R. 325 (Bankr. S.D. Cal. 2018).

4      In *Sain*, Debtor's interest in property was that of a tenant under a long-term, under-market

5  lease. So, if the Trustee were to administer Debtor's tenancy interest, the exemption would attach to

6  the proceeds. On this issue, there is no dispute. But, if the Debtor's interest is that of a month-to-

7  month tenant and the Trustee does not seek to sell such tenancy rights but is otherwise able to

8  recover and administer the Property, then the exemption in the tenancy rights should not extend to

9  the proceeds from a sale of the fee simple interest. To claim an exemption in property, it must first

10  be property of the estate. *Owen v. Owen*, 500 U.S. 305 (1991) ("Property that is properly exempted

11  under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c).

12  No property can be exempted (and thereby immunized), however, unless it first falls within the

13  bankruptcy estate.") (emphasis in original).

14      Debtor's omission regarding the liens to J-Pad LLC, Mr. Pierpont, and her sons was material

15  because it conceals a fraudulent transfer of Estate property worth approximately $300,000. Without

16  knowledge of this transfer, Trustee would be unable to pursue a fraudulent transfer action to recover

17  up to $300,000 for the benefit of the Estate and its creditors.

18      Finally, Debtor's false claim, that she has an unexpired ground lease with Houser Bros. for

19  the Property, is material because Houser Bros. has filed (and obtained stay relief to proceed with) the

20  Forcible Entry Action. *See* Trial Ex. No. 12 (Forcible Entry Complaint).

21              **iii.    Debtor knowingly made false oaths and omissions.**

22      A debtor acts "knowingly" if he or she acts "deliberately and consciously." *Retz v. Samson*

23  *(In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010).

24      Here, Debtor knowingly submitted conflicting schedules because only she would know

25  certain information regarding the Property and her LLCs. Further, Debtor knowingly made a false

26  claim regarding the owner of the Property on the Petition Date. As set forth in Houser Bros.'s

27  briefing in connection with the Homestead Motion, Debtor falsified documents submitted to the

28  HCD by adding notary pages for Greg Buysman dated February 25, 2021. In this way, Debtor was

4886-1591-1427,v.1

able to back-date the relevant transactions to a date several months before the Petition Date. But, Mr.

Buysman did not actually notarize the HCD submissions. Even so, Debtor falsely represented in her

schedules that she was the record owner of the Property as of the Petition Date to claim a homestead

exemption and prevent the Property from being administered. *See generally* Trial Ex. Nos. 39, 41, 42

(Homestead Motion, Homestead Reply, and Declaration of Mr. Buysman).

Debtor further knowingly omitted that she paid rent to JSC from her schedules. As set forth

above, Debtor's payment of rent to JSC should affect her ability to claim a homestead exemption

because her interest in the Property was as a renter (of JSC, not Houser Bros.), not an owner. Only

Debtor would be in a position to know that she paid rent to her single-member LLC.  Importantly, all

of the above conflicting schedules were signed under penalty of perjury.

Debtor knowingly transferred liens against the Property to J-Pad LLC, Mr. Pierpont, and her

sons. Not only did Debtor make these transfers to closely related parties, but Debtor signed the

statements to encumber. Trial Ex. No. 25 at 454 and 460.

Finally, Debtor knowingly made the false oath that she has a ground lease with Houser Bros.

for the Property given that she has never produced a copy of the purported ground lease, and in fact

no such lease exists.

### iv.    Debtor had the requisite fraudulent intent.

A demonstration of fraudulent intent requires a showing that:

1)  The debtor made the representations (e.g., a false statement or omission in the schedules);

2)  At the time the debtor knew they were false; and

3)  The debtor made them with intention and purpose of deceiving the creditors.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198-99 (9th Cir. 2010). Intent is usually proven by

circumstantial evidence or inferences drawn from the debtor's conduct. *Id.* at 1199. "Reckless

indifference or disregard for the truth" may be circumstantial evidence of intent. *Id.* The existence of

"more than one falsehood, together with a debtor's failure to take advantage of the opportunity to

clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to

constitute reckless indifference to the truth satisfying the requisite finding of intent to deceive."

*Ravasia v. U.S. Tr. (In re Ravasia)*, 2021 Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021).

Here, as set forth above, Debtor made representations that she knew at the time were false. Debtor intended to file 10 sets of conflicting schedules to make administration of the Estate more difficult. She further intended to falsely state that she was the Property's owner of record on the Petition Date to claim a homestead exemption in the Property. Debtor omitted her payment of rent to JSC for the same reason; namely, so she could claim a homestead exemption as the holder of a fee simple interest in the Property.

Debtor intentionally omitted information regarding the prepetition transfers of liens against the Property to prevent fraudulent transfer litigation. And, Debtor's false claim that she holds a ground lease with Houser Bros. must be intentional because no such lease exists, and Debtor has never produced a copy of a ground lease.

### E. Count 5: Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

Title 11 U.S.C. § 727(a)(5) provides: "The court shall grant the debtor a discharge, unless— **(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

Under § 727(a)(5), the objecting party bears the initial burden of proof and must demonstrate:

1) Debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets;

2) On the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and

3) The bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010). Once the creditor has made a prima facie case, the debtor must offer "credible evidence" regarding the disposition of the missing assets. *Id.* Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court. *Id.*

Ninth Circuit precedent limits § 727(a)(5) to a debtor's inexplicable, pre-petition loss of assets. *Davis v. Choy (In re Choy)*, 569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) (citation omitted).

Here, on October 31, 2018, Debtor sold real property at 4476 Alderport to Randall Nickel for $379,000 ("Alderport Proceeds"). PTS ¶ 2. She deposited the proceeds with Chase Bank, in an account in her name. *Id.* ¶ 4. But, Debtor has not satisfactorily explained where the Alderport Proceeds went. Although she testified during her deposition that she paid the $185,000 sales price for the Property from the account into which she deposited the Alderport Proceeds, Debtor now disputes this fact. PTS Disputed Facts ¶ 5. Further, there is no explanation where the remaining $194,000 of the Alderport Proceeds went. Debtor's failure to explain the disposition of her assets should result in denial of discharge.

## 4.   Conclusion

For the reasons stated above, Plaintiff requests that the Court enter judgment:

1) Determining that all amounts owed to Houser Bros. under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

2) Determining that all amounts owed to Houser Bros. under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

3) Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2);

4) Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4);

5) Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(5); and

6) Awarding such further relief as this Court deems just and proper.

DATED: February 9, 2023                MARSHACK HAYS LLP

                                                              /s/ D. Edward Hays
                                               By: _____
                                                      D. EDWARD HAYS
                                                      LAILA MASUD
                                                      BRADFORD N. BARNHARDT
                                                      Attorneys for Plaintiff,
                                                      HOUSER BROS. CO. dba RANCHO DEL
                                                      REY MOBILE HOME ESTATES

4886-1591-1427,v.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled**: PLAINTIFF'S TRIAL BRIEF** will be served or was served **(a)**
on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
**February 9, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com
- **Jeffrey I Golden (TR)**    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **February 9, 2023**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR AND DEFENDANT**
JAMIE LYNN GALLIAN
16222 MONTEREY LANE, SP #376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **February 9, 2023**, I served the following persons and/or entities by personal
delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 9, 2023 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**