D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Plaintiff,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>    Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>Adv. No. 8:21-ap-01097-SC |
| HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES,<br><br>    Plaintiff,<br><br>v.<br><br>JAMIE LYNN GALLIAN,<br><br>    Defendant. | PLAINTIFF'S POST-TRIAL CLOSING BRIEF<br><br>**Trial Held:**<br>Date:   April 26, 2023<br>Time:   9:30 a.m.<br>Ctrm:   5C<br>Location: 411 W. Fourth Street, Santa Ana, CA 92701 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

1.  Summary of Argument ............................................................................2

2.  Factual Background ...............................................................................3

    A.  Bankruptcy Case ............................................................................3

    B.  Adversary Proceeding ....................................................................5

3.  Legal Argument ....................................................................................6

    A.  Count 3: Debtor's discharge should be denied pursuant to 11 U.S.C.
        § 727(a)(2). ..................................................................................7

        i.    Placement of title to the Property in the name of J-Sandcastle..........8

        ii.   Promissory note payable to J-Pad ...............................................10

        iii.  Concealment of $225,000 payable to Debtor ............................11

        iv.   August 2020 liens to Steven and Brian Gallian ........................11

        v.    Transfers of interests in J-Pad...................................................12

        vi.   Postpetition transfers of liens against the Property....................12

    B.  Count 4: Debtor's discharge should be denied pursuant to 11 U.S.C.
        § 727(a)(4). ..................................................................................13

        i.    Debtor scheduled varying interests in J-Pad..............................14

        ii.   Debtor did not disclose the $225,000 promissory note as payable to
              her. ............................................................................................15

        iii.  Debtor scheduled the value of J-Pad as $0. ..............................15

        iv.   Debtor did not disclose in her case commencement documents that she
              had granted her sons a lien against the Property in August 2020. .............15

        v.    Payment of rent .......................................................................16

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

vi.    Debtor did not disclose gifts in her case commencement documents. .......17

vii.    Unexpired ground lease ..........................................................................17

viii.    Greg Buysman notarization ....................................................................18

ix.    Debtor undervalued the Property in her schedules ...................................19

x.    Debtor filed 10 sets of schedules with varying information, showing, at
the minimum, a reckless disregard for the truth. ......................................19

C.    Count 5: Debtor's discharge should be denied pursuant to 11 U.S.C.
§ 727(a)(5). ..................................................................................................20

4.    Conclusion ..................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Davis v. Choy (In re Choy)*,
569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) .................................................. 20

*Faith v. Miller (In re Miller)*,
2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015). ............................. 7, 8

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778, 785 (9th Cir. 2001) ............................................................. 19

*In re Adri*,
2022 Bankr.LEXIS 1727, at *18 (Bankr. C.D. Cal. June 9, 2022) ............................. 12

*In re Lawson*,
122 F.3d 1237 (9th Cir. 1997) ............................................................. 10, 11

*In re Miller*,
2015 Bankr.LEXIS 1929, at *6. ............................................................. 8

*JP Morgan Chase Bank, N.A. v. Ellison (In re Ellison)*,
2016 Bankr.LEXIS 3475, at *24 (Bankr. C.D. Cal. Sept. 23, 2016) ............................. 8

*Lamar, Archer & Cofrin, LLP v. Appling,*

    138 S.Ct. 1752, 1758 (2018) .................................................................................................. 2

*Miller v. Wylie (In re Wylie),*

    21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023 ......................................... 2, 6, 7

*Ravasia v. U.S. Tr. (In re Ravasia),*

    2021 Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021) ................................................ 14

*Retz v. Samson (In re Retz),*

    606 F.3d 1189, 1200 (9th Cir. 2010) ................................................... 7, 8, 13, 14, 19, 20

*Roberts v. Erhard (In re Roberts),*

    331 B.R. 876, 882 (B.A.P. 9th Cir. 2005) .......................................................... 13, 19

*Schoenmann v. Chen (In re Chen),*

    2009 Bankr.LEXIS 3636, at *14 (Bankr. N.D. Cal. Nov. 9, 2009) ................................................ 2

**Statutes**

11 U.S.C. § 727(a)(2)(A). .................................................................................................... 7

11 U.S.C. § 727(a)(4)(A) ................................................................................................. 2, 13

11 U.S.C. § 727(a)(5) ........................................................................................................ 20

11 U.S.C. § 727(a) .............................................................................................................. 2

11 U.S.C. § 727(a)(2) .......................................................................................................... 2

11 U.S.C. § 727(a)(2)(A) .................................................................................................. 7, 8

11 U.S.C. § 727(a)(2)(B) ................................................................................................ 12, 13

11 U.S.C. § 727(a)(4)(A) ...................................................................................................... 13

11 U.S.C. § 727(a)(5) ...................................................................................................... 2, 20

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

DEFENDANT JAMIE LYNN GALLIAN, AND ALL INTERESTED PARTIES:

Plaintiff, HOUSER BROS. CO., a California limited partnership dba RANCHO DEL REY

MOBILE HOME ESTATES ("Houser Bros." or "Plaintiff"), respectfully submits this post-trial

closing brief in support of its complaint to deny discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(4),

and (a)(5).

## 1. Summary of Argument

The privilege of discharge is reserved for the "honest but unfortunate debtor."[1] Further, the

very purpose of certain sections of the law, like Bankruptcy Code § 727(a), is to ensure that those

who seek the shelter of the Bankruptcy Code do not play "fast and loose" with their assets or with

the reality of their affairs.[2] As the evidence at trial revealed, Jamie Lynn Gallian ("Debtor") is

anything but honest and has played fast and loose with her creditors. Houser Bros. therefore seeks

denial of Debtor's discharge under 11 U.S.C. § 727(a)(2), based on fraudulent dispositions of assets;

11 U.S.C. § 727(a)(4)(A), based on multiple material false oaths Debtor knowingly made to defraud

her creditors; and 11 U.S.C. § 727(a)(5), based on Debtor's failure to explain the disposition of

proceeds from the sale of her former residence.

