1   JAMIE LYNN GALLIAN

2   16222 Monterey Lane Unit 376
    Huntington Beach, CA 92649

3   (714)321-3449
    jamiegallian@gmail.com

4

5   DEFENDANT, IN PRO PER

6

7                   UNITED STATES BANKRUPTCY COURT

8           CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

9

10

11  In re                              Case No. 8:21-bk-11710-SC

    JAMIE LYNN GALLIAN,                Chapter 7
12
                Debtor.               Adv. No. 8:21-ap-01097-SC
13
    _____   DEBTOR'S POST TRIAL
14  HOUSER BROS. CO. dba RANCHO DEL REY   BRIEF IN SUPPORT OF
    MOBILE HOME ESTATES,               DEBTOR RECEIVING A
15                                     CHAPTER 7 DISCHARGE
                Plaintiff,
16
    v.                                 Trial Date: April 26, 2023
17                                     Time:      9:30 .m.
                                       Ctrm:      5C
18  JAMIE LYNN GALLIAN,                Address:   411 W. Fourth St.
                                       Santa Ana, CA 92701
19              Defendant.
    _____
20

21      Houser Bros, the park operator has refused to enter into a lease with the purchaser of a
    manufactured home that was purchased "in place" from a homeowner under the seller lease
22  agreement with the park, and is using an adversary complaint to allege Section 727 claims against
    the debtor
23

24    Lack of standing: Houser Bros, the park operator does not have standing to bring a Section 727
    claim against the debtor because they have not suffered an injury that gives rise to a valid claim.
25

26    No evidence of wrongdoing: The debtor could argue that there is no evidence to support the park
    operator's claims under Section 727, or that the park operator has failed to meet the burden of proof
27  required to establish those claims.

28    Equitable estoppel: The debtor could argue that the park operator is equitably estopped from
    denying the debtor's right to use the space, based on the park operator's prior conduct or statements
    that suggested that the debtor had a right to use the space.

1.     Gables HOA filed an unverified complaint on 4/11/2017, concerning real property 4476 Alderport Drive, Unit 53, 18 days after debtor was "gifted" the property. ("4476 Alderport").

2.     On October 31, 2018, Debtor assigned the leasehold interest in 4476 Alderport to Randall Nickel for $379,000, paid by two cashier's checks payable to Debtor individually.

3.     The HOA litigation was never decided on the merits; however a judgment for attorney fees of over $316,583.59 ("Gables Money Judgment") was entered in favor of the Gables HOA which was formally entered on May 6, 2019.

4.     Debtor deposited the proceeds from the sale of 4476 Alderport with Chase Bank, in an account in her name.

5.     The Gables HOA and Janine Jasso, former Gables Attorney, have each separately filed adversary complaints against Debtor seeking to except the Gables Attorney Fees Money Judgment from discharge as well as to deny Debtor a discharge, Adversary Proceeding No. 8:21-ap-01095 and 8:21-ap-01096.

6.     JSC is Debtor's single-member LLC, formed on or around October 18, 2018.

7.     J-Pad, LLC is a manager managed LLC formed on or about February 9, 2018 and Amended October 18, 2018 with the CA Secretary of State

8.

9.     On October 17, 2018, Sublessor, BS Investors LP, filed a frivolous unlawful detainer Case No. 30-2018-01024401, and dismissed the case on December 3, 2018. ("BS Invest. Action").

10.     On January 14, 2019, Debtor filed a UCC Financing Statement against JSC, Document No. 76027940002.

11.     On January 14, 2019, Debtor filed a UCC Financing Statement against JSC, Document No. 76027940003.

12.     On January 14, 2019, Debtor filed a UCC Financing Statement against Craig Houser and Kathryn Houser-Curtiss, Document No. 7602794004.

13.     On February 5, 2019, a UD Complaint was taped to debtors door.  On February 22, 2019, Defendant filed an answer to Houser Bros v Gallian  OCSC UD Complaint filed 1/2/2019 30-2019-1-41423.

14.     On March 17, 2022, as BK Docket No. 77, Debtor filed a "Corporate Ownership Statement . . ." indicating that on November 22, 2021, she filed with the California Secretary of State certificates of cancellation for both J-Pad and JSC to avoid default from not paying the $800.00 tax.

15.     Ronald Pierpont is Debtor's ex-husband. They were divorced in 2015.

16.     On July 9, 2021, Debtor filed a Declared Homestead with the Clerk Recorder.
On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition ("Petition") for relief under Chapter 7 of Title 11 of the United States Code, commencing Case No. 8:21-bk-11710 ("Bankruptcy Case").

17.     Debtor, In Pro Per filed her initial Schedules and Statements ("Original Schedules") on the Petition Date. Debtor filed First Amendment Schedule on September 7, 2021. Doc 15, Doc 16.

18.     Since filing her Original Schedules, Debtor, In Pro Per, filed amendments to correct her schedules: BK Docket Nos. 15, 16, 17, 22, 37, 38, 39, 42, 72, and 75.

19.     Debtor signed her Petition, her Original Schedules, and all amended schedules under penalty of perjury, acknowledging that the information provided therein was true and correct.

20.     On May 12, 2022, as BK Docket No. 95, Houser Bros. filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Exemption Motion").

