United States Bankruptcy Court

Central District of California

Houser Bros. Co.,

    Plaintiff

Gallian,

    Defendant

Adv. Proc. No. 21-01097-SC

# CERTIFICATE OF NOTICE

| District/off: 0973-8 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: May 23, 2023 | Form ID: pdf031 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 25, 2023:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/PDF: jamiegallian@gmail.com | May 24 2023 01:16:00 | Jamie Lynn Gallian, 16222 Monterey Ln SP #376, Huntington Beach, CA 92649-2258 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| pla | | Houser Bros. Co. |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 25, 2023        Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on May 23, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Bradford Barnhardt | on behalf of Plaintiff Houser Bros. Co. bbarnhardt@marshackhays.com bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com |
| D Edward Hays | on behalf of Plaintiff Houser Bros. Co. ehays@marshackhays.com ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com |
| Jeffrey I Golden (TR) | lwerner@go2.law  jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com |

District/off: 0973-8                                    User: admin                                    Page 2 of 2
Date Rcvd: May 23, 2023                              Form ID: pdf031                              Total Noticed: 1

Laila Masud

on behalf of Plaintiff Houser Bros. Co. lmasud@marshackhays.com  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

United States Trustee (SA)

ustpregion16.sa.ecf@usdoj.gov

TOTAL: 5

FILED & ENTERED

MAY 23 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br>Debtor(s). | Case No.:  8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>Adv No:  8:21-ap-01097-SC<br><br>**(1) ORDER DENYING MOTION TO AMEND AND VACATING HEARING;**<br>**(2) MEMORANDUM DECISION AFTER TRIAL REGARDING §727 CLAIMS; AND**<br>**(3) SETTING STATUS CONFERENCE ON REMAINING § 523 CLAIMS** |
| Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates,<br><br>Plaintiff(s),<br><br>v.<br><br>Jamie Lynn Gallian,<br><br>Defendant(s). | §727 Trial:<br>Date:        April 26, 2023<br>Time:        9:30 a.m.<br>Courtroom:  5C |

-1-

On April 26, 2023, a trial was held in the above captioned adversary proceeding ("April 26 Trial"). D. Edward Hays, Esq. and Bradford Barnhardt, Esq. appeared on behalf of Plaintiff Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Plaintiff"), as did Christopher Houser, who appeared and testified as Plaintiff's representative. Greg Buysman was also called as a witness by Plaintiff. Defendant Jamie Lynn Gallian ("Defendant" or "Debtor") appeared pro se and testified. All witnesses were cross-examined by the opposing party.

During trial, Plaintiff presented its case, seeking the denial of Defendant's discharge under 11 U.S.C. §§727(a)(2)(A), (a)(4), and (a)(5).[1] Plaintiff did not include a cause of action for §727(a)(2)(B)[2] in its complaint; however, after the parties had rested, and after the close of evidence, Plaintiff orally moved to amend the complaint to conform to the evidence presented at trial (i.e., Defendant's admissions of her attempts to perfect post-petition liens). While the Court permitted the parties to address §727(a)(2)(B) in their closing statements and post-trial briefs, it did so concurrently with the expressed requirement that Plaintiff file a written motion to amend, to be heard on regular notice, which would need to be granted before the Court would consider the inclusion of the new cause of action. Plaintiff filed its written motion to amend the complaint on May 10, 2023 [Dk. 76] ("Motion to Amend"), setting the matter for hearing on June 1, 2023. On May 18, 2023, Defendant filed her opposition [Dk. 79].[3]

Additionally, the Court granted Defendant the opportunity to file a supplemental

---

[1] The Court bifurcated Plaintiff's claims for relief under 11 U.S.C. § 523 and ordered that the trial would proceed only as it relates to Plaintiff's claims for relief under § 727. *See* Dk. 58.

[2] § 727(a)(2)(B) states: "The court shall grant the debtor a discharge, unless— (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(B) property of the estate, after the date of the filing of the petition."

[3] The Court notes that Defendant improperly raised the issue of standing by attaching what appears to be recycled from a prior pleading related to a motion for relief from stay filed earlier in the case. *See* Opposition to Motion to Amend filed May 17, 2023, Dk. 79, Pg. 9. The Court will address the issue of Plaintiff's standing herein, briefly, but not in connection with the motion to amend which is denied herein.

1  declaration accounting for her expenditures in greater detail, which Defendant provided

2  twice: on May 1, 2023 [Dk. 71] and May 8, 2023 [Dk. 73].[4] Moreover, the Court

3  requested post-trial briefs from both parties, which briefs were timely filed on May 10,

4  2023 [Dks. 74 and 77].

5      After considering the arguments of the parties, the pleadings filed prior to and

6  after trial, all evidence admitted during trial and based upon the discussion on the

7  record at trial, and for the reasons more fully explained below, the Court finds good

8  cause to enter the following order DENYING the Motion to Amend, VACATING the

9  hearing on the Motion to Amend, and rendering judgment in favor of Plaintiff and

10  against Defendant on each of its original § 727 causes of action (i.e., 11 U.S.C. §§

11  727(a)(2)(A), (a)(4) and (a)(5)).

