| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JAMIE LYNN GALLIAN<br>16222 MONTEREY LANE UNIT 376<br>HUNTINGTON BEACH, CA 92649<br>(714)321-3449<br>JAMIEGALLIAN@GMAIL.COM<br><br><br>☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

</div>

| In re:<br>JAMIE LYNN GALLIAN,<br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:21-bk-11710-SC<br><br>ADVERSARY NO.:   8:21-ap-01097-SC<br>(*if applicable*)<br><br>CHAPTER: 7 |
|---|---|
| HOUSER BROS CO., A CALIFORNIA LIMITED PARTNERSHIP DBA RANCHO DEL REY MOBILEHOME ESTATES; HOUSER BROTHERS CO, A GENERAL PARTNERSHIP; ERIC HOUSER, GENERAL PARTNER; CRAIG HOUSER, GENERAL PARTNER<br><div align="center">Plaintiff(s) (*if applicable*).</div><div align="center">vs.</div><br>JAMIE LYNN GALLIAN<br><br><br><div align="center">Defendant(s) (*if applicable*).</div> | <br><br><div align="center">**NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION**</div> |

**Part 1:  Identify the appellant(s)**

1.   Name(s) of appellant(s):  JAMIE LYNN GALLIAN

2.   Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐  Plaintiff
☒  Defendant
☐  Other (*describe*):

For appeals in a bankruptcy case and not in an  adversary proceeding.
☐  Debtor
☐  Creditor
☐  Trustee
☐  Other (*describe*):

## Part 2:  Identify the subject of this appeal

1.  Describe the judgment, order, or decree appealed from:   ADV. NO. 8:21-ap-01097-SC
    DOC 82  Filed & Entered May 23 2023 - (2)  Memorandum Decision After Trial Regarding §727 Claims.

2.  The date the judgment, order, or decree was entered:   05/23/2023

## Part 3:  Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1.  Party:  Houser Bros Co. a California limited Partnership, dba Del Rey Mobile Home Estates

    Attorney:

    D. EDWARD HAYS - ehays@marshackhays.com
    LAILA MASUD - lmasud@marshackhays.com
    BRADFORD N. BARNHARDT - bbarnhardt@marshackhays.com
    MARSHACK HAYS LLP
    870 Roosevelt Irvine, CA 92620
    Telephone: (949) 333-7777

2.  Party: Houser Brothers Co, A General Partnership
    Eric Houser, Esq. General Partner; Craig Houser, General Partner

    D. EDWARD HAYS, #162507
    ehays@marshackhays.com
    LAILA MASUD, #311731
    lmasud@marshackhays.com
    BRADFORD N. BARNHARDT, #328705 bbarnhardt@marshackhays.com
    MARSHACK HAYS LLP
    870 Roosevelt Irvine, CA 92620
    Telephone: (949) 333-7777

## Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5:  Sign below

*Jamie Lynn Gallian*                                         Date:                   05/29/2023
Signature of attorney for appellant(s) (or appellant(s) if not
represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

**EXHIBIT 1**



FILED & ENTERED

MAY 23 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte       DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br><br>Debtor(s). | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>Adv No: 8:21-ap-01097-SC<br><br>**(1) ORDER DENYING MOTION TO AMEND AND VACATING HEARING;**<br>**(2) MEMORANDUM DECISION AFTER TRIAL REGARDING §727 CLAIMS; AND**<br>**(3) SETTING STATUS CONFERENCE ON REMAINING § 523 CLAIMS** |
| Houser Bros. Co., dba Rancho Del Rey<br>Mobile Home Estates,<br><br><br>Plaintiff(s),<br><br>   v.<br><br>Jamie Lynn Gallian,<br><br><br>Defendant(s). | §727 Trial:<br>Date:        April 26, 2023<br>Time:        9:30 a.m.<br>Courtroom:   5C |

-1-

On April 26, 2023, a trial was held in the above captioned adversary proceeding ("April 26 Trial"). D. Edward Hays, Esq. and Bradford Barnhardt, Esq. appeared on behalf of Plaintiff Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Plaintiff"), as did Christopher Houser, who appeared and testified as Plaintiff's representative. Greg Buysman was also called as a witness by Plaintiff. Defendant Jamie Lynn Gallian ("Defendant" or "Debtor") appeared pro se and testified. All witnesses were cross-examined by the opposing party.

During trial, Plaintiff presented its case, seeking the denial of Defendant's discharge under 11 U.S.C. §§727(a)(2)(A), (a)(4), and (a)(5).[1] Plaintiff did not include a cause of action for §727(a)(2)(B)[2] in its complaint; however, after the parties had rested, and after the close of evidence, Plaintiff orally moved to amend the complaint to conform to the evidence presented at trial (i.e., Defendant's admissions of her attempts to perfect post-petition liens). While the Court permitted the parties to address §727(a)(2)(B) in their closing statements and post-trial briefs, it did so concurrently with the expressed requirement that Plaintiff file a written motion to amend, to be heard on regular notice, which would need to be granted before the Court would consider the inclusion of the new cause of action. Plaintiff filed its written motion to amend the complaint on May 10, 2023 [Dk. 76] ("Motion to Amend"), setting the matter for hearing on June 1, 2023. On May 18, 2023, Defendant filed her opposition [Dk. 79].[3]

Additionally, the Court granted Defendant the opportunity to file a supplemental

---

[1] The Court bifurcated Plaintiff's claims for relief under 11 U.S.C. § 523 and ordered that the trial would proceed only as it relates to Plaintiff's claims for relief under § 727. *See* Dk. 58.

