UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br>      Debtor.<br><br>JAMIE LYNN GALLIAN,<br>      Appellant,<br>v.<br><br>HOUSER BROS. CO.,<br>      Appellee. | Case No.: 8:23-cv-00961-WLH<br>Adv. Proc. No.: 8:21-ap-01097-SC<br>Bankr. Case No.: 8:21-bk-11710-SC<br><br>**ORDER ON APPEAL**<br><br>JS-6 |

Before the Court is the appeal of the Judgment (AP Docket No. 81)[1] of the United States Bankruptcy Court, Central District of California (the "Bankruptcy Court"), entered on May 23, 2023. The Court finds this matter is appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons set forth below, the Bankruptcy Court's Judgment is **AFFIRMED**.

---

[1] All "AP Docket" references are to the docket in the underlying adversary proceeding, 8:21-ap-01097-SC.

1

I.     BACKGROUND

This case involves an adversary proceeding challenging the discharge of Jamie Lynn Gallian's ("Gallian") debts under 11 U.S.C. §§ 727 ("section 727"). In addition to the parties' briefing, this Court relies heavily on the transcript from the adversary proceeding (the "Transcript," AP Docket No. 72) and the Bankruptcy Court's Memorandum Decision after Trial (the "Memorandum," AP Docket No. 81) to parse the factual background of this case. The following facts are undisputed.

Appellant Gallian is an individual living at the Rancho del Rey Mobile Home Estates (the "Park") in Huntington Beach, California. Appellee, Houser Bros. ("Houser") is the owner of the Park and an alleged creditor of Gallian.

Prior to 2018, Gallian had been living at The Gables, a nearby condominium complex also owned by Houser. (*See* Appellant Opening Brief ("Gallian Brief"); Docket No. 9 at 2).[2] In 2017, both The Gables and The Gables Homeowners Association initiated lawsuits against Gallian. (*Id.*). Gallian lost both lawsuits—the Court entered a judgment requiring her to pay approximately $315,000 to The Gables and $9,200 to the Homeowners Association. (*Id.*; Transcript at 57–58, lines 16–25, 1–15). Gallian was also ordered to pay $3,070 in sanctions. (Transcript at 60–61, lines 24–9). On October 17, 2018, a sublessor of The Gables sued Gallian for unlawful detainer. (Gallian Br. at 2). On October 31, 2018, Gallian sold her property at the Gables for $379,000. (*Id.*; Transcript at 24–25, lines 25–9). Gallian deposited the money from the sale in a bank account in her name. (Transcript at 25, lines 16–21).

In late August 2018, Houser was in the process of evicting a sublessor, Lisa Ryan, from the Park. (First Amended Complaint ("Houser FAC") at ¶ 8, AP Docket No. 3). Ryan owned a mobile home but leased a space in the Park ("Space 376") from

---

[2] All "Docket" references are to the docket before this Court, 8:23-cv-00961-WLH. Further, when citing to transcripts in the record, the Court refers to the page numbers assigned by the Court's CM/ECF header.

2

Houser.  (*Id.*)  In November 2018, without the knowledge or permission of Houser, Ryan sold her mobile home to Gallian.  (Gallian Br. at 5; Transcript 26–32).  Gallian paid Ryan $185,000[3] for the mobile home.  (*Id.*)

      Although Gallian paid for the mobile home using the proceeds from the sale of her The Gables property, on November 15, 2018, Ryan, at the direction of Gallian, whited-out Gallian's name on the "Notice of Sale or Transfer" paperwork and replaced it with "J-Sandcastle Co., LLC" ("J-Sandcastle").  (Houser Responsive Br. At 15; Transcript at 62).  On November 16, 2018, Gallian included a promissory note and security agreement as part of the transfer.  (Transcript at 62, lines 18–21).  Gallian admits she effectuated these documents immediately "after leaving the court" where the judgments were entered against her.  (*Id.* at 60, line 14).  The security agreement stated that Gallian was the lender of the title to the mobile home and J-Sandcastle was the borrower, and that J-Sandcastle "pledged a security interest in the mobile home to secure repayment of this $225,000."  (*Id.* at 63–64, lines 21–12, *id.* at 69, lines 22–24).  Gallian is now and has always been the 100 percent owner of J-Sandcastle.  (*Id.* at 70, lines 12–14).