The evidence at trial showed that Debtor, at a time when the state court was beginning to

enter money judgments against her in multiple pending lawsuits, took title to the mobilehome in

which she resides (defined below as the "Property") in the name of her single-member LLC and

gifted a confusing series of liens against it. Debtor further admitted that the loan secured by the lien

was in fact payable to her (but failed to disclose the asset in any of her original and ten amended sets

of schedules and statements). And, after the petition date, Debtor continued gifting liens against the

---

[1] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1758 (2018) ("One of the main purposes of the federal bankruptcy system is to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character… This exception is in keeping with the basic policy animating the Code of affording relief only to an honest but unfortunate debtor.") (cleaned up); *Schoenmann v. Chen (In re Chen)*, 2009 Bankr.LEXIS 3636, at *14 (Bankr. N.D. Cal. Nov. 9, 2009).

[2] *Miller v. Wylie (In re Wylie)*, 21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023).

4886-1591-1427,v.1

1  Property to friends and family. There is no plausible explanation for Debtor's games with title and

2  liens other than defrauding creditors and now the bankruptcy trustee.

3         Debtor has also submitted 10 sets of conflicting schedules in her bankruptcy case,

4  obfuscating her financial affairs and defeating the purpose of filing schedules at all. And, despite

5  amending her schedules ten times, Debtor failed to disclose a $225,000 asset in the form of a note

6  payable to her, which would have immediately shown that the lien against the Property was a sham.

7  Yet, she has never disclosed it in her schedules and recently used the existence of the sham lien to

8  seek to avoid judgment liens as impairing her claimed exemption.

9         Debtor admitted at trial that she had previously lied under oath when she insisted during a

10 deposition that she had paid rent to her single-member LLC for the Property, as if she were "a

11 stranger off the street." Given that Debtor gave this previous testimony at a time when title to the

12 Property appeared to be at issue, and Houser Bros. has since made arguments regarding Debtor's

13 payment of rent, the previous false oath was material and made with fraudulent intent. Debtor

14 likewise falsely represented under penalty of perjury in a filing with the Court that certain release of

15 title documents had been notarized before submission to the State of California prepetition to give

16 credence to her homestead exemption argument that she acquired title prior to bankruptcy (when in

17 fact the documents were not received by HCD until post-petition).

18        In short, Debtor has acted with the clear intent to defraud her creditors both before and

19 during her bankruptcy case, and Houser Bros. requests that the Court deny her discharge.

20 **2.      Factual Background**

21        **A.      Bankruptcy Case**

22        On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title

23 11 of the United States Code. The filing of the petition commenced *In re Gallian*, 8:21-bk-11710-SC

24 ("Bankruptcy Case").

25        In the Bankruptcy Case, Debtor has filed ***10 sets of schedules***. Exs. 28-38. Although the

26 schedules are often inconsistent from one set to another, one thing remains consistent - Debtor

27 alleges an interest in a manufactured home at 16222 Monterey Lane, Space #376, Huntington Beach,

28 CA 92649 ("Property"). Moreover, Debtor claims a $600,000 exemption in the Property pursuant to

3

§ 704.730 of the California Code of Civil Procedure ("CCP"). Ex. 37 at 773. Importantly, Houser Bros. owns the mobilehome park on which the mobilehome sits. TS[3] at 282.

On May 12, 2022, as Docket No. 95, Houser Bros. filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Homestead Motion"). Ex. 39. In the Homestead Motion, Houser Bros. sought an order:

1) Sustaining the objection to Debtor's claimed homestead exemption under CCP § 704.730, and disallowing any claim of exemption by Debtor in the Property pursuant to CCP § 704.730; and

2) Alternatively, finding that any allowed exemption be capped at $170,350 pursuant to 11 U.S.C. § 522(p).

Houser Bros. further asserted that as of the Petition Date, Debtor's single-member LLC, J-Sandcastle Co., LLC ("J-Sandcastle"), held title to the Property, and as such Debtor could not claim a homestead exemption. Ex. 39.

On June 1, 2022, Debtor filed a "Reply Opposition, and Memorandum of Points and Authorities to Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption . . ." ("Homestead Opposition"). Ex. 40.

On July 7, 2022, Houser Bros. filed a "Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption" ("Homestead Reply"). Ex. 41. In the Homestead Reply, Houser Bros. argued, *inter alia*, that Debtor's only interest in the Property was that of a month-to-month tenant of JSC which was the owner of the Property. *Id.* at 1477. Unless Trustee sold Debtor's tenancy rights, no exemption should attach to the proceeds of sale if Trustee could otherwise recover and administer the Property. *Id.*

On July 20, 2022, Houser Bros. filed "Notice of Lodgment of Excerpts of Certified Transcript in Support of Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption." Bankruptcy Case, Docket No. 138.

---

[3] All citations to "TS" are to the trial transcript.

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

On July 21, 2022, at 10:30 a.m., the Court held a continued hearing on the Homestead Motion. During the hearing, the Court orally granted the Homestead Motion for the reasons stated in its tentative ruling. The Court entered its order granting the Homestead Motion on August 5, 2022. Ex. 44.

On July 26, 2022, Debtor filed a "Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates Objection to Debtor's Claimed Homestead Exemption and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" ("Reconsideration Motion"). Bankruptcy Case Docket No. 157. Houser Bros. opposed the motion, and Debtor filed a reply. Bankruptcy Case, Docket Nos. 170, 185.

On September 22, 2022, the Court held a hearing on the Reconsideration Motion. At the end of the hearing, the Court took the Reconsideration Motion under advisement.

About a week after the September 22, 2022, hearing, Houser Bros. filed a "Notice of Recent Decision Re: Debtor's Motion for Reconsideration of 7.21.22 Order Sustaining Objection to Debtor's Claimed Homestead Exemption" ("NRD"). Bankruptcy Case Docket No. 242.