21.     On May 13, 2022, the Gables HOA filed a joinder to the Houser Bros Exemption Motion. BK Docket No. 98.

22.     On May 16, 2022, Janine Jasso, Gables former attorney, filed a joinder to the Houser Exemption Motion. BK Docket No. 100.

23.     On June 1, 2022, as BK Docket No. 105, Debtor filed a "Reply Opposition, Memorandum of Points and Authorities to Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" ("Exemption Opposition").

24.     On June 30, 2022, as BK Docket No. 128, Chapter 7 Trustee Jeffrey I. Golden ("Trustee") filed "Trustee's Joinder in Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption."

25.     On July 7, 2022, Houser Bros. filed a "Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption" ("Exemption Reply"), with supporting declarations of Vivienne J. Alston, Greg Buysman, and Chris Houser. BK Docket Nos. 130-133.

26.     On July 28, 2022, as BK Docket No. 162, Trustee filed an "Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" ("Employment Application").

27.     On August 5, 2022, as BK Docket No. 177, the Court entered an "Order Granting Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Docket No. 95" ("Exemption Order").

28.     On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)," commencing Adversary Proceeding No. 8:21-ap-01097 ("AP").

30.     On October 22, 2021, as AP Docket No. 3, Houser Bros. filed a "First Amended Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)" ("Complaint").

31.     On October 28, 2021, as AP Docket No. 6, Debtor filed an "Answer to Complaint/Defendant Jamie Lynn Gallian, Affirmative Defenses to Complaint to Determine Dischargeability of Debt" ("Answer").

32.     On November 8, 2021, Houser Bros Co received CA Covid 19 Rent Relief on behalf on Debtors Rent Relief Application filed pre-petition June 9, 2021.  Houser Bros did not notify the Bankruptcy Court of the money received on behalf of Debtor.

33.     On November 10. 2021, the Trustee held a fourth 341 meeting.  Houser attorney Ed Hays did not appear even though attempts were made by the Trustee to inquiry about the Covid Funds.

34.     On December 15, 2021, Houser Bros Co violated debtor's bankruptcy stay when Houser Bros filed a new complaint against debtor OCSC 30-2021-01236940.

35.     On or about July 28, 2021, Houser Bros Co violated debtor's bankruptcy stay when Houser Bros prepared and submitted through their attorney Alson, Alston & Diebold, a Space 376 Ledger for unpaid Rent and Utilities to debtor to submit to the CA Covid 19 Rent Relief Program.

36.     The Court has jurisdiction over this AP pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the Bankruptcy Case.

37.     Venue properly lies in the Central District of California in that this AP arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. § 1409.

B.      38.     Houser Bros is a Park Operator under a Permit to Operate issued by CA Dept. Housing and Community Development

1.      Houser Bros. is the owner of and/or has no right of possession of the Space 376

2.      On August 21, 2018, Houser Bros. filed a UD complaint ("Ryan Complaint") against Lisa Ryan ("Ms. Ryan") in Orange County Superior Court ("OCSC") for failure to pay rent stemming from Ms. Ryan's tenancy of Space 376, Huntington Beach, CA 92649 ("Space 376" or "Property"). Ryan Complaint Case No. 30-2018-01013582-CL-UD-CJC ("Ryan State Court Action"). On October 18, 2018, Lisa Ryan, In Pro Per, and the Park entered into a stipulated judgment ("Stipulated Judgment") resolving the Ryan Complaint.  Ryan retained the right to sell her home "in place" until February 4, 2019.

3.      On November 1, 2018, Debtor and Ms. Ryan executed a release form to release title of the Property to J-Sandcastle Co., LLC ("JSC"), with the "Date of Release" and "Purchase Date or Transfer Date" as November 1, 2018 ("Ryan Release Form").

4.      On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" regarding the Property, showing Jamie L Gallian "Purchaser/New Owner," with November 1, 2018, as the date of transfer ("Ryan Notice of Sale or Transfer").

5.      The purchase price of the Property paid to Ms. Ryan by Jamie Gallian, Debtor was $185,000. Debtor paid the $185,000 by Chase Cashier's Checks and Cash.from the account into which Debtor had deposited the sales proceeds of 4476 Alderport.

6.      On November 14, 2018 Houser Attorney filed a WRIT OF POSESSION Case No. 30-2018-01013582, in the name of LISA RYAN, after Houser was notified Lisa Ryan sold her home to Jamie Gallian, on November 1, 2018, as anticipated by the Houser/Ryan Stipulation dated October 18, 2018. Houser delivered the WRIT OF POSSESSION of Real Property to the Santa Ana Sheriff on Nov. 19, 2018.

7.      On November 15, 2018, Ryan and Gallian met to discuss the Houser interference of Sale by Houser.

5

3. On November 15, 2018, Gallian and Ryan agreed to add J-Sandcastle to the Notice of Transfer. Ryan sent Correspondence to through overnight mail to HCD Sacramento received on November 20, 2018 as noted in the HCD records for LBM1081.

4. On November 16, 2018, Debtor appeared at OCSC Judge James Crandall.C-33.

5. On November 16, 2018 Ryan delivered the 1/1/2006 Space 376 Lease Agreement to Debtor. Debtor and Ryan both signed and noted the time of signing the document.