12      **I.      Plaintiff's Standing**

13      As a preliminary matter, the Court finds that, contrary to the repeated assertions

14  of Defendant, Plaintiff has proper standing to pursue this action.

15      Under Section 727(c)(1), a creditor has standing to object to the granting of a

16  discharge under Section 727(a). *See* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or

17  the United States trustee may object to the granting of a discharge . . ."). A creditor is

18  defined under the Bankruptcy Code as an "entity that has a claim against the debtor that

19  arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §

20  101(10). A claim is a "right to a payment, whether or not such right is reduced to

21  judgment, liquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed,

22  legal, equitable, secured or unsecured." 11 U.S.C. § 101(5) (emphasis added).

23      Plaintiff is a creditor of Debtor's estate, having filed a proof of claim (Claim #3) on

24  October 23, 2022. That the facts underlying Plaintiff's claim against Debtor are disputed

25  by Debtor is insufficient to deprive Plaintiff of standing to bring this action. *See* S*paich v.*

26  *Smith (In re Spaich)*, 2005 Bankr. LEXIS 3431, at *3 (B.A.P. 9th Cir. 2005) ("[T]here is

27

28  [4] The latter filing contained improperly authenticated documentary evidence, presumably intended to
corroborate certain of the expenditures. The Court has reviewed and considered both documents, despite
the fact that both declarations were filed outside of the timeframe ordered by the Court.

1  nothing in the Code or the Rules which suggest that only creditors with proven claims

2  may file such an action, and case law suggests the contrary.") Moreover, "lack of injury

3  to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Retz v.*

4  *Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010). Accordingly, Defendant's

5  objections with regard to Plaintiff's standing to bring this action against her are

6  OVERRULED.

7      **II.**    **Plaintiff's Motion to Amend**

8      Rule 15(b)(2) of the Federal Rules of Civil Procedure (FRCP) is made applicable

9  to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy

10 Procedure (FRBP), and permits a party to "move – at any time, even after judgment – to

11 amend the pleadings to conform them to the evidence and to raise an unpleaded issue."

12 Fed. R. Civ. P. 15(b)(2).

13     "To amend a pleading under rule 15(b)(2) a party must show that an issue was

14 tried by the parties' express or implied consent… **and** that amendment would not cause

15 substantial prejudice to the opposing party." *Phila. Indem. Ins. Co. v. Danco Builders*,

16 2017 U.S. Dist. LEXIS 136338, at *9 (N.D. Cal. 2017) (internal citations and quotations

17 omitted) (emphasis added).

18     During Plaintiff's examination of Defendant at the April 26 Trial, Defendant

19 admitted to gifting post-petition liens against her residence to her son, granddaughter,

20 ex-husband, and roommate with the stated purpose of "getting her affairs in order."

21 Plaintiff seeks to amend its complaint to include a § 727(a)(2)(B) cause of action

22 because Defendant admitted certain facts at trial regarding post-petition liens. Plaintiff

23 appears to argue that Defendant impliedly consented to try the issue because

24 Defendant did not object to Plaintiff's counsel's questions regarding post-petition liens

25 during her examination, and Defendant addressed Plaintiff's allegations with regard to

26 the post-petition liens during the presentation of her defense. Plaintiff further argues that

27 Defendant articulated no prejudice which would result from Plaintiff's proposed

28 amendment, and that there would, in fact, be no prejudice to Defendant because *inter*

*alia*, the standard for denial of discharge is the same as § 727(a)(2)(A) (which cause of action was originally plead) except with respect to the timing of the disposition of estate property (i.e., before or after the petition date). In short, Plaintiff asserts that because § 727(a)(2)(B) is not "a wildly new legal theory", there is no prejudice to Defendant in addressing it herein. The Court disagrees.

The purpose of Rule 15(b) is to freely allow the pleadings to be amended "to reflect the actual issues upon which a case was tried." *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1012 (9th Cir. 2004). However, "[t]he rule does not permit amendments to include issues which may be inferentially suggested by incidental evidence in the record." *Consol. Data Terminals v. Applied Dig. Data Sys.*, 708 F.2d 385, 396 (9th Cir. 1983) (internal quotations omitted). [A] trial court may not base its decision upon an issue that was tried inadvertently." *Id.* at 397.

"An adverse party cannot be expected to object to the introduction of evidence that is only tangentially related to the issues actually pleaded prior to trial **unless** the party has notice that the evidence is being introduced as proof on some other unpleaded issue." *Id*. (emphasis added). Therefore, "to establish implied consent, the plaintiff must demonstrate that the defendant understood evidence had been introduced to prove the new issue and that the new issue had been directly addressed, not merely inferentially raised by incidental evidence." *Jaurigui v. Jaurugui (In re Swing House Rehearsal & Recording, Inc.)*, 2022 Bankr. LEXIS 702, at *4-5 (Bankr. C.D. Cal. 2022).