[2] § 727(a)(2)(B) states: "The court shall grant the debtor a discharge, unless— (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(B) property of the estate, after the date of the filing of the petition."

[3] The Court notes that Defendant improperly raised the issue of standing by attaching what appears to be recycled from a prior pleading related to a motion for relief from stay filed earlier in the case. *See* Opposition to Motion to Amend filed May 17, 2023, Dk. 79, Pg. 9. The Court will address the issue of Plaintiff's standing herein, briefly, but not in connection with the motion to amend which is denied herein.

1  declaration accounting for her expenditures in greater detail, which Defendant provided

2  twice: on May 1, 2023 [Dk. 71] and May 8, 2023 [Dk. 73].[4] Moreover, the Court

3  requested post-trial briefs from both parties, which briefs were timely filed on May 10,

4  2023 [Dks. 74 and 77].

5       After considering the arguments of the parties, the pleadings filed prior to and

6  after trial, all evidence admitted during trial and based upon the discussion on the

7  record at trial, and for the reasons more fully explained below, the Court finds good

8  cause to enter the following order DENYING the Motion to Amend, VACATING the

9  hearing on the Motion to Amend, and rendering judgment in favor of Plaintiff and

10  against Defendant on each of its original § 727 causes of action (i.e., 11 U.S.C. §§

11  727(a)(2)(A), (a)(4) and (a)(5)).

12      **I.**    **Plaintiff's Standing**

13       As a preliminary matter, the Court finds that, contrary to the repeated assertions

14  of Defendant, Plaintiff has proper standing to pursue this action.

15       Under Section 727(c)(1), a creditor has standing to object to the granting of a

16  discharge under Section 727(a). *See* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or

17  the United States trustee may object to the granting of a discharge . . ."). A creditor is

18  defined under the Bankruptcy Code as an "entity that has a claim against the debtor that

19  arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §

20  101(10). A claim is a "right to a payment, whether or not such right is reduced to

21  judgment, liquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed,

22  legal, equitable, secured or unsecured." 11 U.S.C. § 101(5) (emphasis added).

23       Plaintiff is a creditor of Debtor's estate, having filed a proof of claim (Claim #3) on

24  October 23, 2022. That the facts underlying Plaintiff's claim against Debtor are disputed

25  by Debtor is insufficient to deprive Plaintiff of standing to bring this action. *See* S*paich v.*

26  *Smith (In re Spaich)*, 2005 Bankr. LEXIS 3431, at *3 (B.A.P. 9th Cir. 2005) ("[T]here is

27

28    [4] The latter filing contained improperly authenticated documentary evidence, presumably intended to
corroborate certain of the expenditures. The Court has reviewed and considered both documents, despite
the fact that both declarations were filed outside of the timeframe ordered by the Court.

nothing in the Code or the Rules which suggest that only creditors with proven claims

may file such an action, and case law suggests the contrary.") Moreover, "lack of injury

to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Retz v.*

*Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010). Accordingly, Defendant's

objections with regard to Plaintiff's standing to bring this action against her are

OVERRULED.

## II.    Plaintiff's Motion to Amend

Rule 15(b)(2) of the Federal Rules of Civil Procedure (FRCP) is made applicable

to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy

Procedure (FRBP), and permits a party to "move – at any time, even after judgment – to

amend the pleadings to conform them to the evidence and to raise an unpleaded issue."

Fed. R. Civ. P. 15(b)(2).

"To amend a pleading under rule 15(b)(2) a party must show that an issue was

tried by the parties' express or implied consent… **and** that amendment would not cause

substantial prejudice to the opposing party." *Phila. Indem. Ins. Co. v. Danco Builders*,

2017 U.S. Dist. LEXIS 136338, at *9 (N.D. Cal. 2017) (internal citations and quotations

omitted) (emphasis added).

During Plaintiff's examination of Defendant at the April 26 Trial, Defendant

admitted to gifting post-petition liens against her residence to her son, granddaughter,

ex-husband, and roommate with the stated purpose of "getting her affairs in order."

Plaintiff seeks to amend its complaint to include a § 727(a)(2)(B) cause of action

because Defendant admitted certain facts at trial regarding post-petition liens. Plaintiff

appears to argue that Defendant impliedly consented to try the issue because

Defendant did not object to Plaintiff's counsel's questions regarding post-petition liens

during her examination, and Defendant addressed Plaintiff's allegations with regard to

the post-petition liens during the presentation of her defense. Plaintiff further argues that

Defendant articulated no prejudice which would result from Plaintiff's proposed

amendment, and that there would, in fact, be no prejudice to Defendant because *inter*

1    *alia*, the standard for denial of discharge is the same as § 727(a)(2)(A) (which cause of

2    action was originally plead) except with respect to the timing of the disposition of estate

3    property (i.e., before or after the petition date). In short, Plaintiff asserts that because §

4    727(a)(2)(B) is not "a wildly new legal theory", there is no prejudice to Defendant in

5    addressing it herein. The Court disagrees.

6        The purpose of Rule 15(b) is to freely allow the pleadings to be amended "to

7    reflect the actual issues upon which a case was tried." *Prieto v. Paul Revere Life Ins.*

8    *Co.*, 354 F.3d 1005, 1012 (9th Cir. 2004). However, "[t]he rule does not permit

9    amendments to include issues which may be inferentially suggested by incidental

10   evidence in the record." *Consol. Data Terminals v. Applied Dig. Data Sys.*, 708 F.2d

11   385, 396 (9th Cir. 1983) (internal quotations omitted). [A] trial court may not base its

12   decision upon an issue that was tried inadvertently." *Id.* at 397.