      The secured promissory note stated that J-Sandcastle was a borrower promising to pay $225,000 to J-Pad, LLC ("J-Pad").  (*Id.* at 63–64, lines 21–12).  In other words, the note stated that J-Sandcastle held title to the mobile home, and J-Pad held a lien recorded against the value of the mobile home in the amount of $225,000.  At trial, Gallian testified she believed she was the 100 percent owner of J-Pad, but that she transferred assets of J-Pad to various individuals during the past few years.  (*Id.* at 71, lines 2–4; *id.* at 164).  On January 14, 2019, Gallian filed a Uniform Commercial Code ("UCC") financing statement with the California Secretary of State stating that

---

[3] The exact amount Gallian paid is unclear, and Gallian's testimony on this issue did not resolve the confusion.  It appears she paid between $180,000 and $185,000 for the mobile home.  (*See* Transcript at 26–32.)

3

J-Sandcastle was the debtor and J-Pad was the secured party for the lien recorded against the title to the mobile home. (*Id.* at 71, lines 6–14). On December 4, 2020, Gallian filed an amendment to the UCC financing statement listing her adult sons, Steven D. Gallian and Brian J. Gallian as additional secured parties. (*Id.* at 72, lines 1–18). By September 22, 2021, Gallian amended the UCC financing statement to include seven individuals (including both family members and non-family members). (*Id.* at 156, lines 1–9). None of these individuals paid anything in exchange to become secured parties in J-Pad. (*Id.* at 164).

On November 19, 2018, Gallian applied to live at the Park. (Houser FAC at ¶ 9.) Park management rejected her application the next day. (*Id.* at ¶¶ 10–11.)[4] Immediately after learning that her application had been denied, Gallian called the Park's management office and physically went to the office to tender a cashier's check for $8,743.07. (*Id.* at ¶ 12). The check was in the name of J-Sandcastle Co., LLC. (*Id.*). The Park returned the check to Gallian via certified mail. (*Id.*). Gallian attempted to pay again via a second cashier's check, which the Park also returned via certified mail. (*Id.* at ¶ 13).

Gallian has been living in the Park at the mobile home located on Space 376 since November 2018. Houser argues that Gallian has been living at its property unlawfully without a lease agreement and owes damages.[5] (*Id.* ¶¶ 17, 32–43). Gallian disputes Houser's claims, arguing that Houser waived its ability to collect rent and lacked authority to sub-lease the property at all.[6] (*See generally* Gallian Br.).

---

[4] Houser states Gallian's poor financial situation as the reason her application was denied. (Houser FAC at ¶10).

[5] Houser calculates these damages by accruing what a valid tenant would owe in rent and utilities payments. (Houser FAC at ¶¶ 37–41).

[6] Gallian makes various conflicting arguments to support this position, suggesting that Houser's prior conduct led her to reasonably believe she could use the space (Gallian

4

On July 9, 2021, Gallian filed for bankruptcy. (*See* Bankruptcy Docket No. 1).[7] She amended her disclosure schedules ten times shortly after filing. (*See* Amendments, Bankruptcy Docket Nos. 15, 16, 17, 22, 37, 38, 39, 42, 75, 94).

On October 18, 2021, Houser initiated an adversary proceeding against Gallian. (*See* AP Docket No. 1). The trial for the adversary proceeding was held on April 26, 2023. (AP Docket No. 68). At trial, Houser brought three section 727 claims against Gallian.[8] (Houser FAC; Transcript). The first claim was that Gallian violated section 727(a)(2) because, within the year leading up to her bankruptcy filing, she (1) concealed her interest in a property (the mobile home located on Space 376) by transferring ownership of said property to various LLCs (J-Sandcastle and J-Pad) and (2) transferred ownership of her property to her adult children (and other people with whom she shares a close relationship) via liens. (Houser FAC ¶¶ 51–59). The second claim was that Gallian violated section 727(a)(4) by making false oaths about her finances (both over the course of the trial and in her written disclosures). (*Id.* ¶¶ 60–70). The third claim was that Gallian violated section 727(a)(5) by failing to satisfactorily explain the loss of her assets. (*Id.* ¶¶ 71–75). Gallian disputed all three

---

Br. at 1), and/or that Houser waived its right to collect rent from her by denying her attempts to deliver payments (*id.* at 7, 9, 19), and/or that she acquired ownership over the space via adverse possession (*id.* at 8–9), and/or that Houser did not disclose the existence of a ground lease on the property and therefore could not sublease the property to others (*id.* at 18). These arguments are not especially relevant to the bankruptcy proceeding but are provided for context.