Almost three months later, on December 19, 2022, the Court entered: (1) "Memorandum of Decision Regarding Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption" ("MOD"), Docket No. 273; and (2) "Order Granting Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption," Docket No. 274.

On December 29, 2022, Houser Bros. filed a "Notice of Appeal and Statement of Election." Docket No. 280. The appeal is currently pending as Case No. 8:23-cv-00001-DSF ("Appeal").

## B.    Adversary Proceeding

On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)." The filing of the complaint commenced *Houser Bros. Co. v. Gallian* (*In re Gallian*), Adversary Proceeding No. 8:21-ap-01097-SC ("AP"). On October 22, 2021, as AP Docket No. 3, Plaintiff filed an amended complaint ("Complaint"). Ex. 45.

1      On September 13, 2022, Houser Bros. filed a "Joint Pretrial Stipulation" ("PTS"). AP Docket

2  No. 37.

3      On October 5, 2022, the Court entered an "Order Approving Joint Pretrial Stipulation, and

4  Scheduling Order." AP Docket No. 41.

5      On February 1, 2023, Houser Bros. filed a "Motion in Limine to Exclude Debtor's Trial

6  Exhibits." AP Docket No. 47.

7      On February 15, 2023, as Docket No. 58, the Court entered an "Order Granting Motion in

8  Limine to Exclude Debtor's Trial Exhibits; Bifurcating Claims for Trial and Setting Status

9  Conference on Remaining Claims," which, among other things, provided that the 11 U.S.C. § 727

10  claims would proceed to trial on February 23, 2023, at 9:30 a.m., and the 11 U.S.C. § 523 claims

11  would be bifurcated and tried at a later date.

12      On February 21, 2023, Houser Bros. filed a "Request to Continue February 23, 2023, Trial to

13  April 26-27, 2023," which requested a continuance of the trial due to illness of lead counsel. Docket

14  No. 62.

15      On February 22, 2023, the Court entered an "Order Continuing Trial to April 26-27, 2023."

16  Docket No. 64.

17      On April 26, 2023, the Court held a bifurcated trial on Houser Bros.'s 11 U.S.C. § 727

18  claims. D. Edward Hays, Esq., and Bradford N. Barnhardt, Esq., appeared on behalf of Houser Bros.

19  Debtor appeared *pro se*. All other appearances were as noted on the record.

20  **3.   Legal Argument**

21      Section 727 of the Bankruptcy Code contains 12 enumerated grounds for denying the debtor

22  a discharge. 11 U.S.C. § 727(a)(1)-(12). For a court to deny the debtor a discharge under any one of

23  these grounds, the party objecting to the discharge must prove all the elements of such ground by a

24  preponderance of the evidence. *Miller v. Wylie (In re Wylie)*, 21-04012-tjt, ECF No. 124 at 8 (Bankr.

25  E.D. Mich. Apr. 17, 2023). Exceptions to discharge are narrowly construed in furtherance of the

26  Bankruptcy Code's "fresh start" policy." *Id.* But, "the very purpose of certain sections of the law,

27  like § 727(a), is to make certain that those who seek the shelter of the Bankruptcy Code do not play

28  fast and loose with their assets or with the reality of their affairs." *Id.* (citations and internal brackets

1  omitted).

2  **A. Count 3: Debtor's discharge should be denied pursuant to 11 U.S.C.**

3  **§ 727(a)(2).**

4  Section 727(a)(2)(A) provides:

5  The court shall grant the debtor a discharge, unless—the debtor, with intent to hinder,

6  delay, or defraud a creditor or an officer of the estate charged with custody of property

7  under this title, has transferred, removed, destroyed, mutilated, or concealed, or has

8  permitted to be transferred, removed, destroyed, mutilated, or concealed—property of

9  the debtor, within one year before the date of the filing of the petition.

10 A party seeking denial of discharge under § 727(a)(2)(A) must prove:

11      1)  A disposition of property, such as a transfer or concealment;[4]

12      2)  A subjective intent on the debtor's part to "hinder, delay or defraud a creditor through

13          the act [of] disposing of the property;" and

14      3)  It must occur within one year before filing bankruptcy.

15 *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010); *Faith v. Miller (In re Miller)*, 2015

16 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015).

17      A debtor's intent need not be identical to the fraudulent intent under a common-law tort

18 standard to meet the requirements of § 727(a)(2)(A). *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

19 1200 (9th Cir. 2010). It suffices if the debtor's intent is to "hinder or delay a creditor." *Id.*; *see also*

20 *Faith v. Miller (In re Miller)*, 2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015)

21 (same). Lack of injury to creditors is irrelevant regarding denying a discharge in bankruptcy. *In re*

22

23 ─────────────────────

24 [4] Concealment includes "overt acts of disguise and other conduct, such as placing assets beyond the reach of the creditors or withholding knowledge of the assets by failure to divulge owed information." *Miller v. Wylie (In re Wylie)*, 21-04012-tjt, ECF No. 124 at 9 (Bankr. E.D. Mich. Apr. 17, 2023) (citations omitted). Concealment may also occur when a debtor

25 transfers legal title to property to a third party with the retention of a "secret interest." *Id.* (citations omitted).

26 The term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D); *see also Miller v. Wylie (In re*

27 *Wylie)*, 21-04012-tjt, ECF No. 124 at 9 (Bankr. E.D. Mich. Apr. 17, 2023) (same). Under the "broad definition of transfer" in § 101(54), even disposition of possession, custody or control could qualify as a transfer. *Miller v. Wylie (In*

28 *re Wylie)*, 21-04012-tjt, ECF No. 124 at 9 (Bankr. E.D. Mich. Apr. 17, 2023).