6. On November 16, 2018, Debtor executed a Security Agreement and Promissory Note with her sole Member LLC J-Sandcastle and recorded a Manufactured Finance Transaction wih CA Secretary of State on 1/14/2019 for a 30 year finance period.

7. On November 16, 2018, Debtor surrendered LBM1081 Original Certificate of Title and Original Registration Card, LBM1081, and Orginal Tax Clearance Certificate and completed Application at Riverside Co. CA Department of Housing and Community Development

8. On Monday November 19, 2018, J-Sandcastle Co delivered a Chase Cashiers Check to the Park Office, $8,743.02 for the amount of the Stipulated Houser v Ryan Judgment on behalf of Ryan. Park Manager Willie accepted the Cashier Check from Debtor. The cashiers check remained in Houser Bros Possession until January 9, 2019. Debtor brought the check to court OCSC 30-2018-01013582 on January 10, 2019, Judge Carmen Luege Court Room Deputy delivered the cashiers check back to Houser Bros Attorney Vivienne Alston which she accepted and left the courtroom with it on her person.

9. On the afternoon November 19, 2018, Nickie Hoover, Ryan Real Estate Agent, delivered J-Sandcastle Co LLC Residency Application ("Application") to the management office for the Rancho Del Rey Park requesting to enter into a Lease Agreement for Space 376 2014 Manufactured Home sold by previous tenant Lisa Ryan.

10. On November 20, 2018, the Park mailed a letter addressed to Debtor at her previous Pinon Dr. address informing Debtor of the denial of the Application ("Denial Letter"); and verbally informed Ryan's real estate agent of the denial who called debtor in the telehone. Debtor called and spoke to Kathryn Houser Curtis and reminded her Gallian has been paying the Ground Lease with fail and has a perfect payment record with Houser. Gallian reminded Ms. Cutiss of the almost 2-1/2 meeting on or about April 5, 2018 in the park office concerning approval for residency after selling her Gables home.

10. JSC received money's from debtor deposited into their Chase bank account in exchange for receiving title to the mobilehome.

11. J-Sandcastle was managing J-Pad at the time the UDD was filed 1/14/2019, and a CA Statement of Information was recorded on January 15, 2019.

12. Prior to July 9, 2021 bankruptcy, there were two additions to her interest in property including, but not limited to, using the Alderport sales proceeds to purchase her residence/ mobilehome and registered the Certificate of Title in the name of JSC, granting a lien and the rights of the legal owner of the mobilehome to J-Pad.  Debtor did not believe her membership interests in JSC and J-Pad belonging to the debtor were being transferred away to her sons at any time. Her actions intended to be only in the event of absence or death. Debtor had no living Trust or Will.

13. All of the foregoing transfers were made for reasonable value and Debtor was not insolvent.

14. All of the foregoing transfers were made in good faith and belief by Debtor with no intent to intent to hinder, delay, or defraud the Huntington Beach Gables, the sole creditor.

15. On December 10, 2018, the Park caused to be served on debtor a Five-Day Notice to Quit Premises ("NTQ") in violation of a Court Order issued by now retired Honorable Ronald Bauer.  Gallian obtained the temporary restraining order on December 4, 2018 because of Houser filing documents and serving documents in the previous seller, Lisa Ryan, to harass debtor.

16. On January 2, 2019, the Houer Bros again in violation of the temporary restraining order still in place, filed a UD complaint ("OCSC Complaint") against Defendant for forcible entry/ detainer (mobilehome park), Case No. 30-2019-01041423-CL-UD-CJC("OCSC Action").

17. On January 14, 2019, Debtor filed a UCC Financing Statement against JSC, Document No. 76027030002.

18. Debtor has made no known false representations regarding her alleged right to occupy the premises. On March 6, 2019, Hon. Carmen Luege ordered Houser to return possession of the manufactured home to Jamie Gallian.

19. The Houser OCSC UD Complaint and Houser unlawful self help efforts to remove debtor have been thwarted by the Superior Court

21. Brian, Steven, and Justin are Debtor's adult sons all over the age of 30+years.

22. Debtor's ten sets of amended schedules and/or statements of financial affairs, all signed under penalty of perjury, were made to perfect the schedules because of over 10 341 meetings

23. Debtor's statements of financial affairs contained no known false oaths because such statements disclosed all of Debtor's decisions regarding her residence and property.

24. Debtor's Schedules also reflect her belief the unexpired 1979 ground lease applied to the APN 189-011-16, as a recorded  lease does exist for the parcel of land.

25. Prior to the deadline to object to discharge, Debtor has explained the disposition of the $379,000 in proceeds from the sale of Alderpor; approximately $185,000 was used to purchase her residence/mobilehome and over $ 130,000.00 funds paid to attorney's and her other expenses listed and disclosed explaining depletion of cash assets, and the use of her LLCs to protect her assets.  No known injury to any creditors and debtor has disclosed her interest and equity in her residence, the mobilehome.

26. In her Exemption Opposition and her later motion for reconsideration, Debtor contends that she retained an interest in the mobilehome notwithstanding registering title in the name of her sole member LLC JSC and naming J-Pad as its legal owner pursuant to a secured  financing lien.

27. In her Exemption Opposition, Debtor presented her detailed declaration explaining Buysman notarizations. The mobilehome was transferred from Jamie Gallian, Member JSC to herself.