That Defendant did not object to questioning regarding the post-petition liens and that after her admissions regarding the post-petition liens, Defendant replied in her defense to Plaintiff's assertions raised in closing argument, is in this Court's view, insufficient to demonstrate that Defendant impliedly consented to try the §727(a)(2)(B) cause of action. It is Plaintiff's burden to demonstrate that Defendant understood at trial that the evidence was being introduced to prove §727(a)(2)(B) specifically, and that § 727(a)(2)(B) would be directly addressed. That was not the case here.

Plaintiff offers no explanation for why it did not seek to add this cause of action

1  until trial, except stating that "Debtor had not disclosed the post-petition transfers and

2  Houser Bros. only discovered them during the [adversary] case." Motion to Amend, Dk.

3  76, Pg. 3:8-12.[5] However, the Court notes that it was well-understood, before trial, that

4  the issue of Debtor's post-petition transfers would be raised. Plaintiff's trial brief

5  referenced such transfers as evidence supporting Plaintiff's §727(a)(2)**(A)** cause of

6  action. Plaintiff's Trial Brief filed February 9, 2023, Dk. 55, Pgs. 20:22-21:21 (emphasis

7  added). No mention of §727(a)(2)(B) was raised in that brief, despite Plaintiff's clear

8  knowledge of the transfers. Plaintiff and Defendant agreed to the admission of various

9  UCC Amendments (including Exhibit 14 evidencing the existence of post-petition liens

10  to Debtor's sons), in the pre-trial stipulation filed September 13, 2022 [Dk. 37, Pg. 18],

11  and Plaintiff's questioning at the April 26 Trial indicates that the pre-petition liens were

12  discussed in Defendant's pre-trial deposition, which Defendant testified occurred in

13  June of 2022. Trial transcript, Dk. 72, Pg. 88:2-25 and 74:22-24. While the

14  §§727(a)(2)(A) and (a)(2)(B) causes of action are similar, they are also distinct and

15  separate statutory grounds upon which to object to discharge. To allow Plaintiff to raise

16  the issue in connection with §727(a)(2)(A), and then merely summarize the facts

17  incidentally obtained therewith at the close of proceedings to pile on an additional, but

18  different, cause of action that had not been mentioned in the nearly 2 years leading up

19  to trial against Defendant is prejudicial, and not, in this Court's view, fitting with the

20  purpose of Rule 15(b).

21       For the foregoing reasons, Plaintiff has not met its burden. Accordingly, the

22  Motion to Amend is DENIED and the hearing VACATED.

23       **III.    April 26 Trial**

24       Trial on Plaintiff's operative complaint seeking the denial of Defendant's

25  discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(4) and (a)(5) was held on April 26, 2023.

26

27

28

---

[5] It is unclear precisely when Plaintiff became aware of the post-petition liens; however, the Court observes that the admitted post-petition liens were placed in September 2021 – well before the discovery deadline of March 31, 2022, and nearly two years before the April 26 Trial. *See* Order entered February 15, 2022, Dk. 16.

"Those objecting to discharge bear the burden of proving by a preponderance of the evidence that [the debtor's] discharge should be denied." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citing *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009). "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." *Id*. (citing *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1281 (9th Cir. 1996)).

During the April 26 Trial, which lasted one day,[6] evidence was introduced and

---

[6] The Court recognizes that the April 26 Trial was a long affair, beginning at 9:30 a.m., and concluding around 8:00 p.m. (with breaks). Given the seriousness of the allegations, and the lack of credibility of Defendant's testimony, the Court determined that conducting the trial in a single day was of paramount importance. A court's litigation decisions are reviewed for abuse of discretion. *See Sekera v. Allstate Ins. Co.*, 763 Fed. Appx. 629, 630 (9th Cir. 2019) ("We review a district court's decision concerning the management of litigation for abuse of discretion. *Preminger v. Peake*, 552 F.3d 757, 769 n.11 (9th Cir. 2008) (citing *FTC v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1212 (9th Cir. 2004)"). *See also Coe v. Fanday (In re Fanday)*, 538 Fed. Appx. 748, 749 (9th Cir. 2013) ("… bankruptcy court's management of Coe's questioning was far from an abuse of discretion. [internal citations omitted]). Such discretion is broad, and as noted by the Third Circuit, such discretion may include imposition of time limits at trial:

Notably, we have recognized that a district court may impose limits on the parties' presentation time at trial, so long as the court both "mak[es] an informed analysis based on a review of the parties' proposed witness lists and proffered testimony" and "allocates trial time evenhandedly." *Duquesne Light Co.*, 66 F.3d at 610. Other circuits have likewise concluded that a district court may, in its discretion, set reasonable trial time limits. S*ee, e.g., United States v. DeCologero*, 364 F.3d 12, 25 (1st Cir. 2004) ("[L]imits on witnesses and the time allowed to each side are permissible measures.") (citations omitted); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994) ("In the management of its docket, the court has an inherent right to place reasonable limitations on the time allotted to any given trial.") (citing *United States v. Reaves*, 636 F. Supp. 1575, 1577 (E.D. Ky. 1986)); *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997) ("[A] district court has broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative evidence.") (citing *Duquesne Light Co*., 66 F.3d at 609); *MCI Commc'ns Corp.*, 708 F.2d at 1172-73 (holding that reasonable trial time limits do not violate the right to a fair trial); *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987) ("Trial courts have discretion to place reasonable limits on the presentation of evidence . . . .") (citations omitted); *Gen. Signal Corp. v. MCI Telecomms. Corp*., 66 F.3d 1500, 1508 (9th Cir. 1995) ("Generally, a district court may impose reasonable time limits on a trial.") (citations omitted).