13       "An adverse party cannot be expected to object to the introduction of evidence

14   that is only tangentially related to the issues actually pleaded prior to trial **unless** the

15   party has notice that the evidence is being introduced as proof on some other

16   unpleaded issue." *Id.* (emphasis added). Therefore, "to establish implied consent, the

17   plaintiff must demonstrate that the defendant understood evidence had been introduced

18   to prove the new issue and that the new issue had been directly addressed, not merely

19   inferentially raised by incidental evidence." *Jaurigui v. Jaurugui (In re Swing House*

20   *Rehearsal & Recording, Inc.)*, 2022 Bankr. LEXIS 702, at *4-5 (Bankr. C.D. Cal. 2022).

21       That Defendant did not object to questioning regarding the post-petition liens and

22   that after her admissions regarding the post-petition liens, Defendant replied in her

23   defense to Plaintiff's assertions raised in closing argument, is in this Court's view,

24   insufficient to demonstrate that Defendant impliedly consented to try the §727(a)(2)(B)

25   cause of action. It is Plaintiff's burden to demonstrate that Defendant understood at trial

26   that the evidence was being introduced to prove §727(a)(2)(B) specifically, and that §

27   727(a)(2)(B) would be directly addressed. That was not the case here.

28       Plaintiff offers no explanation for why it did not seek to add this cause of action

1   until trial, except stating that "Debtor had not disclosed the post-petition transfers and

2   Houser Bros. only discovered them during the [adversary] case." Motion to Amend, Dk.

3   76, Pg. 3:8-12.[5] However, the Court notes that it was well-understood, before trial, that

4   the issue of Debtor's post-petition transfers would be raised. Plaintiff's trial brief

5   referenced such transfers as evidence supporting Plaintiff's §727(a)(2)**(A)** cause of

6   action. Plaintiff's Trial Brief filed February 9, 2023, Dk. 55, Pgs. 20:22-21:21 (emphasis

7   added). No mention of §727(a)(2)(B) was raised in that brief, despite Plaintiff's clear

8   knowledge of the transfers. Plaintiff and Defendant agreed to the admission of various

9   UCC Amendments (including Exhibit 14 evidencing the existence of post-petition liens

10  to Debtor's sons), in the pre-trial stipulation filed September 13, 2022 [Dk. 37, Pg. 18],

11  and Plaintiff's questioning at the April 26 Trial indicates that the pre-petition liens were

12  discussed in Defendant's pre-trial deposition, which Defendant testified occurred in

13  June of 2022. Trial transcript, Dk. 72, Pg. 88:2-25 and 74:22-24. While the

14  §§727(a)(2)**(A)** and (a)(2)**(B)** causes of action are similar, they are also distinct and

15  separate statutory grounds upon which to object to discharge. To allow Plaintiff to raise

16  the issue in connection with §727(a)(2)(A), and then merely summarize the facts

17  incidentally obtained therewith at the close of proceedings to pile on an additional, but

18  different, cause of action that had not been mentioned in the nearly 2 years leading up

19  to trial against Defendant is prejudicial, and not, in this Court's view, fitting with the

20  purpose of Rule 15(b).

21          For the foregoing reasons, Plaintiff has not met its burden. Accordingly, the

22  Motion to Amend is DENIED and the hearing VACATED.

23          **III.    April 26 Trial**

24          Trial on Plaintiff's operative complaint seeking the denial of Defendant's

25  discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(4) and (a)(5) was held on April 26, 2023.

26

27  ───────────────

28  [5] It is unclear precisely when Plaintiff became aware of the post-petition liens; however, the Court
    observes that the admitted post-petition liens were placed in September 2021 – well before the discovery
    deadline of March 31, 2022, and nearly two years before the April 26 Trial. *See* Order entered February
    15, 2022, Dk. 16.

1   "Those objecting to discharge bear the burden of proving by a preponderance of the

2   evidence that [the debtor's] discharge should be denied." *Retz v. Samson (In re Retz)*,

3   606 F.3d 1189, 1196 (9th Cir. 2010) (citing *Khalil v. Developers Sur. & Indem. Co. (In re*

4   *Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir.

5   2009). "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts

6   should construe § 727 liberally in favor of debtors and strictly against parties objecting

7   to discharge." *Id.* (citing *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1281 (9th

8   Cir. 1996)).

9       During the April 26 Trial, which lasted one day,[6] evidence was introduced and

10  _____

11  [6] The Court recognizes that the April 26 Trial was a long affair, beginning at 9:30 a.m., and concluding
    around 8:00 p.m. (with breaks). Given the seriousness of the allegations, and the lack of credibility of

12  Defendant's testimony, the Court determined that conducting the trial in a single day was of paramount
    importance. A court's litigation decisions are reviewed for abuse of discretion. *See Sekera v. Allstate Ins.*

13  *Co.*, 763 Fed. Appx. 629, 630 (9th Cir. 2019) ("We review a district court's decision concerning the
    management of litigation for abuse of discretion. *Preminger v. Peake*, 552 F.3d 757, 769 n.11 (9th Cir.