[7] All "Bankruptcy Docket" references are to the docket in the underlying bankruptcy case, 8:21-bk-11710-ES.

[8] Houser also attempted to plead a violation of section 727 (a)(2)(B), however, the Bankruptcy Court denied the amendment of the complaint to include this claim. (Mem. at 4–5.) Although this Court is free to consider all aspects of the Bankruptcy Court's Order (*see In re Flynn*, 402 B.R. 437, 442 (B.A.P. 1st Cir. 2009) (citing *Yamaha Motor Corp. U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)), given that Houser is not prejudiced by the denial of amendment and that this Court agrees with the Bankruptcy Court's decision to deny, this Order will not discuss the 7(a)(2)(B) claim.

claims and argued that Houser did not have standing to bring suit. (*See generally* Answer, AP Docket No. 6).

The Bankruptcy Court found in favor of Houser, ruling that Gallian's testimony was not credible and that Houser had successfully pleaded the section 727 violations. (Order, AP Docket No. 81; Mem.). Gallian now brings this appeal, arguing that the Bankruptcy Court's Order was made in error; she maintains that she did not do anything improper and is entitled to the discharge of her debts. (Notice of Appeal, AP Docket No. 83; Notice of Appeal, Docket No. 1; Gallian Br.). Additionally, she argues that Houser does not have standing to bring a legal action against her. (Gallian Br. at 1; *see also* Mem., summarizing and addressing Gallian's standing argument at 3–4). The matter has been fully briefed. (Gallian Br.; Appellee's Response Br. ("Houser Reply"), Docket No. 15).

## II.  LEGAL STANDARD

A district court may hear appeals from all "final[9] judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158. When sitting in this capacity, a district court "applies the same standards of review as [would] a federal court of appeals." *In re Ridgecrest Healthcare, Inc.*, 601 B.R. 826, 828 (C.D. Cal. 2019) (quoting *In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 755 (9th Cir. 2011)); Fed. R. Bankr. P. 8003. The district court reviews the bankruptcy court's factual findings for "clear error" and the legal conclusions *de novo*. *In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 653 (9th Cir. 1997) (citing *In re Barakat*, 99 F.3d 1520 (9th Cir. 1996)).

---

[9] In bankruptcy, "finality" does not require that the entire underlying bankruptcy case reach its conclusion. *See, e.g.*, *In re Brown*, 484 F.3d 1116, 1121 (9th Cir. 2007) (stating "[w]e follow a "pragmatic approach" to finality in bankruptcy—"a complete act of adjudication need not end the entire case, but need only end any of the interim disputes from which an appeal would lie") (quoting *In re Slimick*, 928 F.2d 304, 307 n.1 (9th Cir. 1990)).

## III. DISCUSSION

On appeal, Gallian does not raise specific arguments as to how or why the Bankruptcy Court's judgment is flawed. Rather, Gallian appears to raise the same issues the Bankruptcy Court considered at the Adversary Proceeding, apparently hoping this Court will reach a different outcome.[10] (*See generally*, Gallian Br.). The crux of this case hinges on factual issues, namely, whether Gallian acted intentionally or knowingly when violating aspects of the Bankruptcy Code. The Court therefore reviews the Bankruptcy Court's Order with a particularly focus on whether any of that court's factual findings were clearly erroneous. The Court begins by addressing Gallian's argument that Houser does not have standing to bring this suit and then proceeds to analyzing each of the section 727 claims.