4886-1591-1427,v.1

1    *Retz*, 606 F.3d at 1200; *In re Miller*, 2015 Bankr.LEXIS 1929, at *6; *see also Miller v. Wylie (In re*

2    *Wylie)*, 21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023) (noting that proof of harm

3    is not a required element of a cause of action under § 727; rather, so long as there is an intent to

4    hinder, delay, or defraud, in combination with an act such as a transfer, then a debtor should be

5    denied the privilege of discharge). The intent to hinder or delay is a factual question that requires the

6    trier of fact to "delve into the mind of the debtor" and may be inferred from surrounding

7    circumstances. *JP Morgan Chase Bank, N.A. v. Ellison (In re Ellison)*, 2016 Bankr.LEXIS 3475, at

8    *24 (Bankr. C.D. Cal. Sept. 23, 2016).[5] A "course of conduct" may also be "probative" regarding

9    intent. *In re Ellison*, 2016 Bankr.LEXIS 3475, at *25.

10        The evidence at trial showed that Debtor made several dispositions of property with intent to

11    hinder, delay, or defraud a creditor, within one year before filing bankruptcy (or postpetition).

12        ### i.    Placement of title to the Property in the name of J-

13        ### Sandcastle

14        Debtor testified, and Houser Bros.'s trial exhibits show, that before occupying the Property,

15    she lived at 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649 ("Alderport Property"),

16    which she received as a gift in 2017 from her stepmother, Sandra Bradley ("Ms. Bradley"). TS at 20.

17    Debtor always held the Alderport Property in her own name. TS at 20. On October 31, 2018, Debtor

18    sold the Alderport Property to Randall Nickell for $379,000, which he paid in two cashier's checks

19    payable to Debtor individually. TS at 20-21. Debtor deposited the funds into a newly opened Chase

20    Bank account in her name. TS at 21. Debtor then used $185,000 of the proceeds to purchase the

21    Property from Lisa Ryan ("Ms. Ryan"). TS at 22. Debtor paid the first $10,000 on November 1,

22

---

23    [5] In examining the circumstances of a transfer under § 727(a)(2)(A), certain "badges of fraud" may support a finding of
      fraudulent intent:

24

25        These factors, not all of which need be present, include (1) a close relationship between the transferor
        and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor
        was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's
        property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor
26        has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received
        inadequate consideration for the transfer.

27

28    *In re Retz*, 606 F.3d at 1200.

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

1   2018, and the balance on November 17, 2018. TS at 22-23.

2       Even though Debtor paid for the Property with proceeds of her Alderport Property deposited

3   into a bank account in her name, she took title to the Property in the name of J-Sandcastle. Ex. 4; TS

4   at 37. On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" for the Property with

5   Debtor, "Jamie Lynn Gallian," identified as the "Purchaser/New Owner." Ex. 5; TS at 32. On

6   November 15, 2018, however, Ms. Ryan whited-out Debtor's name and replaced it with "J-

7   Sandcastle Co, LLC Its Manager Jamie L. Gallian," pursuant to a discussion Debtor and Ms. Ryan

8   had on that day. Ex. 5, TS at 32-36. J-Sandcastle paid no consideration to Debtor in connection with

9   receiving title to the Property, nor did J-Sandcastle have any business other than holding title to the

10  Property. TS at 58, 215.

11      The decision to place title to the Property in the name of J-Sandcastle on November 15, 2018,

12  shows Debtor's intent to hinder, delay, or defraud, based on the timing of state-court judgments

13  against her. In 2017, the Huntington Beach Gables Homeowners Association ("HOA"), which was

14  responsible for the property where the Alderport Property was located, filed a lawsuit against Debtor

15  and Ms. Bradley. TS at 41. On or around August 7, 2018, the HOA filed a motion for attorney's

16  fees, which was continued to November 1, 2018, and again to November 8, 2018, on which date the

17  state court granted the motion. TS at 43-47. The state court entered an order on the motion on

18  December 4, 2018, which reflected that the HOA had been awarded $46,138 of attorney's fees

19  against Debtor, plus 10% interest. TS at 47-48; Ex. 47. In the same lawsuit, the HOA obtained

20  judgment against Debtor in excess of $315,000 on May 6, 2019. TS at 53.

21      The HOA likewise filed a lawsuit against Debtor in 2017 with Case No. 00962999. TS at 53-

22  54. In On March 21, 2019, the HOA obtained a money judgment against Debtor for $9,265. TS at

23  54-55; Ex. 48. And, $3,070 of sanctions were imposed against Debtor on September 27, 2018. TS at

24  56-57; Ex. 48. To date, Debtor has paid $1,295 on account of all these judgments. TS at 57. The

25  evidence thus shows that at the same time Debtor decided to place title to the Property in the name

26  of J-Sandcastle, she was a party to multiple lawsuits, with substantial judgments beginning to be

27  entered against her. In fact, during Debtor's narrative summary, she acknowledged that she

28  deposited $175,000 into J-Sandcastle's account on November 7, 2018, and decided to create a

1 promissory note and security agreement on November 16, 2018, "after the hearing with Judge

2 Crandall." TS at 320.

3     Houser Bros. also notes that at the time Debtor placed title to the Property in the name of J-

4 Sandcastle, the California homestead exemption was only $75,000, which would have left her with

5 non-exempt equity. *See* 2020 Cal AB 1885 (redlined amendment to Cal. Code Civ. P. § 704.730,

6 Chaptered, Sept. 18, 2020).

7     Finally, because the concealment continued into the one-year period before bankruptcy, it

8 satisfies the timing requirements of § 727(a)(2)(A). *See In re Lawson*, 122 F.3d 1237 (9th Cir. 1997)

9 (adopting the "continuing concealment" doctrine and holding that defendant's transfer, made more

10 than a year before her petition, provided evidence of defendant's active concealment of property in

11 which she continued to retain a secret interest).