28. Mr. Buysman notarized Jamie Lynn Gallian's signature and her identity and provided those documents used to the Debtor in the Exemption Opposition.  There was no other reason.  The COT does not need to be a notarized signature to be valid.  Its signed under penalty of perjury.

29. Debtor has been in possession of and resided at the Property since November 2018, and she continues to reside at the Property despite J-Sandcastle application being rejected.

30. Debtor moved into Rancho Del Rey with what she believed to be the permission of Kathryn Houser-Curtis claiming to e an owner of the park Debtor remains in the home she purchased.

31. Debtor trespassed and took possession of the Premises without Plaintiff's consent or approval, and no rental agreement was entered into between Plaintiff and Defendant.

32. Plaintiff has misrepresented facts regarding the BS Investors UD Action filed 10/17/18 and dismissed 12/3/18, before debtor filed an answer.

33. Debtor does believe she is trespassing.  The Court ordered Debtor back in possession on 3/6/19

Houser is causing their own damage.  Debtor has tendered monies for rent, CA Covid

19 Rent Relief Program tendered monies for Rent after debtor was approved or relief. f

### First Claim for Relief – 523(a)(2) Fraud.

1.     "A discharge under . . . this title does not discharge an individual debtor from

any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the

extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

2.     "The Bankruptcy Code has long prohibited debtors from discharging liabilities on

account of their fraud, embodying a basic policy animating the Code of affording relief only to an

'honest but unfortunate debtor.'" *Cohen v. De La Crus*, 523 U.S. 213, 217 (1998).

3.     "Section 523(a)(2)(A) continues the tradition, excepting from discharge 'any debt . . .

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent

obtained by . . . false pretenses, a false representation, or actual fraud…'" *Id.* at 218.

4.     A plaintiff bears the burden of proving the applicability of § 523(a)(2)(A) by a

preponderance of the evidence by demonstrating five elements:

      a)     The debtor made representations;

      b)     That at the time he or she knew they were false;

      c)     That he or she made them with the intention and purpose of deceiving the

            creditor;

      d)     That the creditor relied on such representations; and

      e)     That the creditor sustained the alleged loss and damage as the proximate result

            of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

5.      Typically, a finding of a debt due to fraud is all that is necessary to satisfy § 523(a)(2)(A) to establish that the debt is nondischargeable in bankruptcy. *Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005).

### Second Claim for Relief – 523(a)(6) Willful and Malicious Injury.

6.      "A discharge . . . does not discharge an individual debtor from any debt– for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6); *see also Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019).

7.      The "willful" and "malicious" requirements are conjunctive and subject to separate analysis. *Id.*

8.      The injury-producing conduct must be tortious to be exempted from discharge under § 523(a)(6). *Id.* at *27.

9.      Conduct is tortious under § 523(a)(6) only if it constitutes a tort under state law. *Id.* (citing *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008)).

10.      Trespass is a tort under California law.

11.      Trespass is an unlawful interference with possession of property. The elements of trespass are: (1) the plaintiff's ownership or control of the property;(2) the defendant's intentional, reckless, or negligent entry onto the property; (3)lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm. *Ralphs Grocery Co.*, 17 Cal.App.5th 245, 261-262.

12.      It is a well-settled proposition that the proper party plaintiff in an action for trespass to real property is the person in actual possession. No averment of title in plaintiff is necessary. [Citations.]' . . . 'A defendant who is a mere stranger to the title will not be allowed to question the title of a plaintiff in possession of the land. It is only where the trespasser claims title himself, or claims under the real owner, that he is allowed to attack the title of the plaintiff whose peaceable possession he has disturbed.' *Veiseh v. Stapp* (2019) 35 Cal.App.5th 1099, 1104.

13.      The tort of trespass is the type of tort that is covered by Section 523(a)(6). *Simas v. Powell*, 635 B.R. 366, 375-76 (N.D. Cal. 2021) ["The court found that appellant's continued use of

the Property after appellees asked him to leave constituted trespass and conversion and was thus a sufficient basis for nondischargeability under Section 523(a)(6)."].

14.     The language of § 523(a)(6) also extends to the tort of conversion. *State Farm Mut. Auto Ins. Co. v. Rodriguez (In re Rodriguez)*, 568 B.R. 328, 342 (Bankr. S.D. Cal. 2017). But, whether a defendant's actions amount to conversion under California law is not dispositive regarding whether the underlying claims are nondischargeable under § 523(a)(6). *Id.*

15.     To prevail on a § 523(a)(6) conversion claim, a plaintiff must "first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious." *Id.* at 343; *see also Zeeb v. Farah (In re Zeeb)*, 2019 Bankr.LEXIS 2477, at *16 (B.A.P. 9th Cir. Aug. 9, 2019) (noting that a creditor seeking to exempt a debt from discharge under § 523(a)(6) must also prove that the conversion was undertaken willfully and maliciously).

16.     Conversion, under California law, is the "wrongful exercise of dominion over the property of another." *Mendoza v. Continental Sales Co.*, 140 Cal.App.4th 1395, 1404-05 (2006). The elements of a conversion claim are: 1) The plaintiff's ownership or right to possession of the property; 2) The defendant's conversion by a wrongful act or disposition of property rights; and 3) Damages. *Id.* at 1405.