*In re Baldwin*, 700 F.3d 122, 129 (3rd Cir. 2012).

After the presentation of testimony at the April 26 Trial was complete, and in recognition of the parties' efforts throughout the day and in the interest of alleviating any perceptions of unfairness, the Court provided both parties the opportunity to file post-trial briefings containing argument summarizing the evidence proffered throughout the day. Moreover, Defendant was provided the opportunity to submit additional evidence, in the form of an accounting. As more fully noted herein, both parties took advantage

1 | both sides were presented the opportunity to provide written closing statements to the

2 | Court. Moreover, witness testimony was taken, during which the Court engaged in a

3 | credibility analysis. A credible witness is a witness who comes across as competent and

4 | worthy of belief. This Court determines witness credibility on many factors. The

5 | substance of the testimony is tantamount, as well as the amount of detail and the

6 | accuracy of recall of past events, which affect the Court's credibility determination.

7 | Witness contradiction plays a part in the credibility determination. How the testimony is

8 | delivered also has an impact. Factors which include body language, eye contact, and

9 | whether the responses are direct or appear to be evasive, unresponsive, or incomplete

10 | are considered by this Court. In addition, when deciding cases, the Court is permitted to

11 | take into consideration its knowledge and impressions founded upon experiences in

12 | everyday walks of life.

13 | Under this backdrop, the Court finds the testimony of Plaintiff's witnesses, Mr.

14 | Houser and Mr. Buysman, forthright and credible. On the other hand, the Court finds the

15 | testimony of Defendant not credible. In reaching these credibility determinations, the

16 | Court considered each witness's demeanor as they testified, including the way they held

17 | themselves, whether they made or did not make inconsistent statements, and their

18 | directness or evasiveness.

19 | Now, having reviewed all pleadings, considering the arguments of counsels, and

20 | having weighed the evidence admitted during the trial, the Court concludes that Plaintiff

21 | has met its burden as to each of the § 727 causes of action asserted in Plaintiff's

22 | operative complaint, as set forth in greater detail below.

23 | **a. 11 U.S.C. § 727(a)(2)(A)**

24 | Under § 727(a)(2)(A), a discharge shall be granted unless "the debtor, with intent

25 | to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of

26 | property under this title, has transferred, removed, destroyed, mutilated, or concealed,

27 | or has permitted to be transferred, removed, destroyed, mutilated, or concealed…

28 |

of the aforementioned opportunities.

-8-

property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).

"The term transfer 'means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." *Eckard Brandes, Inc. v. Riley (In re Riley)*, Nos. 01-4452, 02-00013 (citing 11 U.S.C. § 101(54)). "Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property." "The transfer to the corporation of assets in which the debtors had partnership interests constitutes a 'transfer' of 'property of the debtor' for purposes of section 727(a)." *Eckard Brandes, Inc. v. Riley (In re Riley)*, Nos. 01-4452, 02-00013, 2004 Bankr. LEXIS 1656, at *8-9 (Bankr. D. Haw. 2004) (internal quotations and citations omitted).

To satisfy intent, "the court must find that the Debtors harbored actual intent to hinder, delay, or defraud a creditor…The existence of this intent is a finding of fact reviewable for clear error. We may infer the intent from the circumstances surrounding the transaction." *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992). "A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (internal quotations and citations omitted).

"In examining the circumstances of a transfer under § 727(a)(2), certain 'badges of fraud' may support a finding of fraudulent intent. These factors, not all of which need be present, include (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the

1  Debtor's assets that the creditor has been hindered or delayed in recovering any part of

2  the judgment; and (6) that the Debtor received inadequate consideration for the

3  transfer." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (internal

4  quotations and citations omitted).

5       Moreover, "[u]nder the 'continuing concealment' doctrine, a transfer made and

6  recorded more than one year prior to filing may serve as evidence of the requisite act of

7  concealment where the debtor retains a secret benefit of ownership in the transferred

8  property within the year prior to filing." *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir.

9  1997).