14  2008) (citing *FTC v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1212 (9th Cir. 2004)"). *See also Coe v.
    Fanday (In re Fanday)*, 538 Fed. Appx. 748, 749 (9th Cir. 2013) ("… bankruptcy court's management of

15  Coe's questioning was far from an abuse of discretion. [internal citations omitted]). Such discretion is
    broad, and as noted by the Third Circuit, such discretion may include imposition of time limits at trial:

16
        Notably, we have recognized that a district court may impose limits on the parties' presentation
17      time at trial, so long as the court both "mak[es] an informed analysis based on a review of the
        parties' proposed witness lists and proffered testimony" and "allocates trial time evenhandedly."
18      *Duquesne Light Co.*, 66 F.3d at 610. Other circuits have likewise concluded that a district court
        may, in its discretion, set reasonable trial time limits. S*ee, e.g., United States v. DeCologero*, 364
19      F.3d 12, 25 (1st Cir. 2004) ("[L]imits on witnesses and the time allowed to each side are
        permissible measures.") (citations omitted); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir.
20      1994) ("In the management of its docket, the court has an inherent right to place reasonable
        limitations on the time allotted to any given trial.") (citing *United States v. Reaves*, 636 F. Supp.
21      1575, 1577 (E.D. Ky. 1986)); *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir.
        1997) ("[A] district court has broad discretion to place limits on the presentation of evidence to
22      prevent delay, waste of time, and needless presentation of cumulative evidence.") (citing
        *Duquesne Light Co.*, 66 F.3d at 609); *MCI Commc'ns Corp.*, 708 F.2d at 1172-73 (holding that
23      reasonable trial time limits do not violate the right to a fair trial); *Johnson v. Ashby*, 808 F.2d 676,
        678 (8th Cir. 1987) ("Trial courts have discretion to place reasonable limits on the presentation of
24      evidence . . . .") (citations omitted); *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500,
        1508 (9th Cir. 1995) ("Generally, a district court may impose reasonable time limits on a trial.")
25      (citations omitted).

26  *In re Baldwin*, 700 F.3d 122, 129 (3rd Cir. 2012).

27  After the presentation of testimony at the April 26 Trial was complete, and in recognition of the parties'
    efforts throughout the day and in the interest of alleviating any perceptions of unfairness, the Court

28  provided both parties the opportunity to file post-trial briefings containing argument summarizing the
    evidence proffered throughout the day. Moreover, Defendant was provided the opportunity to submit
    additional evidence, in the form of an accounting. As more fully noted herein, both parties took advantage

both sides were presented the opportunity to provide written closing statements to the

Court. Moreover, witness testimony was taken, during which the Court engaged in a

credibility analysis. A credible witness is a witness who comes across as competent and

worthy of belief. This Court determines witness credibility on many factors. The

substance of the testimony is tantamount, as well as the amount of detail and the

accuracy of recall of past events, which affect the Court's credibility determination.

Witness contradiction plays a part in the credibility determination. How the testimony is

delivered also has an impact. Factors which include body language, eye contact, and

whether the responses are direct or appear to be evasive, unresponsive, or incomplete

are considered by this Court. In addition, when deciding cases, the Court is permitted to

take into consideration its knowledge and impressions founded upon experiences in

everyday walks of life.

Under this backdrop, the Court finds the testimony of Plaintiff's witnesses, Mr.

Houser and Mr. Buysman, forthright and credible. On the other hand, the Court finds the

testimony of Defendant not credible. In reaching these credibility determinations, the

Court considered each witness's demeanor as they testified, including the way they held

themselves, whether they made or did not make inconsistent statements, and their

directness or evasiveness.

Now, having reviewed all pleadings, considering the arguments of counsels, and

having weighed the evidence admitted during the trial, the Court concludes that Plaintiff

has met its burden as to each of the § 727 causes of action asserted in Plaintiff's

operative complaint, as set forth in greater detail below.

### a. 11 U.S.C. § 727(a)(2)(A)

Under § 727(a)(2)(A), a discharge shall be granted unless "the debtor, with intent

to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of

property under this title, has transferred, removed, destroyed, mutilated, or concealed,

or has permitted to be transferred, removed, destroyed, mutilated, or concealed…

---

of the aforementioned opportunities.

property of the debtor, within one year before the date of the filing of the petition." 11
U.S.C. § 727(a)(2)(A).

"The term transfer 'means every mode, direct or indirect, absolute or conditional,
voluntary or involuntary, of disposing of or parting with property or with an interest in
property, including retention of title as a security interest and foreclosure of the debtor's
equity of redemption." *Eckard Brandes, Inc. v. Riley (In re Riley)*, Nos. 01-4452, 02-
00013 (citing 11 U.S.C. § 101(54)). "Under this definition, any transfer of an interest in
property is a transfer, including a transfer of possession, custody, or control even if
there is no transfer of title, because possession, custody, and control are interests in
property." "The transfer to the corporation of assets in which the debtors had
partnership interests constitutes a 'transfer' of 'property of the debtor' for purposes of
section 727(a)." *Eckard Brandes, Inc. v. Riley (In re Riley)*, Nos. 01-4452, 02-00013,
2004 Bankr. LEXIS 1656, at *8-9 (Bankr. D. Haw. 2004) (internal quotations and
citations omitted).

To satisfy intent, "the court must find that the Debtors harbored actual intent to
hinder, delay, or defraud a creditor…The existence of this intent is a finding of fact
reviewable for clear error. We may infer the intent from the circumstances surrounding
the transaction." *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992). "A debtor's intent
need not be fraudulent to meet the requirements of § 727(a)(2). Because the language
of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay
a creditor." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (internal
quotations and citations omitted).

"In examining the circumstances of a transfer under § 727(a)(2), certain 'badges
of fraud' may support a finding of fraudulent intent. These factors, not all of which need
be present, include (1) a close relationship between the transferor and the transferee;
(2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor
was insolvent or in poor financial condition at the time; (4) that all or substantially all of
the Debtor's property was transferred; (5) that the transfer so completely depleted the

1    Debtor's assets that the creditor has been hindered or delayed in recovering any part of

2    the judgment; and (6) that the Debtor received inadequate consideration for the

3    transfer." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (internal

4    quotations and citations omitted).