### A. Houser's Standing

Gallian argues that Houser does not have standing to bring the section 727 claims because it has not been injured. (Gallian Br. at 1). The Bankruptcy Court disagreed, explaining that section 727(c)(1) gives a creditor standing to object to a discharge regardless of injury and that Houser had properly filed a proof of claim to establish itself as a creditor. (Mem. at 3). Reviewing this issue *de novo*, this Court agrees with the Bankruptcy Court that the text of the applicable statute,[11] the

---

[10] The record supports the conclusion that Gallian has recycled her pleadings several times throughout this case. (*See, e.g.*, The Bankruptcy Court's reference to recycled pleadings at 2, n. 3). Though this method of pleading is improper, given that Gallian is *pro se*, this Court does its best to evaluate the case on the merits.

[11] *See* 11 U.S.C. § 727(c)(1) stating "a creditor. . . may object to the granting of a discharge . . . ."

7

definitions provided by the Bankruptcy Code,[12] and the relevant caselaw[13] make clear that: (1) a creditor has standing to object to a section 727 discharge regardless of injury and (2) Houser is a creditor as defined by the statute. Gallian has not cited to any law (and, more importantly, this Court did not encounter any law) running contrary to the Bankruptcy Court's holding on this issue.

Accordingly, the Bankruptcy Court's decision to overrule Gallian's standing claim is **AFFIRMED**.

### B.   Section 727 Claims

#### i.   *Gallian's Credibility*

The Bankruptcy Court prefaced its analysis of the section 727 claims by examining Gallian's credibility. (Mem. at 8). The Bankruptcy Court based its credibility analysis on multiple factors, including "the substance of the testimony. . . the amount of detail and accuracy of recall of past events. . . [w]itness contradiction. . . [h]ow the testimony [was] delivered. . . [including] body language, eye contact, and whether the responses [were] direct or appear[ed] to be evasive." (*Id.*). In other words, the credibility of the debtor is a factual determination that the Bankruptcy Court makes by analyzing the totality of the circumstances. At trial, the Bankruptcy Court determined that Gallian was not a credible witness. (*Id.*). On appeal, having reviewed the pleadings and the Transcript, this Court finds no evidence

---

[12] *See* 11 U.S.C. § 101(10) defining a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. . ."; 11 U.S.C. § 101(5) defining a claim as a "right to payment. . . . [including] disputed [payments]. . .".

[13] *See, e.g.*, *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010) (stating "lack of injury to creditors is irrelevant for the purposes of denying a discharge in bankruptcy").

8

of "clear error."[14]  With the Bankruptcy Court's credibility assessment as context, the Court proceeds to analyzing the section 727 claims themselves.

        *ii.*    *11 U.S.C. § 727(a)(2)(A)*

Section 727(a)(2)(A) states: "The Court shall grant the Debtor a discharge unless the Debtor, with intent to hinder, delay, or defraud a creditor, has transferred, removed, destroyed, mutilated, or concealed property of the Debtor within one year before the date of the filing of the [bankruptcy] petition, or if such conduct occurs post-petition." Here, both parties agree that Gallian has transferred property within the year leading up to her bankruptcy petition. (This fact is undisputed and is present throughout both parties' briefing. *See, e.g.*, Gallian Br. at 18; Houser Reply at 14). Houser further argues that Gallian intentionally concealed her property from creditors by (1) retaining a secret benefit of ownership in the transferred property and (2) granting liens to her business entities and relatives. (Houser FAC at 10–11). The issue before the Court on appeal is not whether the transfers occurred or the liens were granted, but, instead, whether Gallian's intent while taking these actions was to "hinder, delay, or defraud."

The requisite intent to hinder, delay, or defraud creditors under section 727(a)(2) is actual intent. *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 2010). A showing of fraudulent intent is not necessary to reach the level of intent described in the statute—the intent to hinder or delay is enough. *In re Retz*, 606 F.3d at 1200.

---

[14] Rather, the information provided, especially Gallian's contradictory statements on various issues (for example Gallian states that all of the transfers at issue were made for "reasonable value," but all of the transfers appeared to be made without any value or consideration at all) and her lack of explanation for suspicious conduct (for example, Gallian states "[t]he transfer of the manufactured home to the LLC was not made with an intent to hinder or delay creditors, but rather as a legitimate business transaction" but does not explain what that legitimate business reason could possibly be) leads this Court to the same conclusion as the Bankruptcy Court—Gallian does not seem credible. (*See* Gallian Br. at 7, 18).