12 ## ii.    Promissory note payable to J-Pad

13     Immediately after leaving the court in connection with the proceedings that resulted in

14 judgments against her, Debtor concealed her equity in the Property by granting a lien for $225,000 in

15 favor of J-Pad LLC ("J-Pad") on November 16, 2018. TS at 59-61; Ex. 10. (At the time, Debtor was

16 one of two members of J-Pad, which had no business other than being the named lienholder in

17 documents filed in various places. TS at 66, 215.) Debtor testified that she only advanced $175,000,

18 and the balance of the advances came much later. TS at 61-62. At the time Debtor signed the

19 promissory note and security agreement, therefore, the note and lien were for an inflated amount.

20     Debtor further acknowledged that J-Pad did not loan any money to J-Sandcastle, nor did J-

21 Sandcastle ever pay $225,000 to J-Pad. TS at 63, 66. She later admitted that despite two notes—one

22 payable to her and one payable to J-Pad—the money was really owed to her. TS at 182-96. In

23 essence, Debtor admitted that she was holding a lien to her own Property. There is no plausible

24 explanation for doing so other than to conceal her interest in the Property from Houser Bros. or her

25 other prospective creditors.

26     Although no consideration was given for the J-Pad lien and the money was owed to Debtor,

27 J-Pad remained a legal owner of record within one-year prepetition. *See* Ex. 26 at 468 (HCD

28 Certificate of Title for the Property, issued February 24, 2021, identifying Ronald J. Pierpont and J-

1  Pad as Legal Owners as Tenants in Common). Debtor's concealment of her equity therefore satisfies

2  the one-year requirement. *See In re Lawson*, 122 F.3d 1237 (9th Cir. 1997).

3  ### iii.      Concealment of $225,000 payable to Debtor

4  Debtor concealed that the promissory note for $225,000 was in fact payable to her when the

5  note and security agreement and lien filings all reflect that J-Pad held the lien. TS at 182-96

6  (Debtor's testimony that J-Sandcastle was the borrower and promised to pay Debtor $225,000, and

7  Debtor had a $225,000 asset in the form of a note payable to her); Ex. 40 at 1212 (secured

8  promissory note between J-Sandcastle and Debtor). In none of Debtor's schedules and statements,

9  however, did she disclose that she had a $225,000 asset in the form of a note payable to her

10  individually. TS at 195-96; *see also* Exs. 28-38 (Debtor's original and amended schedules). And,

11  during Debtor's August 18, 2021, meeting of creditors, she falsely advised the Trustee that she had

12  listed all her assets. TS at 336. By scheduling J-Pad as the secured party rather than herself, Debtor

13  sought to conceal the fact that the lien was in fact a sham to prevent administration of the Property

14  (plus she used the alleged existence of this lien to seek to avoid judgment liens as impairing her

15  claimed exemption in two motions filed in January 2023).

16  ### iv.      August 2020 liens to Steven and Brian Gallian

17  In August 2020 (less than one year before the Petition Date), Debtor granted liens to her

18  sons, Steven and Brian Gallian, by adding them to UCC3s. TS at 68; Ex. 14. The UCC3s were filed

19  on December 4, 2020. TS at 68. Steven and Brian Gallian paid no consideration to be added as

20  secured parties. TS at 69. In other words, Debtor gave liens against the Property to Steven and Brian

21  Gallian as gifts, and these gifts were reflected in J-Pad's minutes. TS at 77-80 (excerpts from

22  Debtor's deposition transcript). Debtor further signed statements to encumber that were submitted to

23  HCD to have her children added as lienholders on the certificate of title. Ex. 25 at 460. Debtor's

24  intent, in gifting liens against the Property to two of her sons, is clear enough: she sought to make

25  the Property appear worthless to her creditors (including her judgment creditors).

26  Although Debtor transferred liens against the Property to Steven and Brian Gallian less than

27  one year before the Petition Date and filed ten sets of schedules, she did not disclose these transfers

28  in her case commencement documents. Exs. 28-38 (Debtor's original and amended schedules).

4886-1591-1427,v.1

1  Debtor's intent with this concealment is likewise clear: she sought to avoid scrutiny against herself

2  and her sons for these fraudulent transfers.

3                          **v.     Transfers of interests in J-Pad**

4       During Debtor's deposition, she indicated that she had gifted her sons, Brian and Steven

5  Gallian, $15,000 per year for three years in the form of J-Pad interests. TS at 79-80. Based on Debtor

6  acquiring the Property from Lisa Ryan in November 2018, three years would include at a minimum

7  2020. Yet, Debtor did not disclose these gifts in her schedules and statements. *See* Exs. 28-38

8  (Debtor's original and amended schedules and statements). By not disclosing that Brian and Steven

9  Gallian's interests in J-Pad were gifts, Debtor sought to hide that the J-Pad lien was a sham to

10 defraud her creditors.

11                  **vi.     Postpetition transfers of liens against the Property**

12      Title 11 U.S.C. § 727(a)(2)(B)[6] provides:

13      The court shall grant the debtor a discharge, unless—the debtor, with intent to hinder,

14      delay, or defraud a creditor or an officer of the estate charged with custody of property

15      under this title, has transferred, removed, destroyed, mutilated, or concealed, or has

16      permitted to be transferred, removed, destroyed, mutilated, or concealed—property of

17      the estate, after the date of the filing of the petition.

18      The standard for denial of discharge under § 727(a)(2)(B) is the same as § 727(a)(2)(A), but

19 the disposition must be of estate property occurring after the petition date. *In re Adri*, 2022

20 Bankr.LEXIS 1727, at *18 (Bankr. C.D. Cal. June 9, 2022).

21      In September 2021 (postpetition), Debtor filed a UCC amendment with the Secretary of State

22 adding four additional people (her former spouse, roommate, oldest son, and granddaughter) as

23 secured parties under the original security agreement. TS at 82, 85; Ex. 14. By adding her son and

24 granddaughter as secured parties, Debtor gifted them a portion of J-Pad's lien (which she admitted

25 was really payable to herself). TS at 83. These gifts were reflected in the minutes of J-Pad. TS at 84.

26      Debtor's intent, in giving liens to friends and family members postpetition, is clear: she

27

28 _____
[6] Concurrently with this Brief, Houser Bros. is filing a motion to amend the Complaint under Rule 15 of the Federal
Rules of Civil Procedure to add a claim under 11 U.S.C. § 727(a)(2)(B) to conform to the evidence at trial.

sought to defraud the Trustee and her creditors regarding administration of the Property. Houser

Bros. therefore requests that the Court deny Debtor's discharge pursuant to 11 U.S.C.

§ 727(a)(2)(B).

## B. Count 4: Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

Section 727(a)(4)(A) provides: "The Court shall grant the debtor a discharge, unless—the

debtor knowingly and fraudulently, in or in connection with the case—made a false oath or

account." To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a preponderance of the

evidence, that:

1)  The debtor made a false oath in connection with the case;

2)  The oath related to a material fact;

3)  The oath was made knowingly; and

4)  The oath was made fraudulently.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*,

331 B.R. 876, 882 (B.A.P. 9th Cir. 2005). The "fundamental purpose" of § 727(a)(4)(A) is to ensure

that the trustee and creditors have "accurate information without having to conduct costly

investigations." *In re Retz*, 606 F.3d at 1196.

A "false statement or an omission" in the debtor's petition, schedules, or statement of

financial affairs can constitute a "false oath." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th

Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

"Materiality" is broadly defined. *In re Roberts*, 331 B.R. at 883. A fact is "material" if it

"bears a relationship to the debtor's business transactions or estate, or concerns the discovery of

assets, business dealings, or the existence and disposition of the debtor's property." *In re Retz*, 606

F.3d at 1198. An omission or misstatement that "detrimentally affects administration of the estate" is

material. *Id.* A false statement or omission may be material even without "direct financial prejudice

to creditors." *In re Roberts*, 331 B.R. at 883.

1       A debtor acts "knowingly" if he or she acts "deliberately and consciously." *In re Retz*, 606

2  F.3d at 1198.

3       A demonstration of fraudulent intent requires a showing that:

4         1)  The debtor made the representations (e.g., a false statement or omission in the

5             schedules);

6         2)  At the time the debtor knew they were false; and

7         3)  The debtor made them with intention and purpose of deceiving the creditors.

8  *In re Retz*, 606 F.3d at 1198-99. Intent is usually proven by circumstantial evidence or inferences

9  drawn from the debtor's conduct. *Id.* at 1199. "Reckless indifference or disregard for the truth" may

10  be circumstantial evidence of intent. *Id.* The existence of "more than one falsehood, together with a

11  debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions,

12  such as when filing amended schedules, can be found to constitute reckless indifference to the truth

13  satisfying the requisite finding of intent to deceive." *Ravasia v. U.S. Tr. (In re Ravasia)*, 2021

14  Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021).

15       Here, the evidence at trial showed countless material false oaths and omissions that Debtor

16  knowingly made with the requisite intent.

17              **i.**   **Debtor scheduled varying interests in J-Pad.**

18       In Debtor's 10 sets of schedules, she disclosed varying interests in J-Pad, including 1/7

19  ownership, 33.33% ownership, 70% ownership, and 100% ownership. *See* Exs. 28-38 (Debtor's

20  original and amended schedules); *see also* Ex. 39 at 865-875 (Homestead Motion, attaching as

21  Exhibit 1 a table summarizing Debtor's schedules regarding J-Pad). Debtor signed her schedules and

22  statements under penalty of perjury, confirming that she had examined the documents, and that they

23  were "true and correct." *See, e.g.*, Ex. 28 at 540 and 547 (Debtor's original schedules and

24  statements).

25       During trial, however, Debtor admitted that she owned at least 90% of J-Pad, despite what

26  she had represented in her schedules. TS at 148. She further advised that she became the 100%

27  owner of J-Pad starting on October 30, 2018. TS at 150. Debtor therefore knew that her schedules

28  were false regarding her interest in J-Pad. But, by falsely scheduling her interest in J-Pad, Debtor hid

1  the fact that she really held the lien against the Property and the lien was a sham. She therefore

2  knowingly made material, false oaths with fraudulent intent, and Houser Bros. requests that the

3  Court deny her discharge.

### ii. Debtor did not disclose the $225,000 promissory note as payable to her.

6  As discussed above, Debtor testified at trial that she was beneficiary of a $225,000

7  promissory note secured by an interest against the Property, but in none of Debtor's 10 sets of

8  schedules and statements did she list this note as an asset. TS at 182-96; Ex. 40 at 1212 (secured

9  promissory note between J-Sandcastle and Debtor). Further, during Debtor's August 18, 2021,

10  meeting of creditors, she falsely advised the Trustee that she had listed all her assets. TS at 336. By

11  scheduling J-Pad as the secured party rather than herself when she knew the money was owed to her,

12  Debtor sought to conceal the fact that the lien was in fact a sham to prevent administration of the

13  Property. The unscheduled $225,000 note thus provides a basis for denial of discharge.

### iii. Debtor scheduled the value of J-Pad as $0.

15  Throughout her various sets of schedules, Debtor gave no value to J-Pad. *See* Exs. 28-38

16  (Debtor's original and amended schedules). J-Pad, however, purported to hold a note and lien

17  against the Property, which was otherwise unencumbered. Debtor's representations, that J-Pad had

18  no value when Debtor knew otherwise, were fraudulently designed to prevent the Trustee from

19  scrutinizing J-Pad and discovering the sham nature of its lien.

### iv. Debtor did not disclose in her case commencement documents that she had granted her sons a lien against the Property in August 2020.

23  As discussed above, in August 2020 (less than one year before the Petition Date), Debtor

24  granted liens to her sons, Steven and Brian Gallian, by adding them to UCC3s. TS at 68; Ex. 14.

25  Debtor gave liens against the Property to Steven and Brian Gallian as gifts, and these gifts were

26  reflected in J-Pad's minutes. TS at 77-80. Debtor further signed statements to encumber that were

27  submitted to HCD to have her children added as lienholders on the certificate of title. Ex. 25 at 460.

28

In Debtor's 10 sets of schedules and statements, however, Debtor did not disclose these transfers/gifts. Exs. 28-38 (Debtor's original and amended schedules). These transfers are material because the Trustee has "strong-arm powers" to avoid and recover certain transfers of property by a debtor. These transfers to Debtor's sons within a year before the Petition Date would arguably be preferential or fraudulent transfers that the Trustee could try to avoid, recover, and preserve, allowing him to step into the shoes of Debtor's sons and receive the money or property otherwise payable to them. Yet, without clear and honest disclosures in her schedules and statements, Trustee is now less than two months from his statute of limitations to bring avoidance actions.

Debtor's intent with this concealment is clear: she sought to avoid scrutiny against herself and her sons for these fraudulent transfers. It further would have been beneficial and material for Trustee to know about this lien transfer as a possible fraudulent transfer to avoid, recover, and preserve. But, because Debtor did not disclose the existence of the transfer at all, and by otherwise encumbering and concealing the amount of money and equity in the Property, Trustee was prevented from being able to pursue claims. Further, even if Debtor is allowed a homestead exemption in the Property, if the Trustee successfully avoids, recovers, and preserves these lien transfers, he will inherit the lien rights, and Debtor will not be able claim an exemption in the recovered funds. Those funds may be the only money in this Bankruptcy Case that any creditor ever sees, but because Debtor omitted the transfers from her schedules, she sought to prevent the avoidance action altogether.

### v.    Payment of rent

During Debtor's deposition, she clearly and emphatically testified under oath that she "was paying rent to J-Sandcastle . . . just as if [she were] a stranger off the street." TS at 125. But, according to Debtor, this statement she made during her deposition was not true. TS at 127. Debtor further acknowledged it was not a true statement when she indicated during her deposition that she was renting from J-Sandcastle. TS at 127. The knowledge element is satisfied because Debtor, of course, knew she was not paying rent despite testifying otherwise during her deposition. And, Debtor's false statement was material because at the time of the deposition, Houser Bros.'s exemption objection was still pending before the Court, with status of title serving as a key issue.

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

1  *See* Ex. 38 (Exemption Motion). Houser Bros. also recently filed an appellate brief arguing that the

2  property that became property of the estate was Debtor's interest in J-Sandcastle and her tenancy

3  rights. *See* Appeal, Docket No. 11. The only possible purpose for Debtor's false statement regarding

4  paying rent was to defraud Houser Bros. in its efforts to deny her claimed homestead exemption.

5  ### vi.  Debtor did not disclose gifts in her case
6  ### commencement documents.

7       In addition to the liens granted to Steven and Brian Gallian, Debtor granted liens to her oldest

8  son, granddaughter, former spouse, and roommate in September 2021 (postpetition). TS at 85; Ex.

9  14. But, Debtor did not amend her schedules and statements to disclose these gifts. Exs. 28-38.

10  Certainly, gifting a postpetition lien against property of the Estate is material. And, the lien (and

11  nondisclosure of the gifts) could have only served the purpose of defrauding Trustee and the

12  creditors by preventing administration of the Property.

13  ### vii.  Unexpired ground lease

14       In Debtor's original Schedule G, as well as the several amendments thereto, she consistently

15  scheduled an unexpired ground lease for Space 376 at Houser Bros.'s mobilehome park.[7] Exs. 28-38.

16  But, no ground lease actually existed. TS at 363 (Debtor's acknowledgment that there was no ground

17  lease in her name with Houser Bros.); *see also* TS at 278-79, 285-86 (testimony of Chris Houser that

18  Houser Bros. had never approved J-Sandcastle, J-Pad, or Debtor to the residence in the mobilehome

19  park, and as far as he is concerned, Debtor has no legal ability to be on the premises).

20       These knowingly made false statements are material and fraudulent because Debtor

21  represented to the Trustee and her creditors that there was a lease for the Trustee to investigate and

22  decide whether to assume, assign, or sell. Debtor's false oath wasted the Trustee's and creditors'

23  time regarding administration of the Estate. Further, Debtor's right to occupy the premises is

24  currently an issue being litigated in a forcible entry/detainer action in Orange County Superior Court

25

26

27  [7] In Debtor's original Schedule G, she checked the box to indicate that she did not have any executory contracts or unexpired leases, but she then scheduled multiple executory contracts or unexpired leases. Ex. 28 at 534. In subsequent

28  amendments to Schedule G, the box was checked "yes." *See, e.g.*, Ex. 37 at 776 (amended Schedule G).

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

1  filed prepetition. *See* Docket No. 334 ("Order Granting Motion for Relief from Stay Under 11

2  U.S.C. § 362 (Unlawful Detainer)").

3  ### viii.    Greg Buysman notarization

4      In Debtor's Homestead Opposition, she represented under penalty of perjury that J-

5  Sandcastle released title to the Property to her on February 25, 2021, with a notarization of Debtor's

6  signature for this transfer reflected in the evidence supporting the Homestead Motion. Ex. 40 at

7  1103, 1127, 1132 (Debtor's Homestead Opposition);[8] *see also* TS at 257-77 (explanation of the

8  falsity of the oath). Among the attachments to the Homestead Motion were two notary pages by

9  Greg Buysman ("Mr. Buysman") regarding a February 25, 2021, release of title, that Houser Bros.

10  received from Debtor during discovery. *See* Ex. 39 at 1035-36, 1044-1046. Yet, the purported

11  notary, Mr. Buysman, appeared and testified that his records for February 25, 2021, only showed

12  that he notarized an affiant certificate of death and a transfer grant deed. TS at 241. Mr. Buysman

13  further confirmed that these documents were those beginning on pages 1562 and 1578 of Exhibit 42,

14  and that according to his records, he notarized no other documents for Debtor on February 25, 2021.

15  TS at 242.

16      At the time Debtor filed her Homestead Opposition, Houser Bros.'s theory in objecting to her

17  homestead exemption was that title to the Property as of the Petition Date was held by J-Sandcastle

18  as opposed to the Debtor personally, and Debtor could therefore not claim an exemption. *See*

19  *generally* Ex. 39 (Homestead Motion). By citing as evidence a fraudulent notary page dated

20  February 25, 2021 (prepetition), Debtor sought to give credence to the date of release. In fact, Debtor

21  acknowledged that the title document submitted to the HCD did not even have to be notarized, TS at

22  276, meaning that the notary page could have served no other purpose than to defraud creditors by

23  reflecting an earlier release date. With a February 25, 2021, date of release, Debtor could then

24  support her claim that she was the Property's owner of record as of the Petition Date, even if the

25  owner of record was really J-Sandcastle (and that she was continuing to pay it rent). But, Debtor

26

27

---

[8] Debtor confirmed that she had represented under penalty of perjury that everything in her Homestead Opposition was true and correct. TS at 274.

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

1   knew that Mr. Buysman had not notarized her HCD submissions providing the February 25, 2021,

2   release date; Mr. Buysman testified that he never notarized these documents at all.

3        As a final note, even if title as of the Petition Date is legally irrelevant to Debtor's claim of a

4   homestead exemption, a false statement or omission may be material even without "direct financial

5   prejudice to creditors." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 883 (B.A.P. 9th Cir. 2005).

6   Rather, a fact is "material" if it "bears a relationship to the debtor's business transactions or estate, or

7   concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's

8   property." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010).

9                    **ix.    Debtor undervalued the Property in her schedules**

10       In Debtor's schedules, she valued the Property at $235,000. Exs. 28-38. But, Debtor knows

11  the value to be substantially higher, given that Debtor advised during settlement negotiations that she

12  would sell the Property for $600,000. TS at 18-20. Debtor's intentionally low valuation of the

13  Property would have affected Trustee's decision of whether to avoid, recover, and preserve the

14  $225,000 lien against the Property and step into J-Pad's shoes. Further, were Trustee to sell the

15  Property for $235,000, there is no doubt that Debtor would object to the price as being insufficient.

16                   **x.    Debtor filed 10 sets of schedules with varying**

17                        **information, showing, at the minimum, a reckless**

18                        **disregard for the truth.**

19       Finally, Debtor has filed 10 sets of schedules and statements, all signed under penalty of

20  perjury, with all sorts of varying information, as described above. As the Ninth Circuit has noted, it

21  is "very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as

22  possible, because that is the initial information upon which all creditors rely." *Hamilton v. State*

23  *Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (citation omitted). At the very least,

24  Debtor's 10 sets of conflicting schedules and statements show reckless indifference or disregard for

25  the truth, establishing her fraudulent intent for purposes of denial of discharge.

26

27

28

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

## C. Count 5: Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

Title 11 U.S.C. § 727(a)(5) provides: "The court shall grant the debtor a discharge, unless— **(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

Under § 727(a)(5), the objecting party bears the initial burden of proof and must demonstrate:

    1) Debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets;

    2) On the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and

    3) The bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010). Once the creditor has made a *prima facie* case, the debtor must offer "credible evidence" regarding the disposition of the missing assets. *Id.* Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court. *Id.*

Ninth Circuit precedent limits § 727(a)(5) to a debtor's inexplicable, pre-petition loss of assets. *Davis v. Choy (In re Choy)*, 569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) (citation omitted).

Here, on October 31, 2018, Debtor sold real property at 4476 Alderport to Randall Nickel for $379,000 ("Alderport Proceeds"). PTS ¶ 2. She deposited the proceeds with Chase Bank, in an account in her name. *Id.* ¶ 4. Although Debtor paid $185,000 from the proceeds to purchase the Property, TS at 22, she has not adequately explained the disposition of the remaining money.

At the conclusion of the trial, the Court gave Debtor until April 28, 2023, at 5:00 p.m. to file and serve a complete accounting regarding the proceeds. TS at 395-97. On May 1, 2023, Debtor filed an untimely "Declaration of Jamie Lynn Gallian as Requested by the Honorable Scott C. Clarkson, United States Bankruptcy Judge, in Support Debtors Reduction in Sale Proceeds from Debtors Previous Homestead Sold 10/31/2018, Located at 4476 Alderport Dr. Huntington Beach,

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF
4886-1591-1427,v.1

1  CA 92649 [sic throughout]." AP Docket No. 71. Although this accounting lists expenditures, Debtor

2  provides no documentary evidence to corroborate the line items.

3  **4.    Conclusion**

4     For the reasons stated above, Plaintiff requests that the Court enter judgment:

5     1)  Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

6     2)  Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(B);

7     3)  Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4);

8     4)  Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(5); and

9     5)  Awarding such further relief as this Court deems just and proper.

10

11

12  DATED: May 10, 2023                    MARSHACK HAYS LLP

13                                              /s/ D. Edward Hays
                                         By:_____
14                                            D. EDWARD HAYS
                                              LAILA MASUD
15                                            BRADFORD N. BARNHARDT
                                              Attorneys for Plaintiff,
16                                            HOUSER BROS. CO. dba RANCHO DEL
                                              REY MOBILE HOME ESTATES
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S POST-TRIAL CLOSING TRIAL BRIEF

4886-1591-1427,v.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S POST-TRIAL CLOSING BRIEF** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 10,
2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com
- **Jeffrey I Golden (TR)**    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **May 10, 2023**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR AND DEFENDANT (VIA U.S. MAIL AND EMAIL TRANSMISSION)**
JAMIE LYNN GALLIAN
16222 MONTEREY LANE, SP #376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **May 10, 2023**, I served the following persons and/or entities by personal delivery,
overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or
email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge
will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 10, 2023 | Layla Buchanan | _/s/ Layla Buchanan_ |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.