17.     An injury is "willful" when a debtor "harbors either subjective intent to harm, or a subjective belief that harm is substantially certain." *Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *26 (Bankr. C.D. Cal. July 10, 2019).

18.     The injury must be "deliberate or intentional, not merely a deliberate or intentional act that leads to injury." *Id.*

19.     A debtor acts "knowingly" if he or she acts "deliberately and consciously." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010).

20.     An injury is "malicious" if it involves: 1) A wrongful act, 2) Done intentionally, 3) Which necessarily causes injury, and 4) Is done without just cause or excuse. *Hunter v. Martin (In re Martin)*, 2019 Bankr.LEXIS 2073, at *27 (Bankr. C.D. Cal. July 10, 2019); *see also Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002) (same).

21.     Malice may be inferred based on the nature of the wrongful act. *Ormsby v. First Am.*

1    *Title Co. (In re Ormsby)*, 591 F.3d 1199, 1207 (9th Cir. 2010).

2       22.     The intentional conversion of another's property without its knowledge or consent and

3 without justification and excuse constitutes a willful and malicious injury within the meaning of 11

4 U.S.C. § 523(a)(6). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1203 (9th Cir. 2001); *In re*

5 *Bailey*, 197 F.3d. 997, (9th Cir. 1999).

6       **Third Claim for Relief – 727(a)(2)(A) Transfer or Concealment of Property**

7       23.     "The court shall grant the debtor a discharge, unless—the debtor, with intent to

8 hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under

9 this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be

10 transferred, removed, destroyed, mutilated, or concealed— property of the debtor, within one year

11 before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).

12       24.     A party seeking denial of discharge under § 727(a)(2)(A) must prove:

13            1.       A disposition of property, such as a transfer or concealment;

14            2.       A subjective intent on the debtor's part to "hinder, delay or defraud a creditor

15                 through the act [of] disposing of the property;" and

16            3.       It must occur within one year before filing bankruptcy.

17 *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010); *Faith v. Miller (In re Miller)*, 2015

18 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015) (Caroll, J.).

19       25.     A debtor's intent need not be identical to the fraudulent intent under a common-law

20 tort standard to meet the requirements of § 727(a)(2)(A). *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

21 1200 (9th Cir. 2010).

22       26.     It suffices if the debtor's intent is to "hinder or delay a creditor." *Id.*; *see also Faith v.*

23 *Miller (In re Miller)*, 2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015) (same).

24       27.     Lack of injury to creditors is irrelevant regarding denying a discharge in bankruptcy.

25 *In re Retz*, 606 F.3d at 1200; *In re Miller*, 2015 Bankr.LEXIS 1929, at *6.

26       28.     The intent to hinder or delay is a factual question that requires the trier of fact to

27 "delve into the mind of the debtor" and may be inferred from surrounding circumstances. *JP Morgan*

28 *Chase Bank, N.A. v. Ellison (In re Ellison)*, 2016 Bankr.LEXIS 3475, at *24 (Bankr. C.D. Cal. Sept.

1  23, 2016).

2     29.     In examining the circumstances of a transfer under § 727(a)(2)(A), certain "badges of

3  fraud" may support a finding of fraudulent intent:

4           These factors, not all of which need be present, include (1) a close

5           relationship between the transferor and the transferee; (2) that the transfer

6           was in anticipation of a pending suit; (3) that the transferor Debtor was

7           insolvent or in poor financial condition at the time; (4) that all or

8           substantially all of the Debtor's property was transferred; (5) that the

9           transfer so completely depleted the Debtor's assets that the creditor has

10          been hindered or delayed in recovering any part of the judgment; and

11          (6) that the Debtor received inadequate consideration for the transfer.

12  *In re Retz*, 606 F.3d at 1200. A "course of conduct" may also be "probative" regarding intent. *In re*

13  *Ellison*, 2016 Bankr.LEXIS 3475, at *25.

14     30.     If a transfer occurred more than one year prior to bankruptcy but a debtor's concealed

15  interest in such property extended into the one year period prior to bankruptcy, then discharge should

16  be denied. *In re Lawson*, 122 F.3d 1237 (9th Cir. 1997) [The court adopted the "continuing

17  concealment" doctrine and held that defendant's transfer, made more than a year before her petition,

18  provided evidence of defendant's active concealment of property in which she continued to retain a

19  secret interest.].

20     31.     If a debtor's income funds all mortgage, insurance, and maintenance payments on

21  property held in the name of another party, she may be found to have fraudulently concealed her

22  interest in such property. *In re Martin*, 698 F.2d 883 (7th Cir. 1983).

23              **Fourth Claim for Relief – 727(a)(4) False Oath**

24     32.     "The Court shall grant the debtor a discharge, unless-the debtor knowingly and

25  fraudulently, in or in connection with the case-made a false oath or account." 11 U.S.C. § 727(a)(4).

26     33.     To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a preponderance of

27  the evidence, that:

28           A.     The debtor made a false oath in connection with the case;

B.      The oath related to a material fact;

C.      The oath was made knowingly; and

D.      The oath was made fraudulently.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

34.     The "fundamental purpose" of § 727(a)(4)(A) is to insure that the trustee and creditors have "accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d at 1196.

35.     "Materiality" is broadly defined. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 883 (B.A.P. 9th Cir. 2005).

36.     A fact is "material" if it "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Retz v. Samson (In re Retz), 606 F.3d 1189, 1198 (9th Cir. 2010).

37.     An omission or misstatement that "detrimentally affects administration of the estate" is material. Id.

38.     A false statement or omission may be material even without "direct financial prejudice to creditors." *In re Roberts*, 331 B.R. at 883.

39.     A debtor acts "knowingly" if he or she acts "deliberately and consciously." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010).

40.     A demonstration of fraudulent intent requires a showing that: 1) The debtor made the representations (e.g., a false statement or omission in the schedules); 2) At the time the debtor knew they were false; and 3) The debtor made them with intention and purpose of deceiving the creditors. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198-99 (9th Cir. 2010).

41.     Intent is usually proven by circumstantial evidence or inferences drawn from the debtor's conduct. Id. at 1199.

42.     "Reckless indifference or disregard for the truth" may be circumstantial evidence of intent. *Id. See also, Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163 (B.A.P. 9th Cir. 2007).

43.     The existence of "more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to constitute reckless indifference to the truth satisfying the requisite finding of intent to deceive." *Ravasia v. U.S. Tr. (In re Ravasia)*, 2021 Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021).

**Fifth Claim for Relief – 727(a)(5) Failure to Explain Loss of Assets**

44.     "The court shall grant the debtor a discharge, unless— (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010).

45.     Once the creditor has made a prima facie case, the debtor must offer "credible evidence" regarding the disposition of the missing assets. *Id.*

46.     Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court. *Id.*

Does the First Claim for Relief state a valid claim for relief?

**A:  No, it does not identify any creditor who was defrauded nor is there any such creditor.  It also fails to allege with any specificity any of the elements required by 11 USC 523(a)(2)(A).  Debtor's 25th Affirmative Defense is a valid bar to this claim.**

7.   Does the Second Claim for relief state a valid claim for conversion?

**A:  Under California Law conversion is the wrongful exercise of dominion over personal property of another.   Moore v. Regents of Univ. of Calif. (1990) 51 C3d 120,137. Simas v. Powell 635 B.R.366 holds that a trespass can give rise to a claim of conversion of the personal property on the real property of Plaintiff and does not stand for the proposition that a trespass on real property is also a conversion unless plaintiff can prove that it was deprived of that personal property with a superior right to possession.  The Second Claim does not identify any personal property that the debtor has allegedly converted and therefor fails to state a valid claim of conversion or a valid claim for relief and is barred by Debtor's 25th affirmative defense.**

8.   Is the Second Claim for relief based on trespass barred by the doctrines of waiver, estoppel and unclean hands as a result of Plaintiff's failure to comply with Civil Code Section 798.74?

**A:  Debtor submitted an application for residency on November 19,2018 on behalf of J-Sandcastle. Plaintiff never responded to that application but instead claimed that Debtor's credit score was insufficient although she was not the applicant. California Civil Code 798.74 that was in effect on that date required that Plaintiff respond within 15 business days to the prospective homeowner (J-Sandcastle) with the reason for the acceptance or rejection.   Approval cannot be withheld if the purchaser has the ability to pay the rent and charges of the park. unless management  reasonably determines the purchaser will not comply with the rules and regulations of the park.  Plaintiff did not comply with its mandatory obligations after receiving J-Sandcastle's application but responded only with a classic non sequitur that did not address the issue of financial ability to pay of the purchaser nor did assert any claim that its rules and regulations would not be followed.   California Civil Code 3529 provides: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." Plaintiff failed its mandatory, statutory duty to respond and cannot now be heard to say that no tenancy was created.   It clearly waived**

**its right to deny tenancy to J-Sandcastle and comes before the court with unclean hands in claiming that J-Sandcastle had no right to have debtor occupy the premises. They are also estopped to assert same.  Debtor's affirmative defenses numbers 22,49 and 54 are well taken.**

**Note:  Plaintiff had 2 1/2 years to bring the unlawful/forcible detainer case against debtor to trial in state court before the filing of the Petition.   Clearly it expected (rightfully) to lose. Debtor is clearly not a trespasser and this claim for relief fails.**

9. Does the Third Claim for Relief state a valid claim for relief?

**A: This claim does not identify the property supposedly transferred or concealed or when it occurred.  It therefor fails to state of claim for relief.   See debtor's 25th affirmative defense.**

10. Does the Fourth Claim for Relief  state a valid claim for relief?

**A: Again, this claim does not identify the false oath or account and therefor fails to state a claim for relief.  See debtor's 25th affirmative defense.**

11. Does the Fifth Claim for Relief state a valid claim for relief?

**A:  Again, this claim does not identify the assets supposedly missing and therefor fails to state a claim for relief.  See debtor's 25th affirmative defense.**

1.    The debtor transferred the title back to her name and did not list the promissory note payable to "herself" correctly as the holder and J-Pad as the holder on her amended schedules. The debtor did not know the difference of having two holders. The bankruptcy code requires debtors to disclose all assets, including those that are transferred or sold within a certain period before filing for bankruptcy. Debtor truthfully believed she had disclosed these facts so many times and provided all discovery with hundreds of pages with copies of the Security Agreement and Promissory Note.

2.    In regards to the promissory note, the debtor was listed as the lender and the LLC as the borrower, the note was for a legitimate business purpose, disclosed on the debtor's bankruptcy schedules. Regardless of whether or not the debtor was able to pay herself back, debtor failed to properly disclose the note, her as the holder and lender.  Her ignorance of the disclosure differences was not in debtors mind fraudulent concealment

3.    Regarding the use of funds for legal fees, the nature of the legal fees were for legitimate purposes. The fees were for the debtors and benefit. The fees were for the debtor's ~~personal protection~~ and related to the LLC's business, it was disclosed and accounted for as a transfer of assets,

4. Under California law, the Mobilehome Residency Law (MRL) requires park owners to disclose to homeowners any leasehold interest or ground lease on the land where the park is situated. Specifically, Civil Code Section 798.74(a)(7) requires park owners to include in the rental agreement a disclosure of "any leasehold interest or ground lease on the land where the park is situated and the date of expiration of the lease or sublease."

There is an 80-year ground lease recorded on the parcel of land where a manufactured home park is built, the park operator is required by law to disclose the existence of the ground lease and the remaining unexpired term to homeowners.

The debtor created a security agreement and promissory note with her sole member LLC in relation to the personal property, which is the manufactured home. The debtor then registered the home with the Department of Housing and Community Development and titled it in the name of her LLC. However, the debtor did not record a UCC-1 Ad until over 30 days after the park operator filed a Writ of Possession in the name of the seller of the home.

The transfer of the manufactured home to the LLC was not made with an intent to hinder or delay creditors, but rather as a legitimate business transaction. The UCC-1 Ad was not untimely, but was made within a reasonable time after the transfer and creation of the security interest.

The fact that Houser BrosWRIT of POSSESSION was issued in the name of the seller of the home, rather than the debtor or the LLC, suggests that the park operator may not have a valid claim against the debtor. The debtor argues Houser Bros, the park operator's actions in this regard demonstrate a lack of standing to bring a claim for fraudulent transfer or concealment.

The fact that the debtor titled the personal property manufactured home in the name of her single member LLC over two weeks after receiving the surrendered certificate of title from the seller may be seen as evidence that the debtor did not intend to conceal or transfer the property with fraudulent intent. This is because if the debtor had intended to conceal or transfer the property with fraudulent intent, she would have likely titled the property in the name of a third party or a different entity.

Additionally, the fact that the debtor used the proceeds from the sale of the unencumbered real property to purchase the personal property manufactured home and other personal property suggests that the debtor did not intend to conceal or transfer the property with fraudulent intent. This is because if the debtor had intended to conceal or transfer the property with fraudulent intent, she would have likely used the proceeds for a different purpose or tried to conceal the proceeds themselves.

Debtor believes the timing of the titling of the personal property manufactured home in the name of her single member LLC, in conjunction with the use of the proceeds from the sale of the unencumbered real property, shows that she did not have the requisite fraudulent intent to support a finding of a fraudulent transfer or concealment of assets.

Houser Bros, the park operator's claims under 727(a)(4)(a) should be denied for several reasons.

First, the park operator has no judgment against the debtor because of an unprosecuted unlawful detainer case. Despite being granted relief from stay, the park operator failed to set the unlawful detainer case for trial and instead filed a new unlawful detainer case. This failure to prosecute the original case demonstrates that the park operator lacked a valid basis for pursuing the claim in the first place.

Furthermore, the park operator has failed to comply with basic procedural requirements, such as filing a Notice of Related Cases and serving the second unlawful detainer case on the debtor. The failure to consolidate the two cases only adds to the confusion and further demonstrates the park operator's lack of diligence in pursuing its claims against the debtor.

Additionally, the park operator's claims appear to be nothing more than an attempt to circumvent state law governing the rights of tenants in manufactured home parks. By refusing to offer a lease agreement to the purchaser of an "in place" home, the park operator is attempting to deprive the debtor of her property rights and create a false claim of trespass. This is especially egregious considering the debtor applied for and received CA Covid 19 Rent Relief Money that was sent to the landlord, but the landlord refused to cash the check.

Therefore, based on the park operator's failure to prosecute the original unlawful detainer case, failure to comply with procedural requirements, and attempt to circumvent state law, the court should deny the park operator's claims under 727(a)(4)(a) and grant the debtor a —— discharge.

First, the debtor purchased the manufactured home "in place" from a homeowner under the seller lease agreement with the park. Housr Bros. the park operator refused to enter into a lease with the purchaser of the home they purchased "in place" and is now claiming that the debtor is trespassing by leaving the home in the park. However, the space 376 was permitted to Housing and Community Development to keep the home in the park, and thus, the park operator's claim of trespassing has no basis.

Furthermore, the park operator refused to offer a lease agreement to the purchaser of the "in place home," and thus, cannot claim any injury as a result of the debtor's presence in the park. Additionally, the park operator refused to cash the check from the CA Covid Rent Relief Program that was sent to them, which means they cannot claim any harm resulting from the debtor's inability to pay rent.
The debtor applied for and received CA Covid 19 Rent Relief Money that was sent to the landlord, and the landlord refused to cash the check, it is possible that the landlord is trying to claim that the debtor is still in arrears with rent payments and is trespassing on the property as a result.

The debtor demonstrated that she has made efforts to pay rent through the CA Covid 19 Rent Relief Program and that the landlord has refused to accept the payment, this may be a valid defense to any claim of trespassing or failure to pay rent.

The landlord's refusal to accept the rent relief payment constitutes a waiver of any claim for unpaid rent.  Houser Bros, the park operator is using the adversary proceeding to retaliate against the debtor for attempting to pay their rent through the rent relief program.

Possible affirmative defenses that the debtor asserts in addition to the arguments outlined in the previous paragraph could include:

Laches: The park operator unreasonably delayed in pursuing any legal action against the debtor for an extended period of time, causing prejudice to the debtor's ability to defend against the claims. This could be supported by the fact that the park operator had ample opportunity to pursue an unlawful detainer case or lease agreement with the debtor but failed to do so.

Unclean Hands: The park operator engaged in inequitable conduct, such as refusing to enter into a lease agreement or accepting rental payments, which prevented the debtor from complying with any alleged obligations. Additionally, the park operator's failure to cash the CA Covid Rent Relief Program check could be viewed as unclean hands.

Lack of Standing: The park operator lacks standing to object to the debtor's discharge because it has not suffered any actual injury or harm and has not obtained a judgment against the debtor. Furthermore, the park operator has not entered into a lease agreement with the debtor, and the debtor is not a trespasser because the manufactured home has been permitted by Housing and Community Development and is not removable without causing substantial damage.

Failure to Mitigate Damages: The park operator failed to mitigate its alleged damages by refusing to enter into a lease agreement or accept rental payments, which could have resolved any alleged breach of obligations. Furthermore, the park operator's failure to cash the CA Covid Rent Relief Program check could be viewed as a failure to mitigate damages.

Overall, Houser Bros, the park operator's claims lack merit and should be denied under 727(a)(4)(a) because they are not supported by any actual injury or harm caused by the debtor's actions. The debtor has not breached any obligations and has taken reasonable steps to resolve any alleged disputes, including applying for and receiving CA Covid 19 Rent Relief Money.

Houser Bros. the park operator refuse to offer a lease agreement to a purchaser of an "in place" home, and the home is permitted by Housing and Community Development, the park operator's claim that the purchaser is trespassing is unfounded. The purchaser of the home may have a valid claim of right to be on the property, as they are the owner of the manufactured home and Ryan receivved a permit from the appropriate agency upon installation in Rancho Del Rey.

In an adversary proceeding, the debtor could assert a defense of ownership and right to possession of the home based on the permit from Housing and Community Development. The refusal to offer a lease agreement is a violation of state law and constitutes an unfair business practice. Houser Bros, the park operator is using the adversary proceeding to harass the debtor and should be sanctioned by the court.

CONCLUSION:

The affirmative defense of waiver or estoppel in response to the park operator's claim of trespassing. Houser Bros Co, the landlord refused to accept payment of rent relief funds from the debtor, the landlord waived its right to object to the debtor's presence in the park or is estopped from claiming trespass because it refused to accept payment for rent owed.

The park operator's refusal to enter into a lease agreement with the purchaser of the "in place" home is a violation of state law, such as the Mobilehome Residency Law or the Unruh Civil Rights Act, and that the park operator's actions are discriminatory.

Houser Bros, the park operator's discrimination against the purchaser and refusal to offer a lease agreement is the reason for the alleged trespass and the basis for the park operator's attempt to object to the debtor's discharge under Section 727.

If the park operator does not have a lease agreement or rental agreement with the debtor and failed to prosecute an unlawful detainer case resulting in no judgment against the debtor, it may be difficult for the park operator to establish an injury or basis for objecting to the debtor's discharge.

In order to have standing to object to a debtor's discharge, the creditor must show that it has suffered an injury that is directly and proximately caused by the debtor's misconduct or actions. Without a lease or rental agreement or a judgment against the debtor, the park operator has not established to have suffered an injury as a result of the debtor's actions.

The affirmative defense that a debtor could potentially claim in response to an adversary complaint based on an unprosecuted Unlawful Detainer case is called "res judicata" or "claim preclusion."

Res judicata is a legal doctrine that prohibits the re-litigation of claims that have already been decided by a court of competent jurisdiction. If a claim has been litigated to a final judgment, the parties are precluded from re-litigating that claim in a subsequent proceeding.

In the context of an unprosecuted Unlawful Detainer case, the debtor may argue that the landlord's claims are precluded because they had the opportunity to pursue their claims in the Unlawful Detainer case, but failed to do so before the debtor filed for Chapter 7 bankruptcy. The debtor may argue that the landlord's claims are barred by res judicata because the issues were or could have been raised in the prior proceeding.

Debtor respectfully requests this honorable court to disregard the numbering,

The foregoing is signed under the penalty of perjury,

Dated this 10th day of May, 2023, at Huntington Beach, CA,

*Jamie Lynn Gallian*
JAMIE LYNN GALLIAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
5801 Skylab Road Huntington Beach, CA 92647.

A true and correct copy of the foregoing document entitled: **DEFENDANTS POST TRIAL BRIEFIN SUPPORT OF GRANTING DEBTORS DISCHARGE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 10, 2023**.  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR) lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
- **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on        I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 10, 2023 | Robert McLelland | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**