10       The evidence presented at trial demonstrates that in late 2018 while Defendant

11  was engaged in state court lawsuits that could possibly result in money judgments

12  against her [Trial Transcript, Dk. 72, Pg. 43-51], she sold a residence held in her own

13  name and used the proceeds from that sale to purchase a mobile home.[7] Trial

14  Transcript, Dk. 72, Pg. 24- 27. Despite using proceeds that belonged to her individually,

15  she directed the seller to replace her name with the name of her solely owned and

16  managed company, J-Sandcastle Company, LLC. ("J-Sandcastle"), on the notice of sale

17  documentation.[8] Pre-trial stipulation, Dk. Paragraph 6; Trial Transcript, Dk. 72, Pg. 37-

18  40. She further testified that she directed the replacement of her name with J-

19  Sandcastle on November 15, 2018, days after a state court granted a motion for

20  attorney's fees against her. Trial Transcript, Dk. 72, Pg. 36-37 and 49-51. On the date of

21

22  _____

23  [7] As an example of Defendant's lack of credibility, she was unable to cogently describe the payments that were made to purchase the mobile home from the seller; the payments did not add up to the $185,000purchase price, which price Defendant further admitted was different from the $225,000 price

24  stated on the notice of sale. Trial Transcript, Dk. 72, Pg. 26-33. Defendant offered no explanation for the discrepancy and her failure to accurately describe the payments.

25

26  [8] Defendant's testimony regarding this issue was likewise an example of her lack of credibility. After initially testifying that she did not direct the seller to place title in the name of J-Sandcastle Company, LLC., [Trial Transcript, Dk. 72, Pg. 37], she later admitted that her name was previously listed on the document and that she did, in fact, later ask the seller to replace her own name with J-Sandcastle

27  Company, LLC. as the buyer. Trial Transcript, Dk. 72, Pg. 39-40. Moreover, later in the trial, when asked by the Court to confirm that she purchased the property with her own money and put it in the name of J-

28  Sandcastle, she initially answered in the negative, conceding only after continued questioning and reminders of that to which she had previously testified. Trial Transcript, Dk. 72, Pg. 323-325.

1   Debtor's petition, July 9, 2021, the property was still being held in the name of J-

2   Sandcastle, and not in Defendant's name.

3         The Court observes that this act alone (i.e., Defendant directing title to the

4   property she purchased to be placed in the name of her wholly owned entity) is rife with

5   multiple badges of fraud, including Defendant's close relationship to the entity she

6   directed title to, the timing of providing such direction in light of pending litigation, and

7   the lack of consideration involved. It is clear to the Court that Defendant placed her

8   asset into the name of J-Sandcastle for the purpose of protecting her asset,[9] effectively

9   hindering, delaying, and defrauding her potential creditors from reaching the property.

10  Moreover, Defendant's strategy of concealing this asset continued through the petition

11  date, satisfying the elements of § 727(a)(2)(A).

12        Additionally, facts were presented to the Court demonstrating that Defendant

13  further concealed her equity in the property through the granting of liens to her business

14  entities and family members, which liens existed during the relevant time period. For

15  example, in late 2018, Defendant also executed a promissory note and security

16  agreement on the mobile home by and between two entities that she managed, J-

17  Sandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the

18  lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported

19  loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72,

20  Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in

21  the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until

22  approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.[10] None of the

23  _____

24  [9] Defendant testified that she "didn't believe that putting a home in an LLC that I owned solely was doing
    anything wrong" and that "[a]t the time when the home was transferred, or registered, to so speak, in the

25  LLC's name, [her] potential exposure was…$46,138 and $3,070." Trial Transcript, Dk. 72, Pg. 328:5-13.
    In short, Defendant testified that she thought that it was her money, and that she could do what she

26  wanted with it. *Id.* The Court finds this testimony to be unpersuasive in light of the deflective and
    incredible manner that Defendant answered questions related to the transfers, as well as the pending

27  lawsuits and her general financial situation at the time of the transfers.

28  [10] The Court notes that Defendant's inability to account for the specific amounts paid and timing of said
    payments during her testimony further underscores her lack of credibility. Trial Transcript, Dk. 72, Pg. 65-
    66.

1    foregoing information regarding the timing of funding, or source of funding, was

2    reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a

3    secured creditor, continuing the ongoing concealment of her true interest in the loan.

4    Additionally, within the year prior to the petition, liens in favor of Defendant's two adult

5    sons, Steven and Brian Gallian, were placed on the property, despite the fact that

6    neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.

7         While Defendant attempted to provide explanations for the foregoing to the Court

8    *in camera* and on the record, the Court finds such explanations to be insufficient to

9    refute the overwhelming evidence demonstrating that Defendant had the requisite intent

10   to hinder, delay, or defraud her creditor, when she transferred and concealed her

11   interests in the property described above.

12        Accordingly, Plaintiff is entitled to judgment against Defendant on its §

13   727(a)(2)(A) cause of action.

14          **b.  11 U.S.C. § 727(a)(4)**

15        Under § 727(a)(4), a debtor's discharge shall be granted unless "the debtor

16   knowingly and fraudulently, in or in connection with the case – (A) made a false oath or

17   account." To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a

18   preponderance of the evidence, that: "(1) the debtor made a false oath in connection

19   with the case; (2) the oath related to a material fact; (3) the oath was made knowingly;

20   and (4) the oath was made fraudulently." *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

21   1197 (9th Cir. 2010).

22        A false oath can be made in written submissions to the Court or under oath at a §

23   341 meeting, deposition, or trial:

24          "A debtor's petition, schedules, statement of financial affairs, statements made at
       a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004

25          examination, and answers to interrogatories all constitute statements under oath
       for purposes of § 727(a)(4)[(A)]. The same holds true for deposition testimony

26          and testimony at other hearings during the course of the bankruptcy case. The
       false oath also need not be an affirmative misstatement; knowing and fraudulent

27          omissions will also suffice."

28

-12-

*In re Jayme*, 2018 Bankr. LEXIS 1987, 2018 WL 3218104, at *9 (Bankr. D.N.M.) (internal citations omitted).

Moreover, the standard for what constitutes a "material" fact is very broad. As stated by the Ninth Circuit, "[a] fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. An omission or misstatement that detrimentally affects administration of the estate is material." *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1198 (9th Cir. 2010) (internal quotations and citations omitted); *See also Joudeh v. Truppa (In re Truppa*), 2017 Bankr. LEXIS 1157, at *1 (B.A.P. 9th Cir. 2017).

In the context of § 727(a)(4), a distinction is made between reckless disregard for the truth, which is sufficient to form intent under the statute, and mere mistake or inadvertence, which is not. *Retz v. Samson (In re Retz*), 606 F.3d 1189, 1199 (9th Cir. 2010) ("Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent."). Something more must be presented in order to meet the standard.

> "Neither sloppiness nor an absence of effort by the debtor supports, by itself, an inference of fraud. Courts which hold otherwise are simply devising a court-made prophylactic rule that the debtor must make substantial effort to provide accurate and complete schedules. Had the Congress intended to make such a rule, it could have done so easily, as it did with § 727(a)(3) (failure to keep adequate books and records), and (a)(5) (failure to adequately explain the loss of assets), neither of which have an express element of fraudulent intent. [Citation omitted.] But the Congress did not do so, and it is not for the courts to create new bars to discharge under § 727(a), or to so distort a requisite element as to make it no element at all. The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. **For instance, multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal."**

*Khalil v. Developers Sur. & Indem. Co. (In re Khalil*), 379 B.R. 163, 174-75 (B.A.P. 9th

1  Cir. 2007) (citing *Coombs*, 193 B.R. at 565-66) (emphasis added).

2        In keeping with the foregoing, a pattern of half-truths, inconsistencies, and

3  omissions in filed schedules, even if the schedules are ultimately amended to reflect the

4  true assets of the debtor, can be sufficient evidence of fraudulent intent under the

5  statute. *See Joudeh v. Truppa (In re Truppa*), No. CC-16-1281-KuFL, 2017 Bankr.

6  LEXIS 1157, at *1 (B.A.P. 9th Cir. 2017) ("the court may infer fraudulent intent based on

7  a 'pattern of falsity.'"); *Trainor v. Evans (In re Evans*), No. CC-16-1356-KuFTa, 2017

8  Bankr. LEXIS 2232, at *1 (B.A.P. 9th Cir. 2017) (noting that "a pattern of falsity, a

9  reckless indifference to the truth and a failure to amend bankruptcy commencement

10  documents to correct known errors and omissions all can be probative of intent to

11  deceive"); *Cummings v. UST- United States Trustee (In re Cummings*), 595 Fed. Appx.

12  707, 709-710 (9th Cir. 2015) ("Debtors' eventual disclosure of their interest … does not

13  negate their initial fraud… To the contrary, the sequence of debtors' filings substantiates

14  the presence of fraud: they elected, twice, to amend their [schedules], and disclosed

15  [the omitted fact] only after the issuance of an order granting the Trustee additional time

16  to investigate."); *ML Manager, LLC v. Pinsonneault (In re Pinsonneault*), 2017 Bankr.

17  LEXIS 253, *38 (Bankr. S.D. Cal 2017) ("A false oath is complete when made. A

18  debtor's eventual amendment of their schedules to disclose assets that they knowingly

19  omitted does not negate their initial intent to defraud....The very nature and magnitude

20  of the assets belies the too facile defense that they were simply overlooked or

21  forgotten."). *See also Jin Min Lee v. Joo Yoon Yeom (In re Joo Yoon Yeom),* 2017 U.S.

22  Dist. LEXIS 177347, *10-11 (No. Mariana Isl. DC 2017) ("This repeated failure not only

23  demonstrates a conscious decision to omit the information from the bankruptcy filing

24  and therefore establishes the false oath was made knowingly, but it also demonstrates

25  an intent to deceive. Defendant's interest in the business was significant—first as half-

26  owner and later as full owner—and her recurring failure to disclose it, especially given

27  that she agreed to become the full owner of the Poseidon Bar after she filed for

28  bankruptcy, demonstrates that she intended to deceive her creditors.").

Since July 9, 2021, Debtor has filed 10 sets of schedules in this case. In the first five of the amended schedules, which were filed over a span of approximately 2 months, Debtor disclosed her interest in J-Pad as "33.33%" [First Amended Schedule filed September 7, 2021, Dk. 15], then "1/7 interest" [Second Amended Schedule filed September 22, 2021, Dk. 16-17], then "70%" [Third Amended Schedule filed October 14, 2021, Dk. 22], then "33-1/3%" [Fourth Amended Schedule filed November 16, 2021, Dk. 37], then "100%" [Fifth Amended Schedule filed November 22, 2021, Dk. 38].

Despite the foregoing, Defendant testified at trial that as of October 30, 2018, she owned 100% of J-Pad.[11] Trial Transcript, Dk. 72, Pg. 154. Her explanation for the varying amounts of interest scheduled over the short period of time was that she owed people money and made a mistake. Trial Transcript, Dk. 72, Pg. 153. The Court is unconvinced. Defendant owns and/or manages multiple companies, and has presented herself though the pendency of her case as a person that is not unsophisticated. It is

---

[11] The Court notes that Defendant was at first non-responsive to questioning about her ownership of J-Pad. It was not until the Court reminded Defendant that her credibility was on trial, and that she had earlier provided testimony of her ownership, that she answered the question regarding her ownership of J-Pad. Trial Transcript, Dk. 72, Pg. 153-154.

> THE COURT: … Why were you making all of these random -- putting down all these random numbers?
> THE WITNESS: Because I owed people money.
> THE COURT: Why were you putting down all of those random numbers? We know you owed people money. Why were you saying they owned part of that membership?
> THE WITNESS: I guess I made a mistake, and at the time –
> THE COURT: So you just don't know? I'm really looking at your credibility. You've signed several documents, including your first petition, under oath, that it was true and correct, not to the best of your ability, but that it was true and correct, and yet you can't tell me today how much of that percentage you owe, although you've already testified several times today that you own 100 percent?
> THE WITNESS: That's correct.
> THE COURT: Okay. When do you think you started owning 100 percent?
> THE WITNESS: And these aren't in the documents, I don't believe. I didn't see it.
> THE COURT: I don't care if they are. When did you start believing you owned 100 percent of that LLC?
> THE WITNESS: When I was the one that donated most of the money.
> THE COURT: When did you do that?
> THE WITNESS: It wasn't recorded, but the day before I –
> THE COURT: When did you do that?
> THE WITNESS: The 30th of October.
> THE COURT: What year?
> THE WITNESS: 2018.

1  wholly unbelievable to the Court that Defendant, with her ability and knowledge,

2  somehow did not understand her ownership interest in J-Pad or her obligation to report

3  accurate ownership interests in her schedules. As noted previously, J-Pad was the

4  holder of a $22,000 promissory note. Defendant herself executed the promissory note

5  on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a

6  significant amount of money, and Defendant's failure to properly schedule her interest in

7  J-Pad, the note and lienholder of a significant asset, is a material, false oath made

8  knowingly and fraudulently. So too was Defendant's failure to schedule a value for J-

9  Pad, who held a significant asset in the form of the aforementioned note and lien on the

10  mobile home.

11       The foregoing, coupled with the evidence presented by Plaintiff of Defendant's

12  other glaring omissions and false oaths,[12] are sufficient to demonstrate that Plaintiff is

13  entitled to judgment against Defendant on its § 727(a)(4) cause of action.

14                    **c.  11 U.S.C. § 727(a)(5)**

15       Under § 727(a)(5), a debtor's discharge may be denied if the debtor has failed to

16  explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's

17  liabilities. 11 U.S.C. § 727(a)(5).

18       The plaintiff bears the burden to demonstrate that: "(1) debtor at one time, not too

19  remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the

20  bankruptcy petition was filed or order of relief granted, the debtor no longer owned the

21  assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an

22  adequate explanation for the disposition of the assets." *In re Retz*, 606 F.3d 1189, 1205

23  (9th Cir. 2010). "Once the creditor has made a *prima facie* case, the debtor must offer

24  credible evidence regarding the disposition of the missing assets." *Id.*

25       As previously noted, several years before her petition was filed, Defendant sold

26

27  _____

[12] *See* Plaintiff's post-trial brief filed May 10, 2023, Dk. 74, which is incorporated herein. For example, Defendant testified that she did not pay rent to J-Sandcastle, despite having previously testified during her deposition that she did pay rent. Trial Transcript, Dk. 72, Pg. 129. After some hesitation and continued follow up questions from the Court, Defendant ultimately admitted that she lied at the deposition about whether she paid rent to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 130-131.

28

property for $379,000. Trial Transcript, Dk. 72, Pg. 201. Thereafter, she spent a total of

$165,000[13] of the sale proceeds to purchase a mobile home, with $214,000 remaining.

At trial, when asked about the disposition of the remaining $214,000 in sale proceeds,

Defendant testified that she loaned $175,000 of the $214,000 to J-Sandcastle. Trial

Transcript, Dk. 72, Pg. 202. Defendant further testified that the remainder of the funds

were converted to cashier's checks that were ultimately paid to attorneys. Trial

Transcript, Dk. 72, Pg. 206. Defendant originally testified that she spent close to

$150,000 on attorneys [Trial Transcript, Dk. 72, Pg. 206], despite scheduling only

$113,700 on her bankruptcy schedules. Trial Transcript, Dk. 72, Pg. 207. At trial,

Defendant was unable to account for the approximately $37,000 discrepancy. Trial

Transcript, Dk. 72, Pg. 207-209.  When questioned about the discrepancy, Defendant

began to list other expenses that she incurred, including cosmetic and medical

procedures, which the Court perceived as being non-responsive to the question of

which attorneys were paid the remaining $37,000. Trial Transcript, Dk. 72, Pg. 208.

Eventually, Defendant clarified that she "just threw out a number and said about

$150,000," [Trial Transcript, Dk. 72, Pg. 210], and that she misspoke, stating again that

she spent the remaining funds on cosmetic and medical procedures.

Finding that Plaintiff had met its burden to demonstrate a *prima facie* case, and

that the entirety of Defendant's testimony on this matter was confusing and entirely

lacking in credibility, the Court provided the Debtor with the opportunity to file a

complete accounting by April 28, 2023, at 5 p.m. in order to explain further the

disposition of the pre-petition sale proceeds.

Defendant did not timely file a complete accounting by the deadline set by the

Court; however, Defendant did file an untimely declaration on May 1, 2023 [Dk. 71]

("First Declaration"), and again on May 8, 2023 [Dk. 73] ("Second Declaration")

(together, "Declarations"). In the interest of justice, and in recognition that Defendant is

---

[13] Defendant testified that a cashier's check for $20,000 (of the $185,000 purchase price) was returned to her, so the net cost of Defendant's purchase of the mobile home was $165,000. Trial Transcript, Dk. 72, Pg. 201.

1  a pro-se litigant without permissions to electronically file, the Court has considered the

2  Declarations despite the fact that they were untimely filed. Regrettably, they are

3  insufficient to adequately explain the disposition of Debtor's assets.

4      The Declarations contain a rudimentary and incomplete[14] accounting which is

5  entirely unhelpful to the Court. The lists contained therein have no dates, partial

6  descriptions, and appear to be summary values (all ending in -.00). Moreover, the

7  Declarations are completely devoid of properly authenticated evidence.[15] Lastly, even if

8  the foregoing issues were somehow resolved, the accounting provided is entirely

9  inconsistent with the testimony provided by Defendant at trial and in the Declarations

10  themselves.

11      For example, at trial, when asked about the disposition of the $379,000 in sale

12  proceeds, Defendant testified that $165,000 was spent on the mobile home, [Trial

13  Transcript, Dk. 72, Pg. 201], and $175,000 of the remaining $214,000 was paid to J-

14  Sandcastle. Trial Transcript, Dk. 72, Pg. 202. The accounting attached to Pg. 3 of the

15  First Declaration, which appears identical to the accounting attached to the Second

16  Declaration as Pg. 12, amounts to approximately $190,000 in charges, but does not

17  include either the $165,000 spent on the mobile home or the $175,000 paid to J-

18  Sandcastle.[16] It is not mathematically possible that Defendant used sale proceeds

19  totaling $395,000 on a $175,000 loan, a $165,000 mobile home, **and** the $190,000

20  contained in her accountings (all of which total $530,000).

21      As noted above, Defendant was required to offer "credible evidence regarding

22  the disposition of the missing assets." *In re Retz*, 606 F.3d 1189, 1205 (9th Cir. 2010).

23

---

24  [14] Paragraph 5 of the Declarations state that: "THE LIST IS NOT AN EXHUASTIVE LIST OF THE SALE
PROCEEDS SPENT…" Declarations filed May 1, 2023, and May 8, 2023, Dks. 71 and 73 respectively.

25

26  [15] While Defendant attached various documents to the Second Declaration, the documents are
cumbersome, lack any explanation as to relevance, and are not properly authenticated by Defendant's
declaration. Pursuant to the Federal Rules of Evidence, in order "[t]o satisfy the requirement of
authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to

27  support a finding that the item is what the proponent claims it is." Fed. Rules Evid. R 901. Defendant did
not do so.

28

[16] $395,000 less approximately $190,000 = approximately $205,000.

-18-

She has not met her burden. Therefore, Plaintiff is entitled to judgment against Defendant on its § 727(a)(5) cause of action.

**IV.    Conclusion**

For the reasons more fully explained herein, the Court finds good cause to enter the following order DENYING the Motion to Amend, VACATING the hearing on the Motion to Amend, and finding in favor of Plaintiff and against Defendant pursuant to 11 U.S.C. §§727(a)(2)(A), (a)(4), and (a)(5). Judgment, however, cannot yet be issued as there remain pending § 523 claims. Accordingly, the Court hereby sets a status conference on June 27, 2023, at 1:30 p.m., with a status report due 14 days in advance. The status report must advise the Court how the parties wish to proceed in light of the issuance of this Memorandum Decision.

**IT IS SO ORDERED.**

Date: May 23, 2023

Scott C. Clarkson
United States Bankruptcy Judge