5         Moreover, "[u]nder the 'continuing concealment' doctrine, a transfer made and

6    recorded more than one year prior to filing may serve as evidence of the requisite act of

7    concealment where the debtor retains a secret benefit of ownership in the transferred

8    property within the year prior to filing." *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir.

9    1997).

10         The evidence presented at trial demonstrates that in late 2018 while Defendant

11   was engaged in state court lawsuits that could possibly result in money judgments

12   against her [Trial Transcript, Dk. 72, Pg. 43-51], she sold a residence held in her own

13   name and used the proceeds from that sale to purchase a mobile home.[7] Trial

14   Transcript, Dk. 72, Pg. 24- 27. Despite using proceeds that belonged to her individually,

15   she directed the seller to replace her name with the name of her solely owned and

16   managed company, J-Sandcastle Company, LLC. ("J-Sandcastle"), on the notice of sale

17   documentation.[8] Pre-trial stipulation, Dk. Paragraph 6; Trial Transcript, Dk. 72, Pg. 37-

18   40. She further testified that she directed the replacement of her name with J-

19   Sandcastle on November 15, 2018, days after a state court granted a motion for

20   attorney's fees against her. Trial Transcript, Dk. 72, Pg. 36-37 and 49-51. On the date of

21

22   ─────────────────

23   [7] As an example of Defendant's lack of credibility, she was unable to cogently describe the payments that
were made to purchase the mobile home from the seller; the payments did not add up to the
$185,000 purchase price, which price Defendant further admitted was different from the $225,000 price

24   stated on the notice of sale. Trial Transcript, Dk. 72, Pg. 26-33. Defendant offered no explanation for the
discrepancy and her failure to accurately describe the payments.

25

26   [8] Defendant's testimony regarding this issue was likewise an example of her lack of credibility. After
initially testifying that she did not direct the seller to place title in the name of J-Sandcastle Company,
LLC., [Trial Transcript, Dk. 72, Pg. 37], she later admitted that her name was previously listed on the

27   document and that she did, in fact, later ask the seller to replace her own name with J-Sandcastle
Company, LLC. as the buyer. Trial Transcript, Dk. 72, Pg. 39-40. Moreover, later in the trial, when asked

28   by the Court to confirm that she purchased the property with her own money and put it in the name of J-
Sandcastle, she initially answered in the negative, conceding only after continued questioning and
reminders of that to which she had previously testified. Trial Transcript, Dk. 72, Pg. 323-325.

Debtor's petition, July 9, 2021, the property was still being held in the name of J-
Sandcastle, and not in Defendant's name.

The Court observes that this act alone (i.e., Defendant directing title to the
property she purchased to be placed in the name of her wholly owned entity) is rife with
multiple badges of fraud, including Defendant's close relationship to the entity she
directed title to, the timing of providing such direction in light of pending litigation, and
the lack of consideration involved. It is clear to the Court that Defendant placed her
asset into the name of J-Sandcastle for the purpose of protecting her asset,[9] effectively
hindering, delaying, and defrauding her potential creditors from reaching the property.
Moreover, Defendant's strategy of concealing this asset continued through the petition
date, satisfying the elements of § 727(a)(2)(A).

Additionally, facts were presented to the Court demonstrating that Defendant
further concealed her equity in the property through the granting of liens to her business
entities and family members, which liens existed during the relevant time period. For
example, in late 2018, Defendant also executed a promissory note and security
agreement on the mobile home by and between two entities that she managed, J-
Sandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the
lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported
loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72,
Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in
the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until
approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.[10] None of the

---

[9] Defendant testified that she "didn't believe that putting a home in an LLC that I owned solely was doing
anything wrong" and that "[a]t the time when the home was transferred, or registered, to so speak, in the
LLC's name, [her] potential exposure was…$46,138 and $3,070." Trial Transcript, Dk. 72, Pg. 328:5-13.
In short, Defendant testified that she thought that it was her money, and that she could do what she
wanted with it. *Id*. The Court finds this testimony to be unpersuasive in light of the deflective and
incredible manner that Defendant answered questions related to the transfers, as well as the pending
lawsuits and her general financial situation at the time of the transfers.

[10] The Court notes that Defendant's inability to account for the specific amounts paid and timing of said
payments during her testimony further underscores her lack of credibility. Trial Transcript, Dk. 72, Pg. 65-
66.

foregoing information regarding the timing of funding, or source of funding, was

reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a

secured creditor, continuing the ongoing concealment of her true interest in the loan.

Additionally, within the year prior to the petition, liens in favor of Defendant's two adult

sons, Steven and Brian Gallian, were placed on the property, despite the fact that

neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.

While Defendant attempted to provide explanations for the foregoing to the Court

*in camera* and on the record, the Court finds such explanations to be insufficient to

refute the overwhelming evidence demonstrating that Defendant had the requisite intent

to hinder, delay, or defraud her creditor, when she transferred and concealed her

interests in the property described above.

Accordingly, Plaintiff is entitled to judgment against Defendant on its §

727(a)(2)(A) cause of action.

### b. 11 U.S.C. § 727(a)(4)

Under § 727(a)(4), a debtor's discharge shall be granted unless "the debtor

knowingly and fraudulently, in or in connection with the case – (A) made a false oath or

account." To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a

preponderance of the evidence, that: "(1) the debtor made a false oath in connection

with the case; (2) the oath related to a material fact; (3) the oath was made knowingly;

and (4) the oath was made fraudulently." *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

1197 (9th Cir. 2010).

A false oath can be made in written submissions to the Court or under oath at a §

341 meeting, deposition, or trial:

> "A debtor's petition, schedules, statement of financial affairs, statements made at
> a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004
> examination, and answers to interrogatories all constitute statements under oath
> for purposes of § 727(a)(4)[(A)]. The same holds true for deposition testimony
> and testimony at other hearings during the course of the bankruptcy case. The
> false oath also need not be an affirmative misstatement; knowing and fraudulent
> omissions will also suffice."

-12-

1    *In re Jayme*, 2018 Bankr. LEXIS 1987, 2018 WL 3218104, at *9 (Bankr. D.N.M.)

2    (internal citations omitted).

3        Moreover, the standard for what constitutes a "material" fact is very broad. As

4    stated by the Ninth Circuit, "[a] fact is material if it bears a relationship to the debtor's

5    business transactions or estate, or concerns the discovery of assets, business dealings,

6    or the existence and disposition of the debtor's property. An omission or misstatement

7    that detrimentally affects administration of the estate is material." *Retz v. Samson (In re*

8    *Retz),* 606 F.3d 1189, 1198 (9th Cir. 2010) (internal quotations and citations omitted);

9    *See also Joudeh v. Truppa (In re Truppa*), 2017 Bankr. LEXIS 1157, at *1 (B.A.P. 9th

10    Cir. 2017).

11        In the context of § 727(a)(4), a distinction is made between reckless disregard for

12    the truth, which is sufficient to form intent under the statute, and mere mistake or

13    inadvertence, which is not. *Retz v. Samson (In re Retz*), 606 F.3d 1189, 1199 (9th Cir.

14    2010) ("Reckless indifference or disregard for the truth may be circumstantial evidence

15    of intent, but is not sufficient, alone, to constitute fraudulent intent."). Something more

16    must be presented in order to meet the standard.

17        "Neither sloppiness nor an absence of effort by the debtor supports, by itself, an
         inference of fraud. Courts which hold otherwise are simply devising a court-made
18       prophylactic rule that the debtor must make substantial effort to provide accurate
         and complete schedules. Had the Congress intended to make such a rule, it
19       could have done so easily, as it did with § 727(a)(3) (failure to keep adequate
         books and records), and (a)(5) (failure to adequately explain the loss of assets),
20       neither of which have an express element of fraudulent intent. [Citation omitted.]
21       But the Congress did not do so, and it is not for the courts to create new bars to
         discharge under § 727(a), or to so distort a requisite element as to make it no
22       element at all. The essential point is that there must be something about the
         adduced facts and circumstances which suggest that the debtor intended to
23       defraud creditors or the estate. **For instance, multiple omissions of material
         assets or information may well support an inference of fraud if the nature
24       of the assets or transactions suggests that the debtor was aware of them at
         the time of preparing the schedules and that there was something about
25       the assets or transactions which, because of their size or nature, a debtor
26       might want to conceal."**
27

28    *Khalil v. Developers Sur. & Indem. Co. (In re Khalil*), 379 B.R. 163, 174-75 (B.A.P. 9th

Cir. 2007) (citing *Coombs*, 193 B.R. at 565-66) (emphasis added).

In keeping with the foregoing, a pattern of half-truths, inconsistencies, and omissions in filed schedules, even if the schedules are ultimately amended to reflect the true assets of the debtor, can be sufficient evidence of fraudulent intent under the statute. *See Joudeh v. Truppa (In re Truppa)*, No. CC-16-1281-KuFL, 2017 Bankr. LEXIS 1157, at *1 (B.A.P. 9th Cir. 2017) ("the court may infer fraudulent intent based on a 'pattern of falsity.'"); *Trainor v. Evans (In re Evans)*, No. CC-16-1356-KuFTa, 2017 Bankr. LEXIS 2232, at *1 (B.A.P. 9th Cir. 2017) (noting that "a pattern of falsity, a reckless indifference to the truth and a failure to amend bankruptcy commencement documents to correct known errors and omissions all can be probative of intent to deceive"); *Cummings v. UST- United States Trustee (In re Cummings)*, 595 Fed. Appx. 707, 709-710 (9th Cir. 2015) ("Debtors' eventual disclosure of their interest … does not negate their initial fraud… To the contrary, the sequence of debtors' filings substantiates the presence of fraud: they elected, twice, to amend their [schedules], and disclosed [the omitted fact] only after the issuance of an order granting the Trustee additional time to investigate."); *ML Manager, LLC v. Pinsonneault (In re Pinsonneault)*, 2017 Bankr. LEXIS 253, *38 (Bankr. S.D. Cal 2017) ("A false oath is complete when made. A debtor's eventual amendment of their schedules to disclose assets that they knowingly omitted does not negate their initial intent to defraud....The very nature and magnitude of the assets belies the too facile defense that they were simply overlooked or forgotten."). *See also Jin Min Lee v. Joo Yoon Yeom (In re Joo Yoon Yeom),* 2017 U.S. Dist. LEXIS 177347, *10-11 (No. Mariana Isl. DC 2017) ("This repeated failure not only demonstrates a conscious decision to omit the information from the bankruptcy filing and therefore establishes the false oath was made knowingly, but it also demonstrates an intent to deceive. Defendant's interest in the business was significant—first as half-owner and later as full owner—and her recurring failure to disclose it, especially given that she agreed to become the full owner of the Poseidon Bar after she filed for bankruptcy, demonstrates that she intended to deceive her creditors.").

-14-

1   Since July 9, 2021, Debtor has filed 10 sets of schedules in this case. In the first

2   five of the amended schedules, which were filed over a span of approximately 2

3   months, Debtor disclosed her interest in J-Pad as "33.33%" [First Amended Schedule

4   filed September 7, 2021, Dk. 15], then "1/7 interest" [Second Amended Schedule filed

5   September 22, 2021, Dk. 16-17], then "70%" [Third Amended Schedule filed October

6   14, 2021, Dk. 22], then "33-1/3%" [Fourth Amended Schedule filed November 16, 2021,

7   Dk. 37], then "100%" [Fifth Amended Schedule filed November 22, 2021, Dk. 38].

8   Despite the foregoing, Defendant testified at trial that as of October 30, 2018, she

9   owned 100% of J-Pad.[11] Trial Transcript, Dk. 72, Pg. 154. Her explanation for the

10   varying amounts of interest scheduled over the short period of time was that she owed

11   people money and made a mistake. Trial Transcript, Dk. 72, Pg. 153. The Court is

12   unconvinced. Defendant owns and/or manages multiple companies, and has presented

13   herself though the pendency of her case as a person that is not unsophisticated. It is

14   

15   [11] The Court notes that Defendant was at first non-responsive to questioning about her ownership of J-
    Pad. It was not until the Court reminded Defendant that her credibility was on trial, and that she had
16   earlier provided testimony of her ownership, that she answered the question regarding her ownership of
    J-Pad. Trial Transcript, Dk. 72, Pg. 153-154.

17   THE COURT: ... Why were you making all of these random -- putting down all these random
    numbers?
18   THE WITNESS: Because I owed people money.
    THE COURT: Why were you putting down all of those random numbers? We know you owed
19   people money. Why were you saying they owned part of that membership?
    THE WITNESS: I guess I made a mistake, and at the time --
20   THE COURT: So you just don't know? I'm really looking at your credibility. You've signed several
    documents, including your first petition, under oath, that it was true and correct, not to the best of
21   your ability, but that it was true and correct, and yet you can't tell me today how much of that
    percentage you owe, although you've already testified several times today that you own 100
22   percent?
    THE WITNESS: That's correct.
23   THE COURT: Okay. When do you think you started owning 100 percent?
    THE WITNESS: And these aren't in the documents, I don't believe. I didn't see it.
24   THE COURT: I don't care if they are. When did you start believing you owned 100 percent of that
    LLC?
25   THE WITNESS: When I was the one that donated most of the money.
    THE COURT: When did you do that?
26   THE WITNESS: It wasn't recorded, but the day before I --
    THE COURT: When did you do that?
27   THE WITNESS: The 30th of October.
    THE COURT: What year?
28   THE WITNESS: 2018.

-15-

1  wholly unbelievable to the Court that Defendant, with her ability and knowledge,

2  somehow did not understand her ownership interest in J-Pad or her obligation to report

3  accurate ownership interests in her schedules. As noted previously, J-Pad was the

4  holder of a $22,000 promissory note. Defendant herself executed the promissory note

5  on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a

6  significant amount of money, and Defendant's failure to properly schedule her interest in

7  J-Pad, the note and lienholder of a significant asset, is a material, false oath made

8  knowingly and fraudulently. So too was Defendant's failure to schedule a value for J-

9  Pad, who held a significant asset in the form of the aforementioned note and lien on the

10  mobile home.

11  The foregoing, coupled with the evidence presented by Plaintiff of Defendant's

12  other glaring omissions and false oaths,[12] are sufficient to demonstrate that Plaintiff is

13  entitled to judgment against Defendant on its § 727(a)(4) cause of action.

14  **c. 11 U.S.C. § 727(a)(5)**

15  Under § 727(a)(5), a debtor's discharge may be denied if the debtor has failed to

16  explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's

17  liabilities. 11 U.S.C. § 727(a)(5).

18  The plaintiff bears the burden to demonstrate that: "(1) debtor at one time, not too

19  remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the

20  bankruptcy petition was filed or order of relief granted, the debtor no longer owned the

21  assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an

22  adequate explanation for the disposition of the assets." *In re Retz*, 606 F.3d 1189, 1205

23  (9th Cir. 2010). "Once the creditor has made a *prima facie* case, the debtor must offer

24  credible evidence regarding the disposition of the missing assets." *Id*.

25  As previously noted, several years before her petition was filed, Defendant sold

26

27  _____

[12] *See* Plaintiff's post-trial brief filed May 10, 2023, Dk. 74, which is incorporated herein. For example, Defendant testified that she did not pay rent to J-Sandcastle, despite having previously testified during

28  her deposition that she did pay rent. Trial Transcript, Dk. 72, Pg. 129. After some hesitation and continued follow up questions from the Court, Defendant ultimately admitted that she lied at the deposition about whether she paid rent to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 130-131.

property for $379,000. Trial Transcript, Dk. 72, Pg. 201. Thereafter, she spent a total of

$165,000[13] of the sale proceeds to purchase a mobile home, with $214,000 remaining.

At trial, when asked about the disposition of the remaining $214,000 in sale proceeds,

Defendant testified that she loaned $175,000 of the $214,000 to J-Sandcastle. Trial

Transcript, Dk. 72, Pg. 202. Defendant further testified that the remainder of the funds

were converted to cashier's checks that were ultimately paid to attorneys. Trial

Transcript, Dk. 72, Pg. 206. Defendant originally testified that she spent close to

$150,000 on attorneys [Trial Transcript, Dk. 72, Pg. 206], despite scheduling only

$113,700 on her bankruptcy schedules. Trial Transcript, Dk. 72, Pg. 207. At trial,

Defendant was unable to account for the approximately $37,000 discrepancy. Trial

Transcript, Dk. 72, Pg. 207-209.  When questioned about the discrepancy, Defendant

began to list other expenses that she incurred, including cosmetic and medical

procedures, which the Court perceived as being non-responsive to the question of

which attorneys were paid the remaining $37,000. Trial Transcript, Dk. 72, Pg. 208.

Eventually, Defendant clarified that she "just threw out a number and said about

$150,000," [Trial Transcript, Dk. 72, Pg. 210], and that she misspoke, stating again that

she spent the remaining funds on cosmetic and medical procedures.

Finding that Plaintiff had met its burden to demonstrate a *prima facie* case, and

that the entirety of Defendant's testimony on this matter was confusing and entirely

lacking in credibility, the Court provided the Debtor with the opportunity to file a

complete accounting by April 28, 2023, at 5 p.m. in order to explain further the

disposition of the pre-petition sale proceeds.

Defendant did not timely file a complete accounting by the deadline set by the

Court; however, Defendant did file an untimely declaration on May 1, 2023 [Dk. 71]

("First Declaration"), and again on May 8, 2023 [Dk. 73] ("Second Declaration")

(together, "Declarations"). In the interest of justice, and in recognition that Defendant is

---

[13] Defendant testified that a cashier's check for $20,000 (of the $185,000 purchase price) was returned to her, so the net cost of Defendant's purchase of the mobile home was $165,000. Trial Transcript, Dk. 72, Pg. 201.

a pro-se litigant without permissions to electronically file, the Court has considered the

Declarations despite the fact that they were untimely filed. Regrettably, they are

insufficient to adequately explain the disposition of Debtor's assets.

The Declarations contain a rudimentary and incomplete[14] accounting which is

entirely unhelpful to the Court. The lists contained therein have no dates, partial

descriptions, and appear to be summary values (all ending in -.00). Moreover, the

Declarations are completely devoid of properly authenticated evidence.[15] Lastly, even if

the foregoing issues were somehow resolved, the accounting provided is entirely

inconsistent with the testimony provided by Defendant at trial and in the Declarations

themselves.

For example, at trial, when asked about the disposition of the $379,000 in sale

proceeds, Defendant testified that $165,000 was spent on the mobile home, [Trial

Transcript, Dk. 72, Pg. 201], and $175,000 of the remaining $214,000 was paid to J-

Sandcastle. Trial Transcript, Dk. 72, Pg. 202. The accounting attached to Pg. 3 of the

First Declaration, which appears identical to the accounting attached to the Second

Declaration as Pg. 12, amounts to approximately $190,000 in charges, but does not

include either the $165,000 spent on the mobile home or the $175,000 paid to J-

Sandcastle.[16] It is not mathematically possible that Defendant used sale proceeds

totaling $395,000 on a $175,000 loan, a $165,000 mobile home, **and** the $190,000

contained in her accountings (all of which total $530,000).

As noted above, Defendant was required to offer "credible evidence regarding

the disposition of the missing assets." *In re Retz*, 606 F.3d 1189, 1205 (9th Cir. 2010).

---

[14] Paragraph 5 of the Declarations state that: "THE LIST IS NOT AN EXHUASTIVE LIST OF THE SALE PROCEEDS SPENT…" Declarations filed May 1, 2023, and May 8, 2023, Dks. 71 and 73 respectively.

[15] While Defendant attached various documents to the Second Declaration, the documents are cumbersome, lack any explanation as to relevance, and are not properly authenticated by Defendant's declaration. Pursuant to the Federal Rules of Evidence, in order "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. Rules Evid. R 901. Defendant did not do so.

[16] $395,000 less approximately $190,000 = approximately $205,000.

-18-

1    She has not met her burden. Therefore, Plaintiff is entitled to judgment against

2    Defendant on its § 727(a)(5) cause of action.

3        **IV.    Conclusion**

4        For the reasons more fully explained herein, the Court finds good cause to enter

5    the following order DENYING the Motion to Amend, VACATING the hearing on the

6    Motion to Amend, and finding in favor of Plaintiff and against Defendant pursuant to 11

7    U.S.C. §§727(a)(2)(A), (a)(4), and (a)(5). Judgment, however, cannot yet be issued as

8    there remain pending § 523 claims. Accordingly, the Court hereby sets a status

9    conference on June 27, 2023, at 1:30 p.m., with a status report due 14 days in advance.

10    The status report must advise the Court how the parties wish to proceed in light of the

11    issuance of this Memorandum Decision.

12        **IT IS SO ORDERED.**

25    Date: May 23, 2023

Scott C. Clarkson
United States Bankruptcy Judge

-19-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 Skylab Road Huntington Beach, CA 92647

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 29, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _5/29/23_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Eric Houser, Esq,
9970 Research Dr, Irvine, CA 92618-4309
Phone: 949-679-1111
ehouser@houser-law.com

Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 29, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 29, 2023 | Robert McLelland | *Robert McLelland* |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR INTERSTED PARTY HOUSER BROS. CO. A CALIFORNIA LIMITED PARTNERSHIP**
  bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com,
  danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY THE HUNTINGTON BEACH GABLES HOMEOWNERS'
  ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
- **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net;
  kadele@wgllp.com
- **ATTORNEY FOR INTERESTED PARTY HOUSER BROS. CO. A GENERAL PARTNERSHIP and
  CREDITOR HOUSER BROS. CO. A CALIFORNIA LIMITED PARTNERSHIP DBA RANCHO DEL REY
  MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com,

  ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com;
  cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR INTERESTED PARTY THE HUNTINGTON BEACH GABLES HOMEOWNERS'
  ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com,
  danninggill@gmail.com; eisrael@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com,
  mellormr79158@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.