When evaluating whether there is actual intent, the Bankruptcy Court may infer intent from the circumstances surrounding the transaction. *In re Woodfield*, 978 F.2d at 518. Circumstances of a transfer that may be relevant to an intent finding include "badges of fraud" such as "(1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer." *In re Retz*, 606 F.3d at 1200 (internal quotations and citations omitted). A transaction does not need to bear every badge of fraud for the court to find actual intent. (*Id.*).

Here, the Bankruptcy Court found that each of Gallian's actions was "rife with multiple badges of fraud" and that the evidence overwhelmingly supported a finding of actual intent. (Mem. at 11). Specifically, the Bankruptcy Court found that Gallian transferred the mobile home to J-Sandcastle "for the purpose of protecting her asset" and that this action was taken to hinder, delay, and defraud her creditors. (*Id.*). The Bankruptcy Court described Gallian's argument, which it boiled down to her thinking "it was her money, and that she could do what she wanted it with it," as unpersuasive, especially given Gallian's incredible testimony. (*Id.* at n. 9). Upon review of the filings, Memorandum, and Transcript, this Court finds no evidence of clear error.

Accordingly, the Bankruptcy Court's judgment in favor of Houser on the section 727(a)(2)(A) claim is **AFFIRMED**.

   iii. 11 U.S.C. § 727(a)(4)

Section 727(a)(4) states: "The Court shall grant the Debtor a discharge unless the Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."

1   Here, as in the section 727(a)(2)(A) claim, the question before the Court relates
2   to intent. There can be no dispute that Gallian made several false oaths throughout the
3   course of these proceedings. Gallian herself admitted this several times while
4   testifying at trial, though she usually categorized the falsities as mistakes. (*See, e.g.*,
5   Transcript at 140, lines 9–12 "THE WITNESS: . . . I made a mistake. THE COURT:
6   You made a mistake? THE WITNESS: Yes, sir. THE COURT: You're making a lot
7   of mistakes."). The question on appeal therefore is not whether the false oaths
8   occurred, but instead, whether Gallian made the false oaths "knowingly and
9   fraudulently." The Bankruptcy Court held that she did. (Mem. at 15–16) ("It is
10  wholly unbelievable to the Court that [Gallian], with her ability and knowledge,
11  somehow did not understand her ownership interest in J-Pad or her obligation to
12  report accurate ownership interests in her schedules."). After reviewing the filings,
13  the Transcript, and the Memorandum, the Court finds no evidence of clear error.[15]

14  Accordingly, the Bankruptcy Court's judgment in favor of Houser on the
15  section 727(a)(4) claim is **AFFIRMED**.

16      iv.    11 U.S.C. § 727(a)(5)

17  Section 727(a)(5) states: "The Court shall grant the Debtor a discharge unless
18  the Debtor has failed to explain satisfactorily any loss of assets or deficiencies of
19  assets necessary to meet her liabilities." The Bankruptcy Court held that Gallian
20  failed to adequately explain the loss of her assets. (Mem. at 16–18.) After reviewing
21  the briefing, the Transcript, and the Memorandum, this Court finds no evidence of
22  clear error. The Bankruptcy Court gave Gallian several opportunities to explain the
23  loss of her assets, including leave to submit additional briefing after the trial. (*See*

---

[15] Rather, the Court agrees with the Bankruptcy Court that the evasive nature of Gallian's testimony, as recorded in the Transcript, support the conclusion that Gallian knowingly made several false statements and would only admit to the truth after the Bankruptcy Court engaged in direct, sustained questioning. (*See, e.g.*, Transcript at 130–131.)

11

Transcript at 395–397). Gallian herself admitted at trial that the Bankruptcy Court had given her sufficient opportunities to make her case. (*See* Transcript at 404 lines 16–17) ("[Gallian to the Court]: . . .you've been extremely accommodating.") This context leads us to the same conclusion as the Bankruptcy Court: that Gallian was unable to provide a satisfactory explanation not because she was never given the chance, but rather, because a satisfactory explanation does not exist.

Accordingly, the Bankruptcy Court's judgment in favor of Houser on the section 727(a)(5) claim is **AFFIRMED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the Bankruptcy Court's Judgment regarding all section 727 claims against Gallian.

**IT IS SO ORDERED.**

Dated: July 31, 2024

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE